```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                           MIAMI DIVISION
                      CASE NO. 06-20373-CRIMINAL-LENARD
 3

 4   UNITED STATES OF AMERICA,        Miami, Florida

 5                  Plaintiff,        January 27, 2009

 6          vs.                       9:25 a.m. to 4:58 p.m.

 7   NARSEAL BATISTE, et al.,         Volume I

 8              Defendants.        Pages 1 to 238

 9   ------------------------------------------------------------

10
                             JURY TRIAL
11          BEFORE THE HONORABLE JOAN A. LENARD,
                   UNITED STATES DISTRICT JUDGE
12

13

14   APPEARANCES:

15

16   FOR THE GOVERNMENT:    RICHARD D. GREGORIE, ESQ., and
                            JACQUELINE M. ARANGO, ESQ.
17                          ASSISTANT UNITED STATES ATTORNEYS
                            99 Northeast Fourth Street
18                          Miami, Florida 33132

19

20   FOR THE DEFENDANT      ANA MARIA JHONES, ESQ.
       NARSEAL BATISTE:     300 Seville Avenue, Suite 210
                            Coral Gables, Florida 33134
21

22   FOR THE DEFENDANT      ALBERT Z. LEVIN, ESQ.
       PATRICK ABRAHAM:     261 Northeast First Street
23                          Sixth Floor
                            Miami, Florida 33132
24

25
```

```
 1   FOR THE DEFENDANT        RODERICK D. VEREEN, ESQ.
       STANLEY PHANOR:        BRINKLEY, HENRYS & LEWIS
 2                            4770 Biscayne Boulevard
                              Suite 1200
 3                            Miami, Florida 33131

 4
     FOR THE DEFENDANT        RICHARD K. HOULIHAN, ESQ.
 5     NAUDIMAR HERRERA:      300 Aragon Avenue
                              Coral Gables, Florida 33134
 6

 7   FOR THE DEFENDANT        LOUIS CASUSO, ESQ.
       BURSON AUGUSTIN:       111 Northeast First Street
 8                            Suite 603
                              Miami, Florida 33132
 9

10   FOR THE DEFENDANT        NATHAN CLARK, ESQ.
      ROTSCHILD AUGUSTINE:    17639 South Dixie Highway
11                            Miami, Florida 33157

12
     REPORTED BY:             LISA EDWARDS, CRR, RMR
13                            Official Court Reporter
                              400 North Miami Avenue
14                            Twelfth Floor
                              Miami, Florida 33128
15                            (305) 523-5499

16

17

18                        I  N  D  E  X

19

20                                              PAGE

21
     Jury Selection                               8
22

23

24

25
```

```
 1              THE COURT:  Good morning.

 2              You may be seated.

 3              United States of America versus Narseal

 4    Batiste, et al., Case No. 06-20373.

 5              Counsel, state your appearances, please, for

 6    the record.

 7              MR. GREGORIE:  Good morning, your Honor.

 8              Richard Gregorie --

 9              MS. ARANGO:  -- and Jacqueline Arango,

10    representing the United States.  With us at counsel

11    table is Special Agents John Stewart and Tony Velazquez

12    of the FBI.

13              THE COURT:  Good morning.

14              MS. JHONES:  Ana Jhones on behalf of Narseal

15    Batiste, who is present.

16              THE COURT:  Good morning.

17              MR. LEVIN:  Good morning, your Honor.

18              Albert Levin for Patrick Abraham, who is

19    present.

20              MS. JHONES:  Good morning.

21              THE COURT:  Good morning.

22              MR. CASUSO:  Good morning, your Honor.

23              Lou Casuso on behalf of Burson Augustin, who

24    is present.

25              THE COURT:  Good morning.
```

```
 1              MR. CLARK:  Good morning, your Honor.
 2              Nathan Clark on behalf of Rotschild Augustine,
 3    who is present.
 4              THE COURT:  Good morning.
 5              MR. HOULIHAN:  Richard Houlihan with Naudimar
 6    Herrera.
 7              THE COURT:  Good morning.
 8              MR. VEREEN:  Roderick Vereen on behalf of
 9    Stanley Phanor, who's present.
10              Good morning.
11              THE COURT:  Good morning.
12              Everybody ready for trial?
13              MR. VEREEN:  Yes.
14              MR. GREGORIE:  Yes, your Honor.
15              THE COURT:  Ms. Jhones filed a new witness
16    list.  And as I understand it, everyone else is relying
17    on their prior witness lists.
18              Is that correct?
19              MR. GREGORIE:  Yes, your Honor.
20              The United States provided a notice of expert
21    witness.  That expert witness is not on that list, your
22    Honor, Special Agent Daniel Young.  He's from Chicago.
23    So -- but he should be added to that list.
24              Also, your Honor, I'd ask if the name Lisa
25    Lamey was on our original list.  I believe she was.
```

```
 1    But I just wanted to make sure it's there.
 2              THE COURT:  L-a-m-e-y?
 3              MR. GREGORIE:  Yes.
 4              THE COURT:  Okay.  Now, there were some
 5    additional witnesses from the last trial.
 6              Do those remain on your list, Mr. Gregorie?
 7              MR. GREGORIE:  I believe they are, your Honor.
 8    I think all the witnesses that we've used in any trial
 9    are on that list.
10              THE COURT:  So all the witnesses that you used
11    at the last trial are on the witness list for this
12    trial?
13              MR. GREGORIE:  Yes.  Absolutely, your Honor.
14              THE COURT:  Okay.  Let me make sure I have
15    everybody's list.
16              I have one for Batiste, Abraham.  I have the
17    Government's, Herrera, and Rotschild Augustine.
18              Are those all the witness lists?
19              MR. VEREEN:  I have not submitted another one,
20    Judge.
21              THE COURT:  Do I have a witness list from you,
22    Mr. Vereen?
23              MR. VEREEN:  I believe -- in the first trial,
24    I think I had submitted something, but I have no
25    intention on calling any witnesses.
```

```
 1              THE COURT:  You're not calling witnesses?
 2              MR. VEREEN:  No, Judge.
 3              THE COURT:  So I have all the witness lists of
 4    those Defendants who intend to call witnesses.
 5              Correct?  Yes?
 6              MR. LEVIN:  I think so.  Yes, Judge.
 7              THE COURT:  Thank you.
 8              Just to put you on notice, I have a
 9    deliberating jury.  Obviously, I have no idea what the
10    verdicts are going to be, as they're still
11    deliberating.
12              But the Government does have a forfeiture case
13    in this trial in the event that there are guilty
14    verdicts.  They've informed me it will take about an
15    hour and a half for a trial.
16              Then, of course, I have to instruct the jury.
17              So the timing of that is up to the jury and
18    not up to me.  So we may have to, depending on what
19    their timing is, take a break at some point.
20              Obviously, we'd have to break for any
21    questions and for the taking of the verdict.  And if,
22    in fact, there was a forfeiture trial, we would need to
23    break for that as well.
24              Jog my memory as to the amount of peremptory
25    challenges for the last trial.
```

1          MR. GREGORIE:  I believe the United States had

2     11, your Honor.  I thought the defense had 18.

3          THE COURT:  That sounds right.

4          Does everybody agree that that's the numbers?

5          MS. JHONES:  Yes, your Honor.

6          THE COURT:  We're going to be going through

7     the same process as we went through in the last trials

8     with the three different sets of voir dire questions to

9     the jurors, with the third set being individual voir

10    dire questions.  Hopefully, we can get through a panel

11    of 34 to 36 people a day.  Today, we have 34.

12         Anything that anybody needs to bring up before

13    we bring in the jurors?

14         MS. JHONES:  Your Honor, there's a motion

15    pending to exclude the Government's proposed expert

16    witness.  The Government did file a response, I

17    believe, on Friday.

18         I will be filing a reply to that, hopefully,

19    no later than Wednesday.  I just wanted to let the

20    Court know that I'm intending to file a reply.

21         THE COURT:  Okay.  I'll take up the motion

22    and, if we need to have any hearings, we'll just work

23    the hearings in.

24         Is Patricia outside?

25         THE COURT SECURITY OFFICER:  Yes, ma'am.

```
 1            THE COURT:  How long are we talking about?
 2   About two months?  About the same amount of time?
 3            MR. GREGORIE:  Yes, your Honor.  I would say
 4   eight weeks is accurate.  I'd say eight weeks is
 5   accurate, your Honor.
 6            THE COURT:  Okay.
 7            MR. LEVIN:  Your Honor, I was looking to see
 8   if there was a mute button on this microphone.
 9            THE COURT:  There is.
10            MR. LEVIN:  I'm trying to locate it.
11            THE COURT:  There's a button on the spine.
12   It's a little bit higher up.  There's a light that goes
13   on and off, Mr. Levin.
14            For those defense attorneys who are sitting
15   directly across from the jury, if there's too much
16   early-morning glare, there's a sun shade that can come
17   down.  So just let me know.
18            MS. JHONES:  Thank you, your Honor.
19            MR. LEVIN:  Thank you.
20            THE COURT:  We're almost high-tech.
21            THE COURTROOM DEPUTY:  Judge, are you ready
22   for the panel?
23            THE COURT:  Yes, please.
24            (Whereupon, Prospective Jury Panel No. I
25   entered the courtroom at 9:43 a.m. and the following
```

```
 1   proceedings were had:)

 2           THE COURT:  Good morning.

 3           THE PROSPECTIVE JURY PANEL:  Good morning.

 4           THE COURT:  You may be seated.

 5           Ladies and gentlemen of the jury, I want to

 6   welcome you to our courtroom.  I am Judge Lenard, a

 7   United States District Judge for the Southern District

 8   of Florida.  I will preside over this case.

 9           The jury is an institution of the common law.

10   It is recognized, preserved and protected by our

11   Constitution.

12           Jury service is one of the most important

13   duties that you, as a citizen, are called upon to

14   perform.

15           I am aware that, for some of you, this is your

16   first call to jury service and these proceedings are

17   totally unfamiliar to you.  Please do not be

18   apprehensive or feel inadequate.

19           As we go along, I will acquaint you with the

20   proceedings and I will instruct you as to what your

21   role is and what your duties will be.

22           In order that you will know the court

23   personnel with whom you will be working and their

24   respective duties, I will introduce them to you at this

25   time.
```

1          The courtroom deputy, whom you've already met,

2    is Patricia Mitchell.  She assists in the

3    administration of cases that comprise the Court's

4    docket and in the coordination of the day-to-day

5    operations of the court.

6          The court reporter is Lisa Edwards.  She

7    transcribes and takes down everything that is said in

8    the courtroom, including the statements that I am now

9    making, the questions that will subsequently be

10   propounded to you, your answers and all other matters

11   in this case.

12         We also have court security officers.  Their

13   job is to enforce the Court's orders and take charge of

14   the jury.

15         If you desire information concerning your

16   personal welfare, you should make your inquiries known

17   to either the court security officer or courtroom

18   deputy, who will, if necessary, arrange with the Court

19   to hear you on such matters.

20         However, you must not question either the

21   court security officer or courtroom deputy concerning

22   the case that is being tried.

23         Ladies and gentlemen, I will be asking you

24   questions touching on your qualifications to serve as

25   jurors in this particular case.  This part of the case

1    is known as voir dire examination, "voir dire" meaning

2    to speak the truth.

3            This examination is for the purpose of

4    determining if your decision in this case would be

5    influenced in any way by opinions you now hold or by

6    some personal experience or special knowledge you may

7    have concerning the case to be tried.

8            The object is to obtain a jury who will

9    impartially try the issues of this case upon the

10   evidence presented in this courtroom without being

11   influenced by any other factors.

12           Please understand, this questioning is not for

13   the purpose of prying into your affairs for personal

14   reasons, but is only for the purpose of obtaining an

15   impartial jury.

16           Not all of you will have the privilege to sit

17   as a juror in this case.  There are many reasons why a

18   person may not be selected as a juror.  Either side can

19   ask that you be excused without giving a reason or the

20   Court can excuse you.

21           If you are excused, please do not be offended

22   or feel that your honesty or integrity is being

23   questioned.  It is not.

24           If you would, swear in all the potential

25   jurors.

```
 1              (Whereupon, Prospective Jury Panel No. I was

 2     duly sworn.)

 3              THE COURT:  Before I begin my questioning, I

 4     want to tell you first about my courtroom and the sound

 5     system.

 6              We've been here since May.  As you can see,

 7     it's a new courthouse.  We're very happy to be here,

 8     happy to have a little natural light.  My prior

 9     courtroom didn't have any natural light in it.  So it's

10     nice to have natural light in the courtroom.

11              The sound system works pretty well.  Sometimes

12     the handheld microphone, which will be brought around

13     to you when you're answering questions on voir dire,

14     seems to kick in and out.  We have to be patient with

15     it.

16              The best advice that I can give you, since

17     utilizing this handheld microphone since May, is to

18     hold it like you're doing karaoke, right up there, you

19     know, almost parallel to your mouth.  That how it seems

20     to work best.

21              I also want to tell you about my trial

22     schedule.  On Mondays, I hear other matters on my

23     docket.  So Monday is not a trial day, and you're not

24     required to come to the courthouse on Monday.

25              I hear trials Tuesday through Friday for both
```

1    a morning and afternoon session.  That will be the

2    schedule that we will utilize in this case.

3            Having said that, this case is expected to

4    take approximately two months to present the evidence.

5            Does that present an insurmountable problem to

6    any member of the jury panel?

7            And my questions are directed to those persons

8    who are seated in what we call the jury box and those

9    on the panel who are seated in the gallery as well.

10           Does anybody have an insurmountable problem

11   with the length of the time for the trial?

12           Yes, sir.

13           PROSPECTIVE JUROR NO. 12:  I'm a vice

14   president of engineering of a company that makes lots

15   of electronic equipment.  We just laid off 50 percent

16   of our employees.  I am the only sole engineer with

17   that company at the moment.

18           The company relies on me for design,

19   development and traveling back and forth to China.  It

20   is very difficult for us to continue without me being

21   there.

22           THE COURT:  There are no other engineers that

23   work under you?

24           PROSPECTIVE JUROR NO. 12:  No, ma'am.  Again,

25   we laid off about 50 percent of the major engineers and

```
 1   I'm the only vice president, but I have to do sketches

 2   and drawings myself.

 3              THE COURT:  Okay.

 4              MR. GREGORIE:  Your Honor, so the record is

 5   clear, that Juror No. 12?

 6              THE COURT:  That was Juror No. 12.

 7              This is now Juror No. 14.

 8              PROSPECTIVE JUROR NO. 14:  Yes.  Juror No. 14.

 9              I'm not sure -- I'm an employee of a school

10   system.  We have funding coming up in about 14 days,

11   where it's a federal mandate that we service the

12   students for that particular week to obtain funding.

13   I'm not sure, with the cutbacks, if they can find

14   someone to take my place.

15              THE COURT:  What's your job?

16              PROSPECTIVE JUROR NO. 14:  I'm a speech

17   language pathologist.  I mean, if they could, fine.

18   But....

19              THE COURT:  Okay.

20              PROSPECTIVE JUROR NO. 15:  I'm Juror No. 15.

21              I'm the president of a small general

22   contracting firm with about 10 employees.  I handle all

23   the day-to-day operations in the office as well as in

24   the field for my projects.  This would directly impact

25   my ability to -- for my company to function.
```

```
 1              THE COURT:  Okay.

 2              PROSPECTIVE JUROR NO. 8:  I'm Juror No. 8.

 3              I work at a nuclear power plant, Turkey Point,

 4     down south, and I might have refueling.  I might have a

 5     conflict if my refueling is March 15th and I'm the only

 6     communications supervisor there.

 7              THE COURT:  How long does that take?

 8              PROSPECTIVE JUROR NO. 8:  It's going to take

 9     three weeks to refuel reactors.  They're scheduled to

10     come off-line March 15.  So I might be okay.

11              PROSPECTIVE JUROR NO. 2:  I'm Juror No. 2.

12              I work for a local TV station and I'm the only

13     person currently that holds my position.  No one can

14     cover for me when I'm not at work.

15              THE COURT:  What's your position?

16              PROSPECTIVE JUROR NO. 2:  I'm a

17     post-production video editor for the news -- for the

18     news department.  And I don't know how they would take

19     it if I was gone for two months or if I might lose my

20     job.

21              THE COURT:  So there's no one else that does

22     what you do?

23              PROSPECTIVE JUROR NO. 2:  There's one person

24     that is covering for me today, but is doing the bare

25     minimum of the work, because we work with a specialized
```

```
 1   video editing program and no one knows it.  I'm the
 2   only one that does that job.
 3          THE COURT:  What TV station is it?
 4          PROSPECTIVE JUROR NO. 2:  CBS 4.
 5          THE COURT:  Okay.
 6          PROSPECTIVE JUROR NO. 21:  I'm Juror No. 21.
 7          I am an office manager at my company and I'm
 8   the only one that holds my position, who does all the
 9   administrative responsibility and runs payroll.
10          I also have two young children, one 2 and one
11   6 years old.  I have to take them to daycare and to
12   school, pick them up from school and take them to
13   after-school.  I'm not going to be able to stay here --
14          THE COURT:  What time do you take them to
15   school?
16          PROSPECTIVE JUROR NO. 21:  At 8:00 in the
17   morning I leave my son, who is 2 years old, at daycare
18   and I take my oldest, 6 years old, to kindergarten.  He
19   has to be there at 8:30.  And then, at 2:00, I have to
20   pick him up from school and bring him to after-school.
21          THE COURT:  And you leave work every day to
22   pick them up?
23          PROSPECTIVE JUROR NO. 21:  I use my lunch
24   hour.  Yes.
25          THE COURT:  So you pick them up at 2:00 and
```

```
 1   take them to after-school?

 2         PROSPECTIVE JUROR NO. 21:  I take them to

 3   after-school.

 4         THE COURT:  Okay.

 5         PROSPECTIVE JUROR NO. 19:  I'm Juror No. 19.

 6         I work at a university, and I hold the

 7   position of administrative assistant.

 8         We work with federal grants, and we have a lot

 9   of deadlines.  I'm the only one in my office who has

10   that position.  There's only two other full-time

11   employees at this time, and the other two are students.

12         I think it would be difficult for them to

13   cover me for two months.

14         THE COURT:  So you're an administrative

15   assistant to whom?

16         PROSPECTIVE JUROR NO. 19:  To one of the

17   executive directors, also a director, and a chief of

18   operations.

19         THE COURT:  Okay.

20         PROSPECTIVE JUROR NO. 25:  I'm Juror No. 25.

21         I own a small company in marketing.  I'm the

22   only one who's responsible in terms of the day-to-day

23   relations with the clients and deal with sales.

24         THE COURT:  What is your position with the

25   company?
```

```
 1                 PROSPECTIVE JUROR NO. 25:  I'm the owner.

 2                 THE COURT:  You're the owner.

 3                 How many employees do you have?

 4                 PROSPECTIVE JUROR NO. 25:  One full-time and

 5     like 20 that I outsource.

 6                 THE COURT:  Okay.

 7                 PROSPECTIVE JUROR NO. 25:  Thank you.

 8                 PROSPECTIVE JUROR NO. 30:  I'm Juror No. 30.

 9                 I'm a legal assistant, and I work one on one

10     with the attorney.  Two months would be too much for

11     him.  A couple of days would be okay.

12                 THE COURT:  Who's the attorney that you work

13     with?

14                 PROSPECTIVE JUROR NO. 30:  Luis Delgado.

15                 THE COURT:  And what's the firm?

16                 PROSPECTIVE JUROR NO. 30:  Homer Bonner.

17                 THE COURT:  What kind of work is Mr. Delgado

18     doing?

19                 PROSPECTIVE JUROR NO. 30:  Commercial

20     litigation.

21                 THE COURT:  Okay.

22                 PROSPECTIVE JUROR NO. 31:  I'm Juror No. 31.

23                 I work for a financial industry, and my salary

24     is commission-based.  I travel quite a bit to manage

25     the clients in Latin America.  So I think two months
```

1    would be a little bit too much for me.

2             THE COURT:  You get paid straight commission?

3             PROSPECTIVE JUROR NO. 31:  Yes.

4             THE COURT:  Okay.

5             PROSPECTIVE JUROR NO. 20:  I'm sorry.  I just

6    realized this.

7             The program that I work with is a homeless

8    transitional shelter.  We're in the process of closing

9    down that program and reopening it through another one,

10   where we're going to be sending out all of our clients

11   to independent housing.

12            THE COURT:  Where is it that you work?

13            PROSPECTIVE JUROR NO. 20:  Shaman with Citrus.

14   And that has to happen by March 1st.  So....

15            THE COURT:  And what kind of business is it?

16            PROSPECTIVE JUROR NO. 20:  It's a homeless --

17   it's a homeless transitional housing facility.  I'm the

18   psychotherapist, and I'm assisting with the referrals

19   and all the -- and finding the new locations.

20            THE COURT:  Are there other psychotherapists

21   on staff?

22            PROSPECTIVE JUROR NO. 20:  Currently, I'm the

23   only one.

24            THE COURT:  What is it that you do?

25            PROSPECTIVE JUROR NO. 20:  Oh, I'm -- I assist

```
 1    them with day-to-day things, with making sure that

 2    they're responsible for their appointments and their

 3    therapy and going to the psychiatrist, things like

 4    that.

 5             THE COURT:  So you're, then, in direct contact

 6    with the people that you put into this transitional

 7    housing?

 8             PROSPECTIVE JUROR NO. 20:  Yes.

 9             THE COURT:  You try to help --

10             PROSPECTIVE JUROR NO. 20:  I have to make sure

11    that everything is set for them to move into that

12    location.

13             THE COURT:  Okay.  So are you dealing with

14    them once they've moved in or just prior to them

15    moving --

16             PROSPECTIVE JUROR NO. 20:  Now, and once

17    they've moved in, I have to visit once a week.  So I

18    have weekly visitations.

19             THE COURT:  Okay.

20             PROSPECTIVE JUROR NO. 34:  I'm Juror No. 34.

21             I've got two jobs.  The second one is a

22    part-time job.  I'm not sure if -- I just got hired

23    about two weeks ago.  I'm not sure if two months is --

24    they'll lay me off or not.  I'm not sure.

25             THE COURT:  What kind of part-time job is it?
```

```
 1              PROSPECTIVE JUROR NO. 34:  Security.

 2              THE COURT:  Okay.  What are the hours that

 3    you're working security?

 4              PROSPECTIVE JUROR NO. 34:  Mondays and

 5    Wednesdays, it's 5:15 to 9:00.  On Tuesday and

 6    Thursday, it's 3:00 to 7:00.

 7              THE COURT:  Okay.  And what's your other job?

 8              PROSPECTIVE JUROR NO. 34:  Security, also.

 9              THE COURT:  What hours is that?

10              PROSPECTIVE JUROR NO. 34:  From 7:00 to 3:00.

11              THE COURT:  Every day?

12              PROSPECTIVE JUROR NO. 34:  Yes, ma'am.

13              THE COURT:  Monday through Friday?

14              PROSPECTIVE JUROR NO. 34:  Yes, ma'am.

15              THE COURT:  How do you make it from Job 1 to

16    Job 2 on Tuesday and Thursdays?

17              PROSPECTIVE JUROR NO. 34:  On Tuesdays and

18    Thursdays, they're at the same building.

19              THE COURT:  That's convenient.  Okay.

20              So the Monday through Friday 7:00 to 3:00 job

21    is full-time?

22              PROSPECTIVE JUROR NO. 34:  Yes, ma'am.

23              THE COURT:  And the other job is considered

24    part-time?

25              PROSPECTIVE JUROR NO. 34:  Yes, ma'am.
```

```
 1              THE COURT:  Okay.

 2              PROSPECTIVE JUROR NO. 27:  I'm Juror No. 27.

 3              And we've had the death of a family member

 4    and --

 5              THE COURT:  I'm sorry.

 6              PROSPECTIVE JUROR NO. 27:  -- my daughter has

 7    been laid off from her job.

 8              The death was the head of the household, and

 9    we're being creative and starting a new business of

10    daycare for children that I help her with from 8:00 in

11    the morning until 6:00 in the evening.

12              I pick up -- I have an autistic grandson that

13    is her child that needs assistance, and she has school

14    children that need to be picked up in the afternoon.

15              And for two months, I -- there's no swing

16    person that can --

17              THE COURT:  Is this a home daycare?

18              PROSPECTIVE JUROR NO. 27:  Yes, it is.

19              THE COURT:  And you're -- she set up the

20    daycare and you're assisting her?

21              PROSPECTIVE JUROR NO. 27:  Right.

22              THE COURT:  Is there anyone else assisting

23    her?

24              PROSPECTIVE JUROR NO. 27:  No.  It's just she

25    and I.
```

```
 1              THE COURT:  Okay.  Would co-counsel for the
 2    Government and for the Defendants introduce themselves
 3    and the persons associated with them at counsel table,
 4    please.
 5              MR. GREGORIE:  Good morning.
 6              My name is Richard Gregorie.  I'm an assistant
 7    United States attorney.
 8              MS. ARANGO:  Good morning.
 9              My name is Jackie Arango.  I'm also an
10    assistant United States attorney.
11              SPECIAL AGENT VELAZQUEZ:  Good morning.
12              My name is Anthony Velazquez.  I'm a special
13    agent with the FBI.
14              SPECIAL AGENT STEWART:  Good morning.
15              My name is John Stewart.  I'm a special agent
16    with the FBI.
17              MS. JHONES:  Good morning, ladies and
18    gentlemen.
19              My name is Ana Marie Jhones.  I represent
20    Narseal Batiste.
21              MR. LEVIN:  May it please the Court, ladies
22    and gentlemen, good morning.
23              My name is Albert Levin.  I'm appointed by the
24    Court to represent my client, Patrick Abraham.  Thank
25    you.
```

```
 1              MR. CASUSO:  Good morning, ladies and
 2    gentlemen.
 3              My name is Louis Casuso.  I'm an attorney in
 4    private practice in Miami.  I represent Burson
 5    Augustin.
 6              MR. CLARK:  Good morning, ladies and
 7    gentlemen.
 8              My name is Nathan Clark.  I'm counsel for
 9    Rotschild Augustine.
10              MR. HOULIHAN:  Good morning.
11              My name is Richard Houlihan, and I represent
12    Naudimar Herrera.
13              MR. VEREEN:  Ladies and gentlemen, good
14    morning.
15              My name is Roderick Vereen.  I represent
16    Stanley Phanor.  Thank you.
17              THE COURT:  Is there any member of the jury
18    panel who knows any of the persons that were introduced
19    to you in the courtroom by the fact that you have had
20    any contact with any of those persons whatsoever,
21    whether it be business or social?
22              PROSPECTIVE JUROR NO. 13:  I'm Juror No. 13.
23              I'm not certain, but I used to practice law.
24    I'm a lawyer.  And the name Nathan Clark is a name
25    of -- with a person that I worked certain cases with.
```

```
 1   And I don't know if this is just the same name or if
 2   it's actually the individual.
 3        THE COURT:  Okay.  I'm going to read a list of
 4   potential witnesses to you:
 5        Elie Assaad, Will Bolton, Paul Carpentieri,
 6   Willie Creech, Paul Gaspard, Karam Govens, Elsie
 7   Hamler, Kenneth Joseph, Lisa Lamey, David Lew, Rick
 8   Lunn, Hector Maldonado, Bashir Malouf, Dana Martenelli,
 9   Jason Miller, George Nau, Jonathan O'Neil, Ruby
10   Raphael, Lee Rathel, Ron Reddy, Ira Rosenberg, Abbas
11   al-Saidi, Guillermo Salazar, Tim Scott, John Stewart,
12   Raymond Tanter, Michelle Thompson, Anthony Velazquez,
13   Jason Martelli, Nikki Batiste, Michael Murphy, David
14   Lew, George Gonzalez, William Cobb, Laura Kriegbaum, Ed
15   Purchase, Philippe Ferrier, Wayne Shields, Daniel
16   Young, Frank Abetu, Abbas al-Saidi, Elie Assaad, Curtis
17   Batiste, Giovanni Batiste, Maxwell Batiste, Michael
18   Batiste, Minerva Vasquez, Debbie Falestra, Siltwan
19   Batiste, Joel Bratton-Bey, Peggy Culotta, Luisa Carty,
20   Betty Davidson, Randy Denike, Nicole Deno, Michael
21   Ducos, Una Edwards, John Glenn, Marion Hanks, Arthur
22   Harris, Greg Harrison, Aris Eugene, Elsie Hamler, Ted
23   Lyons, Lewis Bradley, Jesse Rathel, Steve Higgs,
24   Stephanie Jennings, Theresa LeFleur, Rick Young, Maria
25   Machado, Lisa McDermott, Juan Miranda, Eleanor Parker,
```

```
 1    Yolanda Pieze, Mary Ramos, Jeannie Rogers, Dale
 2    Salkeld, Cedric Sanders, Melvin Septepinra, Jesus
 3    Serna, Michael Sharpe, Charles Sheldon, Curtis Silwa,
 4    Michelle Smith, Xavier Smith, Charles Stewart, John
 5    Tronolone, Enoch Vilbrun, Arlene Webster, Shaylan
 6    Thomas, Melinda Clark, Steven Johnson, Marcelo Onelcy,
 7    Jay Weaver, James Wedick, Israel Herrera, Maribel
 8    Herrera, Ken Herrera, Mr. Schilling, Stefane Turnier,
 9    Rosa Oceijo, Juan Miranda, Minerva Vasquez Hernandez,
10    Burla Augustine, Abdier Santiago, Charles Russo, Burla
11    Russo, Pierre Augustine, Elwood Augustine, Carl Rerney,
12    Jimmy Morency, Septepinra Melvin, Master Ali G. Athea.
13          Is there any member of the jury panel who
14    recognizes any of the names that I just read to you by
15    the fact that you have had any contact with any of
16    those persons whatsoever, whether it be business or
17    social?
18          Is there any member of the jury panel who's
19    familiar with the area of Northwest 62nd Street and
20    Northwest 15th Avenue?
21          Juror No. 1.
22          PROSPECTIVE JUROR NO. 1:  Yes, your Honor.
23          I live on 62nd -- right off of 62nd, which
24    would be 59th Street and 3rd Avenue.
25          THE COURT:  So you live in that general area?
```

```
 1              PROSPECTIVE JUROR NO. 1:  Yes, ma'am.

 2              THE COURT:  Okay.

 3              PROSPECTIVE JUROR NO. 14:  Juror No. 14.

 4         By nature of my job, I travel to many schools,

 5    and many of them are located in that general vicinity.

 6              THE COURT:  Okay.  We have a juror who needs

 7    to use the facilities.  So let's let that person go and

 8    we'll just wait for them for the next question.

 9         Any objection to hearing from the other jurors

10    while that juror is out of the room?

11              MR. GREGORIE:  No, your Honor.

12              MR. CASUSO:  No, Judge.

13              THE COURT:  There were some more hands in

14    response to this question.

15              PROSPECTIVE JUROR NO. 27:  I'm No. 27.

16         Your Honor, I worked in that vicinity for

17    about 17 years.

18              THE COURT:  When did you stop working there?

19              PROSPECTIVE JUROR NO. 27:  A while ago.

20              THE COURT:  I'm sorry?

21              PROSPECTIVE JUROR NO. 27:  A while ago.  Maybe

22    about -- maybe about 10 years.

23              THE COURT:  Okay.

24              PROSPECTIVE JUROR NO. 34:  Juror No. 34.

25         I don't work in that area or anything, but I'm
```

```
 1   very familiar with it, being born and raised in

 2   Overtown.  So I'm very aware about that area.

 3           THE COURT:  Okay.

 4           THE COURT SECURITY OFFICER:  We have another

 5   juror that needs to use the facilities.

 6           THE COURT:  That's fine.  If someone needs to

 7   use the facilities, we'll wait.  Just come back.

 8           I'm going to turn off the microphones so it

 9   doesn't look like we're all waiting for them to walk in

10   the door.  So you can talk amongst yourselves for a few

11   minutes.

12           (Discussion off the record.)

13           THE COURT:  Everyone's back now.  So we're

14   going to continue.  Both jurors have returned.  All

15   Defendants are present.

16           Is there any member of the jury panel who you

17   yourself or a member of your family or close friend has

18   had either a positive or a negative experience with law

19   enforcement of any kind such that it would make it

20   difficult for you to listen to the evidence in this

21   case and be fair to both the Government and the

22   Defendants?

23           Your number, sir?

24           PROSPECTIVE JUROR NO. 8:  18.  Good morning.

25           Well, my dad's a cop.  So I have positives and
```

```
 1   negatives of the law enforcement.
 2           THE COURT:  Okay.  Positives and negatives.
 3           PROSPECTIVE JUROR NO. 18:  Yeah.
 4           THE COURT:  Let me ask you a question:  Where
 5   does -- what kind of work does your dad do?
 6           PROSPECTIVE JUROR NO. 18:  He was with City of
 7   Miami for 25 years, and now he's a detective for South
 8   Miami.
 9           THE COURT:  Okay.  And given that your father
10   is a police officer and a detective, would you be able
11   to sit and listen to the evidence in this case and be
12   fair to both the Government and the Defendants?
13           PROSPECTIVE JUROR NO. 18:  No.
14           THE COURT:  Okay.
15           PROSPECTIVE JUROR NO. 18:  Thank you.
16           THE COURT:  Okay.
17           PROSPECTIVE JUROR NO. 28:  No. 28.
18           Some evidence was planted on some cousins of
19   mine some years ago down in South Dade, and they were
20   put in jail for that.
21           I don't think it would affect my performance
22   here.  However, I thought I would let you know ahead of
23   time.
24           THE COURT:  So what were your cousins charged
25   with?
```

1            PROSPECTIVE JUROR NO. 28:  Possession of

2    drugs.

