```
 1                  UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
 2                         MIAMI DIVISION
                  CASE NO. 06-20373-CRIMINAL-LENARD
 3

 4   UNITED STATES OF AMERICA,      Miami, Florida

 5              Plaintiff,          January 28, 2009

 6        vs.                       9:15 a.m. to 1:13 p.m.

 7   NARSEAL BATISTE, et al.,       Volume II

 8           Defendants.       Pages 1 to 170
     ---------------------------------------------------------
 9

10                          JURY TRIAL
11           BEFORE THE HONORABLE JOAN A. LENARD,
                  UNITED STATES DISTRICT JUDGE
12

13

14   APPEARANCES:

15

16   FOR THE GOVERNMENT:    RICHARD D. GREGORIE, ESQ., and
                            JACQUELINE M. ARANGO, ESQ.
17                          ASSISTANT UNITED STATES ATTORNEYS
                            99 Northeast Fourth Street
18                          Miami, Florida 33132

19

20   FOR THE DEFENDANT      ANA MARIA JHONES, ESQ.
       NARSEAL BATISTE:     300 Seville Avenue, Suite 210
                            Coral Gables, Florida 33134
21

22   FOR THE DEFENDANT      ALBERT Z. LEVIN, ESQ.
       PATRICK ABRAHAM:     261 Northeast First Street
23                          Sixth Floor
                            Miami, Florida 33132
24

25
```

```
 1   FOR THE DEFENDANT        RODERICK D. VEREEN, ESQ.
       STANLEY PHANOR:        BRINKLEY, HENRYS & LEWIS
 2                            4770 Biscayne Boulevard
                              Suite 1200
 3                            Miami, Florida 33131

 4
     FOR THE DEFENDANT        RICHARD K. HOULIHAN, ESQ.
 5     NAUDIMAR HERRERA:      300 Aragon Avenue
                              Coral Gables, Florida 33134
 6

 7   FOR THE DEFENDANT        LOUIS CASUSO, ESQ.
       BURSON AUGUSTIN:       111 Northeast First Street
 8                            Suite 603
                              Miami, Florida 33132
 9

10   FOR THE DEFENDANT        NATHAN CLARK, ESQ.
      ROTSCHILD AUGUSTINE:    17639 South Dixie Highway
11                            Miami, Florida 33157

12
     REPORTED BY:             LISA EDWARDS, CRR, RMR
13                            Official Court Reporter
                              400 North Miami Avenue
14                            Twelfth Floor
                              Miami, Florida 33128
15                            (305) 523-5499

16

17

18                      I   N   D   E   X
19

20                                            PAGE
21
     Jury Selection                             7
22

23

24

25
```

```
 1            THE COURT:  Good morning.  You may be seated.

 2            United States of America versus Narseal

 3    Batiste, et al., Case No. 06-20373.

 4            Counsel, state your appearances, please, for

 5    the record.

 6            MR. GREGORIE:  Good morning, your Honor.

 7            Richard Gregorie and Jacqueline Arango on

 8    behalf of the United States.

 9            THE COURT:  Good morning.

10            MS. ARANGO:  Good morning.

11            MS. JHONES:  Good morning, your Honor.

12            Ana Jhones on behalf of Narseal Batiste, who

13    is present.

14            THE COURT:  Good morning.

15            MR. LEVIN:  Good morning, your Honor.

16            Albert Levin on behalf of Patrick Abraham, who

17    is also present.

18            THE COURT:  Good morning.

19            MR. CASUSO:  Good morning, your Honor.

20            Louie Casuso on behalf of Burson Augustin, who

21    is present.

22            THE COURT:  Good morning.

23            MR. CLARK:  Good morning, your Honor.

24            Nathan Clark for Rotschild Augustine, who is

25    present.
```

1          THE COURT:  Good morning.

2          MR. HOULIHAN:  Richard Houlihan for Naudimar

3     Herrera.

4          THE COURT:  Good morning.

5          MR. VEREEN:  Good morning, Judge.

6          Roderick Vereen on behalf of Stanley Phanor,

7     who's present.

8          THE COURT:  Good morning.

9          All Defendants are present.

10          So I don't know that all the jurors are here,

11     but we have some for -- the first couple.  So we'll

12     begin with Juror No. 6.

13          MR. GREGORIE:  Your Honor, before the jury

14     comes in, I'd like for the record to note that, on

15     Monday, the day before this jury was selected, there

16     was a front page article about this case in the *Miami*

17     *Herald* and then again today, in the editorial page and

18     in the Metro section, there are articles about the jury

19     selection.  Yesterday, in particular, it describes some

20     of the jurors who answered your Honor's questions

21     and stating opinions, your Honor.

22          I think it's important that the jurors be

23     asked if they have seen or read the *Miami Herald*,

24     because those articles are there and it's quite obvious

25     from any juror who read that that they were being

 1   singled out.

 2              THE COURT:  Okay.

 3              MS. JHONES:  Your Honor, I read the front

 4   page -- or the article in the Metro section.

 5              I don't recall there being anything about

 6   jurors stating opinions.  I'm sorry.  Maybe I

 7   misunderstood Mr. Gregorie.

 8              There was nothing -- I don't believe the

 9   article quote any juror.  What the article did do

10   was -- they described a couple -- the backgrounds of a

11   couple of the jurors' employment.  One was a civil

12   engineer or what have you.  But there was no direct

13   quotes of statements made by jurors at all.

14              MR. GREGORIE:  Well, your Honor, I would pass

15   the articles up, because, obviously, Ms. Jhones and I

16   read things quite differently, Judge.

17              THE COURT:  Do you have them?  I didn't see

18   them.

19              MR. GREGORIE:  I'll be glad to pass that up.

20   There's also the headline article on Monday, your

21   Honor, and I will bring that in for the Court.

22              THE COURT:  I did see that one.

23              Mr. Levin, I did notice that you have

24   listed -- this is from the prior trial, but Jay Weaver

25   is on the list.

```
 1              MR. LEVIN:  Yes, Judge.  I took him off of at
 2    the last --
 3              THE COURT:  So I don't need to read his name?
 4              MR. LEVIN:  You don't need to read his name at
 5    all.  No.  He was on the first trial's list.
 6              THE COURT:  I guess that's the list that I'm
 7    working off of.
 8              When you said "opinion," you meant the opinion
 9    of the writer?
10              MR. GREGORIE:  That's correct, your Honor.
11              MS. JHONES:  Oh, okay.  I thought he meant the
12    opinion of the juror.
13              THE COURT:  Yeah.
14              And certainly the -- I don't even have to go
15    further than the first paragraph.  Certainly the
16    editorial is an opinion piece by the Herald as to their
17    estimation of the case.  I don't know if you saw it.
18              MS. JHONES:  I did not.
19              MR. LEVIN:  Judge, would you mind reading the
20    first paragraph?
21              THE COURT:  You want me to read it into the
22    record?
23              MR. LEVIN:  When you said the first paragraph,
24    I just was curious.
25              THE COURT:  I'm not going to read it into the
```

```
 1    record.  I'll attach it to the record.

 2               MR. LEVIN:  That's fine.

 3               THE COURT:  But it's the Herald's opinion that

 4    it's not too late for the prosecutors to make a

 5    level-headed judgment, as far as the Herald is

 6    concerned.

 7               MR. LEVIN:  Okay.

 8               MS. JHONES:  Very insightful on the part of

 9    the Herald.

10               THE COURT:  And they're not saying enter

11    guilty pleas.

12               So I will question each juror as they come in

13    as to whether or not, since they left yesterday,

14    they've heard, read or seen anything regarding the

15    case.

16               So Juror No. 6.

17               (Thereupon, Prospective Juror No. 6 entered

18    the courtroom and the following proceedings were had:)

19               THE COURT:  You may be seated.

20               Good morning, sir.  How are you?

21               PROSPECTIVE JUROR NO. 6:  Good morning.

22               THE COURT:  First of all, since we left last

23    evening -- or since you left last evening, have you

24    heard, read or seen anything about this case in the

25    media?
```

1           PROSPECTIVE JUROR NO. 6:  No, ma'am.

2           THE COURT:  In this case, the Government has

3      alleged that the Defendants were engaged in

4      conspiracies to commit various violations of federal

5      laws regarding terrorist activities.

6           The charges include conspiracies or agreements

7      to provide material support and resources to agents of

8      Al-Qaeda in conspiring to blow up the Sears Tower in

9      Chicago and several federal buildings in a planned war

10     against the United States.

11          Given that, is there anything that would

12     prevent you from being able to sit and listen to the

13     evidence in this case and be fair to both the

14     Government and the Defendants?

15          PROSPECTIVE JUROR NO. 6:  Well, I've been in

16     the military before, and I'm totally against Al-Qaeda

17     and Iraq and Iran.  I would be more biased against them

18     than, you know....

19          THE COURT:  So you think it might be better

20     for you to sit on a different type of case?

21          PROSPECTIVE JUROR NO. 6:  Yes, ma'am.

22          THE COURT:  Okay.  If you would have a seat

23     outside, sir, and not discuss my question with anyone.

24          (Thereupon, Potential Juror No. 6 retired from

25     the courtroom and the following proceedings were had:)

```
 1              THE COURT:  Need I go further?
 2              MS. ARANGO:  Judge --
 3              MS. JHONES:  No, your Honor.
 4              MS. ARANGO:  Judge, perhaps not with this
 5    person, but I think that it's normal for a person to
 6    say, "I would be biased against somebody that" -- you
 7    know, "I would be biased against a terrorist.  I would
 8    be biased against Al-Qaeda."
 9              I mean, I don't think that that's an abnormal
10    response.  Just like in a drug trafficking case, you've
11    probably heard a million times people --
12              THE COURT:  I don't have a problem with him
13    saying he's against Al-Qaeda or he was in the military.
14              But when he says he would be more biased
15    against them --
16              MS. ARANGO:  I don't have a problem with him.
17    But I just think that the --
18              THE COURT:  I'll inquire further, you know, if
19    you find it necessary.  And you can certainly request
20    it.
21              MS. ARANGO:  Okay.  Thank you.
22              THE COURT:  Does someone want to make a
23    motion?
24              MR. CLARK:  I'll make a motion for cause, your
25    Honor.
```

1        THE COURT:  Any objection?

2        MR. GREGORIE:  No objection, your Honor.

3        THE COURT:  He's excused for cause.

4        No. 7, please.

5        (Thereupon, Prospective Juror No. 7 entered

6    the courtroom and the following proceedings were had:)

7        THE COURT:  Is it okay for you to stand there,

8    sir?  Is that okay?  Is it okay to stand there?

9        PROSPECTIVE JUROR NO. 7:  Yes.

10        THE COURT:  Good morning.

11        PROSPECTIVE JUROR NO. 7:  Good morning.

12        THE COURT:  Since you left last evening, have

13   you read, seen or heard anything about this case in the

14   media?

15        PROSPECTIVE JUROR NO. 7:  No.

16        THE COURT:  In this case, the Government has

17   alleged that the Defendants were engaged in

18   conspiracies to commit various violations of federal

19   laws regarding terrorist activities.

20        The charges include conspiracies or agreements

21   to provide material support and resources to agents of

22   Al-Qaeda in conspiring to blow up the Sears Tower in

23   Chicago and several federal buildings in a planned war

24   against the United States.

25        Given that, is there anything that would

1    prevent you from being able to sit and listen to the

2    evidence in this case and be fair to both the

3    Government and the Defendants?

4              PROSPECTIVE JUROR NO. 7:  No.

5              THE COURT:  In this case, you may hear

6    evidence that the Government used informants who were

7    not United States citizens and who posed as

8    terrorists/agents of Al-Qaeda.

9              Do you have such strong feelings one way or

10   the other that you would not be able to sit and listen

11   to this evidence and be fair to both the Government and

12   the Defendants?

13             PROSPECTIVE JUROR NO. 7:  No.

14             THE COURT:  Have you acquired any information

15   from newspaper, television, conversations or any other

16   sources about this case?

17             PROSPECTIVE JUROR NO. 7:  No.

18             THE COURT:  Do you read the *Miami Herald*, *New*

19   *Times* or *Sun-Sentinel* news publications either in print

20   or on-line?

21             PROSPECTIVE JUROR NO. 7:  No.

22             THE COURT:  Have you read anything in any

23   newspaper or on the Internet or have you seen anything

24   on television or heard anything on the radio about this

25   case?

1      PROSPECTIVE JUROR NO. 7:  No.

2      THE COURT:  How closely have you followed the

3  course of the proceedings prior to today or yesterday

4  that have led up to this trial, if at all?

5      PROSPECTIVE JUROR NO. 7:  I haven't.

6      THE COURT:  Have you discussed this case with

7  anyone?

8      PROSPECTIVE JUROR NO. 7:  No.

9      THE COURT:  Do you have an open mind regarding

10  this case?

11      PROSPECTIVE JUROR NO. 7:  Yes.

12      THE COURT:  Have you formed an opinion

13  regarding any of the Defendants based upon any outside

14  information or anything that I just told you?

15      PROSPECTIVE JUROR NO. 7:  No.

16      THE COURT:  Do you have any beliefs, thoughts

17  or opinions which may cause you to decide this case on

18  anything other than the evidence you will hear at

19  trial?

20      PROSPECTIVE JUROR NO. 7:  No.

21      THE COURT:  Are you knowledgeable about the

22  history and practice of Islam?

23      PROSPECTIVE JUROR NO. 7:  No.

24      THE COURT:  Are you knowledgeable about the

25  history and practices of the Moorish Science Temple?

```
 1              PROSPECTIVE JUROR NO. 7:  No.

 2              THE COURT:  Are you knowledgeable about the

 3   Universal Divine Saviors?

 4              PROSPECTIVE JUROR NO. 7:  No.

 5              THE COURT:  Are you a member of any type of

 6   Masonic lodge?

 7              PROSPECTIVE JUROR NO. 7:  No.

 8              THE COURT:  Are you knowledgeable about the

 9   history, teachings or practices of the Masons?

10              PROSPECTIVE JUROR NO. 7:  No.

11              THE COURT:  Have you or any of your family

12   members ever visited the Middle East?

13              PROSPECTIVE JUROR NO. 7:  No.

14              THE COURT:  Do you or family members or close

15   friends have any prior or present military service?

16              PROSPECTIVE JUROR NO. 7:  Yes.

17              THE COURT:  And who would that be, sir?

18              PROSPECTIVE JUROR NO. 7:  Me.

19              THE COURT:  And you were in what branch of the

20   military?

21              PROSPECTIVE JUROR NO. 7:  I was in the Army.

22              THE COURT:  When was that?

23              PROSPECTIVE JUROR NO. 7:  1951.

24              THE COURT:  And did you see any combat?

25              PROSPECTIVE JUROR NO. 7:  Yes.
```

```
 1              THE COURT:  Where?

 2              PROSPECTIVE JUROR NO. 7:  Korea.

 3              THE COURT:  Were you injured?

 4              PROSPECTIVE JUROR NO. 7:  No.

 5              THE COURT:  Well, thank you for your service.

 6              PROSPECTIVE JUROR NO. 7:  Thank you.

 7              THE COURT:  Have you or any members of your

 8    family or close friends --

 9              PROSPECTIVE JUROR NO. 7:  (Exiting the

10    courtroom.)

11              THE COURT:  Oh, no.  No.  No.  I meant your

12    military service, not your jury service.

13              PROSPECTIVE JUROR NO. 7:  Oh.

14              THE COURT:  A couple more questions.  Okay?

15              PROSPECTIVE JUROR NO. 7:  Okay.

16              THE COURT:  Have you or any members of your

17    family or close friends had any personal experience

18    with acts of terrorism?

19              PROSPECTIVE JUROR NO. 7:  No.

20              THE COURT:  Do you know or do you have a

21    family member or friend who knows someone who was a

22    victim of a terrorist attack?

23              PROSPECTIVE JUROR NO. 7:  No.

24              THE COURT:  Have the events of September 11th

25    or any other terrorist act affected you to such an
```

1    extent that it would make it difficult for you to sit

2    and listen to the evidence in this case and be fair to

3    both the Government and the Defendants?

4              PROSPECTIVE JUROR NO. 7:  No.

5              THE COURT:  Have you or any family member or

6    close friend lost a job, a business contract or

7    experienced any other financial hardship as a result of

8    September 11th or any other terrorist attack?

9              PROSPECTIVE JUROR NO. 7:  No.

10             THE COURT:  Do you have an opinion as to who

11   was responsible for the attack on the United States on

12   September 11th, 2001?

13             PROSPECTIVE JUROR NO. 7:  No, I don't.

14             THE COURT:  A recent trial conducted in this

15   district concerned a defendant named Jose Padilla.

16   That case has no connection whatsoever with the case

17   against the Defendants here.

18             Is there anything about the case of Jose

19   Padilla that would prevent you from sitting and

20   listening to the evidence in this case and being fair

21   to both the Government and the Defendants?

22             PROSPECTIVE JUROR NO. 7:  No.

23             THE COURT:  Is there anything else you think

24   the Court or the attorneys should know that might

25   influence your ability to fairly and impartially judge

 1    the evidence in this case and follow the Court's

 2    instructions on the law?

 3           PROSPECTIVE JUROR NO. 7:  I really don't know.

 4           THE COURT:  Anything you think that we should

 5    know about you that we haven't asked?

 6           PROSPECTIVE JUROR NO. 7:  Well, like what I

 7    will think?

 8           THE COURT:  No.  No.  Anything that wasn't

 9    asked of you that you think you should tell me.

10           PROSPECTIVE JUROR NO. 7:  No.

11           THE COURT:  Okay.  Sir, if you would have a

12    seat outside and not discuss my questions with anyone.

13           PROSPECTIVE JUROR NO. 7:  Okay.

14           THE COURT:  Now you can go.

15           PROSPECTIVE JUROR NO. 7:  Okay.

16           (Thereupon, Potential Juror No. 7 retired from

17    the courtroom and the following proceedings were had:)

18           THE COURT:  Do the parties still want me to

19    inquire about the Jose Padilla case?

20           MS. JHONES:  Your Honor, on behalf of

21    Mr. Batiste, I would ask that the Court remove that

22    question.  I think it's -- maybe a couple of years ago

23    it was relevant or a year ago.

24           THE COURT:  Well, I think it was relevant --

25    it was relevant in proximity to the first trial.  The

```
1    first trial was fairly close to the Padilla verdict, as
2    I recall.
3              MS. JHONES:  Correct.  That was the concern
4    then.
5              THE COURT:  You're asking that that be
6    removed?
7              MR. LEVIN:  Yes.
8              MS. JHONES:  Unless any of my colleagues have
9    a problem with it, I'd ask that it be removed.
10             THE COURT:  Any objection?
11             MS. ARANGO:  No objection, Judge.
12             THE COURT:  Okay.
13             MS. ARANGO:  Judge, with respect to that last
14   gentleman who was here, he said he was in the Army and
15   there was no followup questions on whether he received
16   an honorable discharge or what his rank was at
17   discharge.
18             THE COURT:  You want me to ask him that?
19             MS. ARANGO:  Yes, please.
20             THE COURT:  Would you ask Juror No. 7 to come
21   back in for a moment.
22             (Thereupon, Potential Juror No. 7 entered the
23   courtroom and the following proceedings were had:)
24             THE COURT:  One or two more questions, sir.
25             In regard to your military service, were you
```

```
 1    ever in the military police?
 2             PROSPECTIVE JUROR NO. 7:  No.
 3             THE COURT:  And did you have any disciplinary
 4    action taken against you?
 5             PROSPECTIVE JUROR NO. 7:  No.
 6             THE COURT:  And did you receive an honorable
 7    discharge?
 8             PROSPECTIVE JUROR NO. 7:  Yes.
 9             THE COURT:  Okay, sir.  Thank you.
10             PROSPECTIVE JUROR NO. 7:  Okay.
11             (Thereupon, Potential Juror No. 7 retired from
12    the courtroom and the following proceedings were had:)
13             THE COURT:  Juror No. 8.
14             (Thereupon, Potential Juror No. 8 entered the
15    courtroom and the following proceedings were had:)
16             THE COURT:  Good morning.
17             PROSPECTIVE JUROR NO. 8:  Good morning.
18             THE COURT:  Since you left last evening, sir,
19    have you heard, read or seen anything about this case
20    in print, on television, on the radio or on the
21    Internet?
22             PROSPECTIVE JUROR NO. 8:  No, your Honor.
23             THE COURT:  Let me also ask -- yesterday you
24    had talked about what's happening at your work on
25    March 15th regarding the refueling.
```

1          PROSPECTIVE JUROR NO. 8:  Correct.

2          THE COURT:  What is your role in that?

3          PROSPECTIVE JUROR NO. 8:  I'm a communications

4    supervisor and, also, the implementer of all

5    communications in moving fuel from the reactor to the

6    containment, spent fuel pits.

7          Unfortunately, over the years -- I've been

8    there 28 years -- I've been telling my employer to

9    train other people and, well, your Honor, they haven't.

10          For years, I've been trying to tell them, "You

11   need more than me because I'm getting older."  And I'm

12   specialized.  Without me, they cannot move fuel.  And I

13   just conveyed upon them yesterday that and they're

14   panicking on the south end.

15          I told them, "Look, I told you this.  You

16   should have made provisions."  And they didn't.

17          But you can't tell a billion-dollar company

18   what to do, can you?  I just suggest it.

19          THE COURT:  Okay.

20          PROSPECTIVE JUROR NO. 8:  And I had one

21   statement to make yesterday on Question 32.

22          I should have brought up the issue on

23   Question 32 that I have a nerve disorder, but I deal

24   with it.  I've had it for the last eight years.

25          I still work, but I wear leg braces and I have

```
 1    a little --
 2              THE COURT:  Are you taking any medication?
 3              PROSPECTIVE JUROR NO. 8:  No.  The medication
 4    I take with my neurologists is at evening, to control
 5    the pain.  But during the day, I'm not medicated
 6    whatsoever.
 7              THE COURT:  Okay.
 8              PROSPECTIVE JUROR NO. 8:  I've just had it for
 9    a while.
10              THE COURT:  It hasn't affected your work or
11    anything?
12              PROSPECTIVE JUROR NO. 8:  No, ma'am.  I'm
13    legally disabled by Florida standards.  But I still
14    function, and that's why I'm a supervisor.
15              THE COURT:  So come March 15, if you were on
16    jury service, what do you suppose would happen at the
17    nuclear plant?
18              PROSPECTIVE JUROR NO. 8:  Well, come --
19    before -- when the reactor is off-line, they'll open
20    the doors and they'll want me -- or I won't go in.  I
21    have to direct people to set up communications inside
22    the containment building.
23              Right now, they're moving fuel between the new
24    fuel room to the spent fuel pit and they communicate to
25    the control room.  That's very sophisticated.  They
```

1    have to make sure they have communications.

2         Luckily, I set that up, your Honor, Monday,

3    anticipating.  So I had it working Monday.  And there

4    was no problems.  So I did not get called yesterday and

5    I didn't get called this morning.  So, obviously, I

6    think it's working.

7         THE COURT:  So you think that they would be

8    able to proceed with the communications --

9         PROSPECTIVE JUROR NO. 8:  Right now, they're

10   proceeding with the communication, your Honor.  But

11   come the 15th is when the reactor comes down and, if

12   I'm not there and I have not -- if they don't see the

13   light, your Honor, now, it's kind of hard to convey the

14   information through -- through a subordinate that has

15   no clue.

16        THE COURT:  Let me ask you a question:  Can

17   they train someone between now and March 15th?

