```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                           MIAMI DIVISION
                  CASE NO. 06-20373-CRIMINAL-LENARD
 3

 4   UNITED STATES OF AMERICA,        Miami, Florida

 5                   Plaintiff,       January 29, 2009

 6            vs.                     9:22 a.m. to 5:25 p.m.

 7   NARSEAL BATISTE, et al.,         Volume III

 8            Defendants.      Pages 1 to 260
     ------------------------------------------------------
 9

10                           JURY TRIAL
11          BEFORE THE HONORABLE JOAN A. LENARD,
                 UNITED STATES DISTRICT JUDGE
12

13

14   APPEARANCES:

15

16   FOR THE GOVERNMENT:    RICHARD D. GREGORIE, ESQ., and
                            JACQUELINE M. ARANGO, ESQ.
17                          ASSISTANT UNITED STATES ATTORNEYS
                            99 Northeast Fourth Street
18                          Miami, Florida 33132

19
     FOR THE DEFENDANT      ANA MARIA JHONES, ESQ.
20     NARSEAL BATISTE:     300 Seville Avenue, Suite 210
                            Coral Gables, Florida 33134
21

22   FOR THE DEFENDANT      ALBERT Z. LEVIN, ESQ.
       PATRICK ABRAHAM:     261 Northeast First Street
23                          Sixth Floor
                            Miami, Florida 33132
24

25
```

```
 1   FOR THE DEFENDANT      RODERICK D. VEREEN, ESQ.
       STANLEY PHANOR:      BRINKLEY, HENRYS & LEWIS
 2                          4770 Biscayne Boulevard
                            Suite 1200
 3                          Miami, Florida 33131

 4
     FOR THE DEFENDANT      RICHARD K. HOULIHAN, ESQ.
 5     NAUDIMAR HERRERA:    300 Aragon Avenue
                            Coral Gables, Florida 33134
 6

 7   FOR THE DEFENDANT      LOUIS CASUSO, ESQ.
       BURSON AUGUSTIN:     111 Northeast First Street
 8                          Suite 603
                            Miami, Florida 33132
 9

10   FOR THE DEFENDANT      NATHAN CLARK, ESQ.
      ROTSCHILD AUGUSTINE:  17639 South Dixie Highway
11                          Miami, Florida 33157

12
     REPORTED BY:           LISA EDWARDS, CRR, RMR
13                          Official Court Reporter
                            400 North Miami Avenue
14                          Twelfth Floor
                            Miami, Florida 33128
15                          (305) 523-5499

16

17

18                         I  N  D  E  X

19

20                                             PAGE

21
     Jury Selection                               9
22

23

24

25
```

```
 1              THE COURT:  Good morning.  You may be seated.

 2              United States of America versus Narseal

 3    Batiste, et al., Case No. 06-20373.

 4              Counsel, state your appearances, please, for

 5    the record.

 6              MR. GREGORIE:  Good morning, your Honor.

 7              Richard Gregorie on behalf of the United

 8    States.

 9              MS. ARANGO:  And Jacqueline Arango also on

10    behalf of the United States.

11              With us at counsel table is Tony Velazquez and

12    John Stewart with the FBI.

13              THE COURT:  Good morning.

14              MS. JHONES:  Good morning, your Honor.

15              Ana Jhones on behalf of Narseal Batiste, who

16    is present.

17              THE COURT:  Good morning.

18              MR. LEVIN:  Good morning, your Honor.

19              Albert Levin on behalf of Patrick Abraham, who

20    is also present.

21              THE COURT:  Good morning.

22              MR. CASUSO:  Louie Casuso on behalf of Burson

23    Augustin.

24              THE COURT:  Good morning.

25              MR. CLARK:  Nathan Clark for Rotschild
```

1    Augustine, who is present.

2              THE COURT:  Good morning.

3              MR. HOULIHAN:  Richard Houlihan with Naudimar

4    Herrera.

5              THE COURT:  Good morning.

6              MR. VEREEN:  Good morning, Judge.

7              Roderick Vereen on behalf of Stanley Phanor,

8    who's present.

9              THE COURT:  Good morning.

10             All Defendants are present.

11             I've got some issues with my deliberating

12   jury.  So the lawyers are going to be on their way.

13   When they get here, we're going to have to break.

14             But let's proceed until they're here with

15   challenges for cause from the No. I panel.

16             MS. ARANGO:  Judge, the Government, as I

17   stated yesterday, seeks to challenge for cause Juror

18   No. 1 for the reasons I outlined yesterday.

19             And just briefly -- I won't go into my entire

20   arguments -- but, briefly, what distinguishes this

21   potential juror from others is that this person formed

22   an opinion about this particular case, a very, very

23   unusual situation, where this person said, "I read

24   about this case.  I saw this case in the news.  I heard

25   about this case on the street -- through rumors on the

1    street.  I discussed it with coworkers and friends.  I

2    have an opinion.  I've expressed that opinion."

3         That opinion is that it's all a government

4    frameup, that the Government is going to run this into

5    the ground, that it didn't really happen, that the

6    charges were not factual, that they were probably made

7    up by the Government, that there's no valid information

8    to charge these people.

9         Judge --

10        THE COURT:  Didn't he also say that he could

11   set aside that opinion?

12        MS. ARANGO:  That's true, your Honor.

13        THE COURT:  Isn't that the basis of the

14   jurisprudence?

15        MS. ARANGO:  Judge --

16        THE COURT:  It isn't a question of whether you

17   have an opinion.  Actually, the jurisprudence in this

18   area is in regard to an opinion about the guilt of the

19   Defendants.  It's a question of whether or not you can

20   set aside that opinion and listen to the evidence and

21   judge the case on the evidence.

22        MS. ARANGO:  That's true, your Honor.

23        If that person says that, your Honor,

24   doesn't -- there's definitely -- you do not definitely

25   have to strike them under -- you know, as opposed to

 1    the contrary situation, where the person says, "I

 2    cannot set that opinion aside."  You have the

 3    discretion.

 4         But I think you can also -- you also have the

 5    discretion to not credit that if everything about this

 6    person is telling you, "This is my opinion" and this

 7    person appears to be a person that wants to get on this

 8    jury to make a statement and to do something.  I think

 9    that your Honor can not credit that -- what he says.  I

10    think you have the discretion to do so.

11         THE COURT:  Okay.  What's the defense

12    position?

13         MS. JHONES:  Your Honor, if I may, if the

14    Court would look at Pages 54 through --

15         THE COURT:  I don't have the transcript in

16    front of me.

17         MS. JHONES:  I'm sorry.  Well, I will then

18    highlight the parts.

19         Contrary to Juror No. 11, which this Court

20    found did not pose any challenge for cause, she had

21    formed an opinion.  This gentleman clearly said, in

22    response to the Court's question --

23         THE COURT:  He said he had --

24         MS. JHONES:  "Do you have an open mind

25    regarding" -- I'm sorry.

 1            THE COURT:  He said he had an opinion.

 2            MS. JHONES:  "Have you formed an opinion

 3    regarding any of the Defendants based upon any outside

 4    information?

 5            "No.  I don't have all of the evidence that I

 6    can form an opinion on that.  But based on outside

 7    information, no."

 8            Page 214, transcript from this juror's

 9    testimony.

10            He did not say, your Honor, he formed an

11    opinion.

12            Contrastingly, every bit of -- piece of

13    information that the Government is relying upon is

14    information that he echoed, having heard from his

15    coworkers, having seen on TV, having seen in the

16    newspaper, as opposed to this gentleman saying:  I

17    think A, B and C.

18            Contrast that with Juror No. 11.

19            THE COURT:  Okay.  I don't want to get into

20    Juror No. 11.

21            I'm going to deny the challenge for cause.

22            You can exercise a peremptory.

23            My memory of the transcript is that he said

24    that he expressed an opinion, but he could set it

25    aside.

```
 1              Since that's the basis of the jurisprudence in
 2    this area, I'm going to deny the challenge for cause.
 3              Any other challenges for cause?
 4              Is that it?
 5              So let's just review, then, who we have from
 6    this first panel.
 7              Juror No. 1, Juror No. 7, Juror No. 8, Juror
 8    No. 13, Juror No. 14, Juror No. 16 --
 9              MS. JHONES:  I'm sorry, your Honor.
10              16?
11              THE COURT:  Yes.
12              MS. JHONES:  Okay.
13              THE COURT:  -- Juror No. 22, Juror No. 26,
14    Juror No. 29, Juror No. 32 and Juror No. 33.
15              Correct?
16              MR. LEVIN:  Yes, your Honor.
17              MR. VEREEN:  Yes, your Honor.
18              THE COURT:  So 11.
19              The next panel is scheduled for 10:00.  So
20    we'll be in recess in this matter until 10:00.
21              (Thereupon a recess was taken, after which the
22    following proceedings were had:)
23              THE COURT:  United States of America versus
24    Narseal Batiste, et al., Case No. 06-20373.
25              Counsel, state your appearances, please, for
```

1    the record.

2         MR. GREGORIE:  Richard Gregorie and Jacqueline

3    Arango on behalf of the United States, your Honor.

4         MS. JHONES:  Ana Jhones on behalf of Narseal

5    Batiste, who is present.

6         MR. LEVIN:  Albert Levin on behalf of Patrick

7    Abraham, who is present.

8         MR. CASUSO:  Lou Casuso on behalf of Burson

9    Augustin.

10        MR. CLARK:  Nathan Clark for Rotschild

11   Augustine, who's present.

12        MR. HOULIHAN:  Richard Houlihan for Naudimar

13   Herrera.

14        MR. VEREEN:  Roderick Vereen for Stanley

15   Phanor, who's present.

16        THE COURT:  All Defendants are present.

17        The jurors are here.  So let's bring them in.

18        MS. ARANGO:  Judge, do we have 34 again?

19        THE COURT:  No.  I'm sorry.  It's 30.

20        (Whereupon, Prospective Jury Panel No. II

21   entered the courtroom at 10:05 a.m. and the following

22   proceedings were had:)

23        THE COURT:  Good morning.

24        THE JURY:  Good morning.

25        THE COURT:  You may be seated.

1          Ladies and gentlemen of the jury, I want to

2   welcome you to our courtroom.  I am Judge Lenard, a

3   United States District Judge for the Southern District

4   of Florida.  I will preside over this case.

5          The jury is an institution of the common law.

6   It is recognized, preserved and protected by our

7   Constitution.

8          Jury service is one of the most important

9   duties that you, as a citizen, are called upon to

10  perform.

11         I am aware that, for some of you, this is your

12  first call to jury service and these proceedings are

13  totally unfamiliar to you.  Please do not be

14  apprehensive or feel inadequate.  As we go along, the

15  Court will acquaint you with the proceedings and I will

16  instruct you as to what your role is and what your

17  duties will be.

18         In order that you will know the court

19  personnel with whom you will be working and their

20  respective duties, I will introduce them to you at this

21  time.

22         The courtroom deputy, whom you've already met,

23  is Patricia Mitchell.  She assists in the

24  administration of cases that comprise the Court's

25  docket and the coordination of the day-to-day

1    operations of the court.

2          The court reporter is Lisa Edwards.  She

3    transcribes and takes down everything that is said in

4    the courtroom, including the statements that I am now

5    making, the questions that will subsequently be

6    propounded to you, your answers and all other matters

7    in this case.

8          We also have court security officers.  Their

9    job is to enforce the Court's orders and take charge of

10   the jury.

11         If you desire information concerning your

12   personal welfare, you should make your inquiries known

13   to either the court security officer or courtroom

14   deputy, who will, if necessary, arrange with the Court

15   to hear you on such matters.  However, you must not

16   question either the court security officer or courtroom

17   deputy concerning the case that is being tried.

18         Ladies and gentlemen, I will be asking you

19   questions touching on your qualifications to serve as

20   jurors in this particular case.  This part of the case

21   is known as voir dire examination, "voir dire" meaning

22   to speak the truth.

23         This examination is for the purpose of

24   determining if your decision in this case would be

25   influenced in any way by opinions you now hold or by

 1   some personal experience or special knowledge you may

 2   have concerning the case to be tried.

 3          The object is to obtain a jury who will

 4   impartially try the issues of this case upon the

 5   evidence presented in this courtroom without being

 6   influenced by any other factors.

 7          Please understand, this questioning is not for

 8   the purpose of prying into your affairs for personal

 9   reasons, but is only for the purpose of obtaining an

10   impartial jury.

11          Not all of you will have the privilege to sit

12   as a juror in this case.  There are many reasons why a

13   person may not be selected as a juror.  Either side can

14   ask that you be excused without giving a reason or the

15   Court can excuse you.

16          If you are excused, please do not be offended

17   or feel that your honesty or integrity is being

18   questioned.  It is not.

19          If you would, swear in all the potential

20   jurors, please.

21          (Whereupon, Prospective Jury Panel No. II was

22   duly sworn.)

23          THE COURT:  Before I begin my questions, I

24   first of all want to tell you about my courtroom.

25   We've been here since May.  As you probably have

1   noticed, it's a new courthouse.  We're still working

2   out all the kinks.  It's a little chilly in here this

3   morning.  That's one of them.

4        Our sound system works rather well, a lot

5   better than my prior sound system.  The one difficulty

6   in the sound system is the handheld microphone, which,

7   of course, is what you'll utilize to answer questions

8   on voir dire.

9        In my experience since May, the best way to

10  get this microphone to work is to hold it right up like

11  it's a karaoke mic.  I think that's maybe what it is, a

12  karaoke mic.  So if you hold it, you know, right

13  parallel with your mouth, it will work better.

14       I also want to tell you about my trial

15  schedule.  On Mondays, I hear other matters on my

16  docket.  So I do not hear trials on Monday.  I hear

17  trials Tuesday through Friday.  And that will be the

18  schedule for this case.

19       Having said that, this case is expected to

20  take approximately two months to present the evidence.

21       Does this fact present an insurmountable

22  problem for any member of the jury panel?

23       And my questions are directed to those persons

24  who are seated in what we call the jury box and those

25  persons seated in the gallery as well.

 1              Does anybody have an insurmountable problem
 2    with the time period for the trial?
 3              If you would, state your number before you
 4    answer the question.  That way, Lisa can make sure
 5    you're properly identified in the record.
 6              PROSPECTIVE JUROR NO. 5:  5.
 7              THE COURT:  Okay.  You're Juror No. 5.  Yes.
 8              PROSPECTIVE JUROR NO. 5:  I have a 75-year-old
 9    father who I'm the prime caregiver for.  He just had an
10    accident two days ago.  He has dementia.  Today I had
11    to hire a babysitter to watch him.
12              THE COURT:  Okay.  Do you work normally,
13    ma'am?
14              PROSPECTIVE JUROR NO. 5:  Yes.  I work from my
15    home.
16              THE COURT:  Okay.
17              PROSPECTIVE JUROR NO. 12:  No. 12.
18              THE COURT:  Yes.
19              PROSPECTIVE JUROR NO. 12:  I'm the primary
20    caretaker of a 3-year-old and a 5-year-old, and I take
21    care of my old mother.
22              THE COURT:  Do you work?
23              PROSPECTIVE JUROR NO. 12:  Yes, ma'am.
24              THE COURT:  Who takes care of the 3- and --
25              PROSPECTIVE JUROR NO. 12:  They go to school.

1           THE COURT:  Do you take them to school?

2           PROSPECTIVE JUROR NO. 12:  Yes, ma'am.

3           THE COURT:  What time do you drop them it off?

4           PROSPECTIVE JUROR NO. 12:  6:45.

5           THE COURT:  Oh, my goodness.  That's early.

6           And what time do you pick them up?

7           PROSPECTIVE JUROR NO. 12:  I work 12-hour

8    shifts, usually.  So the three days that I work, my

9    husband works two jobs and is able to pick them up and

10   drop them off at my in-laws'.  And I pick them up after

11   work.

12          THE COURT:  So you normally work three days a

13   week?

14          PROSPECTIVE JUROR NO. 12:  For 12 hours.  My

15   husband works two job.

16          THE COURT:  Do you work set days during the

17   week?

18          PROSPECTIVE JUROR NO. 12:  Yes, ma'am.

19   Tuesday, Thursday and Friday.

20          THE COURT:  Tuesday, Thursday and Friday.

21          On those days, your husband picks up the

22   children and he brings them to your in-laws and then

23   you pick them up when you're finished with work?

24          PROSPECTIVE JUROR NO. 12:  Yes.

25          THE COURT:  Would your husband be able to pick

1   them up on one additional day, on Wednesday, if you

2   were chosen as a juror?

3          PROSPECTIVE JUROR NO. 12:  He works two jobs.

4   He works his primary job and then he runs a business --

5   his own business, as well.

6          THE COURT:  So would he be able to add one

7   more day of picking up the children?

8          PROSPECTIVE JUROR NO. 12:  I'm not sure.  He

9   does it already Tuesday, Thursday and Friday, in

10  between.

11         THE COURT:  Is there anything that would

12  prevent him from doing it on Wednesday?  Is there

13  anything different in his Wednesday than on Tuesday,

14  Thursday and Friday?

15         PROSPECTIVE JUROR NO. 12:  Well, just his job.

16  Just his job.

17         THE COURT:  So what hours does he work?

18         PROSPECTIVE JUROR NO. 12:  He works 6:00 in

19  the morning to 2:30 in the afternoon and then, from

20  2:30 on, he works his second job.

21         THE COURT:  Where is that?

22         PROSPECTIVE JUROR NO. 12:  IT.  He does IT,

23  information technology, for a law --

24         THE COURT:  He picks up the children at 2:30

25  and goes to the second job?

```
 1              PROSPECTIVE JUROR NO. 12:  He drops them off
 2    at my in-laws' and then -- yeah.
 3              THE COURT:  So he might be able to also do
 4    that on Wednesday, if you were chosen?
 5              PROSPECTIVE JUROR NO. 12:  Yeah.  A
 6    possibility.
 7              THE COURT:  Okay.  If you could, pass the
 8    microphone down to Juror No. 10.
 9              PROSPECTIVE JUROR NO. 10:  Hi:  I'm seven
10    months pregnant.  I don't know when the baby is
11    deciding to come.
12              THE COURT:  When are you due?
13              PROSPECTIVE JUROR NO. 10:  I'm due April 16th.
14              THE COURT:  Okay.
15              PROSPECTIVE JUROR NO. 10:  I'm 29 weeks.
16              THE COURT:  Are you working full-time now?
17              PROSPECTIVE JUROR NO. 10:  Yes.
18              THE COURT:  Is this your first?
19              PROSPECTIVE JUROR NO. 10:  Second.
20              THE COURT:  Did the first one come early?
21              PROSPECTIVE JUROR NO. 10:  No.
22              THE COURT:  Okay.
23              PROSPECTIVE JUROR NO. 9:  Good morning, your
24    Honor.
25              THE COURT:  If you could just hand the
```

1    microphone back to her one moment.

2          Have you had any particular problems during

3    the pregnancy?

4          PROSPECTIVE JUROR NO. 10:  No.

5          THE COURT:  You've been able to go to work

6    every day?

7          PROSPECTIVE JUROR NO. 10:  Yes.

8          THE COURT:  And you're planning on working

9    until when?

10         PROSPECTIVE JUROR NO. 10:  Until I give birth.

11         THE COURT:  Okay.

12         Yes, sir.

13         PROSPECTIVE JUROR NO. 9:  Good morning, your

14   Honor.  No. 9.

15         The problem -- I'm an attorney.  A two-month

16   trial impacts my ability to hand my cases that I'm

17   responsible for.

18         THE COURT:  Are you a solo practitioner or do

19   you work in a firm?

20         PROSPECTIVE JUROR NO. 9:  A firm, your Honor.

21         THE COURT:  How large is the firm?

22         PROSPECTIVE JUROR NO. 9:  About 23 attorneys.

23         THE COURT:  And what is your area of

24   expertise?

25         PROSPECTIVE JUROR NO. 9:  Construction

1    litigation, primarily defense.

2            THE COURT:  And are there other attorneys in

3    that division of the firm?

4            PROSPECTIVE JUROR NO. 9:  Yes, your Honor.

5            THE COURT:  Thank you.

6            PROSPECTIVE JUROR NO. 17:  Good morning.  I'm

7    No. 17.

8            And, your Honor, I have my brother in

9    Nicaragua and he was diagnosed by cancer.  And my

10   mother is there.  And I think all my family need to be

11   travel because this is an emergency.

12           And it's a terminal cancer.  We don't know

13   what is gonna happen.  I would like to have the time to

14   be able to see him and -- and I don't know.  I'm

15   just -- just presenting this to you.

16           THE COURT:  Do you have plans to go already?

17           PROSPECTIVE JUROR NO. 17:  Well, I was

18   expecting to finish -- I mean, to serve to see.  I even

19   wrote a letter yesterday and I send it by mail, by

20   certified, to be excused or, if I need to serve, like,

21   I will do it, but not for that long.

22           THE COURT:  Okay.  I understand.

23           PROSPECTIVE JUROR NO. 17:  I don't know what

24   is gonna happen.

25           THE COURT:  I'm sorry.  Okay.  I understand

```
 1   your situation.

 2          PROSPECTIVE JUROR NO. 17:  Thank you, your

 3   Honor.

 4          THE COURT:  Yes.

 5          PROSPECTIVE JUROR NO. 26:  Your Honor, No. 26.

 6          I'm planning on going to school in March in

 7   Tallahassee.

 8          THE COURT:  What day in March?

 9          PROSPECTIVE JUROR NO. 26:  After spring break.

10   I don't know what day for sure.

11          THE COURT:  But school definitely starts in

12   March sometime?

13          PROSPECTIVE JUROR NO. 26:  No.  I'm going up

14   there.  I'm going to register early and all that.  I'm

15   moving up that way.

16          THE COURT:  You're moving there to go to

17   school?

18          PROSPECTIVE JUROR NO. 26:  Yeah.  I ain't

19   going to school until the summer, but I'm moving up

20   that way to get the location and everything right.

21          THE COURT:  When does school start?

22          PROSPECTIVE JUROR NO. 26:  The summer.

23          THE COURT:  June?

24          PROSPECTIVE JUROR NO. 26:  Yeah.

25          THE COURT:  If you had to, could you put it
```

1    off for a few weeks, the time that you would be moving

2    up there?

3         PROSPECTIVE JUROR NO. 26:  I done put it off

4    like long enough already.

5         THE COURT:  Okay.  If you were chosen as a

6    juror in this case and you had to put it off for a few

7    weeks, would you be able to do that?

8         PROSPECTIVE JUROR NO. 26:  I mean, if I had no

9    choice.  But....

10        THE COURT:  And would you be able to pay full

11   time and attention to the case if you had to put off

12   your move date?

13        PROSPECTIVE JUROR NO. 26:  Honestly, I don't

14   know, because I'm, like, real focused on other things

15   right now.

16        THE COURT:  Are you going up there by yourself

17   or with someone else?

18        PROSPECTIVE JUROR NO. 26:  Yeah.  By myself.

19        THE COURT:  You're going up to find a place to

20   live or....

21        PROSPECTIVE JUROR NO. 26:  Yes, ma'am.

22        THE COURT:  And how hard is it to find a place

23   in Tallahassee?

24        PROSPECTIVE JUROR NO. 26:  I don't know.

25        THE COURT:  Okay.  Would counsel for the

```
 1   Government and for the Defendants introduce themselves

 2   and the persons associated with them at counsel table,

 3   please.

 4            MR. GREGORIE:  Good morning, ladies and

 5   gentlemen.

 6            My name is Richard Gregorie.  I'm an assistant

 7   United States attorney.

 8            MS. ARANGO:  Good morning, ladies and

 9   gentlemen.

10            I'm Jackie Arango, and I'm also an assistant

11   United States attorney.

12            SPECIAL AGENT VELAZQUEZ:  Ladies and

13   gentlemen, good morning.

14            I'm a special agent with the FBI.

15            SPECIAL AGENT STEWART:  Good morning, ladies

16   and gentlemen.

17            My name is John Stewart, and I'm a special

18   agent for the FBI.

19            THE COURT:  Mr. Velazquez, could you just give

20   your name.

21            SPECIAL AGENT VELAZQUEZ:  Oh, I'm sorry.

22            Agent Velazquez.  I apologize.

23            THE COURT:  Thank you.

24            MS. JHONES:  Good morning, ladies and

25   gentlemen.
```

```
 1              My name is Ana Maria Jhones.  I've been
 2    appointed to represent Mr. Batiste.
 3              MR. LEVIN:  May it please the Court.
 4              Ladies and gentlemen, good morning.
 5              My name is Albert Levin.  I've been appointed
 6    by the Court to represent Patrick Abraham.
 7              Thank you.
 8              MR. CASUSO:  Good morning, ladies and
 9    gentlemen.
10              My name is Lou Casuso.  I'm an attorney in
11    private practice in Miami, and I represent Burson
12    Augustin.
13              MR. CLARK:  Good morning.
14              I'm Nathan Clark, and I'm counsel for
15    Rotschild Augustine.
16              MR. HOULIHAN:  Good morning.
17              My name is Richard Houlihan.  I represent
18    Naudimar Herrera.
19              MR. VEREEN:  Ladies and gentlemen, good
20    morning.
21              My name is Roderick Vereen, and I represent
22    Stanley Phanor.
23              THE COURT:  Is there any member of the jury
24    panel who recognizes any of the persons who were
25    introduced to you in the courtroom by the fact that you
```

```
 1    have had any contact with any of those persons
 2    whatsoever, whether it be business or social?
 3            PROSPECTIVE JUROR NO. 17:  No, your Honor.
 4            THE COURT:  I understand there was one more
 5    hand for the last question.
 6            Did I miss somebody?
 7            Yes, ma'am.  You're Juror No. 7.
 8            PROSPECTIVE JUROR NO. 7:  No. 7.
 9            Your Honor, I working for Miami-Dade County
10    for 30 years.  And in February 19, we're having our
11    work presentation.  I have to be present for our work
12    in the County of the work, County commissioners.
13            THE COURT:  I think that we could --
14            PROSPECTIVE JUROR NO. 7:  Yeah.  I hear about
15    this case is going to last two months.
16            THE COURT:  That's fine.  For a one-day
17    situation like that, I always try and work with the
18    jurors.
19            PROSPECTIVE JUROR NO. 7:  Okay.
20            THE COURT:  I'm going to read a list of
21    potential witnesses to you:
22            Elie Assaad, Will Bolton, Paul Carpentieri,
23    Willie Creech, Paul Gaspard, Karam Govens, Elsie
24    Hamler, Kenneth Joseph, Lisa Lamey, David Lew, Rick
25    Lunn, Hector Maldonado, Bashir Malouf, Dana Martenelli,
```

```
1    Jason Miller, George Nau, Jonathan O'Neil, Ruby

2    Raphael, Lee Rathel, Ron Reddy, Ira Rosenberg, Abbas

3    al-Saidi, Guillermo Salazar, Tim Scott, John Stewart,

4    Raymond Tanter, Michelle Thompson, Anthony Velazquez,

5    Jason Martelli -- or Martel, Mickey Batiste, Michael

6    Murphy, David Lew, George Gonzalez, William Cobb, Laura

7    Kriegbaum, Ed Purchase, Philippe Ferrier, Wayne

8    Shields, Daniel Young, Miranda Vasquez Hernandez, Burla

9    Augustine, Abdier Santiago, Charles Russo, Burla Russo,

10   Pierre Augustine, Elwood Augustine, Carl Remey, Jimmy

11   Morency, Septepinra Melvin, Sultan Kahn Bey, Ali G.

12   Athea, Israel Herrera, Maribel Herrera, Ken Herrera,

13   Mr. Schilling, Stephanie Turnier, Rosa Oceijo, Juan

14   Miranda, Shaylan Thomas, Melinda Clark, Steven Johnson,

15   Marcelo Onelcy, Jesus Serna, Randy Denike, James

16   Wedick, Frank Abetu, Curtis Batiste, Giovanni Batiste,

17   Maxwell Batiste, Michael Batiste, Minerva Vasquez,

18   Debbie Falestra, Siltwan Batiste, Joel Bratton-Bey,

19   Peggy Culotta, Luisa Carty, Betty Davidson, Nicole

20   Deno, Michael Ducos, Una Edwards, John Glenn, Marion

21   Hanks, Arthur Harris, Greg Harrison, Aris Eugene, Ted

22   Lyons, Louis Bradley, Steve Higgs, Stephanie Jennings,

23   Theresa LeFleur, Maria Machado, Lisa McDermott, Juan

24   Miranda, Eleanor Parker, Yolanda Pieze, Mary Ramos,

25   Jeannie Rogers, Dale Salkeld, Cedric Sanders, Melvin
```

```
1   Septepinra, Michael Sharp, Charles Sheldon, Curtis

2   Silwa, Michelle Smith, Xavier Smith, Charles Stewart,

3   John Tronolone, Enoch Vilbrun, Arlene Webster.

4           Is there any member of the jury panel who

5   recognizes any of the names that I just read to you by

6   the fact that you have had any contact with any of

7   those persons whatsoever?

8           Is there any member of the jury panel who's

9   familiar with the area of Northwest 62nd Street and

10  Northwest 15th Avenue?

11          PROSPECTIVE JUROR NO. 23:  No. 23.

12          THE COURT:  Yes, sir.

13          THE WITNESS:  How is it that you're familiar

14  with the area?

15          PROSPECTIVE JUROR NO. 23:  Presently, I stay

16  on 50th Street, in that general area.

17          THE COURT:  So you live in that general area?

18          PROSPECTIVE JUROR NO. 23:  Yes, ma'am.

19          THE COURT:  How long have you lived there?

20          PROSPECTIVE JUROR NO. 23:  About six years.

21  Initially, I grew up in that area.  I went to Miami --

22  one of the high schools near there.

23          THE COURT:  You went to high school there and

24  you work in that area, also?

25          PROSPECTIVE JUROR NO. 23:  No, ma'am.
```

```
 1              THE COURT:  You went to high school in that

 2   area?

 3              PROSPECTIVE JUROR NO. 23:  At Miami Edison,

 4   which is not too far.

 5              THE COURT:  Okay.  Thank you.

 6              There was another hand.

 7              PROSPECTIVE JUROR NO. 30:  No. 30.

 8              I grew up in that area.

 9              THE COURT:  Are you still living there, sir?

10              PROSPECTIVE JUROR NO. 30:  No.

11              THE COURT:  When did you leave that area?

12              PROSPECTIVE JUROR NO. 30:  Oh, about -- I

13   still visit that area, but I left there about 30 years

14   ago.

15              THE COURT:  Okay.  Is there any member of the

16   jury panel who you yourself or a member of your family

17   or close friend has had either a positive or a negative

18   experience with law enforcement of any kind such that

19   it would make it difficult for you to listen to the

20   evidence in this case and be fair to both the

21   Government and the Defendants?

22              Your number, sir?

23              PROSPECTIVE JUROR NO. 30:  No. 30.

24              By being African-American, being treated

25   unfairly, but I would have a partial judgment in this
```

1    case, your Honor.

2           THE COURT:  So you feel that, because you're

3    an African-American, that African-Americans are treated

4    unfairly?  Is that what you said, sir?

5           PROSPECTIVE JUROR NO. 30:  I wouldn't say all,

6    but I would say some.

7           THE COURT:  Okay.

8           PROSPECTIVE JUROR NO. 30:  Me being as one.

9           THE COURT:  I'm sorry?

10          PROSPECTIVE JUROR NO. 30:  I said me being as

11   one.

12          THE COURT:  So you've been treated unfairly by

13   law enforcement?

14          PROSPECTIVE JUROR NO. 30:  Yes, I have.

15          THE COURT:  Would you be able to put aside

16   whatever feelings that you have that you were treated

17   unfairly by law enforcement and sit and listen to the

18   evidence in this case and be fair to both the

19   Government and the Defendants?

20          PROSPECTIVE JUROR NO. 30:  Yes, I could.  Yes,

21   I could.

22          THE COURT:  Now, you also said, "I would have

23   a partial judgment in this case."

24          PROSPECTIVE JUROR NO. 30:  Well, no, not

25   partial.  But I would, you know, attend to it to the

1    best of my ability.

2            THE COURT:  Okay.  Is that handheld working?

3    I'm really having a hard time hearing.

4            PROSPECTIVE JUROR NO. 30:  Can you hear me

5    now?

6            THE COURTROOM DEPUTY:  Just hold it really

7    closely.

8            THE COURT:  So if you could repeat what you

9    said, sir.  I'm sorry.

10           PROSPECTIVE JUROR NO. 30:  Yes.  I could judge

11   it -- I could just -- with the best of my ability, I

12   could judge fairly.

13           THE COURT:  Okay.  Anyone else for that

14   answer?

15           Yes.  Your number, sir?

16           PROSPECTIVE JUROR NO. 26:  No. 26.

17           I was falsely accused of a crime before.

18   So....

19           THE COURT:  What were you accused of?

20           PROSPECTIVE JUROR NO. 26:  False imprisonment.

21           THE COURT:  I'm sorry?

22           PROSPECTIVE JUROR NO. 26:  False imprisonment.

23           THE COURT:  And when was that?

24           PROSPECTIVE JUROR NO. 26:  May, 2005.

25           THE COURT:  Okay.  And what happened with that

```
 1    charge?

 2            PROSPECTIVE JUROR NO. 26:  I ended up doing

 3    some months, 364.

 4            THE COURT:  Okay.  And did you go to trial or

 5    did you plead guilty?

 6            PROSPECTIVE JUROR NO. 26:  I pleaded guilty.

 7            THE COURT:  Okay.  Do you think that you were

 8    treated fairly by the criminal justice system?

 9            PROSPECTIVE JUROR NO. 26:  No, ma'am.

10            THE COURT:  Do you think you were well

11    represented by your lawyer?

12            PROSPECTIVE JUROR NO. 26:  I mean, I guess.

13            THE COURT:  Okay.  How is it that you feel

14    that you were not treated fairly?

15            PROSPECTIVE JUROR NO. 26:  Because even when

16    the -- at the time, when the witness told them that the

17    situation wasn't true, I still ended up having to take

18    a plea.

19            THE COURT:  Okay.  So you feel that you were

20    forced to take a plea of guilty?

21            PROSPECTIVE JUROR NO. 26:  Yes, ma'am.

22            THE COURT:  The judge didn't go through

23    questions with you and ask you if you were entering

24    into a plea of guilty voluntarily?

25            PROSPECTIVE JUROR NO. 26:  No.  I mean, at the
```

1    time, I was scared.  So, you know....

2         THE COURT:  Okay.  Would you be able to put

3    aside -- strike that.