3            THE COURT:  And how many cousins was it?

4            PROSPECTIVE JUROR NO. 28:  What?

5            THE COURT:  How many cousins?

6            PROSPECTIVE JUROR NO. 28:  One.

7            THE COURT:  One cousin.  Okay.

8            And what happened with the charge?

9            PROSPECTIVE JUROR NO. 28:  I don't remember.

10   I just know that they supposedly planted evidence on

11   him and his business and put him in jail for that.

12           THE COURT:  Okay.  Did you attend any of his

13   hearings?

14           PROSPECTIVE JUROR NO. 28:  No.

15           THE COURT:  Do you think he was treated fairly

16   by the criminal justice system?

17           PROSPECTIVE JUROR NO. 28:  It was later proved

18   that the evidence was false.  It wasn't his drugs.

19   They planted it.  So I don't think he was treated

20   fairly.

21           However, I'm telling you I don't think it

22   would affect my performance in here, if I was selected.

23           THE COURT:  Okay.  So would you be able to sit

24   and listen to the evidence in this case --

25           PROSPECTIVE JUROR NO. 28:  I said "yes."

1          THE COURT:  Let me finish my question, sir.

2          Would you be able to sit and listen to the

3    evidence in this case and be fair to both the

4    Government and the Defendants?

5          PROSPECTIVE JUROR NO. 28:  I said "yes."

6          THE COURT:  Okay.  We have another hand.

7          PROSPECTIVE JUROR NO. 34:  Juror No. 34.

8          I got family and friends that's incarcerated

9    now for numerous things.

10          THE COURT:  Let's take up your family members.

11          Who in your family?

12          PROSPECTIVE JUROR NO. 34:  I have a cousin

13   that, if I'm not mistaken, got life in prison for

14   murder.

15          THE COURT:  Okay.  When was that?  When was

16   your cousin convicted?

17          PROSPECTIVE JUROR NO. 34:  I'm not sure.  It's

18   probably been about 15 -- 15 years ago.

19          THE COURT:  It's a he?

20          PROSPECTIVE JUROR NO. 34:  Excuse me?

21          THE COURT:  It's a he?

22          PROSPECTIVE JUROR NO. 34:  It's a he.

23          THE COURT:  Did you attend any of his

24   hearings?

25          PROSPECTIVE JUROR NO. 34:  No, ma'am.

```
 1              THE COURT:  Do you think he was treated fairly
 2    by the criminal justice system?
 3              PROSPECTIVE JUROR NO. 34:  I have no idea.
 4              THE COURT:  Is there anything about -- have
 5    you visited him while he's incarcerated?
 6              PROSPECTIVE JUROR NO. 34:  No, ma'am.
 7              THE COURT:  Is there anything about your
 8    cousin's experience and his situation that would make
 9    it difficult for you to sit and listen to the evidence
10    in this case and be fair to both the Government and the
11    Defendants?
12              PROSPECTIVE JUROR NO. 34:  I have no -- I
13    don't know what the case is.  I have no idea.
14              THE COURT:  Well, the question is:  Do you
15    have such strong feelings about what happened to your
16    cousin that you're going to hold it against any police
17    officers or agents that would testify that you wouldn't
18    be able to fairly judge whether or not they're being
19    truthful because you're upset about your cousin?
20              PROSPECTIVE JUROR NO. 34:  No, ma'am.
21              THE COURT:  You would be able to be fair?
22              PROSPECTIVE JUROR NO. 34:  Yes, ma'am.
23              THE COURT:  And what about your friends?
24              PROSPECTIVE JUROR NO. 34:  Numerous of things,
25    from drugs to shooting.
```

```
 1              THE COURT:  About how many friends are we
 2    talking about?
 3              PROSPECTIVE JUROR NO. 34:  I don't know a
 4    number.
 5              THE COURT:  Less than five?  More than five?
 6              PROSPECTIVE JUROR NO. 34:  More than five.
 7              THE COURT:  Less than ten?  More than ten?
 8              PROSPECTIVE JUROR NO. 34:  That's currently
 9    incarcerated now or have been before?
10              THE COURT:  Let's talk about currently
11    incarcerated.
12              PROSPECTIVE JUROR NO. 34:  I'd say less than
13    ten.
14              THE COURT:  How about incarcerated before?
15              PROSPECTIVE JUROR NO. 34:  More than ten.
16              THE COURT:  Okay.  Now, for each one of those
17    situations that your friends were in, do you think they
18    were treated fairly by the criminal justice system?
19              PROSPECTIVE JUROR NO. 34:  I don't know the
20    crimes that they did.
21              THE COURT:  Okay.  If you attend any of their
22    hearings?
23              PROSPECTIVE JUROR NO. 34:  No, ma'am.
24              THE COURT:  Do you have any opinion on whether
25    they were well represented by their lawyer?
```

```
 1              PROSPECTIVE JUROR NO. 34:  No, ma'am.

 2         THE COURT:  Have you visited any of these

 3    people while they were incarcerated?

 4              PROSPECTIVE JUROR NO. 34:  No, ma'am.

 5         THE COURT:  Is there anything about any of

 6    your friends' experiences who are either presently

 7    incarcerated or were incarcerated in the past that

 8    would make it difficult for you to sit and listen to

 9    the evidence in this case and be fair to both the

10    Government and the Defendants?

11              PROSPECTIVE JUROR NO. 34:  No, ma'am.

12         THE COURT:  Okay.

13         PROSPECTIVE JUROR NO. 8:  I'm Juror No. 8.

14         I have a nephew that's a US air marshal.

15         THE COURT:  Okay.  Would that affect your

16    ability to be a fair and impartial juror in this case?

17              PROSPECTIVE JUROR NO. 8:  No, it will not,

18    your Honor.

19         THE COURT:  In this case, you may hear

20    testimony that the Government used cooperating

21    individuals, CIs or informants, to work in an

22    undercover capacity who were paid and/or received other

23    benefits.

24              Is there any member of the jury panel who has

25    such strong feelings one way or the other about the use
```

```
 1   of such cooperating individuals such that you would not
 2   be able to sit and listen to this evidence and be fair
 3   to both the Government and the Defendants?
 4         The evidence in this case may also include the
 5   recordings of conversations that were recorded without
 6   the knowledge of some of the participants through the
 7   lawful use of electronic devices, commonly known as
 8   bugs or wiretaps.
 9         Is there any member of the jury panel who has
10   such strong feelings one way or the other regarding the
11   use of bugs or wiretaps such that you would not be able
12   to sit and listen to this evidence and be fair to both
13   the Government and the Defendants?
14         In this case, you may hear evidence of the
15   recordings of conversations that were recorded without
16   the knowledge of all of the participants through the
17   use of a body wire by secretly taping telephone
18   conversations or by secretly recorded videotapes.
19         Is there any member of the jury panel who has
20   such strong feelings one way or the other that you
21   would not be able to sit and listen to this evidence
22   and be fair to both the Government and the Defendants?
23         In this case, you may hear evidence that was
24   obtained from photographic and physical surveillance as
25   well as evidence seized pursuant to lawful searches of
```

```
 1    various places, including the homes of some of the

 2    Defendants.

 3              Is there any member of the jury panel who has

 4    such strong feelings one way or the other that you

 5    would not be able to sit and listen to this evidence

 6    and be fair to both the Government and the Defendants?

 7              Is there any member of the jury panel who

 8    would not be able to listen to the testimony of a law

 9    enforcement officer and be fair to both the prosecution

10    and the Defendants or be either more likely or less

11    likely to believe the testimony of a law enforcement

12    officer solely because of their position?

13              Does everyone understand that any person

14    charged with a crime is presumed innocent?

15              Do you all understand that the indictment in a

16    criminal case is the accusatory paper which states the

17    charge or charges to be determined at the trial; it is

18    not evidence against a defendant or anyone else?

19              Do you all understand that?

20              Do you all understand that the Government has

21    the burden of proving a defendant guilty beyond a

22    reasonable doubt?

23              Anyone who does not understand that?

24              Is there any member of the jury panel who

25    would hold the Government to a higher or lower burden
```

1    of proof?

2          Do you all understand that the case of each

3    Defendant and the evidence pertaining to each Defendant

4    should be considered separately and individually by the

5    jury?

6          Anyone who does not understand that?

7          If you were chosen as a juror in this case, if

8    the Government proves its case against the Defendant

9    beyond a reasonable doubt, would you be able to return

10   a verdict of guilty?

11         And, likewise, if the Government fails to

12   prove its case against a defendant beyond a reasonable

13   doubt, would you be able to return a verdict of not

14   guilty?

15         Is there any member of the jury panel who

16   feels that, if the Government goes to the trouble of

17   bringing someone to trial, then that person is probably

18   guilty?

19         Is there any member of the jury panel who

20   feels that a defendant in a criminal case should

21   testify or produce some evidence to prove that he or

22   she is not guilty?

23         Is there any member of the jury panel who

24   feels that the law does too much to protect the rights

25   of the accused and not enough to protect the rights of

```
 1    crime victims and their families such that it would

 2    affect your ability to be a fair and impartial juror in

 3    this case?

 4         Is there any member of the jury who feels that

 5    individuals are treated differently by the criminal

 6    justice system based on their race, creed or national

 7    origin?

 8         Is there any member of the jury panel who you

 9    yourself, a spouse or a family member has ever been

10    audited or had a dispute with any agency or department

11    of the United States Government?

12         Juror No. 8.

13         PROSPECTIVE JUROR NO. 8:  I was -- it was

14    1986, willful failure to file.  I was a protester back

15    in those days.  I settled with a misdemeanor, US

16    District Court.  I have never been audited since 1986.

17         THE COURT:  So you were audited and then you

18    were charged with willful failure to take --

19         PROSPECTIVE JUROR NO. 8:  I had three counts.

20    They were felonies.  I was a tax protester in the early

21    '80s.  And, you know, that was it.

22         And then I adjudicated it through the Attorney

23    General's office in Washington and I was misdemeanored

24    and I now work at a nuclear power plant.  So....

25         THE COURT:  Do you think you were treated
```

1    fairly by the criminal justice system?

2         PROSPECTIVE JUROR NO. 8:  Yes, I was.  A made

3    a mistake and I paid for it.

4         THE COURT:  Do you think you were well

5    represented by your lawyer?

6         PROSPECTIVE JUROR NO. 8:  Yes, I was.

7         THE COURT:  Is there anything about your

8    experience that would make it difficult for you to sit

9    and listen to the evidence in this case and be fair to

10   both the Government and the Defendants?

11        PROSPECTIVE JUROR NO. 8:  Not whatsoever.

12        THE COURT:  Any problem paying your taxes

13   these days?

14        PROSPECTIVE JUROR NO. 8:  Like I said, your

15   Honor, I have never been audited since 1986.  They

16   believe I am an honest citizen.  And I am.

17        THE COURT:  And do you still consider yourself

18   a tax protester?

19        PROSPECTIVE JUROR NO. 8:  No, ma'am.  I was --

20   I had -- my community service was to be an advocate on

21   paying taxes, and I was an assistant Scout master for a

22   Boy Scout troop for many years as far as my paying --

23   as far as my paying back with community service, you

24   know.

25        THE COURT:  So did you change your view about

```
 1    paying taxes?

 2              PROSPECTIVE JUROR NO. 8:  Oh, yes.  I was

 3    wrong.  See, I was -- in 1981, I was divorced and it

 4    was a very ugly divorce and I really didn't care about

 5    myself.  I just fell in that depression state.  That's

 6    what drove me into it.

 7              THE COURT:  Okay.

 8              PROSPECTIVE JUROR NO. 2:  Juror No. 2.

 9              My father passed away a couple years ago and

10    my mom took over his store.  He owned a wine shop.  And

11    the last year she owned a store, it got audited.

12              But from what she explained to me, it was

13    nothing more than an accounting error and all she had

14    to do was pay, like, whatever the difference was in the

15    taxes.  She didn't get convicted or anything like that.

16    It was just like an accounting error.

17              THE COURT:  Okay.  Is there anything about

18    your mom's experience that would make it difficult for

19    you to sit and listen to the evidence in this case and

20    be fair to both the Government and the Defendants?

21              PROSPECTIVE JUROR NO. 2:  No, your Honor.

22              THE COURT:  Is there any member of the jury

23    panel who thinks that the Government has gone overboard

24    in its efforts to fight terrorism?

25              PROSPECTIVE JUROR NO. 24:  Hi.  I'm Juror
```

```
 1   No. 24.

 2           And, yes, I do.

 3           THE COURT:  Okay.

 4           PROSPECTIVE JUROR NO. 12:  I'm Juror No. 12.

 5           I travel a lot to China.  I travel a lot in

 6   the United States.  It's part of my business to do.

 7           I'm singled out because of my last name all

 8   the time, even if I travel -- if I travel even in the

 9   first class, it doesn't matter.

10           THE COURT:  Sir, could you just answer the

11   question for me?  "Yes" or "no"?

12           PROSPECTIVE JUROR NO. 12:  Yes.

13           THE COURT:  Thank you.

14           It might be something that we talk about

15   later, but we're not going to talk about it right now.

16   Okay?

17           PROSPECTIVE JUROR NO. 12:  Thank you.

18           THE COURT:  Is there any member of the jury

19   panel who has any experience or formal training in the

20   area of martial arts?

21           Is there any member of the jury panel who you

22   yourself or someone in your home owns a firearm?  And,

23   if so, how many and what kind?

24           PROSPECTIVE JUROR NO. 3:  Juror No. 3.

25           We have a gun in the house, a Beretta, I
```

1    think.

2         THE COURT:  Okay.

3         PROSPECTIVE JUROR NO. 9:  Hi.  No. 9.

4    We have a gun.  I don't know what kind.

5         THE COURT:  Okay.

6         PROSPECTIVE JUROR NO. 8:  Juror No. 8.

7         I have a Remington pump shotgun, a mini 14,

8    .9-millimeter, 40 cal, 380, 23 rifle.  And that's about

9    it.

10        THE COURT:  Okay.

11        PROSPECTIVE JUROR NO. 11:  Juror No. 11.

12        My husband has an HNK, and he has a concealed

13   weapons permit.

14        THE COURT:  Okay.

15        PROSPECTIVE JUROR NO. 21:  Juror No. 21.

16        My husband owns a gun.  I'm not sure what type

17   it is.  And he has a license to hold it.

18        PROSPECTIVE JUROR NO. 20:  Juror No. 20.

19        We own many guns, and I'm actually in the

20   process of getting a concealed weapons license.

21        PROSPECTIVE JUROR NO. 18:  Juror 18.

22        A Glock, M-16 and a shotgun at the house.

23        Thank you.

24        PROSPECTIVE JUROR NO. 30:  Juror No. 30.

25        My husband has several guns and rifles.  I

```
 1   don't know what kinds.  But they're kept in a safe.
 2   And does he have a permit.
 3           PROSPECTIVE JUROR NO. 34:  Juror No. 34.
 4           I don't know if you going to get back to it,
 5   but a previous question.  I'm not sure if I didn't
 6   answer it.
 7           THE COURT:  Which question?
 8           PROSPECTIVE JUROR NO. 34:  About the audit and
 9   the taxes.
10           THE COURT:  Okay.
11           PROSPECTIVE JUROR NO. 34:  I don't know if
12   being on child support count as being audited or as
13   being....
14           THE COURT:  Okay.  So you had a child support
15   issue?
16           PROSPECTIVE JUROR NO. 34:  I'm on child
17   support.
18           THE COURT:  That means you're paying or you're
19   receive something?
20           PROSPECTIVE JUROR NO. 34:  I'm paying.
21           THE COURT:  Okay.  Any problems with that?
22           PROSPECTIVE JUROR NO. 34:  No.
23           THE COURT:  Okay.
24           PROSPECTIVE JUROR NO. 8:  Juror No. 8.
25           I have a concealed weapons license.
```

1          THE COURT:  Okay.  Is there any member of the

2    jury panel who knows any other member of the jury

3    panel?  Anybody you know here who came with you as a

4    member of the panel?

5          In this case, you may hear testimony from

6    witnesses who are of a different religion from your

7    own.

8          Is there any member of the jury panel who has

9    strong feelings one way or the other such that you

10   would not be able to sit and listen to this evidence

11   and be fair to both the Government and the Defendants?

12         PROSPECTIVE JUROR NO. 21:  I'm Juror No. 21.

13         I'm Christian.  I believe that God is the only

14   one that has the power to put justice on all of us.

15         THE COURT:  If you listened to somebody who

16   was of a different religion from your own who was a

17   witness, would you have a problem listening to the

18   testimony of that person and be fair to both the

19   Government and the Defendants?

20         PROSPECTIVE JUROR NO. 21:  Yes.

21         THE COURT:  In this case, you may also hear

22   evidence from certain witnesses who are from the

23   Middle East.

24         Is there any member of the jury panel who has

25   strong feelings one way or the other such that you

```
 1   would not be able to sit and listen to this evidence
 2   and be fair to both the Government and the Defendants?
 3              PROSPECTIVE JUROR NO. 12:  I'm Juror 12.
 4              That refers to the previous question that I
 5   started mentioning my travel and I think it's related
 6   to this, too, because of the last name.  Religion as
 7   well.
 8              THE COURT:  Okay.  Why don't you come up, sir.
 9              (Whereupon, proceedings were had at side-bar
10   outside the presence of the jury which have been sealed
11   per instructions of the Court.)
12              (Whereupon, the following proceedings were had
13   in open court:)
14              THE COURT:  I understand there's a few
15   requests for a facilities break.  So we're going to
16   take a break.
17              I'm going to give you an instruction now that,
18   if you are chosen as a juror in this case, you're going
19   to hear me say each and every time you leave the
20   courtroom, whether it be for just a few minutes, like
21   this recess, whether it's over a lunch break, whether
22   it's overnight or over the weekend.
23              But it's a very important instruction and
24   that's why it's given by the Court each and every time
25   that you do leave the courtroom.
```

```
1          Do not discuss this case either amongst

2    yourselves or with anyone else.  Have no contact

3    whatsoever with anyone associated with the trial.  Do

4    not read, listen or see anything touching on this

5    matter in any way.

6          If anyone should try to talk to you about this

7    case, you should immediately instruct them to stop and

8    report it to my staff.

9          You may leave your questionnaires at your

10   seats.  If you can, remember where you are seated.  If

11   you don't remember, do not worry.  Patricia and our

12   court security officers will be here after the break to

13   help you find your seat.

14         Please be back in the lobby in ten minutes.

15         Now, if you should happen to see any of the

16   persons associated with the trial, including the

17   attorneys, and they do not even seem to acknowledge

18   you, they are following my orders to them to have no

19   contact whatsoever with the jurors, and you are to have

20   no conversation with them whatsoever to avoid even the

21   appearance of impropriety.

22         I am Judge Lenard.  This is the 12th floor.  I

23   know you've been to a couple of different floors here.

24   If you get lost, just look for someone with the blazer

25   that has a badge on it and tell him you're before Judge
```

```
 1    Lenard and they'll send you back here.

 2              Please be back in the lobby in ten minutes.

 3    We'll take a recess for ten.

 4              (Whereupon, Prospective Jury Panel No. I

 5    exited the courtroom at 10:46 a.m. and the following

 6    proceedings were had:)

 7              THE COURT:  All persons in the courtroom are

 8    instructed not to use the rest rooms on this floor.

 9    You must go to another floor.  That will carry over

10    during the pendency of the trial.

11              We'll be in recess for ten minutes.

12              (Thereupon a recess was taken, after which the

13    following proceedings were had:)

14              THE COURT:  We're back on United States

15    of America versus Narseal Batiste, et al., Case

16    No. 06-20373.

17              Counsel, state your appearances, please, for

18    the record.

19              MR. GREGORIE:  Richard Gregorie and Jacqueline

20    Arango on behalf of the United States, your Honor.

21              MS. JHONES:  Ana Jhones on behalf of Narseal

22    Batiste, who's present.

23              MR. LEVIN:  Albert Levin for Patrick Abraham,

24    who's present.

25              MR. CASUSO:  Louie Casuso on behalf of Burson
```

1   Augustin, who is also present.

2          MR. CLARK:  Nathan Clark, present, with

3   Rotschild Augustine, present.

4          MR. HOULIHAN:  Richard Houlihan with Naudimar

5   Herrera.

6          MR. VEREEN:  Rod Vereen on behalf of Stanley

7   Phanor, who's present.

8          THE COURT:  All Defendants are present.

9          You may be seated for a moment.

10          During the break -- first of all, Mr. Levin,

11   in regard to your issue side-bar, Lisa has not yet had

12   an opportunity.  But Patricia did tell me that she is

13   just informing the jurors when she's lining them up

14   that we're using numbers and not names.

15          Quite frankly, I'd rather not bring more

16   attention to it than that.  They know that they're

17   using numbers.  I think it's better not to emphasize it

18   or make it seem like it's anything out of the ordinary.

19          So I'm just going to leave it that way.

20          MR. LEVIN:  Okay.

21          THE COURT:  They know that and it seemed

22   pretty natural.  It didn't seem in court that anybody

23   was bothered by it or concerned about it.

24          So I'm not going to inform anybody of anything

25   different.

1          During the break, one of the court security

2     officers told me that they were approached by Juror

3     No. 23, who said that, prior to my instructions to the

4     jury when they left the courtroom, but earlier, as

5     they -- I guess while they were sitting there, Juror

6     No. 24 turned to him and said, "They're never going to

7     convict these guys."

8          Is that accurate?

9          THE COURT SECURITY OFFICER:  Yes, ma'am.

10         THE COURT:  Are we ready for the jury?

11    Everybody ready?

12         MR. CLARK:  Yes.

13         MR. CASUSO:  Yes, your Honor.

14         THE COURT:  Let's bring them in, please.

15         (Whereupon, Prospective Jury Panel No. I

16    entered the courtroom at 11:07 a.m. and the following

17    proceedings were had:)

18         THE COURT:  You may be seated.

19         Continuing with voir dire, are there any other

20    hands in response to the question that I asked before

21    the break?  I'm going to ask it again in case anybody

22    doesn't remember.

23         In this case, you may also hear evidence from

24    certain witnesses who are from the Middle East.

25         Is there any member of the jury panel who has

1    strong feelings one way or the other such that you

2    would not be able to sit and listen to this evidence

3    and be fair to both the Government and the Defendants?

4              PROSPECTIVE JUROR NO. 25:  Juror No. 25.

5              I lived a situation in New York where I

6    encounter a horrifying moment with a person from

7    Afghanistan, and I don't know if that will create a

8    problem.

9              THE COURT:  Okay.  Why don't you come up,

10   ma'am.

11             (Whereupon, proceedings were had at side-bar

12   outside the presence of the jury which have been sealed

13   per instructions of the Court.)

14             (Whereupon, the following proceedings were had

15   in open court:)

16             THE COURT:  This case may receive media

17   attention.  It is very important that the case be

18   decided solely on the evidence presented in the

19   courtroom and not based on anything that may be said

20   outside the courtroom.  That's true for every trial

21   here in federal court and any trial in our criminal

22   justice system.

23             Accordingly, you will be instructed, if you

24   are chosen as a juror, that you must avoid reading

25   about the case in newspapers or listening to the radio,

1    television reports or viewing anything on the Internet

2    about the case.

3              Is there any member of the jury panel who

4    would not be able to follow my instructions regarding

5    media coverage?

6              PROSPECTIVE JUROR NO. 2:  Yes.

7              THE COURT:  That would be because of your job,

8    ma'am?

9              PROSPECTIVE JUROR NO. 2:  Right.  That's the

10   only thing I'm worried about.  I'm really not sure what

11   CBS's policy is on -- if I have to serve for two

12   months.

13             Normally, I work 2:30 to 11:30 at night.  They

14   might require me to come in after and work my nights.

15   So that's the only thing I'm worried about.

16             THE COURT:  Okay.  If you are selected to sit

17   on this case, will you be able to render a verdict

18   solely on the evidence presented at trial and in the

19   context of the law as I will give it to you in my

20   instructions, disregarding any other ideas, notions or

21   beliefs about the law that you may have encountered in

22   reaching your verdict?

23             We're going to turn now to the questionnaires

24   that Patricia gave to you when you were coming in the

25   courtroom.  We're going to start with Juror No. 1.

1          We all have copies of the questionnaires.  So

2     you don't need to read the questions out loud.  But if

3     you would, state the number of the question.  That

4     makes it easier for Lisa to identify what question

5     you're answering in the record.

6          So if you would start, Juror No. 1, with

7     Question No. 1.

8          PROSPECTIVE JUROR NO. 1:  Juror No. 1.

9          I'm 55 years old.

10         THE COURT:  No. 2?  No.  No.  No.  Question

11    No. 2.  You've got to go down the whole list.  You're

12    not getting off that easy.

13         PROSPECTIVE JUROR NO. 2:  Yes.  I was born in

14    Central America, Honduras.

15         No. 3, my parents is also born there.

16         THE COURT:  In Honduras?

17         PROSPECTIVE JUROR NO. 1:  Yes, ma'am.

18         THE COURT:  No. 4?

19         PROSPECTIVE JUROR NO. 1:  I work for an oil

20    company, Coastal Tug & Barge.

21         THE COURT:  What's your general area of

22    residence, No. 5?

23         PROSPECTIVE JUROR NO. 1:  Miami area.

24         THE COURT:  How long have you lived in the

25    Miami area?

```
 1              PROSPECTIVE JUROR NO. 1:  About 30 years.
 2              THE COURT:  No. 6?
 3              PROSPECTIVE JUROR NO. 1:  No.  I have no one.
 4              THE COURT:  Do you own or rent your -- where
 5    you're living?
 6              PROSPECTIVE JUROR NO. 1:  I'm in the process
 7    of purchasing.
 8              THE COURT:  So are you on a lease option type
 9    of situation or are you looking to purchase a home?
10              PROSPECTIVE JUROR NO. 1:  Well, sort of like a
11    lease-type option thing.  Yeah.
12              THE COURT:  Okay.  Are you living with family
13    or friends?
14              PROSPECTIVE JUROR NO. 1:  No.  That's my place
15    there.
16              THE COURT:  I'm sorry?
17              PROSPECTIVE JUROR NO. 1:  No.  I'm --
18              THE COURT:  Just by yourself?
19              PROSPECTIVE JUROR NO. 1:  Yeah.  Me and my
20    fiancee.
21              THE COURT:  No. 7:  Have you ever lived
22    outside the United States?
23              PROSPECTIVE JUROR NO. 1:  Yes.  When I was a
24    child, I lived in Honduras between the age of 1 to 12.
25              THE COURT:  8:  Your marital status?
```

```
 1              PROSPECTIVE JUROR NO. 1:  I'm single.

 2              THE COURT:  No. 9:  If you live with someone

 3    else, what does that person do for a living, without

 4    stating where they work or the name of the business?

 5              PROSPECTIVE JUROR NO. 1:  Actually, she's laid

 6    off at this time.  So she's not working.

 7              THE COURT:  Any children?

 8              PROSPECTIVE JUROR NO. 1:  Yes.  At of them are

 9    grown.

10              THE COURT:  What type of work do they do?

11    Just the type of work they do.

12              PROSPECTIVE JUROR NO. 1:  One of them works

13    for Sprint.  The other one works with a school board in

14    Michigan.

15              THE COURT:  Okay.

16              PROSPECTIVE JUROR NO. 1:  And the third one

17    actually -- she's unemployed right now.

18              THE COURT:  Any children outside the United

19    States?

20              PROSPECTIVE JUROR NO. 1:  No.  No children

21    outside.  No.

22              THE COURT:  No. 12:  Do you speak, write or

23    understand a language other than English?

24              PROSPECTIVE JUROR NO. 1:  I can speak Spanish,

25    but not write it too good.
```

1           THE COURT:  Okay.  No. 13:  Do you have any

2    hobbies?

3           PROSPECTIVE JUROR NO. 1:  Yes.  I love to play

4    football and watch football games on TV.

5           THE COURT:  14:  What was the last grade that

6    you completed in school?

7           PROSPECTIVE JUROR NO. 1:  12th grade.

8           THE COURT:  15?

9           PROSPECTIVE JUROR NO. 1:  No.

10          THE COURT:  16:  What are your major sources

11   of news?

12          PROSPECTIVE JUROR NO. 1:  Newspaper and, also,

13   television.

14          THE COURT:  No. 17:  Any of your family

15   members or close friends employed in the criminal

16   justice system?

17          PROSPECTIVE JUROR NO. 1:  I have friends and

18   my wife's cousins that work for correctional.

19          THE COURT:  So this is your fiancee's --

20          PROSPECTIVE JUROR NO. 1:  Yeah.

21          THE COURT:  Fiancee's cousin who works for

22   Corrections?

23          PROSPECTIVE JUROR NO. 1:  Corrections, yes.

24          THE COURT:  For the County or --

25          PROSPECTIVE JUROR NO. 1:  For the County.

1          THE COURT:  Have you or a family member or

2     your fiancee ever worked for a prosecutor's office, a

3     public defender's office, a federal or state

4     investigative agency, a federal agency or a medical

5     facility?

6          PROSPECTIVE JUROR NO. 1:  No, not to my

7     knowledge.  No.

8          THE COURT:  Do you have any advanced knowledge

9     or special training in the field of videotaping or

10    digital recording?