18        PROSPECTIVE JUROR NO. 8:  I'm going to try my

19   darndest, your Honor, to have them realize they need to

20   train somebody.

21        It's like pushing a rope.  The term is, when

22   you push a rope and no one pulls --

23        THE COURT:  But it is possible to train

24   someone so that, if you're here on Tuesday through

25   Friday -- obviously, you could be on call, you know, in

1   case there was a problem --

2           PROSPECTIVE JUROR NO. 8:  On call?  There's no

3   way I can leave here and -- when the reactor comes

4   down -- it could come down earlier than March 15th.  It

5   could come down later.  It depends how we use the

6   nuclear fuel.  We use it to the last inch of

7   availability.

8           So, hopefully, if they have -- if no one is --

9   can absorb what I'm teaching them, how to do it, then,

10  you know, it's -- they rely on me too much, even though

11  I devised the system.  You know, I implemented the

12  system, engineered the system.

13          We're the only power plant in the nation that

14  uses cell phones like the ones we all carry to move

15  nuclear fuel.  This is the first plant in the nation.

16  So they're all asking me how I do it.

17          So -- test case?  I've moved three outages,

18  three refuelings, with cell phones and it works pretty

19  good.  You don't want to know what we used before.

20          THE COURT:  I won't ask.

21          PROSPECTIVE JUROR NO. 8:  Don't ask.

22          THE COURT:  But you move it through cell phone

23  technology?

24          PROSPECTIVE JUROR NO. 8:  Yes.  Cell phone

25  technology.  I have an intricate closed -- it's like a

1   NexTel, but it's our own private cell towers.  I put

2   cell antennas all over the plant.  And then, when you

3   turn on the cell phone, you can communicate.  I can put

4   3200 phones --

5           THE COURT:  So could you be here and, if you

6   needed to do something --

7           PROSPECTIVE JUROR NO. 8:  No.  It's unique to

8   the site.  But the sites can be bridged together.

9           THE COURT:  Let me ask you my next question:

10  If you were chosen as a juror in this case and the case

11  went into that March 15th area, would you be able to

12  pay full time and attention to this case?

13          PROSPECTIVE JUROR NO. 8:  Yes.  Yes, your

14  Honor.  I mean, I know that's my duty and I can't let

15  that interfere.  After all, the company is putting

16  themselves in the position.  I didn't put them in that

17  position.

18          THE COURT:  Okay.

19          PROSPECTIVE JUROR NO. 8:  So I'll have

20  resistance from the corporate end.

21          THE COURT:  They have other nuclear

22  facilities.  Yes?  Or is this the only one?

23          PROSPECTIVE JUROR NO. 8:  No.  No.  They have

24  ten other units in five different states.

25          THE COURT:  Okay.  Now I'm going to go into

1    the questions that you're here for.

2          In this case, the Government has alleged that

3    the Defendants were engaged in conspiracies to commit

4    various violations of federal laws regarding terrorist

5    activities.

6          The charges include conspiracies or agreements

7    to provide material support and resources to agents of

8    Al-Qaeda in conspiring to blow up the Sears Tower in

9    Chicago and several federal buildings in a planned war

10   against the United States.

11         Given that, is there anything that would

12   prevent you from being able sit and listen to the

13   evidence in this case and be fair to both the

14   Government and the Defendants?

15         PROSPECTIVE JUROR NO. 8:  No, your Honor.

16         THE COURT:  In this case, you may hear

17   evidence that the Government used informants who are

18   not United States citizens and who posed as

19   terrorists/agents of Al-Qaeda.

20         Do you have such strong feelings one way or

21   the other that you would not be able to sit and listen

22   to this evidence and be fair to both the Government and

23   the Defendants?

24         PROSPECTIVE JUROR NO. 8:  No, your Honor.  I

25   will listen to the evidence.

1          THE COURT:  Have you acquired any information

2     from television -- from newspaper, television,

3     conversations or any other sources about this case?

4          PROSPECTIVE JUROR NO. 8:  No, your Honor.

5          THE COURT:  Do you read the *Miami Herald*, *New*

6     *Times* or *Sun-Sentinel* news publications either in

7     prints or on-line?

8          PROSPECTIVE JUROR NO. 8:  Sometimes on the

9     weekends, but not lately.

10          THE COURT:  Which one?

11          PROSPECTIVE JUROR NO. 8:  The *Miami Herald*.  I

12     do get it delivered, but I don't have the time to read

13     it.

14          THE COURT:  Have you read anything in any

15     newspaper or on the Internet or have you seen anything

16     on television or heard anything on the radio about this

17     case?

18          PROSPECTIVE JUROR NO. 8:  Well, it was -- the

19     past several months, when you turn on the TV, usually

20     the news media mentions it and you --

21          THE COURT:  Okay.

22          PROSPECTIVE JUROR NO. 8:  I would -- just in

23     passing, not paying attention to it.  But I did hear it

24     on TV.

25          THE COURT:  Do you remember what you heard or

1  saw?

2          PROSPECTIVE JUROR NO. 8:  Just that there was

3  a case ongoing and there was, you know, allegations.

4  But that's as far as it was.  It was just to make

5  sure -- the news media says it's just allegations.

6          THE COURT:  Do you remember on what television

7  station you saw it?

8          PROSPECTIVE JUROR NO. 8:  Channel 4,

9  Channel 7, all the news.  They do it all at the time of

10  the -- you know, the alleged happening.

11          THE COURT:  Okay.  How closely have you

12  followed the course of the proceedings prior to being

13  here yesterday and leading up to this trial?

14          PROSPECTIVE JUROR NO. 8:  Oh, I haven't

15  followed it at all, your Honor.

16          THE COURT:  Have you discussed this case with

17  anyone?

18          PROSPECTIVE JUROR NO. 8:  No, your Honor, I

19  have not.

20          THE COURT:  Do you have an open mind regarding

21  this case?

22          PROSPECTIVE JUROR NO. 8:  Yes.  I feel I have

23  an open mind.

24          THE COURT:  Have you formed an opinion

25  regarding any of the Defendants based upon any outside

```
1    information, including what you saw on the television?

2              PROSPECTIVE JUROR NO. 8:  No, your Honor.

3    Everybody's presumed innocent.

4              THE COURT:  Do you have any beliefs, thoughts

5    or opinions which may cause you to decide this case on

6    anything other than the evidence you will hear at

7    trial?

8              PROSPECTIVE JUROR NO. 8:  No, your Honor.

9    Evidence....

10             THE COURT:  Are you knowledgeable about the

11   history and practice of Islam?

12             PROSPECTIVE JUROR NO. 8:  No, your Honor, I'm

13   not.

14             THE COURT:  Are you are knowledgeable about

15   the history and practices of the Moorish Science

16   Temple?

17             PROSPECTIVE JUROR NO. 8:  No, your Honor.  I

18   have no knowledge whatsoever.

19             THE COURT:  Are you knowledgeable about the

20   Universal Divine Saviors?

21             PROSPECTIVE JUROR NO. 8:  No, your Honor.

22   Well, the Universal Divine?  One God.  It's my God.

23             THE COURT:  This is a group called the

24   Universal Divine Saviors.

25             PROSPECTIVE JUROR NO. 8:  Oh.  No.
```

```
 1              THE COURT:  Are you a member of any type of
 2   Masonic Lodge?
 3              PROSPECTIVE JUROR NO. 8:  No, your Honor.
 4              THE COURT:  Are you knowledgeable about the
 5   history, teachings and practices of the Masons?
 6              PROSPECTIVE JUROR NO. 8:  No, your Honor.  I
 7   had a -- no.  Not the Masons, no.  Not the Masons.
 8              THE COURT:  Have you, your spouse or any of
 9   your family members ever visited the Middle East?
10              PROSPECTIVE JUROR NO. 8:  No, your Honor.
11              THE COURT:  Do you or family members or close
12   friends have any prior or present military service?
13              PROSPECTIVE JUROR NO. 8:  I was a member of
14   the United States Navy.  But not -- prior.
15              THE COURT:  When was that?
16              PROSPECTIVE JUROR NO. 8:  Oh, 1967.  12 years
17   of Naval Reserve duty.
18              THE COURT:  Did you serve in combat?
19              PROSPECTIVE JUROR NO. 8:  I was aboard an
20   aircraft carrier, but I wasn't in -- deployed in the
21   combat area.
22              THE COURT:  Where were you deployed?
23              PROSPECTIVE JUROR NO. 8:  I was basically
24   stuck in Philadelphia, a naval shipyard, for two years
25   and cruised the Atlantic.  I got a real good tour of
```

1    nothing.  Gitmo twice.

2         THE COURT:  Okay.  And at that time, what was

3    happening at Gitmo?

4         PROSPECTIVE JUROR NO. 8:  A lot of war

5    maneuvers.  But at that time -- you know, it was a long

6    time ago.  Basically, that's the proving ground for all

7    naval combatant ships on the Atlantic.

8         THE COURT:  Okay.  Were you ever in the

9    military police or shore patrol?

10        PROSPECTIVE JUROR NO. 8:  No, your Honor.

11        THE COURT:  Did you have any disciplinary

12   action taken against you?

13        PROSPECTIVE JUROR NO. 8:  No, your Honor.

14        THE COURT:  Did you receive an honorable

15   discharge?

16        PROSPECTIVE JUROR NO. 8:  I did.  Yes.

17        THE COURT:  What was your rank at discharge?

18        PROSPECTIVE JUROR NO. 8:  Electrician's mate,

19   second class.

20        THE COURT:  Have you or any member of your

21   family or close friends had any personal experience

22   with acts of terrorism?

23        PROSPECTIVE JUROR NO. 8:  No, your Honor.

24   Absolutely not.

25        THE COURT:  Do you know or do you have a

1   family member or friend who knows someone who was a

2   victim of a terrorist attack?

3         PROSPECTIVE JUROR NO. 8:  No, your Honor.

4         THE COURT:  Have the events of September 11th

5   or any other terrorist act affected you to such an

6   extent that it would make it difficult for you to sit

7   and listen to the evidence in this case and be fair to

8   both THE Government and the Defendants?

9         PROSPECTIVE JUROR NO. 8:  Well, to be honest,

10  your Honor, of course, 9/11 touched everybody in this

11  nation.  And, of course, it was horrendous attack.

12  Everybody feels -- I feel personally bad about what

13  happened on 9/11, experiencing it.

14        But, of course, I can't hold any religion or

15  anybody accountable for that terrorist act, except the

16  individuals that perpetrated it.  And it's just the way

17  that I believe in things.

18        Until we can get to the root of the problem to

19  correct it -- God willing.  Some day we'll be able to

20  correct, you know, the hatred towards this country.

21  But I believe I could be impartial.

22        THE COURT:  Okay.  Have you or any family

23  member or close friend lost a job, a business contract

24  or experienced any other financial hardship as a result

25  of September 11th or any other terrorist attack?

```
 1            PROSPECTIVE JUROR NO. 8:  No, your Honor.
 2            THE COURT:  Given your feelings about
 3    September 11th, could you be a fair and impartial juror
 4    in this case?
 5            PROSPECTIVE JUROR NO. 8:  Yes.  I believe I
 6    can.
 7            THE COURT:  Believe you can or know you can?
 8            PROSPECTIVE JUROR NO. 8:  I know I can.
 9            THE COURT:  Do you have an opinion as to who
10    was responsible for the attack on the United States on
11    September 11th, 2001?
12            PROSPECTIVE JUROR NO. 8:  Well, the
13    individuals that were identified, what background they
14    came from and what -- you know, what country they
15    originated from, because that's just common knowledge
16    of the type of people that would do that to us.
17            And the majority of the people, where they
18    came from -- like I said, as an American citizen, all I
19    can believe is what you hear or what you read of the
20    reasons why that happened.
21            THE COURT:  Is there anything else you think
22    the Court or the attorneys should know that might
23    influence your ability to fairly and impartially judge
24    the evidence in this case and follow the Court's
25    instructions on the law?
```

```
 1              PROSPECTIVE JUROR NO. 8:  I see no problem

 2   with me following the law and the instructions of the

 3   attorneys.

 4              THE COURT:  Okay.  If you would have a seat

 5   outside, sir, and not discuss my questions with anyone.

 6              PROSPECTIVE JUROR NO. 8:  Yes.  Yes, your

 7   Honor.

 8              (Thereupon, Potential Juror No. 8 retired from

 9   the courtroom and the following proceedings were had:)

10              THE COURT:  Juror No. 9, please.

11              MR. CLARK:  Your Honor, before we bring Juror

12   No. 9 in, could I address --

13              THE COURT:  Yes.

14              MR. CLARK:  I would renew my motion that he be

15   removed as a hardship again.  I believe this is a

16   hardship.

17              If he's not removed for hardship, I would ask

18   the Court to inquire about the fact that his nephew is

19   a US air marshal, how that may impact his ability to be

20   fair and impartial in this case.

21              THE COURT:  I believe I asked him regarding

22   his nephew and being a US air marshal already

23   yesterday.

24              MR. CLARK:  You mean in this line of

25   questioning?
```

1          THE COURT:  Yesterday.

2          MR. CLARK:  I was asking that this be asked in

3    connection with Question 1, which is is there anything

4    that would prevent him from being able to sit and be

5    fair.

6          I wanted to specifically address the US air

7    marshal because it seemed to me something that, given

8    9/11 was attacked by airplanes and US air marshals had

9    to be put on airplanes after 9/11, that that might be

10   something that he should consider and might impact his

11   ability to be fair and impartial.

12         MS. ARANGO:  I would object, Judge.

13         You asked him yesterday several times about

14   the air marshal, just like you did everybody else.

15   There's no reason to bring it up today.

16         You asked him about his hardship issue, which

17   was the only issue that we wanted -- that we wanted to

18   discuss today that was left over from yesterday.

19         And he said that they could train another

20   person by March 15th, that he could be available on

21   Mondays and he would be -- he would commit himself to

22   this case.  He was very clear that it was not a

23   hardship.

24         I mean, he has obligations and he has certain

25   specialized knowledge, but he made it clear that, if he

```
 1    were chosen as a juror in this case, this would be his

 2    priority and his company could work it out.

 3              MR. LEVIN:  Your Honor, respectfully, I'm not

 4    so sure he said that they could train another person by

 5    March 15th.

 6              THE COURT:  Is your microphone on?

 7              MR. LEVIN:  It should be.  Sorry.  It was not.

 8    I apologize.

 9              I'm not so sure they could train another

10    person by March 15th.

11              He seemed to keep stressing the fact that he's

12    been there for 28 years and he's been telling them

13    repeatedly that they need to get another man that would

14    be able to cover for him or to do the type of work that

15    he's the only one capable of doing.  And to this day,

16    they have not.

17              Now, the question remains whether or not --

18    if, in fact, he's selected or has to serve on this

19    jury, I mean, obviously, they would be pressed into

20    training someone else.  But the question remains

21    whether or not they even have that capability, number

22    one.

23              Number two, what happens -- let's assume that

24    they don't train somebody else, he's selected and that

25    date rolls around.  We still don't know how long he's
```

1    going to be impacted by that.

2         I could see it if it were a day, if he had

3    to -- we had to recess so he could go to the site so he

4    could be in communication -- as he indicated, he has to

5    be on site.

6         That wouldn't necessarily pose a problem.  But

7    we don't have any indication as to how long a process

8    this refueling is and how much time might be consumed

9    by that.

10        So to my ear, it's really not clear as to

11   whether or not they are going to be able to put another

12   man in his place.

13        MS. ARANGO:  Judge, I think you asked him the

14   question -- I don't think there's any further

15   questioning that you could ask of this man.

16        He made it clear that this is a billion-dollar

17   company that has other nuclear plants around the

18   country, that if he were -- you know, that he's going

19   to do as much as he could possibly do and that, at a

20   certain point, it will be up to the company to do what

21   they have to do, but that that will not impact his jury

22   service.

23        He made that abundantly clear.  You asked him

24   various questions in every different direction.  I just

25   don't think you're going to get -- he gave you as much

1    information as could possibly be obtained.

2            He made it clear, when it came down to the

3    nuts and bolts, you know, he is committed to -- if he

4    was chosen as a juror in this case, he would be

5    committed to that and that he has certain

6    responsibilities and certain obligations and he is

7    going to balance that and he will let his employer

8    know, but there will be a certain point where the

9    employer is just going to have to take the ball.

10           And he made that clear.  He explained it in

11   the best way he could.

12           And like I said --

13           THE COURT:  I am not going to excuse him for

14   hardship.  It seems very clear to me from his

15   questions, his tone, that the company will have to get

16   somebody to replace him, but that he feels it's their

17   responsibility to do that, that he has put certain

18   things in place and that he would be able to

19   participate as a juror, paying full time and attention

20   to the case.

21           Obviously, if an unforeseen circumstance

22   happened and he was on the jury, I would have to take

23   that up, if it was presented to me.

24           But at this juncture, I don't find it's a

25   hardship.

```
1              MR. CLARK:  Could --
2              THE COURT:  I don't find that any further
3    questioning regarding his nephew and the fact that his
4    nephew is a US marshal is necessary.  I questioned
5    about him it yesterday.
6              Clearly, the questions are open-ended enough
7    that, if something about his nephew being a US marshal
8    and September 11th -- he could have brought it up.  I
9    don't find it necessary to inquire further.
10             MR. CLARK:  Could I just make the record, your
11   Honor, that I need to make?
12             Yesterday, this case was -- it was not
13   discussed what the nature of this case was.  So today
14   is the first day that we're talking about this case
15   being one of charges about blowing up the Sears Tower
16   and terrorist activities and 9/11.
17             So I think that bringing it up yesterday --
18             THE COURT:  Okay.  That's a point.
19             Bring him in.  Bring him in.  I'll ask him.
20             THE COURT SECURITY OFFICER:  No. 8?
21             THE COURT:  No. 8 again.
22             (Thereupon, Potential Juror No. 8 entered the
23   courtroom and the following proceedings were had:)
24             THE COURT:  A few more questions, sir.
25             PROSPECTIVE JUROR NO. 8:  Yes, your Honor.
```

1          THE COURT:  Yesterday, you indicated that your

2    nephew is a US air marshal.

3          PROSPECTIVE JUROR NO. 8:  That's correct, your

4    Honor.

5          THE COURT:  Given that you now know the

6    allegations and the charges in this case, would the

7    fact that your nephew is employed as a US air marshal

8    affect your abilities to be a fair and impartial juror?

9          PROSPECTIVE JUROR NO. 8:  No, your Honor, not

10   whatsoever.

11         THE COURT:  Okay.  Thank you, sir.

12         PROSPECTIVE JUROR NO. 8:  That's it?

13         THE COURT:  That's it.

14         (Thereupon, Potential Juror No. 8 retired from

15   the courtroom and the following proceedings were had:)

16         THE COURT:  Juror No. 9, please.

17         MS. JHONES:  Your Honor, for the record, I'd

18   just like to note my objection not with respect to the

19   air marshal issue.  I think this gentleman has answered

20   those questions that he could be impartial.  I just

21   want the record to reflect that -- my objection to

22   the --

23         (Thereupon, Potential Juror No. 9 entered the

24   courtroom and the following proceedings were had:)

25         THE COURT:  Would you wait, please.

```
 1              MS. JHONES:  Sure.

 2              THE COURT:  Hello.  Is it okay for you to

 3   stand there, ma'am?

 4              PROSPECTIVE JUROR NO. 9:  Good morning.

 5              THE COURT:  Good morning.

 6              Since you last -- since you left us last

 7   evening, have you heard, read or seen anything about

 8   this case either in print or on the Internet or in the

 9   media?

10              PROSPECTIVE JUROR NO. 9:  No.

11              But can I talk to you a second?

12              THE COURT:  Sure.  Right from there, ma'am.

13              PROSPECTIVE JUROR NO. 9:  I don't want to say

14   it out loud.

15              THE COURT:  So the attorneys are going to have

16   to come side-bar.

17              PROSPECTIVE JUROR NO. 9:  Okay.

18              THE COURT:  Come on up, side-bar.

19              (Whereupon, proceedings were had at side-bar

20   outside the presence of the jury which have been sealed

21   per instructions of the Court.)

22              (Whereupon, the following proceedings were had

23   in open court:)

24              THE COURT:  In this case, the Government has

25   alleged that the Defendants were engaged in
```

1    conspiracies to commit various violations of federal

2    laws regarding terrorist activities.

3          The charges include conspiracies or agreements

4    to provide material support and resources to agents of

5    Al-Qaeda in conspiring to blow up the Sears Tower in

6    Chicago and several federal buildings in a planned war

7    against the United States.

8          Given that, is there anything that would

9    prevent you from being able to sit and listen to the

10   evidence in this case and be fair to both the

11   Government and the Defendants?

12         PROSPECTIVE JUROR NO. 9:  Yes.  If the FBI

13   found them already guilty, I think they're guilty.

14         THE COURT:  Okay.  Well, the FBI is the

15   investigating agency.

16         Do you understand that?

17         PROSPECTIVE JUROR NO. 9:  Right.

18         THE COURT:  The FBI, as the investigating

19   agency, then presents the evidence that they have

20   collected to the US Attorney and then the US attorney

21   presents it to a grand jury and the grand jury makes a

22   determination whether an indictment should be returned.

23         As I indicated to you yesterday, the

24   indictment is the charging document.  It's not evidence

25   of guilt.  That's what's to be determined at the trial.

1           Do you understand that?

2           PROSPECTIVE JUROR NO. 9:  Yeah.

3           THE COURT:  So given that you now know what

4    the process is, could you be a fair and impartial juror

5    in this case?

6           PROSPECTIVE JUROR NO. 9:  No.

7           THE COURT:  Okay, ma'am.  If you would have a

8    seat outside and not discuss my questions with anyone.

9           (Thereupon, Potential Juror No. 9 retired from

10   the courtroom and the following proceedings were had:)

11          MR. CLARK:  Motion for cause, your Honor.

12          THE COURT:  Any objection?

13          MS. ARANGO:  No objection.

14          THE COURT:  Excused for cause.

15          Juror No. 11.

16          (Thereupon, Potential Juror No. 11 entered the

17   courtroom and the following proceedings were had:)

18          THE COURT:  Good morning.

19          PROSPECTIVE JUROR NO. 11:  Good morning.

20          THE COURT:  Are you okay standing there?

21          PROSPECTIVE JUROR NO. 11:  Yeah.  That's fine.

22          THE COURT:  Since you left last evening, have

23   you heard, read or seen anything about this case in the

24   paper, on television or on the Internet or through the

25   radio?

1          PROSPECTIVE JUROR NO. 11:  Yes, I have.

2          THE COURT:  Okay.  And what is it that you saw

3    or heard?

4          PROSPECTIVE JUROR NO. 11:  Well, I have heard

5    it on the news.

6          And, also, I have a former acquaintance that I

7    meet at a coffee shop that I go to every morning, and

8    she had mentioned awhile back about her husband going

9    through a trial similar to this one, which she probably

10   shared it, you know, a -- topical, not in detail.

11         And I kind of like said, "Oh, yeah.  I heard

12   that in the news," you know, something like that.  But

13   that was it.

14         THE COURT:  Okay.  And do you know what case

15   she was talking about that her husband was on?

16         PROSPECTIVE JUROR NO. 11:  She was talking

17   about a case that -- there was something that had to do

18   with a terror plot.

19         THE COURT:  Okay.

20         PROSPECTIVE JUROR NO. 11:  And it was in the

21   similar area to the address that you mentioned.

22         THE COURT:  Okay.  And what did she tell you

23   about that case?