4         Did you receive a withhold of adjudication?

5         PROSPECTIVE JUROR NO. 26:  Yeah.  I think so.

6         THE COURT:  Do you have a record on it?

7         PROSPECTIVE JUROR NO. 26:  On what?  No.

8         THE COURT:  On the false imprisonment.

9         PROSPECTIVE JUROR NO. 26:  I didn't bring it

10   with me.

11        THE COURT:  I know that.  I'm not asking if

12   you have it with you.

13        Was it a felony or a misdemeanor?  A felony.

14   Right?

15        PROSPECTIVE JUROR NO. 26:  Yeah.

16        THE COURT:  Did you get a withhold of

17   adjudication?

18        PROSPECTIVE JUROR NO. 26:  Yes, ma'am.

19        THE COURT:  Would you be able to put aside

20   whatever feelings of dissatisfaction that you have with

21   the criminal justice system and sit and listen to the

22   evidence in this case and be fair to both the

23   Government and the Defendants?

24        PROSPECTIVE JUROR NO. 26:  Yes.

25        THE COURT:  So would you be able to sit and

1  listen to witnesses who testify in this case for the

2  Government and fairly and impartially judge their

3  credibility from the witness stand, including police

4  officers?

5          PROSPECTIVE JUROR NO. 26:  Yes, if I have to.

6          THE COURT:  I'm sorry?

7          PROSPECTIVE JUROR NO. 26:  I say, yes, ma'am,

8  if I have to.

9          THE COURT:  Okay.  Any other hands for that

10  question?

11          In this case, you may hear testimony that the

12  Government used cooperating individuals, CIs or

13  informants, to work in an undercover capacity who were

14  paid and/or received other benefits.

15          Is there any member of the jury panel who has

16  such strong feelings one way or the other about the use

17  of such cooperating individuals such that you would not

18  be able to sit and listen to this evidence and be fair

19  to both the Government and the Defendants?

20          PROSPECTIVE JUROR NO. 5:  Hi.  No. 5.

21          My ex-husband was convicted of drug

22  trafficking, and he was paid by the Government to turn

23  evidence against the other people.  And I saw so much

24  stuff that had happened in the trial that I just

25  couldn't -- that I know that what he did and what

1    others did is just -- I couldn't be fair.

2            PROSPECTIVE JUROR NO. 7:  No. 7.

3            My son-in-law -- he's a police officer, and he

4    works as an undercover.  And many times, he discusses

5    with us, you know, cases.  He talks -- you know, tells

6    us stories about what happened when they were doing the

7    undercover routines and all those kind of --

8            THE COURT:  Would you be able to put aside

9    whatever he may have told you and sit and listen to the

10   evidence in this case and be fair to both the

11   Government and the Defendants?

12           PROSPECTIVE JUROR NO. 7:  I will try.

13           THE COURT:  You will try or will you be able

14   to be fair?

15           PROSPECTIVE JUROR NO. 7:  I don't know.

16   Sometimes I feel like police officers -- they are

17   very -- they abuse -- because they have that title, you

18   know, they take advantage of their title and --

19   sometimes against innocent people, you know.  So I

20   don't think I would be able to give a fair decision.

21           THE COURT:  Okay.  The evidence in this case

22   also includes the recordings of conversations that were

23   recorded without the knowledge of some of the

24   participants through the lawful use of electric devices

25   commonly known as bugs or wiretaps.

1      Is there any member of the jury panel who has

2  such strong feelings one way or the other regarding the

3  use of bugs or wiretaps such that you would not be able

4  to sit and listen to this evidence and be fair to both

5  the Government and the Defendants?

6      In this case, you may hear evidence of the

7  recordings of conversations that were recorded without

8  the knowledge of all the participants through the use

9  of a body wire by secretly taping telephone

10  conversations or by secretly recorded videotape.

11      Is there any member of the jury panel who has

12  such strong feelings one way or the other that you

13  would not be able to sit and listen to this evidence

14  and be fair to both the Government and the Defendants?

15      In this case, you may hear evidence that was

16  obtained from photographic and physical surveillance as

17  well as evidence seized pursuant to lawful searches of

18  various places, including the homes of some of the

19  Defendants.

20      Is there any member of the jury panel who has

21  such strong feelings one way or the other that you

22  would not be able to sit and listen to this evidence

23  and be fair to both the Government and the Defendants?

24      Is there any member of the jury panel who

25  would not be able to listen to the testimony of a law

1    enforcement officer and be fair to both the prosecution

2    and the Defendants or would be more likely or less

3    likely to believe the testimony of a law enforcement

4    officer solely because of their position?

5            Is there anyone who would be either more

6    likely or less likely to believe the testimony of a law

7    enforcement officer solely because they are a law

8    enforcement officer?

9            Does everyone understand that any person

10   charged with a crime is -- and every person charged

11   with a crime is presumed innocent?

12           Do you all understand that the indictment in a

13   criminal case is the accusatory paper which states the

14   charge or charges to be determined at the trial?  It is

15   not evidence against a defendant or anyone else.

16           Do you all understand that the Government has

17   the burden of proving a defendant guilty beyond a

18   reasonable doubt?

19           Is there anyone who does not understand that?

20           Is there anyone who would hold the Government

21   to either a higher or a lower burden of proof?

22           Do you all understand that the case of each

23   Defendant and the evidence pertaining to each Defendant

24   should be considered separately and individually by the

25   jury?

```
 1              PROSPECTIVE JUROR NO. 17:  I'm No. 17.

 2         Your Honor, I'm sorry for interrupting you.

 3         THE COURT:  That's okay.

 4         PROSPECTIVE JUROR NO. 17:  But I guess she not

 5    understanding what you saying.  I don't know if there

 6    is another people that understanding very well what you

 7    been saying.

 8         THE COURT:  Okay.  I appreciate you telling

 9    me.

10         PROSPECTIVE JUROR NO. 17:  I don't know if

11    they're fluent or not in English.

12         THE COURT:  Are you understanding me, ma'am?

13         PROSPECTIVE JUROR NO. 17:  Me?  Yes.

14         THE COURT:  Okay.  Thank you.

15         I know.  It's No. 6.

16         You're not understanding me, ma'am?

17         PROSPECTIVE JUROR NO. 18:  It's 18.

18         THE COURT:  No. 18.  You're right.

19         So you understood that.

20         Okay.

21         PROSPECTIVE JUROR NO. 25:  No. 25.

22         I got a limitation to understand the English.

23         THE COURT:  Have you understood everything

24    that I've said, sir?

25         PROSPECTIVE JUROR NO. 25:  No.
```

1          THE COURT:  Okay.  If you are chosen as a

2    juror in this case, if the Government proves its case

3    against a Defendant beyond a reasonable doubt, would

4    you be able to return a verdict of guilty?

5          And, likewise, if the Government fails to

6    prove its case against a Defendant beyond a reasonable

7    doubt, would you be able to return a verdict of not

8    guilty?

9          Is there any member of the jury panel who

10   feels that, if the Government goes to the trouble of

11   bringing someone to trial, then that person is probably

12   guilty?

13         Is there any member of the jury panel who

14   feels that a defendant in a criminal case should

15   testify or produce some evidence to prove that he or

16   she is not guilty?

17         Is there any member of the jury panel who

18   feels that the law does too much to protect the rights

19   of the accused and not enough to protect the rights of

20   crime victims and their families such that it would

21   affect your ability to be a fair and impartial juror in

22   this case?

23         Is there any member of the jury panel who

24   feels that individuals are treated differently by the

25   criminal justice system based on their race, creed or

1    national origin?

2          PROSPECTIVE JUROR NO. 9:  Your Honor, No. 9.

3          THE COURT:  Yes.

4          PROSPECTIVE JUROR NO. 9:  My wife was a public

5    defender.  And I believe from, you know, knowing about

6    her job and the system and myself -- I did represent --

7    it was private, but it was a criminal matter -- I

8    believe there are certain people, certain ethnicities,

9    that are disadvantaged in our system.

10         THE COURT:  Would you be able to put aside

11   whatever feelings you have in regard to that and sit

12   and listen to the evidence and be fair to both the

13   Government and the Defendants?

14         PROSPECTIVE JUROR NO. 9:  I think -- yes.  I

15   will say, though, I think it's -- I would put a little

16   bit more of a steeper climb with respect to the

17   State -- or Government in this case to put forth their

18   case, yes, in an instance when someone on the other

19   side is of that ethnicity that I believe is

20   disadvantaged.

21         THE COURT:  So does that mean that you would

22   hold the Government to a higher burden than beyond a

23   reasonable doubt?

24         PROSPECTIVE JUROR NO. 9:  No.  The standard is

25   beyond a reasonable doubt.  I'd hold them to it.  But I

1    guess I'd have a little skepticism with some of their

2    case, some of their presentation, based on who's on the

3    other side.

4              THE COURT:  So could you be a fair and

5    impartial juror in this case?

6              PROSPECTIVE JUROR NO. 9:  I believe so.

7              THE COURT:  Believe so or know so?

8              PROSPECTIVE JUROR NO. 9:  Well, I have other

9    reasons I would respond to that question.  I don't know

10   if it's appropriate right now.

11             THE COURT:  Okay.  In regard to this issue,

12   could you be a fair and impartial juror?

13             PROSPECTIVE JUROR NO. 9:  Regarding that

14   issue, specifically what we're discussing?

15             THE COURT:  Yes.

16             PROSPECTIVE JUROR NO. 9:  Yes.  Yes.

17             THE COURT:  So what you said just a moment

18   ago, sir, is that you'd hold the Government to the

19   standard of beyond a reasonable doubt, "but I guess I'd

20   have a little skepticism with some of their case, some

21   of their presentation, based on who's on the other

22   side."

23             PROSPECTIVE JUROR NO. 9:  Yes, your Honor.

24             THE COURT:  So that means that you're -- does

25   that mean you're starting off -- because of the -- who

1   the Defendants are, that you're starting off not as a

2   neutral?

3          PROSPECTIVE JUROR NO. 9:  I guess you could

4   phrase it like that.  I just think, from the

5   prosecution end, I guess the slope is a little steeper

6   in that scenario, be it that I would review their

7   testimony or evidence, the presentation of their case,

8   with a greater skepticism.  But, ultimately, if the

9   standard is a reasonable doubt, I do recognize that.

10          THE COURT:  Is there any member of the jury

11  panel who you yourself, your spouse or family member

12  has ever been audited or had a dispute with any agency

13  or department of the United States Government?

14          Is there any member of the jury panel who

15  thinks that the Government has gone overboard in its

16  efforts to fight terrorism?  And that is "yes" or "no"

17  answer.

18          Is there any member of the jury panel who has

19  any experience or formal training in the area of

20  martial arts?

21          Is there any member of the jury panel who you

22  yourself or someone in your home owns a firearm?

23          If so, how many and what kind?

24          PROSPECTIVE JUROR NO. 15:  What was that

25  again, please?

```
 1              THE COURT:  Do you own a firearm?

 2              PROSPECTIVE JUROR NO. 15:  Yes.

 3              THE COURT SECURITY OFFICER:  You have to use

 4    the microphone, please, sir.

 5              PROSPECTIVE JUROR NO. 15:  Yeah.  I'm No. 15.

 6              THE COURT:  Yes.

 7              PROSPECTIVE JUROR NO. 15:  Yes.  I own a

 8    firearm.

 9              THE COURT:  How many and what kind?

10              PROSPECTIVE JUROR NO. 15:  About five.

11              THE COURT:  Do you know what kind?

12              PROSPECTIVE JUROR NO. 15:  Yeah.  A couple

13    semiautomatics and a couple shotguns.

14              THE COURT:  Could you pass the microphone

15    down.

16              PROSPECTIVE JUROR NO. 14:  No. 14.

17              A .45 Glock.

18              THE COURT:  Okay.

19              PROSPECTIVE JUROR NO. 13:  I'm No. 13.

20              And I have two weapons.  I have a rifle and a

21    shotgun.

22              THE COURT:  Okay.

23              PROSPECTIVE JUROR NO. 5:  No. 5.

24              My husband has, I think, one gun.  He has a

25    Glock .45.
```

```
 1              THE COURT:  Okay.

 2              PROSPECTIVE JUROR NO. 11:  No. 11.

 3              I collect guns.  I probably have 30 or 40, all

 4  kinds.

 5              THE COURT:  Okay.

 6              PROSPECTIVE JUROR NO. 3:  No. 3.

 7              I own a handgun.

 8              THE COURT:  I'm sorry?

 9              PROSPECTIVE JUROR NO. 3:  No. 3.

10              I own a handgun, a .9-millimeter Glock.

11              THE COURT:  Okay.

12              PROSPECTIVE JUROR NO. 2:  No. 2.

13              My husband has two hunting rifles and a small

14  pistol.

15              PROSPECTIVE JUROR NO. 16:  No. 16.

16              My husband has a gun.  I don't know what it

17  is.

18              THE COURT:  Anybody in the gallery?

19              PROSPECTIVE JUROR NO. 24:  No. 24.

20              Can you hear me?

21              THE COURT:  Yes.

22              PROSPECTIVE JUROR NO. 24:  Two shotguns and a

23  Derringer.

24              THE COURT:  Okay.

25              PROSPECTIVE JUROR NO. 27:  No. 27.
```

1          A shotgun and a Glock.

2          THE COURT:  Is there any member of the jury

3     panel who knows any other member of the jury panel?  Do

4     you know anybody on the jury that's sitting in the

5     courtroom with you?

6          In this case, you may hear testimony from

7     witnesses who are of a different religion from your

8     own.

9          Is there any member of the jury panel who has

10     strong feelings one way or the other such that you

11     would not be able to sit and listen to this evidence

12     and be fair to both the Government and the Defendants?

13          In this case, you may also hear evidence from

14     certain witnesses who are from the Middle East.

15          Is there any member of the jury panel who has

16     strong feelings one way or the other such that you

17     would not be able to sit and listen to this evidence

18     and be fair to both Government and the Defendants?

19          This case may receive media attention.  It's

20     very important that the case be decided solely on the

21     evidence presented in the courtroom and not based on

22     anything that may be said outside the courtroom.

23          Accordingly, you will be instructed, if you're

24     chosen as a juror in this case, that you must avoid

25     reading about the case in newspapers or listening to

1    any radio, television reports or viewing anything about

2    the case on the Internet.

3            Is there any member of the jury panel who

4    would not able follow my instructions regarding media

5    coverage?

6            PROSPECTIVE JUROR NO. 15:  No. 15.

7            Yeah.  My job.

8            THE COURT:  What type of work do you do, sir?

9            PROSPECTIVE JUROR NO. 15:  Printing.

10           THE COURT:  What do you print?

11           PROSPECTIVE JUROR NO. 15:  The newspaper.

12           THE COURT:  And in printing the newspaper --

13   for what newspaper do you work?

14           PROSPECTIVE JUROR NO. 15:  The *Miami Herald*.

15           THE COURT:  And for printing the newspaper, do

16   you --

17           PROSPECTIVE JUROR NO. 15:  Yes.  I read it.

18           THE COURT:  You read it.  Okay.  I thought

19   maybe you saw so many pages, it just sort of flew by.

20           So would you be able to follow my

21   instructions, then, not to read anything about the case

22   if it was reported in the *Herald*?

23           PROSPECTIVE JUROR NO. 15:  It'd be kind of

24   difficult.

25           THE COURT:  Okay.  If you are selected to sit

1    on this case, will you be able to render a verdict

2    solely on the evidence presented at trial and in the

3    context of the law as I will give it to you in my

4    instructions, disregarding any other ideas, notions or

5    beliefs about the law that you may have encountered in

6    reaching your verdict?  Will you all be able to do

7    that?

8             We're going to turn to the questionnaires that

9    you were given.

10            Everyone has a copy of the questionnaire.  So

11   you don't need to read the question to us.

12            We're going to start with Juror No. 1.

13            If you would, just go down the list, state the

14   number of the question.  It makes it easier for Lisa to

15   report it in the record.  And then give us your

16   answers.

17            PROSPECTIVE JUROR NO. 1:  Good morning.  I'm

18   No. 1.

19            I'm 48 years old.

20            It asks how old you are.  I'm 48.

21            Place of birth is Mississippi.

22            THE COURT:  Just say the number, ma'am.

23            PROSPECTIVE JUROR NO. 1:  No. 3, one was born

24   in Mississippi; one was born in Florida.

25            THE COURT:  Okay.

```
 1              PROSPECTIVE JUROR NO. 1:  No. 4, I'm -- I work

 2   for Miami-Dade County Public Schools.  I'm a school bus

 3   driver.

 4              THE COURT:  No. 5?

 5              PROSPECTIVE JUROR NO. 1:  Homestead.

 6              THE COURT:  How long have you lived there?

 7              PROSPECTIVE JUROR NO. 1:  46 years.

 8              THE COURT:  No. 6?

 9              PROSPECTIVE JUROR NO. 1:  No. 6, yes.

10              THE COURT:  Do you own or rent?

11              PROSPECTIVE JUROR NO. 1:  Own.

12              THE COURT:  And do you live with anyone?

13              PROSPECTIVE JUROR NO. 1:  My son.

14              THE COURT:  No. 7?

15              PROSPECTIVE JUROR NO. 1:  No.  No. 7, no.

16              THE COURT:  No. 8?

17              PROSPECTIVE JUROR NO. 1:  No. 8, single.

18              THE COURT:  No. 9?

19              PROSPECTIVE JUROR NO. 1:  No.  My son is 10.

20   He's not working.

21              THE COURT:  That answers No. 10.

22              No. 11?

23              PROSPECTIVE JUROR NO. 1:  I have other kids,

24   too, but they don't live with me.

25              THE COURT:  How many other children do you
```

```
 1   have?

 2           PROSPECTIVE JUROR NO. 1:  Two.

 3           THE COURT:  How old are they?

 4           PROSPECTIVE JUROR NO. 1:  34 and 27.

 5           THE COURT:  Are they employed?

 6           PROSPECTIVE JUROR NO. 1:  Yes.

 7           THE COURT:  What type of work do they do?

 8           PROSPECTIVE JUROR NO. 1:  One work for

 9   Miami-Dade County Public Schools.  She's a bus driver

10   as well.

11           And my second one work for insurance.  She's

12   an accountant.

13           THE COURT:  No. 11?

14           PROSPECTIVE JUROR NO. 1:  No.

15           THE COURT:  No. 12?

16           PROSPECTIVE JUROR NO. 1:  Yes.

17           THE COURT:  What other languages do you speak?

18           PROSPECTIVE JUROR NO. 1:  Oh, no.

19           THE COURT:  You only speak English?

20           PROSPECTIVE JUROR NO. 1:  Yes.

21           THE COURT:  No. 13?

22           PROSPECTIVE JUROR NO. 1:  No.

23           THE COURT:  No hobbies?

24           PROSPECTIVE JUROR NO. 1:  No.

25           THE COURT:  What do you like to do in your
```

```
 1   spare time?

 2          PROSPECTIVE JUROR NO. 1:  I work two jobs.  So

 3   I don't have no spare time.

 4          THE COURT:  No spare time.  Okay.

 5          No. 14?

 6          PROSPECTIVE JUROR NO. 1:  12th.

 7          THE COURT:  No. 15?

 8          PROSPECTIVE JUROR NO. 1:  No.

 9          THE COURT:  No. 16?

10          PROSPECTIVE JUROR NO. 1:  Television and radio

11   and the Internet.

12          THE COURT:  No. 17?

13          PROSPECTIVE JUROR NO. 1:  No.

14          THE COURT:  No. 18?

15          PROSPECTIVE JUROR NO. 1:  No.

16          THE COURT:  No. 19?

17          PROSPECTIVE JUROR NO. 1:  No.

18          THE COURT:  No. 20?

19          PROSPECTIVE JUROR NO. 1:  No.

20          THE COURT:  21?

21          PROSPECTIVE JUROR NO. 1:  No.

22          THE COURT:  22?

23          PROSPECTIVE JUROR NO. 1:  No.

24          THE COURT:  23?

25          PROSPECTIVE JUROR NO. 1:  No.
```

```
 1              THE COURT:  24?

 2              PROSPECTIVE JUROR NO. 1:  No.

 3              THE COURT:  25?

 4              PROSPECTIVE JUROR NO. 1:  No.

 5              THE COURT:  26?

 6              PROSPECTIVE JUROR NO. 1:  No.

 7              THE COURT:  27?

 8              PROSPECTIVE JUROR NO. 1:  Maybe, but I

 9   can't --

10              THE COURT:  Has somebody in your family or a

11   close friend ever been accused of a crime or ever been

12   under a criminal investigation?

13              PROSPECTIVE JUROR NO. 1:  Yes.

14              THE COURT:  Who would that be?

15              PROSPECTIVE JUROR NO. 1:  My brother, years,

16   years, years ago.  And I don't remember what year.

17              THE COURT:  And was he charged with a crime?

18              PROSPECTIVE JUROR NO. 1:  Yes.

19              THE COURT:  And what was he charged with?

20              PROSPECTIVE JUROR NO. 1:  I think it was

21   murder.

22              THE COURT:  And what happened with that

23   charge?

24              PROSPECTIVE JUROR NO. 1:  He didn't get

25   charged in the case.  But it was right when they passed
```

1    the law mandatory three years for a gun.  He used a gun

2    in the murder.  So they gave him the time for the gun.

3            He wasn't charged for the murder because it

4    was two or peoples involved and they don't know which

5    one really actually did it.

6            THE COURT:  So he got convicted of a gun

7    charge?

8            PROSPECTIVE JUROR NO. 1:  Right.

9            THE COURT:  Did you attend any of his

10   hearings?

11           PROSPECTIVE JUROR NO. 1:  No.

12           THE COURT:  Did you visit him while he was

13   incarcerated?

14           PROSPECTIVE JUROR NO. 1:  Yes.

15           THE COURT:  Do you think he was treated fairly

16   by the criminal justice system?

17           PROSPECTIVE JUROR NO. 1:  Yes.

18           THE COURT:  Is there a hesitation there?

19           PROSPECTIVE JUROR NO. 1:  I can't remember.

20   It was so long ago.  It was like in the '80s -- early

21   '80s.  So I really don't remember much about it.  But I

22   guess, yeah, he did.  Yeah.

23           THE COURT:  Do you think he was --

24           PROSPECTIVE JUROR NO. 1:  He was involved in a

25   crime.  So he had -- like -- I guess he had to be

```
1   punished.
2           THE COURT:  Do you think he was well
3   represented by his lawyer?
4           PROSPECTIVE JUROR NO. 1:  I wasn't that -- at
5   the court.  So I don't really know.
6           THE COURT:  Is there anything about your
7   brother's experience that would make it difficult for
8   you to sit and listen to the evidence in this case and
9   be fair to both the Government and the Defendants?
10          PROSPECTIVE JUROR NO. 1:  I can be fair.
11          THE COURT:  Okay.  No. 28?
12          PROSPECTIVE JUROR NO. 1:  No.
13          THE COURT:  29?
14          PROSPECTIVE JUROR NO. 1:  No.
15          THE COURT:  30?
16          PROSPECTIVE JUROR NO. 1:  No.
17          THE COURT:  31?
18          PROSPECTIVE JUROR NO. 1:  No.
19          THE COURT:  32?
20          PROSPECTIVE JUROR NO. 1:  No.
21          THE COURT:  33?
22          PROSPECTIVE JUROR NO. 1:  No.
23          THE COURT:  34?
24          PROSPECTIVE JUROR NO. 1:  No.
25          THE COURT:  35?
```

1            PROSPECTIVE JUROR NO. 1:  Yes.

2            THE COURT:  Thank you, ma'am.

3            Juror No. 2.

4            PROSPECTIVE JUROR NO. 2:  No. 2.

5            58 -- 57.

6            No. 2 is Pittsburgh, Pennsylvania.

7            3, Pittsburgh, Pennsylvania.

8            I'm an administrative assistant.

9            THE COURT:  That's No. 4.

10            PROSPECTIVE JUROR NO. 2:  Yes.

11            THE COURT:  In what kind of business are you

12   an administrative assistant?

13            PROSPECTIVE JUROR NO. 2:  Education.

14   University.

15            THE COURT:  No. 5?

16            PROSPECTIVE JUROR NO. 2:  Cutler Ridge,

17   30-plus years.

18            THE COURT:  No. 6?

19            PROSPECTIVE JUROR NO. 2:  We own.

20            I live with my family, my husband and my two

21   boys.

22            7, no.

23            8, married.  Husband is, like, construction

24   foreman.

25            10 is 19 and 15.

1          THE COURT:  Is the 19-year-old working?

2          PROSPECTIVE JUROR NO. 2:  Part-time.  He's a

3    full-time student.

4          THE COURT:  What does he do part-time?  What

5    type of work?

6          PROSPECTIVE JUROR NO. 2:  In a restaurant.

7          THE COURT:  Okay.

8          PROSPECTIVE JUROR NO. 2:  11, no.

9          12, English only.

10         13, reading.

11         14, high school diploma, 12th.

12         15, no.

13         16, all of them.  I'm constantly looking at

14    the news, always on the Internet.

15         17, we have a really close friend who's a

16    police officer.

17         THE COURT:  Where is that person a police

18    officer?

19         PROSPECTIVE JUROR NO. 2:  In Coral Gables.

20         THE COURT:  And do you know what their

21    assignment is?

22         PROSPECTIVE JUROR NO. 2:  Yes.

23         THE COURT:  What do they do?  What type of

24    work are they working on?

25         PROSPECTIVE JUROR NO. 2:  He's a police

1    officer.

2         THE COURT:  Do you know what he does as a

3    police officer?

4         PROSPECTIVE JUROR NO. 2:  No.  I don't know

5    all the details.

6         THE COURT:  18?

7         PROSPECTIVE JUROR NO. 2:  No.

8         19, no.

9         20, no.

10        21, no.

11        22, no.

12        23, yes.  Our house was broken into twice.

13        THE COURT:  Were those instances reported?

14        PROSPECTIVE JUROR NO. 2:  Yes.

15        THE COURT:  Anyone arrested?

16        PROSPECTIVE JUROR NO. 2:  In one.

17        THE COURT:  What happened with that case?

18        PROSPECTIVE JUROR NO. 2:  He went to jail.

19        THE COURT:  Are you generally satisfied or

20   dissatisfied with the way you were treated?

21        PROSPECTIVE JUROR NO. 2:  Satisfied.

22        THE COURT:  Okay.  24?

23        PROSPECTIVE JUROR NO. 2:  No.

24        25, no.

25        26, no.

1        27, no.

2        28, yes.

3        29, no.

4        30, I've been on a jury, civil.

5        THE COURT:  Was it state or federal?  Do you

6   remember?

7        PROSPECTIVE JUROR NO. 2:  I believe it was

8   state.

9        THE COURT:  Did the jury reach a verdict?

10       PROSPECTIVE JUROR NO. 2:  Yes.

11       THE COURT:  Were you the foreperson?

12       PROSPECTIVE JUROR NO. 2:  No.

13       THE COURT:  31?

14       PROSPECTIVE JUROR NO. 2:  No.

15       32, no.

16       33, no.

17       34, no.

18       35, yes.

19       THE COURT:  Thank you, ma'am.

20       Juror No. 3.

21       PROSPECTIVE JUROR NO. 3:  No. 3.

22       No. 1, 30 years old.

23       No. 2, Managua, Nicaragua.

24       No. 3, Managua, Nicaragua.

25       No. 4, airport operations supervisor.

```
1              THE COURT:  Are you working for a private
2    cooperation or for TSA?
3              PROSPECTIVE JUROR NO. 3:  No.  Private.
4              Kendall.
5              THE COURT:  That's No. 5.
6              PROSPECTIVE JUROR NO. 3:  No. 6, live with my
7    parents.
8              THE COURT:  How long have you lived in
9    Kendall?
10             PROSPECTIVE JUROR NO. 3:  17 years.
11             THE COURT:  And you're living in your parents'
12   home?
13             PROSPECTIVE JUROR NO. 3:  Yes, ma'am.
14             THE COURT:  Do they own the home?
15             PROSPECTIVE JUROR NO. 3:  Yeah.
16             No. 7, yes.
17             THE COURT:  Where is that?
18             PROSPECTIVE JUROR NO. 3:  I lived in Mexico
19   when I was 6 months old until I turned 13.
20             No. 8, single.
21             No. 9, my mom is a secretary.  My father is an
22   auto mechanic.
23             THE COURT:  What kind of business is your mom
24   a secretary for?
25             PROSPECTIVE JUROR NO. 3:  A steel business.
```

```
1              No. 10, no.

2              THE COURT:  11?

3              PROSPECTIVE JUROR NO. 3:  No.

4              THE COURT:  12?

5              PROSPECTIVE JUROR NO. 3:  Yes.  Spanish.

6              THE COURT:  13?

7              PROSPECTIVE JUROR NO. 3:  Water sports.

8    Anything that has to do with water, I love it.

9              THE COURT:  14?

10             PROSPECTIVE JUROR NO. 3:  I finished high

11   school, and I also have a certificate on marine

12   mechanics technology.

13             THE COURT:  15?

14             PROSPECTIVE JUROR NO. 3:  No.

15             THE COURT:  16?

16             PROSPECTIVE JUROR NO. 3:  I browse through

17   newspapers, I turn on the TV, and I'm on the Internet a

18   lot.

19             THE COURT:  Okay.  17?

20             PROSPECTIVE JUROR NO. 3:  No.

21             18, no.

22             19, no.

23             20, no.

24             21, no.

25             22, yes.
```

1          THE COURT:  Who would that be?

2          PROSPECTIVE JUROR NO. 3:  Myself.

3          THE COURT:  What did you apply for?

4          PROSPECTIVE JUROR NO. 3:  Miami-Dade Police.

5          THE COURT:  Miami-Dade?

6          PROSPECTIVE JUROR NO. 3:  Police.

7          THE COURT:  And what happened with that

8    application?

9          PROSPECTIVE JUROR NO. 3:  I haven't -- I

10   applied over two years ago and haven't heard anything

11   yet.

12         THE COURT:  You haven't heard anything yet?

13         PROSPECTIVE JUROR NO. 3:  No.

14         THE COURT:  23?

15         PROSPECTIVE JUROR NO. 3:  No.

16         24, no.

17         25, no.

18         26, no.

19         27, no.

20         28, no.

21         29, no.

22         30, no.

23         31, no.

24         32, no.

25         33, no.

```
 1              34, no.

 2              35, yes.

 3              THE COURT:  Thank you, sir.

 4              Juror No. 4.

 5              Yes, ma'am.

 6              PROSPECTIVE JUROR NO. 10:  Your Honor, I know

 7    it's not an appropriate time, but I have no control --

 8              THE COURT:  That's okay.  You need to use the

 9    rest room?

10              PROSPECTIVE JUROR NO. 10:  Yes.

11              THE COURT:  Go ahead.

12              PROSPECTIVE JUROR NO. 10:  Thank you.

13              THE COURT:  No problem.

14              (Thereupon, Potential Juror No. 10 retired

15    from the courtroom and the following proceedings were

16    had:)

17              THE COURT:  Go ahead, ma'am.

18              PROSPECTIVE JUROR NO. 4:  No. 1, 57.

19              Georgia, No. 2.

20              No. 3, Georgia.

21              Unemployed, No. 4.

22              THE COURT:  The last time that you worked,

23    what did you do?

24              PROSPECTIVE JUROR NO. 4:  Food service.  Last

25    year worked was 2007.
```

```
1              THE COURT:  No. 5?

2              PROSPECTIVE JUROR NO. 4:  No. 5, Carol City,

3    13 years.

4              Own, No. 6.

5              THE COURT:  Do you live with anyone?

6              PROSPECTIVE JUROR NO. 4:  Yes.

7              THE COURT:  Who is that?

8              PROSPECTIVE JUROR NO. 4:  My -- two of my kids

9    and my niece.

10             THE COURT:  Okay.  No. 7?

11             PROSPECTIVE JUROR NO. 4:  No. 7, no.

12             No. 8, divorced.

13             No. 9, yes.  My son.  He's in construction.

14   My daughter.  She's works for Cerebral Palsy.  She's a

15   teacher.  My other daughter who doesn't live with me --

16   she's a teacher.  My niece is a cafeteria manager for

17   Dade County Public Schools.

18             THE COURT:  Okay.

19             PROSPECTIVE JUROR NO. 4:  No. 10, my niece is

20   38.  My son is 39.  My daughter is 28.  My other

21   daughter is 35.

22             THE COURT:  Okay.

23             PROSPECTIVE JUROR NO. 4:  No. 11, no.

24             No. 12, yes.

25             THE COURT:  What language --
```

```
 1              PROSPECTIVE JUROR NO. 4:  No.  I'm sorry.  No.
 2    12 is no.  I only speak English.  Write it.
 3              No. 13, I enjoy sewing and baking.
 4              14, I completed high school, have a
 5    certificate in certified nursing assistant.
 6              No. 15, no.
 7              16, all of the above and conversation.
 8              17, no -- oh, I'm sorry.
 9              On No. 17, I do have a close friend who is a
10    retired law enforcement officer --
11              THE COURT:  And --
12              PROSPECTIVE JUROR NO. 4:  -- with Metro-Dade
13    County -- was with Metro-Dade County.
14              THE COURT:  Okay.
15              PROSPECTIVE JUROR NO. 4:  No. 18, I don't -- I
16    don't know if I should answer A to No. 18, because I
17    have a brother and a sister-in-law that works for the
18    Federal Government.  My brother works for Immigration
19    and my sister-in-law works for ICE.
20              THE COURT:  Okay.  And what does your brother
21    do for Immigration?
22              PROSPECTIVE JUROR NO. 4:  He's a supervisor, I
23    think.  He -- how do you -- swear in immigration --
24    people that have passed immigration laws or whatever.
25    He works in -- he works in Virginia.  So I don't have
```

```
 1   that much contact with him.

 2          THE COURT:  Okay.  Your sister-in-law is also

 3   in Virginia?

 4          PROSPECTIVE JUROR NO. 4:  My sister-in-law --

 5   they live in Virginia.  But my sister-in-law works out

 6   of DC.  She works in the main ICE office.  My brother

 7   works in the one that's in Virginia.

 8          THE COURT:  And do you know what your

 9   sister-in-law does for ICE?

10          PROSPECTIVE JUROR NO. 4:  No.  I couldn't tell

11   you that.

12          THE COURT:  Would the fact that your brother

13   and sister-in-law are employed by the Federal

14   Government affect your ability to be a fair and

15   impartial juror in this case?

16          PROSPECTIVE JUROR NO. 4:  No.  Not really,

17   because I don't have that much contact with them, you

18   know.  I've only been up just once, and we don't talk

19   that much on the phone or, you know, by letters or

20   anything like that.  No.

21          THE COURT:  Okay.  No. 19?

22          PROSPECTIVE JUROR NO. 4:  No.

23          No. 20, no.

24          No. 21, no.

25          22, no.
```

```
 1            23, yes.
 2            THE COURT:  What crime were you a victim of?
 3            PROSPECTIVE JUROR NO. 4:  I was mugged once.
 4  I had my house broken into three times.
 5            And I was very satisfied with those, the
 6  outcome.  One arrest was done in the -- one of the home
 7  invasions.
 8            THE COURT:  Each time, it was report?
 9            PROSPECTIVE JUROR NO. 4:  Each crime was
10  reported.  The first one, the mugging, no one was ever
11  arrested for that.
12            THE COURT:  Okay.  No. 24?
13            PROSPECTIVE JUROR NO. 4:  No.
14            THE COURT:  25?
15            PROSPECTIVE JUROR NO. 4:  No.
16            THE COURT:  26?
17            PROSPECTIVE JUROR NO. 4:  No.
18            THE COURT:  27?
19            PROSPECTIVE JUROR NO. 4:  Yes.
20            THE COURT:  Who would that be?
21            PROSPECTIVE JUROR NO. 4:  My son.
22            THE COURT:  And what -- was he accused of a
23  crime?
24            PROSPECTIVE JUROR NO. 4:  Yes.  Drug
25  possession and sale of narcotics.  He did five years
```

1    for it.