11         PROSPECTIVE JUROR NO. 1:  No.

12         THE COURT:  Do you or your fiancee have any

13    education, training or employment experience in

14    security, intelligence, law, psychology or psychiatry,

15    social work, corrections, religion, media or

16    communications?

17         PROSPECTIVE JUROR NO. 1:  I would say

18    religion.  She used to teach in Sunday School.

19         THE COURT:  Okay.  Are you a vendor or

20    contractor for the United States Government?

21         PROSPECTIVE JUROR NO. 1:  No.

22         THE COURT:  Or is your employer a vendor or

23    contractor for the United States Government?

24         PROSPECTIVE JUROR NO. 1:  Indirectly.  We

25    sometimes service Navy boats when they come in.  So I

```
 1   would say yes.
 2            THE COURT:  Have you or your fiancee or family
 3   members ever applied or sought employment in law
 4   enforcement?
 5            PROSPECTIVE JUROR NO. 1:  No.
 6            THE COURT:  Have you ever been a victim of a
 7   crime?
 8            PROSPECTIVE JUROR NO. 1:  Yes.
 9            THE COURT:  What crime?
10            PROSPECTIVE JUROR NO. 1:  Years ago, I had
11   someone break into my house and stole everything I had.
12   I reported it to the cops, but they was never caught.
13            THE COURT:  Are you satisfied with the way you
14   were treated by law enforcement?
15            PROSPECTIVE JUROR NO. 1:  I suppose they did
16   the best they could.
17            THE COURT:  Okay.  Have you ever been a
18   witness to a crime?
19            PROSPECTIVE JUROR NO. 1:  No.
20            THE COURT:  Have you ever testified in a trial
21   or deposition?
22            PROSPECTIVE JUROR NO. 1:  No.
23            THE COURT:  Have you ever been accused of,
24   charged with or convicted of any crime or been the
25   subject of a criminal investigation other than a minor
```

1    traffic violation?

2              PROSPECTIVE JUROR NO. 1:  No.

3              THE COURT:  Has a family member or close

4    friend ever been accused of, charged with or convicted

5    of any crime or been the subject of a criminal

6    investigation other than a minor traffic violation?

7              PROSPECTIVE JUROR NO. 1:  Yes.  I had a

8    cousin.  He was charged -- he was under investigation

9    for possibly -- they believe he had committed a murder,

10   but it was never proven.

11             THE COURT:  Do you think he was treated fairly

12   by the criminal justice system?

13             PROSPECTIVE JUROR NO. 1:  I guess so.  Yes.

14             THE COURT:  Is there anything about your

15   cousin's experience that would make it difficult for

16   you to sit and listen to the evidence in this case and

17   be fair to both the Government and the Defendants?

18             PROSPECTIVE JUROR NO. 1:  No.

19             THE COURT:  Do you belong to a church,

20   synagogue or other religious organization and follow

21   its teachings?

22             PROSPECTIVE JUROR NO. 1:  I attend church.  I

23   would say Methodist.

24             THE COURT:  Would any of your religious,

25   philosophical or moral beliefs preclude you from

1  sitting in judgment of another person or deliberating

2  with others?

3            PROSPECTIVE JUROR NO. 1:  No.

4            THE COURT:  Have you ever sat -- served on a

5  trial jury?

6            PROSPECTIVE JUROR NO. 1:  No.

7            THE COURT:  Ever served on a grand jury?

8            PROSPECTIVE JUROR NO. 1:  No.

9            THE COURT:  Do you have any loss of hearing,

10  loss of sight or any physical or emotional impairment

11  that would make it difficult for you to participate as

12  a juror?

13            PROSPECTIVE JUROR NO. 1:  Well, I wear

14  glasses, but I don't think that would keep me from

15  participating.

16            THE COURT:  Okay.  Do you have any problems

17  understanding or reading the English language which

18  would make jury duty difficult?

19            PROSPECTIVE JUROR NO. 1:  No.

20            THE COURT:  Are you taking any medication or

21  other substance that would have an impact on your jury

22  service?

23            PROSPECTIVE JUROR NO. 1:  No.

24            THE COURT:  Do you own or regularly use a

25  computer and/or have access the Internet?

```
 1              PROSPECTIVE JUROR NO. 1:  I use -- yeah.  I

 2    own a computer.  Occasionally I access the Internet.

 3              THE COURT:  Okay.  Thank you, sir.

 4              Juror No. 2.

 5              PROSPECTIVE JUROR NO. 2:  Juror No. 2.

 6              No. 1, 34 years old.

 7              No. 2, Somerset, New Jersey.

 8              No. 3, my father was born in Washington state.

 9    My mother was born in New Jersey.

10              No. 4, I work for CBS 4 news as a

11    post-production video editor.

12              No. 5, I live in Kendall.

13              No. 6, I own.

14              No. 7 --

15              THE COURT:  Are you living with anyone?

16              PROSPECTIVE JUROR NO. 2:  No.

17              THE COURT:  Okay.  No. 7?

18              PROSPECTIVE JUROR NO. 2:  No. 7, no.

19              No. 8, single.

20              No. 9, I live alone.

21              No. 10, I have no children.

22              No. 11, I have no children.

23              No. 12, no.  I don't speak any other

24    languages.

25              No. 13, I watch a lot of television and like
```

1    scrapbooking, too, and taking pictures.

2            No. 14, I graduated from high school and

3    attended three years of college.

4            No. 15, I've never attended law school.

5            No. 16 --

6            THE COURT:  How about a paralegal institute?

7            PROSPECTIVE JUROR NO. 2:  Oh, no.  Sorry.

8            No. 16, my major source of news is work and

9    television news and the radio.

10           17, I don't have any family members or friends

11   employed in the criminal justice system.  I do have a

12   friend in New Jersey who's a police officer, but I

13   haven't seen him in several years.

14           No. 18, no to all of them.

15           No. 19, yes.  I have very specialized training

16   in both -- I'm sorry -- in beta cams, high 8 cameras,

17   ENG, which are electronic news gathering cameras,

18   basically anything -- any videotaping equipment,

19   because we use it at work all the time.

20           I also used to be robotic camera operator in

21   the station.  Like I said, I'm the only post-production

22   editor at the station.  We used to have three.  They

23   got laid off.

24           THE COURT:  So you're actually working with

25   the videotape -- what's the terminology?  What's the

1    nomenclature now?

2         PROSPECTIVE JUROR NO. 2:  It's still videotape

3    because we're not on a --

4         THE COURT:  So you're working with it in terms

5    of editing it to prepare it to go on the air?

6         PROSPECTIVE JUROR NO. 2:  Exactly.

7         What happens is we get our -- we get all our

8    video from the photographers that go out in the field

9    or from CBS Newspath, which is our national link.

10   They'll feed it into to us over the satellites.

11        I'll collect that videotape and I'll treat it

12   according to the producer's script, like if they want

13   special music on it, if they want to cut it a certain

14   way, based on the story.

15        Like with the Miracle on the Hudson story that

16   we had, we had like big -- what we call special opens

17   for it.  Like any kind of big story, stuff like that,

18   that's what I do.

19        So I work with a lot of camera equipment and a

20   lot of video -- video editing equipment.  I work on a

21   Mac, a PC.  I have to get stuff off the Internet.  I

22   build graphics.  I do all kinds of stuff like that.

23        THE COURT:  Okay.

24        PROSPECTIVE JUROR NO. 2:  No. 20, no -- well,

25   media and communications for me, yes.  That's my

```
 1   specialty.
 2          21, no.
 3          And I don't believe CBS is a contractor for
 4   the US Government.
 5          I've never -- no one in my family has applied
 6   for a law enforcement position.
 7          THE COURT:  That's 22?
 8          PROSPECTIVE JUROR NO. 2:  Yes.
 9          THE COURT:  23?
10          PROSPECTIVE JUROR NO. 2:  Yes.  I've been a
11   victim of crime several times.
12          I had my car broken into.  I've had my
13   apartment attempted to be broken into.  I've had my
14   license plates stolen.  When I was in high school,
15   somebody broke into our house and stole my dad's keys
16   and stole his car.
17          THE COURT:  Were all these instances reported?
18          PROSPECTIVE JUROR NO. 2:  Yes.
19          THE COURT:  Anyone arrested?
20          PROSPECTIVE JUROR NO. 2:  No -- I'm sorry.
21   The person that stole my father's car was, because he
22   smashed the car into a neighbor's house.
23          THE COURT:  Do you know what happened with
24   that case?
25          PROSPECTIVE JUROR NO. 2:  Yeah.  Actually, the
```

1    guy that owned the house -- I don't know what happened

2    to the guy that stole the car.

3           But the guy that owned the house sued my dad

4    because it was his car that hit his house.  But that

5    was thrown out.  The judge threw out the case.

6           THE COURT:  Are you generally satisfied or

7    dissatisfied with the way you were treated by the -- by

8    law enforcement and the criminal justice system?

9           PROSPECTIVE JUROR NO. 2:  Generally satisfied.

10          THE COURT:  Okay.

11          PROSPECTIVE JUROR NO. 2:  24, I've never been

12   a witness to a crime.

13          25, I've never testified in a trial or

14   deposition.

15          26, I've never been accused of or charged or

16   convicted of any or been the subject of a criminal

17   investigation.

18          My brother-in-law was convicted on a drug

19   violation and failure to pay child support to my sister

20   for her kids.

21          THE COURT:  When was that?

22          PROSPECTIVE JUROR NO. 2:  God, they got

23   divorced three years ago.  I know he was arrested two

24   years ago.  And I know that he just -- on the drug

25   violation, I don't know what happened with that.  I

1    know he was incarcerated, but I don't know what the

2    outcome of the case was.  But he just got arrested, I

3    believe, two months ago on the failure to pay child

4    support.

5            THE COURT:  Do you think he was treated fairly

6    by the criminal justice system?

7            PROSPECTIVE JUROR NO. 2:  It happened in

8    New Jersey.  So I would assume.

9            THE COURT:  Is there anything about your

10   brother-in-law's experience that would make it

11   difficult for you to sit and listen to the evidence in

12   this case and be fair to both the Government and the

13   Defendants?

14           PROSPECTIVE JUROR NO. 2:  No.

15           THE COURT:  28?

16           PROSPECTIVE JUROR NO. 2:  I currently do not

17   belong to a church.

18           29, no.

19           No. 30, I've never served on a trial jury.

20           31, I've never served on a grand jury.

21           32, I don't have any physical impairment that

22   would make it difficult for me to participate.

23           33, I don't have any problems understanding or

24   reading the English language.

25           34, I'm not currently taking any medication.

1          And 35, I own -- at work, I use three

2    computers and I'm accessing the Internet every single

3    day.  And I personally own two computers, a Mac and a

4    PC.

5          THE COURT:  Okay.  Thank you, ma'am.

6          Juror No. 3.

7          PROSPECTIVE JUROR NO. 3:  No. 1, 43.

8          No. 2, Puerto Rico.

9          No. 3, Cuba.

10         No. 4, I'm the secretary to the president of a

11   pharmaceutical company.

12         No. 5, I live in the Falls area.

13         THE COURT:  How long?

14         PROSPECTIVE JUROR NO. 3:  Nine years in that

15   area.

16         THE COURT:  No. 6?

17         PROSPECTIVE JUROR NO. 3:  Own and live with my

18   family.

19         I've lived -- yes.  When I was little, in

20   Puerto Rico.

21         THE COURT:  That's No. 7?

22         PROSPECTIVE JUROR NO. 3:  That's No. 7.  Yes.

23         I'm married.

24         THE COURT:  How long did you live in Puerto

25   Rico?

```
 1              PROSPECTIVE JUROR NO. 3:  Six years.
 2              THE COURT:  No. 8, you're married?
 3              PROSPECTIVE JUROR NO. 3:  Yes.
 4              THE COURT:  No. 9?
 5              PROSPECTIVE JUROR NO. 3:  No. 9, my husband's
 6      operations manager for a pharmaceutical company.
 7              No. 10, 10 and 14.
 8              No. 11, no.
 9              No. 12, Spanish.
10              No. 13, I read a lot.
11              No. 14, high school and then I have an AA.
12              15, no.
13              16, TV and radio.
14              I have friends that are police officers and
15      attorneys.
16              THE COURT:  That's 17?
17              PROSPECTIVE JUROR NO. 3:  That's 17.  I'm
18      sorry.
19              THE COURT:  What kind of law do the friends
20      who are attorneys practice?
21              PROSPECTIVE JUROR NO. 3:  One of them is a
22      litigator and --
23              THE COURT:  Criminal or civil?  Do you know?
24              PROSPECTIVE JUROR NO. 3:  I don't know.
25              And then I have corporate attorneys.
```

```
 1              THE COURT:  18?

 2              PROSPECTIVE JUROR NO. 3:  18, father-in-law

 3    works for Customs.

 4              THE COURT:  The fact that your father-in-law

 5    is employed by the US Government, would that affect

 6    your ability to sit and listen to the evidence in this

 7    case and be fair to both the Government and the

 8    Defendants?

 9              PROSPECTIVE JUROR NO. 3:  Repeat the question,

10    please.

11              THE COURT:  The fact that your father-in-law

12    works for US Customs -- what does he do for them?

13              PROSPECTIVE JUROR NO. 3:  He's a supervisor.

14              THE COURT:  Of what?

15              PROSPECTIVE JUROR NO. 3:  (No response.)

16              THE COURT:  Do you know?

17              PROSPECTIVE JUROR NO. 3:  No, I don't.

18              THE COURT:  That's okay.

19              The fact that he's a supervisor at US

20    Customs --

21              PROSPECTIVE JUROR NO. 3:  No.  It would not

22    affect.

23              THE COURT:  Would that affect your ability to

24    be a fair and impartial juror in this case?

25              PROSPECTIVE JUROR NO. 3:  No.
```

```
 1              THE COURT:  Okay.  19.
 2              PROSPECTIVE JUROR NO. 3:  19, no.
 3              20, no.
 4              21, no.
 5              22, family member.  Yes.  My father-in-law,
 6   law enforcement.  I don't know if Customs would fall
 7   under law enforcement.
 8              23, yes.  I was a victim of a hit-and-run, a
 9   car accident, in 1986.
10              THE COURT:  Was it reported?
11              PROSPECTIVE JUROR NO. 3:  Yes.
12              THE COURT:  Anyone arrested?
13              PROSPECTIVE JUROR NO. 3:  No.
14              THE COURT:  Are you generally satisfied or
15   dissatisfied with the way you were treated by law
16   enforcement and the criminal justice system?
17              PROSPECTIVE JUROR NO. 3:  In that particular
18   case, I was dissatisfied with the way the case was
19   handled.
20              THE COURT:  Would you be able to put aside
21   whatever feelings of dissatisfaction that you have and
22   sit and listen to the evidence in this case and be fair
23   to both the Government and the Defendants?
24              PROSPECTIVE JUROR NO. 3:  Yes.
25              THE COURT:  Going back to your father-in-law,
```

1    do you ever discuss his work with him?

2          PROSPECTIVE JUROR NO. 3:  I have at times,

3    random --

4          THE COURT:  Would that affect your ability to

5    be a fair and impartial juror?

6          PROSPECTIVE JUROR NO. 3:  I don't think so.

7          THE COURT:  Think so or know so?

8          PROSPECTIVE JUROR NO. 3:  It's hard to say.

9    Think so.

10         THE COURT:  What have you discussed with him?

11         PROSPECTIVE JUROR NO. 3:  Just the events of

12   9/11 and so forth.  We've discussed terrorism, purely

13   opinion-based.  My husband was in New York during 9/11.

14   So I have a little bit of a strong opinion when it

15   comes to that.

16         24, no.

17         25, I've been deposed during my car accident,

18   1986.

19         No. 26, no.

20         No. 27, my husband was charged with a DUI in

21   October.

22         THE COURT:  What happened with that case?

23         PROSPECTIVE JUROR NO. 3:  It's still going on.

24         THE COURT:  It's still pending?

25         PROSPECTIVE JUROR NO. 3:  Yes, it is.

```
1              THE COURT:  Do you think he's being treated
2    fairly by the criminal justice system?
3              PROSPECTIVE JUROR NO. 3:  No.  I don't think
4    so.
5              THE COURT:  Would you be able to put aside
6    whatever feelings of dissatisfaction that you have
7    regarding your husband and sit and listen to the
8    evidence in this case and be fair to both the
9    Government and the Defendants?
10             PROSPECTIVE JUROR NO. 3:  Yes.
11             THE COURT:  Do you think he's well represented
12   by his lawyer?
13             PROSPECTIVE JUROR NO. 3:  Yes.
14             THE COURT:  If there were police officers or
15   law enforcement agents who have to testify in this
16   case, would you be able to sit and listen to their
17   testimony and fairly determine whether you think that
18   they are being truthful or untruthful or would your
19   husband's experience with law enforcement officers
20   color that ability?
21             PROSPECTIVE JUROR NO. 3:  Yes.  It would color
22   it.  In a police officer's case, yes, it would color
23   it.
24             28, yes.  I belong to a Catholic church.
25             29, my only feeling on that is I have a
```

72

```
1    problem with people who use religion to justify a

2    crime.

3              30, no.

4              31, no.

5              32, no.

6              33, no.

7              34, no.

8              35, yes.  I own a computer and I do access the

9    Internet.

10             THE COURT:  Thank you, ma'am.

11             Juror No. 4.

12             PROSPECTIVE JUROR NO. 4:  I'm 64.

13             Cuban born.

14             No. 3, my parents, Cuban born.

15             I used to do security work.

16             I live in Little Havana.

17             THE COURT:  How long have you lived in Little

18   Havana?

19             PROSPECTIVE JUROR NO. 4:  Right now, for

20   about -- over ten years.

21             THE COURT:  Do you own your home or do you

22   rent it?

23             PROSPECTIVE JUROR NO. 4:  I rent.

24             THE COURT:  Okay.  Are you living with anyone?

25             PROSPECTIVE JUROR NO. 4:  No.  Myself.
```

```
 1              I never been outside the United States.

 2              THE COURT:  That's No. 7.

 3              No. 8?

 4              PROSPECTIVE JUROR NO. 4:  Divorced.

 5              THE COURT:  No. 9?

 6              PROSPECTIVE JUROR NO. 4:  No.

 7              THE COURT:  No. 10?

 8              PROSPECTIVE JUROR NO. 4:  No.

 9              THE COURT:  No. 11?

10              PROSPECTIVE JUROR NO. 4:  No.

11              THE COURT:  12?

12              PROSPECTIVE JUROR NO. 4:  I speak Spanish.

13              THE COURT:  Do you read Spanish, also?

14              PROSPECTIVE JUROR NO. 4:  Yeah.

15              THE COURT:  No. 13?

16              PROSPECTIVE JUROR NO. 4:  Well, hobbies,

17     usually baseball, you know.

18              THE COURT:  Okay.  No. 14?

19              PROSPECTIVE JUROR NO. 4:  I went through

20     eighth grade.

21              THE COURT:  15?

22              PROSPECTIVE JUROR NO. 4:  No.

23              THE COURT:  16?

24              PROSPECTIVE JUROR NO. 4:  Television.

25              THE COURT:  Television?
```

```
 1              PROSPECTIVE JUROR NO. 4:  Yeah.

 2              THE COURT:  17?

 3              PROSPECTIVE JUROR NO. 4:  No.

 4              THE COURT:  18?

 5              PROSPECTIVE JUROR NO. 4:  No.

 6              THE COURT:  19?

 7              PROSPECTIVE JUROR NO. 4:  No.

 8              THE COURT:  20?

 9              PROSPECTIVE JUROR NO. 4:  I used to work as a

10      security myself.

11              THE COURT:  When did you work security?

12              PROSPECTIVE JUROR NO. 4:  Last time, I -- from

13      1987 through '92.

14              THE COURT:  Okay.  21?

15              PROSPECTIVE JUROR NO. 4:  No.

16              THE COURT:  What kind of security work did you

17      do between '87 and '92?

18              PROSPECTIVE JUROR NO. 4:  Mall security.

19              THE COURT:  Court security?

20              PROSPECTIVE JUROR NO. 4:  Mall security.  I

21      used to work in the mall.

22              THE COURT:  Oh.  Mall.

23              PROSPECTIVE JUROR NO. 4:  Yeah.  My English

24      not too good.

25              THE COURT:  Can you use the microphone, sir?
```

```
 1   I'm having --
 2            PROSPECTIVE JUROR NO. 4:  Okay.
 3            THE COURT:  You worked in the mall security?
 4            PROSPECTIVE JUROR NO. 4:  Uh-huh.
 5            THE COURT:  Inside or outside?
 6            PROSPECTIVE JUROR NO. 4:  Inside.
 7            THE COURT:  21?
 8            PROSPECTIVE JUROR NO. 4:  No.
 9            THE COURT:  22?
10            PROSPECTIVE JUROR NO. 4:  No.
11            THE COURT:  23?
12            PROSPECTIVE JUROR NO. 4:  No.
13            THE COURT:  24?
14            PROSPECTIVE JUROR NO. 4:  No -- I don't
15   understand that.  Yes.
16            THE COURT:  You witnessed a crime?
17            PROSPECTIVE JUROR NO. 4:  No.  No.
18            THE COURT:  Okay.  25:  Have you ever
19   testified in a trial or deposition?
20            PROSPECTIVE JUROR NO. 4:  No.
21            THE COURT:  26:  Have you ever been accused of
22   or charged with or convicted of any crime or been the
23   subject of a criminal investigation other than a minor
24   traffic violation?
25            PROSPECTIVE JUROR NO. 4:  No.
```

```
 1            THE COURT:  27:  Any family member or close
 2   friend been accused of, charged with or convicted of
 3   any crime or been the subject of a criminal
 4   investigation other than a minor traffic violation?
 5            PROSPECTIVE JUROR NO. 4:  No.
 6            THE COURT:  28?
 7            PROSPECTIVE JUROR NO. 4:  Well, I'm Catholic,
 8   you know.
 9            THE COURT:  Okay.  29?
10            PROSPECTIVE JUROR NO. 4:  No.
11            THE COURT:  30:  Have you ever served on a
12   trial jury?
13            PROSPECTIVE JUROR NO. 4:  No.
14            THE COURT:  31?
15            PROSPECTIVE JUROR NO. 4:  No.
16            THE COURT:  32:  Do you have any loss of
17   hearing, sight or any physical or emotional impairment?
18            PROSPECTIVE JUROR NO. 4:  No.
19            THE COURT:  33:  Any problems understanding or
20   reading English?
21            PROSPECTIVE JUROR NO. 4:  Poquito.  A little
22   bit, you know.
23            THE COURT:  I'm sorry?
24            PROSPECTIVE JUROR NO. 4:  Not too much
25   English.  I understand little, but --
```

1          THE COURT:  Have you understood everything

2     that I've said today?

3          PROSPECTIVE JUROR NO. 4:  So far.

4          THE COURT:  Okay.  How about reading English?

5     You read English.  Right?

6          PROSPECTIVE JUROR NO. 4:  A little bit, too,

7     read.

8          THE COURT:  34?

9          PROSPECTIVE JUROR NO. 4:  No.

10          THE COURT:  35?

11          PROSPECTIVE JUROR NO. 4:  No.

12          THE COURT:  Okay, sir.  Thank you.

13          Juror No. 5.

14          PROSPECTIVE JUROR NO. 5:  No. 1, 43 years old.

15          I born in Guatemala City.

16          My parents born also in Guatemala City.

17          I'm a medical biller.

18          I live in West Kendall for 10 years already.

19          I own.

20          I live with my partner.

21          THE COURT:  No. 7?

22          PROSPECTIVE JUROR NO. 5:  No. 7, yes.  I lived

23     in Guatemala from -- since I was born to -- through

24     19 years old.

25          I am divorced.

1              No. 9, she's a nurse.

2              THE COURT:  Your mom's a nurse?

3              PROSPECTIVE JUROR NO. 5:  No.  No.  The No. 9,

4     the person who I live, my partner, is a nurse.

5              THE COURT:  Okay.

6              PROSPECTIVE JUROR NO. 5:  No children.

7              Then No. 11 is no.

8              No. 12, I speak and write and read Spanish.

9              No. 13, yes.  I like to read a lot.

10             No. 14, I have a specialized degree in health

11    service administration.

12             THE COURT:  Is that a college degree or a

13    trade degree?

14             PROSPECTIVE JUROR NO. 5:  It's a technical

15    degree.

16             THE COURT:  Technical school degree?

17             PROSPECTIVE JUROR NO. 5:  Yes.

18             THE COURT:  No. 15?

19             PROSPECTIVE JUROR NO. 5:  No.

20             THE COURT:  16?

21             PROSPECTIVE JUROR NO. 5:  Internet,

22    television, radio.

23             THE COURT:  17?

24             PROSPECTIVE JUROR NO. 5:  No.

25             THE COURT:  18?

```
 1              PROSPECTIVE JUROR NO. 5:  No.

 2              THE COURT:  19?

 3              PROSPECTIVE JUROR NO. 5:  No.

 4              THE COURT:  20?

 5              PROSPECTIVE JUROR NO. 5:  No.

 6              THE COURT:  21?

 7              PROSPECTIVE JUROR NO. 5:  No.

 8              THE COURT:  22?

 9              PROSPECTIVE JUROR NO. 5:  No.

10              THE COURT:  23?

11              PROSPECTIVE JUROR NO. 5:  No.

12              THE COURT:  Let me go back to 21 with you.

13              You said that you're a medical biller.  Are

14   you doing any billing of Medicare?

15              PROSPECTIVE JUROR NO. 5:  Yes.

16              THE COURT:  Is that what you do?

17              PROSPECTIVE JUROR NO. 5:  Yes.

18              THE COURT:  Processing Medicare claims?

19              PROSPECTIVE JUROR NO. 5:  Well, any kind of

20   claim, any medical claim, including Medicare or --

21              THE COURT:  Or Medicaid?

22              PROSPECTIVE JUROR NO. 5:  Or commercials.

23   Yes.

24              23, no.

25              24, no.
```

```
 1              25, no.

 2              26, no.

 3              27, yes.

 4              THE COURT:  Who would that be?

 5              PROSPECTIVE JUROR NO. 5:  It would be my

 6    sister, who was charged on grand theft.

 7              THE COURT:  When was that?

 8              PROSPECTIVE JUROR NO. 5:  About five months

 9    ago.

10              THE COURT:  Here in Miami?

11              PROSPECTIVE JUROR NO. 5:  Yes.

12              THE COURT:  And is that charge still pending?

13              PROSPECTIVE JUROR NO. 5:  Yes.

14              THE COURT:  When is it set for trial?  Do you

15    know?

16              PROSPECTIVE JUROR NO. 5:  I think it's March.

17    I don't know exactly the date.

18              THE COURT:  Okay.  Do you think your sister's

19    being treated fairly by the criminal justice system?

20              PROSPECTIVE JUROR NO. 5:  Yes.

21              THE COURT:  Do you think she's well

22    represented by her lawyer?

23              PROSPECTIVE JUROR NO. 5:  Yes, she is.

24              THE COURT:  Is there anything about your

25    sister's experience that would make it difficult for
```

```
 1   you to sit and listen to the evidence in this case and
 2   be fair to both the Government and the Defendants?
 3             PROSPECTIVE JUROR NO. 5:  No.
 4             THE COURT:  Have you attended any of her
 5   hearings?
 6             PROSPECTIVE JUROR NO. 5:  The first one.  Yes.
 7             THE COURT:  No. 28?
 8             PROSPECTIVE JUROR NO. 5:  No.
 9             30, no.
10             THE COURT:  How about 29?
11             PROSPECTIVE JUROR NO. 5:  I'm sorry.
12             29, no.
13             30, no.
14             31, no.
15             32, no.
16             33, no.
17             34, no.
18             And 35, yes.  I do own a computer.
19             THE COURT:  Now, in regard to your sister and
20   the grand theft charge, do you know what it's about,
21   what she's accused of?
22             PROSPECTIVE JUROR NO. 5:  I think it was an
23   incident on a department store.
24             THE COURT:  Okay.  Thank you, ma'am.
25             Juror No. 6.
```

```
 1              PROSPECTIVE JUROR NO. 6:  No. 1, I'm 50.

 2         No. 2, I was born in Albany, Georgia.

 3         No. 3, my father was born here in Miami; my

 4    mother, North Carolina.

 5         No. 4, I have two jobs.  I worked for a

 6    courier.  I deliver documents for courthouses and

 7    important documents all throughout South Florida.

 8         I work at a movie theater, doing maintenance.

 9         5, I live in Miami-Dade.

10         6, I live with my mother.  She owns the house.

11         No. 7, I was in the military.  I was in

12    San Diego.  I've been halfway around the world.

13         No. 8, single.

14         No. 9, she's retired.

15         No. 10, no children.

16         No. 11, no.

17         12, I speak English only.

18         13, I watch a lot of football and do crossword

19    puzzles.

20         14, 12th grade.

21         15, I've worked at a law firm just in the file

22    room, just delivering stuff to the lawyers and things.

23         THE COURT:  Okay.

24         PROSPECTIVE JUROR NO. 6:  16, I read the

25    newspaper every day and watch a lot of news on TV and
```

1    sometimes the Internet.

2              17, no.

3              18, no.

4              19, no.

5              20, no.

6              21, no.

7              22, no.

8              23, I've had my car broken into, and my

9    mother's house has been robbed.

10             THE COURT:  Were those instances reported?

11             PROSPECTIVE JUROR NO. 6:  Yes, they were.

12             THE COURT:  Anyone arrested?

13             PROSPECTIVE JUROR NO. 6:  No.

14             THE COURT:  Are you generally satisfied or

15   dissatisfied with the way you were treated by the law

16   enforcement?

17             PROSPECTIVE JUROR NO. 6:  I was satisfied.

18             THE COURT:  24?

19             PROSPECTIVE JUROR NO. 6:  24, no.

20             25, no.

21             26, no.

22             27, no.

23             28, no.

24             29, no.