24         PROSPECTIVE JUROR NO. 11:  She didn't say it

25   in detail, only because we were -- we always look at

1   the newspaper in the coffee shop and we just talk about

2   what we hear in the news or see.

3            THE COURT:  So did you meet her this morning?

4            PROSPECTIVE JUROR NO. 11:  No.  I didn't meet

5   her this morning.  I see her like every other morning

6   or so.  But I think her husband was in a trial like two

7   months ago.

8            THE COURT:  Okay.  So when is it that you had

9   this conversation with her?

10            PROSPECTIVE JUROR NO. 11:  This conversation

11   was probably awhile back, I think, when it was in the

12   news.  I don't know how....

13            THE COURT:  Since last night, have you heard,

14   read or seen anything about this case in the news or

15   any paper?

16            PROSPECTIVE JUROR NO. 11:  No.  Since last

17   night, no.  But I kind of like have an idea, but I

18   don't know all the details.

19            THE COURT:  Okay.  In this case, the

20   Government has alleged that the Defendants were engaged

21   in conspiracies to commit various violations of federal

22   laws regarding terrorist activities.

23            The charges include conspiracies or agreements

24   to provide material support and resources to agents of

25   Al-Qaeda in conspiring to blow up the Sears Tower in

```
1    Chicago and several federal buildings in a planned war

2    against the United States.

3            Given that, is there anything that would

4    prevent you from being able to sit and listen to the

5    evidence in this case and being fair to both the

6    Government and the Defendants?

7            PROSPECTIVE JUROR NO. 11:  I don't know how I

8    would react to that.

9            THE COURT:  Okay.

10            PROSPECTIVE JUROR NO. 11:  It would cause a

11    little stress, but I don't know how I would --

12            THE COURT:  Well, my question goes to, now

13    that you know what the charges involve, would you be

14    able to sit as a juror, listen to the evidence in this

15    case and perform your duties as a juror and be fair to

16    both the Government and the Defendants?

17            PROSPECTIVE JUROR NO. 11:  Yes.  I possibly

18    would.

19            THE COURT:  Possibly?

20            PROSPECTIVE JUROR NO. 11:  Yes.

21            THE COURT:  So does that mean that possibly

22    you wouldn't?

23            PROSPECTIVE JUROR NO. 11:  Well, I would be

24    fair.  As an individual and serving as a juror, I would

25    be fair.
```

```
 1            THE COURT:  Okay.  So you would be able, then,
 2   to sit and listen to the evidence in this case and be
 3   fair and impartial?
 4            PROSPECTIVE JUROR NO. 11:  Yes.
 5            THE COURT:  In this case, you may hear
 6   evidence that the Government used informants who are
 7   not United States citizens and who posed as
 8   terrorists/agents of Al-Qaeda.
 9            Do you have such strong feelings one way or
10   the other that you would not be able to sit and listen
11   to this evidence and be fair to both the Government and
12   the Defendants?
13            PROSPECTIVE JUROR NO. 11:  Yes.
14            THE COURT:  Okay.  What strong feelings?
15            PROSPECTIVE JUROR NO. 11:  Would I have strong
16   feelings?
17            THE COURT:  Yes.
18            PROSPECTIVE JUROR NO. 11:  Oh, okay.
19            THE COURT:  Let me ask it -- let me ask the
20   question again -- okay? -- to make sure you understood
21   it.
22            In this case, you may hear evidence that the
23   Government used informants who were not United States
24   citizens and who posed as terrorists/agents of
25   Al-Qaeda.
```

1          Do you have such strong feelings one way or

2    the other that you would not be able to sit and listen

3    to the evidence in this case and be fair to both the

4    Government and the Defendants?

5          PROSPECTIVE JUROR NO. 11:  That is a "no."

6    No.  I wouldn't have any.

7          THE COURT:  Have you acquired any information

8    from newspaper, television, conversations or any other

9    sources about this case?

10         PROSPECTIVE JUROR NO. 11:  Not recently.

11         THE COURT:  At any time?

12         PROSPECTIVE JUROR NO. 11:  Well, only because

13   I hear it and I look at the news on the Internet.

14         THE COURT:  And do you remember what you heard

15   on the news or saw on the Internet?

16         PROSPECTIVE JUROR NO. 11:  The only thing is

17   that they said the amount of individuals that were

18   involved, the plot, the actual -- just over -- just

19   over -- not in detail.

20         But just anything that has to do with

21   terrorism does -- does interest me because I don't want

22   nothing like that to happen here.

23         THE COURT:  Okay.

24         PROSPECTIVE JUROR NO. 11:  So I like to be

25   aware of those things.

```
1              THE COURT:  Okay.

2              PROSPECTIVE JUROR NO. 11:  But I wasn't into

3    the details or very involved into it.

4              THE COURT:  Do you read the Miami Herald, New

5    Times or Sun-Sentinel news publications either in print

6    or on-line?

7              PROSPECTIVE JUROR NO. 11:  On-line, the Miami

8    Herald.

9              THE COURT:  Have you heard anything in any

10   newspaper or on the Internet or have you seen anything

11   on television or heard anything on the radio about this

12   case, other than what you've just told me?

13             PROSPECTIVE JUROR NO. 11:  Just that.

14             THE COURT:  Okay.  Do you remember when that

15   was?

16             PROSPECTIVE JUROR NO. 11:  It could have been

17   several weeks ago, a month ago, two --

18             THE COURT:  Okay:

19             PROSPECTIVE JUROR NO. 11:  -- just about.

20             THE COURT:  How closely have you followed the

21   course of the proceedings prior to yesterday that have

22   led up to this trial?

23             PROSPECTIVE JUROR NO. 11:  How closely?  From

24   yesterday to today?

25             THE COURT:  No.  Before yesterday.  Obviously,
```

1    you've been following it closely since you came

2    yesterday because you're here.

3              PROSPECTIVE JUROR NO. 11:  Right.

4              THE COURT:  But prior to that.

5              PROSPECTIVE JUROR NO. 11:  Prior to that, not

6    at all.

7              THE COURT:  Have you discussed this case with

8    anyone?

9              PROSPECTIVE JUROR NO. 11:  No.

10             THE COURT:  Do you have an open mind regarding

11   this case?

12             PROSPECTIVE JUROR NO. 11:  Kind of, sort of.

13   Not -- I don't -- I don't know how open-minded I could

14   be.

15             THE COURT:  Okay.  And what do you mean by

16   that?

17             PROSPECTIVE JUROR NO. 11:  Well, because I

18   don't know everything clearly about the case.  So I

19   don't know how open-minded I could be or how I could

20   take it.

21             THE COURT:  Do you understand that every

22   Defendant is presumed innocent?

23             PROSPECTIVE JUROR NO. 11:  Yes.

24             THE COURT:  And do you understand that the

25   Government has the burden of proving a defendant guilty

1    beyond a reasonable doubt?

2              PROSPECTIVE JUROR NO. 11:  Yes.

3              THE COURT:  So that every Defendant who comes

4    before the Court in a criminal case at the start of a

5    trial is presumed innocent.

6              PROSPECTIVE JUROR NO. 11:  Right.

7              THE COURT:  And evidence has to be presented

8    and then jurors have to decide whether the Government

9    has met its burden and proved their case against a

10   defendant beyond a reasonable doubt.

11             Do you understand that?

12             PROSPECTIVE JUROR NO. 11:  Yes.

13             THE COURT:  So given your understanding of

14   what the law is and the burden of the Government and

15   the presumption of innocence regarding a criminal

16   defendant, does that affect your answer about having an

17   open mind?

18             PROSPECTIVE JUROR NO. 11:  I guess not.  No.

19             THE COURT:  You still think -- you're still

20   kind of -- you kind of have an open mind?

21             PROSPECTIVE JUROR NO. 11:  I would have to

22   keep an open mind and just weigh things out.

23             THE COURT:  So does that mean that you have an

24   open mind now or you're not sure that you have an open

25   mind?

1          PROSPECTIVE JUROR NO. 11:  Well, because I've

2     never been in this type of situation.

3          THE COURT:  You've never been on a jury

4     before?

5          PROSPECTIVE JUROR NO. 11:  No.  No.

6          THE COURT:  I understand that.  It's a

7     different situation.

8          PROSPECTIVE JUROR NO. 11:  Yes.

9          THE COURT:  So what happens in a trial is that

10    jurors are chosen who basically say that they can be

11    fair and impartial when they're listening to the

12    evidence, that they're going to sit as a group of

13    12 individuals as receptacles, so to speak, and listen

14    to the evidence as it comes into the trial, what is

15    presented here in court -- testimony, documents, other

16    types of exhibits that are introduced into the

17    record -- and they're going to listen to all the

18    evidence, both the Government's case and, if the

19    Defendants choose to present a case, though they don't

20    have to, any evidence that a Defendant may choose to

21    put on, if they want to do so, and have an open mind

22    throughout that process.

23          And at the conclusion of the trial, after the

24    lawyers have given their closing arguments and the

25    Court has instructed you on the law -- at that point,

```
 1   the jury, made up of 12 individual persons, are no
 2   longer receptacles.  They're no longer just taking in
 3   evidence.  They then have to make a determination,
 4   first individually and then collectively, as to whether
 5   the Government has proved its case beyond a reasonable
 6   doubt.
 7            Do you understand that?
 8            PROSPECTIVE JUROR NO. 11:  Yes.  I understand.
 9            THE COURT:  So would you be able to sit as a
10   juror with an open mind and listen to all the evidence
11   in this case?
12            PROSPECTIVE JUROR NO. 11:  Yes.
13            THE COURT:  Would the fact that this is a case
14   involving terrorism or charges and allegations of
15   material support for terrorist activities affect your
16   ability to sit and listen to the evidence in this case
17   and have an open mind?
18            PROSPECTIVE JUROR NO. 11:  It might affect it
19   emotionally, depending on how the case turns into.
20   So....
21            THE COURT:  And what do you mean by that?
22            PROSPECTIVE JUROR NO. 11:  I don't know.  I
23   guess emotional as a person, as a human being, and it's
24   just -- the topic of the case is just not -- it
25   doesn't -- it makes me feel uneasy --
```

1          THE COURT:  Okay.

2          PROSPECTIVE JUROR NO. 11:  -- just what is

3   involved.

4          THE COURT:  And would that uneasy feeling

5   affect your ability to be fair and impartial?

6          PROSPECTIVE JUROR NO. 11:  I can't -- I can't

7   confirm to that, because I don't know up to what stage

8   of the case what I feel emotionally pressured on -- not

9   pressured, but how I could take it.

10          THE COURT:  Have you formed an opinion

11   regarding any of the Defendants based upon any outside

12   information?

13          PROSPECTIVE JUROR NO. 11:  No, I haven't.

14          THE COURT:  Have you formed an opinion

15   regarding any of the Defendants based upon the subject

16   matter of the case?

17          PROSPECTIVE JUROR NO. 11:  No, I haven't.

18          THE COURT:  Do you have any beliefs, thoughts

19   or opinions which may cause you to decide this case on

20   anything other than the evidence you will hear at

21   trial?

22          PROSPECTIVE JUROR NO. 11:  The only beliefs

23   that I have is that I do support the safety of the

24   United States and any acts of terrorism towards our

25   country.

1          THE COURT:  Okay.

2          PROSPECTIVE JUROR NO. 11:  I don't support

3     that.

4          THE COURT:  Given that belief, would you still

5     be able to apply the burden on the Government to prove

6     their case beyond a reasonable doubt?

7          PROSPECTIVE JUROR NO. 11:  Yes.

8          THE COURT:  And given the subject matter of

9     this case, if the Government failed to prove its case

10    beyond a reasonable doubt, would you be able to return

11    a verdict of not guilty?

12         PROSPECTIVE JUROR NO. 11:  I would have to, if

13    there's no evidence.

14         THE COURT:  And if the Government proved its

15    case beyond a reasonable doubt, would you be able to

16    return a verdict of guilty?

17         PROSPECTIVE JUROR NO. 11:  Yes, I would.

18         THE COURT:  Are you knowledgeable about the

19    history and practice of Islam?

20         PROSPECTIVE JUROR NO. 11:  No.

21         THE COURT:  Are you knowledgeable about the

22    history and practices of the Moorish Science Temple?

23         PROSPECTIVE JUROR NO. 11:  No, not completely.

24    Just from what you hear in the news.

25         THE COURT:  What have you heard --

1          PROSPECTIVE JUROR NO. 11:  I'm not

2     knowledgeable about those religions or beliefs.

3          THE COURT:  Have you heard anything in the

4     news about the Moorish Science Temple?

5          PROSPECTIVE JUROR NO. 11:  No.

6          THE COURT:  Are you knowledgeable about the

7     Universal Divine Saviors?

8          PROSPECTIVE JUROR NO. 11:  No.

9          THE COURT:  Are you a member of any type of

10    Masonic lodge?

11         PROSPECTIVE JUROR NO. 11:  No.

12         THE COURT:  Are you knowledgeable about the

13    history, teachings or practices of the Masons?

14         PROSPECTIVE JUROR NO. 11:  No.

15         THE COURT:  Have you or any of your family

16    members ever visited the Middle East?

17         PROSPECTIVE JUROR NO. 11:  No.

18         THE COURT:  Do you or any family members or

19    close friends have any prior or present military

20    service?

21         PROSPECTIVE JUROR NO. 11:  Present military?

22         THE COURT:  Or prior.

23         PROSPECTIVE JUROR NO. 11:  I have a nephew

24    that's in the Marines.

25         THE COURT:  Did you tell us about that

```
 1    yesterday?

 2              PROSPECTIVE JUROR NO. 11:  No.

 3              THE COURT:  So you have a nephew in the

 4    Marines.

 5              Where is he stationed?  Do you know?

 6              PROSPECTIVE JUROR NO. 11:  He's actually in

 7    training.  And in June, he'll be shipped to Iraq.

 8              THE COURT:  Would that fact affect your

 9    ability to be a fair and impartial juror in this case?

10              PROSPECTIVE JUROR NO. 11:  It depends on the

11    facts.

12              THE COURT:  What do you mean by that?

13              PROSPECTIVE JUROR NO. 11:  Could you repeat

14    the question again.

15              THE COURT:  Sure.

16              The fact that your nephew is in the Marines

17    and is scheduled to go to Iraq in June --

18              PROSPECTIVE JUROR NO. 11:  Oh.  No.

19              THE COURT:  Would that affect your ability to

20    be a fair and impartial juror?

21              PROSPECTIVE JUROR NO. 11:  No.  No.

22              THE COURT:  Have you or any members of your

23    family or close friends had any personal experience

24    with acts of terrorism?

25              PROSPECTIVE JUROR NO. 11:  No.
```

```
1              THE COURT:  Do you know or do you have a
2    family member or friend who knows someone who was a
3    victim of a terrorist attack?
4              PROSPECTIVE JUROR NO. 11:  No.
5              THE COURT:  Have the events of September 11th
6    or any other terrorist act affected you to such an
7    extent that it would make it difficult for you to sit
8    and listen to the evidence in this case and be fair to
9    both the Government and the Defendants?
10             PROSPECTIVE JUROR NO. 11:  Well, it hasn't
11   affected me in my way of living.  But it has given me
12   some thought that it is -- it is a very dangerous act.
13             And a lot of people were affected.  So,
14   emotionally, it did affect me.  But it's still there.
15   You know, the scar is still there.
16             THE COURT:  Okay.  The question is:  Has it
17   affected you to such an extent that it would make it
18   difficult for you to be a fair and impartial juror in
19   this case?
20             PROSPECTIVE JUROR NO. 11:  It may make it
21   difficult.  Yes.
22             THE COURT:  Have you or any other family
23   member or close friend lost a job, a business contract
24   or experienced any other financial hardship as a result
25   of September 11th or any other terrorist attack?
```

1          PROSPECTIVE JUROR NO. 11:  You mean lost a job

2     because of the 9/11?

3          THE COURT:  Yes.  Either because directly of

4     9/11 or the economic situation after 9/11.

5          PROSPECTIVE JUROR NO. 11:  Well, I have lost

6     my job.  I did lose my job.  I work as a contract

7     employee.  So ever since last year -- in April, I got

8     laid off from a commercial lending company -- I've been

9     bouncing from contractor to contractor.

10          THE COURT:  But that was not as a result of

11     September --

12          PROSPECTIVE JUROR NO. 1:  Not as a result of

13     9/11.  But after 9/11.  Yes.

14          THE COURT:  That's because of the economic

15     situation we're all in right now?

16          PROSPECTIVE JUROR NO. 11:  Right.

17          THE COURT:  Do you have an opinion as to who

18     was responsible for the attack on the United States on

19     September 11th, 2001?

20          PROSPECTIVE JUROR NO. 11:  No.  I don't have

21     any opinion.

22          THE COURT:  Is there anything else you think

23     the Court or the attorneys should know that might

24     influence your ability to fairly and impartially judge

25     the evidence in this case and follow the Court's

 1    instructions on the law?

 2              PROSPECTIVE JUROR NO. 11:  No.

 3              THE COURT:  Okay, ma'am.  If you would have a

 4    seat outside and not discuss my questions with anyone.

 5              PROSPECTIVE JUROR NO. 11:  Thank you.

 6              (Thereupon, Potential Juror No. 11 retired

 7    from the courtroom and the following proceedings were

 8    had:)

 9              MR. CLARK:  Your Honor --

10              THE COURT:  One moment, please.

11              Yes.

12              MR. CLARK:  I would move to excuse this

13    potential juror for cause because there was at least

14    seven times when the Court tried to rehabilitate this

15    witness and numerous places she was not sufficiently

16    able to articulate that she would be fair.

17              She started off saying that she had met with a

18    friend whose husband was on a jury and that was --

19    actually, she had said she had a problem with English

20    yesterday.  I didn't really -- then when she was asked

21    Question No. 1, she said she didn't know if she could

22    be fair, possibly fair.

23              THE COURT:  She didn't say she had a problem

24    with English yesterday.

25              MR. CLARK:  Well, yesterday, she didn't

1   understand Question 20.

2          But, anyway, she -- then in Question No. 2

3   today, she answered it that she has strong feelings.

4   And then she had -- she didn't seem to understand that

5   question.

6          THE COURT:  Let me interrupt you for one

7   moment.

8          Is the Government opposing this?

9          MS. ARANGO:  Yes, Judge.

10          THE COURT:  Go ahead, Mr. Clark.

11          MR. CLARK:  Then she said she was interested

12   in terror and she was against terror.

13          And when she talked about -- you were asking

14   her if she had an open mind, she said not -- sort of an

15   open mind, kind of.  Then she said not.

16          Then she said she had -- emotionally -- she

17   was asked some questions about that.  She said she was

18   emotionally affected by terrorism.

19          I don't think she ever articulated that she

20   would have an open mind completely -- sufficiently

21   articulated it to make her a fair and impartial juror.

22          Then when we went on, she couldn't -- she

23   wasn't able to confirm again that she had -- you used

24   the word "confirm."  She couldn't confirm it.  Then she

25   said she supported any safety acts against terror.

1         I'm concerned that she's going to view -- she

2  will not be able to sufficiently deal with the issue of

3  entrapment in this case, because those efforts are acts

4  to prevent terrorism, but they're not necessarily --

5         THE COURT:  Any safety acts?

6         MR. CLARK:  I'm sorry?

7         THE COURT:  Is that what you said?  Safety?

8         MR. CLARK:  She said safety acts.  She said

9  she supported safety acts against terrorism.

10        MR. VEREEN:  I think she said she supports the

11 safety of the United States.

12        THE COURT:  Right.

13        MR. CLARK:  Well, any acts -- in any event,

14 she talked about her nephew being in the Marines and

15 she said she didn't tell us about that yesterday.

16        I think that's a misstatement to us about the

17 fact that her son was in the Marines yesterday and

18 she --

19        THE COURT:  Her nephew.

20        MR. CLARK:  -- and she didn't tell us.

21        Then she said it depends whether she could be

22 fair or not and it depends because he was in the

23 Marines.

24        She said that --

25        THE COURT:  I don't think I asked yesterday

```
1   whether someone had had any family members in the --
2         MR. CLARK:  Well, any family --
3         THE COURT:  Mr. Clark, I did not ask
4   whether -- that's not one of the questions that I asked
5   on the first day, is about military service.  People
6   volunteered it, but it was not one of the questions.
7         MR. CLARK:  Well, she didn't bring it up
8   yesterday.  And she now -- she said, being fair, it
9   depended.  Her answer was it depends, you know, about
10  the case.
11        And then she -- about -- she -- on 9/11, she
12  had a scar as a result of that.  She said it would be
13  difficult to be fair.
14        Then when she was asked about -- when she lost
15  a job from 9/11, she started saying she lost her job.
16  She didn't seem to understand that question very well.
17  It goes back to an English issue.
18        We went on so long to try to rehabilitate this
19  witness that I don't think she sufficiently articulated
20  that she would be able to be a fair and impartial
21  juror.  She is just not sure enough, your Honor.
22        I move to excuse her for cause.
23        MS. JHONES:  Your Honor, may I --
24        THE COURT:  Does anyone else on the defense
25  side want to be heard?
```

1      MS. JHONES:  Yes.

2      THE COURT:  Let me set out what's going to be

3  the process here.

4      Everyone from the defense will make their

5  statements and then the Government will respond and

6  I'll rule.  I don't want to go back and forth three and

7  four times.

8      Go ahead.

9      MS. JHONES:  Your Honor, may I remain seated?

10     THE COURT:  Sure.

11     MS. JHONES:  Thank you.

12     Your Honor, I think that the issue with this

13  juror -- I think that, unfortunately, it's pretty clear

14  that she really wants to be fair and impartial.

15     But the nature of these charges, just the word

16  "terrorism" -- I observed her, your Honor.  She was

17  4 or 5 feet away from me.

18     The minute you mentioned that word, she

19  started clenching her fists.  She had a lump in her

20  throat.  This woman is so uncomfortable with these

21  charges.

22     And I wanted to -- I know the Court heard what

23  we all heard, but when she -- when the -- in the

24  initial questioning, when you went to -- you asked her

25  about the first question on the amended individual voir

1    dire questions and the response to the charges, which

2    is precisely what triggers her inability -- her

3    inability to understand the presumption of innocence

4    and to put away -- put aside her emotional

5    predisposition, given the nature of the charges.

6          Her first response was, "I possibly would as

7    an individual.  I possibly would as an individual

8    serving as a juror.  I possibly can."

9          The Court asked her about that.  And then

10   again she was equivocal.

11         Then when the Court attempted again to try and

12   explain to her about the presumption of innocence, she

13   used the term, "Kind of, sort of.  I don't know how

14   open I can be."  And that was in response to, again,

15   the charges.

16         The minute the charges start -- the evidence

17   comes out and she starts hearing the things that

18   Mr. Batiste said, forget the presumption of innocence,

19   because the nature of the charges in this case are such

20   that this woman cannot, cannot -- is not emotionally

21   equipped to handle it.

22         And she was very sincere.  Every time we went

23   to the issue of charges, "I don't know how I can take

24   it," how I can take it.