2            THE COURT:  And was that a state case or a

3    federal case?

4            PROSPECTIVE JUROR NO. 4:  Federal.

5            THE COURT:  When was that?

6            PROSPECTIVE JUROR NO. 4:  Oh, I really

7    couldn't tell you.  It was in the latter '90-something.

8    He's out now.  He's been on parole for four years.  So

9    he got out in -- I think it was 2002 or '3.

10           THE COURT:  Do you think he was treated fairly

11   by the criminal justice system?

12           PROSPECTIVE JUROR NO. 4:  To be honest with

13   you, I can't say, because I did not attend any of the

14   trials.

15           THE COURT:  Okay.

16           PROSPECTIVE JUROR NO. 4:  My sister and my

17   niece, who lives with me -- they attended it.  The only

18   thing I did was made him turn himself in to the Feds

19   here because I knew that he was selling the drugs.  So

20   I made him, you know, turn himself in.

21           What became of it, you know, I guess they were

22   satisfied because they never really talked about it or

23   said anything against -- you know, whether he was

24   treated unfairly or not.

25           THE COURT:  Do you have an opinion as to

1    whether he was well represented by his lawyer?

2             PROSPECTIVE JUROR NO. 4:  I still can't say

3    because, like I say, he didn't talk about it, nor did

4    they.  You know, he took whatever that was -- he don't

5    even talk about it now.  I don't ask and he doesn't

6    tell.

7             THE COURT:  Did you visit him while he was

8    incarcerated?

9             PROSPECTIVE JUROR NO. 4:  Yes, I did.

10            THE COURT:  Is there anything about your son's

11   experience that would make it difficult to sit and

12   listen to the evidence in this case and be fair to both

13   the Government and the Defendants?

14            PROSPECTIVE JUROR NO. 4:  Well, me, I've

15   always been an honest person, that if you do something

16   wrong, you must suffer the consequences, whether you

17   are my son or anybody's son.

18            I saw the wrongness that he did.  And, like I

19   said, I wasn't around him.  He wasn't living with me.

20   So I can't say, you know, whether he did it or not.

21            He admitted to doing it.  My sister and them

22   admitted to doing it because he was staying with them.

23   He was easily persuaded to turn himself in.  So I'm

24   assuming that he knew what he did was wrong.

25            So I can sit -- you know, I can sit and I can

```
 1   listen and I can make a determination as to whether I
 2   feel deep inside what you did was wrong, how you went
 3   about doing it, whether it was right or wrong, you
 4   know.  Yes.  I think I can.
 5          THE COURT:  Can you be a fair and impartial
 6   juror?
 7          PROSPECTIVE JUROR NO. 4:  Yes, I can.
 8          THE COURT:  Okay.  No. 28?
 9          PROSPECTIVE JUROR NO. 4:  Yes.
10          THE COURT:  No. 29?
11          PROSPECTIVE JUROR NO. 4:  No.
12          THE COURT:  No. 30.
13          PROSPECTIVE JUROR NO. 4:  No.
14          THE COURT:  31?
15          PROSPECTIVE JUROR NO. 4:  No.
16          THE COURT:  32?
17          PROSPECTIVE JUROR NO. 4:  Yes.
18          THE COURT:  What would that be?
19          PROSPECTIVE JUROR NO. 4:  I have very limited
20   eyesight in my right eye.  I had glaucoma surgery about
21   three years ago.
22          And my vision, at times -- when the eye is
23   overstressed, it gets very, very blurry and, you know,
24   I have it look very closely at objects that are very
25   close to me.  I can't just -- you know, like you now
```

1    are getting to be very blurry, you know.

2              THE COURT:  Okay.

3              PROSPECTIVE JUROR NO. 4:  But it's my right

4    eye.  That's about it.

5              THE COURT:  Okay.  I can handle being blurry.

6    That's okay.

7              PROSPECTIVE JUROR NO. 4:  No. 33 --

8              THE COURT:  Let me ask you something, ma'am,

9    about that.

10             Do you think that your eye situation would

11   affect your ability to sit and observe things in court?

12             PROSPECTIVE JUROR NO. 4:  A long period of

13   time, yes, because I don't -- I didn't have any

14   medication.  No medication was given to me after I had

15   the surgery.

16             So when my right eye begins to get very, very

17   tired, you know, if I'm staring a long time or I'm

18   focusing on one particular thing, it begins to get very

19   blurry.

20             THE COURT:  And how long does that usually

21   take?

22             PROSPECTIVE JUROR NO. 4:  Oh, I'll say about

23   five, six hours I can sit, because I'm home most of the

24   time doing during the day and, you know, I'm constantly

25   trying to do something, keep myself active.  And when

1   it gets tired, then I sort of like, you know, lie down,

2   close my eyes and give it a rest.

3           THE COURT:  So you've been here since about --

4   well, you were downstairs for a while.  Right?  What

5   time did you come in this morning?

6           PROSPECTIVE JUROR NO. 4:  I got here about

7   quarter of 8:00.

8           THE COURT:  And then you came here around

9   10:00?

10          PROSPECTIVE JUROR NO. 4:  Yes.

11          THE COURT:  And it's now 11:20.

12          And when did your eyes start giving you a

13  problem?

14          PROSPECTIVE JUROR NO. 4:  Well, a few minutes

15  ago, really.  It's now -- you know, I can feel the

16  strain on it, you know.  It's not -- it's a pain, but

17  it's not a pain, you know?  It's that stress that I

18  feel, pulling.

19          If I just shut it for, you know, a few seconds

20  or something, relief will come, but it's just temporary

21  relief, you know.

22          THE COURT:  And when you close your eyes for a

23  few minutes and you give yourself some relief, does the

24  blurriness go away?

25          PROSPECTIVE JUROR NO. 4:  No.  The blurriness

```
 1    does not go away.

 2              THE COURT:  Do you always have the blurriness?

 3              PROSPECTIVE JUROR NO. 4:  I always have the

 4    blurriness, even after the surgery.

 5              THE COURT:  So this is all day, every day,

 6    that you have the blurriness?

 7              PROSPECTIVE JUROR NO. 4:  That's all day,

 8    every day.  Yes.

 9              THE COURT:  Do you drive?

10              PROSPECTIVE JUROR NO. 4:  Rarely.  I can

11    drive, but I rarely drive.

12              THE COURT:  Can you see everybody in the

13    courtroom clearly?

14              PROSPECTIVE JUROR NO. 4:  Well, no, not

15    clearly.  I can see everybody, but not clearly.  Like

16    the guys over here -- that are sitting over there, I

17    can see them, but not clearly.

18              If you ask me to identify them, you know, if

19    they walk out of this room right now and walk down the

20    hall, I probably wouldn't be able to know who they are.

21              THE COURT:  Okay.  How about Mr. Gennaro,

22    sitting over here?  Can you -- no.  No.  Sit.  I want

23    you to sit.

24              Can you see him clearly?

25              PROSPECTIVE JUROR NO. 4:  Yeah.  I can see
```

 1  him.

 2          THE COURT:  You can see him clearly?

 3          PROSPECTIVE JUROR NO. 4:  Yeah.  I can see

 4  him.

 5          THE COURT:  No problem?

 6          PROSPECTIVE JUROR NO. 4:  No.  No problem.

 7  He's closer to me.  But at a distance it begins.

 8          THE COURT:  But across the way, it starts to

 9  get blurry for you?

10          PROSPECTIVE JUROR NO. 4:  Yeah.  It's blurry.

11          THE COURT:  Okay.  We're on 33.

12          PROSPECTIVE JUROR NO. 4:  No problem, no.

13          34, no.

14          35, yes.  But I don't use it.

15          THE COURT:  Okay.

16          PROSPECTIVE JUROR NO. 4:  I have a computer,

17  but I don't use it.

18          THE COURT:  Do you ever turn it on?

19          PROSPECTIVE JUROR NO. 4:  Well, you know, my

20  daughter does.  My niece is in school and she does a

21  lot of studying from it.  But other than that, no.

22          THE COURT:  Thank you, ma'am.

23          No. 5?

24          PROSPECTIVE JUROR NO. 5:  5, 47.

25          New York City, No. 2.

```
 1              No. 3, New York City.

 2              I am an independent food trader.

 3              Sunny Isles Beach in Aventura.

 4              THE COURT:  That's No. 5?

 5              PROSPECTIVE JUROR NO. 5:  I'm sorry.  No. 5.

 6              THE COURT:  How long have you lived in

 7   Miami-Dade County?

 8              PROSPECTIVE JUROR NO. 5:  About 15 years.

 9              THE COURT:  No. 6?

10              PROSPECTIVE JUROR NO. 5:  I'm renting.

11              No. 7, no.

12              THE COURT:  You're living with your dad.

13              Anyone else?

14              PROSPECTIVE JUROR NO. 5:  And my husband.

15              THE COURT:  No. 8?

16              PROSPECTIVE JUROR NO. 5:  I am married.

17              No. 9 is sales.

18              No. 10, my son is 22 years old.  He's a

19   student, and he lives in New York.

20              THE COURT:  What kind of things does your

21   husband sell?

22              PROSPECTIVE JUROR NO. 5:  He sells unlocked

23   international cell phones.

24              THE COURT:  No. 11?

25              PROSPECTIVE JUROR NO. 5:  No.
```

1          No. 12, no.

2          No. 13, walking on the beach.

3          No. 14, two years of college.

4          No. 15, no.

5          No. 16, all.

6          No. 17, yes.  We -- I have a lot of friends

7    that are in the -- that work for the Aventura Police

8    Department as undercover police officers.

9          THE COURT:  Okay.

10          PROSPECTIVE JUROR NO. 5:  No. 18, no.

11          No. 19, no.

12          No. 20, yes.  My husband now is an ex-Israeli

13    police undercover street crimes unit.

14          No. 21, yes, as a food trader and food broker,

15    I supply large quantities of food to the prisons and

16    Government facilities.

17          No. 22, no.  My husband never was employed

18    here.

19          And no -- No. 23, no.

20          And satisfied or dissatisfied, with No. 23, is

21    a hard question, because my ex-husband was involved and

22    was convicted of drug trafficking.

23          It was a very long and lengthy trial, and he

24    himself had a very high-priced Miami attorney.  And

25    could I be -- how can I say this?  But it was very --

1              THE COURT:  Well, No. 23 is about being a

2    victim of a crime.  You answered that "no."  Right?

3              PROSPECTIVE JUROR NO. 5:  Right.

4              THE COURT:  So let's wait until we get to --

5              PROSPECTIVE JUROR NO. 5:  Well, 23-B.

6              THE COURT:  That's being satisfied or

7    dissatisfied with -- if you were a victim of a crime.

8              PROSPECTIVE JUROR NO. 5:  Right.

9              THE COURT:  No. 4:  Ever witness a crime?

10             PROSPECTIVE JUROR NO. 5:  No.

11             THE COURT:  25?

12             PROSPECTIVE JUROR NO. 5:  Yes.

13             THE COURT:  26?

14             PROSPECTIVE JUROR NO. 5:  No.

15             THE COURT:  27?

16             PROSPECTIVE JUROR NO. 5:  Yes.  My ex-husband.

17             THE COURT:  Why don't you come up, ma'am.

18   Come up.

19             (Whereupon, proceedings were had at side-bar

20   outside the presence of the jury which have been sealed

21   per instructions of the Court.)

22             (Whereupon, the following proceedings were had

23   in open court:)

24             THE COURT:  We're going to take a break as

25   soon as we finish with No. 5.

```
 1              So 28?

 2              PROSPECTIVE JUROR NO. 5:  Yes.

 3              THE COURT:  29?

 4              PROSPECTIVE JUROR NO. 5:  No.

 5              THE COURT:  30?

 6              PROSPECTIVE JUROR NO. 5:  Yes.

 7              THE COURT:  Criminal or civil?

 8              PROSPECTIVE JUROR NO. 5:  Civil.

 9              THE COURT:  Did the jury reach a verdict?

10              PROSPECTIVE JUROR NO. 5:  No.  The Defendant

11    pleaded, and everybody was let go.

12              THE COURT:  Okay.  No. 31?

13              PROSPECTIVE JUROR NO. 5:  No.

14              THE COURT:  32?

15              PROSPECTIVE JUROR NO. 5:  No.

16              33, no.

17              34, no.

18              35, yes.  I'm on it.

19              THE COURT:  Okay.  We're going to take a

20    break.  I'm just waiting for that juror to come back.

21              PROSPECTIVE JUROR NO. 6:  Okay.

22              THE COURT:  Thank you.

23              We're going to take a recess.  You're going to

24    hear me give an instruction now that you'll hear me

25    give, if you're chosen as a juror, each and every time
```

1    that you leave the courtroom, whether it be for a short

2    recess like this one, over a lunch break, over a

3    weekend.  It's given to the jurors every time you leave

4    the courtroom because it's a very important

5    instruction.

6         Do not discuss this case either amongst

7    yourselves or with anyone else.  Have no contact

8    whatsoever with anyone associated with the trial.  Do

9    not read, listen or see anything touching on this

10   matter in any way.

11        If anyone should try to talk to you about this

12   case, you should immediately instruct them to stop and

13   report it to my staff.

14        If you should happen to see any of the persons

15   associated with the trial, including the attorneys, and

16   they do not even seem to acknowledge you, they are

17   following my instructions to have no contact whatsoever

18   with any member of the jury panel.  And you should have

19   no conversation with them whatsoever to avoid even the

20   appearance of impropriety.

21        We're going to take a ten-minute recess.  I am

22   Judge Lenard.  This is the 12th floor.  If you leave

23   the floor and you get lost, just look for anybody who

24   has a blue blazer with a badge on it, on the pocket,

25   and tell them you're before Judge Lenard.  They will

 1   direct you back here.

 2           Please be back in the lobby in ten minutes.

 3           Please rise for the jury.

 4           (Whereupon, Prospective Jury Panel No. II

 5   exited the courtroom at 11:31 a.m. and the following

 6   proceedings were had:)

 7           THE COURT:  We're in recess for ten.

 8           (Thereupon a recess was taken, after which the

 9   following proceedings were had:)

10           THE COURT:  We're back on United States of

11   America versus Narseal Batiste, et al., Case

12   No. 06-20373.

13           Counsel, state your appearances, please, for

14   the record.

15           MR. GREGORIE:  Richard Gregorie and Jacqueline

16   Arango on behalf of the United States, your Honor.

17           MS. JHONES:  Ana Jhones on behalf of Narseal

18   Batiste.

19           MR. LEVIN:  Albert Levin on behalf of Patrick

20   Abraham.

21           MR. CASUSO:  Lou Casuso on behalf of Burson

22   Augustin, who is present.

23           MR. CLARK:  Nathan Clark for Rotschild

24   Augustine, who's present.

25           MR. HOULIHAN:  Richard Houlihan with Naudimar

1   Herrera.

2        MR. VEREEN:  Roderick Vereen on behalf of

3   Stanley Phanor, who's present.

4        THE COURT:  All Defendants are present.

5        Let's bring the jurors back in.

6        (Whereupon, Prospective Jury Panel No. II

7   entered the courtroom at 11:59 a.m. and the following

8   proceedings were had:)

9        THE COURT:  You may be seated.

10       We're going to start with Juror No. 6.

11       PROSPECTIVE JUROR NO. 6:  No. 6.

12       Question No. 1, 60.

13       No. 2, Colombia.

14       No. 3, both Colombia.

15       I work for -- No. 4 --

16       THE COURT:  Would you hold the microphone

17   closer, ma'am.

18       PROSPECTIVE JUROR NO. 6:  I work for

19   Miami-Dade County, CAA, Head Start.

20       THE COURT:  And what do you for them?

21       PROSPECTIVE JUROR NO. 6:  I am a preschool

22   teacher for Head Start Program.

23       THE COURT:  Okay.

24       PROSPECTIVE JUROR NO. 6:  No. 5, live for

25   14 years in Coral Gables area.

1          No. 6, own.  Live with my family, my husband,

2    my son and my mom.

3          No. 7, I don't know if -- since I came here

4    20 years ago, I live all the time here in the United

5    States.

6          THE COURT:  Okay.

7          PROSPECTIVE JUROR NO. 6:  No. 8, I'm married.

8          No. 9, my husband and my son.  My husband is

9    retired.  And my son is a high school student.

10         THE COURT:  What did -- what type of work did

11   your husband do before he retired?

12         PROSPECTIVE JUROR NO. 6:  He work as a

13   supervisor in laundry department at the hotels.

14         THE COURT:  And you also live with your mom?

15         PROSPECTIVE JUROR NO. 6:  91 years old.

16         THE COURT:  She's not working?

17         PROSPECTIVE JUROR NO. 6:  No.  She's not

18   working.  No.

19         My son is 17 years old.  He's a high school

20   student.

21         No. 11, no.

22         No. 12, yes.  Spanish.  Better than English,

23   of course.

24         No. 13, yes.  Crafts and cook.

25         14, preschool teacher.

```
1              15, no.

2              16, all.

3              17, no.

4              18, no.

5              19, no.

6              20, no.

7              21, no.  I don't know, because my -- the

8    program I working is federal-funded program.

9              THE COURT:  Right.

10             PROSPECTIVE JUROR NO. 6:  Okay.

11             No. 22, no.

12             No. 23, no.

13             24, no.

14             25, no.

15             26, no.

16             27, no.

17             28, no.

18             29, no.

19             30, no.

20             31, no.

21             32, no.

22             33, no.

23             34, no.

24             And 35, yes.

25             THE COURT:  The fact that you're working in a
```

1    Head Start Program that's federally funded:  Would that

2    affect your ability to be a fair and impartial juror in

3    this case?

4              PROSPECTIVE JUROR NO. 6:  The problem is,

5    we -- I has preschool classroom with 20 children.  We

6    haves two teachers in the classroom and we don't has

7    nobody to substitute.  This is the only problem.

8              THE COURT:  That's not what I'm asking you,

9    ma'am.

10             The fact that you receive money from the

11   Federal Government:  Would that affect your ability to

12   be a fair and impartial juror?

13             PROSPECTIVE JUROR NO. 6:  No.  No.

14             THE COURT:  Okay.  Thank you.

15             PROSPECTIVE JUROR NO. 7:  No. 7.

16             59 years old.

17             Peru.

18             My parents born in China.  The other one in

19   Peru.

20             I am computer technician.

21             I live in West Kendall for 28 years.

22             I own a house.

23             I came to this country in 1973.

24             THE COURT:  Are you living with someone?

25             PROSPECTIVE JUROR NO. 7:  With my husband and

```
 1    my son.
 2             THE COURT:  Okay.
 3             PROSPECTIVE JUROR NO. 7:  I am married.
 4             My husband is planning and zoning supervisor.
 5             My son have his own business in advertising.
 6             I have two more daughters.  One is 34.  She
 7    work for the Government, also.  And my other
 8    daughter -- she work for a private company.  She's
 9    24 years old.
10             THE COURT:  Your daughter who work for the
11    Government:  What type --
12             PROSPECTIVE JUROR NO. 7:  It's in Georgia in
13    County Hall.  She's like a --
14             THE COURT:  So she's working for the County
15    Government?
16             PROSPECTIVE JUROR NO. 7:  Yeah.  County
17    Government.
18             THE COURT:  Okay.
19             PROSPECTIVE JUROR NO. 7:  And, yes, I speak
20    Spanish.
21             13 is craft.
22             14, I graduate in college -- I have a college
23    degree.
24             15, no.
25             16, television.
```

1        17, like I say before, my son-in-law -- he's a

2    police officer.  And his father and his mother, also.

3    They are police officers.

4            THE COURT:  Okay.

5            PROSPECTIVE JUROR NO. 7:  And No. 18, no.

6        19, no.

7        20, I don't know if the media or

8    communication.  Do you -- well, we work on computers.

9    I don't know if it included in communications.

10           THE COURT:  Okay.

11           PROSPECTIVE JUROR NO. 7:  21, no.

12       22, yes.  My son-in-law.  He's working already

13   for the County.

14       23, no.

15       24, no.

16       25, no.

17       26, no.

18       27, my son -- he was charged for a felony in

19   2000.

20           THE COURT:  What he was charged with?

21           PROSPECTIVE JUROR NO. 7:  It was a -- there

22   was a robbery and he was a friend of those people and

23   they accusing that he was part of the same group.

24           THE COURT:  Was it in federal court or state

25   court?

1        PROSPECTIVE JUROR NO. 7:  It was state.

2        THE COURT:  And what happened with that

3   charge?

4        PROSPECTIVE JUROR NO. 7:  He got -- he was --

5   he pleaded guilty, because they -- they -- they were

6   going send him to boot camp.  He pleaded guilty.

7        THE COURT:  Okay.  Do you think he was treated

8   fairly by the criminal justice system?

9        PROSPECTIVE JUROR NO. 7:  Like I said before,

10  I believe he didn't do it.  But because he was part of

11  the same group of friends, he was accused of that

12  problem.  And that's what they say.

13       You know, sometimes people -- police accuse

14  innocent people, you know.  And I don't think I can be

15  fair in this -- you know, in make a decision.

16       THE COURT:  Okay.

17       PROSPECTIVE JUROR NO. 7:  28, yes.  I belong

18  to a church.

19       29, no.

20       30, yes.  I work -- I was part of a jury here

21  in federal court in 1990.

22       THE COURT:  Was it a criminal case or a civil

23  case?

24       PROSPECTIVE JUROR NO. 7:  It was a drug case.

25       THE COURT:  Okay.

```
 1              PROSPECTIVE JUROR NO. 7:  31, no.

 2              THE COURT:  One moment.

 3              So you were on a criminal case in 1990?

 4              PROSPECTIVE JUROR NO. 7:  19 --

 5              THE COURT:  1990?

 6              PROSPECTIVE JUROR NO. 7:  Yeah.  1990.

 7              THE COURT:  Was it before or after your son's

 8    problem?

 9              PROSPECTIVE JUROR NO. 7:  It was before.

10              THE COURT:  It was before?

11              PROSPECTIVE JUROR NO. 7:  Yeah.

12              THE COURT:  Did the jury reach a verdict?

13              PROSPECTIVE JUROR NO. 7:  Yes.

14              THE COURT:  Were you the foreperson?

15              PROSPECTIVE JUROR NO. 7:  No.

16              THE COURT:  Okay.

17              PROSPECTIVE JUROR NO. 7:  32, no.

18              33, no.

19              34, no.

20              35, yes.  I use a computer.

21              THE COURT:  Thank you, ma'am.

22              We're going to come down to Juror No. 8.

23              PROSPECTIVE JUROR NO. 8:  I'm No. 8.

24              No. 1, 47.

25              No. 2, Miami-Dade County.
```

```
1              No. 3, Georgia.

2              No. 4, data entry.

3              No. 5, Opa-Locka.

4              THE COURT:  What type of business is it that

5     you do data entry for?

6              PROSPECTIVE JUROR NO. 8:  Miami-Dade County

7     Public Schools.

8              THE COURT:  You've been in Opa-Locka how long?

9              PROSPECTIVE JUROR NO. 8:  Well, I'm from Carol

10    City, which is now Miami Gardens, and now I'm in

11    Opa-Locka.

12             THE COURT:  So how long have you been there?

13             PROSPECTIVE JUROR NO. 8:  Almost 20 years.

14             THE COURT:  Okay.  No. 6?

15             PROSPECTIVE JUROR NO. 8:  I'm with my sister

16    and a brother.

17             THE COURT:  Do you own or rent?

18             PROSPECTIVE JUROR NO. 8:  She owns.

19             THE COURT:  No. 7?

20             PROSPECTIVE JUROR NO. 8:  No.

21             THE COURT:  8?

22             PROSPECTIVE JUROR NO. 8:  Single.

23             THE COURT:  9?

24             PROSPECTIVE JUROR NO. 8:  Okay.  My brother's

25    a TSA and --
```

1            THE COURT:  Is he working at the airport?

2            PROSPECTIVE JUROR NO. 8:  Yes.

3            THE COURT:  What does he do for TSA?

4            PROSPECTIVE JUROR NO. 8:  Inspect baggages

5    that come in, and I guess the people, too.

6            THE COURT:  The fact that your brother works

7    for the Federal Government -- for an agency of the

8    Federal Government:  Would that affect your ability to

9    be a fair and impartial in this case?

10           PROSPECTIVE JUROR NO. 8:  No, it would not.

11           THE COURT:  Your sister?

12           PROSPECTIVE JUROR NO. 8:  She work for the

13   Health Department.  I'm not sure what she does.

14           10, no kids.

15           11, none for that.

16           THE COURT:  No children outside the United

17   States.  Right?

18           PROSPECTIVE JUROR NO. 8:  I have no kids at

19   all.

20           THE COURT:  Okay.  No. 12?

21           PROSPECTIVE JUROR NO. 8:  No.

22           THE COURT:  13?

23           PROSPECTIVE JUROR NO. 8:  Photography and

24   fishing.

25           THE COURT:  Okay.

1        PROSPECTIVE JUROR NO. 8:  14 is 12.  Some

2   college, but I didn't finish.

3        15, no.

4        16, everything there.

5        17, no.

6        18, none.  None of anything there.

7        19, no.

8        20, no.

9        21, no.

10        22, no.

11        23, no.

12        24, no.

13        25, no.

14        26, no.

15        27, no.

16        28, yes.

17        No, I would not.

18        THE COURT:  29 is --

19        PROSPECTIVE JUROR NO. 8:  29.  29, no.

20        30, no.

21        31, no.

22        32, no.

23        33, no.

24        34, no.

25        35, yes.  I use the computer.

```
 1              THE COURT:  Do you access the Internet?

 2              PROSPECTIVE JUROR NO. 8:  Yes, I do.

 3              THE COURT:  Okay.  Thank you, ma'am.

 4              No. 9.

 5              PROSPECTIVE JUROR NO. 9:  Your Honor, Juror

 6    No. 9.

 7              1, 30.

 8              2, Milwaukee, Wisconsin.

 9              3, Europe and New York.

10              4, attorney.

11              5, Pinecrest.  Prior to that, Coconut Grove.

12              THE COURT:  How long?

13              PROSPECTIVE JUROR NO. 9:  Pinecrest, eight and

14    a half months.

15              THE COURT:  How long?  I'm sorry.

16              PROSPECTIVE JUROR NO. 9:  Eight and a half

17    months.

18              THE COURT:  And how long in Coconut Grove?

19              PROSPECTIVE JUROR NO. 9:  Since '03.

20              THE COURT:  Okay.  6?

21              PROSPECTIVE JUROR NO. 9:  Own.

22              7, no.

23              THE COURT:  Who do you live with?

24              PROSPECTIVE JUROR NO. 9:  Wife and two

25    children.
```

1          THE COURT:  Okay.

2          PROSPECTIVE JUROR NO. 9:  8 is married.

3          9, attorney.

4          Presently, an instructor at a law school.

5          10, two years, nine months, and nine months.

6     They're not employed.

7          11, no.

8          12, I read and -- and limited understanding

9     and speaking of Hebrew.

10          13, exercise, spending time with family.

11          14, graduate school of -- specifically, a JD.

12          15, yes, attended law school.

13          16, newspaper, television, radio, Internet.

14     And I'd add magazines.

15          17, yes.  Close friends from law school are

16     state attorneys or public defenders in Dade and

17     Broward.

18          18, yes.  Wife was a public defender for about

19     four years in Dade County.

20          19, no.

21          20, yes.  Law school education for my wife and

22     myself, and both practicing as attorneys.

23          21, no.

24          22, no.

25          23, no.

```
 1          24, no.

 2          25, no.

 3          26, no.

 4          27, no.

 5          28, yes.

 6          29, no.

 7          30, no.

 8          31, no.

 9          32, no.

10          33, no.

11          34, no.

12          35, yes.  Use and access.

13          THE COURT:  Thank you, sir.

14          Juror No. 10.

15          PROSPECTIVE JUROR NO. 10:  No. 10.

16          No. 1, 30.

17          2, Miami.

18          3, Cuban.

19          4, education.

20          5, Miami, Kendall area, entire life.

21          6, they own.  I live with family.

22          7, no.

23          8, married.

24          9, one is a shoe salesman, and the other one

25     is a mortgage broker.
```

```
 1              THE COURT:  Who are you living with?
 2              PROSPECTIVE JUROR NO. 10:  I live with my
 3    parents and my husband --
 4              THE COURT:  So --
 5              PROSPECTIVE JUROR NO. 10:  -- and my daughter.
 6              THE COURT:  And are both your parents
 7    employed?
 8              PROSPECTIVE JUROR NO. 10:  No.  My mom's not.
 9              THE COURT:  Okay.
10              PROSPECTIVE JUROR NO. 10:  10, 2 years old.
11              11, no.
12              12, I speak Spanish, and I understand it.
13              13, I don't think I have much spare time.
14              14, I have a master's degree in reading.
15              15, no.
16              16, Internet.
17              17, I have a couple of close friends that are
18    police officers.  One is in a gang unit.  One -- I
19    don't know the specific departments.
20              THE COURT:  Do you know what police department
21    they're with?
22              PROSPECTIVE JUROR NO. 10:  Excuse me?
23              THE COURT:  Do you know what police department
24    they're with?
25              PROSPECTIVE JUROR NO. 10:  Miami-Dade County.
```

```
 1              THE COURT:  Okay.
 2              PROSPECTIVE JUROR NO. 10:  One of them.  The
 3  other one is Coral Gables.
 4              THE COURT:  Okay.
 5              PROSPECTIVE JUROR NO. 10:  18, no.
 6          19, no.
 7          20, no.
 8          21, no.
 9          22, no.
10          23, no.
11          24, no.
12          25, no.
13          26, no.
14          27, a close family member got into some
15  trouble not too long ago, but I don't know the details
16  of the case because I didn't want to know about it.
17              THE COURT:  Was it in your family?
18              PROSPECTIVE JUROR NO. 10:  It's a close friend
19  of the family, like we all --
20              THE COURT:  A close friend?
21              PROSPECTIVE JUROR NO. 10:  Yeah.
22              THE COURT:  Is there anything about that
23  person's experience that would make it difficult for
24  you to sit and listen to the evidence in this case and
25  be fair to both the Government and the Defendants?
```

```
 1              PROSPECTIVE JUROR NO. 10:  No.

 2         28, no.

 3         29, no.

 4         30, no.

 5         31, no.

 6         32, prepregnancy, no.

 7         During pregnancy, I think I have a -- I can be

 8  quite emotional sometimes.

 9         33 --

10         THE COURT:  Would that affect your ability to

11  participate as a juror?

12         PROSPECTIVE JUROR NO. 10:  I hope -- I don't

13  think so.  No.

14         THE COURT:  Okay.

15         PROSPECTIVE JUROR NO. 10:  33, no.

16         34, no.

17         35, yes.  And I access the Internet.

18         THE COURT:  Thank you, ma'am.

19         Juror No. 11.

20         PROSPECTIVE JUROR NO. 11:  No. 11.

21         44 years old.

22         I was born in Colombia, South America.

23         My mother is Israeli.  My father's Colombian.

24         I own and manage commercial real estate.

25         I live in Golden Beach for two years.  Prior
```

```
 1    to that, I lived in Sunny Isles Beach.

 2              I own my house.  And I have a wife and two

 3    kids.

 4              I lived outside the country, Colombia, Chile,

 5    Argentina, different places.

 6              I'm married.

 7              My wife stays at home with the kids.

 8              I have a 14-year-old and a 9-year-old.

 9              I have no childrens outside the United States.

10              Spanish and Italian.

11              I scuba dive.  I collect guns.

12              I have a bachelor's degree.

13              No. 15, no.

14              Radio and TV, mainly.

15              THE COURT:  That's 16?

16              PROSPECTIVE JUROR NO. 11:  Yes.

17              17, my brother-in-law works for Hialeah Police

18    Department, CSI.

19              No. 18 is no.

20              19, no.

21              20, no.

22              21, no.

23              22, no.

24              23, no.

25              24, no.
```

```
 1              25, no.

 2              26, no.

 3              27, no.

 4              28, no.

 5              29, no.

 6              30, no.

 7              31, no.

 8              32, no.

 9              33, no.

10              34, no.

11              And 35, yes.  And do I access the Internet.

12              THE COURT:  Thank you, sir.

13              Juror No. 12.

14              PROSPECTIVE JUROR NO. 12:  No. 12.

15              No. 1, 40.

16              2, New York.

17              3, Puerto Rico.

18              4, operating room nurse.

19              5, Homestead, 14 years.

20              6, own and live with family.

21              7, no.

22              8, married.

23              9, he works for IT in high school and owns his

24      own IT business.

25              10, 3 and 5.
```

1          11, no.

2          12, I understand Spanish, don't speak it very

3    well.

4          13, taking care of my kids and my mother.

5          14, associate's in nursing.

6          15, no.

7          16, all mentioned.

8          17, ex-husband, law enforcement; and

9    brother-in-law, law enforcement.

10         THE COURT:  Your ex-husband, for what law

11   enforcement agency was he working?

12         PROSPECTIVE JUROR NO. 12:  Key Biscayne

13   Police.

14         THE COURT:  And your brother-in-law?

15         PROSPECTIVE JUROR NO. 12:  Orange County in

16   Orlando.

17         THE COURT:  Okay.

18         PROSPECTIVE JUROR NO. 12:  18, yes, for

19   medical facility for me.