25             30, no.

```
 1              31, no.
 2              32, I just wear glasses to read.  But, no,
 3     that won't affect me.
 4              33, no.
 5              34, no.
 6              And 35, I go on the Internet sometimes.
 7              THE COURT:  Is your mom working?
 8              PROSPECTIVE JUROR NO. 6:  She's retired.
 9              THE COURT:  What did she do before she
10     retired?
11              PROSPECTIVE JUROR NO. 6:  She refinished
12     antique furniture.
13              THE COURT:  Thank you, sir.
14              Juror No. 7.
15              PROSPECTIVE JUROR NO. 7:  No. 1, 79.
16              No. 2, Cross, South Carolina.
17              No. 3, Cross, South Carolina.
18              No. 4, retired.
19              No. --
20              THE COURT:  What did you do before you
21     retired, sir?
22              PROSPECTIVE JUROR NO. 7:  Worked at a
23     hospital.
24              THE COURT:  What kind of work did you do
25     there?
```

```
 1              PROSPECTIVE JUROR NO. 7:  Janitor.

 2              THE COURT:  Okay.  No. 5?

 3              PROSPECTIVE JUROR NO. 7:  No. 5, Miami.  I

 4     live in Miami.

 5              THE COURT:  How long?

 6              PROSPECTIVE JUROR NO. 7:  50 years.

 7         No. 6 --

 8              THE COURT:  Do you own or rent?

 9              PROSPECTIVE JUROR NO. 7:  Own.

10              THE COURT:  Are you living with anyone?

11              PROSPECTIVE JUROR NO. 7:  I'm living by

12     myself.

13              THE COURT:  Okay.  No. 7?

14              PROSPECTIVE JUROR NO. 7:  No. 7, no.

15              THE COURT:  No. 8?

16              PROSPECTIVE JUROR NO. 7:  Divorced.

17              THE COURT:  No. 9?  You don't live with

18     anyone.  Right?

19              PROSPECTIVE JUROR NO. 7:  No.

20              THE COURT:  No. 10:  Any children?

21              PROSPECTIVE JUROR NO. 7:  Grown.

22              THE WITNESS:  They all grown.

23              THE COURT:  How old are they, and what are

24     they doing?  Generally, what do they do?

25              PROSPECTIVE JUROR NO. 7:  Well, some -- I
```

1   really don't know what all of them do because they live
2   so far --
3           THE COURT:  How many do you have?
4           PROSPECTIVE JUROR NO. 7:  Six.
5           THE COURT:  Okay.  And the ones that you can
6   remember:  What are they doing?
7           PROSPECTIVE JUROR NO. 7:  One work at a
8   hospital.  Some of them just do minor work around.
9           THE COURT:  Okay.  No. 11:  Any children
10  outside the United States?
11          PROSPECTIVE JUROR NO. 7:  No.
12          THE COURT:  12?
13          PROSPECTIVE JUROR NO. 7:  No.
14          THE COURT:  13?
15          PROSPECTIVE JUROR NO. 7:  No.
16          THE COURT:  You don't do anything in your
17  spare time?
18          PROSPECTIVE JUROR NO. 7:  (No response.)
19          THE COURT:  What do you do during your day?
20          PROSPECTIVE JUROR NO. 7:  Oh, I'm sorry.
21          I just do a little minor things, repair
22  bicycles and....
23          THE COURT:  Okay.  No. 14?
24          PROSPECTIVE JUROR NO. 7:  The sixth grade.
25          THE COURT:  No. 15?

```
 1                 PROSPECTIVE JUROR NO. 7:  No.

 2                 THE COURT:  16?

 3                 PROSPECTIVE JUROR NO. 7:  TV.  Watch a lot of

 4      TV.

 5                 THE COURT:  Okay.  17?

 6                 PROSPECTIVE JUROR NO. 7:  No.

 7                 THE COURT:  18?

 8                 PROSPECTIVE JUROR NO. 7:  No.

 9                 THE COURT:  19?

10                 PROSPECTIVE JUROR NO. 7:  No.

11                 THE COURT:  20?

12                 PROSPECTIVE JUROR NO. 7:  No.

13                 THE COURT:  21?

14                 PROSPECTIVE JUROR NO. 7:  No.

15                 THE COURT:  22?

16                 PROSPECTIVE JUROR NO. 7:  No.

17                 THE COURT:  23?  Ever been a victim of a

18      crime?

19                 PROSPECTIVE JUROR NO. 7:  No.  No.

20                 THE COURT:  24:  Ever witnessed a crime?

21                 PROSPECTIVE JUROR NO. 7:  No.

22                 THE COURT:  25?

23                 PROSPECTIVE JUROR NO. 7:  No.

24                 THE COURT:  26?

25                 PROSPECTIVE JUROR NO. 7:  No.  No.
```

```
1              THE COURT:  27?

2              PROSPECTIVE JUROR NO. 7:  No.

3              THE COURT:  28?

4              PROSPECTIVE JUROR NO. 7:  Yes.

5              THE COURT:  29?

6              PROSPECTIVE JUROR NO. 7:  No.

7              THE COURT:  30?

8              PROSPECTIVE JUROR NO. 7:  No.

9              THE COURT:  31?

10             PROSPECTIVE JUROR NO. 7:  No.

11             THE COURT:  32?

12             PROSPECTIVE JUROR NO. 7:  No.

13             THE COURT:  33?

14             PROSPECTIVE JUROR NO. 7:  No.

15             THE COURT:  34?

16             PROSPECTIVE JUROR NO. 7:  No.

17             THE COURT:  35?

18             PROSPECTIVE JUROR NO. 7:  No.

19             THE COURT:  Thank you, sir.

20             We're going to come down to Juror No. 8.

21             PROSPECTIVE JUROR NO. 8:  No. 1, 16.

22             No. 2, Philadelphia, Pennsylvania.

23             No. 3, Pennsylvania.

24             No. 4, nuclear plant electrician,

25    communications supervisor.
```

```
 1              No. 5, I live in Homestead.  I own my
 2   residence.
 3              7 is no.
 4              8 is married.
 5              9, my wife.  She's a dialysis technician.
 6              I have six children:  38, 36, 35, 31, 30, 23.
 7              THE COURT:  Are any of them working?
 8              PROSPECTIVE JUROR NO. 8:  Yes, your Honor.
 9   Gladly, all of them.
10              THE COURT:  Okay.  What are they doing?
11              PROSPECTIVE JUROR NO. 8:  My oldest son is a
12   supervisor, AmeriCable International.  I have --
13              THE COURT REPORTER:  I'm sorry.
14   Supervisor....
15              PROSPECTIVE JUROR NO. 8:  He's a supervisor,
16   AmeriCable International Company here in Dade County --
17   Miami-Dade.
18              THE COURT:  Just tell me what type of work
19   they do, not --
20              PROSPECTIVE JUROR NO. 8:  Schoolteacher.  I
21   have UPS supervisor, UPS.  He's --
22              THE COURT:  Okay.
23              PROSPECTIVE JUROR NO. 8:  And I have -- two of
24   my children have -- work in the medical community as
25   far as healthcare.
```

1           And I have -- my youngest daughter is the head

2   of the Miami-Dade library system, one of the libraries.

3           THE COURT:  Okay.

4           PROSPECTIVE JUROR NO. 8:  That should cover

5   all six.

6           11 would be no.

7           12 is no.

8           13, target shooting, boating, snorkel diving

9   and Internet gaming.

10           14, 13 years, electrician or apprentice, IBW

11   electrician, certified.

12           15, no.

13           16, all of the above.  Newspaper, television,

14   radio and Internet.

15           17, my nephew started with the US Border

16   Patrol.  Now he's a US air marshal, as far as 17.

17           THE COURT:  Right.  Okay.

18           PROSPECTIVE JUROR NO. 8:  18 is no.

19           19 is no.

20           20 is no.

21           21, no.

22           22 was yes, the Border Patrol nephew.

23           23 is no.

24           24 is no.

25           25 is no.

```
1              26, yes.  That was in 1986, income tax

2    evasion, charged felonies and then down to willful

3    failure to file, misdemeanors, right here in this --

4    US district court right here.

5              27 is no.

6              Church, yes.

7              THE COURT:  28 is yes.

8              29?

9              PROSPECTIVE JUROR NO. 8:  29 is no.  And I did

10   in state court, Miami-Dade, sit in a jury and I was the

11   foreperson.

12             THE COURT:  Was it a criminal jury or --

13             PROSPECTIVE JUROR NO. 8:  It was a civil.

14             THE COURT:  Did the jury reach a verdict --

15   strike that --

16             PROSPECTIVE JUROR NO. 8:  Yes.

17             THE COURT:  Did the jury come to a decision?

18             PROSPECTIVE JUROR NO. 8:  We came to a

19   decision of the Plaintiff.

20             THE COURT:  Okay.

21             PROSPECTIVE JUROR NO. 8:  What was next?

22             30 -- no.

23             31.  No grand jury, no.

24             32 is no.

25             33 is no.
```

1           34 is no.

2           And 35 is yes.

3           THE COURT:  Thank you, sir.

4           Juror No. 9.

5           PROSPECTIVE JUROR NO. 9:  Hi.  I'm juror

6    No. 9.

7           No. 1, I'm 46.

8           No. 2, Cuba.

9           Cuba, for 3.

10          I'm a bank teller.

11          Miami.

12          I own.  I live --

13          THE COURT:  No. 5 is you live in Miami.

14          How long have you lived in Miami?

15          PROSPECTIVE JUROR NO. 9:  43 years.

16          THE COURT:  No. 6 you is own.  Correct?

17          PROSPECTIVE JUROR NO. 9:  Uh-huh.  I live in

18   Miami.

19          No. 9, I lived in Cuba since -- until I was 3.

20          I'm married.  He's a mechanic.

21          I don't have any children, for 10 and 11.

22          12, I write and read Spanish.

23          No. 13, shopping.

24          No. 14, 12th grade.  I graduated.

25          No. 15, no.

1           No. 16, sometimes TV.

2           No. 17, yes.  I have a nephew that lives in

3     Georgia.  He's an attorney.

4           THE COURT:  Do you know what kind of law he

5     practices?

6           PROSPECTIVE JUROR NO. 9:  I know he practices

7     workman's comp and other ones, but I'm not sure.

8           THE COURT:  Okay.  No. 18?

9           PROSPECTIVE JUROR NO. 9:  No.

10          No. 19, no.

11          No. 20, no.

12          No. 21, no.

13          No. 22, no.

14          No. 23, yes.  I was -- it was reported.

15          THE COURT:  What was it?

16          PROSPECTIVE JUROR NO. 9:  I've always worked

17    at banks.  I've been robbed three times.  So -- and I

18    also have my car stolen, my house broken into.

19          THE COURT:  Were all those instances reported?

20          PROSPECTIVE JUROR NO. 9:  Yeah.

21          THE COURT:  And are you generally -- strike

22    that.

23          What happened with any of those cases?  Was

24    anyone arrested?

25          PROSPECTIVE JUROR NO. 9:  Well, on the bank

1   robberies, the FBI came and showed me pictures of some

2   guys.  But I couldn't identify them because they had

3   hoods.  So you can't....

4        THE COURT:  Are you generally satisfied or

5   dissatisfied with the way you were treated?

6        PROSPECTIVE JUROR NO. 9:  Satisfied.

7        THE COURT:  Okay.

8        PROSPECTIVE JUROR NO. 9:  24, yes.  I was a

9   witness.  It was reported.

10        THE COURT:  That was the same thing, the bank

11   robberies?

12        PROSPECTIVE JUROR NO. 9:  Yeah.  And the --

13        THE COURT:  Anything else?

14        PROSPECTIVE JUROR NO. 9:  Breaking in the

15   house.  It was reported.  And the car, also.

16        THE COURT:  25?

17        PROSPECTIVE JUROR NO. 9:  25 is no.

18        Well, I don't know if that's a criminal

19   investigation when the FBI goes and asks you questions

20   on the bank robbery.

21        THE COURT:  No.

22        26 is have you ever been accused of or --

23        PROSPECTIVE JUROR NO. 9:  Oh.  No.  No.  No.

24   No.

25        THE COURT:  27 is the same question regarding

1    a family member or --

2            PROSPECTIVE JUROR NO. 9:  A family member,

3    yes.  I have a nephew.  He has served time.  But I

4    guess he's doing better now.

5            THE COURT:  What was he convicted of?

6            PROSPECTIVE JUROR NO. 9:  I believe it was

7    drugs, but I don't -- maybe that wasn't all of the --

8    they just said drugs, but I never went to trial with

9    him or anything.

10           THE COURT:  Okay.  Do you know when it was?

11           PROSPECTIVE JUROR NO. 9:  About ten years ago.

12           THE COURT:  Do you think -- do you have an

13   opinion as to whether he was treated fairly by the

14   criminal justice system?

15           PROSPECTIVE JUROR NO. 9:  Yeah.

16           THE COURT:  Do you think he was well

17   represented by his lawyer?

18           PROSPECTIVE JUROR NO. 9:  Yeah.

19           THE COURT:  Is there anything about your

20   nephew's experience that would make it difficult for

21   you to sit and listen to the evidence in this case and

22   be fair to both the Government and the Defendants?

23           PROSPECTIVE JUROR NO. 9:  No.

24           I do not belong to any church, 28.

25           29, no.

```
 1            30, about eight or nine years ago, I was
 2   called to be a juror.  But I just got as far as I am
 3   now.  I didn't....
 4            No. 31 is no.
 5            32 is no.
 6            33 is no.
 7            34 is no.
 8            And 35 is yes.
 9            THE COURT:  Thank you, ma'am.
10            Juror No. 10.
11            PROSPECTIVE JUROR NO. 10:  No. 1, 44.
12            No. 2, Cuba.
13            No. 3, Cuba.
14            I am working as a coder in the medical billing
15   service.
16            And I am living in Miami for eight years.
17            THE COURT:  No. 6?
18            PROSPECTIVE JUROR NO. 10:  6?
19            THE COURT:  No. 6:  Do you own or rent?
20            PROSPECTIVE JUROR NO. 10:  Yes.  I am owning.
21            THE COURT:  Are you living with anyone?
22            PROSPECTIVE JUROR NO. 10:  With my husband.
23            THE COURT:  Okay.  No. 7?
24            PROSPECTIVE JUROR NO. 10:  No.
25            No. 8?
```

```
 1              PROSPECTIVE JUROR NO. 10:  Married.

 2         No. 9?

 3              PROSPECTIVE JUROR NO. 10:  My husband works as

 4    health aide.

 5         No. 10, 6 year.  One children.

 6              THE COURT:  Okay.  No. 11?

 7              PROSPECTIVE JUROR NO. 10:  No.

 8              THE COURT:  No. 12?

 9              PROSPECTIVE JUROR NO. 10:  Spanish.

10              THE COURT:  No. 13?

11              PROSPECTIVE JUROR NO. 10:  The movies

12    sometime.

13              THE COURT:  14?

14              PROSPECTIVE JUROR NO. 10:  University of Cuba.

15              THE COURT:  15?

16              PROSPECTIVE JUROR NO. 10:  No.

17              THE COURT:  16?

18              PROSPECTIVE JUROR NO. 10:  Television.

19              THE COURT:  17?

20              PROSPECTIVE JUROR NO. 10:  No.

21              THE COURT:  18?

22              PROSPECTIVE JUROR NO. 10:  No.

23              THE COURT:  19?

24              PROSPECTIVE JUROR NO. 10:  No.

25              THE COURT:  20?
```

1           PROSPECTIVE JUROR NO. 10:  Well, my husband

2    work as social worker for three years, about.

3           THE COURT:  And now he's a health aide?  What

4    is he doing now?

5           PROSPECTIVE JUROR NO. 10:  A social worker in

6    different --

7           THE COURT:  He's still a social worker?

8           PROSPECTIVE JUROR NO. 10:  My husband.

9           THE COURT:  Yes.

10          PROSPECTIVE JUROR NO. 10:  In workplace.  I

11   don't -- I don't understand very well.

12          THE COURT:  Okay.  21?

13          PROSPECTIVE JUROR NO. 10:  I don't know if is

14   important, but my -- I am working in the medical

15   billing.  My -- the owner work with Medicare and

16   Medicaid.

17          THE COURT:  Okay.

18          PROSPECTIVE JUROR NO. 10:  22, no.

19          23, no.

20          24, no.

21          25, no.

22          26, no.

23          27, no.

24          28, no.

25          29, no.

```
 1              And 30, no.

 2              31, no.

 3              32, no.

 4              33, yes.  I have problems with the English

 5    because I have problems with understand some phrase

 6    when the person speak me quickly.  I lose the idea.

 7              THE COURT:  Okay.

 8              PROSPECTIVE JUROR NO. 10:  34, no.

 9              And 35, yes.

10              THE COURT:  Thank you, ma'am.

11              Juror No. 11.

12              PROSPECTIVE JUROR NO. 11:  Juror 11.

13              No. 1, 49.

14              Birth place, Miami, Florida.

15              Parents born in Havana, Cuba.

16              No. 4, executive administrative assistant for

17    Good Health Americas and Aetna Medical Insurance

18    Company.

19              No. 5, Southwest Miami.

20              No. 6, own the home.

21              No. -- oh.  With my spouse and my two sons.

22              I've lived all my life in the United States.

23              No. 8, marital status, married.

24              No. 9, my husband is a broker/realtor.

25              No. 10, my son is 17, and my other son is 26.
```

```
 1             My son that's 26 is a student and, also, works
 2   for the bookstore -- college bookstore.
 3             THE COURT:  Okay.
 4             PROSPECTIVE JUROR NO. 11:  Currently he's
 5   being testified for City of Miami law enforcement.
 6             I don't have any children, No. 11, out of the
 7   United States.
 8             12, I speak and write English and Spanish.
 9             My hobbies are cycling and boating.
10             I went to high school and I have a real estate
11   license.
12             I've never attended law school, No. 15.
13             No. 16 is television and radio.
14             No. 17, I have two sisters that are -- that
15   work for Metro-Dade police.  One is in headquarters for
16   human resources.  Another one is a processor.
17             And I have a niece that works in
18   investigations in Metro-Dade, also.
19             THE COURT:  Okay.
20             PROSPECTIVE JUROR NO. 11:  18 is no.
21             19 is no.
22             20 is no.
23             21 is no.
24             22, currently, my son who did apply and the
25   City of Miami is testing him and, of course, my two
```

```
1    sisters and niece that work for Metro-Dade.

2           23, only the victim of a car break-in.  It was

3    reported.

4           THE COURT:  Are you generally satisfied or

5    dissatisfied with the way you were treated?

6           PROSPECTIVE JUROR NO. 11:  Satisfied.

7           No. 24, witness of a crime, no.

8           25, no.

9           26, no.

10          27, I had an ex-brother-in-law that was

11   accused for conspiring to traffic drugs.

12          28 --

13          THE COURT:  When was that?

14          PROSPECTIVE JUROR NO. 11:  This was about

15   20 years ago.

16          THE COURT:  Did you attend any of his

17   hearings?

18          PROSPECTIVE JUROR NO. 11:  No.

19          THE COURT:  What happened with that charge?

20   What is --

21          PROSPECTIVE JUROR NO. 11:  He served.  He

22   served a good five or six years and he's already out.

23          THE COURT:  Do you think he was treated fairly

24   by the criminal justice system?

25          PROSPECTIVE JUROR NO. 11:  I believe so.
```

```
 1              THE COURT:  Do you think he was well
 2    represented by his lawyer?
 3              PROSPECTIVE JUROR NO. 11:  I guess.  I'm not
 4    sure if he had a lawyer.
 5              THE COURT:  Did you attend any of his
 6    hearings?
 7              PROSPECTIVE JUROR NO. 11:  No.
 8              THE COURT:  Did you visit him while he was
 9    incarcerated?
10              PROSPECTIVE JUROR NO. 11:  No.
11              THE COURT:  Is there anything about his
12    experience that would make it difficult for you to sit
13    and listen to the evidence in this case and be fair to
14    both the Government and the Defendants?
15              PROSPECTIVE JUROR NO. 11:  No.
16              29 --
17              THE COURT:  How about 28?
18              PROSPECTIVE JUROR NO. 11:  I'm not currently
19    at any church.
20              29 is no.
21              30 is no.
22              31 is no.
23              32 is no.
24              33 is no.
25              And 34, I do take thyroid medication.
```

1          THE COURT:  Would it affect your jury service

2     at all?

3          PROSPECTIVE JUROR NO. 11:  No.

4          35, yes.  I have access to a computer at home

5     and at work.

6          THE COURT:  Do you go on the Internet?

7          PROSPECTIVE JUROR NO. 11:  Yes.

8          THE COURT:  Thank you, ma'am.

9          Juror No. 12.

10          PROSPECTIVE JUROR NO. 12:  Juror 12, I'm

11     53 years.

12          I was born in Abadan, Iran.

13          My parents both from Iran as well.

14          No. 4, video game accessories and

15     electromechanical design and development of audio and

16     video for -- again, for several companies either in the

17     United States or in Japan.

18          Southwest Miami area, for 34 years.

19          No. 6, the answer is yes.  And, yes, with a

20     spouse.

21          No. 7 --

22          THE COURT:  Yes, you're owning your own

23     residence?

24          PROSPECTIVE JUROR NO. 12:  Yes.

25          THE COURT:  Okay.  No. 7?

1          PROSPECTIVE JUROR NO. 12:  No. 7, the answer

2    is yes.  And it's in Iran.

3          No. 8 --

4          THE COURT:  How long did you live in Iran?

5          PROSPECTIVE JUROR NO. 12:  19 years.

6          THE COURT:  Okay.

7          PROSPECTIVE JUROR NO. 12:  I'm married, No. 8.

8          No. 9, a housewife.

9          No. 10, 18 years.  Student at the university.

10         No. 11 is no.

11         No. 12 is yes.  Farsi or Persian.

12         No. 13 is yes.

13         10 is cycling and video game.

14         No. 14, I have a BS degree in mechanical,

15   electromechanical, and I am a registered professional

16   engineer in the State of Florida.

17         No. 15, no.

18         No. 16, it's actually a newspaper, TV and the

19   Internet.

20         No. 17, yes.  It's a good friend of mine.

21   He's actually my neighbor as well.  He's an ex-chief of

22   police of Miami.  And he has his investigator company

23   as well.

24         No. 18 is no.

25         No. 19 is video game, digital recording.  I'm

1    not so sure it pertains to videotaping.  It's the --

2    actually, it's the printed circuit recording for video

3    game.

4            THE COURT:  Okay.

5            PROSPECTIVE JUROR NO. 12:  No. 20 is no.

6            No. 21 is no.

7            22 is no.

8            No. 23, yes.  Home robbery.  My car was broken

9    into.  And license plate was stolen, too, as well.

10           THE COURT:  Were those instances reported?

11           PROSPECTIVE JUROR NO. 12:  Yes, your Honor.

12           THE COURT:  Anyone arrested?

13           PROSPECTIVE JUROR NO. 12:  No.

14           THE COURT:  Are you generally satisfied or

15   dissatisfied with the way you were treated by law

16   enforcement?

17           PROSPECTIVE JUROR NO. 12:  Satisfied.

18           THE COURT:  24?

19           PROSPECTIVE JUROR NO. 12:  No.

20           25, yes.  I've been in several trial and

21   deposition for -- engineering-related and liability for

22   the line of job that I do.

23           THE COURT:  Okay.

24           PROSPECTIVE JUROR NO. 12:  No. 26 is yes.  And

25   I -- it's a misdemeanor and I'd rather to discuss this

```
1    in a side chamber.
2            THE COURT:  Come on up.
3            (Whereupon, proceedings were had at side-bar
4    outside the presence of the jury which have been sealed
5    per instructions of the Court.)
6            (Whereupon, the following proceedings were had
7    in open court:)
8            THE COURT:  27?
9            PROSPECTIVE JUROR NO. 12:  No.
10           THE COURT:  28?
11           PROSPECTIVE JUROR NO. 12:  No.
12           THE COURT:  29?
13           PROSPECTIVE JUROR NO. 12:  No.
14           THE COURT:  30?
15           PROSPECTIVE JUROR NO. 12:  Yes.  I was in the
16   jury, but as a -- actually, as a reserve.  I never had
17   a chance to see the verdict.
18           THE COURT:  Was it a criminal jury or a civil
19   jury?
20           PROSPECTIVE JUROR NO. 12:  It was criminal.
21           THE COURT:  In state or federal court?  Do you
22   remember?
23           PROSPECTIVE JUROR NO. 12:  State court.
24           THE COURT:  31?
25           PROSPECTIVE JUROR NO. 12:  No.
```

```
 1              32, no.

 2              33, no.

 3              34, no.

 4              35, yes.

 5              THE COURT:  Thank you, sir.

 6              Juror No. 13.

 7              PROSPECTIVE JUROR NO. 13:  Juror No. 13.

 8              I'm 38 years old.

 9              Born in New York City.

10              My father was born in Cuba.

11              My mother was born in Belgium.

12              No. 4, I'm a portfolio manager.  I manage

13     stock and bond portfolios for investors.

14              No. 5, Coral Gables.

15              No. 6, I own.

16              No. 7, no.

17              THE COURT:  Are you living with anyone?

18              PROSPECTIVE JUROR NO. 13:  I am not.

19              No. 8, I am single, but engaged.

20              No. 9, no.

21              No. 10 and 11, I do not have any children.

22              No. 12, I speak and write Spanish.

23              No. 13, hobbies would be travel, reading and

24     sports of all nature.

25              No. 14 is postgraduate degree.
```

```
 1              No. 15 is yes.  Graduated Duke Law School,
 2   1995.
 3              No. 16, would be newspaper, satellite radio
 4   and Internet.
 5              No. 17, no.
 6              No. 18, my brother-in-law is a federal
 7   immigration judge.
 8              My sister has worked for the Federal
 9   Government as a clerk to the Immigration court:
10              I worked for one year for the Federal
11   Government as a judicial clerk to a federal judge.
12              Other than that, none others.
13              19 is no.
14              No. 20, obviously, law.  None of the other
15   ones apply.
16              No. 21, not to my knowledge.
17              No. 22, my brother-in-law was a police officer
18   25 years ago for a few years back in Maryland, I
19   believe.  No one else.
20              No. 23, I have never been a victim of a crime
21   nor, 24, have I ever witnessed a crime.
22              25, I testified once in a deposition last year
23   regarding an attorney's fee dispute.
24              26, no.
25              27, no.
```

```
 1              28, I am Catholic and will be married in the
 2    Catholic church, though I do not actively practice.
 3              29, absolutely not.
 4              The answers to 30 through 34 are all no's.
 5              And the answer to 35 is yes.
 6              THE COURT:  Thank you, sir.
 7              Juror No. 14.
 8              PROSPECTIVE JUROR NO. 14:  Juror No. 14.
 9              No. 1, 52.
10              No. 2, Virginia.
11              No. 3, my mother was born in Massachusetts.
12    My father was born in Illinois.
13              No. 4, I'm a speech language pathologist.
14              No. 5, North Dade, for 30 years.
15              No. 6, I own my home, and I live alone.
16              No. 7, no.
17              No. 8, divorced.
18              No. 9, it's not applicable.
19              No. 10 and 11, I have no children.
20              No. 12, I know sign language.  However, I'm
21    not a certified interpreter.
22              No. 13, all sports.  Watching them, playing
23    them.  Doesn't matter.
24              No. 4, I have a master's of arts in speech
25    language pathology.
```

1          No. 15, no law school, no paralegal.

2          No. 16, television and radio.

3          No. 17, I have a friend who's a public

4    defender in Broward.  I don't know anything else about

5    him.

6          No. 18, I used to work at a medical facility

7    about 15 years ago as a speech language pathologist.

8          No. 19, no.

9          No. 20, my bachelor's of art has a minor in

10   psychology.

11         No. 21, we do some Medicaid billing in the

12   public school system.

13         No. 22, my nephew is currently in a police

14   academy up in Indiana.

15         No. 23, I have been a victim of a home

16   burglary as well as mugging.  Nobody was arrested.  I

17   was generally satisfied with what they did.

18         No. 24, no.

19         No. 25, I had to give a deposition in a car

20   accident.

21         No. 26, no.

22         No. 27, no.

23         No. 28, yes.

24         No. 29, no.

25         30, yes, I was chosen for a criminal case.  I

1    was on the jury.  We did reach a verdict.  I was not

2    the foreman -- or foreperson.

3            THE COURT:  Do you remember whether it was

4    federal or state court?

5            PROSPECTIVE JUROR NO. 14:  It was state.

6            THE COURT:  Okay.

7            PROSPECTIVE JUROR NO. 14:  No. 31, no.

8            No. 32, no.

9            No. 33, no.

10           No. 34, no.

11           And 35, yes.

12           THE COURT:  Thank you, ma'am.

13           No. 15.

14           PROSPECTIVE JUROR NO. 15:  I'm Juror No. 15.

15           I'm 54 years old.

16           I was born in Miami.

17           My parents -- my father was from Pennsylvania.

18   My mother's from Massachusetts.

19           I'm a general contractor.

20           No. 5, I've lived in Southwest Dade for 54

21   years.

22           I own my own home.

23           No. 7 is no.

24           THE COURT:  Do you live with anyone?

25           PROSPECTIVE JUROR NO. 15:  No, I do not.

1          THE COURT:  No. 8?

2          PROSPECTIVE JUROR NO. 15:  No. 8, I'm

3  divorced.

4          No. 9, no one else lives with me.

5          No. 10, I have two daughters.  They're 25 and

6  23.  The oldest is an administrative assistant, and the

7  youngest one is a student.

8          No. 11, no.

9          No. 12, no.

10          No. 13, golf, and I'm an avid NASCAR fan.

11          No. 14, high school.

12          No. 15, no.

13          No. 16, newspaper, television, radio and the

14  Internet.

15          No. 17, no.

16          No. 18, no to all.

17          No. 19, no.

18          No. 20, no.

19          No. 21, indirectly, a lot of the projects that

20  I do are with Dade County and there is some federal

21  funding to them.

22          No. 22, no.

23          23, yes.  I had an office break-in about

24  15 years ago.  It was reported.  And, also, I've had

25  numerous break-ins at jobsites, stealing tools and

1    equipment and stuff.

2          THE COURT:  Anyone arrested for any of those?

3          PROSPECTIVE JUROR NO. 15:  No.

4          THE COURT:  Are you generally satisfied or

5    dissatisfied with the way you were treated by law

6    enforcement?

7          PROSPECTIVE JUROR NO. 15:  I'm satisfied.

8          24, no.

9          25, I've been deposed a couple times for

10   lawsuits against another company I worked for that had

11   to do with personal injury.

12         No. 26, no.

13         No. 27, no.

14         28, no.

15         29, no.

16         30, no.

17         31, no.

18         32, no.

19         33, no.

20         34, no.

21         35, yes, I own a computer and I'm on the

22   Internet constantly.

23         THE COURT:  And one of your daughters is an

24   administrative assistant, I believe you said.

25         For what kind of business?

1           PROSPECTIVE JUROR NO. 15:  It's a yacht

2   brokerage.

3           THE COURT:  Thank you, sir.

4           Juror No. 16.

5           PROSPECTIVE JUROR NO. 16:  Juror No. 16.

6           I'm 46.

7           2, Cuba.

8           3, Cuba.

9           I'm a registered pharmacist.

10          I live in Miami Beach.

11          I own.

12          I live with my family and take care of my dad.

13          I lived in Cuba age 1 through 6.

14          I'm married.

15          My wife -- I live with my wife.  She's also a

16   pharmacist.  We have three kids, 5, 6 and 8.

17          No children abroad, No. 11.

18          No. 12, Spanish, fluent.

19          13, fishing, my kids and carpentry.

20          Bachelor's in pharmacy, No. 14.

21          No. 15, no.

22          Sources, No. 16, are newspaper and television,

23   mainly.

24          17 is no.

25          18, no to all.

```
1              19, no.

2              20, no to all again.

3              21, no.

4              22, no.

5              Victim of crime, yes.  I've been in a holdup,

6    car's been stolen, and hit-and-run twice.

7              THE COURT:  Were those instances reported?

8              PROSPECTIVE JUROR NO. 16:  Some have.

9              THE COURT:  Anyone arrested?

10             PROSPECTIVE JUROR NO. 16:  Only the

11   hit-and-run -- only the hit-and-run incident, both

12   while driving.  I had to chase after them twice.

13             THE COURT:  Okay.  Are you generally satisfied

14   or dissatisfied with the way you were treated?

15             PROSPECTIVE JUROR NO. 16:  I was satisfied.

16   Still satisfied.

17             THE COURT:  19 -- I'm sorry.  24?

18             PROSPECTIVE JUROR NO. 16:  Nothing major.  As

19   a crime, nothing major.

20             THE COURT:  What crime have you witnessed?

21             PROSPECTIVE JUROR NO. 16:  I work in a retail

22   store.  I see things sometimes going from the shelves,

23   you know.

24             THE COURT:  And when you see things, has it

25   been reported?
```

1          PROSPECTIVE JUROR NO. 16:  We have a system, a

2   security, within the store that we follow, policies for

3   the company, how to address --

4          THE COURT:  Have you had contact with law

5   enforcement for this?

6          PROSPECTIVE JUROR NO. 16:  Sometimes.

7          THE COURT:  Are you generally satisfied or

8   dissatisfied with the way you were treated with them?