25         Your Honor, we need somebody that has the

```
 1    emotional fortitude to exercise their duty -- their
 2    duty to be fair and impartial and to understand and be
 3    able feel what the presumption of innocence means.
 4            Mr. Batiste is facing a lot of time, your
 5    Honor.  This is not one where we have to just juggle it
 6    and just -- this woman -- unequivocally, she said, "I
 7    can't be sure."
 8            THE COURT:  Anyone else?
 9            MR. LEVIN:  Your Honor, very briefly.  If I
10    may be seated, too.
11            THE COURT:  Everybody can remain seated.  You
12    don't have to ask me.
13            MR. LEVIN:  All right.
14            Your Honor, she had indicated that the topic
15    of terrorism itself makes her feel uneasy.  With that
16    as a backdrop, she's also heard about the case.  She
17    discussed this case.  She didn't say that she's
18    formulated any opinions.  But based upon her demeanor
19    and her answers, it may be that she already has.
20            She said, with regard to the notion of
21    terrorism, she doesn't want anything like that to
22    happen here.
23            This case is about the Government, in essence,
24    preemptively, in my view, stopping something from
25    happening bad here.
```

1           With regard to the question of an open mind

2     after the Court rehabilitated her prior to that, she

3     said she kind of, sort of, could keep an open mind, "I

4     don't know how open-minded I could be."

5           And then, finally, there was the question of,

6     "Have the effects of 9/11" -- "What" -- "Have the

7     effects of 9/11" -- "Have they prevented from you being

8     fair in this case?"

9           She said 9/11 may make it difficult for her to

10    be fair and impartial.

11          THE COURT:  Anything that has not been said?

12          MR. VEREEN:  Yes, your Honor, if may I add my

13    two cents.

14          While concerned with the same questions and

15    answers that my co-counsel was concerned with, one that

16    stuck out with me when the Court was questioning this

17    prospective juror as to whether or not she could render

18    a verdict of guilty or not guilty, her response to the

19    question was, if there was no evidence, she could

20    return a verdict of guilty.

21          Well, that's not the burden.  And there will

22    be evidence.  Whether or not the evidence is

23    substantial enough that she could render a verdict is

24    the question.

25          But she said, if there was no evidence, she'll

1    be able to render a verdict of guilty.

2            I found a problem with that.

3            MS. ARANGO:  First of all, with respect to

4    what Mr. Vereen just said, that's not what she said.

5    The question you gave was, "Given the subject matter,

6    if the Government failed to prove its case beyond a

7    reasonable doubt, would you be able to find the

8    Defendants not guilty?"

9            And she basically said, "Yes.  If there was no

10   evidence, I would be able to find them not guilty,"

11   something like that -- to that effect.

12           That -- so she was responding to that

13   question.

14           But what's more concerning, Judge, is that the

15   defense -- their whole position here is that a person

16   basically has to be a robot -- an emotionless robot to

17   be able to withstand a cause challenge here, because

18   people are emotional.

19           She's an emotional woman.  She was just

20   telling you, "I'm emotional.  9/11 affected me."  "It

21   affected the whole country," she said.  She's just

22   expressing to you her emotions.

23           And when you asked her at the beginning, "Is

24   there anything that would prevent you from being fair

25   and impartial?", she said, "Well, I don't know how I

 1    would react."

 2          Her point is not, "I cannot be fair and

 3    impartial."  She's just saying, "I'm emotional."  She's

 4    trying to predict how she might react in the future.

 5    She says, "It might cause me a little stress."

 6          And then, ultimately, when you explained to

 7    her that this is not -- I think the distinction is

 8    she's just trying to be -- she was just trying to be

 9    honest about her emotions and how -- about how she

10    might react in hearing information about terrorism.

11          But then, when you asked her -- and I would

12    not call it rehabilitation.  But when you asked

13    her because -- to make it clear to her what she was

14    responding to -- because she didn't understand, I don't

15    think -- the effect of her response, she always came

16    down to, "Oh, yes.  I could be fair and impartial.  I

17    have not formulated any opinions," which is of

18    significance in this case.

19          She made it clear that, you know, she has no

20    opinions about this case.  She just has emotions

21    against terrorism, just like anybody else would.  And

22    she was just expressing it.

23          Maybe she's not very artful or articulate in

24    the way she expresses it.  But I think she was just

25    trying to be sincere and honest about those emotions.

1    But every single time you explained to her the

2    process and you asked her, "Can you be fair and

3    impartial?  Can you weigh the evidence?  Can you look

4    at the evidence?  Can you hold the Government to its

5    burden?", she always answered affirmatively to that.

6    So the fact that she, in some instances, said

7    that she was emotional and that terrorism affected her,

8    that's not -- there's no reason why this Court should

9    think that it did not affect anybody who walks in here.

10   She was just more candid about expressing

11   those emotions.  But there was nothing about the way

12   she responded or the way she acted to make this Court

13   think that she didn't have the emotional fortitude to

14   handle it.

15   She wasn't weak.  She wasn't -- she seems like

16   a strong person.  She's got a family.  She's

17   articulate.  She's got a good job.  She's not a person

18   who would just fall apart in the jury panel.  And she's

19   certainly not somebody to excuse for cause.  She

20   answered the questions properly.

21   THE COURT:  I want to ask her one more

22   question.

23   Could you ask her to come back in, Gennaro,

24   No. 11.

25   (Thereupon, Potential Juror No. 11 entered the

```
 1    courtroom and the following proceedings were had:)

 2              THE COURT:  Ma'am, I have one more series of

 3    questions for you.

 4              When I was asking you about the events of

 5    September 11th or any other terrorist acts and I asked

 6    you if those events affected you to such an extent that

 7    it would make it difficult for you to be a fair and

 8    impartial juror in this case, you answered, "It may

 9    make it difficult.  Yes."

10              So my question is:  Ultimately, could you be a

11    fair and impartial juror in this case?

12              PROSPECTIVE JUROR NO. 11:  Yes.  I would be

13    fair.

14              THE COURT:  And given the conversation that

15    you had -- or that you have on a continuing basis with

16    this friend that you meet at a coffee shop, would you

17    be able, if you were chosen as a juror in this case,

18    not to discuss anything about this case with that

19    person or permit -- it's a her, a she? --

20              PROSPECTIVE JUROR NO. 11:  Yes.

21              THE COURT:  -- or permit her to discuss

22    anything about the case with you?

23              PROSPECTIVE JUROR NO. 11:  Of course.  If I

24    wasn't -- if I was in the case, I wouldn't be sharing

25    any information.
```

1          THE COURT:  And would you be able to also not

2    allow her to discuss any other jury service regarding

3    her husband's prior service with you?

4          PROSPECTIVE JUROR NO. 11:  Correct.

5          THE COURT:  Okay, ma'am.  Thank you.

6          If you could have a seat outside.

7          PROSPECTIVE JUROR NO. 11:  Thank you.

8          (Thereupon, Potential Juror No. 11 retired

9    from the courtroom and the following proceedings were

10   had:)

11         THE COURT:  I'm going to deny the challenge

12   for cause.

13         The only area of concern that I had was the

14   issue that Mr. Levin brought up, which was the last

15   question that I had noted, which was that she said it

16   would be difficult for her to be fair and impartial

17   because of the events of September 11th, which is

18   predicated the question that I asked her when she came

19   in.

20         I find that she could be a fair and impartial

21   juror.  Just because I did not take any note of any

22   physical changes in her, other than a normal

23   nervousness regarding jury service and answering

24   questions in this circumstance, and the fact that she's

25   been affected by September 11th, I do not find is it an

1    automatic cause for any juror.

2           Ultimately, she says that she -- her language

3    was, "Yes.  I would be fair."  And she's indicated that

4    she would be a fair juror.

5           She now knows the subject matter.  She knows

6    the burden.  She did say, if the Government failed to

7    prove its case, she would have to return a verdict of

8    not guilty.  She understands that.  And she's indicated

9    she would be fair.

10          So I'm denying the challenge for cause.

11          MS. JHONES:  Your Honor, if I may, just for

12   purposes of the record, she did not respond that she

13   could be impartial.  She said she could be fair.

14          Your question was, "Can you be fair and

15   impartial?"

16          She said, "I could be fair," nothing on

17   impartial.

18          Note my objection for the record, your Honor.

19   I think that this is a cause challenge.  Note my

20   objection for the record.

21          THE COURT:  Let me just find for the record

22   that the first -- when I asked her ultimately, "Could

23   you be a fair and impartial juror in this case?", she

24   said, "Yes."  That was the answer.

25          Then she said, "I would be fair."

 1              So that objection is overruled.  The challenge

 2      for cause is denied.

 3              Juror No. -- I've got to give Lisa a break.

 4      We'll be in recess for ten minutes.

 5              (Thereupon a recess was taken, after which the

 6      following proceedings were had:)

 7              THE COURT:  We're back on United States of

 8      America versus Narseal Batiste, et al., Case

 9      No. 06-20373.

10              Counsel, state your appearances, please, for

11      the record.

12              Now that we've had our morning excitement with

13      the fire alarm, welcome back.

14              MR. GREGORIE:  Good afternoon, your Honor.

15              Richard Gregorie and Jacqueline Arango on

16      behalf of the United States.

17              MS. JHONES:  Good morning.

18              Ana Jhones on behalf of Narseal Batiste, who

19      is present.

20              MR. LEVIN:  Albert Levin on behalf of Patrick

21      Abraham, who is also present.

22              MR. CASUSO:  Lou Casuso on behalf of Burson

23      Augustin.

24              MR. CLARK:  Nathan Clark with Rotschild

25      Augustine, who's present.

```
 1              MR. HOULIHAN:  Richard Houlihan with Naudimar

 2    Herrera.

 3              MR. VEREEN:  Roderick Vereen for Stanley

 4    Phanor, who's present.

 5              THE COURT:  All Defendants are present.

 6              Juror No. 11 wanted to bring something up in

 7    regard to her work.

 8              So you can have her come back in, please.

 9              (Thereupon, Potential Juror No. 11 entered the

10    courtroom and the following proceedings were had:)

11              PROSPECTIVE JUROR NO. 11:  Hello again.

12              THE COURT:  Yes, ma'am.  Patricia indicated to

13    me that you wanted to bring up something else.

14              PROSPECTIVE JUROR NO. 11:  Yes.  I brought it

15    up to her because, during your questions, I didn't want

16    to sidetrack on your questions.

17              But since I am a current contract employee

18    with a company, the company's assignment -- the

19    assignment that they have me on is terminating in the

20    next two weeks, which means I'll be unemployed.

21              I currently have an appeals case with

22    unemployment, determining on whether I walked out of a

23    job or got terminated.  So I'm not going to be

24    collecting unemployment for a good time.

25              And the contracting agency, if they know that
```

```
 1    I should be selected for jury for the next two months,

 2    they're not going to give me any other job assignment.

 3            So I will not be collecting any money or wages

 4    at all.  And I'm basically the only person bringing in

 5    a check in my household, aside from my teenage son.

 6            THE COURT:  Okay.

 7            PROSPECTIVE JUROR NO. 11:  So that is going to

 8    affect my possibility of even being able to pay -- you

 9    know, make ends meet salary-wise, because they will not

10    employ me if I'm in a jury.

11            THE COURT:  I understand.  If you could have a

12    seat outside.

13            PROSPECTIVE JUROR NO. 11:  Thank you.

14            (Thereupon, Potential Juror No. 11 retired

15    from the courtroom and the following proceedings were

16    had:)

17            THE COURT:  Okay.

18            MR. CLARK:  Your Honor, I would make a motion

19    for hardship based on what she just represented.

20            MS. ARANGO:  No objection, Judge.

21            THE COURT:  Okay.  She is excused for

22    hardship.

23            Juror No. 13.

24            (Thereupon, Potential Juror No. 13 entered the

25    courtroom and the following proceedings were had:)
```

1              THE COURT:  Good morning.

2              PROSPECTIVE JUROR NO. 13:  Good morning.

3              THE COURT:  You made it through the fire

4     alarm?

5              PROSPECTIVE JUROR NO. 13:  We did.

6              THE COURT:  Good.

7          Since you left us yesterday, have you heard,

8     seen or read anything about this case either on the TV,

9     in the print media, on the Internet or on the radio?

10             PROSPECTIVE JUROR NO. 13:  No.

11             THE COURT:  In this case, the Government has

12    alleged that the Defendants were engaged in

13    conspiracies to commit various violations of federal

14    laws regarding terrorist activities.

15         The charges include conspiracies or agreements

16    to provide material support and resources to agents of

17    Al-Qaeda in conspiring to blow up the Sears Tower in

18    Chicago and several federal buildings in a planned war

19    against the United States.

20         Given that, is there anything that would

21    prevent you from being able to sit and listen to the

22    evidence in this case and be fair to both the

23    Government and the Defendants?

24             PROSPECTIVE JUROR NO. 13:  No.

25             THE COURT:  In this case, you may hear

1   evidence that the Government used informants who were

2   not United States citizens and who posed as

3   terrorists/agents of Al-Qaeda.

4        Do you have such strong feelings one way or

5   the other that you would not be able to sit and listen

6   to this evidence and be fair to both the Government and

7   the Defendants?

8        PROSPECTIVE JUROR NO. 13:  No.

9        THE COURT:  Have you acquired any information

10   from newspaper, television, conversations or any other

11   sources about this case?

12        PROSPECTIVE JUROR NO. 13:  I did read an

13   article on miamiherald.com about this case a few weeks

14   ago.

15        What happened was I got notice for jury duty

16   that said "Special Jury Duty" and, at the office, we

17   were all trying to figure out what it was, because I've

18   heard of grand jury duty and I've heard of jury duty.

19   I had never heard of "Special Jury Duty."  So I assumed

20   it was a big drug trafficking case or something.

21        When the case got rolled over from the 13th to

22   the 20th, my boss happened to see an article on

23   herald.com that this case was rolled over from the 13th

24   to 20th and she said, "Look.  I know what case you're

25   on" and gave me the article.  I'm, like, now it makes

1  sense.

2        THE COURT:  Was that the extent of the

3  conversation or did you discuss the case further?

4        PROSPECTIVE JUROR NO. 13:  That was the extent

5  of the conversation.

6        THE COURT:  Do you read the *Miami Herald*, *New*

7  *Times* or *Sun-Sentinel* news publications either in print

8  or on-line?

9        PROSPECTIVE JUROR NO. 13:  I don't subscribe

10  to the *Herald*, but I'll read it once a when I get my

11  hands on it at my mother's house or in the office.  But

12  I don't subscribe or read it regularly.

13        THE COURT:  How about the other publications?

14        PROSPECTIVE JUROR NO. 13:  No.

15        THE COURT:  Have you read anything in any

16  newspaper or on the Internet or have you seen anything

17  on television or heard anything on the radio about this

18  case other than what you've told me about?

19        PROSPECTIVE JUROR NO. 13:  Well, initially,

20  when the case broke, so to speak, and the arrests were

21  made, obviously, I was aware of just the generalities

22  of what these individuals were being accused of by

23  virtue of reading -- you know, I'm a semi-informed

24  individual.  You know, that was a big story.  That was

25  when it first broke a couple years ago or what have

1   you.

2            THE COURT:  Was that also in the *Herald* or

3   from another source?

4            PROSPECTIVE JUROR NO. 13:  I couldn't even

5   identify the source.  I don't know if it was CNN or the

6   *Herald* or one of those or local news.

7            THE COURT:  Okay.  And do you remember what it

8   is that you read or saw at that time?

9            PROSPECTIVE JUROR NO. 13:  No.  Only what the

10  allegations were, because they're obviously the kind of

11  thing that you would not forget about.

12           But beyond that -- and the number of

13  individuals involved and where they were from.  And

14  that's about it.

15           THE COURT:  How closely have you followed the

16  course of the proceedings prior to yesterday leading up

17  to this trial?

18           PROSPECTIVE JUROR NO. 13:  I haven't at all.

19  I'm aware a little bit of the procedural history by

20  virtue of the *Herald* article that I read a few weeks

21  ago.  But I have not followed the case as it was

22  unfolding at all.

23           THE COURT:  And what is that procedural

24  history that you're aware of?

25           PROSPECTIVE JUROR NO. 13:  The *Herald* article

1    makes reference to two prior trials.

2           THE COURT:  Have you discussed this case with

3    anyone other than that conversation that you told me

4    about with your -- I don't know if that was a coworker

5    or a boss.

6           PROSPECTIVE JUROR NO. 13:  It was my boss.

7           No.  I did ask one question of my

8    brother-in-law after reading the *Herald* article,

9    because I read that one of the individuals was in

10   deportation proceedings.

11          I said, "Were you involved in this in any way?

12   Because I may be a juror."

13          He said, "No."

14          THE COURT:  Did you have any further

15   discussions with him about it?

16          PROSPECTIVE JUROR NO. 13:  No.

17          THE COURT:  Do you have an open mind regarding

18   this case?

19          PROSPECTIVE JUROR NO. 13:  I believe I do.

20          THE COURT:  Believe you do or know you do?

21          PROSPECTIVE JUROR NO. 13:  Oh, I know I do.

22          THE COURT:  Have you formed an opinion

23   regarding any of the Defendants based upon any outside

24   information?

25          PROSPECTIVE JUROR NO. 13:  No.

```
 1            THE COURT:  Do you have any beliefs, thoughts
 2    or opinions which may cause you to decide this case on
 3    anything other than the evidence you will hear at
 4    trial?
 5            PROSPECTIVE JUROR NO. 13:  I don't believe so.
 6            I do need to make two disclosures to the
 7    Court, though.
 8            THE COURT:  Okay.
 9            PROSPECTIVE JUROR NO. 13:  The first one, even
10    though it's -- I don't think it's particularly germane,
11    but I could understand how counsel would be interested
12    in knowing this information.
13            It wasn't directly responsive to one of the
14    questions yesterday, but the question was whether I
15    knew somebody who had worked or was working for the
16    Federal Government.
17            In addition to what you mentioned, my sister,
18    who is the one that had clerked in the Immigration
19    court, has been given a conditional offer for an
20    Immigration judgeship as well, conditioned on funding
21    and an additional position for a federal Immigration
22    judge.
23            So she's passed her clearance, and God knows
24    if there's ever going to be funding for it.  But if
25    there is, she's in line for a judgeship as well.
```

1          THE COURT:  Would that affect your ability to

2     be a fair and impartial juror?

3          PROSPECTIVE JUROR NO. 13:  No.  I don't listen

4     to my sister.

5          THE COURT:  What was the other thing?

6          PROSPECTIVE JUROR NO. 13:  The second thing

7     was that -- the question was asked of the entire panel

8     yesterday whether we had an opinion or a belief that

9     the Federal Government had gone too far or was

10     overzealous in the war against terrorism.

11          And I thought -- I didn't want to say it in

12     front of the panel, but I thought I should say here,

13     that, in some respects, I do believe that is true.

14          In particular, I don't personally support the

15     policy of waterboarding.  I consider it torture, a

16     violation of the Geneva Convention, and just plain

17     inhospitable to human beings who have not been

18     convicted of anything.

19          My personal view is that, if you really think

20     someone is guilty and you have the evidence, you do

21     what we're doing here.  You bring them in court and you

22     prove it.  You don't hold them indefinitely and you

23     certainly don't torture them.

24          I think that is immoral and it's also really

25     bad PR.  I think we have lost the high ground in many

1  respects in the war on terror as a result of those

2  actions.

3       THE COURT:  When I asked do you have any

4  beliefs, thoughts or opinions which may cause to you

5  decide this case or anything other than the evidence

6  you'll hear at trial, you said, "I don't believe so."

7       Did --

8       PROSPECTIVE JUROR NO. 13:  There's no

9  tentativeness there.  When we do what we're doing here,

10  which is bringing them before a court of law and a

11  jury, I believe that's the right way to go about doing

12  things.  And I have no qualms whatsoever in giving both

13  sides a fair shake.  It's when it's done in an

14  extrajudicial and cruel way that I have a problem.

15       THE COURT:  So would your opinion in regard to

16  the extent of actions that may have been taken by the

17  prior presidential administration affect your ability

18  to be a fair and impartial juror in this case?

19       PROSPECTIVE JUROR NO. 13:  No.

20       THE COURT:  Are you knowledgeable about the

21  history and practice of Islam?

22       PROSPECTIVE JUROR NO. 13:  Not particularly.

23  No.

24       THE COURT:  Are you knowledgeable about the

25  history and practices of the Moorish Science Temple?

1          PROSPECTIVE JUROR NO. 13:  Not at all.

2          THE COURT:  Are you knowledgeable about the

3    Universal Divine Saviors?

4          PROSPECTIVE JUROR NO. 13:  Not at all.

5          THE COURT:  Are you a member of any type of

6    Masonic lodge?

7          PROSPECTIVE JUROR NO. 13:  No.

8          THE COURT:  Are you knowledgeable about the

9    history, teachings or practices of the Masons?

10          PROSPECTIVE JUROR NO. 13:  Not really.  No.

11          THE COURT:  At all?

12          PROSPECTIVE JUROR NO. 13:  I know that there's

13    a Dan Brown book about it, which I've been meaning to

14    read, and a book or movie or something upcoming about

15    that issue.  But, honestly, I've never really looked

16    into it at all.

17          THE COURT:  Have you, your spouse or any of

18    your family members ever visited the Middle East?

19          PROSPECTIVE JUROR NO. 13:  Not to my

20    knowledge.  I have an uncle who recently -- my mother's

21    brother recently -- he's a priest who took a group of

22    people to Israel and Jordan, I believe.  So he did go

23    there this past year.

24          I have never been.  I have been in Egypt,

25    which is not the Middle East.  It's Africa, but it's an

1    Arab country.  So I thought I would mention it.

2         THE COURT:  Do you or family members or close

3    friends have any prior or present military service?

4         PROSPECTIVE JUROR NO. 13:  No.

5         THE COURT:  Have you or any members of your

6    family or close friends had any personal experience

7    with acts of terrorism?

8         PROSPECTIVE JUROR NO. 13:  No.  The one

9    thing -- the two things I will say on that subject is

10   that the firm that I work for was headquartered -- is

11   headquartered in New York and was in Tower 2 of the

12   World Trade Center.

13        This was before I joined the firm in 2006.  So

14   I did not know any of the people that were involved or

15   perished that day.

16        But we have a yearly memorial moment of

17   silence and so forth.  That seemed close enough to

18   merit mentioning.

19        The other thing is I have a nephew who went to

20   Stuyvesant High School, which is about five blocks from

21   the World Trade Center.  And he took the train to

22   school.  So he would have to get off at the World Trade

23   Center station.

24        On the morning of that, because cell phones

25   were down and so forth, we weren't completely sure he

1   was okay, although I felt pretty good about it because

2   I know he has a good head on his shoulders and he

3   wasn't on the 90th story or something like this.  But

4   he was definitely in the vicinity of the events.  But

5   as it turned out, he was completely fine.

6           THE COURT:  Okay.  I may have asked this

7   question, but I'm going to ask it in the event that

8   there's something additional.

9           Do you know or do you have a family member or

10  friend who knows someone who was a victim of a

11  terrorist attack?

12          PROSPECTIVE JUROR NO. 13:  I know -- I know

13  and represented some people in a civil case that was

14  brought against the Government of Cuba as a result of

15  the shoot-down of the brothers to the rescue aircraft.

16  I worked on that case.

17          THE COURT:  Okay.

18          PROSPECTIVE JUROR NO. 13:  It was brought

19  pursuant to the Antiterrorism and Effective Death

20  Penalty Act.

21          Arguably, that could be considered an act of

22  terror.  I personally do think it was.  And I know

23  those people represented them for about four years and

24  also --

25          THE COURT:  These were the family members?

1          PROSPECTIVE JUROR NO. 13:  Correct.

2          And I actually manage a few of their funds

3     right now.  So I -- I'm in continual contact with two

4     of those families.

5          THE COURT:  Have the events of September 11th

6     or any other terrorist attack, including the shoot-down

7     of the brothers to the rescue, affected you to such an

8     extent that it would make it difficult for you to sit

9     and listen to the evidence in this case and be fair to

10    both the Government and the Defendants?