20         19, no.

21         20, I wasn't sure what to answer.  Law

22   enforce -- the law, my husband works for IT for a law

23   firm and for a psychiatry office.

24         THE COURT:  So your husband is doing IT for a

25   law firm?

1              PROSPECTIVE JUROR NO. 12:  Law firm and for a

2     psychiatry office.

3              THE COURT:  Okay.  And what kind of law do

4     they practice in the law firm?

5              PROSPECTIVE JUROR NO. 12:  I want to say real

6     estate, but I'm not sure.

7              THE COURT:  Okay.

8              PROSPECTIVE JUROR NO. 12:  21, no.

9              22, sister-in-law-to-be is -- has applied and

10    is pending.

11             THE COURT:  She's applied where?

12             PROSPECTIVE JUROR NO. 12:  I think Miami-Dade

13    Dade.

14             THE COURT:  Okay.

15             PROSPECTIVE JUROR NO. 12:  23, no.

16             24, no.

17             25, no.

18             26, no.

19             27, yes.  Brother-in-law, for drunk driving;

20    and nephew, for eluding and evading police.

21             THE COURT:  And when was your brother-in-law

22    charged with the DUI?

23             PROSPECTIVE JUROR NO. 12:  I want to say last

24    year.

25             THE COURT:  What happened with that charge?

1           PROSPECTIVE JUROR NO. 12:  It was expunged.

2           THE COURT:  Okay.  Did you attend any of his

3   hearings?

4           PROSPECTIVE JUROR NO. 12:  No.

5           THE COURT:  Do you think he was treated fairly

6   by the criminal justice system?

7           PROSPECTIVE JUROR NO. 12:  I couldn't say.  I

8   wasn't --

9           THE COURT:  Any opinion as to whether he was

10   well represented by his lawyer?

11           PROSPECTIVE JUROR NO. 12:  I couldn't say.

12           THE COURT:  Anything about your

13   brother-in-law's experience that would make it

14   difficult for you to sit and listen to the evidence in

15   this case and be fair to both the Government and the

16   Defendants?

17           PROSPECTIVE JUROR NO. 12:  No.

18           THE COURT:  And your nephew?

19           PROSPECTIVE JUROR NO. 12:  Yes, ma'am.

20           THE COURT:  He was --

21           PROSPECTIVE JUROR NO. 12:  Arrested for

22   evading.

23           THE COURT:  What happened with that charge?

24           PROSPECTIVE JUROR NO. 12:  He's in jail.

25           THE COURT:  Okay.  Did you attend any of his

```
 1    hearings?

 2            PROSPECTIVE JUROR NO. 12:  No.

 3            THE COURT:  Do you think he was treated fairly

 4    by the criminal justice system?

 5            PROSPECTIVE JUROR NO. 12:  I couldn't say.

 6            THE COURT:  Any opinion about whether he was

 7    well represented by his lawyer?

 8            PROSPECTIVE JUROR NO. 12:  I couldn't say

 9    either.

10            THE COURT:  Is there anything about your

11    nephew's experience that would make it difficult for

12    you to sit and listen to the evidence in this case and

13    be fair to both the Government and the Defendants?

14            PROSPECTIVE JUROR NO. 12:  I don't think so.

15    No.

16            THE COURT:  Think so or know so?

17            PROSPECTIVE JUROR NO. 12:  I don't think so.

18    No.  No.

19            THE COURT:  You think it might affect you?

20            PROSPECTIVE JUROR NO. 12:  I -- no.

21            THE COURT:  28?

22            PROSPECTIVE JUROR NO. 12:  Yes.

23            29, no.

24            30, no.

25            31, no.
```

```
 1              32, I have a sciatic nerve pain problem.

 2              THE COURT:  Okay.

 3              PROSPECTIVE JUROR NO. 12:  My right leg.

 4              THE COURT:  Do you have to take medication?

 5              PROSPECTIVE JUROR NO. 12:  No.  Just standing.

 6    Standing helps.

 7              THE COURT:  So if you stand up, it's okay?

 8              PROSPECTIVE JUROR NO. 12:  Yes.

 9              THE COURT:  33, no.

10              34, no.

11              And 35, yes.

12              THE COURT:  Thank you, ma'am.

13              Juror No. 13.

14              PROSPECTIVE JUROR NO. 13:  No. 13.

15              Okay.  No. 1, I am 37 years old.

16              Place of business, I am from here.  I am

17    from -- from Miami-Dade.

18              My parents were born in Oklahoma and -- and --

19    I can't do this -- and New York City.

20              I am a parts advisor for a Benz dealership,

21    Mercedes-Benz.

22              I live in the Kendall area, and I've been

23    there for about ten years.  And I own.  I own my own

24    place.

25              I live on my own.
```

```
 1              I have lived outside of the United States for
 2    six months.  I was -- I was --
 3              THE COURT:  Take your time.
 4              PROSPECTIVE JUROR NO. 13:  I was deployed to
 5    Sicily and Saudi Arabia.
 6              THE COURT:  You were in the Armed Forces?
 7              PROSPECTIVE JUROR NO. 13:  Yes.  I was in the
 8    Navy.
 9              My marital status, I am single.
10              I live on my own.
11              I have no children.
12              I have no children outside the United States.
13              I speak English.
14              My hobbies are scuba diving.
15              My last grade, I have an MBA.
16              I have not attended law school.
17              Major sources are all of them:  Newspaper,
18    television, radio, Internet.
19              My sister is a lawyer, but she -- I think she
20    handles insurance.
21              THE COURT:  Okay.
22              PROSPECTIVE JUROR NO. 13:  I don't think she's
23    ever worked for a prosecutor or Public Defender's
24    Office.
25              Do I have -- no.  No. 19, no.
```

1              No. 20, no.

2              No. 21, no.

3              No. 22, no.

4              Yes.  No. 23, yes.  With my house.  My house

5     was broken into.

6              THE COURT:  Was it reported?

7              PROSPECTIVE JUROR NO. 23:  Yes, it was.

8              THE COURT:  Anyone arrested?

9              PROSPECTIVE JUROR NO. 23:  As far as I know,

10    no.

11             THE COURT:  Are you generally satisfied or

12    dissatisfied with the way you were treated?

13             PROSPECTIVE JUROR NO. 13:  Yes.  I'd say I was

14    satisfied with the way I was treated.

15             THE COURT:  Okay.  24?

16             PROSPECTIVE JUROR NO. 13:  No. 24, no.

17             No. 25, no.

18             No. 26, no.

19             27, no.

20             28, yes.

21             29, no.

22             30, no.

23             31, no.

24             32, I am -- my speech, but also I am a

25    diabetic.

1          THE COURT:  Do you think that would affect --

2     either one of those would affect your ability to serve

3     as a juror?

4          PROSPECTIVE JUROR NO. 13:  The only thing

5     right now is I have to eat pretty soon because it is

6     dropping on me.

7          THE COURT:  Okay.

8          PROSPECTIVE JUROR NO. 13:  Because I am on the

9     pump.  So I can....

10          THE COURT:  Okay.  Do you have to eat right

11     now or....

12          PROSPECTIVE JUROR NO. 13:  Very soon.

13          THE COURT:  Okay.

14          PROSPECTIVE JUROR NO. 13:  Let me see.

15          No. 33, no problem understanding English.

16          34, I am diabetic, taking insulin.

17          And 35, yes.  I use the Internet and a

18     computer.

19          THE COURT:  Okay.  So we're going to break for

20     lunch because I want to make sure you get to eat, sir.

21          Do not discuss this case either amongst

22     yourselves or with anyone else.  Have no contact

23     whatsoever with anyone associated with the trial.  Do

24     not read, listen or see anything touching on this

25     matter in any way.

1        If anyone should try to talk to you about this

2  case, you should immediately instruct them to stop and

3  report it to my staff.

4        We're going to break for one hour for lunch.

5  You're going to come back to the 12th floor here in one

6  hour.

7        Enjoy your lunch.

8        (Whereupon, Prospective Jury Panel No. II

9  exited the courtroom at 12:30 p.m. and the following

10  proceedings were had:)

11        THE COURT:  We're in recess for one hour.

12        (Thereupon, a luncheon recess was taken, after

13  which the following proceedings were had:)

14        THE COURT:  We're back on United States of

15  America versus Narseal Batiste, et al., Case

16  No. 06-20373.

17        Counsel, state your appearances, please, for

18  the record.

19        MR. GREGORIE:  Good afternoon, your Honor.

20        Richard Gregorie and Jacqueline Arango on

21  behalf of the United States.

22        MS. JHONES:  Good afternoon, your Honor.

23        Ana Jhones on behalf of Narseal Batiste.

24        MR. LEVIN:  Albert Levin on behalf of Patrick

25  Abraham.

```
 1              MR. CASUSO:  Your Honor, good afternoon.

 2         Lou Casuso for Burson Augustin.

 3              MR. CLARK:  Good afternoon, your Honor.

 4         Nathan Clark for Rotschild Augustine, present.

 5              MR. HOULIHAN:  Richard Houlihan with Naudimar

 6    Herrera.

 7              MR. VEREEN:  Roderick Vereen on behalf of

 8    Stanley Phanor.

 9              THE COURT:  All the jurors are present.  The

10    jurors are now here.  So let's begin.

11              (Whereupon, Prospective Jury Panel No. II

12    entered the courtroom at 1:39 p.m. and the following

13    proceedings were had:)

14              THE COURT:  You may be seated.

15              We're going to continue with the

16    questionnaires.

17              We're starting with Juror No. 14.

18              PROSPECTIVE JUROR NO. 14:  I'm No. 14.

19         I'm 47 years old.

20         Born here in Miami, Florida, No. 2.

21         No. 3, parents were born in Georgia.

22         No. 4, I'm a teacher -- a math teacher.

23         No. 5, I live in Homestead for the last

24    16 years.

25              No. 6, I own.
```

```
 1              No. 7, no.

 2              No. 8, I'm divorced.

 3              No. 9, no one else but my 12-year-old

 4     daughter.

 5              That's No. 10.

 6              No. 11, I have no children outside the United

 7     States.

 8              No. 12, the answer is no.

 9              No. 13, I like the gym and I like to read.

10              No. 14, I have a master's in mathematics.

11              No. 15 is no.

12              No. 16, all of them.

13              No. 17 is no.

14              No. 18, no.

15              No. 19, no.

16              No. 20, no.

17              No. 21, no.

18              No. 22, yes.  I used to work for US Customs.

19              THE COURT:  When was that?

20              PROSPECTIVE JUROR NO. 14:  Somewhere between,

21     like, '95 and '97.

22              THE COURT:  When was your position with

23     Customs?

24              PROSPECTIVE JUROR NO. 14:  I was an officer.

25              THE COURT:  And what was your assignment?
```

1          PROSPECTIVE JUROR NO. 14:  I processed all

2    overseas flights into the airport.

3          THE COURT:  Okay.

4          PROSPECTIVE JUROR NO. 14:  No. 23, I got

5    mugged.  I reported it.  But because I got mugged from

6    behind, there was no -- I couldn't recognize.  So

7    nothing happened.

8          THE COURT:  Were you generally satisfied or

9    dissatisfied with the way you were treated?

10          PROSPECTIVE JUROR NO. 14:  I was fine.  I was

11    satisfied.

12          No. 24, no.

13          25, no.

14          26 is no.

15          27 is no.

16          28, yes.

17          29, no.

18          No. 30, yes.  And it was state court.  And we

19    did come up with a verdict.  And I don't remember what

20    it was about.

21          THE COURT:  Okay.  Were you the foreperson?

22          PROSPECTIVE JUROR NO. 14:  No.

23          No. 31, the answer is no.

24          32 is no.

25          33 is no.

```
 1          34 is no.

 2          35 is yes.

 3          THE COURT:  And what grade math do you teach?

 4          PROSPECTIVE JUROR NO. 14:  I teach eighth

 5    grade.

 6          THE COURT:  Okay.  Thank you, ma'am.

 7          PROSPECTIVE JUROR NO. 15:  15.

 8          50.

 9          New Jersey.

10          New York, for 3.

11          Printer, No. 4.

12          Hialeah, 5.  Been there 20 years.

13          Own.

14          THE COURT:  6 is you own your home?

15          PROSPECTIVE JUROR NO. 15:  Yeah.

16          7, no.

17          8, married.

18          9, secretary.

19          THE COURT:  And in what kind of business is

20    she a secretary?

21          PROSPECTIVE JUROR NO. 15:  She's in

22    accounting.

23          THE COURT:  Okay.

24          PROSPECTIVE JUROR NO. 15:  10, no children.

25          11, no.
```

```
 1          12, no.

 2          Sporting place, for 13.

 3          14, what was -- 12th.

 4          15, no.

 5          16, all of them.

 6          17, no.

 7          18, no.

 8          19, no.

 9          20, no.

10          21, no.

11          22, no.

12          23, yes.  House has been robbed twice.

13          THE COURT:  Was it reported?

14          PROSPECTIVE JUROR NO. 15:  Yes.

15          THE COURT:  Anyone arrested?

16          PROSPECTIVE JUROR NO. 15:  First one, yeah.

17          THE COURT:  What happened in that case?

18          PROSPECTIVE JUROR NO. 15:  They plea-bargained

19   it or something and he got some time or something.

20          THE COURT:  Are you generally satisfied or

21   dissatisfied with the way you were treated?

22          PROSPECTIVE JUROR NO. 15:  I'm all right with

23   it.

24          24, no.

25          25, no.
```

```
 1              26, no.

 2              27, no.

 3              28, no.

 4              29, no.

 5              30, yes.  I think it was criminal court.

 6              THE COURT:  State or federal?  Do you know?

 7              PROSPECTIVE JUROR NO. 15:  I don't remember.

 8              THE COURT:  Did the jury reach a verdict?

 9              PROSPECTIVE JUROR NO. 15:  Yes.

10              THE COURT:  Were you the foreperson?

11              PROSPECTIVE JUROR NO. 15:  No.

12              31, no.

13              I have a little bit of hearing loss on my

14     right side, 32.

15              33, no.

16              34, no.

17              35, yes.

18              THE COURT:  Thank you, sir.

19              Juror No. 16.

20              PROSPECTIVE JUROR NO. 16:  No. 16.

21              No. 1, 54.

22              No. 2, Puerto Rico.

23              No. 3, Puerto Rico.

24              No. 4, administrative assistant for Miami-Dade

25     County Public Works.
```

1           5, Homestead, 16 years.

2           6, own, family.

3           7, no.

4           8, married.

5           9, spouse, bus body technician for Miami-Dade

6    Transit.  And my son works for property appraisers.

7    He's an inspector.

8           10, 30 and 27.

9           11, no.

10          THE COURT:  Are they both employed?

11          PROSPECTIVE JUROR NO. 16:  Yes.

12          THE COURT:  What is the second one doing?

13          PROSPECTIVE JUROR NO. 16:  My husband works

14    for Miami-Dade Transit, and my son -- oh, my two

15    children?

16          THE COURT:  Yes.

17          PROSPECTIVE JUROR NO. 16:  My daughter lives

18    in Orlando.  She works at a doctor's office.

19          THE COURT:  Okay.

20          PROSPECTIVE JUROR NO. 16:  11, no.

21          12, speak, write, understand Spanish.

22          13, sightseeing, exercising, walk.

23          14, high school, plus two years of college.

24          15, no.

25          16, all.

```
1              17, no.

2              18, no.

3              19, no.

4              20, no.

5              21, no.

6              22, no.

7              23, no.

8              24, no.

9              25, no.

10             26, no.

11             27, no.

12             28, yes.

13             29, no.

14             30, no.

15             31, no.

16             32, no.

17             33, no.

18             34, no.

19             35, access and use.

20             THE COURT:  Thank you, ma'am.

21             We're going to come over to Juror No. 17.

22             PROSPECTIVE JUROR NO. 17:  I'm No. 17.

23             I'm 43.

24             No. 2, Managua Nicaragua.

25             No. 3, Grenada, Nicaragua.
```

```
 1              4, I'm a bookkeeper, accounting department.

 2              5, Miami, less than five years.

 3              No. 6, rent, and I live with my daughter.

 4              No. 7, no.

 5              No. 8, divorced.

 6              No. 9, she works as an administrative

 7    assistant for a bail bond office.

 8              No. 10, she's 22 years.

 9              No. 11, no.

10              No. 12, Spanish -- I'm sorry.  Yes.  Spanish.

11              No. 13, reading, swimming and -- well....

12              No. 14, high school graduated and Miami-Dade

13    bookkeeping certificate and computer certificate.

14              No. 15, no.

15              No. 16, TV.

16              No. 17, no.

17              No. 18, no.

18              No. 19, no.

19              No. 20, I have a security officer license.

20              No. 21, no.

21              No. 22, no.

22              No. 23, well, I was involved in a domestic

23    violence.  Yeah.  I was the victim.  That person was

24    arrested.  And I was satisfied.

25              No. 24, yes.  I was a witness of -- when a car
```

```
 1    accident happened a long time ago.  And that person was
 2    arrested, also.  I was satisfied.
 3            No. 25, no.
 4            No. 26, no.
 5            No. 27, yes.  Two sisters and one brother.
 6            THE COURT:  What crime were they accused of?
 7            PROSPECTIVE JUROR NO. 17:  One of my sisters
 8    was an assault and battery, but she was not convicted.
 9    I was satisfied.
10            The other one was accused for identity theft,
11    credit card fraud.  This case was involving her and her
12    mother-in-law.  But I was satisfied because she was not
13    convicted.
14            Then my brother -- he was also arrested for a
15    drug situation, and he was never convicted.  I was
16    satisfied, also.
17            No. 28 --
18            THE COURT:  Is there anything about those
19    contacts with the criminal justice system for your two
20    sisters and brother that would make it difficult for
21    you to sit and listen to the evidence in this case and
22    be fair to both the Government and the Defendants?
23            PROSPECTIVE JUROR NO. 17:  No.  Not at all,
24    no.
25            No. 28, yes.
```

```
 1          No. 29, no.

 2          No. 30, no.

 3          No. 31, no.

 4          32, no.

 5          33, no.

 6          34, no.

 7          And 35, yes.  At home.

 8          THE COURT:  Thank you, ma'am.

 9          Juror No. 18.

10          PROSPECTIVE JUROR NO. 18:  63.

11          Cuba.

12          No. 2, Cuba.

13          No. 3, Cuba.

14          4, cashier.

15          5, 10 years, Hialeah.

16          6, own, with my family.

17          7, no.

18          8, married.

19          9, customer service.

20          10, 40.  And international insurer.

21          11, no.

22          12, Spanish.

23          13, no.

24          14, chemistry, in Cuba.

25          15, no.
```

1           16, television and Internet.

2           17, no.

3           18, no.

4           19, no.

5           20, no.

6           21, no.

7           22, no.

8           23, no.

9           24, no.

10          25, no.

11          26, no.

12          27, no.

13          28, no.

14          29, no.

15          30, no.

16          31, no.

17          32, no.

18          33, yes, with the understanding.  I can read.

19   Listen no good.  But is -- the problem is with the

20   listening and talking.

21          THE COURT:  Okay.

22          PROSPECTIVE JUROR NO. 18:  34, no.

23          35, yes.

24          THE COURT:  Thank you, ma'am.

25          Juror No. 19.

1              PROSPECTIVE JUROR NO. 19:  I'm Juror No. 19.

2         No. 1, 52 years old.

3         No. 3, Waycross, Georgia.

4         No. 3, Georgia.

5         No. 4, MDC Bookstore, Miami-Dade, North

6    Campus, college bookstore.

7         No. 5, North Miami.

8         No. 6, daughter and myself and friends.

9         No. 7, no.

10        No. 8, single.

11        No. 9, United Oil Company.

12        No. 10, the ages are 17, 24, 27 and 32.

13        No. 11 --

14        THE COURT:  Are they working?

15        PROSPECTIVE JUROR NO. 19:  Yes.  They are

16   working.  I have one son that works for UPS in Atlanta,

17   Georgia.  And my daughter works for Lowe's.  And the

18   17-year-old works for Miami-Dade College Bookstore.

19        THE COURT:  Okay.

20        PROSPECTIVE JUROR NO. 19:  11, no.

21        12, no.

22        No. 13, I like walking.

23        No. 14, 12 years of school, one and a half

24   year of college.  And, also, I took a security class at

25   the MDC.

```
1              No. 15, no.

2              16, newspaper, television.

3              17, no.

4              18, no.

5              No. 19, no.

6              No. 20, security.

7              No. 21, no.

8              22, no.

9              23, yes.

10             THE COURT:  What crime were you a victim of?

11             PROSPECTIVE JUROR NO. 19:  The place where I

12    moved at, they took some stuff out of the yard.

13             THE COURT:  Was it reported?

14             PROSPECTIVE JUROR NO. 19:  Yes.  It was

15    reported.  But --

16             THE COURT:  Anyone arrested?

17             PROSPECTIVE JUROR NO. 19:  No.  Because they

18    didn't see it.  Nobody saw it.

19             THE COURT:  Are you generally satisfied or

20    dissatisfied with the way you were treated?

21             PROSPECTIVE JUROR NO. 19:  It was all right --

22    okay, because not only we got burglarized.  I think it

23    was the whole neighborhood.  So it was just

24    something....

25             No. 24, no.
```

```
 1            25, no.

 2            26, no.

 3            27, no.

 4            28, yes.

 5            29, no.

 6            30, no.

 7            31, no.

 8            32, no.

 9            33, no.

10            34, I have sinus problems.  So sometimes I

11    have problems breathing.

12            And No. 35, yes.  I have Internet.

13            THE COURT:  Tell me about the security class

14    that you took.  What was that for?

15            PROSPECTIVE JUROR NO. 19:  That's for -- so

16    that I can get a second job.  Yeah.  I just took it

17    recently.  So I'm supposed to get my State license

18    soon.

19            THE COURT:  Okay.  Have you made application

20    yet for your license?

21            PROSPECTIVE JUROR NO. 19:  They took my

22    fingerprints and everything.  So I'm just supposed to

23    submit it, once I pay the $87.

24            THE COURT:  Okay.  So you took the class in

25    order to get the license?
```

```
 1              PROSPECTIVE JUROR NO. 19:  Yes.  At the North

 2   Campus -- Miami-Dade North Campus.

 3              THE COURT:  Thank you, ma'am.

 4              Juror No. 20.

 5              PROSPECTIVE JUROR NO. 20:  I am Juror No. 20.

 6   I'm 53 years old.

 7              I'm from Haiti.

 8              My parents from Haiti.

 9              No. 4, I'm a nursing assistant.

10              No. 5, I'm living in North Miami Beach for ten

11   years.

12              I live with my mother.

13              THE COURT:  Do you own or rent?

14              PROSPECTIVE JUROR NO. 7:  I own.

15              No. 7, no.

16              8, I'm divorced.

17              9, no.

18              THE COURT:  Is your mom working?

19              PROSPECTIVE JUROR NO. 20:  No.

20              No. 10, no.

21              I have two.  They're not here.  Haiti.

22              THE COURT:  How old are they?

23              PROSPECTIVE JUROR NO. 20:  One, 30.  One, 28.

24              THE COURT:  Okay.

25              PROSPECTIVE JUROR NO. 20:  No. 12, French.  I
```

```
 1   speak French, and I write and speak French.

 2           No. 13, no.

 3           No. 14, no.  Certificate -- certified nursing

 4   assistant.

 5           15, no.

 6           Television.

 7           THE COURT:  That's 16?  Television?

 8           PROSPECTIVE JUROR NO. 20:  16, yes.

 9   Television.

10           17, no.

11           18, no.

12           19, no.

13           20, no.

14           21, no.

15           22, no.

16           23, no.

17           24, no.

18           25, no.

19           26, no.

20           27, no.

21           28, yes.

22           29, no.

23           30, no.

24           31, no.

25           32, yes.  Loss of sight.  I take my
```

1    medication.  I take my medication.

2          THE COURT:  Okay.  So you're taking medication

3    for loss of sight?

4          PROSPECTIVE JUROR NO. 30:  Yes.  Every --

5    yeah.  Twice a day, morning and night.

6          THE COURT:  Can you see me okay?

7          PROSPECTIVE JUROR NO. 30:  With my glasses.

8          THE COURT:  Okay.

9          PROSPECTIVE JUROR NO. 30:  Yes.  I have two

10   surgery.

11         THE COURT:  So as long as you wear your

12   glasses, you see okay?

13         PROSPECTIVE JUROR NO. 30:  Yes.  Special for

14   reading.

15         THE COURT:  For the purpose of reading?

16         PROSPECTIVE JUROR NO. 30:  Yes.  Uh-huh.

17         THE COURT:  So is it hard for you to read?

18         PROSPECTIVE JUROR NO. 30:  Yes.  For reading,

19   yes.  Special -- no.  For -- I got medication, two.

20   Reading and medication.  I've got two.  Glaucoma, and

21   my eyes no good anymore, the left side.

22         THE COURT:  Okay.  Do you drive?

23         PROSPECTIVE JUROR NO. 30:  No.  I don't drive.

24         THE COURT:  And do you have problems reading?

25         PROSPECTIVE JUROR NO. 30:  No.  If I have

1    my -- with my glasses, okay.  If I don't have no

2    glasses, no.

3             THE COURT:  And can you see Lisa, the court

4    reporter?

5             PROSPECTIVE JUROR NO. 30:  Yes.  I see.

6             THE COURT:  Do you see her okay?

7             PROSPECTIVE JUROR NO. 30:  Yes.

8             THE COURT:  Okay.

9             PROSPECTIVE JUROR NO. 30:  34, no.

10            35, no.

11            THE COURT:  Thank you, ma'am.

12            Juror No. 21.

13            PROSPECTIVE JUROR NO. 21:  Juror 21.

14            54.

15            Born and raised in Miami.

16            3, parents born in Georgia.

17            No. 4, I'm a paralegal.

18            No. 5, I live in the Richmond Heights area all

19   my life.

20            No. 6, I own.

21            No. 7, no.

22            No. 8, I'm married.

23            No. 9, an enforcement officer.

24            No. 10, I have a son that's 38.  He's a

25   refrigeration technician.  One that's 30.  He's a field

```
1    specialist.  And one that's 19.  He's in college.

2           They all live in Orlando.

3           THE COURT:  And your husband's a law

4    enforcement officer?

5           PROSPECTIVE JUROR NO. 21:  No.  He's an

6    enforcement officer for the --

7           THE COURT:  What does he enforce?

8           PROSPECTIVE JUROR NO. 21:  Miami-Dade Solid

9    Waste Department.

10          THE COURT:  Okay.

11          PROSPECTIVE JUROR NO. 21:  No. 12, no.

12          No. 13, family.  And I exercise.

13          No. 14, 12.  And I have a certificate in

14   paralegal studies.

15          No. 15, yes.

16          No. 16, television and radio.

17          No. 17, no.

18          No. 18, no.

19          No. 19, no.

20          No. 20, no.

21          No. 21, no.

22          22, no.

23          23, yes.  I had my car stolen from the

24   Metrorail station.

25          THE COURT:  Was it reported?
```

1          PROSPECTIVE JUROR NO. 21:  It was reported,

2     and it was found.

3          THE COURT:  Are you satisfied with the way you

4     were treated?

5          PROSPECTIVE JUROR NO. 21:  Yeah.  They found

6     it, but it was no good.

7          THE COURT:  They found it, but you couldn't

8     use it after that?

9          PROSPECTIVE JUROR NO. 21:  Correct.  It was a

10    total loss.

11         THE COURT:  Okay.

12         PROSPECTIVE JUROR NO. 21:  No. 24, no.

13         No. 25, no.

14         No. 26, no.

15         No. 27, yes.  I had a sister that was accused

16    of drug trafficking.  She did, like, ten years back in

17    1989.

18         And my son, the 38-year-old -- he was accused

19    of writing bad checks, grand theft by check writing.

20         THE COURT:  When was that?

21         PROSPECTIVE JUROR NO. 21:  That was some time

22    ago.

23         THE COURT:  Okay.  Let's talk about your

24    sister.

25         Did you attend any of her hearings?

```
 1              PROSPECTIVE JUROR NO. 21:  No.  Not

 2    criminally.  I attended a probation hearing for her

 3    after -- that was in '97.  I attended a probation

 4    hearing.

 5              THE COURT:  Do you think she was treated

 6    fairly by the criminal justice system?

 7              PROSPECTIVE JUROR NO. 21:  Yes.

 8              THE COURT:  Do you believe she was well

 9    represented by her lawyer?

10              PROSPECTIVE JUROR NO. 21:  Yes.

11              THE COURT:  Did you visit her while she was

12    incarcerated?

13              PROSPECTIVE JUROR NO. 21:  Yes.

14              THE COURT:  Is there anything about your

15    sister's experience that would make it difficult for

16    you to sit and listen to the evidence in this case and

17    be fair to both the Government and the Defendants?

18              PROSPECTIVE JUROR NO. 21:  No.

19              THE COURT:  And your son:  When was the bad

20    check charge?

21              PROSPECTIVE JUROR NO. 21:  It was in Orlando.

22    I don't remember when.  I was trying to call to ask

23    while I was out on break, but I couldn't get ahold of

24    him.

25              THE COURT:  Did you attend any of his
```

1   hearings?

2          PROSPECTIVE JUROR NO. 21:  No.  It was just

3   one hearing.

4          THE COURT:  What happened with that charge?

5          PROSPECTIVE JUROR NO. 21:  He pled no -- no --

6          THE COURT:  No contest?

7          PROSPECTIVE JUROR NO. 21:  Yes.

8          THE COURT:  Do you believe he was treated

9   fairly by the criminal justice system?

10          PROSPECTIVE JUROR NO. 21:  Yes.

11          THE COURT:  Do you think he was well

12   represented by his lawyer?

13          PROSPECTIVE JUROR NO. 21:  Yes.  He was

14   represented by a public defender.

15          THE COURT:  Okay.  Is there anything about

16   your son's experience that would make it difficult for

17   you to sit and listen to the evidence in this case and

18   be fair to both the Government and the Defendants?

19          PROSPECTIVE JUROR NO. 21:  No.

20          THE COURT:  What kind of paralegal work are

21   you doing?

22          PROSPECTIVE JUROR NO. 21:  Court.  I've been

23   in the field of law for 30 years, 20 years in private

24   law here in Miami, and now I'm with the Government.

25          THE COURT:  You're working for the State

1    Government?

2           PROSPECTIVE JUROR NO. 21:  Miami-Dade County

3    Public Schools.

4           THE COURT:  Oh, for the County.  Okay.

5           No. 28?

6           PROSPECTIVE JUROR NO. 21:  No.

7           29, no.

8           30, yes.  I was a juror in a civil trial, and

9    it was voluntarily dismissed.

10          THE COURT:  Okay.

11          PROSPECTIVE JUROR NO. 21:  31, no.

12          32, no.

13          33, no.

14          34, no.

15          35, yes.

16          THE COURT:  Thank you, ma'am.

17          Juror No. 22.

18          PROSPECTIVE JUROR NO. 22:  No. 1, 27.

19          No. 2, New York.

20          No. 3, Colombia.

21          No. 4, HR generalist for a law firm.

22          No. 5, Miami Beach, five years.

23          I rent, and I live alone.

24          7, no.

25          No. 8, divorced.

1          No. 9, don't live with anyone, no children.

2          Number 12, yes.  Spanish.

3          No. 13, reading.

4          No. 14, college, business administration.

5          No. 15, no.

6          16, Internet and television.

7          17, no.

8          18, no.

9          19, no.

10         20, no.

11         21, no.

12         21, no.

13         23, no.

14         24, yes.  I saw my neighbor's house being

15    broken into.  They weren't arrested.

16         THE COURT:  Are you generally satisfied or

17    dissatisfied with the way you were treated?

18         PROSPECTIVE JUROR NO. 22:  Satisfied.

19         No. 25, no.

20         No. 26, no.

21         27, my ex-husband was put on probation for

22    five years for theft.

23         No. 28, no.

24         29, no.

25         30, no.

```
 1              31, no.

 2              32, no.

 3              33, no.

 4              34, no.

 5              35, yes.

 6              THE COURT:   In regard to your ex-husband, when

 7     was that?

 8              PROSPECTIVE JUROR NO. 22:   That was in 2001.

 9              THE COURT:   And were you married at the time?

10              PROSPECTIVE JUROR NO. 22:   Yes.

11              THE COURT:   Do you think he was treated fairly

12     by the criminal justice system?

13              PROSPECTIVE JUROR NO. 22:   Yes.

14              THE COURT:   Do you think he was well

15     represented by his lawyer?

16              PROSPECTIVE JUROR NO. 22:   Yes.

17              THE COURT:   Is there anything about your

18     ex-husband's experience that would make it difficult

19     for you to sit and listen to the evidence in this case

20     and be fair to both the Government and the Defendants?

21              PROSPECTIVE JUROR NO. 22:   No.

22              THE COURT:   Thank you, ma'am.

23              We're going to come down to Juror No. 23.

24              PROSPECTIVE JUROR NO. 23:   I'm No. 23.

25              No. 1, 38.
```

```
 1              No. 2, Miami.

 2              No. 3, Miami.

 3              No. 4, educational field.

 4              THE COURT:  What are you doing in the

 5   educational field?

 6              PROSPECTIVE JUROR NO. 23:  Teacher/youth

 7   advisor.

 8              THE COURT:  What do you teach?

 9              PROSPECTIVE JUROR NO. 23:  Basically, more

10   tutoring for high school kids, getting them ready for

11   college.

12              No. 5, the Brownsville area.

13              THE COURT:  How long have you been there?

14              PROSPECTIVE JUROR NO. 23:  There, about six

15   years.

16              No. 6, I own my house.

17              No. 7, no.

18              No. 8, married.

19              No. 9, my wife is a hairstylist.  I have --

20   the kids are 4, 16 and 19.  The 19-year-old is away in

21   college.

22              No. 10 I answered already.

23              11, no.

24              No. 12, no.

25              No. 13, games and working out.
```

1           Bachelor's degree, elementary education, math

2   and computer science.  And I have taken several

3   graduate courses.