9          PROSPECTIVE JUROR NO. 16:  I am satisfied.

10          THE COURT:  25?

11          PROSPECTIVE JUROR NO. 16:  Okay.  25 is no.

12          26, no.

13          27, no.

14          28, belong to a church and follow its

15   preaching, you know, to a degree.

16          29 through 34 is all no.

17          And 35 is yes.

18          THE COURT:  Now, you said that your dad lives

19   with you.

20          Is he working or is he retired?

21          PROSPECTIVE JUROR NO. 16:  Retired.

22          THE COURT:  What did he do before he retired?

23          PROSPECTIVE JUROR NO. 16:  He built

24   automobiles for Ford Motor Company in New Jersey.

25          THE COURT:  Thank you, sir.

```
 1              We're going to come over to No. 17.
 2              PROSPECTIVE JUROR NO. 17:  No. 1, 40 years
 3    old.
 4              THE COURT:  I'm sorry, ma'am.  Can you hold
 5    the microphone up like this (indicating).
 6              PROSPECTIVE JUROR NO. 17:  No. 1, 40 years
 7    old.
 8              No. 2, Haiti.
 9              No. 3, Haiti.
10              No. 4, I'm working.
11              THE COURT:  What type of work do you do?
12              PROSPECTIVE JUROR NO. 17:  Huh?
13              THE COURT:  What type of work do you do?
14              PROSPECTIVE JUROR NO. 17:  What time?
15              THE COURT:  Type.
16              PROSPECTIVE JUROR NO. 17:  Type?
17              THE COURT:  Where are you working?  What do
18    you do?
19              PROSPECTIVE JUROR NO. 17:  Nursing assistant.
20              THE COURT:  Okay.
21              PROSPECTIVE JUROR NO. 17:  No. 5, I'm living
22    in Miami.
23              THE COURT:  How long?
24              PROSPECTIVE JUROR NO. 17:  Eight years.
25              THE COURT:  Okay.
```

```
 1            PROSPECTIVE JUROR NO. 17:  No. 6, by myself.

 2            THE COURT:  Do you own or do you rent?

 3            PROSPECTIVE JUROR NO. 17:  Rent.

 4            THE COURT:  Okay.

 5            PROSPECTIVE JUROR NO. 17:  No. 7, no.

 6            No. 8, single.

 7            No. 9, no.

 8            No. 10, my child's 7 years old.

 9            No. 11, no.

10            No. 12, Creole.  I speak Creole.

11            No. 13, yes.  TV.

12            No. 14, tenth grade.

13            15, no.

14            16, television and radio.

15            17 -- No. 17, no.

16            No. 18, no.

17            No. 19, no.

18            20, no.

19            21, no.

20            22, no.

21            23, no.

22            24, no.

23            25, no.

24            26, no.

25            27, no.
```

```
1              28, no.

2              29, no.

3              30, no.

4              31, no.

5              32, no.

6              33, yes.

7              34, no.

8              35, no.

9              THE COURT:  For 33, you answered yes.

10             Do you have a problem understanding English?

11             PROSPECTIVE JUROR NO. 17:  No.  I don't

12    understand.  Little bit.

13             THE COURT:  A little bit.

14             PROSPECTIVE JUROR NO. 17:  Yeah.  I don't

15    understand English.

16             THE COURT:  Okay.

17             PROSPECTIVE JUROR NO. 18:  No. 18.

18             1 is 27.

19             2, Miami.

20             3, Dad from New York and Mom from Cuba.

21             4, I'm a travel advisor.

22             5, Homestead.

23             6, rent.

24             7, no.

25             8, single.
```

```
 1              9, restaurant installs.

 2              10, no.

 3              11, no.

 4              12, Spanish.

 5              13, read and video games.

 6              14, high school diploma and two years of

 7    college, mass communications, journalism.

 8              15, no.

 9              16, newspaper, television, radio and Internet.

10              17, my dad's a detective, and I have friends

11    that are cops from that.

12              18, no.

13              19, I was a sound mixer in New York.  So I do

14    have experience with television.

15              20, just common knowledge of all of them.

16              21, no.

17              22, yes.  But my dad is a cop.  So he applied

18    and got the job again.

19              23-A and -B are no.

20              24-A, no.

21              24-B, satisfied.

22              25 and 26 are no.

23              27, yes.  My sister was convicted of grand

24    theft auto in 1998, but it's expunged already.  She's

25    done.
```

1    THE COURT:  Your sister was convicted of grand

2  theft auto in 1998?

3    PROSPECTIVE JUROR NO. 18:  Something like

4  that, '98, '99.

5    THE COURT:  Do you think she was treated

6  fairly by the criminal justice system?

7    PROSPECTIVE JUROR NO. 18:  Yeah.

8    THE COURT:  Do you think she was well

9  represented by her lawyer?

10    PROSPECTIVE JUROR NO. 18:  I wasn't there.  I

11  don't know.  But yeah.  She got fined.

12    She just got in trouble again for violation of

13  her probation, which was her fault again.  But she's

14  been fine for the past, like, I would say, seven years.

15  She got everything taken care of.

16    THE COURT:  Is there anything about your

17  sister's experience that would make it difficult for

18  you to sit and listen to the evidence in this case and

19  be fair to both the Government and the Defendants?

20    PROSPECTIVE JUROR NO. 18:  No, ma'am.

21    THE COURT:  Okay.

22    PROSPECTIVE JUROR NO. 18:  Basically,

23  Questions 28 through 34 are no.

24    And 35 is yes.

25    Thank you.

```
 1              THE COURT:  Thank you, sir.
 2              PROSPECTIVE JUROR NO. 19:  No. 1, 47.
 3              No. 2, Chicago.
 4              No. 3, mother, Cuban; father, from Puerto
 5    Rico.
 6              No. 4, administrative assistant, State
 7    University system.
 8              No. 5, live in Westchester over 25 years.
 9              No. 6, I own.
10              Live with boyfriend and my two sons.
11              No. 7, no.
12              No. 8, divorced.
13              No. 9, export.  My boyfriend works in export
14    sales of fiberglass products, cleaners for marine
15    equipment.
16              No. 10, 20 years old and 17.  Both are
17    students.
18              No. 11, no.
19              No. 12, I speak Spanish.  I write some.
20              No. 13, home repair projects, swimming,
21    biking.
22              No. 14, high school, two years' community
23    college.
24              No. 15, no.
25              No. 16, TV, Internet, newspaper, radio, all.
```

1       No. 17, I do have family and friends that are

2   social workers, police officers, corrections officers,

3   security guards and a probation officer.

4       THE COURT:  The family members who are police

5   officers:  Where are they police officers?

6       PROSPECTIVE JUROR NO. 19:  Well --

7       THE COURT:  Is it here in Miami?

8       PROSPECTIVE JUROR NO. 19:  Yes.  Here in

9   Miami.  I'm not sure, you know, city or state.

10      THE COURT:  That's fine.

11      Your family members who are correctional

12  officers:  Are they in this --

13      PROSPECTIVE JUROR NO. 19:  Yes.

14      THE COURT:  -- work for the County or work for

15  the Federal Bureau of Prisons?

16      PROSPECTIVE JUROR NO. 19:  That I'm not sure

17  of either.

18      THE COURT:  Okay.  No. 18?

19      PROSPECTIVE JUROR NO. 19:  No. 18, I did work

20  in a medical facility when I was in high school for an

21  anesthesiologist.  And he also worked in a small

22  medical center in Miami.

23      No. 19, no.

24      No. 20, took some psychology courses in

25  college.

```
 1              No. 21, no.

 2              No. 22, no.

 3              No. 23, yes.  Home robbery or home invasion.

 4   That was over 20 years ago.  Car stolen from the

 5   university campus.

 6              And was I generally satisfied.  Yes.

 7              No. 24, no.

 8              No. 25, no.

 9              No. 26, no.

10              No. 27, my brother did have over 30 years ago

11   when he was a juvenile a small charge of drug

12   possession.  But he did serve some time.  And that was

13   all cleared.

14              THE COURT:  Did you attend any of his

15   hearings?

16              PROSPECTIVE JUROR NO. 19:  No.  Not the

17   hearings.

18              THE COURT:  Did you visit him while he was

19   incarcerated?

20              PROSPECTIVE JUROR NO. 19:  Yes.

21              THE COURT:  Do you think he was treated fairly

22   by the criminal justice system?

23              PROSPECTIVE JUROR NO. 19:  Yes.

24              THE COURT:  Do you think he was well

25   represented by his lawyer?
```

```
1            PROSPECTIVE JUROR NO. 19:  Yes.

2            THE COURT:  Is there anything about your

3    brother's experience that would make it difficult for

4    you to sit and listen to the evidence in this case and

5    be fair to both the Government and the Defendants?

6            PROSPECTIVE JUROR NO. 19:  No.

7            No. 28, yes.

8            No. 29, I may also have a problem with someone

9    who does a crime and justifies it with religious

10   beliefs.

11           No. 30, no.

12           No. 31, no.

13           No. 32, no.

14           No. 33, no.

15           No. 34, no.

16           Yes.  I have two computers on loan from the

17   university.

18           And I think that's it.  Right?

19           THE COURT:  So the last one was No. 35.

20   Correct?

21           PROSPECTIVE JUROR NO. 19:  Yes.

22           THE COURT:  That you have the computer on

23   loan.

24           Do you access the Internet?

25           PROSPECTIVE JUROR NO. 19:  Yes, I do.
```

1          THE COURT:  We're going to break for lunch.

2    We're going to break for an hour for lunch.

3          Do not discuss this case either amongst

4    yourselves or with anyone else.  Have no contact

5    whatsoever with anyone associated with the trial.  Do

6    not read, listen or see anything touching on this

7    matter in any way.

8          If anyone should try to talk to you about this

9    case, you should immediately instruct them to stop and

10   report it to my staff.

11         You're going to come back here to the

12   12th floor, to the lobby, at 1:30.

13         Have a nice lunch.

14         (Whereupon, Prospective Jury Panel No. I

15   exited the courtroom at 12:35 p.m. and the following

16   proceedings were had:)

17         THE COURT:  You may be seated for a moment.

18         Just to let you know the schedule tomorrow,

19   I'm only going to be sitting until about 12:45

20   tomorrow.  I have another matter that I need to take up

21   in the afternoon.

22         So either we'll start a panel tomorrow or --

23   and I may order just a small panel for tomorrow

24   morning, since we're going to break early.

25         If we finish with this panel today, I'll just

1    order a small one for tomorrow.  But there's something

2    that I need to attend to that I've been unable to

3    attend to because I've been in trial since September

4    nonstop.

5           We're just waiting to -- you can take the

6    Defendants out, Mr. Batiste and Mr. Abraham.  We're

7    just waiting for the signal that the jurors are down

8    the elevator.

9           (Thereupon, Defendants Batiste and Abraham

10   retired from the courtroom and the following

11   proceedings were had:)

12          THE COURT:  We're in recess until 1:30.  Have

13   a nice lunch.

14          (Thereupon, a luncheon recess was taken, after

15   which the following proceedings were had:)

16          THE COURT:  We're back on United States of

17   America versus Narseal Batiste, et al., Case

18   No. 06-20373.

19          Counsel, state your appearances, please, for

20   the record.

21          MR. GREGORIE:  Good afternoon, your Honor.

22          Richard Gregorie and Jacqueline Arango for the

23   United States.

24          MS. JHONES:  Good afternoon.

25          Ana Jhones on behalf of Narseal Batiste.

```
 1            MR. LEVIN:  Albert Levin for Patrick Abraham,

 2    who's present.

 3            MR. CASUSO:  Louie Casuso on behalf of Burson

 4    Augustin, who's present.

 5            MR. CLARK:  Nathan Clark for Rotschild

 6    Augustine.

 7            MR. HOULIHAN:  Richard Houlihan with Naudimar

 8    Herrera.

 9            MR. VEREEN:  Roderick Vereen on behalf of

10    Stanley Phanor, who's present.

11            THE COURT:  All Defendants are present.

12            The delay was Juror No. 21, who indicated that

13    she picks up her kids during her lunch breaks and

14    brings them to after-care.

15            She went and picked up her kids during the

16    lunch break and took them to after-care and didn't

17    really make it clear that she was doing that or how

18    long she was going to take.  So she has just now

19    returned.

20            So that was our delay, waiting for her to get

21    back.  We got a call from Jury Pool saying she was at

22    her -- the kids' school and taking them to after-care

23    and it was going to take her awhile to get back.

24            So let's bring the jurors in so we can

25    continue.
```

1              (Whereupon, Prospective Jury Panel No. I

2    entered the courtroom at 2:02 p.m. and the following

3    proceedings were had:)

4              THE COURT:  You may be seated.

5              I hope everyone had a good lunch.  We're going

6    to start with Juror No. 20.

7              PROSPECTIVE JUROR NO. 20:  I'm Juror No. 20.

8              No. 1, 24.

9              2, Miami.

10             3, Cuba.

11             4, psychotherapist.

12             5, Miami Lakes, 14 years.

13             6, I live with my family.

14             7, no.

15             8, single.

16             9, my mother's an accountant.  My father's a

17   supervisor.

18             I forgot to mention earlier, one of my cousins

19   is an auditor.  I don't know if that has anything to do

20   with it.

21             THE COURT:  For the IRS?

22             PROSPECTIVE JUROR NO. 20:  No.  For a

23   hospital.

24             THE COURT:  Okay.  And your dad is --

25             PROSPECTIVE JUROR NO. 20:  A supervisor.  He

```
 1   builds the walk-in freezers and coolers out of the

 2   States.

 3            THE COURT:  And your parents own the home?

 4            PROSPECTIVE JUROR NO. 20:  Yeah.

 5            THE COURT:  Okay.

 6            PROSPECTIVE JUROR NO. 20:  No. 10, no.

 7            11, no.

 8            12, Spanish.

 9            13, any outdoor activities.

10            14, I have a minor in psychology and a

11   master's in social work.

12            15, no.

13            16, television and Internet.

14            17, I have a cousin that's a police officer.

15            No. 18, the only thing is, for the company

16   that I work for, the agency I work for, our program is

17   funded by some grants.  And then we also work with a

18   jail diversion program.

19            THE COURT:  Okay.

20            PROSPECTIVE JUROR NO. 20:  No. 19 is no.

21            20, obviously, psychology and social work.

22            21, I already said I worked with the jail

23   diversion program.

24            22, yes.  He was hired.  He's a police

25   officer.
```

```
 1          23 --
 2          THE COURT:  Who is that?
 3          PROSPECTIVE JUROR NO. 20:  My cousin.
 4          THE COURT:  Okay.
 5          PROSPECTIVE JUROR NO. 20:  Oh.  If I was a
 6   victim of a crime.
 7          I don't know if it's considered a crime, but
 8   there was two occasions, one that I was being followed
 9   by some -- it was the same person twice.  And both
10   times the police did nothing.
11          Once I even went to a police officer and he
12   didn't do anything.  He actually turned around and went
13   to go eat.
14          And then the second time, I was standing
15   outside of the police station and they refused to send
16   out an officer.
17          And then another time I was being followed by
18   a fake undercover cop.  When the guy realized I was
19   calling the police, he went to flee.  I got his license
20   plate and I called it in.  And I remained anonymous.
21   So I don't know what happened.
22          THE COURT:  For the two times that you
23   reported someone following you and no one did anything,
24   are you generally satisfied or dissatisfied with the
25   way you were treated?
```

```
 1              PROSPECTIVE JUROR NO. 20:  Very dissatisfied.

 2              THE COURT:  Would you be able to put aside

 3    whatever feelings of dissatisfaction that you have and

 4    sit and listen to the evidence in this case and be fair

 5    to both the Government and the Defendants?

 6              PROSPECTIVE JUROR NO. 20:  Yeah.

 7              THE COURT:  24?

 8              PROSPECTIVE JUROR NO. 20:  24 is no.

 9              25, no.

10              26, no.

11              27, yes.

12              28, yes.

13              29, no.

14              THE COURT:  Can you tell us about 27.

15              PROSPECTIVE JUROR NO. 20:  27?

16              THE COURT:  That was a yes?

17              PROSPECTIVE JUROR NO. 20:  Oh.  I have like --

18    I think it's two family members that have been

19    convicted.

20              One was -- he was convicted for armed robbery

21    and something with drugs.  The other one was also

22    drugs.

23              THE COURT:  And who is it in your family?

24              PROSPECTIVE JUROR NO. 20:  One is an uncle.

25    And that was several years ago.  He's already -- the
```

```
 1   charges were -- he served his time or whatever.

 2        And then the other one was my father's cousin

 3   or something like that.  But him I have no contact

 4   with.

 5        THE COURT:  So your uncle was which charges?

 6   Armed robbery and drugs?

 7        PROSPECTIVE JUROR NO. 20:  Both.  Both.

 8        THE COURT:  The armed robbery and drugs?  And

 9   the cousin was drugs?

10        PROSPECTIVE JUROR NO. 20:  Uh-huh.

11        THE COURT:  Is that "yes"?

12        PROSPECTIVE JUROR NO. 20:  "Yes."  Sorry.

13        THE COURT:  So do you think your uncle was

14   treated fairly by the criminal justice system?

15        PROSPECTIVE JUROR NO. 20:  Yes.

16        THE COURT:  Did you attend any of his

17   hearings?

18        PROSPECTIVE JUROR NO. 20:  No.

19        THE COURT:  Did you visit him while he was

20   incarcerated?

21        PROSPECTIVE JUROR NO. 20:  No.

22        THE COURT:  Do you think he was well

23   represented by his lawyer?

24        PROSPECTIVE JUROR NO. 20:  I don't know.

25        THE COURT:  Is there anything about your
```

1  uncle's experience that would make it difficult for you

2  to sit and listen to the evidence in this case and be

3  fair to both the Government and the Defendants?

4          PROSPECTIVE JUROR NO. 20:  No.

5          THE COURT:  And the same questions regarding

6  your cousin.

7          Do you think he was treated fairly?

8          PROSPECTIVE JUROR NO. 20:  I don't know.

9          And, yes, I think I could -- I could be fair.

10          THE COURT:  Okay.  No. 28?

11          PROSPECTIVE JUROR NO. 20:  28, yes.

12          29 through 34 is no.

13          And then, 35, yes.

14          THE COURT:  Thank you, ma'am.

15          Juror No. 21.

16          PROSPECTIVE JUROR NO. 21:  Yes.  I'm Juror

17  No. 21.

18          No. 1, I'm 24.

19          No. 2 I was born in Chicago, Illinois.

20          No. 3, my parents were born in Puerto Rico.

21          No. 4, I'm an office manager.

22          No. 5, I live in Miami for the past four

23  years.

24          After --

25          THE COURT:  Did you come from Chicago to

1    Miami?

2            PROSPECTIVE JUROR NO. 21:  Yes.

3            No. 6, I currently rent my residence, and I

4    live with my husband and my two children.

5            No. 7, I lived in Puerto Rico for two years as

6    a teenager.

7            No. 8, I'm married.

8            No. 9, my husband is a metal fabricator and

9    installer.

10           No. 10, my children are 23 months and 6 years

11   old.

12           No. 11, no.

13           No. 12, I speak Spanish.

14           No. 13, I like to read.

15           No. 14, I'm a high school graduate.  I also

16   have a technical degree as a medical assistant and I'm

17   a notary.

18           No. 15, no.

19           No. 16, newspaper and Internet.

20           No. 17, no.

21           No. 18, no.

22           No. 19, no.

23           No. 20, no.

24           No. 21, no.

25           22, no.

```
 1              23, no.

 2              24, no.

 3              25, no.

 4              26, no.

 5              27, no.

 6              28, yes.

 7              29, no.

 8              No. 30, no.

 9              31, no.

10              32, no.

11              33, no.

12              34, no.

13              And 35, yes.

14              THE COURT:  Thank you, ma'am.

15              Juror No. 22.

16              PROSPECTIVE JUROR NO. 22:  22.

17              No. 1, 44.

18              No. 2, Miami, Florida.

19              No. 3, Cuba.

20              No. 4, law firm administrator.

21              No. 5, Kendall, Falls area.

22              No. 6, own, live with my wife, two children.

23              No. 7, no.

24              No. 8, married.

25              No. 9, office manager.
```

1            No. 10, 25 and 15, and a stepdaughter, 6.

2            THE COURT:  Is the 25-year-old employed?

3            PROSPECTIVE JUROR NO. 22:  Yes.  She's a

4    administrative assistant.

5            THE COURT:  For what kind of firm?

6            PROSPECTIVE JUROR NO. 22:  A cosmetic company.

7            THE COURT:  And your wife is an office manager

8    for --

9            PROSPECTIVE JUROR NO. 22:  For a law firm.

10           THE COURT:  What kind of practice of law?

11           PROSPECTIVE JUROR NO. 22:  Civil appeals.

12           THE COURT:  And the law firm that you're an

13   administrator for:  What type of law --

14           PROSPECTIVE JUROR NO. 22:  Civil appeals.

15           THE COURT:  Okay.  No. 11?

16           PROSPECTIVE JUROR NO. 22:  No. 11, no.

17           12, Spanish.

18           No. 13, any outdoor sports.

19           No. 14, high school.

20           No. 15, no.

21           No. 16, television and radio.

22           No. 17, yes.  Brother, Miami-Dade police

23   officer.

24           No. 18, yes.

25           No. 19 --

```
1              THE COURT:  Is that your brother?

2              PROSPECTIVE JUROR NO. 22:  Brother.

3         No. 19, no.

4         No. 20, yes.  Both my wife and I have some

5    legal experience.

6         No. 21, no.

7         No. 22, yes.  Brother.  Employed.

8         No. 23, yes.  Two vehicles, thefts.  And they

9    were recovered.  And, yes, I was satisfied.

10             THE COURT:  Okay.

11             PROSPECTIVE JUROR NO. 22:  No. 24, no.

12        No. 25, no.

13        26, no.

14        27, no.

15        28, no.

16        29, no.

17        30, no.

18        31, no.

19        32, no.

20        33, no.

21        34, no.

22        And 35, yes.

23             THE COURT:  Thank you, sir.

24        Juror No. 23.

25             PROSPECTIVE JUROR NO. 23:  No. 1, 38.
```

1              No. 2, Miami Beach.

2              No. 3, both parents were born in New York

3     City.

4              No. 4, I'm a building contractor and, also,

5     property manager.

6              No. 5, I live on Miami Beach.

7              No. 6, I own.

8              No. --

9              THE COURT:  How long have you lived on Miami

10    Beach?

11             PROSPECTIVE JUROR NO. 23:  Pretty much my

12    entire life.

13             THE COURT:  Are you living with anyone?

14             PROSPECTIVE JUROR NO. 23:  No.  I live alone.

15             No. 7, no.

16             No. 8, I'm single.

17             No. 9, no.  I live alone.

18             No. 10, no.

19             No. 11, no.

20             No. 12, I do understand a little bit of

21    Spanish.

22             No. 13, different -- going to different

23    sporting events, projects around the house.

24             No. 14, four-year college degree, bachelor's

25    in civil engineering.

1          No. 15, no.

2          16, all of the above.  Newspaper, television,

3     radio and the Internet.

4          No. 17, no.

5          No. 18, my sister-in-law is an attorney with

6     the Florida Bar.

7          No. 19, no.

8          No. 20, no.

9          No. 21, no.

10         22, no.

11         23, no.

12         24, yes.  It was a home burglary.  They did

13    arrest somebody.  And I'm not sure what happened with

14    the case.

15         THE COURT:  Are you generally satisfied or

16    dissatisfied with the way you were treated?

17         PROSPECTIVE JUROR NO. 23:  Satisfied.

18         THE COURT:  No. 25?

19         PROSPECTIVE JUROR NO. 23:  25, I did give a

20    deposition for that case.

21         26, no.

22         27, no.

23         28, no.

24         29, no.

25         30, yes.  It was federal court, a civil trial.

```
 1              31, no.

 2              32, no.

 3              33, no.

 4              34, no.

 5              And 35, yes.

 6              THE COURT:  As far as the civil trial was

 7    concerned, did the jury reach a verdict?

 8              PROSPECTIVE JUROR NO. 23:  Yes.

 9              THE COURT:  Were you the foreperson?

10              PROSPECTIVE JUROR NO. 23:  No.

11              THE COURT:  Thank you, sir.

12              Juror No. 24.

13              PROSPECTIVE JUROR NO. 24:  Hi.  No. 24.

14              No. 1, 54.

15              No. 2, Pennsylvania.

16              No. 3, Pennsylvania and West Virginia.

17              No. 4, clerical.

18              THE COURT:  What kind of firm?

19              PROSPECTIVE JUROR NO. 24:  Typing and

20    accounting.

21              THE COURT:  Okay.

22              PROSPECTIVE JUROR NO. 24:  No. 5, Kendall.

23    We've been there about 25 years.

24              No. 6, we own.

25              7 --
```

1          THE COURT:  Who are you living with?

2          PROSPECTIVE JUROR NO. 24:  My husband and two

3    children.

4          No. 7, no.

5          No. 8, married.

6          No. 9, I live with my husband and two of the

7    kids.

8          Husband is a clinical psychologist.

9          No. 10, 24, 21 and 18.  They're all students

10   at the university.

11         THE COURT:  Okay.

12         PROSPECTIVE JUROR NO. 24:  No. 11, no.

13         No. 12, no.

14         No. 13, reading.

15         No. 14, high school.

16         No. 15, no.

17         No. 16, everything that's listed.

18         No. 17, no.

19         18, my husband is a forensic psychologist.  He

20   gets hired to be an expert witness by the prosecutor,

21   the public defender and for the federal court

22   sometimes.

23         No. 19, no.

24         20, psychology.

25         21, not that I'm aware.

```
1              No. 22, no.

2              23, yes.  We had an attempted burglary of a

3       house and a car.  We did report it.  No, they never

4       found anything.  But it didn't bother me because I

5       didn't think they would.

6              24, no.

7              25, no.

8              26, no.

9              27, I have a brother-in-law that 20 years ago

10      worked for the Post Office and was arrested for

11      stealing money.  I have no idea what happened to him.

12      I know he didn't have a trial, but I think he went --

13      he was on probation.

14              THE COURT:  Is there anything about your

15      brother-in-law's experience that would make it

16      difficult for you to sit and listen to the evidence in

17      this case and be fair to both the Government and the

18      Defendants?

19              PROSPECTIVE JUROR NO. 24:  No.  Not a problem.

20              28, I belong to a church.

21              29, no.

22              30, no.

23              31, no.

24              32, no.

25              33, no.
```

```
1              34, no.

2              35, yes.

3              THE COURT:  Thank you, ma'am.

4              Juror No. 25.

5              PROSPECTIVE JUROR NO. 25:  Yes.  No. 25.

6              No. 1 is 49.

7              No. 2, Colombia.

8              No. 3, Colombia.

9              No. 4, outreach marketing.

10             No. 5, Coral Gables, 12 years.

11             No. 6, we own.

12             No. 7, I lived in Colombia.

13             8, married.

14             9, my husband has operated on all major radio

15    stations in the USA, Hispanic.

16             No. 10, 11 is no.

17             No. 12, speak, write and understand Spanish.

18             THE COURT:  I'm sorry.  I didn't understand

19    what your husband does.

20             PROSPECTIVE JUROR NO. 25:  He owned and

21    operated Hispanic radio stations throughout the United

22    States.

23             THE COURT:  Oh, okay.  Is he still doing that?

24             PROSPECTIVE JUROR NO. 25:  He does a lot of

25    consulting work.
```

1            THE COURT:  Okay.

2            PROSPECTIVE JUROR NO. 25:  No. 13, reading,

3    traveling, hiking.

4            No. 14, a bachelor's in marketing

5    merchandising.

6            No. 15, no.

7            No. 16, newspaper, TV, radio, international

8    news.

9            No. 17, no.

10           No. 18, no.

11           No. 19, no.

12           No. 20, I guess media communications.

13           No. 21, as I said, my husband is doing

14   consulting work for Washington for a Cuban entity.

15           THE COURT:  Is that Radio Marti?

16           PROSPECTIVE JUROR NO. 25:  Radio Marti and

17   TV Marti.  Yes.

18           No. 22, well, my sister works at TSA as a

19   supervisor.  She's been there for -- I don't know --

20   six years.

21           No. 23, aside from what I've mentioned before,

22   my car was completely destroyed, and I was being

23   followed for a couple of days.  So that's part of --

24   that's the only --

25           THE COURT:  Was that reported?

```
 1              PROSPECTIVE JUROR NO. 25:  Excuse me?
 2              THE COURT:  Was that part of what you told me
 3    earlier?
 4              PROSPECTIVE JUROR NO. 25:  Yes.
 5              THE COURT:  No. 24?
 6              PROSPECTIVE JUROR NO. 25:  No.
 7              No. 25, no.
 8              No. 26, no.
 9              No. 27, my husband's best friend was accused
10    and it was like a well-publicized case in Miami.  He
11    was charged and convicted.  And I guess it was --
12              THE COURT:  What was he convicted of?
13              PROSPECTIVE JUROR NO. 25:  I guess paying some
14    money or -- media-related with the Government,
15    governmental entity in Miami.
16              But I didn't follow the case very much because
17    I was traveling -- constantly traveling.  So I would
18    get feedback from my family and friends and some news
19    that I read.
20              THE COURT:  Okay.
21              PROSPECTIVE JUROR NO. 25:  No. 28, no.
22              No. 29, no.
23              30, no.
24              31, no.
25              32, no.
```

```
1              33, no.

2              34, no.

3              35, yes, to all.

4              PROSPECTIVE JUROR NO. 26:  I'm Juror 26.

5         No. 1, 58.

6         No. 2, Cuba.

7         No. 3, Cuba.

8              Right now, I'm in training for restaurant

9    management.

10             My general area of residence is Miami-Dade,

11   Southwest.

12             I have been living in Southwest Miami-Dade for

13   21 years.

14             We own.

15             7, no.

16             THE COURT:  Who are you living with?

17             PROSPECTIVE JUROR NO. 26:  My wife.

18             No. 8, I'm married.

19             No. 9, my wife is a federal agent.

20             THE COURT:  What kind of federal agent is she?

21             PROSPECTIVE JUROR NO. 26:  Internal Revenue

22   Service.

23             THE COURT:  I'm sorry?

24             PROSPECTIVE JUROR NO. 26:  Internal Revenue

25   Service.
```

1              THE COURT:  Okay.

2              PROSPECTIVE JUROR NO. 26:  No. 10, I have a

3     child.  He's 36 years old.  He's a driver right now.

4              No. 11, he's living in the United States.

5              No. 12, Spanish.

6              No. 13, traveling, computers, collecting

7     coins.

8              No. 14, bachelor's degree, art and science.

9              No. 15, no.

10             No. 16, everything.  Newspaper, television,

11    radio, Internet.

12             17, no.

13             No. 18, yes.  Federal agent.

14             No. 19, no.

15             No. 20, I guess some classes in psychology and

16    law.

17             21, no.

18             22, no.

19             23, yes.  Home burglary.  No one was arrested.

20             THE COURT:  Are you generally satisfied or

21    dissatisfied with the way you were treated?