11         PROSPECTIVE JUROR NO. 13:  As far as I'm

12    concerned, they're completely separate events, and I

13    don't believe any of those will impact me in any

14    respect in deciding this case.

15         THE COURT:  Have you or any family member or

16    close friends lost a job, a business contract or

17    experienced any other financial hardship as a result of

18    September 11th or any other terrorist attack other than

19    what you've already told me?

20         PROSPECTIVE JUROR NO. 13:  No.

21         THE COURT:  Do you have an opinion as to who

22    was responsible for the attack on the United States on

23    September 11th, 2001?

24         PROSPECTIVE JUROR NO. 13:  Yes.

25         THE COURT:  And what is that opinion?  Who do

1   you think was responsible?

2          PROSPECTIVE JUROR NO. 13:  I believe that

3   Al-Qaeda, as directed by Mr. Osama bin Laden, are the

4   responsible parties for that.

5          THE COURT:  Is there anything else you think

6   the Court or the attorneys should know that might

7   influence your ability to fairly and impartially judge

8   the evidence in this case and follow the Court's

9   instructions on the law?

10          PROSPECTIVE JUROR NO. 13:  No.  I think

11   that's -- I've given you everything.

12          THE COURT:  In regard to your sister and her

13   possible impending judgeship with the Department of

14   Immigration, would that affect your ability to be fair

15   and impartial?

16          PROSPECTIVE JUROR NO. 13:  No.

17          THE COURT:  Thank you, sir.

18          If you would have a seat outside and not

19   discuss my questions with anyone.

20          PROSPECTIVE JUROR NO. 13:  Surely.

21          (Thereupon, Potential Juror No. 13 retired

22   from the courtroom and the following proceedings were

23   had:)

24          THE COURT:  Juror No. 14, please.

25          (Thereupon, Potential Juror No. 14 entered the

1    courtroom and the following proceedings were had:)

2         THE COURT:  Good morning.

3         PROSPECTIVE JUROR NO. 14:  Good morning.

4         THE COURT:  Since you left us yesterday, have

5    you had occasion to read anything in the newspaper or

6    see anything on television or on the Internet or hear

7    anything on the radio about this case?

8         PROSPECTIVE JUROR NO. 14:  No, your Honor.

9         THE COURT:  Now, yesterday, when you were

10   explaining about your situation with the school system,

11   you had mentioned something in regard to the federal

12   funding mandate and the weeks that they come and

13   observe the school.

14        PROSPECTIVE JUROR NO. 14:  Three times --

15        THE COURT:  Go ahead.

16        PROSPECTIVE JUROR NO. 14:  Three times a year

17   they do a count to determine the funding for each

18   school site.  Our second time is in February -- the

19   second week in February.

20        What they do is they do a physical count:  Are

21   the students getting exactly the services they're

22   supposed to get on the particular days they're supposed

23   to get them?  If they're not, the school loses the

24   funding for those particular services.

25        The service I provide, as a speech

```
1    pathologist -- they don't have substitutes for them.

2    They have substitutes for teachers.

3             So I was just concerned and trying to figure

4    out how we'd make sure those students get those

5    services that week so the students don't lose the

6    funding for that particular service.

7             THE COURT:  Would there be a particular day

8    that you would have to be there?  Would you know when

9    they're coming?

10            PROSPECTIVE JUROR NO. 14:  It's the days that

11   you're scheduled at your schools.  You have to service

12   the students on the days that their schedule says

13   you're there.  Because I'm itinerant.  I go to

14   different schools.

15            THE COURT:  So what days are you scheduled for

16   that school on that week?

17            PROSPECTIVE JUROR NO. 14:  Every week, I'm

18   scheduled at one particular school Monday and

19   Wednesday, which you had said Monday --

20            THE COURT:  Monday is not a problem.

21            PROSPECTIVE JUROR NO. 14:  Right.  And I'm

22   scheduled at another school every Friday.

23            THE COURT:  So for that week it would be

24   Wednesday and Friday that would be --

25            PROSPECTIVE JUROR NO. 14:  If I went Monday,
```

1    then it counts, as long as I see the students once that

2    week, which I would on a Monday.

3              THE COURT:  So for that school, if you were

4    there on Monday, you'd be golden.

5              PROSPECTIVE JUROR NO. 14:  I'd be okay.

6              THE COURT:  The school would be golden and

7    they'd be meeting their requirement?

8              PROSPECTIVE JUROR NO. 14:  Right.

9              THE COURT:  So it would be the second school

10   on Friday.  So it'd be one day?

11             PROSPECTIVE JUROR NO. 14:  Which -- yes,

12   which, you know, I don't know.  My supervisors would

13   try to find somebody else or I'd juggle it.

14             THE COURT:  I think that we can work around

15   that.

16             PROSPECTIVE JUROR NO. 14:  That's what I'm

17   saying.

18             THE COURT:  If they couldn't find someone,

19   obviously --

20             PROSPECTIVE JUROR NO. 14:  Oh, we'd figure

21   something out for the kids.

22             THE COURT:  We'd figure something out.  If

23   need be, we would not have court that day if you needed

24   to be there and there was no one else.

25             PROSPECTIVE JUROR NO. 14:  I just thought I'd

1    mention it when you asked.

2         THE COURT:  That's fine.  I just wanted to

3    make sure that I understood what the situation was.

4         In this case, the Government has alleged that

5    the Defendants were engaged in conspiracies to commit

6    various violations of federal laws regarding terrorist

7    activities.

8         The charges include conspiracies or agreements

9    to provide material support and resources to agents of

10   Al-Qaeda in conspiring to blow up the Sears Tower in

11   Chicago and several federal buildings in a planned war

12   against the United States.

13        Given that, is there anything that would

14   prevent from you being able to sit and listen to the

15   evidence in this case and be fair to both the

16   Government and the Defendants?

17        PROSPECTIVE JUROR NO. 14:  No, your Honor.

18        THE COURT:  In this case, you may hear

19   evidence that the Government used informants who were

20   not United States citizens and who posed as

21   terrorist/agents of Al-Qaeda.

22        Do you have such strong feelings one way or

23   the other that you would not be able to sit and listen

24   to the evidence and be fair to both the Government and

25   the Defendants?

1           PROSPECTIVE JUROR NO. 14:  No, your Honor.

2           THE COURT:  Have you acquired any information

3    from newspaper, television, conversations or any other

4    sources about this case?

5           PROSPECTIVE JUROR NO. 14:  Ever?

6           THE COURT:  Ever.

7           PROSPECTIVE JUROR NO. 14:  Sure.  From the

8    news.

9           THE COURT:  And from what source did you

10   acquire the information?

11          PROSPECTIVE JUROR NO. 14:  Television.

12          THE COURT:  Do you remember what channel, when

13   it was?

14          PROSPECTIVE JUROR NO. 14:  No.  I have to tell

15   you, it's very foggy.

16          THE COURT:  Do you read the *Miami Herald*, *New*

17   *Times* or *Sun-Sentinel* news publications either in print

18   or on-line?

19          PROSPECTIVE JUROR NO. 14:  The *Miami Herald*.

20          THE COURT:  And have you read anything in the

21   *Miami Herald* about this case?

22          PROSPECTIVE JUROR NO. 14:  Not recently.  No.

23          THE COURT:  Ever?

24          PROSPECTIVE JUROR NO. 14:  Probably, but I

25   can't -- you know....

1          THE COURT:  Do you remember anything?

2          PROSPECTIVE JUROR NO. 14:  No.

3          THE COURT:  Have you heard anything in any

4 newspaper or on the Internet or have you seen anything

5 on television or heard anything on the radio about this

6 case other than what you've already told me?

7          PROSPECTIVE JUROR NO. 14:  No, your Honor.

8          THE COURT:  How closely have you followed the

9 course of the proceedings prior to yesterday leading up

10 to the trial?

11         PROSPECTIVE JUROR NO. 14:  Not very closely at

12 all.

13         THE COURT:  Have you discussed this case with

14 anyone?

15         PROSPECTIVE JUROR NO. 14:  No.

16         THE COURT:  Do you have an open mind regarding

17 this case?

18         PROSPECTIVE JUROR NO. 14:  Yes, I do, your

19 Honor.

20         THE COURT:  Have you followed an opinion

21 regarding any of the Defendants based upon any outside

22 information?

23         PROSPECTIVE JUROR NO. 14:  No, your Honor.

24         THE COURT:  Do you have any beliefs, thoughts,

25 or opinions which may cause you to decide this case on

1    anything other than the evidence you will hear at

2    trial?

3              PROSPECTIVE JUROR NO. 14:  No, your Honor.

4              THE COURT:  Are you knowledgeable about the

5    history and practice of Islam?

6              PROSPECTIVE JUROR NO. 14:  I have some

7    knowledge of Islam, but not a vast amount of it.  No.

8              THE COURT:  And where do you get your

9    knowledge from?

10             PROSPECTIVE JUROR NO. 14:  Just what I've read

11   in the paper or heard on the news as events have

12   unfolded.

13             THE COURT:  Are you knowledgeable about the

14   history and practices of the Moorish Science Temple?

15             PROSPECTIVE JUROR NO. 14:  No.  Not at all.

16             THE COURT:  Are you knowledgeable about the

17   Universal Divine Saviors?

18             PROSPECTIVE JUROR NO. 14:  Not at all, your

19   Honor.

20             THE COURT:  Are you a member of any type of

21   Masonic lodge?

22             PROSPECTIVE JUROR NO. 14:  No, I'm not.

23             THE COURT:  Are you knowledgeable about the

24   history, teachings or practices of the Masons?

25             PROSPECTIVE JUROR NO. 14:  Not -- I have a

1    little information, but not much, your Honor.

2         THE COURT:  Where do you get that information

3    from?

4         PROSPECTIVE JUROR NO. 14:  One of my friend's

5    father's a Mason.  He has talked generally about it.

6    But I don't really know anything about it.

7         THE COURT:  Have you, your spouse or any of

8    your family members ever visited the Middle East?

9         PROSPECTIVE JUROR NO. 14:  Yes, your Honor.

10        THE COURT:  And where?

11        PROSPECTIVE JUROR NO. 14:  My father was in

12   the Navy.  So he had a lot of experience in the Middle

13   East.

14        My nephew is in the Navy, and he has been over

15   there.  He's since back.

16        THE COURT:  So do you know where your dad was

17   stationed in the Middle East and when?

18        PROSPECTIVE JUROR NO. 14:  This was back in

19   World War II.  So I don't know.  He's deceased.

20        THE COURT:  And your nephew?

21        PROSPECTIVE JUROR NO. 14:  My nephew was in

22   Iraq.

23        THE COURT:  When was that?

24        PROSPECTIVE JUROR NO. 14:  Two and a half

25   years ago.

1          THE COURT:  And did he suffer any injuries in

2     Iraq?

3          PROSPECTIVE JUROR NO. 14:  No, he did not.

4          THE COURT:  Was he ever in the military

5     police?

6          PROSPECTIVE JUROR NO. 14:  No, he was not.

7          THE COURT:  Did he have any disciplinary

8     action taken against him?

9          PROSPECTIVE JUROR NO. 14:  No, he did not.

10          THE COURT:  And do you know -- is he still in

11     the --

12          PROSPECTIVE JUROR NO. 14:  He's still in the

13     Navy, but he's no longer in the Middle East.  He's

14     in --

15          THE COURT:  What is his present rank?  Do you

16     know?

17          PROSPECTIVE JUROR NO. 14:  Lieutenant, I

18     think.

19          THE COURT:  Okay.  Any other family members or

20     close friends with any prior or present military

21     service?

22          PROSPECTIVE JUROR NO. 14:  Yes.  My oldest

23     brother was in the Navy, but he's no longer in it.

24          My --

25          THE COURT:  Did he ever serve in combat?

1          PROSPECTIVE JUROR NO. 14:  He was in Vietnam.

2          THE COURT:  Did he have any disciplinary

3   action taken against him?

4          PROSPECTIVE JUROR NO. 14:  No.

5          THE COURT:  Was he injured?

6          PROSPECTIVE JUROR NO. 14:  No, he was not.

7          THE COURT:  Was he in the military police?

8          PROSPECTIVE JUROR NO. 14:  No.

9          THE COURT:  Or shore patrol?

10          PROSPECTIVE JUROR NO. 14:  No.

11          THE COURT:  Did he receive an honorable

12   discharge?

13          PROSPECTIVE JUROR NO. 14:  As far as I know,

14   yes.

15          THE COURT:  Did your dad receive an honorable

16   discharge?

17          PROSPECTIVE JUROR NO. 14:  Yes.

18          THE COURT:  Do you know your brother's rank

19   when he was discharged?

20          PROSPECTIVE JUROR NO. 14:  I think he was a

21   lieutenant.

22          THE COURT:  Have you or any members of your

23   family or close friends had any personal experience

24   with acts of terrorism?

25          PROSPECTIVE JUROR NO. 14:  No, your Honor.

```
 1            THE COURT:  Do you know or do you have a
 2   family member or friend who knows someone who was a
 3   victim of a terrorist attack?
 4            PROSPECTIVE JUROR NO. 14:  I have friends who
 5   had friends and family members that were in the 9/11
 6   occurrence in New York.  They were in the building.
 7            THE COURT:  In New York?  In the towers?
 8            PROSPECTIVE JUROR NO. 14:  Yes.  They lost
 9   their lives in the towers.
10            THE COURT:  Have the events of September 11th
11   or any other terrorist act affected you to such an
12   extent that it would make it difficult for you to sit
13   and listen to the evidence in this case and be fair to
14   both the Government and the Defendants?
15            PROSPECTIVE JUROR NO. 14:  No, your Honor.
16            THE COURT:  Have you or any family member or
17   close friend lost a job, a business contract or
18   experienced any other financial hardship as a result of
19   September 11th or any other terrorist attack?
20            PROSPECTIVE JUROR NO. 14:  No, your Honor.
21            THE COURT:  Do you have an opinion as to who
22   was responsible for the attack on the United States on
23   September 11th, 2001?
24            PROSPECTIVE JUROR NO. 14:  Only from what
25   we've been told.  I mean, I don't have the facts.  I
```

1    wasn't there.

2           THE COURT:  And what is it that you -- what

3    have you been told?

4           PROSPECTIVE JUROR NO. 14:  Al-Qaeda.

5           THE COURT:  Is there anything else you think

6    the Court or the attorneys should know that might

7    influence your ability to fairly and impartially judge

8    the evidence in this case and follow the Court's

9    instructions to the law?

10          PROSPECTIVE JUROR NO. 14:  No, your Honor.

11          THE COURT:  If you would have a seat outside,

12   ma'am, and not discuss my questions with anyone.

13          (Thereupon, Potential Juror No. 14 retired

14   from the courtroom and the following proceedings were

15   had:)

16          THE COURT:  Juror No. 16.

17          (Thereupon, Potential Juror No. 16 entered the

18   courtroom and the following proceedings were had:)

19          THE COURT:  Hello.  Good morning.

20          PROSPECTIVE JUROR NO. 16:  Good morning to

21   all.

22          THE COURT:  Since you left us yesterday, sir,

23   have you read anything in the newspaper or on the

24   Internet or seen anything on TV or heard anything on

25   the radio about this case?

```
 1              PROSPECTIVE JUROR NO. 16:  No, I have not.
 2              THE COURT:  In this case, the Government has
 3    alleged that the Defendants were engaged in
 4    conspiracies to commit various violations of federal
 5    laws regarding terrorist activities.
 6              The charges include conspiracies or agreements
 7    to provide material support and resources to agents of
 8    Al-Qaeda in conspiring to blow up the Sears Tower in
 9    Chicago and several federal buildings in a planned war
10    against the United States.
11              Given that, is there anything that would
12    prevent you from being able to sit and listen to the
13    evidence in this case and be fair to both the
14    Government and the Defendants?
15              PROSPECTIVE JUROR NO. 16:  There isn't
16    anything.
17              But I just want to mention one thing.
18              The initial questioning, as far as recognizing
19    anybody in this courtroom, changed along the way.
20              THE COURT:  Okay.
21              PROSPECTIVE JUROR NO. 16:  As the day
22    developed yesterday, it was late.  And now that you
23    mention all this, my suspicions pretty much came to be
24    true as far as recognizing somebody in here from a
25    previous newscast way back.
```

```
 1            THE COURT:  I'm sorry?
 2            PROSPECTIVE JUROR NO. 16:  From awhile back in
 3  the news.
 4            THE COURT:  So who do you recognize?
 5            PROSPECTIVE JUROR NO. 16:  As far as
 6  recognizing somebody, even though I initially felt that
 7  that was the case --
 8            THE COURT:  That's fine.
 9            Who do you recognize, sir?
10            PROSPECTIVE JUROR NO. 16:  I recognize one of
11  the fellows being represented.
12            THE COURT:  Okay.  And you recognize them from
13  seeing them on a newscast?
14            PROSPECTIVE JUROR NO. 16:  On a newscast,
15  right, with their version of what happened.
16            So I don't know --
17            THE COURT:  When was that?  Do you know?
18            PROSPECTIVE JUROR NO. 16:  Again, it was just
19  a leisurely -- I don't watch much TV, but it was just a
20  leisurely glance.  I do remember some of the pictures
21  that were put on and the way the story was presented.
22            THE COURT:  Okay.  And how was that?
23            PROSPECTIVE JUROR NO. 16:  Pretty much --
24  again, I do believe you're innocent until proven
25  guilty.  And I know I've seen things being said one day
```

1  on the media and it turns out to be another way.  But

2  at that time, it wasn't a pretty picture that they

3  painted.

4          THE COURT:  Okay.  Do you remember what the

5  picture was?

6          PROSPECTIVE JUROR NO. 16:  Yes.

7          THE COURT:  What was it?

8          PROSPECTIVE JUROR NO. 16:  I remember -- well,

9  again, I remember pictures and I remember possessions

10 that were found.  And that's pretty much about it.

11         THE COURT:  Do you remember the gist of the

12 news story?

13         PROSPECTIVE JUROR NO. 16:  I may be wrong.

14 Again, it's not something I followed or placed much

15 judgment on.  But I do remember the details of the

16 story at a quick glance.

17         And what I gathered from that was -- again, I

18 recognize the person and I remember -- and I may be

19 wrong -- some of the possessions that -- some

20 possessions of arms.

21         THE COURT:  Okay.

22         PROSPECTIVE JUROR NO. 16:  I do remember that

23 clearly.  And, again, it's something that I don't know

24 what bearing it has as far as me being on the panel or

25 not.  It doesn't --

1          THE COURT:  Do you remember what the story was

2    on the news?

3          PROSPECTIVE JUROR NO. 16:  Pretty much, it

4    does deal with terrorism, that I can remember.  As far

5    as my interpretation of what I have, I may be wrong,

6    because it's just the gist that --

7          THE COURT:  I'm just asking what you remember.

8          PROSPECTIVE JUROR NO. 16:  What I remember, it

9    was a plot that was, again, given by the media in such

10   a way that -- it was something that arms were found.

11   And after that, I pretty much tuned out.  I pretty much

12   continued on going to where I was going in the house.

13         THE COURT:  So you were in the car?

14         PROSPECTIVE JUROR NO. 16:  No.  I was home.

15         THE COURT:  You were home?

16         PROSPECTIVE JUROR NO. 16:  I spend most of my

17   time with my kids.  I don't give the media or anybody

18   else much -- much weight.  I think it's forced news

19   and you can be more selective by going to other

20   sources.

21         THE COURT:  In this case, you may hear

22   evidence -- one moment.

23         In this case, you may hear evidence that the

24   Government used informants who were not United States

25   citizens and who posed as terrorists/agents of

1    Al-Qaeda.

2         Do you have such strong feelings one way or

3    the other that you will not be able to sit and listen

4    to this evidence and be fair to both the Government and

5    the Defendants?

6         PROSPECTIVE JUROR NO. 16:  I am pretty much

7    neutral to all of this.  I don't have any feelings.

8    And I know, again, who tells the news can affect the

9    actual story, and from which place it originates.  So

10   I'm indifferent.  I always give them the benefit of the

11   doubt.

12        THE COURT:  Other than what you've already

13   told me, have you acquired any information from

14   newspaper, television, conversations or any other

15   sources about this case?

16        PROSPECTIVE JUROR NO. 16:  No.  There is

17   nothing there.

18        THE COURT:  Do you read the *Miami Herald*, *New*

19   *Times* or *Sun-Sentinel* news publications either in

20   prints or on-line?

21        PROSPECTIVE JUROR NO. 16:  I used to.  But

22   with three kids, I don't anymore.  Time is gone.

23        THE COURT:  How closely have you followed the

24   course of the proceedings prior to yesterday leading up

25   to this trial?

```
 1            PROSPECTIVE JUROR NO. 16:  Not at all.  Just

 2   the one glance that I'm going back to.

 3            THE COURT:  Have you discussed this case with

 4   anyone?

 5            PROSPECTIVE JUROR NO. 16:  No.

 6            THE COURT:  Do you have an open mind regarding

 7   this case?

 8            PROSPECTIVE JUROR NO. 16:  I do.

 9            THE COURT:  Have you formed an opinion

10   regarding any of the Defendants based upon any outside

11   information, including the television newscasts that

12   you've told me that you saw?

13            PROSPECTIVE JUROR NO. 16:  The opinion that I

14   had originally on the newscast --

15            THE COURT:  No.  No.

16            Have you formed an opinion --

17            PROSPECTIVE JUROR NO. 16:  No.

18            THE COURT:  -- regarding any of the Defendants

19   based upon any outside information, which would include

20   the newscast that you saw?

21            PROSPECTIVE JUROR NO. 16:  Not at all.

22            THE COURT:  Do you have any beliefs, thoughts

23   or opinions which may cause you to decide this case on

24   anything other than the evidence you will hear at

25   trial?
```

1          PROSPECTIVE JUROR NO. 16:  Nothing.  No.  I

2   don't have any.

3          THE COURT:  Are you knowledgeable about the

4   history and practice of Islam?

5          PROSPECTIVE JUROR NO. 16:  Not -- I'm not -- I

6   don't -- I'm not from the religion.  I know -- I

7   respect all religions.  I don't -- I'm no expert.  I

8   just know the very surface of it.

9          THE COURT:  Where do you get your knowledge

10  from?

11         PROSPECTIVE JUROR NO. 16:  Again, hearsay,

12  working with coworkers, not so much -- again, news

13  and -- that's not my source.  Pretty much I want to

14  know the person before judging them.

15         THE COURT:  Are you knowledgeable about the

16  history and practices of the Moorish Science Temple?

17         PROSPECTIVE JUROR NO. 16:  No.

18         THE COURT:  Are you knowledgeable about the

19  Universal Divine Saviours?

20         PROSPECTIVE JUROR NO. 16:  No.

21         THE COURT:  Are you a member of any type of

22  Masonic lodge?

23         PROSPECTIVE JUROR NO. 16:  I'm sorry?

24         THE COURT:  Are you a member of any type of

25  Masonic lodge?

```
 1              PROSPECTIVE JUROR NO. 16:  No.

 2              THE COURT:  Are you knowledgeable about the

 3    history, teachings or practices of the Masons?

 4              PROSPECTIVE JUROR NO. 16:  Not at all.

 5              THE COURT:  Have you, your spouse or any of

 6    your family members ever visited the Middle East?

 7              PROSPECTIVE JUROR NO. 16:  Not at all.

 8              THE COURT:  Do you or family members or close

 9    friends have any prior or present military service?

10              PROSPECTIVE JUROR NO. 16:  No.  No one.  Not

11    at all.

12              THE COURT:  Have you or any members of your

13    family or close friends had any personal experience

14    with acts of terrorism?

15              PROSPECTIVE JUROR NO. 16:  Not that I can

16    think of, just of the major happenings.  Pretty much

17    what everybody is exposed to, but nothing direct.

18              THE COURT:  Do you know or do you have a

19    family member or friend who knows someone who was a

20    victim of a terrorist attack?

21              PROSPECTIVE JUROR NO. 16:  Not at all.  It

22    goes right back to the day -- the famous 9/11.  There

23    was somebody affected that I know of, a friend.  That's

24    about it.

25              THE COURT:  How was that friend affected?
```

1          PROSPECTIVE JUROR NO. 16:  Well, it's a

2     brother-in-law that worked that day right next door,

3     and they had to pretty much run and were exposed to the

4     chaos.