4           No, I have not attended law school.

5           No. 15, no.

6           No. 16, TV.

7           No. 17, no.

8           No. 18, no.

9           No. 19, no.

10          No. 20, no.

11          No. 21, no.

12          No. 22, no.

13          No. 23, yes.  My truck was broken into a

14  couple of times.  They never caught the person.  But

15  I'm satisfied.

16          No. 24, no.

17          No. 25, no.

18          No. 26, no.

19          No. 27, no.

20          No. 28, yes.

21          No. 29, no.

22          No. 30, yes.  Federal, criminal.

23          THE COURT:  Did the jury reach a verdict?

24          PROSPECTIVE JUROR NO. 23:  Yes, ma'am.

25          THE COURT:  Were you the foreperson?

```
 1              PROSPECTIVE JUROR NO. 23:  No, ma'am.

 2              THE COURT:  Okay.

 3              PROSPECTIVE JUROR NO. 23:  No. 31, no.

 4         No. 32, no.

 5         No. 33, no.

 6         No. 34, no.

 7         No. 35, yes, to both.

 8              THE COURT:  No. 24.

 9              PROSPECTIVE JUROR NO. 24:  I'm No. 24.

10         I'm 48 years old.

11         No. 2, I was born in Miami, Florida.

12         No. 3, Michigan and Florida.

13         No. 4, I'm a pharmacy technician.

14         No. 5, Sweetwater, more than 20 years.

15         No. 6, I own my home, but I rent the land.

16         My mother lives with me.

17         No. 7, no.

18         No. 8, single.

19         No. 9, my mother is retired.

20              THE COURT:  What did she do before she

21    retired?

22              PROSPECTIVE JUROR NO. 24:  She worked for the

23    hospital where I'm currently working.  And prior to

24    that, she was a homemaker.

25              THE COURT:  Okay.
```

1              PROSPECTIVE JUROR NO. 24:  No. 11, I have no

2    children.

3              No. 12, yes.  I speak Spanish and write and

4    read it.

5              13, I raise orchids, I go biking and kayak

6    fishing.

7              14, I have an AA degree in general studies.  I

8    have a certificate, also, in dental technology and a

9    certificate in pharmacy technology.

10             15, no.

11             16, all sources.

12             17, no.

13             18, no.

14             19, no.

15             20, no.

16             21, no.

17             22, no.

18             23, yes.  I was a victim of crime.  I was

19    robbed three times.  I did report it.  No one was ever

20    arrested.  And I was satisfied.  There was nothing I

21    could do.

22             23 -- sorry.

23             23 I answered already.

24             24, no.

25             25, yes.  I had two trials.  One was -- never

1   went all the way to trial.  The second one did go to

2   trial.

3           THE COURT:  What kind of trials were they?

4           PROSPECTIVE JUROR NO. 24:  It was for

5   automobile accidents, both of them.

6           26, no.

7           27, no.

8           28, no.

9           29, no.

10          30, no.

11          31, no.

12          32, no.

13          33, no.

14          34, no.

15          And 35, yes.  Both.

16          THE COURT:  Thank you.

17          Give us a moment.  We're going to change the

18  battery.  When it starts to go, it starts conking out.

19  And we put in a battery every morning.  It just eats

20  them.

21          No. 25.

22          PROSPECTIVE JUROR NO. 25:  No. 25.

23          No. 1, 43.

24          No. 2, Havana, Cuba.

25          No. 3, Havana, Cuba.

```
 1          No. 4, AutoCAD designer.

 2          And I want to add something because, at the

 3  beginning, I didn't understand something that somebody

 4  explained me outside, that the process could be for

 5  months.

 6          In my company, there was layoff recently and I

 7  stayed as the only AutoCAD designer in the whole

 8  company.

 9          If I miss too many days, the company could be

10  in trouble.  I am a little afraid of lose my job.

11          THE COURT:  Okay.

12          PROSPECTIVE JUROR NO. 25:  No. 5, Kendall, for

13  seven years.

14          No. 6, own, with family.

15          No. 7, Cuba, 30 years.

16          No. 8, married.

17          No. 9, salesperson.

18          No. 10, 13 and 5 years.

19          No. 11, no.

20          No. 12, yes.  Spanish.

21          No. 13, no.

22          14, civil engineer in Cuba.

23          15, no.

24          17, TV and Internet.

25          THE COURT:  16?
```

1              PROSPECTIVE JUROR NO. 25:  16, TV and

2    Internet.

3              17, no.

4              18, no.

5              19, no.

6              20, no.

7              21, no.

8              22, no.

9              23, no.

10             24, no.

11             25, no.

12             26, no.

13             27, no.

14             28, no.

15             29, no.

16             30, no.

17             31, no.

18             32, no.

19             33, I can read the English, but I have some

20   problems with the listening or understanding and

21   speaking.

22             THE COURT:  Okay.

23             PROSPECTIVE JUROR NO. 25:  34, no.

24             35, yes.

25             THE COURT:  Thank you, sir.

```
1          Juror No. 26.

2          PROSPECTIVE JUROR NO. 26:  No. 1, I'm 25.

3          No. 2, Miami.

4          No. 3, Miami.

5          No. 4, I'm a licensed barber.

6          No. 5, Homestead, for 25 years.

7          6, I rent.  I stay by myself.

8          No. 7, no.

9          No. 8, single.

10         No. 9, I stay by myself.

11         No. 10, 9.

12         11, no.

13         12, no.

14         No. 13, sports.

15         No. 14, some college.

16         No. 15, no.

17         No. 16, all.

18         No. 17, yes.

19         18, no.

20         No. 19, no.

21         No. 20, my major is psychology.

22         No. 21, no.

23         22, no.

24         23, no.

25         24, no.
```

```
1              25, no.
2              26, yes.
3              27, yes.
4              28, yes.
5              29, no.
6              THE COURT:  You told us about you for 26.
7    Right?
8              PROSPECTIVE JUROR NO. 26:  Yeah.
9              THE COURT:  What about No. 27?  Who's that?
10             PROSPECTIVE JUROR NO. 26:  I got a couple of
11   friends and all that were convicted of a crime.
12             THE COURT:  What were they charged with?
13             PROSPECTIVE JUROR NO. 26:  Drugs, attempted
14   murder, all types of stuff.
15             THE COURT:  And what happened with those
16   charges?
17             PROSPECTIVE JUROR NO. 26:  They was convicted.
18             THE COURT:  How many friends?
19             PROSPECTIVE JUROR NO. 26:  A couple.
20             THE COURT:  Two?
21             PROSPECTIVE JUROR NO. 26:  Like four, five,
22   six.
23             THE COURT:  Okay.  Do you think they were
24   treated fairly by the criminal justice system?
25             PROSPECTIVE JUROR NO. 26:  No.
```

```
 1            THE COURT:  Do you think they were well
 2  represented by their lawyers?
 3            PROSPECTIVE JUROR NO. 26:  No.
 4            THE COURT:  Was this more than one case or one
 5  case?
 6            PROSPECTIVE JUROR NO. 26:  More than one.
 7            THE COURT:  More than one.
 8            Did you visit them while they were
 9  incarcerated?
10            PROSPECTIVE JUROR NO. 26:  Yes.
11            THE COURT:  Would you be able to put aside
12  whatever feelings you have regarding their situation
13  and their contact with the criminal justice system --
14            PROSPECTIVE JUROR NO. 26:  Yes, if I have to.
15            THE COURT:  Let me finish the question.
16            Would you be able to put aside whatever
17  feelings you have regarding their convictions and sit
18  and listen to the evidence in this case and be fair to
19  both the Government and the Defendants?
20            PROSPECTIVE JUROR NO. 26:  Yes.
21            THE COURT:  You said before, "Yes, if I have
22  to."  What does that mean?
23            PROSPECTIVE JUROR NO. 26:  Like if I ain't got
24  no choice, like, you know, if I ain't got to choice, if
25  I got to be here.  I'd rather not.
```

1          THE COURT:  Well, the question is:  If you're

2    chosen as a juror, would you be able to sit and listen

3    to the evidence and be a fair and impartial juror?

4          PROSPECTIVE JUROR NO. 26:  Yes.

5          THE COURT:  Okay.

6          PROSPECTIVE JUROR NO. 26:  I forgot what

7    number I was on.

8          THE COURT:  I'm sorry?

9          PROSPECTIVE JUROR NO. 26:  I forgot what

10   number I was on.

11         THE COURT:  I'm not understanding you, sir.

12         PROSPECTIVE JUROR NO. 26:  I forgot what

13   number.

14         THE COURT:  Oh.  I forgot, too.

15         No. 28.

16         PROSPECTIVE JUROR NO. 26:  Yes.  No. 28, yes.

17         No. 29, no.

18         No. 30, no.

19         No. 31, no.

20         32, no.

21         33, no.

22         34, no.

23         35, yes.

24         THE COURT:  Okay, sir.  Thank you.

25         No. 27.

```
 1              PROSPECTIVE JUROR NO. 27:  1, 61.

 2              2, Jamaica.

 3              3, Jamaica.

 4              4, electromechanic.

 5              5, North Miami.

 6              6, yes.

 7              7 --

 8              THE COURT:  Do you own or rent?

 9              PROSPECTIVE JUROR NO. 27:  Own.

10              THE COURT:  You own your house?

11              PROSPECTIVE JUROR NO. 27:  Yes.

12              7, no.

13              8, married.

14              9, I live with my wife.

15              THE COURT:  Is she working outside the home?

16              PROSPECTIVE JUROR NO. 27:  Yes.

17              THE COURT:  What does she do?

18              PROSPECTIVE JUROR NO. 27:  She's a nurse

19   practitioner.

20              10, two children.

21              THE COURT:  How old are they?

22              PROSPECTIVE JUROR NO. 27:  27 and 30.

23              THE COURT:  Are they working?

24              PROSPECTIVE JUROR NO. 27:  Yes.

25              THE COURT:  What are they doing?
```

1            PROSPECTIVE JUROR NO. 27:  One is a nurse, and

2    the other one is a music teacher.

3            THE COURT:  Okay.  No. 11?

4            PROSPECTIVE JUROR NO. 27:  No.

5            12, no.

6            13 -- no.  12, do you speak or write -- okay.

7            13, running and playing jazz.

8            14, I have a technical school degree.

9            15, no.

10           16, all of them.

11           17, no.

12           18, no.

13           19, no.

14           20, no.

15           21, no.

16           22, yes.

17           THE COURT:  Who is that?  Who applied for law

18    enforcement?

19           PROSPECTIVE JUROR NO. 27:  I did, way back

20    when.

21           THE COURT:  What did you apply for?

22           PROSPECTIVE JUROR NO. 27:  To be a police

23    officer.

24           THE COURT:  Where?

25           PROSPECTIVE JUROR NO. 27:  Miami.

1          THE COURT:  And what happened with the

2    application?

3          PROSPECTIVE JUROR NO. 27:  Well, in fact, my

4    credit card -- they told me to get my credit card up to

5    date and come back.  They told me to get my credit card

6    bills together, but I didn't want to do that, to go

7    back.  I just went back to work as --

8          THE COURT:  Okay.

9          PROSPECTIVE JUROR NO. 27:  Yeah.

10         23, no.

11         24, no.

12         25, no.

13         26, no.

14         27, no.

15         28, no.

16         29, no.

17         30, yes.

18         THE COURT:  What kind of case did you serve

19    on?

20         PROSPECTIVE JUROR NO. 27:  It was a case with

21    a guy --

22         THE COURT:  Criminal or civil?

23         PROSPECTIVE JUROR NO. 27:  Criminal.

24         THE COURT:  State or federal court?  Do you

25    remember?

1          PROSPECTIVE JUROR NO. 27:  Federal court.

2          THE COURT:  Did the jury reach a verdict?

3          PROSPECTIVE JUROR NO. 27:  Hung jury.

4          31, no.

5          32, no.

6          33, no.

7          34, no.

8          35, yes.

9          THE COURT:  Thank you, sir.

10         Juror No. 28.

11         PROSPECTIVE JUROR NO. 28:  No. 1, 47.

12         No. 2, Cuba.

13         No. 3, Cuba.

14         No. 4, elementary schoolteacher.

15         No. 5, Hialeah.

16         No. 6, own.

17         No. 7, no.

18         No. 8, I have been separated for nine years.

19  So I'm still legally married, but separated for nine

20  years.

21         No. 9, I live with my three children, ages 10,

22  13 and 19.  My 19-year-old son is not employed yet.

23         No. 11, no.

24         No. 12, Spanish.

25         No. 13, reading.

```
1              No. 14, I have a master's degree in education.

2              No. 15, back in 19 -- around 1980, I took some

3     legal secretarial courses.

4              No. 16, television.

5              No. 17, yes.  I have a first cousin who's a

6     Florida State Trooper.

7              No. 18, no.

8              No. 19, no.

9              No. 20, no to all of them.

10             21, no.

11             No. 22, no.

12             No. 23, yes.  Back in 1998.  It was reported.

13    And there was an arrest and the person was held for

14    24 hours.  The charges were dropped and the State did

15    not prosecute.

16             Yes.  I was satisfied.

17             THE COURT:  What crime was it?

18             PROSPECTIVE JUROR NO. 28:  It was listed as a

19    domestic violence and, also, aggravated child abuse.

20             THE COURT:  Okay.

21             PROSPECTIVE JUROR NO. 28:  Then I also had a

22    car stolen back in 1997, and the car was found at the

23    Port of Miami.  I had the car returned.  So, yes, I was

24    satisfied.

25             THE COURT:  No. 24?
```

```
 1              PROSPECTIVE JUROR NO. 28:  No. 24, going back

 2    to -- yes.  To the same crime before that, I was a

 3    witness.  So the person was held for 24 hours.  And it

 4    was -- what did I say before?  The charges were dropped

 5    and the State did not prosecute.  And I was satisfied.

 6    Yes.

 7              For No. 25, I can't recall, but I do believe I

 8    may have been at a deposition for that same case with

 9    the State Attorney's Office.  But I'm not sure.  I

10    can't remember.

11              No. 26, no.

12              No. 27, yes.  I have a first cousin who served

13    about two years for aggravated assault.  And the person

14    that I am separated from since 1998, yes.

15              No. 28, yes.

16              No. 29, no.

17              30, no.

18              31, no.

19              32, no.

20              33, no.

21              34, no.

22              35, yes.

23              THE COURT:  In regard to your first cousin,

24    when was that?

25              PROSPECTIVE JUROR NO. 28:  That was in -- I
```

1   would say maybe about 2004, around about.

2          THE COURT:  Did you attend any of their

3   hearings?

4          PROSPECTIVE JUROR NO. 28:  No.

5          THE COURT:  What happened with the charge?

6   Were they convicted?

7          PROSPECTIVE JUROR NO. 27:  Yes.  They were

8   convicted.  He served two years -- about two years,

9   maybe.

10         THE COURT:  Do you think he was treated fairly

11  by the criminal justice system?

12         PROSPECTIVE JUROR NO. 28:  Yes.

13         THE COURT:  Do you believe he was well

14  represented by his lawyer?

15         PROSPECTIVE JUROR NO. 28:  I don't know the

16  lawyer, and I wasn't privy on the case.  But I don't

17  know.

18         THE COURT:  Did you visit with him while he

19  was incarcerated?

20         PROSPECTIVE JUROR NO. 28:  No.

21         THE COURT:  Is there anything about your first

22  cousin's experience that would make it difficult for

23  you to sit and listen to the evidence in this case and

24  be fair to both the Government and the Defendant?

25         PROSPECTIVE JUROR NO. 28:  No.

1      THE COURT:  Now, in regard to your ex-husband,

2  can you tell us about that from there or do you want to

3  come up side-bar?

4      PROSPECTIVE JUROR NO. 28:  I'd rather come up.

5      THE COURT:  Come on up.

6      (Whereupon, proceedings were had at side-bar

7  outside the presence of the jury which have been sealed

8  per instructions of the Court.)

9      (Whereupon, the following proceedings were had

10  in open court:)

11      THE COURT:  Juror No. 29.

12      PROSPECTIVE JUROR NO. 29:  I'm Juror No. 29.

13      No. 1, 29.

14      No. 2, Miami.

15      3, they were born in Cuban.

16      4, pharmacy.

17      5, Miami Lakes.

18      6, own.

19      7, no.

20      8, married.

21      9, my wife's an office manager at a doctor's

22  office.

23      10, two, a newborn and a 2.

24      11, no.

25      12, Spanish.

```
 1              13, yes.

 2              14 --

 3              THE COURT:  What are your hobbies in your

 4  spare time?

 5              PROSPECTIVE JUROR NO. 29:  Sports.

 6              14, diploma.

 7              15, no.

 8              16, all.

 9              17, no.

10              18, no.

11              19, no.

12              20, no.

13              21, no.

14              22, no.

15              23, no.

16              24, no.

17              25, no.

18              26, no.

19              27, no.

20              28, no.

21              29, no.

22              30, no.

23              31, no.

24              32, no.

25              33, no.
```

```
 1              34, no.

 2              35, yes.

 3              THE COURT:  And what kind of diploma do you

 4   have?

 5              PROSPECTIVE JUROR NO. 29:  High school.

 6              THE COURT:  Thank you, sir.

 7              Last, but not least, No. 30.

 8              PROSPECTIVE JUROR NO. 30:  Yes.

 9              No. 1, 48.

10              No. 2, Brownsville, Florida.

11              No. 3, Alabama and Georgia.

12              No. 4, unemployed.

13              No. 5, Miami Gardens.

14              No. 6, my brother and sister-in-law.

15              No. 7, no.

16              No. 8, divorced.

17              No. 9, retired.

18              THE COURT:  No. 6, do you own or rent -- or

19   you're living with your brother --

20              PROSPECTIVE JUROR NO. 30:  I live with my

21   brother and sister-in-law.

22              THE COURT:  And they own the house?

23              PROSPECTIVE JUROR NO. 30:  Yes.

24              No. 8, I'm divorced.

25              No. 9, brother is retired.
```

1        THE COURT:  What did your brother do before he

2   retired?

3        PROSPECTIVE JUROR NO. 30:  AGI, insurance

4   salesman.

5        THE COURT:  Is your sister-in-law employed?

6        PROSPECTIVE JUROR NO. 30:  Post Office.

7        THE COURT:  The fact that she works for the

8   Post Office, would that affect -- which is an agency of

9   the United States Government, would that affect your

10  ability to sit and listen to the evidence in this case

11  and be fair to both the Government and the Defendants?

12       PROSPECTIVE JUROR NO. 30:  It wouldn't affect

13  me at all.

14       No. 10 is 12, 22 and 27.

15       THE COURT:  Any of them working?

16       PROSPECTIVE JUROR NO. 30:  22 -- son that's

17  22.  He's in marketing.  And my daughter's 27.  She's

18  in law enforcement.

19       THE COURT:  Where is she in law enforcement?

20       PROSPECTIVE JUROR NO. 30:  Here in Dade

21  County.

22       THE COURT:  Okay.

23       PROSPECTIVE JUROR NO. 30:  No. 11, no.

24       12, no.

25       13, outdoor sports.

```
 1                  14, 12th grade.

 2                  15, no.

 3                  16, television, newspaper.

 4                  17, yes.

 5                  18, no.

 6                  19, no.

 7                  20, no.

 8                  21, no.

 9                  22, yes.

10                  23 --

11             THE COURT:  Is that your daughter-in-law that

12      you're talking about for 22?

13             PROSPECTIVE JUROR NO. 30:  And myself.

14             THE COURT:  Where did you apply?

15             PROSPECTIVE JUROR NO. 30:  With North Miami

16      Beach, Metro-Dade.

17             THE COURT:  And what happened with those

18      applications?

19             PROSPECTIVE JUROR NO. 30:  Medical.

20             THE COURT:  I'm sorry?

21             PROSPECTIVE JUROR NO. 30:  Medical.

22             THE COURT:  For medical reasons, you didn't --

23             PROSPECTIVE JUROR NO. 30:  I wasn't accepted.

24             THE COURT:  Okay.

25             PROSPECTIVE JUROR NO. 30:  23, yes.
```

1          THE COURT:  What crime were you a victim of?

2          PROSPECTIVE JUROR NO. 30:  I had a couple cars

3     stolen and some things stolen.

4          THE COURT:  Were those instances reports?

5          PROSPECTIVE JUROR NO. 30:  Yes.  They were

6     reported.

7          THE COURT:  Anyone arrested?

8          PROSPECTIVE JUROR NO. 30:  Well, when my car

9     was stolen, yeah.  They was arrested.  The first time

10    the car was stolen, they were arrested.  The second

11    time, they wasn't.

12         THE COURT:  And what happened with that case

13    when they were arrested?

14         PROSPECTIVE JUROR NO. 30:  He was placed on

15    probation.

16         THE COURT:  Are you generally satisfied or

17    dissatisfied with the way you were treated for all --

18         PROSPECTIVE JUROR NO. 30:  Oh, satisfied.

19    Yeah.

20         THE COURT:  24?

21         PROSPECTIVE JUROR NO. 30:  24 is yes.

22         25, no.

23         26, yes.

24         27, yes.

25         28, yes.

```
1              29, no.

2              30, no.

3              31 is no.

4              32, no.

5              33, no.

6              34, no.

7              35, no.

8              THE COURT:  Let's go back to 26.

9              You were accused of a crime?

10             PROSPECTIVE JUROR NO. 30:  Yes.

11             THE COURT:  What crime were you accused of?

12             PROSPECTIVE JUROR NO. 30:  I was accused of

13   being drunk when I wasn't.  Unlawful conduct.

14             THE COURT:  Disorderly conduct?

15             PROSPECTIVE JUROR NO. 30:  Disorderly conduct,

16   I mean.

17             THE COURT:  And what happened with that

18   charge?

19             PROSPECTIVE JUROR NO. 30:  It was thrown out.

20             THE COURT:  When was that?

21             PROSPECTIVE JUROR NO. 30:  This was back in

22   1998.

23             THE COURT:  Do you think that you were treated

24   fairly by the criminal justice system?

25             PROSPECTIVE JUROR NO. 30:  By that officer,
```

1    no.

2              THE COURT:  And how about the court system?

3              PROSPECTIVE JUROR NO. 30:  The court system?

4    It was okay.

5              THE COURT:  Did you have a lawyer?

6              PROSPECTIVE JUROR NO. 30:  No, I didn't.  I

7    was appointed one.

8              THE COURT:  You had a lawyer appointed?

9              PROSPECTIVE JUROR NO. 30:  Yes.

10             THE COURT:  Do you think you were well

11   represented by your lawyer?

12             PROSPECTIVE JUROR NO. 30:  Yeah.  He did a

13   great job.

14             THE COURT:  Would you be able to put aside

15   whatever feelings that you have concerning the officer

16   who arrested you and sit and listen to the evidence in

17   this case and be fair to both the Government and the

18   Defendants?

19             PROSPECTIVE JUROR NO. 30:  Yes.

20             THE COURT:  Okay.  And you also answered "yes"

21   to No. 27.

22        Somebody in your family was accused of a

23   crime?

24             PROSPECTIVE JUROR NO. 30:  Yes.

25             THE COURT:  Who was that?

1            PROSPECTIVE JUROR NO. 30:  Accused and

2    charged.  One of my cousins.

3            THE COURT:  What was he charged with?

4            PROSPECTIVE JUROR NO. 30:  Grand -- wait a

5    minute.  Grand theft, I think it was.

6            THE COURT:  And when was that?

7            PROSPECTIVE JUROR NO. 30:  Oh, this was years

8    ago.

9            THE COURT:  Did you attend any of his

10   hearings?

11           PROSPECTIVE JUROR NO. 30:  No, I didn't.

12           THE COURT:  Do you know what happened with the

13   charge?

14           PROSPECTIVE JUROR NO. 30:  He was arrested.

15   He spent, I think, four years in prison.

16           THE COURT:  Okay.  Did you visit him while he

17   was incarcerated?

18           PROSPECTIVE JUROR NO. 30:  Yes.

19           THE COURT:  Do you think he was treated fairly

20   by the criminal justice system?

21           PROSPECTIVE JUROR NO. 30:  I can't answer that

22   question.

23           THE COURT:  Do you think -- do you have an

24   opinion as to whether he was well represented by his

25   lawyer?

```
 1              PROSPECTIVE JUROR NO. 30:  I was not there
 2    either.
 3              THE COURT:  Is there anything about your
 4    cousin's experience that would make it difficult for
 5    you to sit and listen to the evidence in this case and
 6    be fair to both the Government and the Defendants?
 7              PROSPECTIVE JUROR NO. 30:  Yeah.  I could do a
 8    fair ruling.
 9              THE COURT:  Okay.  Okay, sir.  Thank you.
10              Are you ready to come up, counsel?
11              MS. JHONES:  Your Honor, could we have a
12    couple minutes?
13              THE COURT:  Okay.  How long do you need?  Are
14    we talking about three minutes?  Four minutes?  Five
15    minutes?  Ten minutes?
16              MR. VEREEN:  Ten minutes.
17              MS. JHONES:  Ten minutes, your Honor.
18              THE COURT:  So we're going to take a recess.
19              Do not discuss this case either amongst
20    yourselves or with anyone else.  Have no contact
21    whatsoever with anyone associated with the trial.  Do
22    not read, listen or see anything touching on this
23    matter in any way.
24              If anyone should try to talk to you about this
25    case, you should immediately instruct them to stop and
```

 1   report it to my staff.

 2          We're going to be in recess for ten minutes.

 3   Please be back in the lobby in ten.  Thank you for your

 4   patience.

 5          (Whereupon, Prospective Jury Panel No. II

 6   exited the courtroom at 2:39 p.m. and the following

 7   proceedings were had:)

 8          THE COURT:  We're in recess for ten.

 9          (Thereupon a recess was taken, after which the

10   following proceedings were had:)

11          THE COURT:  We're back on United States of

12   America versus Narseal Batiste, et al., Case

13   No. 06-20373.

14          Counsel, state your appearances, please, for

15   the record.

16          MR. GREGORIE:  Richard Gregorie and Jacqueline

17   Arango on behalf of the United States, your Honor.

18          MS. JHONES:  Ana Maria Jhones on behalf of

19   Narseal Batiste, who's pleasant.

20          MR. LEVIN:  Albert Levin on behalf of Patrick

21   Abraham, who's present.

22          MR. CASUSO:  Louie Casuso on behalf of Burson

23   Augustin, who's present.

24          MR. CLARK:  Nathan Clark for Rotschild

25   Augustine, who's present.

```
 1            MR. HOULIHAN:  Richard Houlihan with Naudimar

 2   Herrera.

 3            MR. VEREEN:  Roderick Vereen for Stanley

 4   Phanor.

 5            THE COURT:  All Defendants are present.

 6            You may be seated.

 7            Do you want to take up the challenges for

 8   cause outside the presence of the jury?

 9            MS. JHONES:  Yes, your Honor.

10            THE COURT:  Let's take up the first 16 from

11   the jury box.

12            MS. ARANGO:  Judge --

13            THE COURT:  Challenges for cause or hardship.

14            MS. ARANGO:  Judge, first of all --

15            THE COURT:  I'm sorry.  Let me interrupt you.

16            Is there any additional questions --

17            MS. ARANGO:  Yes.

18            THE COURT:  -- for any member of the jury

19   panel?  Sorry.  I forgot.

20            MS. ARANGO:  Yes.

21            Judge, with respect to Juror No. 15 -- he's

22   the guy that's the printer from *Miami Herald* -- he said

23   that, you know, when he -- when he prints, he's going

24   to have to read the paper as he's printing.

25            But the question is, if he serves on this
```

1    jury, he doesn't have to work.  He's not going to be

2    working, presumably.  Maybe you could explore that with

3    him.

4            Will he work on Mondays?  Will he work on

5    weekends?  He works for a big company.  I don't see any

6    reason for him to even have to print the newspaper if

7    he's going to be here.

8            So perhaps you could explore that with him and

9    then ask him again, "If you're printing for a day or

10   one day on the weekend, can you do so without reading

11   the paper?  Do you require -- does it have to be

12   typeset?"

13           THE COURT:  I'll ask him.

14           MS. ARANGO:  "What's involved in that?"

15           THE COURT:  Okay.

16           MS. ARANGO:  Juror No. 20.  She's got two kids

17   that live in Haiti.  I just wonder what their -- she

18   didn't answer -- I don't know if you asked about what

19   kind of employment they have.

20           THE COURT:  Okay.

21           MS. ARANGO:  Juror No. 21.  I just was a

22   little bit confused.  She said she was a paralegal for

23   the Miami-Dade Public Schools doing corporate law, but

24   she mentioned she's been 20 years in law.

25           I'm just wondering if sometime in the past

```
1    she's ever done any kind of criminal -- worked in any

2    kind of criminal law firm.

3              THE COURT:  Okay.

4              MS. ARANGO:  No. 22 is an HR generalist for a

5    law firm.  I just wonder what kind of law.

6              THE COURT:  Okay.

7              MS. ARANGO:  Juror No. 26.  When you asked him

8    what kind of work he does, I thought he answered

9    licenses.

10             THE COURT:  No.  He's a licensed barber.

11             MS. ARANGO:  Oh, okay.  I misunderstood that.

12             And then Juror No. 30.  Two questions.

13             First, I thought he answered "yes" to

14   No. 21 -- excuse me -- 24, that he was a witness to a

15   crime.  I thought he answered "yes" to it.

16             THE COURT:  He did.  I'll go into that with

17   him.

18             MS. ARANGO:  Next, he talked about his failure

19   to get a job at the North Miami Beach Police

20   Department.  He answered you rather curtly.  He said

21   medical.  And his responses were very short and curt.

22             I wonder if you could follow up with him to

23   ask him if that would affect him in his ability to

24   judge the testimony of law enforcement officers.

25             Thank you.  That's all for me.
```

```
 1              THE COURT:  Anything from the defense?

 2              MS. JHONES:  Juror No. 3 indicated in response

 3    to Question No. 22 -- my notes are, unfortunately,

 4    pretty vague.  Somebody applied for the Miami-Dade

 5    Police Department.

 6              I don't know if it was -- as it relates to

 7    Juror No. 3, I believe he applied.  He has -- he's

 8    applied with the Miami-Dade Police Department and he

 9    hasn't heard anything yet.  I guess his application is

10    pending.

11              THE COURT:  That's what he said.

12              MS. JHONES:  I'd like for you to follow up

13    with him and ask him if there's anything about the fact

14    that his application is pending with the Miami-Dade

15    Police Department or that he's applied -- would he

16    credit the testimony of a police officer more so than

17    any other witness by virtue of that particular status?

18              THE COURT:  Okay.

19              MS. JHONES:  And if I may just have a moment,

20    your Honor.

21              THE COURT:  Does anyone else have any other

22    questions?

23              MS. JHONES:  Juror No. 6, your Honor.  When

24    asked Question No. 33, dealing with the language, there

25    was a little bit of hesitation.  She misunderstood
```

1   Question No. 21.

2          I'm not sure if it's just -- you know,

3   sometimes they lose their place or if there's a

4   potential language issue there.  If the Court may just

5   follow up on that.

6          THE COURT:  How did she answer the language

7   question?

8          MS. JHONES:  I just have in my notes that she

9   hesitated in response to that question.  And because

10  she misunderstood Question No. 21, that's what raised

11  the concern more than the hesitation.

12         THE COURT:  She didn't indicate that she had a

13  language problem.

14         MS. JHONES:  No, your Honor.  She just

15  hesitated.

16         THE COURT:  She misunderstood the question I

17  was asking about the federal funding.

18         MS. JHONES:  Well, that's fine.

19         Juror No. 11 indicated he had a BA, but I

20  don't think he told us -- a bachelor's degree, but I

21  don't know in what.

22         And he also -- your Honor, I don't remember.

23  I apologize.

24         He said he had a brother who was a Hialeah

25  police officer.  I don't remember if the Court inquired

1   as to whether or not that in any way would affect his

2   ability to be fair and impartial in this case.

3            THE COURT:  Okay.

4            MR. VEREEN:  Your Honor, I had one --

5            THE COURT:  One moment, please.

6            MR. VEREEN:  Okay.

7            THE COURT:  Yes.

8            MR. VEREEN:  With regard to Juror No. --

9    Prospective Juror No. 10, with regard to Question

10   No. 32, she stated she gets emotional sometimes.  I'm

11   not sure if that's because of the pregnancy or what's

12   causing --

13           THE COURT:  She said because of the pregnancy.

14           MR. VEREEN:  I would ask you to further

15   question her as to whether or not, because of that,

16   she's going to be able to pay attention carefully to

17   the evidence as it's presented in this case.

18           THE COURT:  She said it wouldn't affect her as

19   a juror.

20           MR. VEREEN:  But if she gets emotional during

21   the pendency of this trial -- if they're trying to

22   present evidence and all of a sudden she's sitting

23   there crying, I think that's going to affect her.  She

24   may have said it's not going to affect her, but I'd

25   like to how it affects her.

```
 1            She said she gets emotional.  Does she start
 2    crying?  I mean, I'm a man.  So I don't understand how
 3    that affects a woman.  So I'm just asking the Court to
 4    inquire.  I'm not trying to be facetious.  I'm being
 5    serious here.
 6            MS. ARANGO:  Judge, I would object to that.  I
 7    just think that that's an intimidating thing.  She was
 8    very clear that she's pregnant and she gets emotional
 9    because she's pregnant and that it wouldn't affect her
10    abilities.
11            I mean, I think that it would be kind of
12    unduly embarrassing, even at side-bar, to bring her
13    over there and act like she's -- something's wrong with
14    her because she's emotional.
15            MS. JHONES:  I didn't think she was
16    embarrassed about it at all.  She chuckled.  She
17    shrugged her shoulders.  She wasn't sure.
18            MS. ARANGO:  I didn't say she was embarrassed
19    about it.  I said, by further questioning her and
20    acting as though there was something wrong with being
21    emotional because she's pregnant, I just thought that
22    that would be embarrassing.
23            MR. VEREEN:  Well, I beg to differ.  I
24    personally think, if she's going to be sitting as a
25    juror in this type of trial and she starts getting
```

1    emotional, that is going to have an effect on her.

2           MS. JHONES:  I guess I'm reminded about the

3    juror that had to leave after he heard Nathan's

4    closing.

5           THE COURT:  That person was not pregnant.

6           MS. JHONES:  No, he was not.

7           THE COURT:  I'll bring her in separately.

8           Could you ask Juror No. 10 to come in, please.

9           THE COURT SECURITY OFFICER:  Yes, ma'am.

10          (Thereupon, Potential Juror No. 10 entered the

11   courtroom and the following proceedings were had:)

12          THE COURT:  Hello.  You're okay.

13          I just have one additional question for you,

14   and I decided not to ask it in front of everybody.

15   That's all.

16          You had indicated that sometimes you get

17   emotional because you're pregnant.