22             PROSPECTIVE JUROR NO. 26:  Satisfied.

23             THE COURT:  24?

24             PROSPECTIVE JUROR NO. 26:  24, no.

25             25, no.

```
 1              26, yes.  All the charges were dropped.

 2              THE COURT:  What were you accused of?

 3              PROSPECTIVE JUROR NO. 26:  False allegation.

 4              THE COURT:  What was the allegation?  Can you

 5    tell me?

 6              PROSPECTIVE JUROR NO. 26:  Can I speak to you

 7    on the side?

 8              THE COURT:  Sure.  Come on up.

 9              (Whereupon, proceedings were had at side-bar

10    outside the presence of the jury which have been sealed

11    per instructions of the Court.)

12              (Whereupon, the following proceedings were had

13    in open court:)

14              PROSPECTIVE JUROR NO. 26:  Okay.

15              THE COURT:  No. 27?

16              PROSPECTIVE JUROR NO. 26:  27, no.

17              28, yes.

18              29, no.

19              30, yes.  I was serving in a civil trial.  We

20    reached a verdict.  I was not a foreperson.

21              THE COURT:  Okay.

22              PROSPECTIVE JUROR NO. 26:  31, no.

23              32, no.

24              33, no.

25              34, no.
```

```
 1              And 35, yes.

 2              THE COURT:  Thank you, sir.

 3              Juror No. 27.

 4              PROSPECTIVE JUROR NO. 27:  No. 27.

 5              No. 1, 64.

 6              No. 2, Miami.

 7              No. 3, Miami.

 8              No. 4, retired.  But I am the coordinator in

 9    helping my daughter establish the child care service

10    that she's trying to start.

11              THE COURT:  And what did you do before you

12    retired?  What type of work did you do?

13              PROSPECTIVE JUROR NO. 27:  I taught school.

14              THE COURT:  Okay.

15              PROSPECTIVE JUROR NO. 27:  North Dade.

16              THE COURT:  That's No. 5?

17              PROSPECTIVE JUROR NO. 27:  No. 5.

18              THE COURT:  How long have you been in North

19    Dade?

20              PROSPECTIVE JUROR NO. 27:  Most of my life.

21              No. 6, rent.

22              No. 7, no.

23              THE COURT:  Who are you living with?  Your

24    daughter?  Are you living with your daughter?

25              PROSPECTIVE JUROR NO. 27:  No.  I live by
```

```
 1   myself.  But I go there.
 2           THE COURT:  Okay.
 3           PROSPECTIVE JUROR NO. 27:  Okay.
 4           THE COURT:  No. 7 is no?
 5           PROSPECTIVE JUROR NO. 27:  No. 7 is no.
 6           No. 8, divorced.
 7           The ages of my children are 44, 43, 38 and 35.
 8           THE COURT:  Are they working?
 9           PROSPECTIVE JUROR NO. 27:  Yes.  Long-distance
10   truck driver, child caregiver, a salesperson and
11   Corrections.
12           THE COURT:  Okay.  No. 11?
13           PROSPECTIVE JUROR NO. 27:  No.
14           No. 12, yes.  I understand and speak some
15   Spanish.  No. 12, I don't write it, though.
16           I do read, though.  I like helping others and
17   listening.
18           14, college with certification in early
19   childhood education.
20           No. 15, no.
21           THE COURT:  16?
22           PROSPECTIVE JUROR NO. 27:  Newspaper,
23   television, radio.
24           THE COURT:  17?
25           PROSPECTIVE JUROR NO. 27:  I have a son that
```

```
1   works in Broward County Corrections.  And I have a

2   police officer -- a daughter-in-law that was a police

3   officer, but due to an injury, she has retired

4   recently.

5           THE COURT:  Okay.  No. 18?

6           PROSPECTIVE JUROR NO. 27:  No.

7           19, no.

8           20, no.

9           21, no.

10          22, yes.  It's my daughter-in-law that I said

11  was working in law enforcement, but now she's retired.

12          23, yes.  My car was burglarized.

13          THE COURT:  Was it reported?

14          PROSPECTIVE JUROR NO. 27:  Yes, it was.

15          THE COURT:  Anyone arrested?

16          PROSPECTIVE JUROR NO. 27:  No.

17          THE COURT:  Are you generally satisfied or

18  dissatisfied with the way you were treated?

19          PROSPECTIVE JUROR NO. 27:  Yes.

20          THE COURT:  Yes?  Satisfied?

21          PROSPECTIVE JUROR NO. 27:  Yes.

22          24, no.

23          THE COURT:  25?

24          PROSPECTIVE JUROR NO. 27:  No.

25          26, no.
```

```
 1              THE COURT:  27?

 2              PROSPECTIVE JUROR NO. 27:  I had a friend

 3    in -- from childhood that I hadn't seen forever and I

 4    met again with that person and I understand that the

 5    person had committed a murder.

 6              THE COURT:  Do you know anything about the

 7    circumstances of the case?

 8              PROSPECTIVE JUROR NO. 27:  No.

 9              THE COURT:  Is there anything about that

10    situation that would make it difficult for you to sit

11    and listen to the evidence in this case and be fair to

12    both the Government and the Defendants?

13              PROSPECTIVE JUROR NO. 27:  No.

14              THE COURT:  No. 28?

15              PROSPECTIVE JUROR NO. 27:  Yes.  I do belong

16    to a church.

17              THE COURT:  29?

18              PROSPECTIVE JUROR NO. 27:  No.

19              THE COURT:  30?

20              PROSPECTIVE JUROR NO. 27:  No.

21              THE COURT:  31?

22              PROSPECTIVE JUROR NO. 27:  No.

23              32, I have -- I've lost some sight in one of

24    my eyes, and the surgery is pending.

25              And I don't have any problem understanding
```

1    English.

2          No. 34, I am being monitored for a chronic

3    disease.

4          THE COURT:  Okay.

5          PROSPECTIVE JUROR NO. 27:  No. 35, no.

6          THE COURT:  Okay.

7          Juror No. 28.

8          PROSPECTIVE JUROR NO. 28:  No. 28.

9          No. 1, 50.

10         2, Jamaica.

11         3, Jamaica.

12         4, systems analyst.

13         5, Miami.

14         6, own.

15         THE COURT:  How long in Miami?

16         PROSPECTIVE JUROR NO. 28:  On and off,

17   33 years.

18         THE COURT:  Are you living with anyone?

19         PROSPECTIVE JUROR NO. 28:  No.

20         No. 7, yes.

21         No. --

22         THE COURT:  Where did you live?

23         PROSPECTIVE JUROR NO. 28:  Jamaica, for

24   15 years.

25         No. 8, single.

```
 1            9, no.

 2            10, NA, not applicable.

 3            11, NA.

 4            12, Spanish.

 5            13, no hobbies.

 6            14, bachelor of science.

 7            Currently going to night school again, Mondays

 8    and Wednesdays.

 9            15, no.

10            16, all of the items.

11            17, no.

12            18, no.

13            19, no.

14            20, no.

15            21, no.

16            22, no.

17            23, yes.  Three car break-ins, one home

18    invasion.

19            THE COURT:  Were they reported?

20            PROSPECTIVE JUROR NO. 28:  Yes.

21            THE COURT:  Anyone arrested?

22            PROSPECTIVE JUROR NO. 28:  No.

23            THE COURT:  Are you generally satisfied or

24    dissatisfied with the way --

25            PROSPECTIVE JUROR NO. 28:  No opinion, because
```

```
1    nothing was ever resolved.

2              24, no.

3              25, no.

4              26, no.

5              27, yes.

6              THE COURT:  Who would that be?

7              PROSPECTIVE JUROR NO. 28:  My cousin.  He

8    was -- they planted drugs in his business and arrested

9    him.

10             THE COURT:  Okay.

11             PROSPECTIVE JUROR NO. 28:  28, I go to church,

12   but I don't belong to a church.

13             29, no.

14             30, yes.

15             31, no.

16             THE COURT:  The jury that you served on:  Was

17   it criminal or civil?

18             PROSPECTIVE JUROR NO. 28:  I don't know what

19   the difference is.  But it was right out here by the

20   Orange Bowl.

21             THE COURT:  The Metro Justice Building?

22             PROSPECTIVE JUROR NO. 28:  Yeah.  A

23   one-day-trial thing.

24             THE COURT:  Did the jury reach a verdict?

25             PROSPECTIVE JUROR NO. 28:  I don't know,
```

1    because I was -- what did they call me?  An alternate?

2            THE COURT:  An alternate.

3            PROSPECTIVE JUROR NO. 28:  Yeah.

4            THE COURT:  Okay.

5            PROSPECTIVE JUROR NO. 28:  31, no.

6            32, no.

7            33, no.

8            34, no.

9            35, yes.

10           THE COURT:  Thank you, sir.

11           JUROR No. 29.

12           PROSPECTIVE JUROR NO. 29:  Hi.  I'm Juror

13   No. 29.

14           No. 1, 45 years old.

15           No. 2, Miami, Florida.

16           No. 3, Costa Rica and Puerto Rico.

17           No. 4, I'm an environmental manager for a

18   cruise line here in Miami.

19           No. 5, I reside in Miami Springs, but I spend

20   a lot of my time in Palm Bay at my girlfriend's home.

21           No. 6 --

22           THE COURT:  How long have you been in the

23   Springs?

24           PROSPECTIVE JUROR NO. 29:  Most of my life.

25   I was born and raised in Miami Springs, but spent

1    10 years in LA.

2           I do own a home in Miami Springs that's being

3    remodeled.  Therefore, I am staying in Palm Bay these

4    last few months.

5           No. 7 is no.

6           No. 8, I'm single, though I'm in a committed

7    relationship for almost two years now.

8           My girlfriend is a general counsel.

9           THE COURT:  For what?

10          PROSPECTIVE JUROR NO. 29:  A company here in

11   Miami.  It's a holding company owned by a private

12   equity firm.

13          THE COURT:  Okay.  No. 10?

14          PROSPECTIVE JUROR NO. 29:  No. 10, I have no

15   children.

16          No. 11, no.

17          No. 12, yes.  I'm fluent in Spanish.

18          No. 13, cycling, photography.  I enjoy

19   reading.  And I do travel a lot to Costa Rica.  I own a

20   small teak plantation there.

21          No. 14, I earned a bachelor's of science in

22   environmental, 1987.

23          No.  I've not attended law school or a

24   paralegal institute.

25          No. 16, Google, *Fox News*, *60 Minutes* and

```
 1   various periodicals.
 2           No. 17 through 34 are all no, with the
 3   exception of 28.  I am Christian.  I'm a Catholic.
 4           And No. 35 is yes.  I do own a home computer
 5   and work on a computer throughout the day at work.
 6           THE COURT:  Okay.  Juror No. 30.
 7           PROSPECTIVE JUROR NO. 30:  Juror 30.
 8           I'm 58.
 9           No. 2, Cuba.
10           3, Cuba.
11           4, legal assistant.
12           5, Hialeah, for 40 years.
13           6, I own.  And I live with my family.
14           7, Cuba, in my childhood.
15           8, I'm married.
16           9, my husband's retired.
17           10, my children are 36 and 29.  My daughter
18   works for HR, and my son just finished Firefighter
19   Academy.
20           THE COURT:  What did your husband do before he
21   retired?
22           PROSPECTIVE JUROR NO. 30:  He was a butcher.
23           11, no.
24           12, Spanish, fluent.
25           13, I take care of my elderly mother, who has
```

```
 1    Alzheimer's, watch TV and my grandchildren.
 2             14, high school, and I have a real estate
 3    license.
 4             15, no.
 5             All of the above --
 6             THE COURT:  For 16?
 7             PROSPECTIVE JUROR NO. 30:  16.  I'm sorry.
 8             All of the above.  And I do love the news
 9    and -- because I do watch it all the time.  And I
10    believe I'm familiar with some of the facts of this
11    case.
12             17, no.
13             18, no.
14             19, no.
15             20, yes, in law, for 35 years.
16             21, no.
17             22, no.
18             23, yes.  My husband was mugged a few years
19    back, and my parents' home was robbed.
20             THE COURT:  Was -- were those instances
21    reported?
22             PROSPECTIVE JUROR NO. 30:  Yes.
23             THE COURT:  Anyone arrested?
24             PROSPECTIVE JUROR NO. 30:  No.
25             THE COURT:  Generally satisfied or
```

1    dissatisfied with the way you were treated?

2          PROSPECTIVE JUROR NO. 30:  Neither way, since

3    nothing happened.

4          THE COURT:  Okay.

5          PROSPECTIVE JUROR NO. 30:  24, no.

6          25, yes.  A civil trial.

7          26, no.

8          THE COURT:  Did you actually testify in open

9    court or was it a deposition?

10         PROSPECTIVE JUROR NO. 30:  No.  Open court.

11         27, yes.  My daughter was caught -- she bought

12   a fake license so she would be able to go to clubs and

13   so forth.

14         28, yes.

15         THE COURT:  What happened with that charge?

16         PROSPECTIVE JUROR NO. 30:  It was *nolle*

17   *pros'ed*.  Her license was suspended for a year.

18         THE COURT:  Do you think that she was treated

19   fairly by the criminal justice system?

20         PROSPECTIVE JUROR NO. 30:  Yes.  I believe so.

21         THE COURT:  Did she have a lawyer?

22         PROSPECTIVE JUROR NO. 30:  Yes.

23         THE COURT:  Was she well represented by her

24   lawyer?

25         PROSPECTIVE JUROR NO. 30:  Yes.

1        THE COURT:  Was there anything about your

2  daughter's experience that would make it difficult for

3  you to sit and listen to the evidence in this case and

4  be fair to both the Government and the Defendants?

5        PROSPECTIVE JUROR NO. 30:  I don't think so.

6        THE COURT:  Think so or know so?

7        PROSPECTIVE JUROR NO. 30:  I don't.

8        THE COURT:  Don't what?

9        PROSPECTIVE JUROR NO. 30:  I don't believe

10  that it would affect.

11        THE COURT:  Okay.

12        PROSPECTIVE JUROR NO. 30:  Let me see.

13        31, no.

14        32, no.

15        33, no.

16        34, no.

17        35, yes.

18        THE COURT:  Okay.

19        PROSPECTIVE JUROR NO. 31:  I'm Juror 31.

20        I'm 38.

21        I was born in Peru.

22        My parents are from in Peru.

23        I'm a senior vice president of a financial

24  services company.

25        I live Downtown Miami.  I was -- been here for

```
 1    five years.  Before, I lived in New York City.
 2             I own my apartment.  I live by myself.
 3             I lived 15 years in Peru.
 4             I'm divorced.
 5             9, doesn't apply.
 6             I don't have any children.
 7             I don't have any children outside the States.
 8             No. 12 is Spanish and Portuguese.
 9             No. 13, I do outdoor sports, racquetball,
10    tennis, biking.
11             14, I hold a degree in business administration
12    and a NASD license, National Association of Securities
13    Dealers.
14             15, no.
15             16, newspaper, television, Internet, office
16    computers.
17             17, no.
18             18, no.
19             19, no.
20             20, no.
21             21, no.
22             22, no.
23             23, no.
24             24, no.
25             25, no.
```

```
1              26, no.

2              27, no.

3              28, yes.

4              29, no.

5              30, no.

6              31, no.

7              32, no.

8              33, no.

9              34, no.

10             35, yes.

11             THE COURT:  Thank you, sir.

12             Juror No. 32.

13             PROSPECTIVE JUROR NO. 32:  Juror No. 32.

14             I'm 42.

15             I'm from Havana, Cuba.

16             My parents are also from Cuba.

17             I'm a licensed boat -- five-boat captain and,

18   also, a dive master.

19             I live in South Dade, for 37 years.

20             I own my house.  Live with my wife.

21             I've never lived outside the United States,

22   you know.  I left Cuba when I was 4 years old.

23             I'm married.

24             I live with my wife and she's an office

25   manager.
```

1          THE COURT:  What kind of firm is she an office

2   manager for?

3          PROSPECTIVE JUROR NO. 32:  Well, it's a state

4   park.  It's called Coral Reef down in the Keys.

5          I have a 3-year-old boy.

6          I don't have anyone outside the United States.

7          I speak fluent, write Spanish.

8          My hobbies are wreck diving, shark diving.

9          I -- high school.

10          No.  That was 15.  No.

11          THE COURT:  16?

12          PROSPECTIVE JUROR NO. 32:  TV.

13          THE COURT:  17?

14          PROSPECTIVE JUROR NO. 32:  No.  No.

15          THE COURT:  I'm sorry?

16          PROSPECTIVE JUROR NO. 32:  No.

17          THE COURT:  18?

18          PROSPECTIVE JUROR NO. 32:  No.

19          THE COURT:  19?

20          PROSPECTIVE JUROR NO. 32:  No.

21          20, no.

22          21, no.

23          22, no.

24          23, no.

25          24, no.

```
 1              25, no.

 2              26, no.

 3              27, yes.  I had an uncle.  He was accused of

 4    drug trafficking back in '83.

 5              THE COURT:  Did you attend any of his

 6    hearings?

 7              PROSPECTIVE JUROR NO. 32:  Just one.

 8              THE COURT:  What happened with that charge?

 9              PROSPECTIVE JUROR NO. 32:  He got sentenced to

10    20 years.

11              THE COURT:  Did you visit him while he was

12    incarcerated?

13              PROSPECTIVE JUROR NO. 32:  Once.

14              THE COURT:  Do you think he was treated fairly

15    by the criminal justice system?

16              PROSPECTIVE JUROR NO. 32:  Yes.

17              THE COURT:  Do you think he was well

18    represented by his lawyer?

19              PROSPECTIVE JUROR NO. 32:  I don't know.

20              THE COURT:  Is there anything about your

21    uncle's experience that would make it difficult for you

22    to sit and listen to the evidence in this case and be

23    fair to both the Government and the Defendants?

24              PROSPECTIVE JUROR NO. 32:  No.

25              THE COURT:  28?
```

1           PROSPECTIVE JUROR NO. 32:  No.

2           29, no.

3           30, no.

4           31, no.

5           32, no.

6           33, no.

7           34, no.

8           35, yes.

9           THE COURT:  Thank you, sir.

10           Juror No. 33.

11           PROSPECTIVE JUROR NO. 33:  I'm Juror No. 33.

12           I'm 23 years old, No. 1.

13           No. 2, Boston, Massachusetts.

14           No. 3, parents are from Haiti.

15           No. 4, security officer.

16           No. 5, Miami Shores.  I've been living there

17   for, like, eight years.

18           No. 6, I rent.

19           THE COURT:  Are you living with anyone?

20           PROSPECTIVE JUROR NO. 33:  My aunt and my

21   uncle.

22           No. 7, no.

23           No. 8, single.

24           No. 9, my uncle is a chef.

25           No. 10 --

1           THE COURT:  What about your aunt?

2           PROSPECTIVE JUROR NO. 33:  Me aunt works at

3      the airport.

4           THE COURT:  What does she do at the airports?

5           PROSPECTIVE JUROR NO. 33:  Front desk.

6           THE COURT:  What -- front desk for whom?

7           PROSPECTIVE JUROR NO. 33:  Like the name of

8      the airport or the name of the --

9           THE COURT:  An information desk?

10          PROSPECTIVE JUROR NO. 33:  Yes.

11          THE COURT:  So who is she employed by?

12          PROSPECTIVE JUROR NO. 33:  Wyndham

13     International Airport.  It's by the airport.

14          THE COURT:  Oh.  She's working at a hotel by

15     the airport?

16          PROSPECTIVE JUROR NO. 33:  Yes.

17          No. 8, single.

18          No. 9, I already answered that.

19          No. 10, I got one son.  He's 5 years old.

20          No. 11, no.

21          No. 12, I speak Creole.  I don't -- like I

22     don't write -- I can't write in Creole.

23          No. 13, DJ.

24          No. 14, high school.

25          No. 15, no.

```
1              No. 16, radio.

2              No. 17, no.

3              No. 18, no.

4              No. 19, no.

5              No. 20, yes.  Security.

6              No. 21, no.

7              No. 22, no.

8              No. 23, no.

9              No. 24, no.

10             No. 25, no.

11             No. 26, no.

12             No. 27, no.

13             No. 28, yes.  I go to a Catholic church.

14             No. 29, no.

15             No. 28, no -- I mean, No. -- excuse me.

16             No. 30, no.

17             No. 31, no.

18             No. 32, no.

19             No. 33, no.

20             No. 34, no.

21             No. 35, yes.

22             THE COURT:  What are you doing now?  Are you

23     working, sir?

24             PROSPECTIVE JUROR NO. 33:  No.  I'm

25     self-employed.  I just DJ, like, part-time, stuff like
```

1    that.

2              THE COURT:  You said that you had done some

3    work in security.

4              What is it that you did?

5              PROSPECTIVE JUROR NO. 33:  I worked -- I used

6    to previously work for Kent Security.

7              THE COURT:  Okay.  How long did you work for

8    them?

9              PROSPECTIVE JUROR NO. 33:  For, like, two

10   years.

11             THE COURT:  Okay.  So now you're a part-time

12   DJ?

13             PROSPECTIVE JUROR NO. 33:  Yes.

14             THE COURT:  What do you do with the rest of

15   your time?  Are you working any other job?

16             PROSPECTIVE JUROR NO. 33:  No.  I'm attending

17   school until I -- like, my license -- my security

18   license is, like, expired.  I got to renew it.

19             THE COURT:  Okay.  So where are you attending

20   school?

21             PROSPECTIVE JUROR NO. 33:  Miami-Dade.

22             THE COURT:  What are you studying there?

23             PROSPECTIVE JUROR NO. 33:  Like business --

24   business administration.

25             THE COURT:  Okay.  And you're trying get your

```
 1   security license back?
 2           PROSPECTIVE JUROR NO. 33:  Yes.  It just
 3   expired.
 4           THE COURT:  What do you have to do to get it
 5   back?
 6           PROSPECTIVE JUROR NO. 33:  I just got to pay
 7   the small little fee.
 8           THE COURT:  Oh, okay.
 9           PROSPECTIVE JUROR NO. 33:  Yeah.
10           THE COURT:  Okay.  And last, but not least,
11   Juror No. 34.
12           PROSPECTIVE JUROR NO. 34:  Juror 34.
13           No. 1, 28.
14           No. 2, Miami.
15           No. 3, Miami and Georgia.
16           No. 4, security.
17           No. 5, Miami, Overtown.
18           No. 6, rent, with family.
19           No. 7, no.
20           No. 8, single.
21           No. 9, clerk.  My mom's a clerk.
22           No. 10, I got a daughter that's 4.
23           THE COURT:  What kind of clerk is your mom?
24           PROSPECTIVE JUROR NO. 34:  At a school -- a
25   high school.
```

1           THE COURT:  Okay.

2           PROSPECTIVE JUROR NO. 34:  No. 10, I have a

3    daughter, 4 years old.

4           No. 11, no.

5           No. 12, no.

6           No. 13, yes.  Watch movies and sports.

7           No. 14, 12th grade.

8           No. 15, no.

9           No. 16, all of the above.

10           No. 17, yes.  I got a friend that's a

11    corrections officer and a police officer and a cousin

12    that's a corrections officer and a police officer.

13           THE COURT:  The correction officers:  Are they

14    in the County or in the federal system?

15           PROSPECTIVE JUROR NO. 34:  In the County.

16           THE COURT:  Okay.

17           PROSPECTIVE JUROR NO. 34:  No. 18, no.

18           No. 19, no.

19           No. 20, security.

20           No. 21, no.

21           No. 22, yes.  My sister applied for a

22    Corrections officer, but I don't know what happened

23    with that.

24           No. 23, yes.

25           Twice.  My car been stolen twice.  Once

 1   reported.  The other time, no.

 2            No. 24, yes.

 3            THE COURT:  I'm sorry.

 4            Both of those times that your car was stolen,

 5   was it reported?

 6            PROSPECTIVE JUROR NO. 34:  Once it was

 7   reported.  The other one wasn't.

 8            THE COURT:  Anyone arrested?

 9            PROSPECTIVE JUROR NO. 34:  No.

10            THE COURT:  Are you generally satisfied or

11   dissatisfied with the way you were treated?

12            PROSPECTIVE JUROR NO. 34:  Well, I got my car

13   back.  So I was satisfied.

14            THE COURT:  Okay.

15            PROSPECTIVE JUROR NO. 34:  No. 24, yes.  I

16   witnessed a crime when I was younger.

17            THE COURT:  What crime was that?

18            PROSPECTIVE JUROR NO. 34:  I saw someone get

19   shot.

20            THE COURT:  Was it reported?

21            PROSPECTIVE JUROR NO. 34:  Yes.

22            THE COURT:  Anyone arrested?

23            PROSPECTIVE JUROR NO. 34:  I don't know.

24            THE COURT:  Are you generally or dissatisfied

25   with the way you were treated?

1           PROSPECTIVE JUROR NO. 34:  I'm satisfied.

2           THE COURT:  Okay.  25?

3           PROSPECTIVE JUROR NO. 34:  No. 25, no.

4      26, no.

5      27, yes.  Like I said this morning, I got a

6  cousin that committed a murder, and I have friends --

7           THE COURT:  Okay.  You already told me about

8  that.  Right?

9           PROSPECTIVE JUROR NO. 34:  Yes.

10      No. 28, yes.  I belong to a church.

11      No. 29, no.

12      No. 30, no.

13      No. 31, no.

14      No. 32, no.

15      No. 33, no.

16      No. 34, no.

17      And 35, yes.

18           THE COURT:  Counsel, please approach.

19           (Whereupon, proceedings were had at side-bar

20  outside the presence of the jury which have been sealed

21  per instructions of the Court.)

22           (Whereupon, the following proceedings were had

23  in open court:)

24           THE COURT:  Juror No. 9, could you come up,

25  please.

1          PROSPECTIVE JUROR NO. 9:  (Complies.)

2          (Whereupon, proceedings were had at side-bar

3     outside the presence of the jury which have been sealed

4     per instructions of the Court.)

5          (Whereupon, the following proceedings were had

6     in open court:)

7          THE COURT:  Juror No. 21, can you come up,

8     please.

9          PROSPECTIVE JUROR NO. 21:  (Complies.)

10         (Whereupon, proceedings were had at side-bar

11    outside the presence of the jury which have been sealed

12    per instructions of the Court.)

13         (Whereupon, the following proceedings were had

14    in open court:)

15         THE COURT:  Juror No. 13, sir, you had

16    indicated that you were a law clerk for a federal

17    judge.

18         PROSPECTIVE JUROR NO. 13:  Yes.

19         THE COURT:  And was this here in this

20    district?

21         PROSPECTIVE JUROR NO. 13:  Eleventh Circuit.

22         THE COURT:  Court of Appeals.

23         When was that?

24         PROSPECTIVE JUROR NO. 13:  1995 to 1996.

25         THE COURT:  Okay.  And you also mentioned that

1   a relative of yours -- one relative was an Immigration

2   judge and another relative was -- works in the

3   Immigration court or was counsel.  Correct?

4           PROSPECTIVE JUROR NO. 13:  She's a solo

5   practitioner, immigration, right now.  But she clerked

6   for a period of two years or so in the Immigration

7   court.

8           THE COURT:  And you have a relative who's an

9   Immigration judge?

10          PROSPECTIVE JUROR NO. 13:  Yes.  My

11  brother-in-law.

12          THE COURT:  And is he an Immigration judge at

13  Krome or at Miami?

14          PROSPECTIVE JUROR NO. 13:  Miami.

15          THE COURT:  Okay.  Would the fact that you

16  were a law clerk to an appellate judge -- an Eleventh

17  Circuit judge affect your ability to be a fair and

18  impartial juror in this case?

19          PROSPECTIVE JUROR NO. 13:  Not in the least.

20          THE COURT:  Would the fact that you have

21  relatives -- a relative who's an Immigration judge

22  affect your ability to be a fair and impartial juror in

23  this case?

24          PROSPECTIVE JUROR NO. 13:  Not in the least.

25          THE COURT:  Okay.  Thank you, sir.

```
 1              Juror No. 19, ma'am, you had indicated that

 2   you were divorced.  Right?

 3              PROSPECTIVE JUROR NO. 19:  Yes.

 4              THE COURT:  And your ex-husband:  Do you know

 5   what he's doing -- what does he for a living?

 6              PROSPECTIVE JUROR NO. 19:  He's a US letter

 7   carrier.

 8              THE COURT:  He works for the Post Office?

 9              PROSPECTIVE JUROR NO. 19:  Yes.

10              THE COURT:  Okay.  Would the fact that he's

11   employed by the Federal Government affect your ability

12   to be a fair and impartial juror in this case?

13              PROSPECTIVE JUROR NO. 19:  No.

14              THE COURT:  Okay.  Thank you, ma'am.

15              And Juror No. 22, did I hear you correctly,

16   sir, that you said that you have a brother or a

17   brother-in-law who's a Metro-Dade police officer?

18              PROSPECTIVE JUROR NO. 22:  A brother.

19              THE COURT:  A brother.

20              And do you know what his assignment is?

21              PROSPECTIVE JUROR NO. 22:  I believe he's

22   in -- a detective in a narcotics unit.

23              THE COURT:  Okay.  Would the fact that your

24   brother is a police officer affect your ability to be a

25   fair and impartial juror in this case?
```

```
 1              PROSPECTIVE JUROR NO. 22:  No.

 2              THE COURT:  Okay, sir.  Thank you.

 3              We're going to take a ten-minute recess.

 4              Do not discuss this case either amongst

 5    yourselves or with anyone else.  Have no contact

 6    whatsoever with anyone associated with the trial.  Do

 7    not read, listen or see anything touching on this

 8    matter in any way.

 9              If anyone should try to talk to you about this

10    case, you should immediately instruct them to stop and

11    report it to my staff.

12              If you would, be in the lobby in ten minutes.

13    Thank you so much for your patience.

14              (Whereupon, Prospective Jury Panel No. I

15    exited the courtroom at 3:12 p.m. and the following

16    proceedings were had:)

17              THE COURT:  Ten minutes.

18              (Thereupon a recess was taken, after which the

19    following proceedings were had:)

20              THE COURT:  United States of America versus

21    Narseal Batiste, et al., Case No. 06-20373.

22              Counsel, state your appearances, please, for

23    the record once more.

24              MR. GREGORIE:  Richard Gregorie and Jacqueline

25    Arango on behalf of the United States, your Honor.
```

```
 1            MS. JHONES:  Ana Jhones on behalf of Narseal

 2    Batiste, who's present.

 3            MR. LEVIN:  Albert Levin for Patrick Abraham,

 4    who's present.

 5            MR. CASUSO:  Louie Casuso on behalf of Burson

 6    Augustin.

 7            MR. CLARK:  Nathan Clark for Rotschild

 8    Augustine, who's present.

 9            MR. HOULIHAN:  Richard Houlihan with Naudimar

10    Herrera.

11            MR. VEREEN:  Roderick Vereen for Stanley

12    Phanor.

13            THE COURT:  Okay.  All Defendants are present.

14            Do you want me to bring the jurors back in or

15    do you want to do it from here without them present?

16            MR. VEREEN:  That would be best.

17            MR. LEVIN:  Without them present.

18            It's cause challenges you're taking up now?

19            THE COURT:  Cause and hardship.

20            Patricia, you will tell the jurors it's going

21    to be a few more minutes.  There's not a lot of seating

22    space out there.  They can come back in, let's say, in

23    another ten minutes or so.

24            THE COURTROOM DEPUTY:  Okay.

25            THE COURT:  Challenges for cause or hardship
```

1  from either side as to the first 16, the jurors who

2  were seated in the box.

3        MS. ARANGO:  Are we going first, Judge?

4        THE COURT:  From either side.  Go ahead.

5        MS. ARANGO:  Judge, Juror No. 2 for hardship.

6  She's the one that -- the lady that works for CBS in

7  post-production.

8        She says that she's not going to be able to

9  follow the instruction about media coverage because she

10  may have to work after court.  And she's just -- it

11  sounds to me like she's not -- she's the only person at

12  the station that does this job.