5          THE COURT:  Have the events of September 11th

6     or any other terrorist act affected you to such an

7     extent that it would make it difficult for you to sit

8     and listen to the evidence in this case and be fair to

9     both the Government and the Defendants?

10          PROSPECTIVE JUROR NO. 16:  I could be fair.  I

11     think each time it's an individual case.

12          THE COURT:  Have you or any family member or

13     close friend lost a job, a business contract or

14     experienced any other financial hardship as a result of

15     September 11th or any other terrorist attack?

16          PROSPECTIVE JUROR NO. 16:  No.

17          THE COURT:  Do you have an opinion as to who

18     was responsible for the attack on the United States on

19     September 11th, 2001?

20          PROSPECTIVE JUROR NO. 16:  Do I have an

21     opinion as to who was responsible?  The answer there is

22     "no."  I just feel helpless and that's about it, about

23     what happened.

24          THE COURT:  Okay.

25          PROSPECTIVE JUROR NO. 16:  That's about it.

1    No opinion.

2         THE COURT:  Is there anything else you think

3    the Court or the attorneys should know that might

4    influence your ability to fairly and impartially judge

5    the evidence in this case and follow the Court's

6    instructions on the law?

7         PROSPECTIVE JUROR NO. 16:  I will be able to

8    follow the instructions.  Yes.

9         THE COURT:  All right, sir.  If you would have

10   a seat outside and not discuss my questions with

11   anyone.

12        PROSPECTIVE JUROR NO. 16:  Thank you.

13        THE COURT:  Thank you.

14        (Thereupon, Potential Juror No. 16 retired

15   from the courtroom and the following proceedings were

16   had:)

17        THE COURT:  Juror No. 19.

18        (Thereupon, Potential Juror No. 19 entered the

19   courtroom and the following proceedings were had:)

20        THE COURT:  Can you stand there, ma'am?  Is

21   that okay?

22        PROSPECTIVE JUROR NO. 19:  Yes.

23        THE COURT:  Since you left us yesterday,

24   ma'am, have you read anything in the newspaper, seen

25   anything on the TV or the Internet or heard anything on

1   the radio about this case?

2          PROSPECTIVE JUROR NO. 19:  Actually, I'm

3   familiar with this case.  I think that there's been a

4   lot of publicity before yesterday.

5          THE COURT:  Okay.  But since yesterday, have

6   you heard, read or seen anything about the case, since

7   you left the courtroom last evening?

8          PROSPECTIVE JUROR NO. 19:  No.

9          THE COURT:  What is it that you've heard, read

10  or seen or know about the case?

11         PROSPECTIVE JUROR NO. 19:  Well, I believe, if

12  this is the same, it's regarding the six people or

13  seven -- I think it started with seven people -- that

14  were accused of possibly doing terrorist activities.

15         And I remember because -- since I'm born in

16  Chicago, I'm familiar with the Sears Tower.  And even

17  though I don't remember a lot about the details, but I

18  know that it had something to do with -- that was being

19  one of the targets.

20         THE COURT:  Okay.

21         PROSPECTIVE JUROR NO. 19:  And that kind of

22  affected me.

23         THE COURT:  How did that affect you?

24         PROSPECTIVE JUROR NO. 19:  Well, because I

25  have a lot of family still in Chicago and I would hate

```
 1   to think that, you know, the same thing that happened
 2   at 9/11 would happen there.
 3         THE COURT:  Okay.  In this case, the
 4   Government has alleged that the Defendants were engaged
 5   in conspiracies to commit various violations of federal
 6   laws regarding terrorist activities.
 7         The charges include conspiracies or agreements
 8   to provide material support and resources to agents of
 9   Al-Qaeda in conspiring to blow up the Sears Tower in
10   Chicago and several federal buildings in a planned war
11   against the United States.
12         Given that, is there anything that would
13   prevent you from being able to sit and listen to the
14   evidence in this case and be fair to both the
15   Government and the Defendants?
16         PROSPECTIVE JUROR NO. 19:  Yes.  I think -- I
17   don't think I could accept listening to the details of
18   the case and already not -- not having a certain idea
19   in my mind about it.
20         I mean, there's -- I have little tolerance
21   for, you know, rapists or child molesters or
22   terrorists.  I just can't --
23         THE COURT:  Do you have an open mind regarding
24   this case?
25         PROSPECTIVE JUROR NO. 19:  I don't think I do.
```

1           THE COURT:  Okay, ma'am.

2           PROSPECTIVE JUROR NO. 19:  I'm sorry.

3           THE COURT:  If you could have a seat outside.

4           (Thereupon, Potential Juror No. 19 retired

5   from the courtroom and the following proceedings were

6   had:)

7           THE COURT:  Need I inquire further?

8           MS. JHONES:  On behalf of Mr. Batiste, I would

9   move for cause.

10          MR. CLARK:  Challenge for cause, your Honor.

11          MR. GREGORIE:  No objection, your Honor.

12          THE COURT:  Excused for cause.

13          Juror No. 22.

14          (Thereupon, Potential Juror No. 22 entered the

15   courtroom and the following proceedings were had:)

16          THE COURT:  Good morning.

17          PROSPECTIVE JUROR NO. 22:  Good morning.

18          THE COURT:  Oops.  It's afternoon.

19          Since you left us last evening, sir, have you

20   read anything in the newspaper, seen anything on the

21   television or on the Internet or heard anything on the

22   radio about this case?

23          PROSPECTIVE JUROR NO. 22:  No.

24          THE COURT:  In this case, the Government has

25   alleged that the Defendants were engaged in

```
 1   conspiracies to commit various violations of federal
 2   laws regarding terrorist activities.
 3           The charges include conspiracies or agreements
 4   to provide material support and resources to agents of
 5   Al-Qaeda in conspiring to blow up the Sears Tower in
 6   Chicago and several federal buildings in a planned war
 7   against the United States.
 8           Given that, is there anything that would
 9   prevent you from being able to sit and listen to the
10   evidence in this case and be fair to both the
11   Government and the Defendants?
12           PROSPECTIVE JUROR NO. 22:  No.
13           THE COURT:  In this case, you may hear
14   evidence that the Government used informants who were
15   not United States citizens and who posed as
16   terrorists/agents of Al-Qaeda.
17           Do you have such strong feelings one way or
18   the other that you would not be able to sit and listen
19   to the evidence in this case and be fair to both the
20   Government and the Defendants?
21           PROSPECTIVE JUROR NO. 22:  No.
22           THE COURT:  Have you acquired any information
23   from newspaper, television, conversations or any other
24   sources about this case?
25           PROSPECTIVE JUROR NO. 22:  No.
```

1           THE COURT:  Do you read the *Miami Herald*, *New*

2    *Times* or *Sun-Sentinel* news publications either in print

3    or on-line?

4           PROSPECTIVE JUROR NO. 22:  No.

5           THE COURT:  Have you read anything in any

6    newspaper or on the Internet or have you seen anything

7    on television or heard anything on the radio about this

8    case?

9           PROSPECTIVE JUROR NO. 22:  No.

10          THE COURT:  How closely have you followed the

11   course of the proceedings prior to yesterday that have

12   led up to this trial?

13          PROSPECTIVE JUROR NO. 22:  You mean the jury

14   selection?

15          THE COURT:  Prior to the jury selection.

16          PROSPECTIVE JUROR NO. 22:  I have no idea.

17          THE COURT:  Have you discussed this case with

18   anyone?

19          PROSPECTIVE JUROR NO. 22:  No.

20          THE COURT:  Do you have an open mind regarding

21   this case?

22          PROSPECTIVE JUROR NO. 22:  Yes.

23          THE COURT:  Have you formed an opinion

24   regarding any of the Defendants based upon any outside

25   information?

```
1              PROSPECTIVE JUROR NO. 22:  No.

2              THE COURT:  Do you have any beliefs, thoughts,

3    or opinions which may cause you to decide this case on

4    anything other than the evidence you will hear at

5    trial?

6              PROSPECTIVE JUROR NO. 22:  No.

7              THE COURT:  Are you knowledgeable about the

8    history and practice of Islam?

9              PROSPECTIVE JUROR NO. 22:  No.

10             THE COURT:  Are you knowledgeable about the

11   history and practices of the Moorish Science Temple?

12             PROSPECTIVE JUROR NO. 22:  No.

13             THE COURT:  Are you knowledgeable about the

14   Universal Divine Saviors?

15             PROSPECTIVE JUROR NO. 22:  No.

16             THE COURT:  Are you a member of any type of

17   Masonic lodge?

18             PROSPECTIVE JUROR NO. 22:  No.

19             THE COURT:  Are you knowledgeable about the

20   history, teachings or practices of the Masons?

21             PROSPECTIVE JUROR NO. 22:  No.

22             THE COURT:  Have you, your spouse or any of

23   your family members ever visited the Middle East?

24             PROSPECTIVE JUROR NO. 22:  No.

25             THE COURT:  Do you or family members or close
```

```
 1    friends have any prior or present military service?

 2             PROSPECTIVE JUROR NO. 22:  No.

 3             THE COURT:  Have you or any members of your

 4    family or close friends had any personal experience

 5    with acts of terrorism?

 6             PROSPECTIVE JUROR NO. 22:  No.

 7             THE COURT:  Do you know or do you have a

 8    family member or friend who knows someone who was a

 9    victim of a terrorist attack?

10             PROSPECTIVE JUROR NO. 22:  Not to my

11    knowledge.

12             THE COURT:  Have the events of September 11th

13    or any other terrorist act affected you to such an

14    extent that it would make it difficult for you to sit

15    and listen to the evidence in this case and be fair to

16    both the Government and the Defendants?

17             PROSPECTIVE JUROR NO. 22:  No.

18             THE COURT:  Have you or any family member or

19    close friend lost a job, a business contract or

20    experienced any other financial hardship as a result of

21    September 11th or any other terrorist attack?

22             PROSPECTIVE JUROR NO. 22:  No.

23             THE COURT:  Do you have an opinion as to who

24    was responsible for the attack on the United States on

25    September 11th, 2001?
```

1    PROSPECTIVE JUROR NO. 22:  I do not.

2    THE COURT:  Is there anything else you think

3    the Court or the attorneys should know that might

4    influence your ability to fairly and impartially judge

5    the evidence in this case and follow the Court's

6    instructions on the law?

7    PROSPECTIVE JUROR NO. 22:  No.

8    THE COURT:  If you would have a seat outside,

9    sir, and not discuss my questions with anyone.

10    (Thereupon, Potential Juror No. 22 retired

11    from the courtroom and the following proceedings were

12    had:)

13    THE COURT:  Juror No. 23.

14    (Thereupon, Potential Juror No. 23 entered the

15    courtroom and the following proceedings were had:)

16    THE COURT:  Good afternoon, sir.

17    PROSPECTIVE JUROR NO. 23:  Hello.

18    THE COURT:  Since you left us yesterday, have

19    you read anything in the newspaper, seen anything on TV

20    or on the Internet or heard anything on the radio about

21    this case?

22    PROSPECTIVE JUROR NO. 23:  No.

23    THE COURT:  Did one of the other jurors say

24    something to you about the case yesterday?

25    PROSPECTIVE JUROR NO. 23:  Yes.

1          THE COURT:  What was said to you?

2          PROSPECTIVE JUROR NO. 23:  You had asked her,

3     I guess, a question, if anyone thought the Government

4     had gone too far in fighting terrorism.

5          And she raised her hand right away and said,

6     "Yes" and then kind of looked over to me and said,

7     "They'll never convict these guys."

8          THE COURT:  Okay.  In this case, the

9     Government has alleged that the Defendants were engaged

10    in conspiracies to commit various violations of federal

11    laws regarding terrorist activities.

12         The charges include conspiracies or agreements

13    to provide material support and resources to agents of

14    Al-Qaeda in conspiring to blow up the Sears Tower in

15    Chicago and several federal buildings in a planned war

16    against the United States.

17         Given that, is there anything that would

18    prevent you from being able to sit and listen to the

19    evidence in this case and be fair to both the

20    Government and the Defendants?

21         PROSPECTIVE JUROR NO. 23:  I don't believe so.

22    But, honestly, I would probably have a bias one way.

23         THE COURT:  And what is that?

24         PROSPECTIVE JUROR NO. 23:  With the

25    Government.  I kind of favor them.

```
1              THE COURT:  Do you have an open mind about

2   this case?

3              PROSPECTIVE JUROR NO. 23:  Yes.  But I --

4   there is a strong bias.

5              THE COURT:  And what do you mean, there's a

6   strong bias?

7              PROSPECTIVE JUROR NO. 23:  Well, I guess an

8   example, when the woman -- I guess I'm on the opposite

9   end of the spectrum as the woman saying -- thinking the

10  Government has gone too far.  I tend to think they can

11  do -- be doing more.

12             THE COURT:  Okay.  Do you understand that

13  every Defendant is presumed innocent?

14             PROSPECTIVE JUROR NO. 23:  Yes.

15             THE COURT:  And do you understand that the

16  Government has the burden of proving a defendant guilty

17  beyond a reasonable doubt?

18             PROSPECTIVE JUROR NO. 23:  Yes.

19             THE COURT:  So as the Defendants sit here

20  today, do you presume them innocent?

21             PROSPECTIVE JUROR NO. 23:  Yes.  However,

22  there's that -- there's a bias in to me.

23             THE COURT:  Could you be a fair and impartial

24  juror?

25             PROSPECTIVE JUROR NO. 23:  I believe I could.
```

```
 1    But I'm just -- honestly, I go into the case seeing one

 2    side -- favoring one side.

 3           But I believe I can have an open mind and, if

 4    something strikes me as favoring the other side, then

 5    I -- I would take that into consideration.

 6           THE COURT:  Well, do you understand that the

 7    Defendants don't have to present any evidence at all,

 8    that they need not testify under the Fifth Amendment to

 9    the Constitution?

10           PROSPECTIVE JUROR NO. 23:  Yes.

11           THE COURT:  The Government has the entire

12    burden of proving a defendant guilty beyond a

13    reasonable doubt.

14           PROSPECTIVE JUROR NO. 23:  Yes.

15           THE COURT:  If the Government failed to meet

16    that burden and prove a Defendant guilty beyond a

17    reasonable doubt, could you find that Defendant not

18    guilty?

19           PROSPECTIVE JUROR NO. 23:  Generally speaking,

20    yes.

21           THE COURT:  Okay.  Specifically as to this

22    case.

23           PROSPECTIVE JUROR NO. 23:  I would find it

24    difficult.

25           THE COURT:  Because of your feelings about
```

1    terrorism?

2           PROSPECTIVE JUROR NO. 23:  Yes.

3           THE COURT:  Okay, sir.  If you could have a

4    seat outside, please, and not discuss my questions with

5    anyone.

6           PROSPECTIVE JUROR NO. 23:  Thanks.

7           (Thereupon, Potential Juror No. 23 retired

8    from the courtroom and the following proceedings were

9    had:)

10          THE COURT:  Need I inquire further?

11          MR. CLARK:  Move for cause, your Honor.

12          THE COURT:  Any objection?

13          MS. ARANGO:  No objection.

14          THE COURT:  Excused for cause.

15          Juror No. 24.

16          (Thereupon, Potential Juror No. 24 entered the

17   courtroom and the following proceedings were had:)

18          THE COURT:  Good afternoon.

19          PROSPECTIVE JUROR NO. 24:  How are you?

20          THE COURT:  Good.  How are you?

21          PROSPECTIVE JUROR NO. 24:  A little nervous,

22   but good.  Thank you.

23          THE COURT:  That's okay.  I haven't bitten

24   anybody in weeks.  So you're okay.

25          Since you left yesterday afternoon, have you

1    read anything in the newspaper, seen anything on TV, on

2    the Internet or heard anything on the radio?

3             PROSPECTIVE JUROR NO. 24:  No, ma'am.

4             THE COURT:  In this case, the Government has

5    alleged that the Defendants were engaged in

6    conspiracies to commit various violations of federal

7    laws regarding terrorist activities.

8             The charges include conspiracies or agreements

9    to provide material support and resources to agents of

10   Al-Qaeda in conspiring to blow up the Sears Tower in

11   Chicago and several federal buildings in a planned war

12   against the United States.

13            Given that, is there anything that would

14   prevent you from being able to sit and listen to the

15   evidence in this case and be fair to both the

16   Government and the Defendant?

17            PROSPECTIVE JUROR NO. 24:  Yes, ma'am.  I --

18   I -- I don't believe I could be fair.

19            THE COURT:  Okay.  Thank you, ma'am.

20            If you could have a seat outside and not

21   discuss my questions with anyone.

22            PROSPECTIVE JUROR NO. 24:  Absolutely.  Thank

23   you.

24            (Thereupon, Potential Juror No. 24 retired

25   from the courtroom and the following proceedings were

```
1    had:)

2           MR. GREGORIE:  I would challenge her for

3    cause, your Honor.

4           THE COURT:  Any objection?

5           MR. CLARK:  No objection.

6           THE COURT:  Excuse for cause.

7           Juror No. 26.

8           (Thereupon, Potential Juror No. 26 entered the

9    courtroom and the following proceedings were had:)

10          THE COURT:  Good afternoon, sir.

11          PROSPECTIVE JUROR NO. 26:  Good afternoon.

12          THE COURT:  Since you left the courtroom

13   yesterday evening, have you seen anything in the

14   newspaper or on TV or on the Internet or heard anything

15   on the radio about this case?

16          PROSPECTIVE JUROR NO. 26:  Yes.

17          THE COURT:  What would that be?

18          PROSPECTIVE JUROR NO. 26:  Well, I saw it on

19   the news and, after that, I went to the Internet and I

20   saw it on the Internet, too.

21          THE COURT:  That was last night?

22          PROSPECTIVE JUROR NO. 26:  No.  No.  No.

23          THE COURT:  I mean since yesterday.

24          PROSPECTIVE JUROR NO. 26:  No.

25          THE COURT:  When you left the courtroom since
```

```
 1   yesterday, have you read anything in the newspaper?

 2          PROSPECTIVE JUROR NO. 26:  No.

 3          THE COURT:  Seen anything on the Internet?

 4          PROSPECTIVE JUROR NO. 26:  No.

 5          THE COURT:  Heard anything on the radio?

 6          PROSPECTIVE JUROR NO. 26:  No.

 7          THE COURT:  Okay.  But at some point, you did

 8   read something in the news about this case?

 9          PROSPECTIVE JUROR NO. 26:  Like two months

10   ago, when they put it on the news.

11          THE COURT:  Do you remember where you saw it?

12          PROSPECTIVE JUROR NO. 26:  Yes.

13          THE COURT:  Where was that?

14          PROSPECTIVE JUROR NO. 26:  Well, I saw the

15   faces of the accused and I saw the place where they

16   used to meet together on -- in Liberty City and what

17   they are trying to do to the United States.

18          THE COURT:  So you saw that on the TV?

19          PROSPECTIVE JUROR NO. 26:  Yes.

20          THE COURT:  And then you said you went on the

21   Internet?

22          PROSPECTIVE JUROR NO. 26:  Yes.

23          THE COURT:  And what did you see on the

24   Internet?

25          PROSPECTIVE JUROR NO. 26:  Well, more
```

 1    information on the news.

 2          THE COURT:  Do you remember where you went on

 3    the Internet to get more information?  Do you remember?

 4          PROSPECTIVE JUROR NO. 26:  CNN and CBS.

 5          THE COURT:  Now, yesterday at side-bar you had

 6    talked about a situation where you were falsely

 7    accused.

 8          PROSPECTIVE JUROR NO. 26:  Yeah.

 9          THE COURT:  Given that this is a different

10    type of case, would your experience affect your ability

11    to be a fair and impartial juror in this case?

12          PROSPECTIVE JUROR NO. 26:  I don't think so,

13    because it's totally different.

14          THE COURT:  Would you be able to sit and

15    listen to the evidence in this case and be fair to both

16    the Government and the Defendants?

17          PROSPECTIVE JUROR NO. 26:  Yes.

18          THE COURT:  Would you be thinking about what

19    happened to you if you heard a police officer testify

20    or a federal agent testify or would you be able to

21    fairly judge their testimony based upon how they

22    appeared to you on the stand?

23          PROSPECTIVE JUROR NO. 26:  Yeah.

24          THE COURT:  Are you going to be thinking about

25    your case?

1          PROSPECTIVE JUROR NO. 26:  No.

2          THE COURT:  Okay.  In this case, the

3    Government has alleged that the Defendants were engaged

4    in conspiracies to commit various violations of federal

5    laws regarding terrorist activities.

6          The charges include conspiracies or agreements

7    to provide material support and resources to agents of

8    Al-Qaeda in conspiring to blow up the Sears Tower in

9    Chicago and several federal buildings in a planned war

10   against the United States.

11         Given that, is there anything that would

12   prevent you from being able to sit and listen to the

13   evidence in this case and be fair to both the

14   Government and the Defendants?

15         PROSPECTIVE JUROR NO. 26:  No.

16         THE COURT:  In this case, you may hear

17   evidence that the Government used informants who are

18   not United States citizens and who posed as

19   terrorists/agents of Al-Qaeda.

20         Do you have such strong feelings one way or

21   the other that you would not be able to sit and listen

22   to this evidence and be fair to both the Government and

23   the Defendants?

24         PROSPECTIVE JUROR NO. 26:  No.

25         THE COURT:  Other than what you've told me,

```
 1   have you acquired any information from the newspaper,

 2   television, conversations or other sources about this

 3   case?

 4           PROSPECTIVE JUROR NO. 26:  No.

 5           THE COURT:  Do you read the *Miami Herald*, *New

 6   Times* or *Sun-Sentinel* news publications either in print

 7   or on-line?

 8           PROSPECTIVE JUROR NO. 26:  On-line.

 9           THE COURT:  Which one?

10           PROSPECTIVE JUROR NO. 26:  I think the -- I

11   don't remember the --

12           THE COURT:  *Miami Herald*, *Sun-Sentinel* or

13   *New Times*?

14           PROSPECTIVE JUROR NO. 26:  *New Times*.

15           THE COURT:  *New Times*?

16           PROSPECTIVE JUROR NO. 26:  Yes.

17           THE COURT:  Have you read anything in any

18   newspaper or on the Internet or have you seen anything

19   on television or heard anything on the radio about this

20   case other than what you've already told me?

21           PROSPECTIVE JUROR NO. 26:  No.

22           THE COURT:  How closely have you followed the

23   course of the proceedings prior to yesterday leading up

24   to this trial?

25           PROSPECTIVE JUROR NO. 26:  Can you repeat the
```

 1    question.

 2              THE COURT:  Sure.

 3              Prior to coming to court yesterday, have you

 4    followed the proceedings of this case leading up to

 5    this trial closely?