18          PROSPECTIVE JUROR NO. 10:  Yeah.

19          THE COURT:  How does that manifest itself?

20          PROSPECTIVE JUROR NO. 10:  I just -- I don't

21   know.  Sometimes I have my days.  Like I'll just -- I

22   don't know.  I just get over-emotional with things.  I

23   over-upset with certain things.  I start bawling for no

24   reason.  It upsets me because sometimes I know that I'm

25   crying for no reason.

```
 1              THE COURT:  Okay.  From hormonal changes.

 2   Right?

 3              PROSPECTIVE JUROR NO. 10:  Yeah.

 4              THE COURT:  Do you think that that would

 5   affect you while you're listening to the evidence in

 6   the trial?

 7              PROSPECTIVE JUROR NO. 10:  Yeah.  I mean, I

 8   would hope not, but I don't know.

 9              THE COURT:  Would that affect your ability to

10   concentrate at trial?

11              PROSPECTIVE JUROR NO. 10:  Yeah.  I think so.

12              THE COURT:  Thank you, ma'am.

13              PROSPECTIVE JUROR NO. 10:  Thank you.

14              THE COURT:  Let's bring all the jurors in.

15              MR. LEVIN:  Judge, I have one more, Juror

16   No. 29.

17              THE COURT:  One moment, please.

18              MR. LEVIN:  Thank you.

19              THE COURT:  Juror No. 29?

20              MR. LEVIN:  Yes.  I believe he indicated he

21   was a pharmacist, but he had a high school diploma.  I

22   was trying to figure out what that situation was about,

23   because I wouldn't think he could be a pharmacist with

24   a high school diploma.

25              THE COURT:  Okay.  Is that it?
```

```
 1              MR. LEVIN:  Yes.

 2              THE COURT:  Let's bring in all jurors, please.

 3              THE COURT SECURITY OFFICER:  Yes, ma'am.

 4              (Whereupon, the jury entered the courtroom at

 5    3:21 p.m. and the following proceedings were had:)

 6              THE COURT:  You may be seated.

 7              A few more questions, ladies and gentlemen.

 8              Juror No. 3, sir, did I hear you correctly

 9    that you have a pending application to be a police

10    officer?

11              PROSPECTIVE JUROR NO. 3:  I applied over three

12    years ago.  I haven't heard from it.  So I assume it

13    was dismissed.

14              THE COURT:  Have you done any followup with it

15    or anything?

16              PROSPECTIVE JUROR NO. 3:  No.  Because my

17    family had a couple of medical emergencies.  So I'm

18    focusing now on my family more than -- because I still

19    have a steady job.

20              THE COURT:  Do you think that the fact that

21    you had this pending application that sort of

22    disappeared and you didn't follow up -- would that

23    affect your ability to fairly and impartially judge the

24    testimony and credibility of any police officers or law

25    enforcement officers who might testify?
```

```
 1              PROSPECTIVE JUROR NO. 3:  Not at all.

 2              THE COURT:  Okay.  Thank you, sir.

 3              Juror No. 11, what was your major, sir, for

 4   your bachelor's?

 5              PROSPECTIVE JUROR NO. 11:  Business

 6   administration.

 7              THE COURT:  Okay.  And you had indicated that

 8   you had -- you have a brother-in-law who's a Hialeah

 9   police officer.

10              PROSPECTIVE JUROR NO. 11:  Yes.

11              THE COURT:  Would that affect your ability to

12   sit and listen to the evidence in this case and be fair

13   to both the Government and the Defendants?

14              PROSPECTIVE JUROR NO. 11:  Not at all.

15              THE COURT:  Thank you, sir.

16              Juror No. 15, what are the days and hours that

17   you work, sir?

18              PROSPECTIVE JUROR NO. 15:  I work nights.

19              THE COURT:  So if you were chosen as a juror,

20   would you then go in the evening and work or would you

21   not go?

22              PROSPECTIVE JUROR NO. 15:  I guess you'd have

23   to ask them.

24              THE COURT:  So if they said to you you have

25   show up to work afterwards -- what are the hours that
```

1   you work at night?

2           PROSPECTIVE JUROR NO. 15:  I go in from 8:00

3   at night until 6:00 in the morning.

4           THE COURT:  It would be a little hard to go

5   from 8:00 to 6:00 and then come be a juror.

6           PROSPECTIVE JUROR NO. 15:  A little bit.

7           THE COURT:  Now, let's say on Mondays, when I

8   don't have trial -- do you work on the weekends at all?

9           PROSPECTIVE JUROR NO. 15:  Yes.

10          THE COURT:  What days?

11          PROSPECTIVE JUROR NO. 15:  Saturday, Sunday,

12  Monday, Tuesday.

13          THE COURT:  Saturday, Sunday, Monday, Tuesday.

14  So it's Saturday night, Sunday night, Monday night and

15  Tuesday night?

16          PROSPECTIVE JUROR NO. 15:  Right.

17          THE COURT:  Okay.  I think I asked you this

18  before.

19          If you're printing the paper, is it possible

20  to print it without reading it?

21          PROSPECTIVE JUROR NO. 15:  That's a new one

22  for me.  I don't think so.

23          THE COURT:  Okay, sir.  Thank you.

24          Juror No. 20, ma'am, you had indicated that

25  you had two children in Haiti.

```
 1            How old are they?  And if they are adult age,
 2  are they working?
 3            PROSPECTIVE JUROR NO. 20:  One is a priest,
 4  and the other one is the -- she's a teacher.
 5            THE COURT:  Okay.  Thank you.
 6            And Juror No. 21, prior to working with the
 7  school system as a paralegal, where else have you
 8  worked as a paralegal?  What kind of work were you
 9  doing as a paralegal?
10            PROSPECTIVE JUROR NO. 21:  In the private
11  sector, I was a supervisor in the word processing
12  department at a law firm.
13            THE COURT:  Okay.  So how long have you been
14  with the school system as a paralegal?
15            PROSPECTIVE JUROR NO. 21:  Ten years.
16            THE COURT:  And did you work as a paralegal
17  prior to that?
18            PROSPECTIVE JUROR NO. 21:  Somewhat.
19            THE COURT:  Doing what kind of work?
20            PROSPECTIVE JUROR NO. 21:  In the corporate,
21  at Akerman Senterfitt.
22            THE COURT:  Okay.  If somebody has BlackBerry
23  on, they need to turn it off, or something that
24  receives e-mails or some kind of Internet service.
25  That's what's happening.  It starts to compete with the
```

1  sound system.

2          Juror No. 22, what kind of law is practiced at

3  the law firm that you are working for?

4          PROSPECTIVE JUROR NO. 22:  It's

5  multi-practice.  So real estate, environmental

6  litigation.

7          THE COURT:  Criminal work as well?

8          PROSPECTIVE JUROR NO. 22:  Some, but very

9  little.

10         THE COURT:  Juror No. 29, are you working as a

11 pharmacist, sir?

12         PROSPECTIVE JUROR NO. 29:  No, ma'am.

13         THE COURT:  What are you doing?

14         PROSPECTIVE JUROR NO. 29:  As a tech.

15         THE COURT:  You're a pharmacist tech?

16         PROSPECTIVE JUROR NO. 29:  Yes.

17         THE COURT:  Do you have some kind of

18 certificate for that?

19         PROSPECTIVE JUROR NO. 29:  Yeah.  Pharmacy

20 tech degree, certificate.

21         THE COURT:  Thank you.

22         And, Juror No. 30, you had answered, sir, that

23 you were a witness to a crime.

24         PROSPECTIVE JUROR NO. 30:  Yes.

25         THE COURT:  What crime did you witness?

1          PROSPECTIVE JUROR NO. 30:  It was a domestic.

2          THE COURT:  And was it reported?

3          PROSPECTIVE JUROR NO. 30:  Yeah.

4          THE COURT:  Anyone arrested?

5          PROSPECTIVE JUROR NO. 30:  Yeah.

6          THE COURT:  Do you know what happened with the

7    case?

8          PROSPECTIVE JUROR NO. 30:  No, I don't.

9          THE COURT:  Were you generally satisfied or

10   dissatisfied with the way you were treated?

11         PROSPECTIVE JUROR NO. 30:  I was okay.  I was

12   satisfied.

13         THE COURT:  And did you also tell me that you

14   had put in an application to be a police officer?

15         PROSPECTIVE JUROR NO. 30:  Yes, I did.

16         THE COURT:  And where was that?

17         PROSPECTIVE JUROR NO. 30:  North Miami Beach,

18   Metro-Dade.

19         THE COURT:  And you said that, for medical

20   reasons, the application didn't go forward?

21         PROSPECTIVE JUROR NO. 30:  Right.

22         THE COURT:  Would that affect your ability to

23   sit and listen to the testimony of any police officers

24   or law enforcement officers and fairly and impartially

25   make a determination on whether they're being truthful

1    or not truthful or judge their credibility?

2         PROSPECTIVE JUROR NO. 30:  No, it wouldn't.

3    But the majority of my friends are police officers,

4    along with my daughter.

5         THE COURT:  Okay.  Thank you, sir.

6         Counsel, please approach.

7         (Whereupon, proceedings were had at side-bar

8    outside the presence of the jury which have been sealed

9    per instructions of the Court.)

10        (Whereupon, the following proceedings were had

11   in open court:)

12        THE COURTROOM DEPUTY:  For the jurors, I will

13   call your numbers and I ask you to meet me in the lobby

14   area.  You are released from this case.

15        Jurors No. 5, 7, 9, 10, 15, 17, 18, 25, 26.

16   If you could meet me in the --

17        THE COURT:  Thank you for your service.

18        THE COURTROOM DEPUTY:  If you could meet me in

19   the lobby.  Thank you so much.

20        (Thereupon, the dismissed members of

21   Prospective Jury Panel No. II retired from the

22   courtroom at 3:37 p.m. and the following proceedings

23   were had:)

24        THE COURT:  Ladies and gentlemen, there is a

25   third set of questions that I'm going to be asking each

1    one of you individually.

2          The process will then be if -- after that

3    process, if you still remain on the panel, it does not

4    mean that you've been chosen as a juror, but you're

5    under consideration.

6          So I'm not sure if -- I don't know if we'll

7    get through all of the individual questioning today.

8    If we don't, you'll need to come back tomorrow.

9          So you're going wait outside in the lobby

10   until your number is called.

11         Do not discuss this case either amongst

12   yourselves or with anyone else.  Have no contact

13   whatsoever with anyone associated with the trial.  Do

14   not read, listen or see anything touching on this

15   matter in any way.

16         If anyone should try to talk to you about this

17   case, you should immediately instruct them to stop and

18   report it to my staff.

19         I know I speak for everyone when I tell you

20   how much we do appreciate your patience in this matter.

21   If you would just wait outside, we'll call you as

22   quickly as we can.

23         (Whereupon, the remaining members of

24   Prospective Jury Panel No. II exited the courtroom at

25   3:39 p.m. and the following proceedings were had:)

```
 1              THE COURT:  Would you ask Juror No. 1 to come

 2    in.

 3              (Thereupon, Prospective Juror No. 1 entered

 4    the courtroom and the following proceedings were had:)

 5              THE COURT:  Hello.

 6              PROSPECTIVE JUROR NO. 1:  Hello.

 7              THE COURT:  Are you okay standing there?

 8              PROSPECTIVE JUROR NO. 1:  Yes, ma'am.

 9              THE COURT:  Okay.  In this case, the

10    Government has alleged that the Defendants were engaged

11    in conspiracies to commit various violations of federal

12    laws regarding terrorist activities.

13              The charges include conspiracies or agreements

14    to provide material support and resources to agents of

15    Al-Qaeda in conspiring to blow up the Sears Tower in

16    Chicago and several federal buildings in a planned war

17    against the United States.

18              Given that, is there anything that would

19    prevent you from being able to sit and listen to the

20    evidence in this case and be fair to both the

21    Government and the Defendants?

22              PROSPECTIVE JUROR NO. 1:  No.

23              THE COURT:  Okay.  I sense a bit of

24    hesitation.

25              PROSPECTIVE JUROR NO. 1:  No.  It's nothing
```

```
 1    that's gonna stop me from being able to listen to --
 2            THE COURT:  It seemed apparent to me in your
 3    reaction to what I was asking that you were thinking
 4    about something.  So --
 5            PROSPECTIVE JUROR NO. 1:  Nothing pertaining
 6    to the trial.  It's just -- just how long it's gonna
 7    take.
 8            THE COURT:  Okay.
 9            PROSPECTIVE JUROR NO. 1:  That's my only
10    concern.
11            THE COURT:  In this case, you may hear
12    evidence that the Government used informants who were
13    not United States citizens and who posed as
14    terrorists/agents of Al-Qaeda.
15            Do you have such strong feelings one way or
16    the other that you would not be able sit and listen to
17    this evidence and be fair to both the Government and
18    the Defendants?
19            PROSPECTIVE JUROR NO. 1:  No.  I'm a fair
20    person to anybody.
21            THE COURT:  Have you acquired any information
22    from newspaper, television, conversations or any other
23    sources about this case?
24            PROSPECTIVE JUROR NO. 1:  I don't believe I
25    ever heard of this case.  I don't think I have.
```

1        THE COURT:  Okay.  Do you read the *Miami*

2   *Herald*, *New Times* or *Sun-Sentinel* news publications

3   either in print or on-line?

4        PROSPECTIVE JUROR NO. 1:  No.  I just listen

5   to the news and the radio.  I don't read the newspaper.

6   And I don't do on-line that much.  Just to pay bills.

7        THE COURT:  Okay.  Have you read anything in

8   any newspaper or on the Internet or have you seen

9   anything on television or heard anything on the radio

10  about this case?

11       PROSPECTIVE JUROR NO. 1:  I'm not for sure.  I

12  think I have, but I'm not for sure.  I don't know a lot

13  of details about it.

14       THE COURT:  Do you remember anything of what

15  you -- was it on the radio?

16       PROSPECTIVE JUROR NO. 1:  How long ago did it

17  happen?  I don't know.  Could you tell me how long ago

18  it happened?  Like last year?  Year before last?

19       THE COURT:  Beginning in November, 2005,

20  and --

21       PROSPECTIVE JUROR NO. 1:  No.  I know I don't

22  remember that, then.  No.  No.  I don't remember

23  anything about it.

24       THE COURT:  Let me give you another date.

25       MS. ARANGO:  Judge, the arrests were in June

```
1    of 2006.

2              THE COURT:  Through June of 2006.

3              PROSPECTIVE JUROR NO. 1:  I don't remember.

4              THE COURT:  Okay.

5              PROSPECTIVE JUROR NO. 1:  If it's not

6    pertaining to me, I don't too much pay attention to it.

7              THE COURT:  Okay.  So I take it that you

8    haven't followed the course of this trial prior to

9    being here yesterday very closely.

10             PROSPECTIVE JUROR NO. 1:  No.  I didn't even

11   know it was a trial already.  No.

12             THE COURT:  Okay.  Have you discussed this

13   case with anyone?

14             PROSPECTIVE JUROR NO. 1:  No.

15             THE COURT:  Do you have an open mind regarding

16   this case?

17             PROSPECTIVE JUROR NO. 1:  Yes.  I have an open

18   mind concerning anybody.

19             THE COURT:  Have you formed an opinion

20   regarding any of the Defendants based upon any outside

21   information?

22             PROSPECTIVE JUROR NO. 1:  I didn't even know

23   any outside information.

24             THE COURT:  Okay.  Do you have any beliefs,

25   thoughts or opinions which may cause you to decide this
```

```
 1    case on anything other than the evidence you'll hear at

 2    trial?

 3              PROSPECTIVE JUROR NO. 1:  No.

 4              THE COURT:  Are you knowledgeable about the

 5    history and practice of Islam?

 6              PROSPECTIVE JUROR NO. 1:  No.

 7              THE COURT:  Are you knowledgeable about the

 8    history and practices of the Moorish Science Temple?

 9              PROSPECTIVE JUROR NO. 1:  Never heard of it.

10              THE COURT:  Are you knowledgeable about the

11    Universal Divine Saviors?

12              PROSPECTIVE JUROR NO. 1:  No.

13              THE COURT:  Are you a member of any type of

14    Masonic lodge or knowledgeable about the history,

15    teachings or practices of the Masons?

16              PROSPECTIVE JUROR NO. 1:  No.

17              THE COURT:  Have you or any of your family

18    members ever visited the Middle East?

19              PROSPECTIVE JUROR NO. 1:  No.

20              THE COURT:  Do you or family members or close

21    friends have any prior or present military service?

22              PROSPECTIVE JUROR NO. 1:  Family members?

23              THE COURT:  Yes.

24              PROSPECTIVE JUROR NO. 1:  No.

25              THE COURT:  Have you or any member of your
```

1   family or close friends had any personal experience

2   with acts of terrorism?

3          PROSPECTIVE JUROR NO. 1:  No.

4          THE COURT:  Do you know or do you have a

5   family member or friend who knows someone who was a

6   victim of a terrorist attack?

7          PROSPECTIVE JUROR NO. 1:  No.

8          THE COURT:  Have the events of September 11th

9   or any other terrorist act affected you to such an

10  extent that it would make it difficult for you to sit

11  and listen to the evidence in this case and be fair to

12  both the Government and the Defendants?

13         PROSPECTIVE JUROR NO. 1:  No.

14         THE COURT:  Have you or any family member or

15  close friend lost a job, a business contract or

16  experienced any other financial hardship as a result of

17  September 11th or any other terrorist attack?

18         PROSPECTIVE JUROR NO. 1:  No.

19         THE COURT:  Do you have an opinion as to who

20  was responsible for the attack on the United States on

21  September 11th, 2001?

22         PROSPECTIVE JUROR NO. 1:  No.

23         THE COURT:  Is there anything else you think

24  the Court or the attorneys should know that might

25  influence your ability to fairly and impartially judge

 1   the evidence in this case and follow the Court's

 2   instructions on the law?

 3          PROSPECTIVE JUROR NO. 1:  No.

 4          THE COURT:  Okay, ma'am.  If you would have a

 5   seat outside and not discuss my questions with anyone.

 6          PROSPECTIVE JUROR NO. 1:  Okay.

 7          (Thereupon, Prospective Juror No. 1 retired

 8   from the courtroom and the following proceedings were

 9   had:)

10          THE COURT:  Juror No. 2.

11          (Thereupon, Prospective Juror No. 2 entered

12   the courtroom and the following proceedings were had:)

13          THE COURT:  Hello.

14          PROSPECTIVE JUROR NO. 2:  Hello.

15          THE COURT:  Are you okay standing there?

16          PROSPECTIVE JUROR NO. 2:  Sure.

17          THE COURT:  In this case, the Government has

18   alleged that the Defendants were engaged in

19   conspiracies to commit various violations of federal

20   laws regarding terrorist activities.

21          The charges include conspiracies or agreements

22   to provide material support and resources to agents of

23   Al-Qaeda in conspiring to blow up the Sears Tower in

24   Chicago and several federal buildings in a planned war

25   against the United States.

1        Given that, is there anything that would

2   prevent you from being able to sit and listen to the

3   evidence in this case and be fair to both the

4   Government and the Defendants?

5        PROSPECTIVE JUROR NO. 2:  No.  I just -- the

6   terrorist thing scares me.

7        THE COURT:  Okay.  Would you be able to sit

8   and listen to the evidence in this case as a result of

9   the subject matter of the case and be a fair and

10  impartial juror?

11       PROSPECTIVE JUROR NO. 2:  I think so.

12       THE COURT:  Think so or know so?

13       PROSPECTIVE JUROR NO. 2:  Okay.  Yes.

14       THE COURT:  Okay.  In this case, you may hear

15  evidence that the Government used informants who are

16  not United States citizens and who posed as

17  terrorists/agents of Al-Qaeda.

18       Do you have such strong feelings one way or

19  the other that you would not be able to sit and listen

20  to this evidence and be fair to both the Government and

21  the Defendants?

22       PROSPECTIVE JUROR NO. 2:  Do I have strong

23  feelings against terrorists?

24       THE COURT:  Okay.  Do you understand that the

25  Government has to prove the case against a Defendant

1    beyond a reasonable doubt?

2            PROSPECTIVE JUROR NO. 2:  Yes.

3            THE COURT:  Given that you now know the

4    subject matter of the case, if the Government failed,

5    in your estimation, to prove its case against a

6    Defendant beyond a reasonable doubt, would you be able

7    to return a verdict of not guilty?

8            PROSPECTIVE JUROR NO. 2:  I don't think so.

9            THE COURT:  Okay, ma'am.  If you would have a

10   seat outside and not discuss my questions with anyone.

11           (Thereupon, Potential Juror No. 2 retired from

12   the courtroom and the following proceedings were had:)

13           THE COURT:  Need I inquire further?

14           MS. JHONES:  No, your Honor.

15           MR. GREGORIE:  No, your Honor.

16           THE COURT:  I'm sorry?

17           MR. CLARK:  Motion for cause.

18           THE COURT:  Any objection?

19           MR. GREGORIE:  None.

20           THE COURT:  Excused for cause.

21           Juror No. 3.

22           (Thereupon, Potential Juror No. 3 entered the

23   courtroom and the following proceedings were had:)

24           THE COURT:  Hello.

25           PROSPECTIVE JUROR NO. 3:  Hello.

1          THE COURT:  In this case, the Government has

2     alleged that the Defendants were engaged in

3     conspiracies to commit various violations of federal

4     laws regarding terrorist activities.

5          The charges include conspiracies or agreements

6     to provide material support and resources to agents of

7     Al-Qaeda in conspiring to blow up the Sears Tower in

8     Chicago and several federal buildings in a planned war

9     against the United States.

10         Given that, is there anything that would

11    prevent you from being able to sit and listen to the

12    evidence in this case and be fair to both the

13    Government and the Defendants?

14         PROSPECTIVE JUROR NO. 3:  Not at all.

15         THE COURT:  In this case, you may hear

16    evidence that the Government used informants who were

17    not United States citizens and who posed as

18    terrorists/agents of Al-Qaeda.

19         Do you have such strong feelings one way or

20    the other that you would not be able to sit and listen

21    to the evidence -- to this evidence and be fair to both

22    the Government and the Defendants?

23         PROSPECTIVE JUROR NO. 3:  No.

24         THE COURT:  Have you acquired any information

25    from newspaper, television, conversations or any other

1    sources about this case?

2            PROSPECTIVE JUROR NO. 3:  No.

3            THE COURT:  Do you read the *Miami Herald*,

4    *New Times* or *Sun-Sentinel* news publications either in

5    print or on-line?

6            PROSPECTIVE JUROR NO. 3:  I do receive it at

7    home, but I don't have time.  My schedule doesn't allow

8    me to -- doesn't allow me much time.

9            THE COURT:  Have you read anything in any

10   newspaper or on the Internet or have you seen anything

11   on television or heard anything on the radio about this

12   case?

13           PROSPECTIVE JUROR NO. 3:  No.

14           THE COURT:  Have you followed the course of

15   the proceedings relating to this trial prior to coming

16   to court today?

17           PROSPECTIVE JUROR NO. 3:  No.

18           THE COURT:  Have you discussed this case with

19   anyone?

20           PROSPECTIVE JUROR NO. 3:  No, ma'am.

21           THE COURT:  Do you have an open mind regarding

22   this case?

23           PROSPECTIVE JUROR NO. 3:  Yes, ma'am.

24           THE COURT:  Have you formed an opinion

25   regarding any of the Defendants based upon any outside

1   information?

2         PROSPECTIVE JUROR NO. 3:  Negative.  No.

3         THE COURT:  Do you have any beliefs, thoughts

4   or opinions which may cause you to decide this case on

5   anything other than the evidence you will hear at

6   trial?

7         PROSPECTIVE JUROR NO. 3:  No.

8         THE COURT:  Are you knowledgeable about the

9   history and practice of Islam?

10        PROSPECTIVE JUROR NO. 3:  No.

11        THE COURT:  Are you knowledgeable about the

12  history and practices of the Moorish Science Temple?

13        PROSPECTIVE JUROR NO. 3:  No.

14        THE COURT:  Are you knowledgeable about the

15  Universal Divine Saviors?

16        PROSPECTIVE JUROR NO. 3:  No.

17        THE COURT:  Are you a member of any type of

18  Masonic lodge?

19        PROSPECTIVE JUROR NO. 3:  No.

20        THE COURT:  Are you knowledgeable about the

21  history, teachings or practices of the Masons?

22        PROSPECTIVE JUROR NO. 3:  No.

23        THE COURT:  Have you, your spouse or any of

24  your family members ever visited the Middle East?

25        PROSPECTIVE JUROR NO. 3:  No.

1    THE COURT:  Do you or family members or close

2    friends have any prior or present military service?

3    PROSPECTIVE JUROR NO. 3:  No.

4    THE COURT:  Have you or any members of your

5    family or close friends had any personal experience

6    with acts of terrorism?

7    PROSPECTIVE JUROR NO. 3:  No.

8    THE COURT:  Do you know or do you have a

9    family member or friend who knows someone who was a

10   victim of a terrorist attack?

11   PROSPECTIVE JUROR NO. 3:  No.

12   THE COURT:  Have the events of September 11th

13   or any other terrorist act affected you to such an

14   extent that it would make it difficult for you to sit

15   and listen to the evidence in this case and be fair to

16   both the Government and the Defendants?

17   PROSPECTIVE JUROR NO. 3:  No.

18   THE COURT:  Have you or any family member or

19   close friend lost a job, a business contract or

20   experienced any other financial hardship as a result of

21   September 11th or any other terrorist attack?

22   PROSPECTIVE JUROR NO. 3:  I was out of a job

23   for a day or two, since I work at MIA.  But once

24   everything went back to normal -- we still got paid for

25   it.  But since we couldn't fly, we were just grounded

1    until everything went back to normal.

2        THE COURT:  Would that have any impact on your

3    service as a fair and impartial juror?

4        PROSPECTIVE JUROR NO. 3:  No.

5        THE COURT:  Is there anything else you think

6    the Court or the attorneys should know that might

7    influence your ability to fairly and impartially judge

8    the evidence in this case and follow the Court's

9    instructions on the law?

10       PROSPECTIVE JUROR NO. 3:  No.

11       MS. ARANGO:  Judge, No. 26.

12       THE COURT:  Do you have an opinion as to who

13   was responsible for the attack on the United States on

14   September 11th, 2001?

15       PROSPECTIVE JUROR NO. 3:  No.

16       THE COURT:  All right, sir.  If you would have

17   a seat outside and not discuss my questions with

18   anyone.

19       (Thereupon, Potential Juror No. 3 retired from

20   the courtroom and the following proceedings were had:)

21       THE COURT:  Juror No. 4.

22       (Thereupon, Potential Juror No. 4 entered the

23   courtroom and the following proceedings were had:)

24       THE COURT:  Hello.

25       In this case, the Government has alleged that

1    the Defendants were engaged in conspiracies to commit

2    various violations of federal laws regarding terrorist

3    activities.

4         The charges include conspiracies or agreements

5    to provide material support and resources to agents of

6    Al-Qaeda in conspiring to blow up the Sears Tower in

7    Chicago and several federal buildings in a planned war

8    against the United States.

9         Given that, is there anything that would

10   prevent you from being able to sit and listen to the

11   evidence in this case and be fair to both the

12   Government and the Defendants?

13        PROSPECTIVE JUROR NO. 4:  At this time, no.

14        THE COURT:  Would there be a time where it was

15   a different answer?

16        PROSPECTIVE JUROR NO. 4:  Well, no, not

17   really.

18        THE COURT:  Okay.  In this case, you may hear

19   evidence that the Government used informants who were

20   not United States citizens and who posed as

21   terrorists/agents of Al-Qaeda.

22        Do you have such strong feelings one way or

23   the other that you would not be able to sit and listen

24   to this evidence and be fair to both the Government and

25   the Defendants?

1          PROSPECTIVE JUROR NO. 4:  No.

2          THE COURT:  Have you acquired any information

3   from newspaper, television, conversations or any other

4   sources about this case?

5          PROSPECTIVE JUROR NO. 4:  I'm not quite sure.

6   If this has anything to do with the seven that we've

7   been discussing among family members or something about

8   the Liberty City 7, then I have read some.  We've

9   discussed it among family members and some outsiders.

10          Other than that -- if that's not what you're

11   talking about, then I can say "no."

12          THE COURT:  What have you read about the

13   Liberty City case?

14          PROSPECTIVE JUROR NO. 4:  It was speaking

15   about terrorism, wanting to blow up the Sears Towers,

16   and they were all black men that were -- how should I

17   say it? -- that were arrested.

18          It was seven black men that were arrested and,

19   you know, opinion arrived from that, you know, by

20   reading something.

21          I think a family member and I myself all -- I

22   don't necessarily say I read it.  You know how you just

23   browse through something and you pick up little bits

24   and pieces out of the newspaper?

25          And then you get with family members or

```
 1   friends and they start talking about it and you
 2   remember something that you had read.  And that's --
 3           THE COURT:  Do you remember what the
 4   conversations were that you had with family members and
 5   friends about it?
 6           PROSPECTIVE JUROR NO. 4:  No.  Not really.
 7   They were just saying, you know, "What a shame, you
 8   know, all these black guys being arrested.  Couldn't
 9   they have found something better to do?"
10           And, you know, one opinion led to another, you
11   know.  "They should be hung," "They should be caught,"
12   "They should be" -- you know, just talk among family
13   members like, you know.
14           THE COURT:  And did you voice any opinion?
15           PROSPECTIVE JUROR NO. 4:  Oh, yeah.  I think I
16   did.  It's been a while back, you know.  I can't
17   remember everything that was said.
18           But I'm quite sure because I am a boisterous
19   person and I am opinionated and I do have a tendency to
20   jump in and say things even if I'm right or even if I'm
21   wrong.
22           So yeah.  I could have said anything.  But to
23   remember if I -- you know, what I said, no.  I couldn't
24   tell you what I said.
25           THE COURT:  Okay.  Do you remember your
```

1   opinion when you were reading it and discussing it?

2            PROSPECTIVE JUROR NO. 4:  No.  No.  That's

3   what I'm saying.  I couldn't remember my opinion.

4            THE COURT:  Okay.

5            PROSPECTIVE JUROR NO. 4:  It's been a while

6   back.

7            THE COURT:  Do you read the *Miami Herald*,

8   *New Times* or *Sun-Sentinel* news publications in print --

9   I you don't do it on-line because you told me you never

10  put on a computer.  Right?  So do you get papers and

11  read it?

12           PROSPECTIVE JUROR NO. 4:  Yeah.

13           THE COURT:  What papers do you get?

14           PROSPECTIVE JUROR NO. 4:  *Miami Herald*.

15           THE COURT:  Okay.  And do you read the *Miami*

16  *Herald* daily?

17           PROSPECTIVE JUROR NO. 4:  No.  Weekender.  Get

18  weekends.

19           THE COURT:  Do you read it cover to cover or

20  just browse through it?

21           PROSPECTIVE JUROR NO. 4:  I won't say I read

22  it cover to cover.  A section I do.  The *Topics Parade*

23  I do.

24           THE COURT:  How about the local news?

25           PROSPECTIVE JUROR NO. 4:  Well, I browse

1    through the local news because, you know, I'm hearing

2    it on the 6:00 news or 5:00 -- 4:00 news or whatever.

3    So I have a tendency to kind of, you know, just browse

4    through that.

5           THE COURT:  So you watch the television news

6    on a daily basis?

7           PROSPECTIVE JUROR NO. 4:  Yeah.

8           THE COURT:  Do you remember seeing or hearing

9    anything on the television news about the Liberty City

10   case?

11          PROSPECTIVE JUROR NO. 4:  Only through -- I

12   wouldn't say I sat and, you know, just listened to it

13   intensely.  But, you know, as I'm going through the

14   house -- because I always have a TV on in my living

15   room, you know.

16          Like I say, you pick up bits and pieces.  If

17   something catch my interest or catch my ear, then I

18   will stand and I will pay attention to it.  But,

19   normally, no, you get bits and pieces.

20          Like I said, most of my conversation came from

21   reading what I had read in the newspaper or browsed

22   through the newspaper where I was able to comment on

23   it.

24          THE COURT:  Okay.  Have you followed the

25   course of the proceedings leading up to this trial

1    closely prior to coming to court today?

2              PROSPECTIVE JUROR NO. 4:  No.

3              THE COURT:  Have you discussed this case with

4    anyone other than what you've already told me?

5              PROSPECTIVE JUROR NO. 4:  No.

6              THE COURT:  Do you have an open mind regarding

7    this case?

8              PROSPECTIVE JUROR NO. 4:  I don't want to say

9    "yes" because, you know, I'm kind of in between, you

10   know.  Because, you know, I can -- I'm only focusing

11   and I'm only saying my opinion because of what I've,

12   you know, browsed through.

13             I'm not going to say what I've actually really

14   sat down and read with interest, you know, or to say

15   can I be fully open -- that's a "yes" and a "no" for

16   me.  It's not a fully "yes" and it's not a fully "no,"

17   you know.

18             THE COURT:  What's "yes" about it, and what's

19   "no" about it?

20             PROSPECTIVE JUROR NO. 4:  If I -- I think, if

21   I had more information or, you know, by me just sitting

22   and -- you know, because my mind had already been

23   leaning towards, "Well, you know, these guys are

24   guilty.  Then, they need to be" -- you know, that was

25   my own personal opinion.  I never spoke that to anybody

 1    else.

 2              You know, if this is what they done, then, I

 3    feel that they should be punished for it, no matter --

 4    you know, within the law -- whatever they did, within

 5    the law, that they should be punished for it.

 6              Then, again, I have to stop and I have to

 7    think, because I -- my family is a tricultural family

 8    and I've got, you know, different nationalities in my

 9    family.

10              And then, when we sit and we discuss it, you

11    have a change of mind after hearing all these other

12    opinions, you know, and the way -- you know, what

13    culture they came from and what was happening over

14    there.  Then you have a change of heart, you know.

15              So that's why I say I couldn't say "yeah," you

16    know.  If it was -- you know, I mean -- Judge, I really

17    have to search my heart to say -- to actually give you

18    an honest answer whether I can be really openly and say

19    "yes" or openly and say "no."

20              THE COURT:  Okay.  Well, let me ask you this

21    question:  Would your opinion affect your ability to

22    determine the Defendants' guilt based solely on the

23    evidence presented at trial?