13        I think that she should be stricken for cause,

14  based on those answers.

15        THE COURT:  Any objection to hardship?

16        MR. LEVIN:  Your Honor, I'd object simply

17  because in either Trial No. 1 or 2, there was another

18  person similarly situated and they said that they could

19  follow the Court's instruction.  That person worked for

20  Channel 7.

21        THE COURT:  I struck them.

22        MR. LEVIN:  My recollection is that you didn't

23  strike them for cause.

24        THE COURT:  No.  I did.  I absolutely struck

25  that person for cause.

1          MR. LEVIN:  Did you?

2          THE COURT:  Yes.  But there was more extensive

3     questioning for her.  It was based upon her answers.

4          But I absolutely struck her for cause as a

5     result of her position and she would be unable to

6     follow the Court's instructions regarding viewing the

7     media.

8          MR. LEVIN:  I'd ask that No. 2 be individually

9     voir-dired in that regard as well to find out --

10         THE COURT:  I'm going to deny that.

11         I'm going to strike her for both hardship and

12    cause.  She's indicated she would not be able to follow

13    the Court's instructions regarding media coverage

14    because she might have to go into work after court.

15    She works 2:30 to 11:30 and the news is everywhere

16    there.

17         She also indicates that it would be a hardship

18    for her because she's the only person at the station

19    who performs this vital editing function.

20         So she's struck for both.

21         MS. ARANGO:  Judge, next would be Juror

22    No. 12, both for hardship and cause.

23         He's the gentleman -- he's the vice president

24    of an engineering electronics -- he's the vice

25    president of engineering for an electronics equipment

1    company.

2         He's the sole engineer for that company.  The

3    company recently laid off 50 percent of the employees.

4         THE COURT:  Any objection for hardship?

5         MS. JHONES:  No, your Honor.

6         THE COURT:  He's excused for hardship.  You

7    don't need to go any further.

8         MS. ARANGO:  We seek No. 14 for hardship.

9    She's the employee -- she's a speech language

10   pathologist for the school system.

11        She is afraid that her job -- the funding for

12   her position will get cut if she does not attend.  I

13   guess her position is at issue as to whether or not

14   there will be funding for that.

15        And she wants to be able to, you know, remain

16   in her job so that she can feel -- have some control

17   over and feel assured that her position won't get cut

18   and that she'll have funding.

19        She seemed, I think, that she's going to have

20   a problem with being here if it's going to cause her

21   problems with ultimately not having funding for her

22   job.

23        MS. JHONES:  I'm going to object, your Honor.

24        This is the same juror that said, "If they

25   could find me" -- "If they could work without me,

```
 1   fine," words to that effect.
 2          She did indicate that the school -- they were
 3   going to be doing some work regarding funding.  She did
 4   not say that she was afraid that her absence would
 5   result in a cut in funding.
 6          I think that that -- I don't believe that she
 7   made those statements.  To the contrary.
 8          Everyone is going to have a hardship to one
 9   degree or another.  As the Court may recall, during the
10   last two trials, the Court called some of the employers
11   in big companies to make sure that there was not going
12   to be a problem with the employer.
13          This lady is similarly situated, but even
14   beyond that.  This lady expressed her position that, in
15   essence, she would be willing to do it.  And I don't
16   think she indicated anything to the contrary.
17          THE COURT:  What she said was, "We have
18   funding coming up in about 14 days, where it's a
19   federal mandate that we service the students for that
20   particular week to obtain funding.  I'm not sure, with
21   the cutbacks, if they can find someone to take my
22   place."
23          Then she said, "I'm a speech language
24   pathologist.  I mean, if they could, fine.  But...."
25          I'm not going to strike her at this time.  At
```

1     the next go-round, I'll question her more about that.

2     It's not clear to me what that really means.

3              MS. ARANGO:  Right.

4              THE COURT:  I'll question her about it at the

5     next go-round.

6              MS. ARANGO:  Juror No. 17 clearly could not --

7              THE COURT:  Hold on.  We're dealing first with

8     the first 16.

9              MS. ARANGO:  Oh, I'm sorry.

10             THE COURT:  Anyone else on the first 16?

11             MR. HOULIHAN:  I would move No. 8, I think,

12    for hardship, as the nuclear point on March 15 for

13    three weeks -- my notes indicate -- and I could be

14    wrong -- that he was a critical component for the

15    refueling.

16             MS. ARANGO:  Judge, perhaps you can have more

17    questioning of him.  I would be amazed that they do not

18    have another person in communications at Turkey Point

19    that could do that job.

20             Also, it's -- March 15th is a ways away.  It

21    would seem as though they've got -- it just seems to me

22    as though they've got to have somebody there that could

23    do his job, that -- at Turkey Point, which is a huge

24    facility, that there's nobody there that could do that.

25             THE COURT:  I'll reserve on that and ask him

1   about that.

2           MR. CLARK:  Your Honor, on Juror No. 3, Juror

3   No. 3 had indicated that her father-in-law was a US

4   Customs law enforcement -- Government employee.

5           You asked this person if they could set that

6   aside and be fair.

7           And she had a reluctant, "I think so."

8           You asked her, "Do you know so?"

9           And she said, "No," she only thought so.

10          And then there was the fact that her husband

11  worked around 9/11 and that concerned her and her

12  husband had a -- also had a DUI charge and he wasn't

13  treated fairly.

14          And I would challenge her for cause.  It

15  didn't sound like she'd give us a definite answer that

16  she could be fair and impartial.

17          MS. ARANGO:  Judge, I would object to that.

18          I think you can ask her further questioning.

19  But she's in no different category than a lot of people

20  who say, "I think I can be fair.  My life situation --

21  I've had these experiences in my life.  My family's had

22  these experiences.  And I'll do the best I can."

23          I think you can ask her some followup

24  questions.  But she wasn't absolutely certain that she

25  could not be fair, as some of the others have been.

1           THE COURT:  I'm going to grant the challenge

2      for cause.

3           She indicated that, if there were police

4      officers or law enforcement agents who testified in

5      this case -- I asked her if she would be able to sit

6      and listen to their testimony and fairly determine

7      whether she thought that they were being truthful or

8      untruthful, based upon her husband's experience with

9      law enforcement officers, and would that color her

10     ability to do so.

11          And she said, "Yes.  It would color it.  In a

12     police officer's case, it would color it."

13          So I'm going to grant the challenge for cause

14     on Juror No. 3.

15          MR. VEREEN:  Your Honor, if I may, I had

16     another one.

17          THE COURT:  Yes.

18          MR. VEREEN:  No. 15.  This was the gentleman

19     that is the president of the contracting company.  He's

20     a general contractor.  He said he handles the

21     day-to-day operation.

22          I think that -- when you first advised the

23     jury that this would take approximately two months to

24     try, I think he was one of the individuals that raised

25     his hand --

1          THE COURT:  He did.

2          Any objection to hardship?

3          MS. ARANGO:  Yes, Judge.  I would object.

4          I think you can ask him further.  But I didn't

5     even put him as a potential.  He just said that he was

6     the president of a small general contracting firm and

7     that he handled the day-to-day operations.

8          He didn't say there was anybody else that

9     couldn't handle the operations for -- while he's gone.

10          THE COURT:  What he said is, "I'm the

11     president of a small general contracting firm with

12     about 10 employees.  I handle all the day-to-day

13     operations in the office as well as in the field.  This

14     would directly impact my ability for my company to

15     function."

16          MS. ARANGO:  You can ask:  "Is there anybody

17     else that can do your job while you're gone?"  I mean,

18     a person not being able to show up at a job with other

19     employees at that job is -- I mean, it's going to be --

20     it will be inconvenient to the company.

21          But I just don't think it rises to the level

22     of hardship.  And perhaps we could just ask him further

23     questions about other employees filling in for him.

24          MR. VEREEN:  The purpose of the general

25     contractor is that he oversees --

1          THE COURT:  I'm going to grant him for

2   hardship.

3          He's indicated that he's the person who

4   handles all the notices in the office as well as in the

5   field.  He's the president of the firm.

6          I think he's indicated that this is not a big

7   corporation.  This is a 10-person office and he's the

8   president and general contractor and, as general

9   contractor, he's responsible for both operations in the

10  field and in the office.

11         I'm going to grant him for hardship.

12         Is that it in the first 16?

13         MS. JHONES:  No, your Honor.

14         MR. LEVIN:  No. 4, for language.

15         THE COURT:  Any objection?

16         MS. ARANGO:  Judge, I didn't seem to think

17  that he had really much of a problem with the language,

18  not like some of the others.

19         I think, when you got to the point, "Do you

20  have any difficulties understanding or reading?", he

21  said something about he doesn't -- he reads English a

22  little bit.

23         And he seemed to be able to respond to the

24  questions and read the -- I mean, it wasn't until he

25  got to that point that there was any indication.  I

1   mean, he had some broken English, but --

2          THE COURT:  I know Ms. Jhones had brought this

3   up side-bar.  But in looking at my notes again, I have

4   both, "Okay, question mark," and "English and 33."

5          So I'm going to reserve on it.  When he comes

6   in for the next go-round, I think we might be able to

7   tell better how much problem or lack of a problem he

8   has with English.

9          MR. LEVIN:  Judge --

10         MS. JHONES:  Your Honor, that's fine.

11         But I will -- I will note we didn't -- my

12   understanding was that we had decided this issue at

13   side-bar.

14         THE COURT:  I just said I had thought, when

15   you were here side-bar, that my notes indicated that he

16   did have a problem.

17         But in now looking at my notes and what I

18   wrote in them, I realized that I have both, "Okay" and

19   a question mark and "English and 33" all in the same

20   line.

21         So I went back and forth on it.

22         MS. JHONES:  I understand.

23         THE COURT:  I just want to question him more.

24         MS. JHONES:  If I may --

25         THE COURT:  I'm reserving on it.

1        I may let him go because of an English

2  problem, but I'm not prepared to make that finding at

3  this time.

4        MS. JHONES:  I understand.

5        THE COURT:  I know you brought it up side-bar.

6  At that point, I thought my memory was that it was

7  clear.

8        But in looking at my notes, I had different

9  things in there.  And I think I had the same kind of

10  impression that Ms. Arango had, that he was, "Yes,"

11  "No," he seemed to understand, he didn't understand.

12  So I want to explore it further.

13        I'll reserve on the English issue on him.

14        MR. CLARK:  Your Honor, on No. 10, I felt

15  there was a language problem, too.  She didn't seem to

16  understand Question No. 20, and then later she said she

17  had problems with English.

18        THE COURT:  Any objection to No. 10?

19        MS. JHONES:  No objection, your Honor.

20        MS. ARANGO:  All I recall from my notes with

21  her is I had a question on the language problem.

22        To me, she fell into the category of No. 2,

23  which was she went along okay until No. 33 and then she

24  said that, if someone talks fast, she might have a

25  problem.

```
 1            MS. JHONES:  This is the lady who said she has
 2    problems, she loses phrases.
 3            THE COURT:  She did say, if someone talks
 4    fast, that she loses -- she starts losing phrases.
 5            I think she may have a hard time following the
 6    testimony of some of the witnesses who may have various
 7    accents or speak fast or slow.
 8            So I'm going to excuse her for cause for
 9    English.
10            Is that it on the 16?
11            MS. JHONES:  I believe so.
12            THE COURT:  Let's move on to 18 through 34.
13            MR. GREGORIE:  17, your Honor.  17 through 34,
14    your Honor.
15            THE COURT:  I'm sorry.  17 through 34.
16            MR. GREGORIE:  I would propose that the
17    defense go first this time, Judge.
18            MR. VEREEN:  We accept.
19            MS. JHONES:  Your Honor, I have --
20            MR. LEVIN:  No. 18.
21            MS. JHONES:  Thank you.
22            MR. LEVIN:  The father is a police officer.
23    He said he couldn't be fair.
24            THE COURT:  Any objection?
25            MR. GREGORIE:  No objection, your Honor.
```

1           MS. ARANGO:  No.

2           THE COURT:  He's excused for cause.

3           MR. LEVIN:  No. 19, a potential work hardship

4    with regard to her employment.

5           MS. JHONES:  And I believe there's another

6    issue with her, also.

7           MR. LEVIN:  Certain deadlines with regard to

8    Government grants.

9           THE COURT:  I don't find that that's a basis

10   at this time for hardship.  She did indicate it, but

11   she's in the State University system.

12          I'm sure there's more than one person in the

13   State University system who has knowledge of federal

14   grants.

15          So I'm going to deny hardship at this time.

16          MR. LEVIN:  Judge, also, I believe my notes

17   reflect that she had a problem with a person who does a

18   crime for religious beliefs.

19          THE COURT:  She did state that in answer to

20   No. 29.

21          I will question her about that further.  I

22   have that as something to ask her about in the

23   individual voir dire.

24          MR. LEVIN:  Thank you.

25          MR. CLARK:  Your Honor, No. 20 looked like a

```
 1    hardship.  This is the psychotherapist who -- I
 2    understood she had a hardship, your Honor.
 3              THE COURT:  Is that microphone on?
 4              MR. CLARK:  It's on.  It's supposed to be on.
 5    I'll withdraw it, your Honor.
 6              THE COURT:  You're withdrawing it?
 7              MR. CLARK:  Yes.
 8              MR. GREGORIE:  We're going to bring it up
 9    again, Judge.  So we might as well discuss it, Judge.
10              I think she indicated she had a hardship.  She
11    indicated that she works at a homeless shelter and that
12    she has a number of reports that she has to fill and
13    she has to do it as the psychotherapist and she's the
14    one responsible for it, Judge.
15              THE COURT:  I'm going to excuse her for
16    hardship.
17              She indicated she's the only psychotherapist
18    on staff and she's responsible for working with these
19    people who are going into transitional housing, both
20    before and after, and she has to meet with them and no
21    one will be able to take her place.
22              So she's excused for hardship.
23              MR. VEREEN:  No. 21, Judge.  This is the young
24    lady that took the extended lunch break today.
25              MS. ARANGO:  No objection.
```

```
 1            THE COURT:  Okay.  She's excused for hardship.
 2            MR. VEREEN:  Then there's No. 25.
 3            THE COURT:  No. 25.  Any objection?
 4            This is the woman who lived in Queens with the
 5    Afghani man -- or --
 6            MR. LEVIN:  She didn't live with him.  That
 7    was his desire.
 8            MS. ARANGO:  We don't have an objection --
 9    well, let me just discuss it.
10            THE COURT:  She indicated she would have a
11    problem with men testifying from the Middle East.
12            MS. ARANGO:  Okay.  No objection, Judge.
13            THE COURT:  That's what she said, because this
14    gentleman bothered her.
15            MR. VEREEN:  No. 31, your Honor.  This is the
16    gentleman that travels to Latin America and said he
17    works on -- strictly on commission.  No. 31, your
18    Honor.
19            THE COURT:  He said he was commission-based.
20            MR. VEREEN:  Yes.
21            THE COURT:  Any objection?
22            MS. ARANGO:  No objection, Judge.
23            THE COURT:  Excused for hardship.
24            MS. JHONES:  That was 31.  Correct, your
25    Honor?
```

```
 1              THE COURT:  Yes.  31.
 2              MS. JHONES:  Your Honor, No. 26.
 3              THE COURT:  No. 26?
 4              MS. JHONES:  He was the -- this gentleman was
 5    the one who indicated that he had -- he was --
 6              THE COURT:  Falsely accused.
 7              Any objection?
 8              MS. ARANGO:  Yes, Judge.  We would object to
 9    that.
10              He felt very strongly about the false
11    accusation and that he was treated unfairly.  But I
12    don't think he said that he could not -- maybe you --
13    I'm not sure if you asked him directly.
14              But perhaps a followup question saying, "Can
15    you be fair and impartial in a case like this that has
16    nothing to do with the allegations" -- or "doesn't have
17    any similar allegations to a situation that you were
18    in?"
19              THE COURT:  I'll reserve on it and question
20    him.  He was very upset talking about it.  So we'll see
21    if he can get past that.
22              Is that it?
23              MS. JHONES:  Nothing further, your Honor.
24              MS. ARANGO:  Judge, Juror No. 17.  She was --
25    it was evident right from the outset that she could not
```

1    speak English.

2         In fact, Agent Stewart overheard her -- the

3    person next to her commenting to the CSO that she did

4    not understand English at all, and it was pretty

5    evident when she spoke that she had much difficulty

6    with the language.  And she even said she did.  She

7    said she only understands a little bit of English.

8         MR. CLARK:  Your Honor, I would object to

9    that, because that person is similarly situated to

10   Juror No. 4, which they objected to.

11        MS. ARANGO:  I would disagree, Judge.  There's

12   a vast difference in abilities to speak and understand

13   English.  Vast difference.

14        MR. CLARK:  No. 4 had said he understood a

15   little and he read a little.

16        And this lady, No. 17, was identical to him.

17        THE COURT:  I don't agree that she was

18   identical.  I don't have her down as a question mark

19   and then "yes" or "no."

20        I have her responding Question 33 that she

21   understands -- a little bit of English is what she

22   said.  And that's just not sufficient to sit as a

23   juror.

24        So I'm going to excuse her based upon her

25   language deficiency.

1          I may very well excuse on No. 4, but I want to

2     explore that more with him.  My notes go back and

3     forth.

4          MS. ARANGO:  We're challenging No. 24 for

5     cause.  She was the juror that stood up and said that

6     she thinks that the Government has overboard in an

7     effort to fight terrorism.  That in and of itself is

8     not reason.

9          However, according to what was reported to the

10    CSO, she told a juror, "They're never going to

11    convict."

12         Judge, frankly, at that point in time, we were

13    considering seeking the Court remove her so that she

14    doesn't infect the rest of the jury, but we didn't.

15         But certainly she is a problem if she's

16    telling fellow jurors that they're never going to

17    convict in this case.

18         So we would seek to strike her.

19         MS. JHONES:  Your Honor --

20         MR. LEVIN:  Judge, my understanding is the CSO

21    said he overheard her speak to --

22         THE COURT:  No.  The CSO reported that Juror

23    No. 23 reported to her that Juror No. 24 said they're

24    never going to be convicted.

25         MR. LEVIN:  Right.  That's my recollection,

1    also.

2            I would just ask that you give her an

3    opportunity to explain that, because since --

4            THE COURT:  I'll give her an opportunity.  I'm

5    sure, if that's her true feeling, it's going to come up

6    with the next round of questioning.

7            And I will, in fact -- if she answers the next

8    round of questioning in such a way that it's not

9    evident, I'll ask her about these statements.

10           So I'll reserve on it.

11           MS. ARANGO:  We would also -- No. 27, Judge,

12   is a hardship.  She's the woman that probably had one

13   of the most significant hardships out of all of them.

14           She said that she had a death of a family

15   member who was the head of a household.  Her daughter,

16   who was laid off, has just started a daycare business.

17   She's helping the daughter.

18           She's helping to pick up her grandkids and

19   take care of her autistic grandson, in addition to

20   picking up kids from school.

21           THE COURT:  Any objection for hardship?

22           MR. CLARK:  Your Honor, I object, because I

23   don't see her hardship any worse than hardship No. 14,

24   which the Court said they would deny and maybe look at

25   it later.  But I didn't see her hardship any different

1    than No. 14.

2         THE COURT:  I'm going to grant it for

3    hardship.  It's very different from No. 14.  No. 14 is

4    employed by the school system as a speech pathologist.

5         I think I indicated that I was going to

6    question her more about that, about the federal

7    funding, because it was not clear from her answer.

8         But Juror No. 27 clearly said that, due to the

9    death of the head of household, her daughter, who was

10   recently laid off, started a home daycare center and

11   she, who was a teacher -- a daycare teacher -- or early

12   childhood teacher and trained, is helping her to start

13   and she's working in the daycare between 8:00 and 6:00

14   and that she is responsible for taking and transporting

15   her autistic grandchild and is transporting other

16   children.

17        So based upon that convolution of events where

18   it's a startup business, where she is needed to help

19   staff this business, and due to the fact that there was

20   a death of the head of household, I'm going to grant

21   the hardship.

22        MS. ARANGO:  Judge, No. 28, for bias.  This is

23   the juror -- or the potential juror that discussed

24   about the -- his cousin -- him believing that

25   evidence -- that the cops planted drugs in his cousin's

1    business and that he was not treated fairly.

2            And what I thought was significant, Judge, was

3    not just him saying that he didn't think that his

4    cousin was treated fairly, but, if you recall, Judge,

5    you started questioning him and he interrupted you and

6    said, "I said 'yes'" in a very belligerent, sarcastic

7    way.

8            I think it was very evident how this person

9    feels and that he has total disregard for this -- for

10   our system and he has no respect for the criminal

11   justice system.

12           He may not have said that explicitly, but I

13   think that his whole demeanor and the whole way he

14   treated you, Judge, showed that.

15           MS. JHONES:  Your Honor, if may I respond, I

16   think that, number one, this gentleman said, "It would

17   not affect me, but I just wanted to let you know,"

18   referring to the incident that Ms. Arango is

19   addressing.

20           As far as his conduct or the way he expresses

21   himself, your Honor, there is a little bit of a delay

22   with the audio system here.  Plus, some of these people

23   are nervous.  This is a little bit of an intimidating

24   setting.

25           I don't -- to project to this gentleman's

```
 1   response a lack of respect for the Court, I think it's

 2   a little bit of a stretch.

 3            This is -- a lot of these people spoke very

 4   fast.  They're nervous.  And this is one of those, to

 5   the extent that the Court has a concern, I think that

 6   the Court could question him further.

 7            He specifically said that it would not affect

 8   him, but he wanted to advise the Court.

 9            And this gentleman obviously is not a

10   native-born American.  And there are many people that

11   come from different cultures, have different customs

12   and gestures.

13            And to read into that an intention to be

14   disrespectful and to disobey this Court I think is a

15   huge stretch.

16            MS. ARANGO:  Judge, this had nothing to do

17   with an inability to understand, microphones not

18   working, being nervous, differences in culture.

19   Absolutely nothing.

20            He was extremely rude, and what I think it

21   shows is it just showed his true colors.  It showed how

22   he really felt.

23            And the way he blurted that out at that point

24   in time, interrupting you as you were trying to follow

25   up on questions, showed you exactly what he felt.  I
```

1    think that you can interpret from that.

2            THE COURT:  I'm going to reserve on the issue.

3            I was taken aback by his responses to the

4    Court.  But I'll give him the benefit of the doubt, and

5    we'll see in further questioning whether or not he

6    could be a fair and impartial juror.

7            MS. ARANGO:  And, finally, Judge, Juror

8    No. 34, for hardship.  He's the juror that has two

9    jobs.  He's got one full-time job and one part-time job

10   in security.

11           He works every day, full-time, from 7:00 to

12   3:00 and then he works part-time from 3:00 to 7:00 on

13   Tuesdays and Thursdays and 5:15 to 9:00 on Mondays and

14   Wednesdays.  He's paying child support.

15           He was quite frank about the fact that he --

16   that he would be suffering a hardship in this trial.

17           THE COURT:  Any objection?

18           MR. CLARK:  Your Honor, I think that -- I

19   don't think he was clear that that was a hardship.  I'd

20   ask the Court to inquire further.

21           THE COURT:  He was definitely concerned about

22   what was going to happen with his part-time position.

23   He did express that, that he has both a full-time

24   security position and a part-time job.

25           He's working two jobs, 7:00 to 3:00 Monday

1    through Friday, and then Monday to Wednesday, 5:15 to

2    9:00, and Tuesday, Thursdays, 3:00 to 7:00.

3            He would not be able to work at least Tuesday

4    and Thursday and probably Monday and Wednesday for the

5    part-time position.

6            I don't know --

7            MS. JHONES:  The only question I have about

8    that, your Honor, is -- I think that the Court is

9    correct that he did express a concern.

10           And the issue there is:  Is the concern that

11   he's going to be fired?  Which, of course, is not

12   something that would be appropriate action for the

13   employer to take, given his --

14           THE COURT:  I don't know how it relates to

15   part-time positions.  I'd have to look at -- I'm very

16   confident in full-time positions.  But I think it may

17   relate to salary -- you know, full-time positions.

18           But I'd have it look at it.  I just don't know

19   the answer to that without looking at the statute,

20   whether that kind of imposition or -- whether the

21   statute covers part-time work as opposed to full-time

22   work as far as an employer.

23           Certainly I don't think part-time employers

24   should be allowed to -- or any employer should be

25   allowed to thwart someone's service as a juror.

1           But I don't know if the statute itself covers

2    part-time work.

3           Can you pull that file for me?

4           I'll reserve on it.  Let me look at the -- I

5    have a file on the statute and the case law.  So I'll

6    reserve on that.

7           I'm confident of the assurances that I can

8    give folks who have full-time positions.  I'm not as

9    confident that I can give them that assurance as far as

10   coverage in the statute for part-time.

11          MS. JHONES:  Thank you, your Honor.

12          THE COURT:  Is that it?

13          MR. GREGORIE:  Yes, your Honor.

14          THE COURT:  From the defense, that's it?

15          MS. JHONES:  I believe so, your Honor.

16          Your Honor, may we take a couple-minute

17   bathroom break?

18          THE COURT:  Sure.  Let's take -- can you be

19   back in five minutes?  Is that possible?

20          MS. JHONES:  Yes.  Sure.

21          THE COURT:  Okay.  Five-minute recess.

22          MS. JHONES:  Thank you.

23          (Thereupon a recess was taken, after which the

24   following proceedings were had:)

25          THE COURT:  We're back on United States of

```
 1   America versus Narseal Batiste, et al., Case
 2   No. 06-20373.
 3           Counsel, state your appearances, please, for
 4   the record.
 5           MR. GREGORIE:  Richard Gregorie and Jacqueline
 6   Arango on behalf of the United States, your Honor.
 7           MS. JHONES:  Good afternoon, your Honor.
 8           Ana Jhones on behalf of Narseal Batiste, who
 9   is present.
10           MR. LEVIN:  Albert Levin for Patrick Abraham.
11           MR. CASUSO:  Louie Casuso on behalf of
12   Mr. Augustin.
13           MR. CLARK:  Nathan Clark for Rotschild
14   Augustine.
15           MS. JHONES:  Richard Houlihan with Naudimar
16   Herrera.
17           MR. VEREEN:  Rod Vereen for Stanley Phanor.
18           THE COURT:  All Defendants are present.
19           You may be seated.
20           I looked at the statute, which is Title 28,
21   United States Code, Section 1875.  And it covers
22   permanent employees.  So he may very well not be
23   covered for part-time work.
24           I think that they might be in -- I would have
25   a hard time, based upon the language of the statute, in
```

1    calling up that employer and doing what I normally do

2    if there's a problem.

3           I wouldn't have a problem with the full-time

4    employer, but the part-time I think is questionable in

5    my mind.  I don't think there's any case law on it.

6    There's a question in my mind as to whether he's

7    covered.

8           So I'm going to excuse him for hardship.

9           Any objection to Patricia just going out and

10   dismissing those jurors that have been excused rather

11   than bringing all of them back in?

12          MR. VEREEN:  No.

13          MR. GREGORIE:  No objection.

14          THE COURT:  So let's just review who has been

15   excused to make sure that we're all on the same page.

16          These are the jurors that have been excused:

17   2, 3, 10, 12, 15, 17, 18, 20, 21, 25, 27, 31 and 34.

18          Does everyone agree?

19          MS. ARANGO:  Agreed.

20          MR. VEREEN:  Agreed, Judge.

21          THE COURT:  So Patricia is going to go out and

22   excuse those folks.

23          I have just received an inquiry of some length

24   from the jury that's deliberating.  So we'll start the

25   questions on the individual voir dire.  I don't know

```
1   how far we'll get.  We'll just continue it tomorrow

2   morning at some point.

3           The lawyers are supposed to be here by 4:45,

4   which is the reported time that the jurors want to

5   leave, anyhow.

6           So they may be on their way.  But once the

7   lawyers are all here, we're going to have to break to

8   take up this jury issue.  But we can start.

9           My calculation is we're looking for a pool of

10  49.

11          MR. GREGORIE:  That's correct, your Honor.

12          THE COURT:  Thus far, I think we're on target

13  for the number of excusals per session.

14          MR. CLARK:  Your Honor, didn't we have last

15  time a pool of 54?

16          MS. JHONES:  53 is my recollection.

17          THE COURT:  53?

18          I don't know.  The way I got to 49 was

19  12 jurors, 4 alternates, 11 peremptories,

20  18 peremptories, and then 2 each for alternates.

21          MS. JHONES:  We did have 6 alternates in both

22  trials.  Maybe that's the difference.

23          THE COURT:  Oh, okay.  We had 6 alternates?

24          MS. JHONES:  Yes.

25          MS. ARANGO:  We had 6.
```

1            THE COURT:  I don't know if we can fit 6 in

2    here.

3            MS. JHONES:  You may recall Mr. Clark scared a

4    couple of jurors and we had to use a couple of

5    alternates.

6            THE COURT:  He is scary.

7            I don't know where I would put another two.

8    We've already got an extra chair in there.  Well, I

9    just made it through this trial of two months with

10   every juror, knock on wood.  In fact, my last two

11   trials, we've made it through with everybody.  I'm on a

12   roll.

13           Did you excuse everyone?

14           THE COURTROOM DEPUTY:  Yes.

15           THE COURT:  If you want to send in Juror

16   No. 1, please, and then you can make your calls,

17   Patricia.

18           THE COURTROOM DEPUTY:  Yes, Judge.

19           (Thereupon, Prospective Juror No. 1 entered

20   the courtroom and the following proceedings were had:)

21           THE COURT:  Sir, do you want to stand right

22   there at the lectern?  Is that okay?  I have some

23   additional questions to ask you, if you're comfortable

24   there.  If not, if you want to take your seat, that's

25   up to you.

1          PROSPECTIVE JUROR NO. 1:  I'm fine.

2          THE COURT:  Good.

3          In this case, the Government has alleged that

4     the Defendants were engaged in conspiracies to commit

5     various violations of federal laws regarding terrorist

6     activities.

7          The charges include conspiracies or agreements

8     to provide material support and resources to agents of

9     Al-Qaeda in conspiring to blow up the Sears Tower in

10    Chicago and several federal buildings in a planned war

11    against the United States.

12         Given that, is there anything that would

13    prevent you from being able to sit and listen to the

14    evidence in this case and be fair to both the

15    Government and the Defendant?

16         PROSPECTIVE JUROR NO. 1:  No.

17         THE COURT:  In this case, you may hear

18    evidence that the Government used informants who are

19    not United States citizens and who posed as

20    terrorists/agents of Al-Qaeda.

21         Do you have such strong feelings one way or

22    the other that you would not be able to sit and listen

23    to this evidence and be fair to both the Government and

24    the Defendants?

25         PROSPECTIVE JUROR NO. 1:  Yes.

1          THE COURT:  Okay.  Can you explain that to me.

2          PROSPECTIVE JUROR NO. 1:  Well, you did say

3    they used agents, which was not --

4          THE COURT:  Informants who are not United

5    States citizens.

6          PROSPECTIVE JUROR NO. 1:  Right.

7          THE COURT:  You have a problem with that?

8          PROSPECTIVE JUROR NO. 1:  Well, is their story

9    credible?

10         THE COURT:  I don't know.  That would be a

11   determination for the jury to make and each individual

12   juror to make.