 6              PROSPECTIVE JUROR NO. 26:  No.

 7              THE COURT:  Have you discussed this case with

 8    anyone?

 9              PROSPECTIVE JUROR NO. 26:  No.

10              THE COURT:  Do you have an open mind regarding

11    this case?

12              PROSPECTIVE JUROR NO. 26:  Not an open mind.

13    I think that anybody that is against the United States

14    is against every citizen of the United States.

15              THE COURT:  Okay.  Do you understand that

16    every Defendant is presumed innocent?

17              PROSPECTIVE JUROR NO. 26:  Yes.

18              THE COURT:  And that the Government has the

19    burden of proving a defendant guilty beyond a

20    reasonable doubt?

21              PROSPECTIVE JUROR NO. 26:  Yes.

22              THE COURT:  So do you understand that, as the

23    Defendants sit here today, they're presumed innocent?

24              PROSPECTIVE JUROR NO. 26:  Yeah.

25              THE COURT:  If the Government fails to prove

1   its case beyond a reasonable doubt, would you be able

2   to return a verdict of not guilty?

3          PROSPECTIVE JUROR NO. 26:  Yeah.

4          THE COURT:  And if the Government proves its

5   case beyond a reasonable doubt against a Defendant,

6   would you be able to return a verdict of guilty?

7          PROSPECTIVE JUROR NO. 26:  Yeah.

8          THE COURT:  So will you be able to sit and

9   listen to the evidence with an open mind and be a fair

10  and impartial juror?

11         PROSPECTIVE JUROR NO. 26:  Yes.

12         THE COURT:  Have you formed an opinion

13  regarding any of the Defendants based upon any outside

14  information?

15         PROSPECTIVE JUROR NO. 26:  No.  I didn't see

16  any evidence.  I don't know anything in detail about

17  the case.  I cannot have any idea.

18         THE COURT:  Do you have any beliefs, thoughts

19  or opinions which may cause you to decide this case on

20  anything other than the evidence you will hear at

21  trial?

22         PROSPECTIVE JUROR NO. 26:  No.

23         THE COURT:  Are you knowledgeable about the

24  history and practice of Islam?

25         PROSPECTIVE JUROR NO. 26:  Can you repeat

1    that.

2         THE COURT:  Do you know anything about the

3    history and practice of Islam?

4         PROSPECTIVE JUROR NO. 26:  No.

5         THE COURT:  Are you knowledgeable about the

6    history and practices of the Moorish Science Temple?

7         PROSPECTIVE JUROR NO. 26:  No.

8         THE COURT:  Are you knowledgeable about the

9    Universal Divine Saviours?

10         PROSPECTIVE JUROR NO. 26:  No.

11         THE COURT:  Are you a member of any type of

12    Masonic lodge?

13         PROSPECTIVE JUROR NO. 26:  No.

14         THE COURT:  Are you knowledgeable about the

15    history, teachings or practices of the Masons?

16         PROSPECTIVE JUROR NO. 26:  No.

17         THE COURT:  Have you, your spouse or any of

18    your family members ever visited the Middle East?

19         PROSPECTIVE JUROR NO. 26:  No.

20         THE COURT:  Do you or family members or close

21    friends have any prior or present military service?

22         PROSPECTIVE JUROR NO. 26:  No.

23         THE COURT:  Have you or any members of your

24    family or close friends had any personal experience

25    with acts of terrorism?

```
 1              PROSPECTIVE JUROR NO. 26:  No.

 2              THE COURT:  Do you know or do you have a

 3    family member or friend who knows someone who was a

 4    victim of a terrorist attack?

 5              PROSPECTIVE JUROR NO. 26:  No.

 6              THE COURT:  Have the events of September 11th

 7    or any other terrorist act affected you to such an

 8    extent that it would make it difficult for you to sit

 9    and listen to the evidence in this case and be fair to

10    both the Government and the Defendants?

11              PROSPECTIVE JUROR NO. 26:  No.

12              THE COURT:  Have you or any family member or

13    close friend lost a job, a business contract or

14    experienced any other financial hardship as a result of

15    September 11th or any other terrorist attack?

16              PROSPECTIVE JUROR NO. 26:  No.

17              THE COURT:  Do you have an opinion as to who

18    was responsible for the attack on the United States on

19    September 11th, 2001?

20              PROSPECTIVE JUROR NO. 26:  Yeah.

21              THE COURT:  And what is that opinion?  Who was

22    responsible?

23              PROSPECTIVE JUROR NO. 26:  Well, Al-Qaeda was

24    responsible for that and those who are near to them.

25              THE COURT:  Is there anything else that you
```

```
1    think the Court or the attorneys should know that might

2    influence your ability to fairly and impartially judge

3    the evidence in this case and follow the Court's

4    instructions on the law?

5              PROSPECTIVE JUROR NO. 26:  No.

6              THE COURT:  Will you be able to follow my

7    instructions, sir, concerning the burden of proof that

8    the Government has of proving the case against a

9    Defendant beyond a reasonable doubt?

10             PROSPECTIVE JUROR NO. 26:  Yes.

11             THE COURT:  And will you be able to follow my

12   instruction that every Defendant is presumed innocent

13   until and only if the Government proves its case beyond

14   a reasonable doubt?

15             PROSPECTIVE JUROR NO. 26:  Yes.

16             THE COURT:  If you would have a seat outside

17   and not discuss my questions with anyone.

18             Thank you.

19             PROSPECTIVE JUROR NO. 26:  Okay.  Thank you.

20             (Thereupon, Potential Juror No. 26 retired

21   from the courtroom and the following proceedings were

22   had:)

23             THE COURT:  Juror No. 28.

24             MS. JHONES:  Your Honor, may I --

25             THE COURT:  One moment, please.
```

1          MS. JHONES:  I'd like to make a request to ask

2     a followup question to this juror --

3          THE COURT:  Yes.

4          MS. JHONES:  -- with respect to his response

5     where he said -- I didn't get the exact terminology,

6     but words to the effect that, "I think that every

7     person who is against the US is against its citizens"

8     or words to that effect.

9          That's when the Court started talking to him

10    about the presumption of innocence and reasonable doubt

11    and that colloquy the Court had.

12         I'm a little bit concerned that this

13    individual may feel that, if anyone speaks out against

14    the United States, that that translates into guilt in

15    terms of the charges, that he may -- there are some

16    First Amendment implications to this case.

17         And my concern is, if -- when he listens -- if

18    he sits here and listens to some of the tapes, that

19    just by virtue of expressing opinions that may be

20    against the United States, that that in and of itself

21    will be sufficient.

22         THE COURT:  What is it that you want me to ask

23    him?

24         MS. JHONES:  That's a very good question, your

25    Honor.

```
 1            I think that the only thing we can ask him

 2   so -- that he just basically tells us what did he mean

 3   when he said that.  I'd like the question to be read --

 4   or his response to be read back to him.  I'm not

 5   exactly sure what he meant by that.  I don't want to

 6   put words in his mouth.

 7            MS. ARANGO:  Judge, I would object to this.  I

 8   think that's unduly intimidating.  You asked him all of

 9   the followup questions to that.

10            I think the original question was the question

11   about, "Do you have an open mind?", which I think

12   particularly --

13            MS. JHONES:  He said, "No."

14            MS. ARANGO:  It seems to be with --

15   particularly with Latin jurors, that question always

16   seems to be an issue.  For some reason, "open mind" is

17   interpreted different ways.

18            So you followed up that questioning.  You

19   ended with the questions about the presumption of

20   innocence and the burden of proof.

21            I don't think there is any reason to go back.

22            If Ms. Jhones has issues about this person's

23   opinions, those are just factual and legal issues that

24   she can deal with during the course of the case.

25            I don't think that's a basis for striking this
```

1    person for cause or even following up on questions.  He

2    explained very clearly with your questions.

3            MS. JHONES:  Your Honor, he specifically said

4    he does not have an open mind.  And the process -- or

5    the voir dire process is to get at the truth as to

6    whether or not these jurors are qualified to serve by

7    virtue of their biases.

8            I have no idea what that man meant by that.

9    The fact that he said it right after he said, "I don't

10   have an open mind" is of great concern.

11           MS. ARANGO:  And that's when you did the

12   followup questions.  You asked like three or four

13   followup questions right after that, and it was clear

14   he did not understand that question.  Because the way

15   he answered without equivocation your followup

16   questions made that clear.

17           MR. VEREEN:  If I may add my two cents, your

18   Honor, I don't believe this juror understands the

19   English language well enough to sit as a juror in this

20   particular case.

21           I mean, several times the Court had to go back

22   and continue to ask questions different ways for this

23   particular juror to understand what the Court was

24   trying to get at.

25           He's not going to have that opportunity during

1    the trial.

2            MS. ARANGO:  Judge --

3            THE COURT:  He didn't indicate anything

4    yesterday that he had any problem with English.  I was

5    not asking him in different ways because I didn't feel

6    that he didn't understand it.  I wanted to explore the

7    issue with him in different ways.

8            So I don't have a concern about his English

9    capabilities.

10           I'll ask him what he meant by that.

11           Bring him in, please.

12           (Thereupon, Potential Juror No. 26 entered the

13   courtroom and the following proceedings were had:)

14           THE COURT:  Sir, earlier, when we were talking

15   before, you had stated that anybody who is against the

16   United States is against every citizen of the United

17   States.

18           Can you tell me what you meant by that.

19           PROSPECTIVE JUROR NO. 26:  I mean that no

20   human being has the right to kill -- or try to kill any

21   other people.

22           If somebody try to kill the people of the

23   United States, of course, the first thing that come to

24   your mind is that you are going to be against those

25   people.

1          That is my belief or my opinion.

2          THE COURT:  Okay.  Does that change in any way

3     your understanding or your feelings about the

4     presumption of innocence regarding these Defendants?

5          PROSPECTIVE JUROR NO. 26:  No.

6          THE COURT:  Does that change in any way your

7     understanding or feelings about the Government's burden

8     to prove its case against the Defendants beyond a

9     reasonable doubt?

10         PROSPECTIVE JUROR NO. 26:  No.

11         THE COURT:  And does that change in any way

12    your understanding or feelings regarding the fact that

13    the Government -- that the Defendants need not put on a

14    case at all or testify, that it's solely the

15    Government's burden to present evidence?  Do you

16    understand that?

17         PROSPECTIVE JUROR NO. 26:  Yes.

18         THE COURT:  Does that change that in any way?

19         PROSPECTIVE JUROR NO. 26:  No.

20         THE COURT:  Thank you, sir.

21         If you would have a seat outside, please.

22         PROSPECTIVE JUROR NO. 26:  Okay.  Thank you.

23         (Thereupon, Potential Juror No. 26 retired

24    from the courtroom and the following proceedings were

25    had:)

```
 1                 THE COURT:  Juror No. 28.
 2                 (Thereupon, Potential Juror No. 28 entered the
 3       courtroom and the following proceedings were had:)
 4                 THE COURT:  Good afternoon.
 5                 PROSPECTIVE JUROR NO. 28:  Hello.
 6                 THE COURT:  Since you left court yesterday
 7       evening, sir, have you read anything in the newspaper,
 8       seen anything on TV or --
 9                 PROSPECTIVE JUROR NO. 28:  I heard it on the
10       radio.
11                 THE COURT:  Can you wait until I finish my
12       question?
13                 -- heard anything on the radio on the Internet
14       about this case?
15                 PROSPECTIVE JUROR NO. 28:  Yes.
16                 THE COURT:  And what is that?
17                 PROSPECTIVE JUROR NO. 28:  That the jury
18       selection has started.
19                 THE COURT:  I'm sorry?
20                 PROSPECTIVE JUROR NO. 28:  That the jury
21       selection has started.
22                 THE COURT:  And where did you hear that?
23                 PROSPECTIVE JUROR NO. 28:  On the radio.
24                 THE COURT:  And did they say anything else on
25       the radio?
```

1          PROSPECTIVE JUROR NO. 2:  No.

2          THE COURT:  And once you heard it come up on

3     the radio, did you do anything to --

4          PROSPECTIVE JUROR NO. 28:  No.  It was only on

5     for ten seconds.

6          THE COURT:  Okay.  In this case, the

7     Government has alleged that the Defendants were engaged

8     in conspiracies to commit various violations of federal

9     laws regarding terrorist activities.

10          The charges include conspiracies or agreements

11    to provide material support and resources to agents of

12    Al-Qaeda in conspiring to blow up the Sears Tower in

13    Chicago and several federal buildings in a planned war

14    against the United States.

15          Given that, is there anything that would

16    prevent you from being able to sit and listen to the

17    evidence in this case and be fair to both the

18    Government and the Defendants?

19          PROSPECTIVE JUROR NO. 28:  In my opinion, I

20    work totally visual.  "Visual" means I need to see

21    pictures and videos.

22          I am a little skeptical about hearsay because,

23    if you recorded what I said yesterday -- after what

24    happened to my cousin, I am somewhat skeptical at

25    times.  So I'm totally visual.

```
 1            THE COURT:  Okay.  I'm not quite sure I
 2   understand your answer.
 3            PROSPECTIVE JUROR NO. 28:  What would you like
 4   me to explain?
 5            THE COURT:  Your cousin who had evidence
 6   planted on him?
 7            PROSPECTIVE JUROR NO. 28:  Yes.  Yes.
 8            Okay.  So --
 9            THE COURT:  Are you able to separate that
10   particular case and put that aside and sit and listen
11   to the evidence in this case --
12            PROSPECTIVE JUROR NO. 28:  I can --
13            THE COURT:  Sir.  Sir.  You need to let me
14   finish my questions.  Okay?
15            Are you able to put aside what happened to
16   your cousin and sit and listen to the evidence in this
17   case and be fair to both the Government and the
18   Defendants?
19            PROSPECTIVE JUROR NO. 28:  I don't believe
20   everything I hear.  I am totally visual.
21            THE COURT:  So that means, if somebody gets on
22   the stand and testifies and there's nothing for you to
23   look at, other than the person on the stand, you will
24   believe them or -- you will be able to judge their
25   credibility or not judge their credibility?
```

```
 1            PROSPECTIVE JUROR NO. 28:  I have a hard time
 2   judging what I hear.  I have to see living proof.
 3            THE COURT:  Okay.  So if someone gets on the
 4   stand and testifies about something that happened,
 5   would you be able to make a determination whether that
 6   person is truthful or untruthful?
 7            PROSPECTIVE JUROR NO. 28:  No.
 8            THE COURT:  Okay, sir.  If you would have a
 9   seat outside and not discuss my questions with anyone.
10            (Thereupon, Potential Juror No. 28 retired
11   from the courtroom and the following proceedings were
12   had:)
13            THE COURT:  Need I inquire further?
14            MS. ARANGO:  Move to strike for cause.
15            THE COURT:  Any objection?
16            MS. JHONES:  Quite frankly, your Honor, I'm
17   speechless.  I have no objection.
18            THE COURT:  I can't say that I'm surprised.
19   He's excused for cause.
20            Juror No. 29.
21            (Thereupon, Potential Juror No. 29 entered the
22   courtroom and the following proceedings were had:)
23            THE COURT:  Hello.
24            PROSPECTIVE JUROR NO. 29:  Good afternoon.
25            I'm Juror No. 29.
```

1    THE COURT:  Okay.  Since you left the

2    courtroom yesterday -- late yesterday afternoon, I

3    think it was, have you read anything in the newspaper,

4    seen anything on TV, heard anything on the radio or

5    reviewed anything on the Internet about this case?

6    PROSPECTIVE JUROR NO. 29:  Absolutely not.

7    THE COURT:  In this case, the Government has

8    alleged that the Defendants were engaged in

9    conspiracies to commit various violations of federal

10   laws regarding terrorist activities.

11   The charges include conspiracies or agreements

12   to provide material support and resources to agents of

13   Al-Qaeda in conspiring to blow up the Sears Tower in

14   Chicago and several federal buildings in a planned war

15   against the United States.

16   Given that, is there anything that would

17   prevent you from being able to sit and listen to the

18   evidence in this case and be fair to both the

19   Government and the Defendants?

20   PROSPECTIVE JUROR NO. 29:  Your Honor, the

21   answer is "no."

22   However, I have to tell you, having been born

23   and raised in Miami and being an avid reader of the

24   news, I do recall, after 9/11, there was the case of

25   Liberty 7, I think it was called.  I don't know if

1    that's one and the same.

2            But that's not new.  And it's not that I

3    would --

4            THE COURT:  What do you mean, "That's not

5    new"?

6            PROSPECTIVE JUROR NO. 29:  Well, it's not new

7    news to me.  And even yesterday, when some of the

8    questions were asked, it was easy for me to go back

9    four years or so, maybe more, when this case first came

10   out in the news, if this is one and the same.  I don't

11   know that it is.  But it sounds similar to me.  So it's

12   not like I'm hearing it for the first time.

13           THE COURT:  Okay.

14           PROSPECTIVE JUROR NO. 29:  I wanted you to

15   know that.

16           THE COURT:  Okay.  But given the subject

17   matter of the case and what you may or may not have

18   read about it in the news --

19           PROSPECTIVE JUROR NO. 29:  I'm impartial.  I

20   don't have enough detail about the case and I don't

21   recall much about the case that I have a decision in my

22   mind at this time.

23           THE COURT:  Okay.  And do you remember what

24   you saw on the news or heard on the news or read in the

25   news about the case?

```
 1              PROSPECTIVE JUROR NO. 29:  Somewhat.  But in

 2    my mind, I can tell you, at the time, I thought it was

 3    a frivolous indictment.

 4              THE COURT:  Okay.  And do you still --

 5              PROSPECTIVE JUROR NO. 29:  Of course, I

 6    didn't -- I didn't have the evidence presented.  It was

 7    just what came to my mind at that time.

 8              THE COURT:  Okay.  And are you still of that

 9    opinion?

10              PROSPECTIVE JUROR NO. 29:  No.  I don't have

11    an opinion, like -- like I'm saying, at this time.

12    It's just a thought that I had back then.

13              THE COURT:  So when you read something or

14    heard something on the news, that's what you thought?

15              PROSPECTIVE JUROR NO. 29:  I disregarded it.

16    I didn't feel it was a national threat.

17              THE COURT:  In this case, you may hear

18    evidence that the Government used informants that --

19    who were not United States citizens and who posed as

20    terrorists/agents of Al-Qaeda.

21              Do you have such strong feelings one way or

22    the other that you would not be able to sit and listen

23    to this evidence and be fair to both the Government and

24    the Defendants?

25              PROSPECTIVE JUROR NO. 29:  I don't have strong
```

1    feelings one way or the other.  I would be fine

2    listening to the evidence in the case.

3           THE COURT:  Other than what you've already

4    told me, have you acquired any other information from

5    newspaper, television, conversations or any other

6    sources about this case?

7           PROSPECTIVE JUROR NO. 29:  No, I haven't.

8           THE COURT:  Do you read the *Miami Herald*, the

9    *New Times* or *Sun-Sentinel* news publications either in

10   principal or on-line?

11          PROSPECTIVE JUROR NO. 29:  On occasion.  And

12   to be honest, not in some time.

13          THE COURT:  How closely have you followed the

14   course of the proceedings leading up to this trial

15   prior to being in court yesterday?

16          PROSPECTIVE JUROR NO. 29:  Not at all.

17          THE COURT:  Have you discussed this case with

18   anyone?

19          PROSPECTIVE JUROR NO. 29:  No.

20          THE COURT:  Do you have an open mind regarding

21   this case?

22          PROSPECTIVE JUROR NO. 29:  Yes.

23          THE COURT:  Have you formed an opinion

24   regarding any of the Defendants based upon any outside

25   information?

1           PROSPECTIVE JUROR NO. 29:  No, I have not.

2           THE COURT:  Have you formed an opinion about

3    the Government's case based upon any outside

4    information?

5           PROSPECTIVE JUROR NO. 29:  No, I have not.

6           THE COURT:  Do you have any beliefs, thoughts

7    or opinions which may cause you to decide this case on

8    anything other than the evidence you will hear at

9    trial?

10          PROSPECTIVE JUROR NO. 29:  No.

11          THE COURT:  Are you knowledgeable about the

12   history and practice of Islam?

13          PROSPECTIVE JUROR NO. 29:  Not in detail.  No.

14          THE COURT:  Are you knowledgeable about the

15   history -- I'm sorry.

16          Where do you get your information from about

17   Islam?

18          PROSPECTIVE JUROR NO. 29:  Well, I would say

19   general knowledge on religion.

20          THE COURT:  And how extensive is it?

21          PROSPECTIVE JUROR NO. 29:  Not too much.

22          THE COURT:  Are you knowledgeable about the

23   history and practices of the Moorish Science Temple?

24          PROSPECTIVE JUROR NO. 29:  Repeat that,

25   please.

1          THE COURT:  Are you knowledgeable about the

2     history and practices of the Moorish Science Temple?

3          PROSPECTIVE JUROR NO. 29:  No.  Not at all.

4          THE COURT:  Are you knowledgeable about the

5     Universal Divine Saviors?

6          PROSPECTIVE JUROR NO. 29:  No.  Not at all.

7          THE COURT:  Are you a member of any type of

8     Masonic lodge?

9          PROSPECTIVE JUROR NO. 29:  No.

10         THE COURT:  Are you knowledgeable about the

11    history, teachings or practices of the Masons?

12         PROSPECTIVE JUROR NO. 29:  No, I'm not.  I

13    know very little about the Masons.

14         THE COURT:  What do you know about the Masons?

15         PROSPECTIVE JUROR NO. 29:  Our founding

16    fathers were of the Masons.  And I just simply know

17    that -- or I've heard that it's an organization of

18    elite individuals and it's somewhat secretive.

19         THE COURT:  Have you, your spouse or any of

20    your family members ever visited the Middle East?

21         PROSPECTIVE JUROR NO. 29:  No.

22         THE COURT:  Do you or family members or close

23    friends have any prior or present military service?

24         PROSPECTIVE JUROR NO. 29:  I'm sorry.  Repeat

25    that.

```
 1              THE COURT:  Do you or family members or close
 2    friends have any prior or present military service?
 3              PROSPECTIVE JUROR NO. 29:  No -- well, let me
 4    go back to that.
 5              My father passed away ten years ago and he was
 6    a member of the Air Force.
 7              THE COURT:  Did he serve in combat?
 8              PROSPECTIVE JUROR NO. 29:  No, he did not.  He
 9    served in the early -- let's see -- '58 through' 62
10    and did not see combat.
11              THE COURT:  Was he in the military police at
12    all?
13              PROSPECTIVE JUROR NO. 29:  No.
14              THE COURT:  Did he have any disciplinary
15    action taken against him?
16              PROSPECTIVE JUROR NO. 29:  No.  Not that I
17    know of.
18              THE COURT:  And did he receive an honorable
19    discharge?
20              PROSPECTIVE JUROR NO. 29:  No.  He served his
21    full term.
22              THE COURT:  Have you or any members of your
23    family or close friends had any personal experience
24    with acts of terrorism?
25              PROSPECTIVE JUROR NO. 29:  No.
```

```
1              THE COURT:  Do you know or do you have a
2   family member or friend who knows someone who was a
3   victim of a terrorist attack?
4              PROSPECTIVE JUROR NO. 29:  No.
5              THE COURT:  Have you --
6              PROSPECTIVE JUROR NO. 29:  I'm sorry.  Just to
7   be clear, can you please repeat the last question.
8              THE COURT:  Sure.
9              Do you know or do you have a family member or
10  friend who knows someone who was a victim of a
11  terrorist attack?
12             PROSPECTIVE JUROR NO. 29:  No.
13             THE COURT:  Have the events of September 11th
14  or any other terrorist act affected you to such an
15  extent that it would make it difficult for you to sit
16  and listen to the evidence in this case and be fair to
17  both the Government and the Defendants?
18             PROSPECTIVE JUROR NO. 29:  No.  That event
19  would not make it difficult.
20             THE COURT:  Have you or any family member or
21  close friend lost a job, a business contract or
22  experienced any other financial hardship as a result of
23  September 11th or any other terrorist attack?
24             PROSPECTIVE JUROR NO. 29:  Repeat that one
25  more time, please.
```

1       THE COURT:  Have you or any family member or

2   close friend lost a job, a business contract or

3   experienced any other financial hardship as a result of

4   September 11th or any other terrorist attack?

5       PROSPECTIVE JUROR NO. 29:  No.

6       THE COURT:  Do you have an opinion as to who

7   was responsible for the attack on the United States on

8   September 11th, 2001?

9       PROSPECTIVE JUROR NO. 29:  An opinion in which

10  way?  In regard to --

11      THE COURT:  Who was responsible for the

12  attack.