24              PROSPECTIVE JUROR NO. 4:  No.  I don't think

25    so.  No.

```
 1              THE COURT:  Think so or know so?

 2              PROSPECTIVE JUROR NO. 4:  No.  I know so.

 3              THE COURT:  Okay.  So would you then be able

 4   to put aside whatever opinion you may have had or

 5   thought you had or sort of had and sit and listen to

 6   the evidence in this case and be fair to both the

 7   Government and the Defendants?

 8              PROSPECTIVE JUROR NO. 4:  In that case, yes.

 9              THE COURT:  And would you make a determination

10   based solely on the evidence presented at trial?

11              PROSPECTIVE JUROR NO. 4:  Based solely on the

12   evidence presented at trial, I would be.

13              THE COURT:  Okay.  And if the Government

14   failed to prove a case -- strike that.

15              Do you understand that the Government has the

16   burden of proof in a criminal case?

17              PROSPECTIVE JUROR NO. 4:  Yes.

18              THE COURT:  And do you understand that that

19   burden of proof is beyond a reasonable doubt?

20              PROSPECTIVE JUROR NO. 4:  Yes.

21              THE COURT:  If the Government failed to prove

22   its case against a Defendant beyond a reasonable doubt,

23   would you be able to find that Defendant not guilty?

24              PROSPECTIVE JUROR NO. 4:  Yes.

25              THE COURT:  And if the Government proved its
```

 1    case against a Defendant beyond a reasonable doubt,

 2    would you be able to find that Defendant guilty?

 3            PROSPECTIVE JUROR NO. 4:  Yes.

 4            THE COURT:  Do you have any beliefs, thoughts

 5    or opinions which may cause you to decide this case on

 6    anything other than the evidence you'll hear at trial?

 7            PROSPECTIVE JUROR NO. 4:  No.

 8            THE COURT:  Are you knowledgeable about the

 9    history and practice of Islam?

10            PROSPECTIVE JUROR NO. 4:  No.  But I have a

11    brother that practiced it at one time, still have a

12    little beliefs in it.

13            THE COURT:  Did you ever discuss it with him?

14            PROSPECTIVE JUROR NO. 4:  Years ago.  But no,

15    not recently, because I --

16            THE COURT:  Is he still a practicing Muslim?

17            PROSPECTIVE JUROR NO. 4:  No.  He's not a

18    practicing Muslim.  But a lot of things that he says

19    that results back to what he's learned when he was over

20    in Temple.

21            THE COURT:  Okay.  And what Temple was that?

22            PROSPECTIVE JUROR NO. 4:  I don't know which

23    one.  The only thing I can tell you -- I don't know the

24    name of it.  But it was over on 62nd Street.

25            But this was years ago.  This was back in

1    the -- it was -- it had to be either the latter '70s or

2    the early '80s.

3            THE COURT:  Okay.  Are you knowledgeable about

4    the history and practices of the Moorish Science

5    Temple?

6            PROSPECTIVE JUROR NO. 4:  No.

7            THE COURT:  Are you knowledgeable about the

8    Universal Divine Saviors?

9            PROSPECTIVE JUROR NO. 4:  No.

10           THE COURT:  Are you knowledgeable about the

11   history, teachings or practices of the Masons or are

12   you a member of any type of Masonic lodge?

13           PROSPECTIVE JUROR NO. 4:  No.

14           THE COURT:  Have you or any of your family

15   members ever visited the Middle East?

16           PROSPECTIVE JUROR NO. 4:  No.

17           THE COURT:  Do you or family members or close

18   friends have any prior or present military service?

19           PROSPECTIVE JUROR NO. 4:  Yes.  Two of my

20   brothers.

21           THE COURT:  And in what branch of service were

22   they?

23           PROSPECTIVE JUROR NO. 4:  One's Marine.  One's

24   Army.  Oh.  And I also had a brother-in-law that was

25   Air Force, and I have a nephew that was Army.

1    THE COURT:  Okay.  Did any of them see combat?

2    PROSPECTIVE JUROR NO. 4:  My oldest brother

3    did.  I'm not quite sure of my brother that's under me.

4    But my oldest brother did, Vietnam War.

5    THE COURT:  And your nephew:  Where did he --

6    where was his place of service?  Do you remember?

7    PROSPECTIVE JUROR NO. 4:  No.  I know his

8    branch was the Army.  But where he served at, no.  I

9    can't remember.

10   THE COURT:  Was anyone injured?  Anyone who

11   was in the service injured?

12   PROSPECTIVE JUROR NO. 4:  No, unless you want

13   to count my father.  But that was in World War II.  He

14   lost an eye.  But none of the other ones, no.

15   THE COURT:  Did any of them have any

16   disciplinary action taken against them, to your

17   knowledge?

18   PROSPECTIVE JUROR NO. 4:  If I'm not mistaken,

19   my nephew was dishonorable discharged.  I'm not quite

20   sure.

21   THE COURT:  Do you know why?

22   PROSPECTIVE JUROR NO. 4:  Only hearsay.  If I

23   can remember correctly, I think it had something to do

24   with him fraternizing with a female officer or

25   something like that.  It was an officer that was above

1    him that he had and he was a married man at the time.

2          THE COURT:  Okay.  Have you or any members of

3    your family or close friends had any personal

4    experience with acts of terrorism?

5          PROSPECTIVE JUROR NO. 4:  No.

6          THE COURT:  Do you know or do you have a

7    family member or friends who knows someone who was a

8    victim of a terrorist attack?

9          PROSPECTIVE JUROR NO. 4:  No.

10          THE COURT:  Have the events of September 11th

11    or any other terrorist act affected you to such an

12    extent that it would make it difficult for you to sit

13    and listen to the evidence in this case and be fair to

14    both the Government and the Defendants?

15          PROSPECTIVE JUROR NO. 4:  No.

16          THE COURT:  Have you or any family member or

17    close friend lost a job, a business contract or

18    experienced any other financial hardship as a result of

19    September 11th or any other terrorist attack?

20          PROSPECTIVE JUROR NO. 4:  No.

21          THE COURT:  Do you have an opinion as to who

22    was responsible for the attack on the United States on

23    September 11th, 2001?

24          PROSPECTIVE JUROR NO. 4:  No.

25          THE COURT:  Is there anything else you think

```
 1    the Court or the attorneys should know that might

 2    influence your ability to fairly and impartially judge

 3    the evidence in this case and follow the Court's

 4    instructions on the law?

 5              PROSPECTIVE JUROR NO. 4:  No.  I think I have

 6    an open mind.

 7              THE COURT:  Okay, ma'am.  If you'd have a seat

 8    outside and not discuss my questions with anyone.

 9              Thank you.

10              (Thereupon, Potential Juror No. 4 retired from

11    the courtroom and the following proceedings were had:)

12              THE COURT:  Juror No. 6.

13              (Thereupon, Potential Juror No. 6 entered the

14    courtroom and the following proceedings were had:)

15              THE COURT:  Hello.  Can you stand there at the

16    podium?  Is that okay?

17              PROSPECTIVE JUROR NO. 6:  That's okay.

18              THE COURT:  In this case, the Government has

19    alleged that the Defendants were engaged in

20    conspiracies to commit various violations of federal

21    laws regarding terrorist activities.

22              The charges include conspiracies or agreements

23    to provide material support and resources to agents of

24    Al-Qaeda in conspiring to blow up the Sears Tower in

25    Chicago and several federal buildings in a planned war
```

1    against the United States.

2         Given that, is there anything that would

3    prevent you from being able to sit and listen to the

4    evidence in this case and be fair to both the

5    Government and the Defendants?

6         PROSPECTIVE JUROR NO. 6:  No, your Honor.

7         THE COURT:  In this case, you may hear

8    evidence that the Government used informants who were

9    not United States citizens and who posed as

10   terrorists/agents of Al-Qaeda.

11        Do you have such strong feelings one way or

12   the other that you would not be able to sit and listen

13   to this evidence and be fair to both the Government and

14   the Defendants?

15        PROSPECTIVE JUROR NO. 6:  No, your Honor.

16        THE COURT:  Have you acquired any information

17   from newspaper, television, conversations or any other

18   sources about this case?

19        PROSPECTIVE JUROR NO. 6:  No.

20        THE COURT:  Do you read the *Miami Herald*,

21   *New Times* or *Sun-Sentinel* news publications either in

22   print or on-line?

23        PROSPECTIVE JUROR NO. 6:  Every day I read the

24   *Miami Herald*.

25        THE COURT:  Have you read anything in any

1    newspaper or on the Internet or have you seen anything

2    on television or heard anything on the radio about this

3    case?

4              PROSPECTIVE JUROR NO. 6:  No.

5              THE COURT:  Have you followed the course of

6    the proceedings leading up to this trial prior to today

7    closely?

8              PROSPECTIVE JUROR NO. 6:  Yes.

9              THE COURT:  Let me ask it again.

10             Have you followed the proceedings leading up

11   to the trial today -- have you followed it at all?

12             PROSPECTIVE JUROR NO. 6:  I followed it.  You

13   say if I --

14             THE COURT:  Not what happened today in court.

15   Prior to today.

16             PROSPECTIVE JUROR NO. 6:  Oh.  No.  No.

17             THE COURT:  Have you discussed this case with

18   anyone?

19             PROSPECTIVE JUROR NO. 6:  No.

20             THE COURT:  Do you have an open mind regarding

21   this case?

22             PROSPECTIVE JUROR NO. 6:  No.

23             THE COURT:  You don't have an open mind?

24             PROSPECTIVE JUROR NO. 6:  Open mind?  Yes.  I

25   have an open mind from this case.

```
 1              THE COURT:  Have you formed an opinion

 2   regarding any of the Defendants based upon any outside

 3   information?

 4              PROSPECTIVE JUROR NO. 6:  No.

 5              THE COURT:  Do you have any beliefs, thoughts

 6   or opinions which may cause you to decide this case on

 7   anything other than the evidence you will hear at

 8   trial?

 9              PROSPECTIVE JUROR NO. 6:  No.

10              THE COURT:  Are you knowledgeable about the

11   history and practice of Islam?

12              PROSPECTIVE JUROR NO. 6:  Excuse me?

13              THE COURT:  Are you knowledgeable about the

14   history and practice of Islam?

15              PROSPECTIVE JUROR NO. 6:  No.

16              THE COURT:  Are you knowledgeable about the

17   history and practices of the Moorish Science Temple?

18              PROSPECTIVE JUROR NO. 6:  No.

19              THE COURT:  Are you knowledgeable about the

20   Universal Divine Saviors?

21              PROSPECTIVE JUROR NO. 6:  No.

22              THE COURT:  Are you knowledgeable about the

23   history, teachings or practices of the Masons or are

24   you a member of any type of Masonic lodge?

25              PROSPECTIVE JUROR NO. 6:  No.
```

1      THE COURT:  Have you, your spouse or any of

2  your family members ever visited the Middle East?

3      PROSPECTIVE JUROR NO. 6:  No.

4      THE COURT:  Do you or family members or close

5  friends have any prior or present military service?

6      PROSPECTIVE JUROR NO. 6:  No.

7      THE COURT:  Have you or any members of your

8  family or close friends had any personal experience

9  with acts of terrorism?

10     PROSPECTIVE JUROR NO. 6:  No, your Honor.

11     THE COURT:  Do you know or do you have a

12  family member or friends who knows someone who was a

13  victim of a terrorist attack?

14     PROSPECTIVE JUROR NO. 6:  No.

15     THE COURT:  Have the events of September 11th

16  or any other terrorist act affected you to such an

17  extent that it would make it difficult for you to sit

18  and listen to the evidence in this case and be fair to

19  both the Government and the Defendant?

20     PROSPECTIVE JUROR NO. 6:  No.

21     THE COURT:  Have you or any family member or

22  close friend lost a job, a business contract or

23  experienced any other financial hardship as a result of

24  September 11th or any other terrorist attack?

25     PROSPECTIVE JUROR NO. 6:  No.

1          THE COURT:  Do you have an opinion as to who

2    was responsible for the attack on the United States on

3    September 11th, 2001?

4          PROSPECTIVE JUROR NO. 6:  Excuse me?  Could

5    you repeat.

6          THE COURT:  Do you have an opinion as to who

7    was responsible for the attack on the United States on

8    September 11th, 2001?

9          PROSPECTIVE JUROR NO. 6:  No.

10          THE COURT:  Is there anything else you think

11    the Government or the attorneys should know that might

12    influence your ability to fairly and impartially judge

13    the evidence in this case and follow the Court's

14    instructions on the law?

15          PROSPECTIVE JUROR NO. 6:  No, your Honor.

16          THE COURT:  All right, ma'am.  If you would

17    have a seat outside and not discuss my questions with

18    anyone.

19          Thank you.

20          PROSPECTIVE JUROR NO. 6:  Okay.

21          (Thereupon, Potential Juror No. 6 retired from

22    the courtroom and the following proceedings were had:)

23          THE COURT:  Juror No. 8.

24          (Thereupon, Potential Juror No. 8 entered the

25    courtroom and the following proceedings were had:)

1           THE COURT:  Hello.

2           PROSPECTIVE JUROR NO. 8:  Hello.

3           THE COURT:  Is that okay there?

4           PROSPECTIVE JUROR NO. 8:  Yes.

5           THE COURT:  Or would you rather sit down?

6           PROSPECTIVE JUROR NO. 8:  I'll sit.

7           THE COURT:  So we need to give her the

8    handheld microphone, please.  Just take any seat you

9    want.

10          PROSPECTIVE JUROR NO. 8:  (Complies.)

11          THE COURT:  In this case, the Government has

12   alleged that the Defendants were engaged in

13   conspiracies to commit various violations of federal

14   laws regarding terrorist activities.

15          The charges include conspiracies or agreements

16   to provide material support and resources to agents of

17   Al-Qaeda in conspiring to blow up the Sears Tower in

18   Chicago and several federal buildings in a planned war

19   against the United States.

20          Given that, is there anything that would

21   prevent you from being able to sit and listen to the

22   evidence in this case and be fair to both Government

23   and the Defendants?

24          PROSPECTIVE JUROR NO. 6:  No.

25          THE COURT:  In this case, you may hear

1   evidence that the Government used informants who are

2   not United States citizens and who posed as

3   terrorists/agents of Al-Qaeda.

4        Do you have such strong feelings one way or

5   the other that you would not be able to sit and listen

6   to this evidence and be fair to both the Government and

7   the Defendants?

8        PROSPECTIVE JUROR NO. 8:  No.

9        THE COURT:  Have you acquired any information

10  from newspaper, television, conversations or any other

11  sources about this case?

12       PROSPECTIVE JUROR NO. 8:  I've seen things on

13  TV, but that's it.

14       THE COURT:  What have you seen on TV?

15       PROSPECTIVE JUROR NO. 8:  Just some things in

16  the news.

17       THE COURT:  Do you remember what it was?

18       PROSPECTIVE JUROR NO. 8:  No.  No.

19       THE COURT:  Do you remember the gist of it?

20       PROSPECTIVE JUROR NO. 8:  Not really.

21       THE COURT:  Okay.  Do you read the *Miami

22  Herald*, *New Times* or *Sun-Sentinel* news publications

23  either in print or on-line?

24       PROSPECTIVE JUROR NO. 8:  The *Miami Herald*,

25  newspaper and on-line sometimes.

1          THE COURT:  Have you read anything in any

2     newspaper or on the Internet or have you seen anything

3     on television or heard anything on the radio about this

4     case other than what you told me about?

5          PROSPECTIVE JUROR NO. 8:  No, I have not.

6          THE COURT:  Have you followed the course of

7     the proceedings leading up to this trial closely prior

8     to coming to court today?

9          PROSPECTIVE JUROR NO. 8:  No, I haven't.

10         THE COURT:  Have you discussed this case with

11    anyone?

12         PROSPECTIVE JUROR NO. 8:  No, I haven't.

13         THE COURT:  Do you have an open mind regarding

14    this case?

15         PROSPECTIVE JUROR NO. 8:  Yes.

16         THE COURT:  Have you formed an opinion

17    regarding any of the Defendants based upon any outside

18    information?

19         PROSPECTIVE JUROR NO. 8:  No, I haven't.

20         THE COURT:  Do you have any beliefs, thoughts

21    or opinions which may cause you to decide this case on

22    anything other than the evidence you will hear at

23    trial?

24         PROSPECTIVE JUROR NO. 8:  No, I don't.

25         THE COURT:  Are you knowledgeable about the

```
 1   history and practice of Islam?

 2         PROSPECTIVE JUROR NO. 8:  Not really.

 3         THE COURT:  Do you have some information?

 4         PROSPECTIVE JUROR NO. 8:  Well, I've heard

 5   some things, but....

 6         THE COURT:  Just general things that you

 7   heard --

 8         PROSPECTIVE JUROR NO. 8:  Yes.

 9         THE COURT:  -- in the news?

10         PROSPECTIVE JUROR NO. 8:  Yes.

11         THE COURT:  Okay.  Are you knowledgeable about

12   the history and practices of the Moorish Science

13   Temple?

14         PROSPECTIVE JUROR NO. 8:  No, I'm not.

15         THE COURT:  Are you knowledgeable about the

16   Universal Divine Saviors?

17         PROSPECTIVE JUROR NO. 8:  No.

18         THE COURT:  Are you a member of any type of

19   Masonic lodge or are you knowledgeable about the

20   history, teachings or practices of the Masons?

21         PROSPECTIVE JUROR NO. 8:  No, I'm not.

22         THE COURT:  Have you, your spouse or any of

23   your family members ever visited the Middle East?

24         PROSPECTIVE JUROR NO. 8:  No.

25         THE COURT:  Do you or family members or close
```

1    friends have any prior or present military service?

2         PROSPECTIVE JUROR NO. 8:  Well, I have a

3    brother who was in the service.

4         THE COURT:  What branch of the service was he

5    in?

6         PROSPECTIVE JUROR NO. 8:  He was in the Army.

7         THE COURT:  And when was that?

8         PROSPECTIVE JUROR NO. 8:  A long time ago.

9         THE COURT:  Did he see any combat?

10        PROSPECTIVE JUROR NO. 8:  No.

11        THE COURT:  Where was his place of service?

12   Do you remember?

13        PROSPECTIVE JUROR NO. 8:  Fort Stewart.

14        THE COURT:  Was he ever in the military police

15   or shore patrol?

16        PROSPECTIVE JUROR NO. 8:  No.

17        THE COURT:  Did he have any disciplinary

18   action taken against him?

19        PROSPECTIVE JUROR NO. 8:  Not that I know of.

20        THE COURT:  Do you know whether he received an

21   honorable discharge?

22        PROSPECTIVE JUROR NO. 8:  Yes, he did.  He

23   retired.

24        THE COURT:  Okay.  Have you or any members of

25   your family or close friends had any personal

1    experience with acts of terrorism?

2         PROSPECTIVE JUROR NO. 8:  No.

3         THE COURT:  Do you know or do you have a

4    family member or friend who knows someone who was a

5    victim of a terrorist attack?

6         PROSPECTIVE JUROR NO. 8:  No.

7         THE COURT:  Have the events of September 11th

8    or any other terrorist act affected you to such an

9    extent that it would make it difficult for you to sit

10   and listen to the evidence in this case and be fair to

11   both the Government and the Defendants?

12        PROSPECTIVE JUROR NO. 8:  No.

13        THE COURT:  Have you or any family member or

14   close friend lost a job, a business contract or

15   experienced any other financial hardship as a result of

16   September 11th or any other terrorist attack?

17        PROSPECTIVE JUROR NO. 8:  No.

18        THE COURT:  Do you have an opinion as to who

19   was responsible for the attack on the United States on

20   September 11th, 2001?

21        PROSPECTIVE JUROR NO. 8:  No, I don't.

22        THE COURT:  Is there anything else you think

23   the Court or the attorneys should know that might

24   influence your ability to fairly and impartially judge

25   the evidence in this case and follow the Court's

1    instructions on the law?

2              PROSPECTIVE JUROR NO. 8:  No.

3              THE COURT:  All right, ma'am.  If you would

4    have a seat outside and not discuss my questions with

5    anyone.

6              PROSPECTIVE JUROR NO. 8:  Okay.  Thank you.

7              (Thereupon, Potential Juror No. 8 retired from

8    the courtroom and the following proceedings were had:)

9              THE COURT:  Juror No. 11.

10             (Thereupon, Potential Juror No. 11 entered the

11   courtroom and the following proceedings were had:)

12             THE COURT:  Hello.

13             PROSPECTIVE JUROR NO. 11:  Hi.

14             THE COURT:  In this case, the Government has

15   alleged that the Defendants were engaged in

16   conspiracies to commit various violations of federal

17   laws regarding terrorist activities.

18             The charges include conspiracies or agreements

19   to provide material support and resources to agents of

20   Al-Qaeda in conspiring to blow up the Sears Tower in

21   Chicago and several federal buildings in a planned war

22   against the United States.

23             Given that, is there anything that would

24   prevent you from being able to sit and listen to the

25   evidence in this case and be fair to both the

```
1    Government and the Defendants?

2            PROSPECTIVE JUROR NO. 11:  Just the fact that

3    I heard about the case on the news.

4            THE COURT:  Okay.  What did you hear on the

5    news?

6            PROSPECTIVE JUROR NO. 11:  You know, that --

7    about this case, about, basically, that there was a --

8    some kind of a conspiracy going on here in South

9    Florida about Al-Qaeda.  I heard it on the news,

10   Channel 7.

11           THE COURT:  And do you remember when that was?

12   Was it recently or awhile ago?

13           PROSPECTIVE JUROR NO. 11:  A few months ago.

14           THE COURT:  Okay.

15           PROSPECTIVE JUROR NO. 11:  Actually -- yeah.

16           THE COURT:  Okay.  In this case, you may hear

17   evidence that the Government used informants who were

18   not United States citizens and who posed as agents of

19   Al-Qaeda.

20           Do you have such strong feelings one way or

21   the other that you would not be able to sit and listen

22   to this evidence and be fair to both the Government and

23   the Defendants?

24           PROSPECTIVE JUROR NO. 11:  No.

25           THE COURT:  Other than what you've just told
```

1    me, have you acquired any information from the

2    newspaper, television, conversations or any other

3    sources about this case?

4         PROSPECTIVE JUROR NO. 11:  No.

5         THE COURT:  Do you read the *Miami Herald*,

6    *New Times* or *Sun-Sentinel* news publications either in

7    print or on-line?

8         PROSPECTIVE JUROR NO. 11:  Yes, I do.

9         THE COURT:  Have you read anything in any

10   newspaper or on the Internet or have you seen anything

11   on television or heard anything on the radio about this

12   case other than what you saw on Channel 7?

13        PROSPECTIVE JUROR NO. 11:  No.

14        THE COURT:  Have you followed the course of

15   the proceedings leading up to this trial closely prior

16   to coming to court today?

17        PROSPECTIVE JUROR NO. 11:  No.

18        THE COURT:  Have you discussed this case with

19   anyone?

20        PROSPECTIVE JUROR NO. 11:  No.

21        THE COURT:  Do you have an open mind regarding

22   this case?

23        PROSPECTIVE JUROR NO. 11:  I'm sorry?

24        THE COURT:  Do you have an open mind regarding

25   this case?

1        PROSPECTIVE JUROR NO. 11:  Absolutely.

2        THE COURT:  Have you formed an opinion

3   regarding any of the Defendants based upon any outside

4   information?

5        PROSPECTIVE JUROR NO. 11:  No.

6        THE COURT:  Do you have any beliefs, thoughts

7   or opinions which may cause you to decide this case on

8   anything other than the evidence you will hear at

9   trial?

10        PROSPECTIVE JUROR NO. 11:  No.

11        THE COURT:  Are you knowledgeable about the

12   history and practice of Islam?

13        PROSPECTIVE JUROR NO. 11:  Somewhat.

14        THE COURT:  And where do you get your

15   information from?

16        PROSPECTIVE JUROR NO. 11:  I just like to

17   read.

18        THE COURT:  Okay.  Are you knowledgeable about

19   the history and practices of the Moorish Science

20   Temple?

21        PROSPECTIVE JUROR NO. 11:  No.

22        THE COURT:  Are you knowledgeable about the

23   Universal Divine Saviors?

24        PROSPECTIVE JUROR NO. 11:  No.

25        THE COURT:  Are you a member of any type of

```
 1   Masonic lodge or are you knowledgeable about the
 2   history, teachings or practices of the Masons?
 3             PROSPECTIVE JUROR NO. 11:  No.
 4             THE COURT:  Have you, your spouse or any of
 5   your family members ever visited the Middle East?
 6             PROSPECTIVE JUROR NO. 11:  No.
 7             THE COURT:  Do you or family members or close
 8   friends have any prior or present military service?
 9             PROSPECTIVE JUROR NO. 11:  Yes.  My
10   brother-in-law is in the Marines.
11             THE COURT:  And do you know where his place of
12   service was?
13             PROSPECTIVE JUROR NO. 11:  Afghanistan and
14   Iraq.
15             THE COURT:  When was that?
16             PROSPECTIVE JUROR NO. 11:  Recently.
17   Actually, he just came back about eight months ago --
18   eight or nine months ago.
19             THE COURT:  He served in combat?
20             PROSPECTIVE JUROR NO. 11:  Yes.
21             THE COURT:  Was he injured?
22             PROSPECTIVE JUROR NO. 11:  No.
23             THE COURT:  Was he in the military police or
24   shore patrol?
25             PROSPECTIVE JUROR NO. 11:  No.
```

1           THE COURT:  Did he have any disciplinary

2   action taken against him?

3           PROSPECTIVE JUROR NO. 11:  Not that I know of.

4           THE COURT:  Is he still in the Marines?

5           PROSPECTIVE JUROR NO. 11:  Yes.

6           THE COURT:  Do you know his rank?

7           PROSPECTIVE JUROR NO. 11:  I think he's a

8   captain.

9           THE COURT:  Okay.  Have you or any members of

10  your family or close friends had any personal

11  experience with acts of terrorism?

12          PROSPECTIVE JUROR NO. 11:  No.

13          THE COURT:  Do you know or do you have a

14  family member or friend who knows someone who was a

15  victim of a terrorist attack?

16          PROSPECTIVE JUROR NO. 11:  No.

17          THE COURT:  Have the events of September 11th

18  or any other terrorist act affected you to such an

19  extent that it would make it difficult for you to sit

20  and listen to the evidence in this case and be fair to

21  both the Government and the Defendants?

22          PROSPECTIVE JUROR NO. 11:  Well, September 11

23  made me extremely angry, you know.  I think it was a

24  cowardly thing to do.  But no.

25          THE COURT:  Have you or any family member or

1    close friend lost a job, a business contract or

2    experienced any other financial hardship as a result of

3    September 11th or any other terrorist attack?

4            PROSPECTIVE JUROR NO. 11:  No.

5            THE COURT:  Do you have an opinion as to who

6    was responsible for the attack on the United States on

7    September 11th, 2001?

8            PROSPECTIVE JUROR NO. 11:  Sure.

9            THE COURT:  And what is that opinion?

10           PROSPECTIVE JUROR NO. 11:  Al-Qaeda.

11           THE COURT:  Is there anything else you think

12   the Court or the attorneys should know that might

13   influence your ability to fairly and impartially judge

14   the evidence in this case and follow the Court's

15   instructions on the law?

16           PROSPECTIVE JUROR NO. 11:  No.

17           THE COURT:  Okay, sir.  If you would have a

18   seat outside and not discuss my questions with anyone.

19           (Thereupon, Potential Juror No. 11 retired

20   from the courtroom and the following proceedings were

21   had:)

22           THE COURT:  No. 12, please.

23           (Thereupon, Potential Juror No. 12 entered the

24   courtroom and the following proceedings were had:)

25           THE COURT:  Hello.

1           In this case, the Government has alleged that

2    the Defendants were engaged in conspiracies to commit

3    various violations of federal laws regarding terrorist

4    activities.

5           The charges include conspiracies or agreements

6    to provide material support and resources to agents of

7    Al-Qaeda in conspiring to blow up the Sears Tower in

8    Chicago and several federal buildings in a planned war

9    against the United States.

10           Given that, is there anything that would

11    prevent you from being able to sit and listen to the

12    evidence in this case and be fair to both the

13    Government and the Defendants?

14           PROSPECTIVE JUROR NO. 12:  No.

15           THE COURT:  In this case, you may hear

16    evidence that the Government used informants who were

17    not United States citizens and who posed as

18    terrorists/agents of Al-Qaeda.

19           Do you have such strong feelings one way or

20    the other that you would not be able to sit and listen

21    to this evidence and be fair to both the Government and

22    the Defendants?

23           PROSPECTIVE JUROR NO. 12:  No.

24           THE COURT:  Have you acquired any information

25    from newspaper, television, conversations or any other

1    sources about this case?

2         PROSPECTIVE JUROR NO. 12:  Yes.

3         THE COURT:  And from what sources have you

4    acquired information?

5         PROSPECTIVE JUROR NO. 12:  Newspapers,

6    Internet, work.

7         THE COURT:  Do you remember what newspaper?

8         PROSPECTIVE JUROR NO. 12:  *Herald*.

9         THE COURT:  *Herald*?

10        PROSPECTIVE JUROR NO. 12:  Yes.

11        THE COURT:  Do you remember what it was?

12        PROSPECTIVE JUROR NO. 12:  Discussing --

13   exactly what it was, you mean?

14        THE COURT:  Well, when was it?

15        PROSPECTIVE JUROR NO. 12:  Tuesday.

16        THE COURT:  So it was recently?

17        PROSPECTIVE JUROR NO. 12:  Yes.

18        THE COURT:  And on the Internet?

19        PROSPECTIVE JUROR NO. 12:  It was on the

20   Internet.

21        THE COURT:  You read it on the Internet or the

22   *Herald*?

23        PROSPECTIVE JUROR NO. 12:  Yes.

24        THE COURT:  Have you followed the course of

25   the proceedings leading up to this trial prior to today

```
 1   closely?

 2            PROSPECTIVE JUROR NO. 12:  Not closely, but

 3   I've been hearing about it and talking to people at

 4   work about it.

 5            THE COURT:  And what were the discussions that

 6   you had at work about it?

 7            PROSPECTIVE JUROR NO. 12:  Just what was

 8   happening and exactly what the paper was saying.

 9   That's all.

10            THE COURT:  Do you remember what those

11   conversations were specifically?

12            PROSPECTIVE JUROR NO. 12:  About what the

13   Herald said about the FBI agent and all that.  Just --

14            THE COURT:  What did the Herald say about the

15   FBI agent?

16            PROSPECTIVE JUROR NO. 12:  An informant --

17   that it was an informant.  It was just a minor

18   discussion.

19            THE COURT:  Okay.  And this was around

20   Tuesday?

21            PROSPECTIVE JUROR NO. 12:  Monday or Tuesday.

22            THE COURT:  This week?

23            PROSPECTIVE JUROR NO. 1:  Yeah.

24            THE COURT:  Have you -- do you have an open

25   mind regarding this case?
```

```
1              PROSPECTIVE JUROR NO. 12:  I would hope so.

2              THE COURT:  Well, that's the question.

3              Do you have --

4              PROSPECTIVE JUROR NO. 12:  I think, to the

5    best of my ability, I would answer "yes."

6              THE COURT:  Okay.  Have you formed an opinion

7    regarding any of the Defendants based upon any outside

8    information, including what you read on the Internet

9    and in the Miami Herald and the conversations that you

10   had with coworkers?

11             PROSPECTIVE JUROR NO. 12:  No.

12             THE COURT:  Do you have any beliefs, thoughts

13   or opinions which may cause you to decide this case on

14   anything other than the evidence you will hear at

15   trial?

16             PROSPECTIVE JUROR NO. 12:  Can you repeat

17   that.

18             THE COURT:  Sure.

19             Do you have any beliefs, thoughts or opinions

20   which may cause you to decide this case on anything

21   other than the evidence you will hear at trial?

22             PROSPECTIVE JUROR NO. 12:  No.

23             THE COURT:  Are you knowledgeable about the

24   history and practice of Islam?

25             PROSPECTIVE JUROR NO. 12:  No.
```

1                THE COURT:  Are you knowledgeable about the

2    history and practices of the Moorish Science Temple?

3                PROSPECTIVE JUROR NO. 12:  No.

4                THE COURT:  Are you knowledgeable about the

5    Universal Divine Saviors?

6                PROSPECTIVE JUROR NO. 12:  No.

7                THE COURT:  Are you knowledgeable about the

8    history, teachings or practices of the Masons or are

9    you a member of any type of Masonic lodge?

10                PROSPECTIVE JUROR NO. 12:  No.

11                THE COURT:  Have you, your spouse or any of

12    your family members ever visited the Middle East?

13                PROSPECTIVE JUROR NO. 12:  No.

14                THE COURT:  Do you or family members or close

15    friends have any prior or present military service?

16                PROSPECTIVE JUROR NO. 12:  Yes.

17                THE COURT:  Who would that be?

18                PROSPECTIVE JUROR NO. 12:  Ex-husband was a

19    Marine.

20                THE COURT:  Okay.  And where was his place of

21    service?

22                PROSPECTIVE JUROR NO. 12:  North Carolina.

23                THE COURT:  Did he serve in combat?

24                PROSPECTIVE JUROR NO. 12:  No.

25                THE COURT:  Was he ever in the military police

1    or shore patrol?

2         PROSPECTIVE JUROR NO. 12:  No.

3         THE COURT:  Did he have any disciplinary

4    action taken against him?

5         PROSPECTIVE JUROR NO. 12:  Not that I know of.

6         THE COURT:  And did he receive an honorable

7    discharge?

8         PROSPECTIVE JUROR NO. 12:  As far as I know,

9    yes.

10         THE COURT:  And do you know what his rank was

11    at discharge?

12         PROSPECTIVE JUROR NO. 12:  I want to say

13    PFT -- I'm not sure -- or PFC or....

14         THE COURT:  Okay.  Have you or any members of

15    your family or close friends had any personal

16    experience with acts of terrorism?

17         PROSPECTIVE JUROR NO. 12:  No.

18         THE COURT:  Do you know or do you have a

19    family member or friends who knows someone who was a

20    victim of a terrorist attack?

21         PROSPECTIVE JUROR NO. 12:  No.

22         THE COURT:  Have the events of September 11th

23    or any other terrorist act affected you to such an

24    extent that it would make it difficult for you to sit

25    and listen to the evidence in this case and be fair to

1    both the Government and the Defendants?

2           PROSPECTIVE JUROR NO. 12:  No.

3           THE COURT:  Have you or any family member or

4    close friend lost a job, a business contract or

5    experienced any other financial hardship as a result of

6    September 11th or any other terrorist attack?

7           PROSPECTIVE JUROR NO. 12:  No.

8           THE COURT:  Do you have an opinion as to who

9    was responsible for the attack on the United States on

10   September 11th, 2001?

11          PROSPECTIVE JUROR NO. 12:  No.

12          THE COURT:  Is there anything else you think

13   the Court or the attorneys should know that might

14   influence your ability to fairly and impartially judge

15   the evidence in this case and follow the Court's

16   instructions on the law?