13         So the question is directed to the fact that

14   the informants who were used were not United States

15   citizens and that they posed as terrorists or agents of

16   Al-Qaeda.

17         And so my question to you is:  The fact that

18   they were informants who were not United States

19   citizens, posing as Al-Qaeda terrorists or agents, does

20   that affect your ability to sit and listen to the

21   evidence in this case and be fair to both the

22   Government and the Defendants?

23         PROSPECTIVE JUROR NO. 1:  No.

24         THE COURT:  You're sure?

25         PROSPECTIVE JUROR NO. 1:  I'm positive.

1          THE COURT:  Okay.  Have you acquired any

2    information from the newspaper, television,

3    conversations or any other sources about this case?

4          PROSPECTIVE JUROR NO. 1:  Yes.

5          THE COURT:  And from what source did you

6    acquire the information?

7          PROSPECTIVE JUROR NO. 1:  Newspaper, TV.

8          THE COURT:  Okay.

9          PROSPECTIVE JUROR NO. 1:  Rumors in the

10   street.

11         THE COURT:  Okay.  And do you remember what

12   newspaper you read about the case?

13         PROSPECTIVE JUROR NO. 1:  *Miami Herald*.

14         THE COURT:  Approximately how many times?  Do

15   you remember?

16         PROSPECTIVE JUROR NO. 1:  No.

17         THE COURT:  More than once?

18         PROSPECTIVE JUROR NO. 1:  More than once.

19         THE COURT:  And you also said TV.

20         Do you remember what TV you saw?

21         PROSPECTIVE JUROR NO. 1:  I think it was the

22   local news.

23         THE COURT:  Okay.  And do you remember what

24   you saw in the local news?

25         PROSPECTIVE JUROR NO. 1:  Some of what I -- I

```
 1    believe.  Yeah.  Yeah.
 2              THE COURT:  What did you see?
 3              PROSPECTIVE JUROR NO. 1:  That a couple of
 4    guys was being actually framed up to some kind of story
 5    that the Government was putting together and they
 6    didn't really have enough evidence on them.
 7              THE COURT:  Okay.  And do you remember what
 8    you read in the Miami Herald?
 9              PROSPECTIVE JUROR NO. 1:  Word for word, no.
10              THE COURT:  Do you remember what the gist of
11    it was?
12              PROSPECTIVE JUROR NO. 1:  No.
13              THE COURT:  You also said that you heard --
14    was it rumors on the street?
15              PROSPECTIVE JUROR NO. 1:  Yes.
16              THE COURT:  And what is this that you heard on
17    the street?
18              PROSPECTIVE JUROR NO. 1:  That it's all framed
19    from the Government to try to prosecute somebody, guys
20    who never did anything, and they're going to run this
21    case into the ground, regardless of how long it takes.
22              THE COURT:  Do you regularly read the Miami
23    Herald, New Times or Sun-Sentinel news publications
24    either in print or on-line?
25              PROSPECTIVE JUROR NO. 1:  The Miami Herald.
```

1          THE COURT:  Do you read it on a daily basis?

2          PROSPECTIVE JUROR NO. 1:  Yes.

3          THE COURT:  How closely have you followed,

4    prior to today, the course of the proceedings in this

5    case leading up to the trial?

6          PROSPECTIVE JUROR NO. 1:  I haven't followed

7    it real closely.  But whenever there's something in the

8    papers and I'm reading it, I just read over it and see

9    what it's talking about.

10         THE COURT:  Have you discussed this case with

11   anyone?

12         PROSPECTIVE JUROR NO. 1:  No.

13         THE COURT:  When you heard rumors on the

14   street --

15         PROSPECTIVE JUROR NO. 1:  Oh.

16         THE COURT:  -- you discussed the case with

17   someone?

18         PROSPECTIVE JUROR NO. 1:  Yes.  Yes, I have.

19         THE COURT:  How many people did you discuss it

20   with?

21         PROSPECTIVE JUROR NO. 1:  Several people, I

22   assume.

23         THE COURT:  Do you remember with whom?

24         PROSPECTIVE JUROR NO. 1:  Coworkers.

25         THE COURT:  And is that what you mean by

1    "rumors on the street"?

2              PROSPECTIVE JUROR NO. 1:  Yeah.

3              THE COURT:  Discussing it with your coworkers?

4              PROSPECTIVE JUROR NO. 1:  Yeah.

5              THE COURT:  Do you have an open mind regarding

6    this case?

7              PROSPECTIVE JUROR NO. 1:  Yes.

8              THE COURT:  Have you formed an opinion

9    regarding any of the Defendants based upon any outside

10   information?

11             PROSPECTIVE JUROR NO. 1:  I don't have all the

12   evidence that I can form an opinion on that.  But based

13   on the outside information, no.

14             THE COURT:  Would you be able to determine

15   whether the Defendants are guilty or not guilty, based

16   solely on the evidence presented at trial?

17             PROSPECTIVE JUROR NO. 1:  Given all the

18   evidence, yes.

19             THE COURT:  Do you have any beliefs, thoughts

20   or opinions which may cause you to decide this case on

21   anything other than the evidence you will hear at

22   trial?

23             PROSPECTIVE JUROR NO. 1:  No.

24             THE COURT:  Can you set aside whatever you

25   read in the *Miami Herald* or saw on the TV news or heard

1   as rumors on the street or discussed with coworkers and

2   decide this case based upon the evidence admitted in

3   this courtroom and the law as the Court will instruct

4   you?

5           PROSPECTIVE JUROR NO. 1:  Yes.

6           THE COURT:  Are you knowledgeable about the

7   history and practice of Islam?

8           PROSPECTIVE JUROR NO. 1:  No.

9           THE COURT:  Are you knowledgeable about the

10  history and practices of the Moorish Science Temple?

11          PROSPECTIVE JUROR NO. 1:  No.

12          THE COURT:  Are you knowledgeable about the

13  Universal Divine Saviors?

14          PROSPECTIVE JUROR NO. 1:  No.

15          THE COURT:  Are you a member of any type of

16  Masonic lodge?

17          PROSPECTIVE JUROR NO. 1:  No.

18          THE COURT:  Are you knowledgeable about the

19  history, teachings or practices of the Masons?

20          PROSPECTIVE JUROR NO. 1:  No.

21          THE COURT:  Have you, your spouse or any of

22  your family members ever visited the Middle East?

23          PROSPECTIVE JUROR NO. 1:  No.

24          THE COURT:  Do you or family members or close

25  friends have any prior or present military service?

```
 1            PROSPECTIVE JUROR NO. 1:  Yes.  I have family
 2   in the military service.
 3            THE COURT:  And what military service were
 4   they in?
 5            PROSPECTIVE JUROR NO. 1:  Air Force.
 6            THE COURT:  And who was that?
 7            PROSPECTIVE JUROR NO. 1:  My stepson.
 8            THE COURT:  And where was his place of
 9   service?
10            PROSPECTIVE JUROR NO. 1:  I really don't know
11   because he's in top secret, in the Air Force.
12            THE COURT:  Okay.  Has he served in combat?
13            PROSPECTIVE JUROR NO. 1:  Again, I really
14   don't know.
15            THE COURT:  Have you or any members of your
16   family or close friends had any personal experience
17   with acts of terrorism?
18            PROSPECTIVE JUROR NO. 1:  No.
19            THE COURT:  Do you know or do you have a
20   family member or friend who knows someone who was a
21   victim of a terrorist attack?
22            PROSPECTIVE JUROR NO. 1:  No.
23            THE COURT:  Have the events of September 11th
24   or any other terrorist act affected you to such an
25   extent that it would make it difficult for you to sit
```

1    and listen to the evidence in this case and be fair to

2    both the Government and the Defendants?

3              PROSPECTIVE JUROR NO. 1:  I think that's a

4    reason to sit down and listen to them.  Yeah.

5              THE COURT:  But my question is:  Did the

6    events of September 11th or any other terrorist attack

7    affect you to the extent that you could not be a fair

8    and impartial juror?

9              PROSPECTIVE JUROR NO. 1:  No.

10             THE COURT:  Have you or any family member or

11   close friends lost a job, a business contract or

12   experienced any other financial hardship as a result of

13   September 11th or any other terrorist attack?

14             PROSPECTIVE JUROR NO. 1:  No.

15             THE COURT:  Do you have an opinion as to who

16   was responsible for the attack on the United States on

17   September 11th, 2001?

18             PROSPECTIVE JUROR NO. 1:  Personal opinion?

19             THE COURT:  Yes.

20             PROSPECTIVE JUROR NO. 1:  Just going by what

21   the media says.

22             THE COURT:  And who do you think was

23   responsible?

24             PROSPECTIVE JUROR NO. 1:  They say Al-Qaeda.

25             THE COURT:  A recent trial conducted in this

1    district concerned a defendant named Jose Padilla.

2    That case has no connection whatsoever with the case

3    against the Defendants here.

4            Is there anything about the case of Jose

5    Padilla that would prevent you from sitting and

6    listening to the evidence in this case and being fair

7    to both the Government and the Defendants?

8            PROSPECTIVE JUROR NO. 1:  No.

9            THE COURT:  Is there anything else you think

10   the Court or the attorneys should know that might

11   influence your ability to fairly and impartially judge

12   the evidence in this case and follow the Court's

13   instructions on the law?

14           PROSPECTIVE JUROR NO. 1:  No.

15           THE COURT:  Thank you, sir.

16           If you would step outside and not discuss my

17   questions with anyone.

18           PROSPECTIVE JUROR NO. 1:  Thank you.

19           (Thereupon, Prospective Juror No. 1 retired

20   from the courtroom and the following proceedings were

21   had:)

22           MR. GREGORIE:  Your Honor, I think -- in view

23   of the comments he had about the media that he read, I

24   think it's necessary to ask one more question, that is,

25   "You haven't heard any evidence in this case

```
1   whatsoever.  Based upon the opinions and the

2   information that you got from outside this courtroom,

3   are you able to now enter this case with a neutral

4   mind, that is, not knowing anything about the case, and

5   be willing to accept the evidence as you get it as

6   opposed to having been exposed to opinions of others

7   and the media?"

8             I don't think, your Honor, that the questions

9   that are asked fully explore the fact that this man

10  said that he sat there -- stood there and told you flat

11  out that people told him that the Government's running

12  this case into the ground, that this case shouldn't be

13  brought.

14            I mean, your Honor, he is literally quoting

15  news reports as opposed to having heard any evidence in

16  this case.

17            MS. JHONES:  May I respond, your Honor?

18            THE COURT:  Yes.

19            MS. JHONES:  Question No. 15 addresses

20  specifically the concerns raised by Mr. Gregorie.

21            And in response to Question No. 15 -- and I

22  have it quoted in my notes -- he said, "Given all of

23  the evidence, once I hear" -- meaning "when I hear all

24  of the evidence" -- "then, yes, I can decide."

25            You specifically asked him, "Can you set aside
```

1    all that you've heard in the news?

2          "Yes."

3          That question -- I think that, to ask it

4    again, we run into a concern and a fear that we may --

5    we actually may scare the juror.

6          I think that you covered it extensively, and I

7    believe that the Court went and asked a few more

8    questions beyond those that are listed in our amended

9    voir dire questions.

10         MR. GREGORIE:  Your Honor, counsel defies

11   common sense.  For someone to say they walked in here,

12   after being told by more than one person, that the

13   Government is running this case into the ground, that

14   they have heard about this case and facts about this

15   case, puts the Government at a disadvantage before even

16   the first shred of evidence has been presented in this

17   courtroom, your Honor.

18         That's not a neutral and impartial juror.

19         MS. JHONES:  What this person is is an honest

20   juror.  He is telling the Court what he has heard to be

21   honest and respond to the Court's inquiry.

22         And repeatedly -- I think at least three

23   occasions, if not more -- he said, "I need to listen to

24   the evidence.  I need to listen to the evidence."

25         Now, if we're going to get into the game of

1    scaring jurors away because they're trying to be

2    honest -- there are going to be a lot of people that

3    have heard about this case.  And all of these questions

4    are addressed specifically for that issue.

5         And to ask the same question over again, I

6    think, is a problem.

7         The man answered the questions correctly.

8         MS. ARANGO:  Judge, I'm looking back and I

9    have a couple of points to make.

10        First of all, when you asked him, "Have you

11   formed an opinion regarding any of the Defendants based

12   upon the -- any outside information?", he said, "I

13   don't have all the evidence that I can form an opinion

14   with.  Based on the outside information, no," which I

15   don't understand what that means.

16        More significantly, I think you asked him,

17   "Have you discussed with -- this case with anybody?

18   When you heard the rumors on the street, have you

19   discussed this case with somebody?"

20        He says, "Oh, yes, I have."

21        I would ask -- if you're not inclined to ask

22   the followup question that Mr. Gregorie is seeking, I

23   would ask him, "When you did discuss it, did you give

24   an opinion?  Did you discuss what you thought about

25   this case?"  And then ask him if he can put that

1    opinion aside.

2            That's the one thing I didn't get from that,

3    which is --

4            THE COURT:  I think that's a fair question.

5    I'll ask that question as posed by Ms. Arango.

6            Would you ask Juror No. 1 to come in.

7            (Thereupon, Potential Juror No. 1 entered the

8    courtroom and the following proceedings were had:)

9            THE COURT:  Just a few more questions, sir.

10           You had indicated that, at some point, you

11   discussed this case after reading about it or seeing it

12   on the news.  You discussed it with coworkers.

13           Am I right in that?

14           PROSPECTIVE JUROR NO. 1:  Yes, ma'am.

15           THE COURT:  When you did discuss it with

16   coworkers, did you voice an opinion as to the case?

17           PROSPECTIVE JUROR NO. 1:  Yes and no.  My

18   opinion on it is still open, because, like I said, we

19   don't have all the -- I didn't have all the facts.

20           So, you know, I just --

21           THE COURT:  What was the opinion that you did

22   discuss?  Did you state an opinion concerning what you

23   thought about the case?

24           PROSPECTIVE JUROR NO. 1:  Yes, I did.  My

25   opinion was I didn't think there was anything to it.  I

1    didn't think there was any valid information about it.

2          THE COURT:  Okay.  I'm not sure I'm following

3    you.

4          You didn't think there was anything to it.

5    You mean the charges?

6          PROSPECTIVE JUROR NO. 1:  Yeah.  Yes.  I don't

7    think the charges was really factual.  I think it was

8    probably made up or something.

9          THE COURT:  Okay.  Well, given that opinion

10   that you voiced, would you be able to put aside that

11   opinion and sit and listen to the evidence in this case

12   and be fair to both the Government and the Defendants?

13         PROSPECTIVE JUROR NO. 1:  Yes.  I would be

14   able to do that, sit and listen.

15         THE COURT:  And could you be fair?

16         PROSPECTIVE JUROR NO. 1:  Yes.

17         THE COURT:  Okay, sir.  Thank you.

18         (Thereupon, Potential Juror No. 1 retired from

19   the courtroom and the following proceedings were had:)

20         THE COURT:  If you could send in Juror No. 4,

21   please.

22         (Thereupon, Potential Juror No. 4 entered the

23   courtroom and the following proceedings were had:)

24         THE COURT:  Hello.  I'm going to ask you a few

25   more questions, sir.  That's fine.  Is that okay, that

1    you stand there?

2              PROSPECTIVE JUROR NO. 4:  Sure.

3              THE COURT:  Okay.  I have a few more questions

4    for you.

5              In this case, the Government has alleged that

6    the Defendants were engaged in conspiracies to commit

7    various violations of federal laws regarding terrorist

8    activities.

9              The charges include conspiracies or agreements

10   to provide material support and resources to agents of

11   Al-Qaeda in conspiring to blow up the Sears Tower in

12   Chicago and several federal buildings in a planned war

13   against the United States.

14             Given that, is there anything that would

15   prevent you from being able to sit and listen to the

16   evidence in this case and be fair to both the

17   Government and the Defendants?

18             PROSPECTIVE JUROR NO. 4:  That doesn't have

19   anything to do with capital punishment.  No?

20             THE COURT:  No.  It doesn't have anything to

21   do with capital punishment.

22             PROSPECTIVE JUROR NO. 4:  Okay.

23             THE COURT:  Did you understand what I just

24   asked you, sir?

25             PROSPECTIVE JUROR NO. 4:  A little bit.  A

1    little bit.

2            THE COURT:  You didn't understand everything?

3            PROSPECTIVE JUROR NO. 4:  No.  Not really.

4            THE COURT:  Okay.  Do you have a problem

5    following English?

6            PROSPECTIVE JUROR NO. 4:  Uh-huh.

7            THE COURT:  Thank you, sir.  If you can have a

8    seat outside.  I appreciate it.

9            PROSPECTIVE JUROR NO. 4:  Okay.

10           (Thereupon, Potential Juror No. 4 retired from

11   the courtroom and the following proceedings were had:)

12           THE COURT:  That resolves that issue.  Excused

13   for deficiency in English.

14           Juror No. 5.

15           (Thereupon, Potential Juror No. 5 entered the

16   courtroom and the following proceedings were had:)

17           THE COURT:  Hello.  I have a few more

18   questions for you, ma'am.

19           Can you stand there or would you be more

20   comfortable sitting?

21           PROSPECTIVE JUROR NO. 5:  Here is fine.

22           THE COURT:  In this case, the Government has

23   alleged that the Defendants were engaged in

24   conspiracies to commit various violations of federal

25   laws regarding terrorist activities.

```
 1            The charges include conspiracies or agreements

 2   to provide material support and resources to agents of

 3   Al-Qaeda in conspiring to blow up the Sears Tower in

 4   Chicago and several federal buildings in a planned war

 5   against the United States.

 6            Given that, is there anything that would

 7   prevent you from being able to sit and listen to the

 8   evidence in this case and be fair to both the

 9   Government and the Defendants?

10            PROSPECTIVE JUROR NO. 5:  I would like to say

11   that I left -- I lived in Chicago for ten years.  I

12   loved that city.

13            And I hear in the news about the terrorism

14   was -- you know, at that time, that they were trying to

15   do something with the Sears Tower.

16            And I really felt -- I don't know -- my heart

17   was kind of hard, you know.  The feelings was hard

18   against the terrorism, that I would like to share with

19   you.

20            And I don't know if -- if that --

21            THE COURT:  Let me ask you a question.

22            Would you be able to put aside whatever

23   feelings you have regarding the fact that the

24   allegations involve Chicago and sit and listen to the

25   evidence in this case and be fair to both the
```

1    Government and the Defendants?

2          PROSPECTIVE JUROR NO. 5:  I'm not sure.

3    But -- I will say yes.  But, actually, no.  I'm not

4    sure.

5          THE COURT:  Because you lived there?

6          PROSPECTIVE JUROR NO. 5:  Yes.

7          THE COURT:  In this case, you may hear

8    evidence that the Government used informants who are

9    not United States citizens and who posed as

10   terrorists/agents of Al-Qaeda.

11         Do you have such strong feelings one way or

12   the other that you would not be able to sit and listen

13   to this evidence and be fair to both the Government and

14   the Defendants?

15         PROSPECTIVE JUROR NO. 5:  No.

16         THE COURT:  Have you acquired any information

17   from newspaper, television, conversations or any other

18   sources about this case?

19         PROSPECTIVE JUROR NO. 5:  I don't know nothing

20   about this case.

21         THE COURT:  But you said that you heard

22   something or saw something on the news about Chicago.

23         PROSPECTIVE JUROR NO. 5:  No.  About Chicago's

24   Sears Tower.  But I don't know if this is actually the

25   case.

1          THE COURT:  Okay.  But what did you -- what

2    did you -- did you see something on TV?

3          PROSPECTIVE JUROR NO. 5:  Yes.  On TV.

4          THE COURT:  And do you remember what you saw

5    on TV?

6          PROSPECTIVE JUROR NO. 5:  They were saying

7    that the Al-Qaeda was trying -- or was planning to

8    attack, also, the Sears Towers.  That's what I heard.

9          THE COURT:  Okay.  Do you read the *Miami*

10   *Herald*, *New Times* or *Sun-Sentinel* news publications,

11   either in print or on-line?

12         PROSPECTIVE JUROR NO. 5:  Yes.

13         THE COURT:  All of them or some of them?

14         PROSPECTIVE JUROR NO. 5:  Sometimes the *Miami*

15   *Herald*.

16         THE COURT:  Okay.  How closely have you

17   followed the course of the proceedings prior to court

18   today leading up to trial?

19         PROSPECTIVE JUROR NO. 5:  I have not followed

20   it at all.

21         THE COURT:  Have you discussed this case with

22   anyone?

23         PROSPECTIVE JUROR NO. 5:  No.

24         THE COURT:  Did you discuss the situation with

25   the Sears Tower in Chicago with anyone?

```
 1            PROSPECTIVE JUROR NO. 5:  Yes.  With my
 2    friends from Chicago.  There's some that live here now,
 3    and there's some -- some others live -- still living
 4    over there in Chicago.
 5            THE COURT:  Okay.  Do you have an open mind
 6    regarding this case?
 7            PROSPECTIVE JUROR NO. 5:  I will say yes.
 8            THE COURT:  Have you formed an opinion
 9    regarding any of the Defendants based upon any outside
10    information, including what you saw or heard about the
11    Sears Tower?
12            PROSPECTIVE JUROR NO. 5:  No.
13            THE COURT:  Do you have any belief, thoughts
14    or opinions which may cause you to decide this case on
15    anything other than the evidence you will hear at
16    trial?
17            PROSPECTIVE JUROR NO. 5:  No.
18            THE COURT:  What about your feelings about
19    Chicago?  Would that cause you to decide the case on
20    anything other than the evidence that you hear at
21    trial?
22            PROSPECTIVE JUROR NO. 5:  That is the only
23    thing that I'm not sure.  It's depending.
24            THE COURT:  Okay.  Are you knowledgeable about
25    the history and practice of Islam?
```

```
 1                 PROSPECTIVE JUROR NO. 5:  About the

 2      religious....

 3                 THE COURT:  Yes.

 4                 PROSPECTIVE JUROR NO. 5:  Yeah.  I know some.

 5                 THE COURT:  Okay.  And where do you get your

 6      knowledge from?

 7                 PROSPECTIVE JUROR NO. 5:  Mostly, Internet or

 8      people talking.

 9                 THE COURT:  Okay.  Are you knowledgeable about

10      the history and practices of the Moorish Science

11      Temple?

12                 PROSPECTIVE JUROR NO. 5:  No.

13                 THE COURT:  Are you knowledgeable about the

14      Universal Divine Saviors?

15                 PROSPECTIVE JUROR NO. 5:  No.

16                 THE COURT:  Are you a member of any type of

17      Masonic lodge?

18                 PROSPECTIVE JUROR NO. 5:  No.

19                 THE COURT:  Are you knowledgeable about the

20      history, teachings or practices of the Masons?

21                 PROSPECTIVE JUROR NO. 5:  No.

22                 THE COURT:  Have you, your spouse or any of

23      your family members ever visited the Middle East?

24                 PROSPECTIVE JUROR NO. 5:  No.

25                 THE COURT:  Do you or family members or close
```

1    friends have any prior or present military service?

2              PROSPECTIVE JUROR NO. 5:  Yes.  My friend, my

3    partner -- she's -- she was in the Navy.

4              THE COURT:  Okay.  Was she in combat at all?

5              PROSPECTIVE JUROR NO. 5:  No.  No.  She was --

6    her post was in Germany.  And her brother is a Marine.

7              THE COURT:  Okay.  Have you or any members of

8    your family or close friends had any personal

9    experience with acts of terrorism?

10             PROSPECTIVE JUROR NO. 5:  No.

11             THE COURT:  Do you know or do you have a

12   family member or friend who knows someone who was a

13   victim of a terrorist attack?

14             PROSPECTIVE JUROR NO. 5:  No.

15             THE COURT:  Have the events of September 11th

16   or any other terrorist act affected you to such an

17   extent that it would make it difficult for you to sit

18   and listen to the evidence in this case and be fair to

19   both the Government and the Defendants?

20             PROSPECTIVE JUROR NO. 5:  I will say no.

21             THE COURT:  Have you or any family member or

22   close friends lost a job, a business contract or

23   experienced any other financial hardship as a result of

24   September 11th or any other terrorist attack?

25             PROSPECTIVE JUROR NO. 5:  No.

1          THE COURT:  Do you have an opinion as to who

2  is responsible for the attack on the United States on

3  September 11th, 2001?

4          PROSPECTIVE JUROR NO. 5:  Yes.

5          THE COURT:  And what is that opinion?

6          PROSPECTIVE JUROR NO. 5:  Well, the opinion

7  would be that, because of the terrorism, we are

8  suffering so much from that date, you know, till now.

9          THE COURT:  A recent trial conducted in this

10  district concerned a defendant named Jose Padilla.

11  That case has no connection whatsoever with the case

12  against the Defendants here.

13          Is there anything about the case of Jose

14  Padilla that would prevent you from sitting and

15  listening to the evidence in this case and being fair

16  to both the Government and the Defendants?

17          PROSPECTIVE JUROR NO. 5:  No.

18          THE COURT:  Is there anything else you think

19  the Court or the attorneys should know that might

20  influence your ability to fairly and impartially judge

21  the evidence in this case and follow the Court's

22  instructions on the law?

23          PROSPECTIVE JUROR NO. 5:  No.

24          THE COURT:  Would you be able to put aside

25  whatever emotional attachment you feel towards Chicago

1    and sit and listen to the evidence in this case and be

2    fair to both the Government and the Defendants?

3              PROSPECTIVE JUROR NO. 5:  I don't know.  But I

4    will try.

5              THE COURT:  But you're not sure?

6              PROSPECTIVE JUROR NO. 5:  No.  I'm not sure.

7              THE COURT:  Do you think it might be better if

8    you sat on a different case, one that didn't involve

9    Chicago?

10             PROSPECTIVE JUROR NO. 5:  Yeah.  That would

11   be --

12             THE COURT:  No.  I don't know if you followed

13   my question.

14             PROSPECTIVE JUROR NO. 5:  Yes.  Yes.

15             THE COURT:  You think it might be better if

16   you sat on a different case rather than one that

17   involves Chicago?

18             PROSPECTIVE JUROR NO. 5:  Because --

19             THE COURT:  I'm trying to figure out if the

20   fact that it has nothing to do with Chicago would

21   affect your ability to be fair and impartial.

22             PROSPECTIVE JUROR NO. 5:  Because of the

23   reason that I'm not sure about myself, I think it will

24   be better.  It will be better to assign me to a

25   different case.

1              THE COURT:  Okay.  Thank you, ma'am.  If you

2     would have a seat outside, please.

3              PROSPECTIVE JUROR NO. 5:  Thank you.

4              (Thereupon, Potential Juror No. 5 retired from

5     the courtroom and the following proceedings were had:)

6              THE COURT:  Anybody want to voice anything

7     regarding this juror?

8              MS. JHONES:  Move for cause.

9              MR. GREGORIE:  No objection, your Honor.

10             THE COURT:  She's excused for cause.

11             Patricia, I think we'd best bring in the

12    remaining jurors so I can --

13             You're going to have to take a seat, please.

14             Bring in the jurors who are remaining.  You

15    can excuse No. 5.

16             THE COURTROOM DEPUTY:  4 and 5, Judge?

17             THE COURT:  4 and 5.  You're right.  Thank

18    you.

19             (Whereupon, the remaining members of

20    Prospective Jury Panel No. I entered the courtroom at

21    4:50 p.m. and the following proceedings were had:)

22             THE COURT:  You can sit anywhere.  It's fine.

23    It doesn't really matter.

24             Counsel, please approach for one moment.

25             (Whereupon, proceedings were had at side-bar

 1    outside the presence of the jury which have been sealed

 2    per instructions of the Court.)

 3            (Whereupon, the following proceedings were had

 4    in open court:)

 5            THE COURT:  Ladies and gentlemen, I thought

 6    that -- I had hoped that we would get through all of

 7    the questioning concerning your service.  This is

 8    actually a three-part process, the last part being

 9    individual questioning of one person.  As you've seen,

10    it's one person coming into the courtroom at a time.

11            But I have another matter that I need to

12    attend to, and the hour is getting late.  So I don't

13    want to make you wait around.

14            So I'm going to dismiss you for the day.

15    You're going to come back tomorrow morning right here

16    on the 12th floor at 9:00.  Then you'll be coming into

17    the courtroom one at a time for several minutes of

18    questioning by me.

19            And I expect that we will finish all the

20    questioning and you will be dismissed tomorrow around

21    12:30.  I don't think it'll take any longer than that.

22            This is a process that's probably going to go

23    on for several days.  So if you make it through this

24    next individual questioning and you're not excused,

25    Patricia will then be calling you and letting you know

1     when the trial is going to start.

2              But you will not be coming back on Thursday

3     because I will be starting the process then with new

4     panel.  So you'll come back tomorrow and you'll be

5     dismissed by 12:30.  At that point, you'll know whether

6     you may be coming back or you will not for sure be

7     coming back.

8              Even if you may be coming back, it doesn't

9     mean that you're ultimately going to be chosen.  This

10    is going to take -- a process that's going to take a

11    week or two.  Patricia will be calling you and be

12    letting you know whether you've been chosen for the

13    jury.

14             Do not discuss this case either amongst

15    yourselves or with anyone else.  Have no contact

16    whatsoever with anyone associated with the trial.  Do

17    not read, listen or see anything touching on this

18    matter in any way.

19             If anyone should try to talk to you about this

20    case, you should immediately instruct them to stop and

21    report it to my staff.

22             I will see you in the morning at 9:00.  You're

23    going to come directly to the 12th floor.  Remember, I

24    am Judge Lenard.  In the event that you forget where

25    you're supposed to go, just look for someone with a

```
 1    badge in their lapel.

 2            And, Juror No. 1, if you would just remain for

 3    one moment, sir, I'm going to give you some additional

 4    instructions.

 5            Thank you so much for your patience.  I'll see

 6    you tomorrow morning, 9:00.

 7            Please rise for the jury.

 8            (Whereupon, the remaining members of

 9    Prospective Jury Panel No. I exited the courtroom at

10    4:57 a.m. and the following proceedings were had:)

11            THE COURT:  Patricia, would you just go out

12    and make sure everybody understands what's happening

13    tomorrow and see if anybody has any questions.

14            THE COURTROOM DEPUTY:  Sure.

15            THE COURT:  You may be seated, sir.

16            You may be seated.

17            Since you've already gone through the third

18    part of the process, you do not need to come back

19    tomorrow.  Patricia will be calling you within the next

20    two weeks to let you know whether you've been actually

21    chosen to serve on the jury.

22            PROSPECTIVE JUROR NO. 1:  Okay.

23            THE COURT:  Thank you for your patience.

24    We'll be in touch with you, sir.

25            If you will meet Patricia out there and make
```

238

```
1    sure she has all of your numbers.  She will give you

2    the number of my chambers so, if you want to call and

3    find out the status, you can do that as well.

4            PROSPECTIVE JUROR NO. 1:  Thank you.

5            THE COURT:  Thank you so much.

6            Please rise for the juror.

7            (Thereupon, Potential Juror No. 1 retired from

8    the courtroom and the following proceedings were had:)

9            THE COURT:  We're in recess in this matter

10   until 9:00.  If you can please move as quickly as you

11   can, I have a jury that's very anxious to leave.

12           (End of proceedings.)

13

14               C E R T I F I C A T E

15

16       I hereby certify that the foregoing is an

17   accurate transcription of the proceedings in the

18   above-entitled matter.

19

20

21   _____     /s/Lisa Edwards
         DATE          _____
22                     LISA EDWARDS, CRR, RMR
                       Official United States Court Reporter
                       400 North Miami Avenue, Twelfth Floor
23                     Miami, Florida 33128
                       (305) 523-5499

24

25
```