13      PROSPECTIVE JUROR NO. 29:  Well, it's known

14  who's responsible for the attack.  So I don't

15  understand what you mean by if I have an opinion.

16      Do I agree or disagree?

17      THE COURT:  Who do you say was responsible for

18  the attack?

19      PROSPECTIVE JUROR NO. 29:  Well, we're told

20  that it's the Al-Qaeda organization.

21      THE COURT:  Okay.  Is there anything else you

22  think the Court or the attorneys should know that might

23  influence your ability to fairly and impartially judge

24  the evidence in this case and follow the Court's

25  instructions on the law?

1        PROSPECTIVE JUROR NO. 29:  No.

2        THE COURT:  Thank you, sir.

3        If you would have a seat outside.

4        (Thereupon, Potential Juror No. 29 retired

5    from the courtroom and the following proceedings were

6    had:)

7        THE COURT:  Juror 30.

8        (Thereupon, Potential Juror No. 30 entered the

9    courtroom and the following proceedings were had:)

10       THE COURT:  Good afternoon.

11       PROSPECTIVE JUROR NO. 30:  Hi.

12       THE COURT:  Since you left court yesterday

13   afternoon, ma'am, have you read anything in the

14   newspaper, seen anything on the television news, heard

15   anything on the radio or read anything on the Internet

16   about this case?

17       PROSPECTIVE JUROR NO. 30:  No.

18       THE COURT:  In this case, the Government has

19   alleged that the Defendants were engaged in

20   conspiracies to commit various violations of federal

21   laws regarding terrorist activities.

22       The charges include conspiracies or agreements

23   to provide material support and resources to agents of

24   Al-Qaeda in conspiring to blow up the Sears Tower in

25   Chicago and several federal buildings in a planned war

1    against the United States.

2          Given that, is there anything that would

3    prevent you from being able to sit and listen to the

4    evidence in this case and be fair to both the

5    Government and the Defendants?

6          PROSPECTIVE JUROR NO. 30:  I believe so.  I

7    kind of followed the case and I know that it --

8    both trial -- it went to trial twice and the seventh

9    gentleman was found not guilty.

10          And I formed an opinion back then.  I didn't

11    understand how that could be and that they wanted a

12    second trial.  And, again, I guess they deadlocked

13    or -- they didn't reach a verdict.

14          THE COURT:  What was the opinion that you

15    formed back then?

16          PROSPECTIVE JUROR NO. 30:  I thought that they

17    were guilty, even though you're not supposed to.  But

18    since 9/11, it's been very hard to be impartial.

19          THE COURT:  Okay.  Do you have an open mind

20    about this case?

21          PROSPECTIVE JUROR NO. 30:  I don't think so.

22          THE COURT:  Okay, ma'am.  If you could have a

23    seat outside and not discuss my questions with anyone.

24          PROSPECTIVE JUROR NO. 30:  Thank you.

25          (Thereupon, Potential Juror No. 30 retired

```
 1    from the courtroom and the following proceedings were

 2    had:)

 3              THE COURT:  Need I inquire further?

 4              MR. CLARK:  Motion for cause.

 5              THE COURT:  Any objection?

 6              MR. GREGORIE:  No objection, your Honor.

 7              THE COURT:  Excused for cause.

 8              Juror No. 32.

 9              (Thereupon, Potential Juror No. 32 entered the

10    courtroom and the following proceedings were had:)

11              THE COURT:  Good afternoon.

12              PROSPECTIVE JUROR NO. 32:  Hi.

13              THE COURT:  Since you left the courtroom

14    yesterday afternoon, sir, have you read anything in the

15    newspaper, heard anything on the television, heard

16    anything on the radio or viewed anything on the

17    Internet about this case?

18              PROSPECTIVE JUROR NO. 32:  No, your Honor.

19              THE COURT:  In this case, the Government has

20    alleged that the Defendants were engaged in

21    conspiracies to commit various violations of federal

22    laws regarding terrorist activities.

23              The charges include conspiracies or agreements

24    to provide material support and resources to agents of

25    Al-Qaeda in conspiring to blow up the Sears Tower in
```

1  Chicago and several federal buildings in a planned war

2  against the United States.

3          Given that, is there anything that would

4  prevent you from being able to sit and listen to the

5  evidence in this case and be fair to both the

6  Government and the Defendant?

7          PROSPECTIVE JUROR NO. 32:  No, your Honor.

8          THE COURT:  The Defendants.  I'm sorry.  It's

9  "Defendants," plural.

10          Your answer is the same?

11          PROSPECTIVE JUROR NO. 32:  Yes.

12          THE COURT:  In this case, you may hear

13  evidence that the Government used informants who were

14  not United States citizens and who posed as

15  terrorists/agents of Al-Qaeda.

16          Do you have such strong feelings one way or

17  the other that you would not be able to sit and listen

18  to this evidence and be fair to both the Government and

19  the Defendants?

20          PROSPECTIVE JUROR NO. 32:  No.  I don't have a

21  problem with that, your Honor.

22          THE COURT:  Have you acquired any information

23  from newspaper, television, conversations or any other

24  sources about this case?

25          PROSPECTIVE JUROR NO. 2:  No, your Honor.

1          THE COURT:  Do you read the *Miami Herald*,

2   *New Times* or *Sun-Sentinel* news publications either in

3   print or on-line?

4          PROSPECTIVE JUROR NO. 32:  No.

5          THE COURT:  Have you read anything in any

6   newspaper or on the Internet or have you seen anything

7   on television or heard anything on the radio about this

8   case?

9          PROSPECTIVE JUROR NO. 32:  No, your Honor.

10          THE COURT:  Have you followed the course of

11   the proceedings leading up to this trial closely prior

12   to coming to court yesterday?

13          PROSPECTIVE JUROR NO. 32:  I'm sorry.  I don't

14   understand the question.

15          THE COURT:  Prior to coming to court

16   yesterday, have you followed the course of the

17   proceedings of this case leading up to the trial?

18          PROSPECTIVE JUROR NO. 32:  I still don't

19   understand the question.

20          THE COURT:  Prior to the time that you came to

21   court yesterday, have you been following the case in

22   any media outlets or --

23          PROSPECTIVE JUROR NO. 32:  No.

24          THE COURT:  -- just a general interest or

25   conversations?

```
 1              PROSPECTIVE JUROR NO. 32:  No.  No, your

 2   Honor.  I'm sorry.

 3              THE COURT:  That's okay.

 4              Have you discussed this case with anyone?

 5              PROSPECTIVE JUROR NO. 32:  No, your Honor.

 6              THE COURT:  Do you have an open mind regarding

 7   this case?

 8              PROSPECTIVE JUROR NO. 32:  Yes, your Honor.

 9              THE COURT:  Have you formed an opinion

10   regarding any of the Defendants based upon any outside

11   information?

12              PROSPECTIVE JUROR NO. 32:  No.

13              THE COURT:  Do you have any beliefs, thoughts

14   or opinions which may cause you to decide this case on

15   anything other than the evidence you will hear at

16   trial?

17              PROSPECTIVE JUROR NO. 32:  No.

18              THE COURT:  Are you knowledgeable about the

19   history and practices of Islam?

20              PROSPECTIVE JUROR NO. 32:  Not at all.

21              THE COURT:  Are you knowledgeable about the

22   history and practices of the Moorish Science Temple?

23              PROSPECTIVE JUROR NO. 32:  No.

24              THE COURT:  Are you knowledgeable about the

25   Universal Divine Saviors?
```

1              PROSPECTIVE JUROR NO. 32:  No.

2              THE COURT:  Are you a member of any type of

3    Masonic lodge?

4              PROSPECTIVE JUROR NO. 32:  No, your Honor.

5              THE COURT:  Are you knowledgeable about the

6    history, teachings or practices of the Masons?

7              PROSPECTIVE JUROR NO. 32:  No, your Honor.

8              THE COURT:  Have you, your spouse or any of

9    your family members ever visited the Middle East?

10             PROSPECTIVE JUROR NO. 32:  No, your Honor.

11             THE COURT:  Do you or family members or close

12   friends have any prior or present military service?

13             PROSPECTIVE JUROR NO. 32:  No, your Honor.

14             THE COURT:  Have you or any members of your

15   family or close friends had any personal experience

16   with acts of terrorism?

17             PROSPECTIVE JUROR NO. 32:  No, your Honor.

18             THE COURT:  Do you know or do you have a

19   family member or friend who knows someone who was a

20   victim of a terrorist attack?

21             PROSPECTIVE JUROR NO. 32:  No, your Honor.

22             THE COURT:  Have the events of September 11th

23   or any other terrorist act affected you to such an

24   extent that it would make it difficult for you to sit

25   and listen to the evidence in this case and be fair to

1    both the Government and the Defendant?

2         PROSPECTIVE JUROR NO. 32:  No.

3         THE COURT:  Have you or any family member or

4    close friend lost a job, a business contract or

5    experienced any other financial hardship as a result of

6    September 11th or any other terrorist attack?

7         PROSPECTIVE JUROR NO. 32:  No, your Honor.

8         THE COURT:  Do you have an opinion as to who

9    was responsible for the attack on the United States on

10   September 11th, 2001?

11        PROSPECTIVE JUROR NO. 32:  I don't have that

12   information.  No, your Honor.

13        THE COURT:  Is there anything else you think

14   the Court or the attorneys should know that might

15   influence your ability to fairly and impartially judge

16   the evidence in this case and follow the Court's

17   instructions on the law?

18        PROSPECTIVE JUROR NO. 32:  No, your Honor.

19        THE COURT:  If you would have a seat outside,

20   sir, and not discuss my questions with anyone.

21        PROSPECTIVE JUROR NO. 32:  Yes, your Honor.

22        THE COURT:  Thank you.

23        PROSPECTIVE JUROR NO. 32:  Thank you.

24        (Thereupon, Potential Juror No. 32 retired

25   from the courtroom and the following proceedings were

```
1    had:)
2              THE COURT:  No. 33.
3              (Thereupon, Potential Juror No. 33 entered the
4    courtroom and the following proceedings were had:)
5              THE COURT:  Hello.
6              PROSPECTIVE JUROR NO. 33:  Hello.
7              THE COURT:  Sir, since you left the courtroom
8    yesterday afternoon, have you read anything in the
9    newspaper, heard anything on the radio or seen anything
10   on the television news or on the Internet about this
11   case?
12             PROSPECTIVE JUROR NO. 33:  No.
13             THE COURT:  In this case, the Government has
14   alleged that the Defendants were engaged in
15   conspiracies to commit various violations of federal
16   laws regarding terrorist activities.
17             The charges include conspiracies or agreements
18   to provide material support and resources to agents of
19   Al-Qaeda in conspiring to blow up the Sears Tower in
20   Chicago and several federal buildings in a planned war
21   against the United States.
22             Given that, is there anything that would
23   prevent you from being able to sit and listen to the
24   evidence in this case and be fair to both the
25   Government and the Defendant?
```

1        PROSPECTIVE JUROR NO. 33:  No, your Honor.

2        THE COURT:  In this case, you may hear

3   evidence that the Government used informants who are

4   not United States citizens and who posed as

5   terrorists/agents of Al-Qaeda.

6        Do you have such strong feelings one way or

7   the other that you would not be able to sit and listen

8   to this evidence and be fair to both the Government and

9   the Defendants?

10        PROSPECTIVE JUROR NO. 33:  No, your Honor.

11        THE COURT:  Have you acquired any information

12   from newspaper, television, conversations or any other

13   sources about this case?

14        PROSPECTIVE JUROR NO. 33:  No, your Honor.

15        THE COURT:  Do you read the *Miami Herald*, *New*

16   *Times* or *Sun-Sentinel* news publications either in print

17   or on-line?

18        PROSPECTIVE JUROR NO. 33:  I read the

19   *New Times* and the *Miami Herald*.

20        THE COURT:  Have you read anything in any

21   newspaper, including the *New Times* or *Miami Herald*, or

22   on the Internet or have you seen anything on television

23   or heard anything on the radio about this case?

24        PROSPECTIVE JUROR NO. 33:  Not as yet.

25        THE COURT:  I'm sorry?

```
 1              PROSPECTIVE JUROR NO. 33:  I haven't read

 2    anything yet, lately.

 3              THE COURT:  How about ever?

 4              PROSPECTIVE JUROR NO. 33:  Not at this present

 5    moment.

 6              THE COURT:  Okay.  Have you followed the

 7    course of the proceedings of this case prior to coming

 8    to court yesterday?

 9              PROSPECTIVE JUROR NO. 33:  Yes.

10              THE COURT:  And how have you followed it?

11              PROSPECTIVE JUROR NO. 33:  By not speaking to

12    anybody about the -- concerning this case.

13              THE COURT:  No.  No.  No.

14              What I'm asking is:  Have you followed what's

15    gone on in the case prior to coming this court

16    yesterday?

17              PROSPECTIVE JUROR NO. 33:  Can you, like,

18    explain to me, like --

19              THE COURT:  Sure.

20              Yesterday, when you came to court, before

21    that, before yesterday, have you followed what's

22    happened in this case?

23              PROSPECTIVE JUROR NO. 33:  Yes.

24              THE COURT:  And what have you followed?

25              PROSPECTIVE JUROR NO. 33:  Like being -- by
```

```
 1   following what happened about this case?  That's what

 2   you are talking about?

 3            THE COURT:  How have you followed what -- what

 4   have you done to follow this case prior to yesterday?

 5   Was yesterday the first time that you knew anything

 6   about the case?

 7            PROSPECTIVE JUROR NO. 33:  Yes.

 8            THE COURT:  So prior to that, you didn't know

 9   anything about the case?

10            PROSPECTIVE JUROR NO. 33:  Yes.  I know

11   nothing about the case.

12            THE COURT:  Okay.  Do you have an open mind

13   regarding this case?

14            PROSPECTIVE JUROR NO. 33:  What do you mean by

15   that?

16            THE COURT:  Have you formed any opinions

17   regarding any of the Defendants?

18            PROSPECTIVE JUROR NO. 33:  No.  I don't have

19   no opinions.

20            THE COURT:  You have no opinions?

21            PROSPECTIVE JUROR NO. 33:  Uh-huh.

22            THE COURT:  Is that what you said?

23            PROSPECTIVE JUROR NO. 33:  Yes.

24            THE COURT:  Do you have any beliefs, thoughts

25   or opinions which may cause you to decide this case on
```

1   anything other than the evidence you will hear at

2   trial?

3            PROSPECTIVE JUROR NO. 33:  No, your Honor.

4            THE COURT:  Are you knowledgeable about the

5   history and practice of Islam?

6            PROSPECTIVE JUROR NO. 33:  No, your Honor.

7            THE COURT:  Are you knowledgeable about the

8   history and practices of the Moorish Science Temple?

9            PROSPECTIVE JUROR NO. 33:  No, your Honor.

10            THE COURT:  Are you knowledgeable about the

11   Universal Divine Saviors?

12            PROSPECTIVE JUROR NO. 33:  No, your Honor.

13            THE COURT:  Are you a member of any type of

14   Masonic lodge?

15            PROSPECTIVE JUROR NO. 33:  No, your Honor.

16            THE COURT:  Are you knowledgeable about the

17   history, teachings or practices of the Masons?

18            PROSPECTIVE JUROR NO. 33:  No, your Honor.

19            THE COURT:  Have you or any of your family

20   members ever visited the Middle East?

21            PROSPECTIVE JUROR NO. 33:  No, your Honor.

22            THE COURT:  Do you or family members or close

23   friends have any prior or present military service?

24            PROSPECTIVE JUROR NO. 33:  No, your Honor.

25            THE COURT:  Have you or any members of your

1    family or close friends had any personal experience

2    with acts of terrorism?

3           PROSPECTIVE JUROR NO. 33:  No, your Honor.

4           THE COURT:  Do you know or do you have a

5    family member or friend who knows someone who was a

6    victim of a terrorist attack?

7           PROSPECTIVE JUROR NO. 33:  No, your Honor.

8           THE COURT:  Have the events of September 11th

9    or any other terrorist act affected you to such an

10   extent that it would make it difficult for you to sit

11   and listen to the evidence in this case and be fair to

12   both the Government and the Defendants?

13          PROSPECTIVE JUROR NO. 33:  No, your Honor.

14          THE COURT:  Have you or any family member or

15   friend -- or close friend lost a job, a business

16   contract or experienced any other financial hardship as

17   a result of September 11th or any other terrorist

18   attack?

19          PROSPECTIVE JUROR NO. 33:  No, your Honor.

20          THE COURT:  Do you have an opinion as to who

21   was responsible for the attack on the United States on

22   September 11th, 2001?

23          PROSPECTIVE JUROR NO. 33:  No, your Honor.

24          THE COURT:  Is there anything else you think

25   the Court or the attorneys should know that might

1    influence your ability to fairly and impartially try

2    the -- impartially judge the evidence in this case and

3    follow the Court's instructions on the law?

4            PROSPECTIVE JUROR NO. 33:  No, your Honor.

5            THE COURT:  Have you been able to follow

6    everything that I've been talking to you about today,

7    sir?

8            PROSPECTIVE JUROR NO. 33:  Yes.  I understand.

9            THE COURT:  Okay.  If you would have a seat

10   outside and not discuss my questions with anyone.

11           (Thereupon, Potential Juror No. 33 retired

12   from the courtroom and the following proceedings were

13   had:)

14           THE COURT:  So from this panel, we have the

15   following remaining jurors --

16           MS. ARANGO:  Judge, before you get there,

17   we -- at least I was under the impression -- so was

18   Mr. Gregorie -- that we were going to be seeking cause

19   challenges after asking all of these questions.  So we

20   have a cause challenge for somebody from yesterday.

21           THE COURT:  Are there any challenges for

22   cause?

23           MS. ARANGO:  Yes.  Yes.  We do seek -- we do

24   challenge Juror No. 1 for cause.

25           I think he falls into the same category as a

1    couple of the people that you just released just now

2    for cause in that this juror made it very clear that he

3    had an opinion about this case.

4         While he did say he could be fair, what

5    distinguishes him from other -- from other prospective

6    jurors is that he said that he did have strong feelings

7    about this case.

8         He said that he was wondering if the

9    informants' story was credible.  He said that he had

10   spoken -- he saw newspaper articles, TV articles,

11   rumors on the street.

12        He read various -- he said that he spoke to, I

13   believe, coworkers and people on the street and that it

14   was his understanding that this was a case about a

15   couple guys that were being framed and that the

16   Government had put this all together.

17        The rumors were that it was all a government

18   frame, that they were going to run this into the

19   ground.

20        You asked him specifically, "Did you formulate

21   any opinions?"

22        And he said he did, and he stated those

23   opinions.

24        He said that he didn't think there was any

25   valid information.  He didn't think the charges were

```
 1    factual.  He thought that it was probably made up.

 2            So although he did say to you that he thought

 3    he could be fair, what distinguishes this is that he

 4    not only had an opinion, but he expressed that opinion

 5    to others, and it's a very strong opinion, your Honor.

 6            For that reason, he should be stricken for

 7    cause.

 8            THE COURT:  I'm going to have to check the

 9    transcript.  I want to read over what he said

10    yesterday.

11            Quite frankly, the time that I have has now

12    run out.  I need to attend to another matter.

13            So I'm going to bring the jurors in and we can

14    go through the challenges for cause tomorrow.  I'm not

15    going to have them come back.  Patricia will just call

16    them and tell them whether they're still being

17    considered.

18            But let's bring in all the jurors and I'll

19    dismiss them.

20            THE COURT SECURITY OFFICER:  Yes, ma'am.

21            MR. GREGORIE:  Your Honor, would you advise

22    them not to read anything in the press?

23            THE COURT:  Yes.  I will.

24            (Whereupon, the remaining members of

25    Prospective Jury Panel No. I entered the courtroom at
```

1     1:09 p.m. and the following proceedings were had:)

2          THE COURT:  You may be seated.

3          Ladies and gentlemen, I'm going to dismiss you

4     for the day at this time.  Patricia will be calling you

5     tomorrow to let you know if you're still under

6     consideration to be a member of this jury.  But I know

7     the hour is getting late for lunch and we got somewhat

8     delayed because of the fire alarm today.

9          So I'm going to dismiss you, and Patricia will

10    call you tomorrow and let you know if you're still

11    being considered.

12         If she tells you that you are still being

13    considered for the jury, she will then call you within

14    a week, week and a half, as soon as this process has

15    been finished and a final determination has been made

16    as to who will be the members of the jury.

17         So if she calls you tomorrow and tells you

18    that you're still under consideration, she'll be

19    calling you at a later time to tell you if you've been

20    chosen to be a member of the jury.

21         And we'll try and give you as much lead time

22    as we possibly can, at least a day or two, for the

23    start of the trial, if you are finally chosen as a

24    member of this jury.

25         Do not discuss this case either amongst

1    yourselves or with anyone else.  Have no contact

2    whatsoever with anyone associated with the trial.  Do

3    not read, listen or see anything touching on this

4    matter in any way.

5         If anyone should try to talk to you about this

6    case, you should immediately instruct them to stop and

7    report it to my staff.

8         You need to be very careful that you do not

9    read or see anything in either the print media, on the

10   television, on the radio or on the Internet about this

11   case.

12        Patricia will meet you out in the hallway to

13   take up any questions that you may have and to make

14   sure that you have the number of my chambers.

15        I appreciate your patience today and

16   especially the long hike downstairs, if you made that

17   long hike down all those flights.  And we'll be in

18   touch with you as soon as we can.

19        Thank you so much for your patience.  You're

20   dismissed for the day.

21        (Whereupon, the remaining members of

22   Prospective Jury Panel No. I exited the courtroom at

23   1:12 p.m. and the following proceedings were had:)

24        THE COURT:  We'll be in recess in this matter

25   until tomorrow morning, 9:00.

1          Between 9:00 and 10:00, we'll take up any

2   further challenges for cause and determine who from

3   this panel will be on the peremptory panel.  And then

4   at 10:00 we'll start with a new panel of jurors.

5          We're in recess for the day.

6          MS. JHONES:  Thank you, your Honor.

7          (End of proceedings.)

8

9             C E R T I F I C A T E

10

11       I hereby certify that the foregoing is an

12   accurate transcription of the proceedings in the

13   above-entitled matter.

14

15

16   _____      /s/Lisa Edwards _____

        DATE           LISA EDWARDS, CRR, RMR
17                     Official United States Court Reporter
                       400 North Miami Avenue, Twelfth Floor
18                     Miami, Florida 33128
                       (305) 523-5499
19

20

21

22

23

24

25