17          PROSPECTIVE JUROR NO. 12:  No.

18          THE COURT:  If you would have a seat outside,

19   ma'am, and not discuss my questions with anyone.

20          PROSPECTIVE JUROR NO. 12:  Thank you.

21          (Thereupon, Potential Juror No. 12 retired

22   from the courtroom and the following proceedings were

23   had:)

24          THE COURT:  Juror No. 13.

25          (Thereupon, Potential Juror No. 13 entered the

```
 1    courtroom and the following proceedings were had:)

 2              THE COURT:  Hello.

 3              PROSPECTIVE JUROR NO. 13:  Hello.

 4              THE COURT:  Would you be more comfortable

 5    standing there, sir, or sitting?

 6              PROSPECTIVE JUROR NO. 13:  I'm fine here,

 7    standing.

 8              THE COURT:  In this case, the Government has

 9    alleged that the Defendants were engaged in

10    conspiracies to commit various violations of federal

11    laws regarding terrorist activities.

12              The charges include conspiracies or agreements

13    to provide material support and resources to agents of

14    Al-Qaeda in conspiring to blow up the Sears Tower in

15    Chicago and several federal buildings in a planned war

16    against the United States.

17              Given that, is there anything that would

18    prevent you from being able to sit and listen to the

19    evidence in this case and be fair to both the

20    Government and the Defendants?

21              PROSPECTIVE JUROR NO. 13:  No.

22              THE COURT:  In this case, you may hear

23    evidence that the Government used informants who are

24    not United States citizens and who posed as

25    terrorists/agents of Al-Qaeda.
```

1              Do you have such strong feelings one way or

2    the other that you will not be able to sit and listen

3    to this evidence and be fair to both the Government and

4    the Defendants?

5              PROSPECTIVE JUROR NO. 13:  No.

6              THE COURT:  Have you acquired any information

7    from news, television, conversations or any other

8    sources about this case?

9              PROSPECTIVE JUROR NO. 13:  Yes.

10             THE COURT:  And from what sources, sir?

11             PROSPECTIVE JUROR NO. 13:  The newspaper and

12   the Internet and the TV.

13             THE COURT:  And do you remember what

14   newspaper?

15             PROSPECTIVE JUROR NO. 13:  The -- I read the

16   *Miami Herald* on-line.

17             THE COURT:  Okay.  And do you remember when it

18   was?

19             PROSPECTIVE JUROR NO. 13:  As recently as this

20   week.

21             THE COURT:  Okay.  And the TV?  When was that?

22             PROSPECTIVE JUROR NO. 13:  I would say after

23   the arrests were made.

24             THE COURT:  Okay.  Do you read the *New Times*

25   or *Sun-Sentinel* publications, either in print or

1  on-line, in addition to the *Miami Herald*?

2        PROSPECTIVE JUROR NO. 13:  No.

3        THE COURT:  Other than what you've already

4  told me, have you read anything in any newspaper or on

5  the Internet or have you seen anything on television or

6  heard anything on the radio about this case?  Other

7  than what you've told me.

8        PROSPECTIVE JUROR NO. 13:  I'd say "no."

9        THE COURT:  Have you followed the course of

10  the proceedings leading up to this trial prior to

11  coming to court today closely?

12        PROSPECTIVE JUROR NO. 13:  I have read it, but

13  not closely.  I have briefly gone over it, just reading

14  certain -- little tidbits about it.  But I haven't

15  really --

16        THE COURT:  Have you discussed this case with

17  anyone?

18        PROSPECTIVE JUROR NO. 13:  I'd say "no."

19        THE COURT:  Do you have an open mind regarding

20  this case?

21        PROSPECTIVE JUROR NO. 13:  Somewhat.

22        THE COURT:  Okay.  In what way do you have an

23  open mind and in what way don't you have an open mind?

24        PROSPECTIVE JUROR NO. 13:  I would say I have

25  an open mind because I know people are innocent until

```
 1    proven guilty.
 2           But I'm also -- I'm biased because of what
 3    happened in 2001 and what happened -- there's also
 4    people in this country who want to hurt us.
 5           THE COURT:  Okay.  Do you understand that
 6    every Defendant is presumed innocent until they are
 7    proven guilty?
 8           PROSPECTIVE JUROR NO. 13:  Yes.
 9           THE COURT:  And do you understand that the
10    Government has the burden of proving a Defendant guilty
11    beyond a reasonable doubt?
12           PROSPECTIVE JUROR NO. 13:  Yes.
13           THE COURT:  Given that you now know the nature
14    of the charges here, if the Government failed to prove
15    its case against a Defendant, would you be able to find
16    that Defendant not guilty?
17           PROSPECTIVE JUROR NO. 13:  I'd say "yes."
18           THE COURT:  And if the Government proved a
19    case against a Defendant beyond a reasonable doubt,
20    would you be able to find that Defendant guilty?
21           PROSPECTIVE JUROR NO. 13:  Yes.
22           THE COURT:  Have you formed an opinion
23    regarding any of the Defendants based upon any outside
24    information?
25           PROSPECTIVE JUROR NO. 13:  I would say "yes."
```

1           THE COURT:  And what is your opinion?

2           PROSPECTIVE JUROR NO. 13:  As for saying -- I

3    understand people are innocent until proven guilty.

4    But my own opinion, from what I've read in the

5    newspaper, I would say a lot of what the charges are

6    against them are real and that I'd like to see -- if I

7    am picked to hear what the evidence is and then I can

8    make a formal -- I can make up my mind exactly how I

9    feel.  But before walking in here, I do have a little

10   bit -- feeling that they are not innocent.

11          THE COURT:  Would your opinion affect your

12   ability to determine the Defendants' guilt based solely

13   on the evidence presented at trial?

14          PROSPECTIVE JUROR NO. 13:  No, it will not.

15          THE COURT:  So would you be able to put aside

16   that opinion and sit and listen to the evidence in this

17   case and be fair to both the Government and the

18   Defendants?

19          PROSPECTIVE JUROR NO. 13:  Yes.  Yes.

20          THE COURT:  Do you have any beliefs, thoughts

21   or opinions which may cause you to decide this case on

22   anything other than the evidence you will hear at

23   trial?

24          PROSPECTIVE JUROR NO. 13:  No.

25          THE COURT:  Are you knowledgeable about the

1    history and practice of Islam?

2         PROSPECTIVE JUROR NO. 13:  I'd say "no."

3         THE COURT:  Are you knowledgeable about the

4    history and practices of the Moorish Science Temple?

5         PROSPECTIVE JUROR NO. 13:  No.

6         THE COURT:  Are you knowledgeable about the

7    Universal Divine Saviors?

8         PROSPECTIVE JUROR NO. 13:  No.

9         THE COURT:  Are you a member of any type of

10   Masonic lodge or are you knowledgeable about the

11   history, teachings or practices of the Masons?

12        PROSPECTIVE JUROR NO. 13:  No.

13        THE COURT:  Have you or any of your family

14   members ever visited the Middle East?

15        PROSPECTIVE JUROR NO. 13:  I have.  I think I

16   am the only one.

17        THE COURT:  And where have you gone?

18        PROSPECTIVE JUROR NO. 13:  I went -- I was

19   living in Jeddah.  Jeddah is where Mecca is.  Mecca is

20   ten miles east --

21        THE COURT:  You were in Saudi Arabia?

22        PROSPECTIVE JUROR NO. 13:  Yes.

23        THE COURT:  You were in the military and

24   stationed there?

25        PROSPECTIVE JUROR NO. 13:  Yes.

1          THE COURT:  When was it that you were

2    stationed there?

3          PROSPECTIVE JUROR NO. 13:  I arrived there --

4    I arrived there -- I arrive there February 13th, 1991,

5    and I left March 6th, 1991.

6          THE COURT:  Okay.  And in what branch of the

7    service were you?

8          PROSPECTIVE JUROR NO. 13:  I was in the -- I

9    was in the US Navy.

10          THE COURT:  And did you serve in combat?

11          PROSPECTIVE JUROR NO. 13:  They were called

12   combat missions.  But I wasn't shot at.

13          THE COURT:  So you went out on missions, but

14   didn't see any action on the missions?

15          PROSPECTIVE JUROR NO. 13:  No.

16          THE COURT:  And there was another place that

17   you were stationed.  Was it Italy?

18          PROSPECTIVE JUROR NO. 13:  Yes.  At the same

19   time, I was in Sicily and then we were sending crews

20   over.

21          THE COURT:  Okay.  So you went back and forth

22   from Saudi Arabia to Sicily?

23          PROSPECTIVE JUROR NO. 13:  Yes.

24          THE COURT:  Was that during the Gulf War?

25          PROSPECTIVE JUROR NO. 13:  Yes, ma'am.

1          THE COURT:  The first Gulf War?

2          PROSPECTIVE JUROR NO. 13:  Yes.

3          THE COURT:  So did you receive any injuries

4    while you were serving?

5          PROSPECTIVE JUROR NO. 13:  No.

6          THE COURT:  Were you ever in the military

7    police or shore patrol?

8          PROSPECTIVE JUROR NO. 13:  No.

9          THE COURT:  Did you have any disciplinary

10   action taken against you?

11         PROSPECTIVE JUROR NO. 13:  No.

12         THE COURT:  Did you receive an honorable

13   discharge?

14         PROSPECTIVE JUROR NO. 13:  Yes.

15         THE COURT:  What was your rank at discharge?

16         PROSPECTIVE JUROR NO. 13:  I was an E-4.

17         THE COURT:  Okay.  Have you or any members of

18   your family or close friends had any personal

19   experience with acts of terrorism?

20         PROSPECTIVE JUROR NO. 13:  No.

21         THE COURT:  Do you know or do you have a

22   family member or friend who knows someone who was a

23   victim of a terrorist attack?

24         PROSPECTIVE JUROR NO. 13:  No.

25         THE COURT:  Have the events of September 11th

1    or any other terrorist act affected you to such an

2    extent that it would make it difficult for you to sit

3    and listen to the evidence in this case and be fair to

4    both the Government and the Defendants?

5              PROSPECTIVE JUROR NO. 13:  I'd say "no."

6              THE COURT:  Have you or any family member or

7    close friends lost a job, a business contract or

8    experienced any other financial hardship as a result of

9    September 11th or any other terrorist attack?

10             PROSPECTIVE JUROR NO. 13:  I'd say "no."

11             THE COURT:  Do you have an opinion as to who

12   was responsible for the attack on the United States on

13   September 11th, 2001?

14             PROSPECTIVE JUROR NO. 13:  Yes.

15             THE COURT:  And what is that opinion?

16             PROSPECTIVE JUROR NO. 13:  I feel that it was

17   Al-Qaeda.

18             THE COURT:  Is there anything else you think

19   the Court or the attorneys should know that might

20   influence your ability to fairly and impartially judge

21   the evidence in this case and follow the Court's

22   instructions on the law?

23             PROSPECTIVE JUROR NO. 13:  No.

24             THE COURT:  Could you be a fair and impartial

25   juror in this case?

```
 1              PROSPECTIVE JUROR NO. 13:  Yes.

 2              THE COURT:  Thank you, sir.

 3              If you would have a seat outside and not

 4  discuss my questions with anyone.

 5              PROSPECTIVE JUROR NO. 13:  Thank you.

 6              (Thereupon, Potential Juror No. 13 retired

 7  from the courtroom and the following proceedings were

 8  had:)

 9              MR. VEREEN:  Your Honor, I would move for

10  cause.

11              MR. CLARK:  I would also move for cause, your

12  Honor.

13              THE COURT:  On what grounds?

14              MR. VEREEN:  This juror is no different from

15  Juror No. 9, who was the attorney who said that the

16  Government would have to start at a steeper -- have a

17  steeper climb in order for him to find the Defendants

18  guilty.

19              This juror has walked in and said -- this

20  prospective juror has walked in and said that he

21  already has made an opinion -- formed an opinion in his

22  mind that these Defendants are guilty and that he wants

23  to then hear the evidence in order to change his

24  position.

25              And based on that alone.  He said specifically
```

1    that he was biased because of 9/11.

2         MS. JHONES:  Your Honor, I think that -- if I

3    may just add one thing, I think that this juror is

4    somewhat different from the lawyer that represents

5    contractors, because, unlike the lawyer that represents

6    contractors, that juror had not formed an opinion.

7         Here, we have a double whammy, so to speak.

8    He's formed an opinion and he has clearly stated that

9    he's starting off with a bias towards the Defendants

10   and --

11        THE COURT:  Let me ask you a question:  If

12   that's true, then how is this juror any different from

13   Juror No. 1 from yesterday, who came in and said that

14   the charges are trumped up, that's his opinion, that's

15   what he's read and that's what he thinks, but he could

16   set this -- set that aside?  This juror said exactly

17   the same thing on the opposite end of the spectrum.

18        MS. JHONES:  Your Honor --

19        MS. ARANGO:  Can I also point out, Judge, that

20   with respect to Juror No. 9, then didn't have an

21   objection.  So I don't know why they're --

22        MS. JHONES:  Your Honor, wait a second.

23        She directed the question -- your Honor, I

24   have the transcript from Juror No. 1.  He did not -- he

25   said he had no opinion.  He -- every time he spoke

1   about the rumors and the talk on the street, I cited

2   the Court to the page, and I'm happy to do it again.

3   There is a big difference.

4           I have no problem with somebody that says, "I

5   have formed an opinion."  But this gentleman -- Juror

6   No. 1 had not formed an opinion.

7           I will tell you the page right now.  I

8   reviewed that very carefully in preparation for this

9   morning.

10          MR. CLARK:  Your Honor, may I --

11          THE COURT:  One second.

12          MS. JHONES:  I could cite the Court to the

13  page, if you'd like.

14          THE COURT:  Isn't Ms. Arango's point well

15  taken, that there was no objection to Juror No. 9 being

16  excused for cause?  Nobody raised an objection.

17          MR. VEREEN:  No.  My point was that Juror No.

18  13 was no different than Juror No. 9.  I wanted both of

19  them struck.

20          MS. JHONES:  Your Honor, I agree that Juror

21  No. 9 -- is that the lawyer contractor?

22          THE COURT:  Yes.

23          MS. JHONES:  I agree that that person should

24  be struck.  There was no opposition to that.

25          MS. ARANGO:  Judge, this potential juror

1    stated unequivocally -- you got to see his -- your

2    Honor, as you know, you can assess a person's

3    credibility and demeanor.

4          And you got to see this person.  You asked him

5    quite clearly, "Do you have an opinion?"

6          He's not expected to be a robot and come here

7    as a clean slate.

8          He answered honestly to you, "Well, yes, I had

9    a little bit of an opinion.  The charges seemed real.

10         "Can you put aside the opinions?

11         "Yes, I can.

12         "Would those opinions affect your ability to

13   determine the Defendants' guilt based solely on the

14   evidence at trial?

15         "No, it will not."

16         You asked him specifically, "If the Government

17   failed to prove its case beyond a reasonable doubt,

18   would you be able to find these Defendant's not guilty?

19         "Yes."

20         You asked him in different ways and he made it

21   abundantly clear.

22         The fact that he may have had a little

23   opinion -- and that's a little one, based on reading

24   the paper -- Juror No. 1, my recollection, Judge,

25   was -- you asked him over and over and over again in

 1  different ways because he had expressed the fact that

 2  he had discussed his own opinion.

 3          You even asked him, "Did you express your

 4  opinion to others?

 5          "Yes, I did.

 6          "What was that opinion?

 7          "Well, I thought that it was a government

 8  frameup."

 9          I don't have my notes in front of me.

10          But it was not just that he had heard others'

11  opinions, but that he had also expressed his own

12  opinion.

13          So I -- I argued that he should be struck

14  because I did not feel -- he had such strong opinions

15  that I did not feel he could really put those opinions

16  aside.

17          It's my belief -- and I will even cite law to

18  you -- that your Honor can judge a person's demeanor

19  and credibility, that that is what you are to do, and

20  that your determinations in that regard are given great

21  weight.  You are given great deference in that regard.

22          And this person sat here and honestly told

23  you, "I'm not a clean slate.  I read the paper.  I had

24  a little bit of an opinion.  But I am absolutely

25  willing to set it aside.  I believe in the system, and

```
 1    I will find these Defendants not guilty if the

 2    Government fails to prove its case."

 3            MR. VEREEN:  Well, I don't believe those were

 4    his words.  I think those are Ms. Arango's words.  His

 5    words were, "I believe the Defendants are guilty."

 6    Those were his words --

 7            THE COURT:  I asked him, "If the

 8    Government" -- I asked him if he understood the burden

 9    and he understood the presumption of innocence.

10            I directly asked him, "If the Government

11    failed to prove its case against the Defendants beyond

12    a reasonable doubt, would you be able to find a

13    Defendant -- one of these Defendants not guilty -- or

14    any of these Defendants not guilty?"

15            And he said, "Yes."

16            MR. VEREEN:  I understand that.

17            But --

18            MR. CLARK:  May I?

19            MR. VEREEN:  Well, hold on, Mr. Clark.

20            He specifically said, your Honor -- and I

21    think it's clear on the record -- that he -- at this

22    point, he looks at these Defendants as if they are

23    guilty.

24            And then he said the Government -- then he

25    said he's willing to sit and listen to the evidence as
```

it's presented by the Government to see, in essence, if

it coincides with what his beliefs are at this point.

He may not have used the word "coincide," but

he has made -- already stressed that he believes these

Defendants are guilty.

Now what he wants to do is hear the evidence

as if somehow the burden is now put on the Defendants

to prove that they are innocent.  No.  He wants to --

he's already made up his mind.

This is not based on rumor or what somebody

else had said to him.  The Government keeps trying to

go back to No. 1 because they want you to go back

retroactively and strike No. 1.

But he is in the same position that No. 9 was

in, the attorney, who says, "Yes.  The Government" --

he said, in essence, the Government would have to climb

a steeper -- a steeper hill, that he would look at the

evidence very skeptically because of who's presenting

it.

And because of that, we did not object because

we knew that that's a grounds to be struck.  If he

looks -- if the slate is not level -- or the playing

field is not level, then, yes, he should not be sitting

as a juror.

That's no different than what this gentleman

```
 1    has walked in and said.  In his eyes, these Defendants

 2    are guilty.

 3              MS. JHONES:  Well --

 4              MS. ARANGO:  Judge --

 5              MS. JHONES:  -- presumably --

 6              MR. CLARK:  Judge, I've asked several

 7    times to -- I have some law that I'd like to cite.

 8              MS. ARANGO:  Judge, may I respond to those --

 9              THE COURT:  I'm sorry?

10              MR. CLARK:  I just have some cases I'd like to

11    cite because I have a different issue.  I can't seem to

12    get into this thing --

13              THE COURT:  I'll give you an opportunity in a

14    minute, Mr. Clark.

15              Go ahead, Ms. Arango.

16              MS. ARANGO:  I would say, first of all, with

17    respect to Juror No. 9, which they agreed to strike, he

18    never -- no matter what you asked him, he could not say

19    that the Government would not have more of a burden.

20    He was not able to ever get there.  That was the

21    problem.

22              It was not like this juror, who says,

23    "Absolutely every" -- "I had a little opinion" --

24    that's it -- "I had a little opinion before I walked in

25    here.  But I understand the way the system works and
```

1    it's a clean slate.  I understand what the Government's

2    burden of proof is.  I understand that the Defendants

3    are innocent.  I absolutely will abide by that."

4         That's much different than what Juror No. 9

5    said.  So I -- he's in a different position than Juror

6    No. 9.  And I take issue with the way Mr. Vereen has

7    told you his testimony was.

8         He did not say, "These Defendants are guilty

9    and they have to prove otherwise.  I'll take a look

10   into the evidence to see if they can prove otherwise."

11   He said nothing to that effect.  Absolutely nothing.

12        He said, "I will see what the evidence is and

13   I will make a determination based solely on the

14   evidence."

15        MR. VEREEN:  Maybe Ms. Arango has

16   misunderstood what No. 9 said, because he clearly told

17   he court he believes he can be fair.

18        The Court said, "Do you believe or do you

19   know?"

20        Then he says, "Yes," he can be fair and

21   impartial.

22        Those were his words.

23        THE COURT:  But Juror No. 9's not an issue.

24        MR. VEREEN:  Well, the Government's trying to

25   compare --

1          THE COURT:  They moved to strike him and there

2    was no objection.

3          MR. VEREEN:  I wanted him struck.

4          THE COURT:  Okay.

5          MS. JHONES:  We all did.

6          Your Honor, I think Mr. --

7          THE COURT:  One moment, please.  I'm reading

8    something.

9          Go ahead, Mr. Clark.

10         MR. CLARK:  Thank you, your Honor.

11         This particular juror has expressed a bias

12   against an accused.

13         THE COURT:  I thought you were going to cite

14   cases to me.

15         MR. CLARK:  I am going to cite cases.

16         THE COURT:  Okay.

17         MR. CLARK:  The legal issue on the cases that

18   I'm going to cite say that, when you -- that a juror

19   must set aside -- be able to express that he can lay a

20   bias aside against an accused.  Otherwise, it's an

21   error to not excuse that juror.

22         Those cases are *United States versus Martin*,

23   749 F.2d 1514.  This is an Eleventh Circuit 1985 case.

24         The other case is *Marsden* -- M-a-r-s-d-e-n --

25   *versus Moore*, 847 F.2d 1536.  That's a 1998 case.

1          Juror No. 9 did not express a bias against an

2     accused.

3          THE COURT:  I'm not talking about Juror No. 9.

4     We're talking about Juror No. 13.

5          MR. CLARK:  No. 13 expressed a bias.

6          THE COURT:  You just told me the law is -- the

7     issue is whether or not someone can set aside a bias --

8          MR. CLARK:  Set it aside totally.  He's got to

9     set it aside.

10         THE COURT:  Okay.

11         MR. CLARK:  He can't just say, "I can be fair

12    and listen to the evidence."  He has to say, "I am

13    putting this bias aside."

14         THE COURT:  So, then, when I asked him, "Would

15    you be able to put aside that opinion and sit and

16    listen to the evidence in this case and be fair to both

17    the Government and the Defendants?" and he said, "Yes,"

18    isn't that setting aside a bias?

19         MR. CLARK:  Well, I think you have to ask -- I

20    would ask the Court to particularly ask him to

21    understand that he has to be able to lay the bias

22    aside, period.  Can he set this thing -- can he set

23    this bias --

24         THE COURT:  Let's bring him in.  I'm going to

25    ask him.

```
 1              MR. VEREEN:  Your Honor --

 2              MS. JHONES:  Your Honor, before you --

 3              MR. VEREEN:  -- I take issue with Mr. Clark's

 4    position.  I don't think that's the determinative

 5    factor.  The fact that he's --

 6              THE COURT:  I think Mr. Clark has correctly

 7    cited what the law in the Eleventh Circuit is.

 8              If somebody has an opinion, can they set aside

 9    that opinion and sit and listen to the evidence and

10    make a determination solely on the evidence?  It's not

11    the fact that you have an opinion based upon outside

12    information.

13              The law is whether you can set aside that

14    opinion based upon outside information and determine

15    whether a person is guilty or not guilty based upon the

16    evidence at trial and not on the outside information.

17    That is the law in the Eleventh Circuit.

18              MR. VEREEN:  That's fine, Judge.

19              But I would ask this Court to ask an

20    additional question of this particular venireman, that

21    if he had to render a decision today as to the guilt or

22    innocence of these Defendants, what would it be?

23              MS. JHONES:  Your Honor, exactly.

24              MR. LEVIN:  I will join.

25              MS. JHONES:  The question is:  Is this
```

```
 1    gentlemen -- are these people right here -- as they sit
 2    here today, are they presumed innocent?  That is the
 3    issue, presumption of innocence.
 4            MS. ARANGO:  Judge, you asked him
 5    specifically, "You understand" -- you explained to him
 6    just as though the Government's burden of proof was
 7    beyond a reasonable doubt that the Defendants are
 8    presumed innocent.
 9            You asked him that.
10            And he said, "Yes."
11            That's my recollection.
12            Then you asked him if he understood the
13    Government had the obligation to prove them guilty
14    beyond a reasonable doubt.
15            He said, "Yes."
16            And then you asked him, "If the Government
17    failed to prove them guilty beyond a reasonable doubt,
18    could you vote not guilty?"
19            And he said, "Yes."
20            You asked him all of those questions.  That's
21    my recollection, is that you went through that colloquy
22    like you've done with others.
23            MR. GREGORIE:  Judge, could I give you two
24    more recent cases, your Honor?  I think they're quite
25    clear.
```

1          The most recent one is *US versus Rhodes* at

2    177 F.3d 963, Eleventh Circuit, 1999, which says that,

3    when a juror demonstrates that she can lay aside any

4    opinion she might hold and render a judgment based

5    solely on the evidence presented in court, then a

6    dismissal of that juror is not required.

7          That case is also -- a previous case to that

8    is *Depree* -- D-e-p-r-e-e -- *versus Thomas*, 946 F.2d

9    684.  That's a 1991 Eleventh Circuit case.

10         In that case, a juror initially hesitated

11   about his ability to be fair because of some sort of

12   employment or relationship to a witness.  And then, on

13   further questioning, he said that he could lay aside

14   his bias and be fair.

15         And the Court -- the Eleventh Circuit ruled

16   that there was no error in denying the motion to excuse

17   the juror because the juror then said that he could lay

18   aside his bias and be fair.

19         That's the standard, your Honor.

20         MS. JHONES:  Your Honor, Mr. Gregorie confuses

21   bias towards a witness with presumption of innocence of

22   the Defendants, of the accused.

23         This man came in here said these guys, as far

24   as he's concerned right now, are -- they are guilty.

25         This is a Sixth Amendment fundamental

```
 1    presumption of innocence problem, not bias towards a

 2    witness who's testifying.  That case is absolutely

 3    irrelevant to the issue right here addressed now.

 4              Presumption of innocence, Mr. Gregorie.

 5              THE COURT:  Let's bring him back in, please.

 6              (Thereupon, Potential Juror No. 13 entered the

 7    courtroom and the following proceedings were had:)

 8              THE COURT:  A few more questions, sir.

 9              PROSPECTIVE JUROR NO. 13:  No problem.

10              THE COURT:  You had indicated -- you had used

11    the term that you had a bias because of 9/11.

12              PROSPECTIVE JUROR NO. 13:  Yes.

13              THE COURT:  Would you be able to set aside

14    that bias and sit and listen to the evidence in this

15    case and make a determination solely on the evidence

16    presented at trial?

17              PROSPECTIVE JUROR NO. 13:  Yes.

18              THE COURT:  You had also stated that, based

19    upon what you read in the newspaper before you walked

20    in here, you had a feeling that they are not innocent.

21              Would you be able to put aside that opinion

22    and make a determination on whether the Defendants are

23    guilty or not guilty solely on the evidence presented

24    at trial?

25              PROSPECTIVE JUROR NO. 13:  I would say "yes."
```

1    If -- if I hear the evidence and -- then the evidence

2    will tell me how -- you know, how I will give a

3    verdict.  How to say this.

4         I've only heard from papers.  I haven't heard

5    the real evidence.  The evidence will tell me -- will

6    give me my -- you know, if I hear all the evidence of

7    what happened or what the case is about, then I can

8    give a clear answer, because I'm going by what I hear

9    from papers, from other sources.

10         THE COURT:  So having not heard the

11   evidence --

12         PROSPECTIVE JUROR NO. 13:  Okay.

13         THE COURT:  -- or any evidence in the trial,

14   do these Defendants sit here and are they presumed

15   innocent, in your mind?

16         PROSPECTIVE JUROR NO. 13:  I -- I believe --

17   yes.  I believe, in our system, that everyone is

18   innocent until proven guilty.

19         But everyone does have their own thoughts when

20   you hear of -- you know, on the TV or newspapers.  But

21   I could be clear-headed about hearing the evidence.  I

22   don't know if that's the answer.

23         THE COURT:  Well, there's no right answer.  I

24   need to hear what your thoughts are.

25         So let's -- let me just give you a situation.

1          PROSPECTIVE JUROR NO. 13:  Okay.

2          THE COURT:  You're chosen as a juror today.

3   The Government stands up and says, "This is all the

4   evidence we're presenting" and they don't present

5   anything further than what you've read from outside

6   information.

7          What would your verdict be?

8          PROSPECTIVE JUROR NO. 13:  Of what I've heard

9   on the outside, I would say they are guilty, of what

10  I've heard from the outside.

11         I mean, if it's the same evidence as what I've

12  heard --

13         THE COURT:  No.  No.  I'm not saying the

14  evidence is the same.

15         I'm saying the Government doesn't present any

16  evidence.  They don't present any evidence.

17         PROSPECTIVE JUROR NO. 13:  Oh, okay.  If --

18         THE COURT:  They don't present anything.  They

19  just stand up and they say -- they make statements

20  about their opinions, but they don't present any

21  evidence.

22         PROSPECTIVE JUROR NO. 13:  If they don't

23  present any evidence, then, no, I wouldn't find them

24  guilty.  I'd find them innocent.  They have to give me

25  evidence to show that they actually did what they said

1  they did.

2          THE COURT:  Okay, sir.  If you could have a

3  seat outside and not discuss my questions with anyone.

4          (Thereupon, Potential Juror No. 13 retired

5  from the courtroom and the following proceedings were

6  had:)

7          THE COURT:  Patricia, do you want to bring in

8  everybody?  I'm going to dismiss the jurors for the

9  day.

10          (Whereupon, the remaining members of

11  Prospective Jury Panel No. II entered the courtroom at

12  5:18 p.m. and the following proceedings were had:)

13          THE COURT:  You may be seated.

14          Ladies and gentlemen, the hour is getting

15  late.  So I'm going to let you go home for the evening.

16  You're going to come back to the lobby here tomorrow

17  morning at 9:00.  Remember, this is the 12th floor.

18  I'm Judge Lenard.  You'll come directly here.

19          Do not discuss this case either amongst

20  yourselves or with anyone else.  Have no contact

21  whatsoever with anyone associated with the trial.  Do

22  not read, listen or see anything touching on this

23  matter in any way.

24          If anyone should try to talk to you about this

25  case, you should immediately instruct them to stop and

1   report it to my staff.

2          Remember that now, while you're under

3   consideration, it's very important that you not read

4   anything on the Internet, hear anything on the radio or

5   on the TV or read anything in the papers about this

6   case.

7          Thank you so much for your patience today.  I

8   will see you tomorrow morning, 9:00.  Drive carefully.

9   Have a nice evening.

10          (Whereupon, the remaining members of

11   Prospective Jury Panel No. II exited the courtroom at

12   5:20 p.m. and the following proceedings were had:)

13          THE COURT:  You may be seated.

14          Anything further that anyone wants to say in

15   regard to Juror 13?

16          And then I'm probably going to reserve on it

17   and think about it overnight.  But if there's anybody

18   who wants to make any final statements about it, I'll

19   give you an opportunity to do that now.  Then I'll

20   announce my ruling in the morning.

21          MR. CLARK:  What I'd like to say, your Honor,

22   is what I believe the law says is this man cannot have

23   an opinion against an accused.  He can't have the

24   opinion.

25          So based upon what he said there, he still has

```
 1   the opinion.  I believe he should be excused for cause.
 2          THE COURT:  That's not what you just told me
 3   before, Mr. Clark.
 4          MR. CLARK:  Well, he can't -- he was asked can
 5   he lay that opinion aside.
 6          He couldn't do it.
 7          THE COURT:  You just told me before it's a
 8   question of whether you can put the opinion aside.
 9          MR. CLARK:  He wasn't able to say that -- to
10   set it aside, Judge.
11          THE COURT:  He wasn't?
12          MR. CLARK:  You brought him up here and he
13   just said that, if we didn't put on any evidence and --
14   he would find these people guilty.
15          MS. ARANGO:  No.
16          THE COURT:  No.  No.  No.
17          MR. CLARK:  That's what I understood him to
18   say.
19          MS. JHONES:  Your Honor, may I --
20          THE COURT:  That's not what he said.
21          Does anyone else want to say anything?
22          MS. ARANGO:  I would just point out, Judge,
23   just the way -- the law, as we stated earlier, is that,
24   "When a juror demonstrates, however, that she can lay
25   aside any opinion she might hold and render a judgment
```

 1   based solely on the evidence presented in court, then

 2   dismissal is not required."

 3          You specifically asked him, "You had indicated

 4   that you had" -- you asked, "Would you be able to set

 5   aside that bias and sit and listen to the evidence in

 6   this case and make a determination based solely on the

 7   evidence presented at trial?"

 8          His answer was, "Yes."

 9          Then you went on to his opinion about

10   reading -- what he read in the paper.

11          And then the same answer -- he gave the same

12   answer, "I would say 'yes.'"

13          Then he tried to elaborate and explain that he

14   needs to -- he would have to listen to the evidence

15   actually presented, that the papers don't have the real

16   evidence, the real evidence is in court.

17          Then you went to ask him -- then you asked him

18   about the presumption of innocence.

19          And he said, "Yes.  I believe, in our system,

20   that everyone is innocent until proven guilty."

21          And then you went on to give him the

22   hypothetical.

23          At first, he thought that you meant that the

24   evidence presented by the Government would be the same

25   evidence in the papers.  So he gave that first opinion

1   about guilt.

2         And then, when you said, "No.  I mean that the

3   Government would not present any evidence.  They would

4   just express their opinions," he said, "Oh.  Oh.  Oh.

5   That?  No, of course.  Then I would find them" -- he

6   said, "If they don't present any evidence, then, no, I

7   wouldn't find them guilty.  I would find them innocent.

8   They have to give me evidence."

9         He totally understands the presumption of

10  innocence and the burden on the Government.  And he --

11  all he said was, "I had an opinion.  But I can lay that

12  opinion aside."

13        He was quite candid with you and it was -- he

14  asked -- you asked him many different ways, and he

15  really never faltered in any of those responses.

16        MS. JHONES:  Judge, may I have an opportunity

17  to look at the law on this area this evening?

18        THE COURT:  Sure.

19        MS. JHONES:  Thank you.

20        THE COURT:  We're in recess until tomorrow

21  morning, 9:00.

22        (End of proceedings.)

23

24

25

1                   C E R T I F I C A T E

2

3           I hereby certify that the foregoing is an

4    accurate transcription of the proceedings in the

5    above-entitled matter.

6

7

8    _____          /s/Lisa Edwards
          DATE              LISA EDWARDS, CRR, RMR
9                           Official United States Court Reporter
                            400 North Miami Avenue, Twelfth Floor
10                          Miami, Florida 33128
                            (305) 523-5499
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25