```
 1                  UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
 2                        MIAMI DIVISION
               CASE NO. 06-20373-CRIMINAL-LENARD
 3

 4   UNITED STATES OF AMERICA,      Miami, Florida

 5                 Plaintiff,       February 4, 2009

 6         vs.                      9:30 a.m. to 4:50 p.m.

 7   NARSEAL BATISTE, et al.,       Volume VI

 8            Defendants.     Pages 1 to 227
     ------------------------------------------------------
 9

10                         JURY TRIAL
11         BEFORE THE HONORABLE JOAN A. LENARD,
                UNITED STATES DISTRICT JUDGE
12

13

14   APPEARANCES:

15

16   FOR THE GOVERNMENT:    RICHARD D. GREGORIE, ESQ., and
                            JACQUELINE M. ARANGO, ESQ.
17                          ASSISTANT UNITED STATES ATTORNEYS
                            99 Northeast Fourth Street
18                          Miami, Florida 33132

19
     FOR THE DEFENDANT      ANA MARIA JHONES, ESQ.
20     NARSEAL BATISTE:     300 Seville Avenue, Suite 210
                            Coral Gables, Florida 33134
21

22   FOR THE DEFENDANT      ALBERT Z. LEVIN, ESQ.
       PATRICK ABRAHAM:     261 Northeast First Street
23                          Sixth Floor
                            Miami, Florida 33132
24

25
```

```
 1   FOR THE DEFENDANT        RODERICK D. VEREEN, ESQ.
       STANLEY PHANOR:        BRINKLEY, HENRYS & LEWIS
 2                            4770 Biscayne Boulevard
                              Suite 1200
 3                            Miami, Florida 33131

 4
     FOR THE DEFENDANT        RICHARD K. HOULIHAN, ESQ.
 5     NAUDIMAR HERRERA:      300 Aragon Avenue
                              Coral Gables, Florida 33134
 6

 7   FOR THE DEFENDANT        LOUIS CASUSO, ESQ.
       BURSON AUGUSTIN:       111 Northeast First Street
 8                            Suite 603
                              Miami, Florida 33132
 9

10   FOR THE DEFENDANT        NATHAN CLARK, ESQ.
      ROTSCHILD AUGUSTINE:    17639 South Dixie Highway
11                            Miami, Florida 33157

12
     REPORTED BY:            LISA EDWARDS, CRR, RMR
13                           Official Court Reporter
                             400 North Miami Avenue
14                           Twelfth Floor
                             Miami, Florida 33128
15                           (305) 523-5499

16

17

18                           I  N  D  E  X

19

20                                                  PAGE

21
     Jury Selection                                  4
22

23

24

25
```

```
 1              THE COURT:  Good morning.

 2              United States of America versus Narseal

 3   Batiste, et al., Case No. 06-20373.

 4              Counsel, state your appearances, please, for

 5   the record.

 6              MR. GREGORIE:  Good morning, your Honor.

 7              Richard Gregorie and Jacqueline Arango on

 8   behalf of the United States.

 9              MS. JHONES:  Good morning, your Honor.

10              Ana Jhones on behalf of Narseal Batiste, who

11   is present.

12              MR. LEVIN:  Your Honor, good morning.

13              Albert Levin on behalf of Patrick Abraham, who

14   is also present.

15              MR. CASUSO:  Good morning, your Honor.

16              Lou Casuso on behalf of Burson Augustin, who

17   is present.

18              MR. CLARK:  Good morning, your Honor.

19              Nathan Clark for Rotschild Augustine, who is

20   present.

21              MR. HOULIHAN:  Richard Houlihan with Naudimar

22   Herrera.

23              MR. VEREEN:  Good morning, Judge.

24              Roderick Vereen on behalf of Stanley Phanor,

25   who's present.
```

```
 1            THE COURT:  All Defendants are present.
 2            We're still missing one juror.  It's Juror
 3   No. 3.  And, supposedly, he is on his way on the bus.
 4   So I think we'll bring everybody in.  We're past --
 5   unless there's an objection to that.  We are on No. 21,
 6   and we'll just let No. 3 come in when he arrives.
 7            Any objection to that?
 8            MR. CASUSO:  No objection.
 9            MR. VEREEN:  No objection.
10            THE COURT:  So let's bring them in so we can
11   begin.
12            (Whereupon, Prospective Jury Panel No. III
13   entered the courtroom at 9:32 a.m. and the following
14   proceedings were had:)
15            THE COURT:  Good morning.
16            THE PROSPECTIVE JURY PANEL:  Good morning.
17            THE COURT:  We need you all in here to warm up
18   the courtroom.  When you get to your seat, you can take
19   your seat.
20            You may be seated.
21            Good morning, ladies and gentlemen.  Welcome
22   back.
23            THE PROSPECTIVE JURY PANEL:  Good morning.
24            THE COURT:  We're going to begin with Juror
25   No. 21.  And we have the handheld microphone for you.
```

```
 1              Do people need sheets, Patricia?

 2              THE COURTROOM DEPUTY:  They have them.

 3              THE COURT:  Okay.  Juror No. 21.

 4              PROSPECTIVE JUROR NO. 21:  Juror 21.

 5         Good morning, Judge.

 6              THE COURT:  Good morning.

 7              PROSPECTIVE JUROR NO. 21:  I'm 54 years old.

 8         I was born in Texas.

 9              My father and -- my mother is from Texas, and

10    my father's from Mexico.

11              I'm unemployed right now.

12              I've lived in Florida for 14 years, in Florida

13    City.

14              THE COURT:  The last time you worked, what did

15    you do?

16              PROSPECTIVE JUROR NO. 21:  I was doing

17    maintenance in a Jewish Temple.

18              THE COURT:  Okay.  When was that?

19              PROSPECTIVE JUROR NO. 21:  It's been about

20    five months ago.

21              THE COURT:  Okay.

22              PROSPECTIVE JUROR NO. 21:  No. 6 is no.

23              THE COURT:  Do you own or rent?

24              PROSPECTIVE JUROR NO. 21:  A mortgage.

25              THE COURT:  Okay.  So you're paying off on
```

```
 1   your mortgage?

 2           PROSPECTIVE JUROR NO. 21:  Yes, ma'am.

 3           I never -- on No. 7, no.

 4           I'm married.

 5           THE COURT:  Is your wife working?

 6           PROSPECTIVE JUROR NO. 21:  Yes.  She works in

 7   a packing house.

 8           THE COURT:  Okay.  Any children?

 9           PROSPECTIVE JUROR NO. 21:  Yes.  I have two

10   kids.  One is 21, and the other -- my daughter's 19.

11   They both go to vocational schools -- one goes to

12   vocational school, my son, and my daughter goes to

13   college at Homestead.

14           THE COURT:  Okay.

15           PROSPECTIVE JUROR NO. 21:  No. 11, no.  No.  I

16   don't have any children outside the US.

17           THE COURT:  No. 12?

18           PROSPECTIVE JUROR NO. 21:  Yes, I do.  I speak

19   Spanish.

20           My spare time is fishing, for No. 13.

21           THE COURT:  Okay.

22           PROSPECTIVE JUROR NO. 21:  And I have --

23           THE COURT:  No. 14?

24           PROSPECTIVE JUROR NO. 21:  14 is about

25   seventh-grade level, school.
```

1          No. 15 is no.

2          Major sources of news is television and

3      newspaper.

4          No. 17 is no.

5          No. 18 is no.

6          No. 19 is no.

7          No. 20 is no.

8          No. 21 is no.

9          No. 22 is no.

10          No, on No. 23.  I'm satisfied with -- with the

11      law.

12          No. 24 is no.

13          And No. 25 is no.

14          No. 26 is yes.

15          THE COURT:  What crime were you accused of?

16          PROSPECTIVE JUROR NO. 21:  I was in two DUIs.

17      But that was years ago.  And so I don't -- I don't

18      drink alcohol anymore.  And that -- and I was -- I

19      pleaded no contest and they threw it out.

20          THE COURT:  Okay.  Well, when was it?

21          PROSPECTIVE JUROR NO. 21:  It was in '90 -- I

22      think it was '93.

23          THE COURT:  Do you think you were treated

24      fairly by the criminal justice system?

25          PROSPECTIVE JUROR NO. 21:  Yes, ma'am.  I

```
 1    think I was.
 2              THE COURT:  Were you well represented by your
 3    lawyer?
 4              PROSPECTIVE JUROR NO. 21:  Yes, ma'am.
 5              THE COURT:  Is there anything about your
 6    experience for either one of the DUIs that would make
 7    it difficult for you to sit and listen to the evidence
 8    in this case and be fair to both the Government and the
 9    Defendants?
10              PROSPECTIVE JUROR NO. 21:  No, ma'am.  It
11    wouldn't affect it.
12              No. 27, no.
13              28 is no.
14              29, it wouldn't affect me.
15              No. 30 is no.
16              31, no.
17              32 is no.
18              33 is no.
19              34 is no.
20              And 35, I do have a computer, but it belongs
21    to my daughter.  I don't use it.
22              THE COURT:  You don't use the Internet?
23              PROSPECTIVE JUROR NO. 21:  No.
24              THE COURT:  Okay, sir.  Thank you.
25              Juror No. 22.
```

```
 1              PROSPECTIVE JUROR NO. 22:  Good morning,

 2   everyone.

 3              I'm 67 years old.

 4              My birth place, Cuba.

 5              My parents also born in Cuba.

 6              I'm now -- I have a problem with my job

 7   because I'm -- I have an accident last year and I was

 8   about -- the prescription, doctor prescription.  I was

 9   in -- making light-duty job.

10              THE COURT:  So are you working now?

11              PROSPECTIVE JUROR NO. 22:  I'm working at the

12   laundry department.  Before, I was the gate, just

13   for -- it was a light-duty job -- work.

14              THE COURT:  Before you were at the gate or you

15   worked the gate?  Is that what you said?

16              PROSPECTIVE JUROR NO. 22:  What?

17              THE COURT:  Before you went on light duty

18   because of your injury --

19              PROSPECTIVE JUROR NO. 22:  I had an accident

20   and I was -- I had two job at that time.  And now, this

21   job, I fall down from the truck and I had a surgery.

22              THE COURT:  What were you doing before you --

23              PROSPECTIVE JUROR NO. 22:  Driving.

24              THE COURT:  Driving a truck?

25              PROSPECTIVE JUROR NO. 22:  Yeah.
```

```
1              THE COURT:  No. 5?

2              PROSPECTIVE JUROR NO. 22:  No. 5 is west of

3     Hialeah.

4              THE COURT:  How long have you lived there?

5              PROSPECTIVE JUROR NO. 22:  14 years.

6              THE COURT:  No. 6?

7              PROSPECTIVE JUROR NO. 22:  I own.

8              No. 7 is no.

9              Married.

10             THE COURT:  That's No. 8.

11             No. 9?

12             PROSPECTIVE JUROR NO. 22:  Yeah.  My wife is

13    living with me and my son.

14             THE COURT:  Is your wife working outside the

15    home?

16             PROSPECTIVE JUROR NO. 22:  No.

17             THE COURT:  And how about your son?  Does

18    he --

19             PROSPECTIVE JUROR NO. 22:  My son living with

20    me.

21             THE COURT:  Is he employed?

22             PROSPECTIVE JUROR NO. 22:  Yes, he is.

23             THE COURT:  What type of work does he do?

24             PROSPECTIVE JUROR NO. 22:  He's -- job

25    placement.
```

```
 1              THE COURT:  Okay.
 2              PROSPECTIVE JUROR NO. 22:  My childrens are
 3   30 years and 22.  The girl works as a lady lobby --
 4              THE COURT REPORTER:  I'm sorry.
 5              PROSPECTIVE JUROR NO. 22:  -- at the medical
 6   center.
 7              THE COURT REPORTER:  Would you repeat that,
 8   please.  The girl works as a --
 9              PROSPECTIVE JUROR NO. 22:  As somebody --
10   greeter.
11              THE COURT:  She greets people in the lobby at
12   the medical center?
13              PROSPECTIVE JUROR NO. 22:  Greeter in the
14   lobby at the medical center.
15              THE COURT:  Okay.
16              PROSPECTIVE JUROR NO. 22:  And my son works
17   at -- as a job placement as a college -- in a college.
18              THE COURT:  Okay.
19              PROSPECTIVE JUROR NO. 22:  No. 11, no.
20              Spanish.
21              THE COURT:  That's 12.
22              No. 13?
23              PROSPECTIVE JUROR NO. 22:  Yeah.  Little home
24   repairs at my home and some reading.
25              THE COURT:  No. 14?
```

1          PROSPECTIVE JUROR NO. 22:  High school and one

2     year of business administration.

3          No, No. 15.

4          16, TV and Internet.

5          THE COURT:  Okay.

6          PROSPECTIVE JUROR NO. 22:  17, no.

7          18, no.

8          19, no.

9          20, no.

10         21, no.

11         22, no.

12         23, no.

13         24, no.

14         No, 25.

15         26, no.

16         27, no.

17         28, yes.

18         29, no.

19         30, no.

20         31, no.

21         32, no.

22         33, no.

23         34, no.

24         And 35, yes.

25         THE COURT:  Thank you, sir.

1          We're going to come to Juror No. 24.

2          PROSPECTIVE JUROR NO. 24:  Good morning.

3          No. 1, 40.

4          No. 2, Miami Beach, Florida.

5          No. 3, Cuba and Colombia.

6          No. 4, information technology.

7          No. 5, Pinecrest, Florida, for seven years.

8          No. 6, I own.

9          No. 7, no.

10         No. 8, married.

11         No. 9, medical claims adjuster.

12         No. 10, 8, 10 and 23.  The 23-year-old is a

13 teacher.

14         No. 11, no.

15         No. 12, Spanish.

16         No. 13, reading and exercising.

17         No. 14, associate's in electronics and

18 finishing a business administration degree in the next

19 few months.

20         No. 15, no.

21         No. 16, all.

22         No. 17, yes.  Close friends.

23         THE COURT:  And what kind of work are they

24 doing?

25         PROSPECTIVE JUROR NO. 24:  The director of

```
 1   FDLE for Miami, and criminal court judge who just
 2   transferred to civil.
 3            THE COURT:  Okay.
 4            PROSPECTIVE JUROR NO. 24:  No. 18, no.
 5   No. 19, no.
 6   No. 20, my spouse has a paralegal certificate.
 7            THE COURT:  Has she worked as a paralegal?
 8            PROSPECTIVE JUROR NO. 24:  Yes.
 9            THE COURT:  What kind of paralegal work did
10   she do?
11            PROSPECTIVE JUROR NO. 24:  Products and
12   liability.
13            THE COURT:  In a law firm?
14            PROSPECTIVE JUROR NO. 24:  Yes.
15            THE COURT:  Okay.  Thank you.
16            21?
17            PROSPECTIVE JUROR NO. 24:  21, no.
18   No. 22, no.
19   No. 23, yes.  Identity theft.  It was
20   reported.  No one was arrested.  And I was
21   dissatisfied.
22            THE COURT:  When was that?
23            PROSPECTIVE JUROR NO. 24:  It was 2002, but it
24   happened for 14 years.  And it wasn't until 2002.
25            THE COURT:  So it happened 14 years before
```

```
1     that or it started --
2              PROSPECTIVE JUROR NO. 24:  It started 14 years
3     before that.
4              THE COURT:  Would you be able to put aside
5     whatever feelings of dissatisfaction you have regarding
6     that occurrence and sit and listen to the evidence in
7     this case and be fair to both the Government and the
8     Defendants?
9              PROSPECTIVE JUROR NO. 24:  Yes, I can.
10             No. 24, no.
11             No. 25, no.
12             No. 26, no.
13             No. 27, no.
14             No. 28, yes.
15             No. 29, no.
16             No. 30, no.
17             No. 31, no.
18             No. 32, no.
19             No. 33, no.
20             34, no.
21             35, yes.
22             THE COURT:  Thank you, sir.
23             Juror No. 25.
24             PROSPECTIVE JUROR NO. 25:  Good morning.
25             No. 1, 45.
```

1           2, Matanzas, Cuba.

2           3, Matanzas, Cuba.

3           School counselor of Dade County Public School

4  System.  That's No. 4.

5           No. 5, Homestead, five years.

6           No. 6, I own.

7           And I live with my spouse.

8           I have -- No. 7, no.

9           No. 8, married.

10          No. 9, my spouse is a -- systems engineer is

11 his occupation.

12          No children, No. 10.  No.

13          No. 11, no.

14          No. 12, Spanish.

15          13, reading and bicycling and spending time

16 with my nephews.

17          I have -- No. 14, I have a master's degree in

18 school counseling -- in psychology.

19          No. 15, no.

20          No. 16, all of those.

21          No. 17, yes.  My older brother's an attorney.

22          THE COURT:  What kind of law does he practice?

23          PROSPECTIVE JUROR NO. 25:  Aviation law.

24          THE COURT:  Okay.

25          PROSPECTIVE JUROR NO. 25:  18, no.

```
 1              No. 19, no.

 2              No. 20, yes.  Psychology.  That's myself.

 3              No. 21, no.

 4              No. 22, yes.  Myself.  I think -- I believe it

 5   was around 1989.

 6              THE COURT:  Where did you apply?

 7              PROSPECTIVE JUROR NO. 25:  Metro-Dade.

 8              THE COURT:  And what happened with that

 9   application?

10              PROSPECTIVE JUROR NO. 25:  I went up as far as

11   the assessment for firearms and I guess they caught me

12   there.

13              I didn't -- you know, there was a scenario in

14   domestic violence and with the firearms and -- you

15   know, I just -- after that, they -- I got disqualified.

16              And then, after that, there was a freeze and I

17   appealed it.  But, you know, I never pursued it after

18   that.

19              THE COURT:  Would you be able to put aside

20   whatever feelings you have regarding that instance or

21   that occurrence and sit and listen to the evidence in

22   this case and be fair to both Government and the

23   Defendants?

24              PROSPECTIVE JUROR NO. 25:  Yes, your Honor.

25              No. 23, no.  Never.
```

```
 1            No. 24, never.

 2            No. 25, yes.

 3            THE COURT:  What was that in regard to?

 4            PROSPECTIVE JUROR NO. 25:  It was a deposition

 5     on a fraud -- Medicaid fraud.  I used to work for a

 6     Medicaid agency, a home health agency, back in 1989 to

 7     1992.

 8            You know, they just wanted to see if I had any

 9     knowledge about the owners and what kind of fraud, you

10     know, if I had seen anything, if I had taken anything.

11            And I said, "No."

12            Mostly, I was like a witness.  They wanted to

13     see if I had witnessed any kind of transactions within

14     the office operation.

15            THE COURT:  Was this a civil case or a

16     criminal case?

17            PROSPECTIVE JUROR NO. 25:  A criminal.

18            THE COURT:  In the state court?

19            PROSPECTIVE JUROR NO. 25:  Well, I don't

20     recall going to the court.  I went to -- somewhere.

21     And I had a criminal attorney that my brother had found

22     for me.  But, I mean, there was no charges against me.

23            THE COURT:  Okay.  Do you think, in regard to

24     that, that you were treated fairly?

25            PROSPECTIVE JUROR NO. 25:  Yes, I was.
```

```
 1              THE COURT:  And do you think you were well

 2    represented by your lawyer?

 3              PROSPECTIVE JUROR NO. 25:  Yes, ma'am.

 4              THE COURT:  Is there anything about that --

 5    the taking of your statement in regard to the Medicaid

 6    that would make it difficult for you to sit and listen

 7    to the evidence in this case and be fair to both the

 8    Government and the Defendants?

 9              PROSPECTIVE JUROR NO. 25:  I have no problem.

10    I would be fair.

11              No. 26, yeah.

12              In relation to No. 25, it was for that.  It

13    was a criminal investigation, you know.  Those two go

14    hand in hand.

15              No. --

16              THE COURT:  So you were actually informed that

17    you were under criminal investigation?

18              PROSPECTIVE JUROR NO. 25:  Well, yes.  I was.

19              THE COURT:  Okay.

20              PROSPECTIVE JUROR NO. 25:  I guess they wanted

21    to know if I had participated, you know, in whatever, I

22    guess, the owners were into.  I had no knowledge of it.

23    They used to do a lot of the billing at home.

24              THE COURT:  And do you know what happened in

25    that investigation?
```

1    PROSPECTIVE JUROR NO. 25:  I believe the

2  owners fled to another country.  And the other members

3  of the mother agency, I would say -- because it's a

4  mother agency and then they have the little agencies

5  that bill to the mother agency.  Those people actually

6  went to prison.

7    THE COURT:  Okay.

8    PROSPECTIVE JUROR NO. 25:  No. 27 is yes.  I

9  have a godson in prison currently serving three and a

10  half years -- well, he's been in there for three and a

11  half years.

12    THE COURT:  What was he convicted of?

13    PROSPECTIVE JUROR NO. 25:  Murder.

14    THE COURT:  Did you attend any of his

15  hearings?

16    PROSPECTIVE JUROR NO. 25:  No.  But I have

17  visited him twice.

18    THE COURT:  Okay.  Do you think he was treated

19  fairly by the criminal justice system?

20    PROSPECTIVE JUROR NO. 25:  He doesn't think

21  so, but I think so.

22    THE COURT:  Do you think he was well

23  represented by his lawyer?

24    PROSPECTIVE JUROR NO. 25:  I don't know.  I

25  mean, he's appealing his case.  That I know.

1          THE COURT:  Is there anything about your

2    godson's experience with the criminal justice system

3    that would make it difficult for you to sit and listen

4    to the evidence in this case and be fair to both the

5    Government and the Defendants?

6          PROSPECTIVE JUROR NO. 25:  No.  I have no --

7    no problem being fair.

8          THE COURT:  Okay.  28?

9          PROSPECTIVE JUROR NO. 25:  28, I'm Catholic.

10   I go to church every now and then.

11         No. 30 is no.

12         THE COURT:  About how 29?

13         PROSPECTIVE JUROR NO. 25:  Oh, I'm sorry.

14         No.  I have no problems with -- no.  No. 29 is

15   no.

16         30 is no.

17         31 is no.

18         32 is no.

19         33 is no.  I don't have of any problems with

20   the English language.

21         34 is yes.  I -- I mean, it's not going to

22   impact.  I take medication for asthma.  I'm asthmatic.

23   I take Singulair and Albuterol, but it shouldn't affect

24   my duty to serve.

25         29 -- I mean, 35 is yes.  I have computer

1    access and do I get on the Internet.

2              THE COURT:  And what are you studying at

3    Barry?

4              PROSPECTIVE JUROR NO. 25:  I'm currently -- I

5    went back to get -- to attain another master's degree

6    in social work, but with the idea of also applying for

7    my licensure in therapy, licensed clinical social

8    worker.

9              What I currently do, I don't have a license.

10   I am protected under the umbrella of the school system.

11   So it doesn't require a license.  But I want to be able

12   to do other things with that degree.

13             THE COURT:  So this is working towards the

14   license you want get?

15             PROSPECTIVE JUROR NO. 25:  Yes.

16             THE COURT:  Okay.

17             PROSPECTIVE JUROR NO. 25:  Thank you, your

18   Honor.

19             THE COURT:  Thank you.

20             Juror No. 26.

21             PROSPECTIVE JUROR NO. 26:  Juror 26.

22             Good morning.

23             I'm 24.

24             Born in Colombia.

25             My parents are Colombian.

```
 1              I'm a supervisor in a warehouse.
 2              I've been living in Hialeah for about
 3   12 years.
 4              THE COURT:  What kind of work do they do at
 5   the warehouse?
 6              PROSPECTIVE JUROR NO. 26:  Wholesale.
 7              THE COURT:  What are they selling?
 8              PROSPECTIVE JUROR NO. 26:  Everything.
 9   Merchandise, food.
10              THE COURT:  All kinds of merchandise?
11              PROSPECTIVE JUROR NO. 26:  Everything.  Yes.
12              THE COURT:  Including food?
13              PROSPECTIVE JUROR NO. 26:  Yes.  Big company.
14              THE COURT:  How long have you been in Hialeah?
15              PROSPECTIVE JUROR NO. 26:  12 years.
16              THE COURT:  No. 6?
17              PROSPECTIVE JUROR NO. 26:  I own.  I have a
18   roommate.
19              THE COURT:  No. 7?
20              PROSPECTIVE JUROR NO. 26:  No.
21              THE COURT:  8?
22              PROSPECTIVE JUROR NO. 26:  Single.
23              THE COURT:  9?
24              PROSPECTIVE JUROR NO. 26:  My roommate also
25   works where I work.
```

```
 1            THE COURT:  And what type of work is he or she

 2   doing?

 3            PROSPECTIVE JUROR NO. 26:  She does -- she's

 4   all over the place.  So I think right now she's doing,

 5   like, all the loss that the company takes.  She's in

 6   charge of making sure everywhere --

 7            THE COURT:  Loss prevention?

 8            PROSPECTIVE JUROR NO. 26:  No.  Not loss

 9   prevention.  Everything goes where -- like, if we throw

10   something away, it gets accounted for.

11            THE COURT:  Okay.  No. 10?

12            PROSPECTIVE JUROR NO. 26:  No children.

13            11, no.

14            Spanish.

15            THE COURT:  That's No. 12.

16            PROSPECTIVE JUROR NO. 26:  No. 12.

17            13, movies, boating, gym.

18            14, associate's in science, in aviation

19   administration.

20            15, no.

21            16, all of the above.

22            17, no.

23            18, no.

24            19, no.

25            20, no.
```

```
 1              21, no.

 2              22, no.

 3              23, no.

 4              24, no.

 5              25, no.

 6              26, no.

 7              27, no.

 8              28, no.

 9              29, no.

10              30, no.

11              31, no.

12              32, no.

13              33, no.

14              34, no.

15              And 35, yes.

16              THE COURT:  Thank you, sir.

17              Juror No. 27.

18              PROSPECTIVE JUROR NO. 27:  Good morning.

19              43.

20              Puerto Rico.

21              Both parents, Cuba.

22              Physician.

23              Southwest, for 12 years.

24              THE COURT:  And what kind of medical practice

25     do you have?
```

1           PROSPECTIVE JUROR NO. 27:  Anesthesiologist.

2           THE COURT:  Say that again.

3           PROSPECTIVE JUROR NO. 27:  Anesthesiology.

4           No. 6, I own.

5           No. 7, no.

6           No. 8, divorced.

7           No. 9, not right now.

8           10, not applicable.

9           11, not applicable.

10          12, Spanish.

11          13, nothing, really, right now.

12          14, doctorate in medicine.

13          15, no.

14          16, all of the above.

15          17, yes.  A couple of cousins that are

16     criminal defense lawyers.

17          THE COURT:  Are they here in Miami?

18          PROSPECTIVE JUROR NO. 27:  Yes.

19          18, a few family members that work in the PD

20     department for the State.

21          19, no.

22          20, no.

23          21, no.

24          22, no.

25          23, no.

```
 1              24, no.

 2              25, yes.  I was asked to be involved in a

 3   deposition for one of my partners who had a medical

 4   malpractice case.

 5              26, no.

 6              27, no.

 7              28, yes.

 8              29, no.

 9              30, yes.  A federal case for a trafficking,

10   over 20 years ago.  The Defendants were acquitted.

11              31, no.

12              THE COURT:  Were you the foreperson?

13              PROSPECTIVE JUROR NO. 27:  No, I was not.

14              30, no.

15              31, no.

16              32, no.

17              33, no.

18              34, no.

19              And 35, yes.

20              THE COURT:  And where do you live?  What area

21   of town do you live in?

22              PROSPECTIVE JUROR NO. 27:  Southwest.

23              THE COURT:  How long?

24              PROSPECTIVE JUROR NO. 27:  12 years.

25              THE COURT:  Thank you, sir.
```

1          Juror No. 28.

2          PROSPECTIVE JUROR NO. 28:  Good morning.

3          No. 1, 51.

4          No. 2, Hollywood, Florida.

5          No. 3, West Virginia and New York.

6          No. 4, attorney.

7          No. 5, Coconut Grove, five years.

8          6, own.

9          7, no.

10         8, married.

11         9, attorney.  Husband, attorney.

12         10 --

13         THE COURT:  What kind of law does he practice?

14         PROSPECTIVE JUROR NO. 28:  Civil trial.

15         THE COURT:  And what kind of law do you

16    practice?

17         PROSPECTIVE JUROR NO. 28:  Civil trial and

18    appellate.

19         10 --

20         THE COURT:  Does the appellate include

21    criminal or civil appellate?

22         PROSPECTIVE JUROR NO. 28:  Well, I was going

23    to answer that later, your Honor.

24         I've done some pro bono criminal appeals in

25    the early 1990s for the State Public Defender's Office.

1          10, ages 18 and 16.

2          11, no.

3          12, no.

4          13, sports, volunteer and reading.

5          14, law degree.

6          15, yes.

7          16, all.

8          17, no.

9          18, my husband and I were law clerks at the

10    Fifth DCA, doing criminal and civil appeals after law

11    school.

12          And then, in law school, I was a legal intern

13    for the PD's office in Gainesville.

14          And then, as I mentioned, in early 1990s, I

15    did pro bono state criminal appeals for the Miami-Dade

16    Public Defender's Office.

17          9 -- 19 no.

18          20, again, husband in private practice.

19          21, no.

20          22, several years ago when Tom Scott was the

21    US Attorney, I interviewed there and I was not offered

22    a position.

23          No. 23 --

24          THE COURT:  Would that affect your ability to

25    be a fair and impartial juror?

```
1              PROSPECTIVE JUROR NO. 28:  No, your Honor.

2         23, stolen bicycles, burglary in college.  Not

3    reported.  I don't have a problem.

4         24, no.

5         25, I've testified in a deposition in

6    attorney's fees issue.

7         26, no.

8         27, no.

9         28, no.

10        29, no.

11        30, no.

12        31, no.

13        32, no.

14        33, no.

15        34, no.

16        35, yes.

17        THE COURT:  Thank you, ma'am.

18        Juror No. 29.

19        PROSPECTIVE JUROR NO. 29:  Good morning.

20        No. 1, 42.

21        No. 2, Cuba.

22        No. 3, Cuba.

23        No. 4, field supervision, probation.

24        No. 5, Kendall area, over 19 years.

25        THE COURT:  When you say, "Field supervision,
```

1    probation," is that for the State?

2         PROSPECTIVE JUROR NO. 29:  No, your Honor.

3    For the federal.

4         THE COURT:  So you're a probation officer for

5    the federal probation office here?

6         PROSPECTIVE JUROR NO. 29:  That's correct.

7         Do I continue?

8         THE COURT:  Sure.

9         PROSPECTIVE JUROR NO. 29:  Okay.

10        No. 6, own.

11        No. 7, no.

12        No. 8, married.

13        No. 9, police officer.

14        No. 10, 15, 11 and 7.

15        No. 11, no.

16        No. 12, yes.

17        No. 13, travel and community service projects.

18        THE COURT:  The other language is English --

19   Spanish?

20        PROSPECTIVE JUROR NO. 29:  Spanish.

21        THE COURT:  Okay.

22        PROSPECTIVE JUROR NO. 29:  No. 14, two

23   master's degrees, one in criminal justice, the other in

24   public administration.

25        No. 15, no.

1          No. 16, television.

2          No. 17, acting lieutenant for Miami-Dade

3    Police Department.

4          No. 18, no.

5          No. 19, no.

6          No. 20, yes.  Security, social work,

7    corrections.

8          21, no.

9          22, yes.

10         23, yes.  It was a burglary.  It was reported.

11   No one was arrested.  And, yes, I was satisfied.

12         24, yes.  Hit-and-run accident.  Yes.  It was

13   reported.  No one was arrested.  And I do not know what

14   happened to that case.  And yes, I was satisfied with

15   the results.

16         No. 25, no.

17         26, no.

18         27, no.

19         28, yes.

20         29, no.

21         30, no.

22         31, no.

23         32, no.

24         33, no.

25         34, no.

1          35, yes.  Daily.

2          Thank you.

3          THE COURT:  The fact that you're a federal

4   probation officer:  Would that affect your ability to

5   sit and listen to the evidence in this case and be fair

6   to both the Government and the Defendants?

7          PROSPECTIVE JUROR NO. 29:  No, your Honor.

8          THE COURT:  And would you be able to sit and

9   listen to the evidence in this case and make a

10  determination solely on the evidence presented at

11  trial?

12         PROSPECTIVE JUROR NO. 29:  Yes, your Honor.

13         THE COURT:  And what type of police work does

14  your husband do?

15         PROSPECTIVE JUROR NO. 29:  Field.  He's an

16  acting lieutenant right now, and he just works in the

17  streets by the Kendall area.

18         THE COURT:  Okay.  Thank you, ma'am.

19         Juror No. 30.

20         PROSPECTIVE JUROR NO. 30:  Good morning.

21         THE COURT:  Good morning.

22         PROSPECTIVE JUROR NO. 30:  No. 1, I'm 60.

23         Born in Puerto Rico, raised in New York.

24         Parents, Puerto Rico.

25         I'm a chef, Baptist Hospital.

```
 1              I live in Cutler Ridge, 25 years.

 2              I own.

 3              No. 7, no.

 4              Married.

 5              My wife works in payment and posting

 6   department at the University of Miami.

 7              I got six kids.

 8              THE COURT:  Six?

 9              PROSPECTIVE JUROR NO. 30:  Six.

10              THE COURT:  Okay.

11              PROSPECTIVE JUROR NO. 30:  Age 40, 38.  I got

12   a pair of twins, 31.  22 and 21.

13              THE COURT:  Are they working?

14              PROSPECTIVE JUROR NO. 30:  They all working.

15   Yes.

16              THE COURT:  What type of work do they do?

17              PROSPECTIVE JUROR NO. 30:  The 40 years, she's

18   a bank teller.

19              The 38 is an air condition engineer.

20              The pair of twins -- one is a carpenter.  He's

21   out of work right now.  The girl, she's -- she work at

22   CVS Pharmacy.

23              The 22 is -- works also in TV Bank as a head

24   teller.

25              The 21 also works at CVS Pharmacy.
```

```
 1              THE COURT:  Okay.

 2              PROSPECTIVE JUROR NO. 30:  Spanish.

 3              THE COURT:  Any children outside the US?

 4              PROSPECTIVE JUROR NO. 30:  No.

 5              THE COURT:  12 is Spanish.

 6              13?

 7              PROSPECTIVE JUROR NO. 30:  I like to go

 8    fishing.

 9              12th grade.

10              No. 15 is no.

11              Newspaper and television, No. 16.

12              No. 17 is no.

13              18 is no.

14              19 is no.

15              20 is no.

16              21 is no.

17              22 is no.

18              23 is no.

19              24 is no.

20              25 is no.

21              26, no.

22              27 is no.

23              28 is no.

24              29 is no.

25              30 is yes.  Served in the federal court in
```

```
 1   mail fraud case.
 2             THE COURT:  It was a criminal case?
 3             PROSPECTIVE JUROR NO. 30:  Right.
 4             THE COURT:  Did the jury reach a verdict?
 5             PROSPECTIVE JUROR NO. 30:  Yes, they did.
 6             THE COURT:  Were you the foreperson?
 7             PROSPECTIVE JUROR NO. 30:  No.
 8             I also served in civil court, car accident
 9   trial.
10             THE COURT:  I'm sorry?  In civil court.  Was
11   this a state case?
12             PROSPECTIVE JUROR NO. 30:  Yes.
13             THE COURT:  Did that jury reach a verdict as
14   well?
15             PROSPECTIVE JUROR NO. 30:  Yes.
16             THE COURT:  Were you the foreperson in that
17   jury?
18             PROSPECTIVE JUROR NO. 30:  No.
19             THE COURT:  31?
20             PROSPECTIVE JUROR NO. 30:  31 is no.
21             32 is no.
22             33 is no.
23             34 is no.
24             And 35 is no.
25             THE COURT:  Thank you, sir.
```

1              PROSPECTIVE JUROR NO. 30:  Thank you.

2              THE COURT:  Counsel, please approach.

3              (Whereupon, proceedings were had at side-bar

4    outside the presence of the jury which have been sealed

5    per instructions of the Court.)

6              (Whereupon, the following proceedings were had

7    in open court:)

8              THE COURT:  Juror 11, can you come up

9    side-bar, sir.

10             Watch your step.

11             (Whereupon, proceedings were had at side-bar

12   outside the presence of the jury which have been sealed

13   per instructions of the Court.)

14             (Whereupon, the following proceedings were had

15   in open court:)

16             THE COURT:  Juror No. 1 -- do you have a

17   microphone, Gennaro?

18             Sir, you had indicated yesterday that you had

19   testified as an expert witness in -- was it

20   construction issues?

21             PROSPECTIVE JUROR NO. 1:  Construction, indoor

22   air quality issues.

23             THE COURT:  Right.

24             And given that you were an expert witness and

25   that there may be expert witnesses that testify in this

1    case, I will instruct the jury that expert witnesses,

2    because of -- if they're certified as an expert by the

3    Court, they're able to give opinions, which, normally,

4    other witnesses don't do.  But, still, the jury has the

5    same evaluation to make as to whether they believe or

6    disbelieve an expert witness's testimony.

7             Given that you were an expert witness, would

8    you be more likely or less likely to believe the

9    testimony of an expert witness?

10            PROSPECTIVE JUROR NO. 1:  I don't think I'd be

11   affected either way.

12            THE COURT:  Think so or know so?

13            PROSPECTIVE JUROR NO. 1:  I wouldn't be

14   affected either way.

15            THE COURT:  Okay.  And what does your wife do?

16            PROSPECTIVE JUROR NO. 1:  She works for a

17   nonprofit organization.  She's a quality assurance

18   manager.

19            THE COURT:  Okay.  And what kind of things

20   does that -- what does she do on a daily basis?

21            PROSPECTIVE JUROR NO. 1:  Evaluate the

22   efficacy of the program make sure people are filling

23   outs charts correctly so, when they get audited, they

24   don't have a problem.

25            THE COURT:  Okay.  Thank you, sir.

1               Juror No. 2:  The regulators are at the

2    bank -- or working at the bank now?

3               PROSPECTIVE JUROR NO. 2:  Yes.

4               THE COURT:  And what is your involvement with

5    the regulators?

6               PROSPECTIVE JUROR NO. 2:  As a loan officer,

7    they interview us -- depending on any questions that

8    they may have on the loans after they audit the files,

9    they have their followup questions with the loan

10   officers in order to determine the risk rating of the

11   loan.

12              THE COURT:  So that's in relationship to

13   whatever the portfolio is or the collection of loans

14   that you're handling?

15              PROSPECTIVE JUROR NO. 2:  That's correct.

16              THE COURT:  And so they're talking to other

17   folks about what they're doing?

18              PROSPECTIVE JUROR NO. 2:  Correct.

19              THE COURT:  Your contact with them only

20   relates to what your job is.  Correct?

21              PROSPECTIVE JUROR NO. 2:  Yes.

22              THE COURT:  And what does your husband do?

23              PROSPECTIVE JUROR NO. 2:  He's a tax attorney.

24              THE COURT:  Thank you.

25              PROSPECTIVE JUROR NO. 2:  Thank you.

1            THE COURT:  Juror No. 10:  Did you indicate

2    you have a cousin that's a bailiff in state court?

3            PROSPECTIVE JUROR NO. 10:  She's in federal

4    court.  But I have no idea what she does.

5            THE COURT:  You don't know what she's doing in

6    federal court?

7            PROSPECTIVE JUROR NO. 10:  No.

8            THE COURT:  You never talk to her about her

9    work?

10           PROSPECTIVE JUROR NO. 10:  No.

11           THE COURT:  Okay.  Thank you.

12           Juror No. 15:  You work in the food service

13   area.  Is that for a public or private agency?

14           PROSPECTIVE JUROR NO. 15:  It's the public.

15   Public.

16           THE COURT:  Thank you, ma'am.

17           And Juror No. 28:  Ma'am, you had indicated

18   yesterday that you recognized one of the attorneys from

19   Bar functions.  You didn't really know them.  And it's

20   not clear to me who exactly you meant.

21           PROSPECTIVE JUROR NO. 28:  Mr. Gregorie.

22           THE COURT:  Okay.  Thank you.

23           Have you had contact with him at those

24   functions?

25           PROSPECTIVE JUROR NO. 28:  No, your Honor.

1           THE COURT:  Just saw him there?

2           PROSPECTIVE JUROR NO. 28:  Yes, your Honor.

3           THE COURT:  Okay.  Counsel, please approach.

4           (Whereupon, proceedings were had at side-bar

5     outside the presence of the jury which have been sealed

6     per instructions of the Court.)

7           (Whereupon, the following proceedings were had

8     in open court:)

9           THE COURTROOM DEPUTY:  When I call your

10    number, you are relieved from serving in this case.

11    I'll meet you in the lobby area.

12          Juror No. 4, 6, 9, 11, 12, 16, 17, 19 and 27.

13          THE COURT:  20.  20, 23.

14          THE COURTROOM DEPUTY:  They were released

15    yesterday.

16          THE COURT:  Okay.

17          Thank you.  We appreciate your service and

18    your patience.

19          (Whereupon, the unselected members of

20    Prospective Jury Panel No. III exited the courtroom and

21    the follows proceedings were had:)

22          THE COURT:  Ladies and gentlemen, we're going

23    to proceed to the third part of the voir dire process

24    in this case, which will be individual questioning.

25          You'll be waiting in the lobby and you'll come

1    in and either you can stand at the lectern or sit in

2    the jury box, wherever you feel more comfortable.

3              I'm going to ask you some additional

4    questions.  It shouldn't take too long for each person.

5    But there are a number of you.  So it will take a

6    little bit of time.

7              We're going to take a break first because I

8    need to let Lisa rest her fingers so I don't wear her

9    out.

10             Do not discuss this case either amongst

11   yourselves or with anyone else.  Have no contact

12   whatsoever with anyone associated with the trial.  Do

13   not read, listen or see anything touching on this

14   matter in any way.

15             If anyone should try to talk to you about this

16   case, you should immediately instruct them to stop and

17   report it to my staff.

18             If you would, be back in the lobby in ten

19   minutes.  And then we'll begin the process of having

20   each juror come in one by one.

21             Thank you so much.

22             (Whereupon, the remaining members of

23   Prospective Jury Panel No. III exited the courtroom at

24   10:53 a.m. and the following proceedings were had:)

25             THE COURT:  We're in recess for ten minutes.

```
 1              (Thereupon a recess was taken, after which the
 2    following proceedings were had:)
 3              THE COURT:  We're back on United States of
 4    America versus Narseal Batiste, et al., Case
 5    No. 06-20373.
 6              Counsel, state your appearances, please, for
 7    the record.
 8              MR. GREGORIE:  Richard Gregorie and Jacqueline
 9    Arango on behalf of the United States, your Honor.
10              MS. JHONES:  Your Honor, good morning.
11              Ana Jhones on behalf of Narseal Batiste, who
12    is present.
13              MR. LEVIN:  Albert Levin for Patrick Abraham.
14    He's here.
15              MR. CASUSO:  Lou Casuso on behalf of Burson
16    Augustin, who's present.
17              MR. CLARK:  Nathan Clark for Rotschild
18    Augustine, who's present.
19              MR. HOULIHAN:  Richard Houlihan with Naudimar
20    Herrera.
21              MR. VEREEN:  Roderick Vereen on behalf of
22    Stanley Phanor, who's present.
23              THE COURT:  All Defendants are present.
24              Mr. Levin, did you have anything else?
25              MR. LEVIN:  No, your Honor.  Thank you.
```

```
 1              THE COURT:  So let's begin with Juror No. 1.
 2              (Thereupon, Potential Juror No. 1 entered the
 3     courtroom and the following proceedings were had:)
 4              THE COURT:  Hello.
 5              PROSPECTIVE JUROR NO. 1:  Hi.
 6              THE COURT:  In this case, the Government has
 7     alleged that the Defendants were engaged in
 8     conspiracies to commit various violations of federal
 9     laws regarding terrorist activities.
10              The charges include conspiracies or agreements
11     to provide material support and resources to agents of
12     Al-Qaeda in conspiring to blow up the Sears Tower in
13     Chicago and several federal buildings in a planned war
14     against the United States.
15              Given that, is there anything that would
16     prevent you from being able to sit and listen to the
17     evidence in this case and be fair to both the
18     Government and the Defendants?
19              PROSPECTIVE JUROR NO. 1:  I've read about this
20     case on several occasions.  I've heard about it on the
21     radio, the news.
22              THE COURT:  Okay.
23              PROSPECTIVE JUROR NO. 1:  I believe this is
24     the third go-round on this one.  So I do have a little
25     bit of perspective, if you will.
```

1      THE COURT:  Okay.  And what would that

2  perspective be?

3      PROSPECTIVE JUROR NO. 1:  No.  Just that

4  it's -- it's been bounced -- or the juries haven't been

5  able to decide twice, I believe.

6      THE COURT:  And what is it that you read or

7  heard on the TV or on the radio?

8      PROSPECTIVE JUROR NO. 1:  That there was some

9  questions as far as the evidence that was collected and

10  how it was collected.

11      THE COURT:  Okay.  Do you have an open mind

12  regarding this case?

13      PROSPECTIVE JUROR NO. 1:  Honestly, I would be

14  somewhat questionable -- I would kind of look at it

15  with a little bit of skepticism at first and would have

16  to be convinced, based on some of what I've read and

17  some of the details that I've read.

18      THE COURT:  Would you be able to put aside

19  whatever you've read or heard on the radio or saw on

20  the TV and sit and listen to the evidence in this case

21  and make a determination of this case solely on the

22  evidence presented at trial?

23      PROSPECTIVE JUROR NO. 1:  I don't -- I'm not

24  sure that I could.

25      THE COURT:  Okay.  Thank you, sir.  If you'd

```
 1    have a seat outside and not discuss my questions with
 2    anyone.
 3              PROSPECTIVE JUROR NO. 1:  Thanks.
 4              (Thereupon, Potential Juror No. 1 retired from
 5    the courtroom and the following proceedings were had:)
 6              THE COURT:  Need I inquire further?
 7              MS. JHONES:  No, your Honor.
 8              THE COURT:  Does someone want to make a
 9    motion?
10              MS. ARANGO:  Move to strike for cause, Judge.
11              THE COURT:  Any objection?
12              MS. JHONES:  No, your Honor.
13              THE COURT:  Excused for cause.
14              MR. VEREEN:  Your Honor, before we bring in
15    the second juror, I reflected back on when I spoke with
16    Judge Reyes.  I think I may have mentioned that I was
17    in jury selection with this trial again.
18              THE COURT:  Okay.  That was in 24?
19              MR. VEREEN:  Yes.
20              THE COURT:  All right.  I'll question him
21    about that when he comes in.  I appreciate your candor,
22    Mr. Vereen.
23              MR. VEREEN:  Thank you.
24              THE COURT:  So Juror No. 2.
25              (Thereupon, Prospective Juror No. 2 entered
```

1     the courtroom and the following proceedings were had:)

2              THE COURT:  Hello.

3              PROSPECTIVE JUROR NO. 2:  Hello.

4              THE COURT:  Are you comfortable standing there

5     or do you want to sit?

6              PROSPECTIVE JUROR NO. 2:  I'll stand.

7              THE COURT:  Okay.  In this case, the

8     Government has alleged that the Defendants were engaged

9     in conspiracies to commit various violations of federal

10    laws regarding terrorist activities.

11             The charges include conspiracies or agreements

12    to provide material support and resources to agents of

13    Al-Qaeda in conspiring to blow up the Sears Tower in

14    Chicago and several federal buildings in a planned war

15    against the United States.

16             Given that, is there anything that would

17    prevent you from being able to sit and listen to the

18    evidence in this case and be fair to both the

19    Government and the Defendants?

20             PROSPECTIVE JUROR NO. 2:  No.

21             THE COURT:  In this case, you may hear

22    evidence that the Government used informants who are

23    not United States citizens and who posed as

24    terrorists/agents of Al-Qaeda.

25             Do you have such strong feelings one way or

```
 1   the other that you would not be able to sit and listen

 2   to this evidence and be fair to both the Government and

 3   the Defendants?

 4          PROSPECTIVE JUROR NO. 2:  No.

 5          THE COURT:  Have you acquired any information

 6   from newspaper, television, conversations or any other

 7   sources about this case?

 8          PROSPECTIVE JUROR NO. 2:  Besides hearing

 9   about the fact that there was an arrest made, no.  Any

10   particulars or anything like that, no.

11          THE COURT:  So you heard that there was an

12   arrest made.

13          From where did you hear that?

14          PROSPECTIVE JUROR NO. 2:  In the news.  I

15   think it was like a few years ago or a year ago or

16   something.  A couple years, I think it was.

17          THE COURT:  Do you remember whether it was

18   television?  Newspaper?

19          PROSPECTIVE JUROR NO. 2:  Television.  It was

20   on the news.

21          THE COURT:  Do you remember anything else

22   about the television segment that you saw?

23          PROSPECTIVE JUROR NO. 2:  Just that there was

24   an arrest made, there was a plot.  That's basically it.

25          THE COURT:  Okay.  Do you read the *Miami*
```

1    *Herald*, *New Times* or *Sun-Sentinel* news publications

2    either in print or on-line?

3               PROSPECTIVE JUROR NO. 2:  Occasionally, the

4    *Miami Herald* on-line.

5               THE COURT:  Okay.  Have you read anything in

6    any newspaper or on the Internet or have you seen

7    anything on television or heard anything on the radio

8    about this case other than what you already told me?

9               PROSPECTIVE JUROR NO. 2:  No.

10              THE COURT:  Have you followed the course of

11   the proceedings that have led up to this trial closely

12   prior to coming to court?

13              PROSPECTIVE JUROR NO. 2:  No.

14              THE COURT:  Have you discussed this case with

15   anyone?

16              PROSPECTIVE JUROR NO. 2:  No.

17              THE COURT:  Do you have an open mind regarding

18   this case?

19              PROSPECTIVE JUROR NO. 2:  Yes.

20              THE COURT:  Have you formed an opinion

21   regarding any of the Defendants based upon any outside

22   information?

23              PROSPECTIVE JUROR NO. 2:  No.

24              THE COURT:  Do you have any beliefs, thoughts

25   or opinions which may cause you to decide this case on

1    anything other than the evidence you will hear at

2    trial?

3              PROSPECTIVE JUROR NO. 2:  Repeat that.

4              THE COURT:  Sure.

5              Do you have any beliefs, thoughts or opinions

6    which may cause you to decide this case on anything

7    other than the evidence you will hear at trial?

8              PROSPECTIVE JUROR NO. 2:  No.  No.

9              THE COURT:  Are you knowledgeable about the

10   history and practice of Islam?

11             PROSPECTIVE JUROR NO. 2:  Vaguely.

12             THE COURT:  Where do you get your information

13   from?

14             PROSPECTIVE JUROR NO. 2:  I'm not that

15   knowledgeable.  There's very little.

16             THE COURT:  Okay.  Are you knowledgeable about

17   the history and practices of the Moorish Science

18   Temple?

19             PROSPECTIVE JUROR NO. 2:  No.

20             THE COURT:  Are you knowledgeable about the

21   Universal Divine Saviors?

22             PROSPECTIVE JUROR NO. 2:  No.

23             THE COURT:  Are you knowledgeable about the

24   history, teaching or practices of the Masons or are you

25   a member of any type of Masonic lodge?

1          PROSPECTIVE JUROR NO. 2:  Not a member.  I've

2    heard that they exist.

3          THE COURT:  Okay.  Where did you hear that

4    from?

5          PROSPECTIVE JUROR NO. 2:  Conversations with

6    people and from the Internet.

7          THE COURT:  Okay.  And in the conversations,

8    did you talk about the history, teachings or practices

9    of the Masons?

10          PROSPECTIVE JUROR NO. 2:  The history, but not

11   teachings or practices.  That they come from -- I think

12   it's the Middle Ages or whatnot, that they were

13   Masons -- actual Masons and then they formed an

14   organization and then they have -- they still exist

15   today and they have these lodges and whatnot.

16          THE COURT:  Okay.  Is that the extent of your

17   knowledge?

18          PROSPECTIVE JUROR NO. 2:  Yeah.

19          THE COURT:  Have you, your spouse or any of

20   your family members ever visited the Middle East?

21          PROSPECTIVE JUROR NO. 2:  No -- Middle -- my

22   grandfather.  My grandfather, my grandmother and my

23   aunt.

24          THE COURT:  Went where?

25          PROSPECTIVE JUROR NO. 2:  My grandfather was

1  in Saudi Arabia and, I think, Egypt and -- well, that

2  would be Africa.  So that doesn't count.  Saudi Arabia

3  for my grandfather, too.

4          THE COURT:  And when was that?

5          PROSPECTIVE JUROR NO. 2:  In the '70s.

6          THE COURT:  Okay.  And was that for business

7  or pleasure or....

8          PROSPECTIVE JUROR NO. 2:  For business.

9          THE COURT:  What kind of business was he in?

10          PROSPECTIVE JUROR NO. 2:  He was a developer,

11  construction.

12          THE COURT:  And he was actually developing in

13  Saudi Arabia?

14          PROSPECTIVE JUROR NO. 2:  Correct.

15          THE COURT:  And the other family members went

16  to --

17          PROSPECTIVE JUROR NO. 2:  They had gone to

18  Egypt.  I'm sorry.  That's not the Middle East.

19          THE COURT:  And when did they go to Egypt?

20          PROSPECTIVE JUROR NO. 2:  Around the time my

21  grandfather was in Saudi Arabia.  I think they were

22  visiting.

23          THE COURT:  Was that pleasure --

24          PROSPECTIVE JUROR NO. 2:  I assume so.

25          THE COURT:  -- or business?

```
 1              PROSPECTIVE JUROR NO. 2:  I don't know.  I was

 2   not born.

 3              THE COURT:  Okay.  Do you or family members or

 4   close friends have any prior or present military

 5   service?

 6              PROSPECTIVE JUROR NO. 2:  Who is it again?

 7   Sorry.

 8              THE COURT:  Any family members or close

 9   friends who are in the military or were in the

10   military.

11              PROSPECTIVE JUROR NO. 2:  I have a friend that

12   was in the military in the '80s, I believe.

13              THE COURT:  Okay.  And where was their place

14   of service?

15              PROSPECTIVE JUROR NO. 2:  Fort Bragg he was

16   in, and I know he was stationed in Germany for some

17   time.

18              THE COURT:  Did this person see any combat?

19              PROSPECTIVE JUROR NO. 2:  I don't know.

20              THE COURT:  That's fine.

21              Do you know whether they had any disciplinary

22   action taken against them?

23              PROSPECTIVE JUROR NO. 2:  No.  I don't know.

24              THE COURT:  Were they in the military police

25   or shore patrol?
```

```
 1              PROSPECTIVE JUROR NO. 2:  No.

 2              THE COURT:  Do you know if they received an

 3    honorable discharge?

 4              PROSPECTIVE JUROR NO. 2:  I assume they did.

 5    I really -- I assume they did.  I have no reason to

 6    assume not.

 7              THE COURT:  Okay.  Have you or any members of

 8    your family or close friends had any personal

 9    experience with acts of terrorism?

10              PROSPECTIVE JUROR NO. 2:  Yes.

11              THE COURT:  And who would that be?

12              PROSPECTIVE JUROR NO. 2:  My husband's cousin

13    died in September 11th in the World Trade Center

14    attacks.  And I had a college friend, also, who died in

15    the World Trade Center attacks.

16              THE COURT:  Would the fact that your husband's

17    cousin died in the September 11th attacks affect your

18    ability to sit and listen to the evidence in this case

19    and be fair to both the Government and the Defendants?

20              PROSPECTIVE JUROR NO. 2:  No.

21              THE COURT:  Would the fact that your husband's

22    cousin died in September 11th affect your ability to

23    sit and listen to the evidence in this case and make a

24    decision solely on the evidence presented at trial?

25              PROSPECTIVE JUROR NO. 2:  No.
```

1            THE COURT:  Would the fact that you had a

2   college friend who died in the September 11th attack

3   affect your ability to sit and listen to the evidence

4   in this case and be fair to both the Government and the

5   Defendants?

6            PROSPECTIVE JUROR NO. 2:  No.

7            THE COURT:  Would the fact that you had a

8   college friend who died in September 11th affect your

9   ability to sit and listen to the evidence in this case

10  and make a determination solely on the evidence

11  presented at trial?

12           PROSPECTIVE JUROR NO. 2:  No.

13           THE COURT:  Have the events of September 11th

14  or any other terrorist act affected you to such an

15  extent that it would make it difficult for you to sit

16  and listen to the evidence in this case and be fair to

17  both the Government and the Defendants?

18           PROSPECTIVE JUROR NO. 2:  No.

19           THE COURT:  Have you or any family member or

20  close friend lost a job, a business contract or

21  experienced any other financial hardship as a result of

22  September 11th or any other terrorist attack?

23           PROSPECTIVE JUROR NO. 2:  Not that I'm aware

24  of.  No.

25           THE COURT:  Do you have an opinion as to who

```
 1    was responsible for the attack on the United States on

 2    September 11th, 2001?

 3             PROSPECTIVE JUROR NO. 2:  We're told it was

 4    Osama bin Laden and Al-Qaeda.

 5             THE COURT:  Is there anything else you think

 6    the Court or the attorneys should know that might

 7    influence your ability to fairly and impartially judge

 8    the evidence in this case and follow the Court's

 9    instructions on the law?

10             PROSPECTIVE JUROR NO. 2:  No.

11             THE COURT:  Thank you, ma'am.

12             If you'd have a seat outside and not discuss

13    my questions with anyone.

14             PROSPECTIVE JUROR NO. 2:  Thank you.

15             (Thereupon, Potential Juror No. 2 retired from

16    the courtroom and the following proceedings were had:)

17             THE COURT:  Juror No. 5.

18             THE COURT SECURITY OFFICER:  Yes, ma'am.

19             MS. JHONES:  Your Honor, I'm sorry.

20             Did you say No. 5?

21             THE COURT:  Yes.

22             MS. JHONES:  No. 3, I believe, the Court

23    skipped.

24             THE COURT:  You're right.  Okay.  We'll take

25    her first and then we'll go back to No. 3.
```

1              Come on in.

2              (Thereupon, Potential Juror No. 5 entered the

3    courtroom and the following proceedings were had:)

4              THE COURT:  Hello.

5              PROSPECTIVE JUROR NO. 5:  Hi there.

6              THE COURT:  In this case, the Government has

7    alleged that the Defendants were engaged in

8    conspiracies to commit various violations of federal

9    laws regarding terrorist activities.

10             The charges include conspiracies or agreements

11   to provide material support and resources to agents of

12   Al-Qaeda in conspiring to blow up the Sears Tower in

13   Chicago and several federal buildings in a planned war

14   against the United States.

15             Given that, is there anything that would

16   prevent you from being able to sit and listen to the

17   evidence in this case and be fair to both the

18   Government and the Defendants?

19             PROSPECTIVE JUROR NO. 5:  No, your Honor.

20             THE COURT:  In this case, you may hear

21   evidence that the Government used informants who are

22   not United States citizens and who posed as

23   terrorists/agents of Al-Qaeda.

24             Do you have such strong feelings one way or

25   the other that you would not be able to sit and listen

1    to this evidence and be fair to both the Government and

2    the Defendants?

3         PROSPECTIVE JUROR NO. 5:  No, your Honor.

4         THE COURT:  Have you acquired any information

5    from newspaper, television, conversations or any other

6    sources about this case?

7         PROSPECTIVE JUROR NO. 5:  No.

8         THE COURT:  Do you read the *Miami Herald*,

9    *New Times* or *Sun-Sentinel* news publications either in

10   print or on-line?

11        PROSPECTIVE JUROR NO. 5:  No.  Not on-line at

12   all.  I do get the Sunday paper.

13        THE COURT:  Have you read anything in any

14   newspaper or on the Internet or have you seen anything

15   on television or heard anything on the radio about this

16   case?

17        PROSPECTIVE JUROR NO. 5:  No.

18        THE COURT:  Have you followed the course of

19   the proceedings that have led up to this trial closely?

20        PROSPECTIVE JUROR NO. 5:  I'm sorry?

21        THE COURT:  Have you followed the course of

22   the proceedings that have led up to this trial prior to

23   coming to court yesterday?

24        PROSPECTIVE JUROR NO. 5:  No.

25        THE COURT:  Have you discussed this case with

```
 1    anyone?

 2           PROSPECTIVE JUROR NO. 5:  No.

 3           THE COURT:  Do you have an open mind regarding

 4    this case?

 5           PROSPECTIVE JUROR NO. 5:  Yes, I do.

 6           THE COURT:  Have you formed an opinion

 7    regarding any of the Defendants based upon any outside

 8    information?

 9           PROSPECTIVE JUROR NO. 5:  No.  Not at all.

10           THE COURT:  Do you have any beliefs, thoughts

11    or opinions which may cause you to decide this case on

12    anything other than the evidence you will hear at

13    trial?

14           PROSPECTIVE JUROR NO. 5:  No.

15           THE COURT:  Are you knowledgeable about the

16    history and practice of Islam?

17           PROSPECTIVE JUROR NO. 5:  No, I don't.

18           THE COURT:  Are you knowledgeable about the

19    history and practices of the Moorish Science Temple?

20           PROSPECTIVE JUROR NO. 5:  About the what?

21           THE COURT:  Moorish Science Temple.

22           PROSPECTIVE JUROR NO. 5:  No.

23           THE COURT:  Are you knowledgeable about the

24    Universal Divine Saviors?

25           PROSPECTIVE JUROR NO. 5:  No.
```

1              THE COURT:  Are you knowledgeable about the

2      history, teaching or practices of the Masons or are you

3      a member of any type of Masonic lodge?

4              PROSPECTIVE JUROR NO. 5:  No, I'm not.

5              THE COURT:  Have you or any of your family

6      members ever visited the Middle East?

7              PROSPECTIVE JUROR NO. 5:  No.

8              THE COURT:  Do you or family members or close

9      friends have any prior or present military service?

10             PROSPECTIVE JUROR NO. 5:  Could you go back

11     and ask that again.

12             THE COURT:  Do you or family members or close

13     friends have any prior or present military service?

14             PROSPECTIVE JUROR NO. 5:  My boyfriend is

15     former military.  He's retired.

16             THE COURT:  And what branch of the service was

17     he in?

18             PROSPECTIVE JUROR NO. 5:  Coast Guard.

19             THE COURT:  And where was his place of

20     service?

21             PROSPECTIVE JUROR NO. 5:  When I met him, he

22     was at the Commstay on 152nd off U.S. 1 and then he was

23     downtown.

24             THE COURT:  Did he ever serve in combat?

25             PROSPECTIVE JUROR NO. 5:  No.  I think in the

1    Army when he was young in his career.  I think he

2    served in the Army for --

3              THE COURT:  First he was in the Army and then

4    in the Coast Guard?

5              PROSPECTIVE JUROR NO. 5:  Yes.  I think he was

6    in the Army for a year when he was very young.

7              THE COURT:  Was he ever in the military police

8    or shore patrol?

9              PROSPECTIVE JUROR NO. 5:  No.

10             THE COURT:  Did he ever have any disciplinary

11   action taken against him?

12             PROSPECTIVE JUROR NO. 5:  No.

13             THE COURT:  Did he receive an honorable

14   discharge?

15             PROSPECTIVE JUROR NO. 5:  Yes.

16             THE COURT:  What was his rank at discharge?

17   Do you know?

18             PROSPECTIVE JUROR NO. 5:  He's a lieutenant,

19   but I don't know what -- they have the different

20   grades.  I don't know what he was.

21             THE COURT:  Okay.  Have you or any members of

22   your family or close friends had any personal

23   experience with acts of terrorism?

24             PROSPECTIVE JUROR NO. 5:  No.

25             THE COURT:  Do you know or do you have a

1    family member or friend who knows someone who was a

2    victim of a terrorist attack?

3              PROSPECTIVE JUROR NO. 5:  No, ma'am.

4              THE COURT:  Have the events of September 11th

5    or any other terrorist act affected you to such an

6    extent that it would make it difficult for you to sit

7    and listen to the evidence in this case and be fair to

8    both the Government and the Defendants?

9              PROSPECTIVE JUROR NO. 5:  No.

10             THE COURT:  Have you or any family member or

11   close friends lost a job, a business contract or

12   experienced any other financial hardship as a result of

13   September 11th or any other terrorist attack?

14             PROSPECTIVE JUROR NO. 5:  No, I have not.

15             THE COURT:  Is there anything else you think

16   the -- strike that.

17             Do you have an opinion as to who was

18   responsible for the attack on the United States on

19   September 11th, 2001?

20             PROSPECTIVE JUROR NO. 5:  No.

21             THE COURT:  Is there anything else you think

22   the Court or the attorneys should know that might

23   influence your ability to fairly and impartially judge

24   the evidence in this case and follow the Court's

25   instructions on the law?

 1          PROSPECTIVE JUROR NO. 5:  No.  I don't think

 2  so.

 3          THE COURT:  Okay, ma'am.  Thank you.

 4          If you'd have a seat outside and not discuss

 5  my questions with anyone.

 6          PROSPECTIVE JUROR NO. 5:  Okay.

 7          THE COURT:  Thank you.

 8          (Thereupon, Potential Juror No. 5 retired from

 9  the courtroom and the following proceedings were had:)

10          THE COURT:  Juror No. 3, please.

11          (Thereupon, Potential Juror No. 3 entered the

12  courtroom and the following proceedings were had:)

13          THE COURT:  Hello.

14          PROSPECTIVE JUROR NO. 3:  Hi.

15          THE COURT:  You can stand there, sir, or sit,

16  wherever you feel more comfortable.  Is that okay?

17          PROSPECTIVE JUROR NO. 3:  Yes.

18          THE COURT:  In this case, the Government has

19  alleged that the Defendants were engaged in

20  conspiracies to commit various violations of federal

21  laws regarding terrorist activities.

22          The charges include conspiracies or agreements

23  to provide material support and resources to agents of

24  Al-Qaeda in conspiring to blow up the Sears Tower in

25  Chicago and several federal buildings in a planned war

1   against the United States.

2          Given that, is there anything that would

3   prevent you from being able to sit and listen to the

4   evidence in this case and be fair to both the

5   Government and the Defendants?

6          PROSPECTIVE JUROR NO. 3:  Yes.

7          THE COURT:  Okay.  And what would that be,

8   sir?

9          PROSPECTIVE JUROR NO. 3:  Well, it's hard to

10  see -- by looking at these guys, to think they would be

11  terrorists coming from the city that we live in.  I

12  don't think there are too many black terrorists around.

13  That's my opinion.  I'm just saying.

14         THE COURT:  Would you be able to put aside

15  that opinion and sit and listen to the evidence and

16  make a determination solely on the evidence presented

17  at trial?

18         PROSPECTIVE JUROR NO. 3:  If the evidence was

19  against them, yes, I would be able to.

20         THE COURT:  Okay.  In this case, you may hear

21  evidence that the Government used informants who are

22  not United States citizens and who posed as

23  terrorists/agents of Al-Qaeda.

24         Do you have such strong feelings one way or

25  the other that you would not be able to sit and listen

```
 1   to this evidence and be fair to both the Government and

 2   the Defendants?

 3          PROSPECTIVE JUROR NO. 3:  Well, if that's what

 4   the Government needs to pursue a case, then that may

 5   well be, you know.

 6          If they didn't have any other resources to do

 7   that, then they wouldn't be able to, you know, catch or

 8   control things like that.  So I figure they should be

 9   able to -- allowed to do that.

10          THE COURT:  Okay.  Have you acquired any

11   information from newspaper, television, conversations

12   or any other sources about this case?

13          PROSPECTIVE JUROR NO. 3:  No.  I really don't

14   know too much about it, except for what I heard on the

15   TV.

16          THE COURT:  What did you hear on TV?

17          PROSPECTIVE JUROR NO. 3:  About the -- what do

18   they call them?  The Liberty City 6 or something?

19          THE COURT:  Okay.  And when did you hear that?

20          PROSPECTIVE JUROR NO. 3:  Well, it's been

21   over -- I guess a year now, hasn't it?

22          THE COURT:  Okay.

23          PROSPECTIVE JUROR NO. 3:  I haven't been

24   keeping up with it, but that's the only thing I heard

25   about it.
```

1        THE COURT:  And did you hear anything else

2   about it on the TV?

3        PROSPECTIVE JUROR NO. 3:  No.  I haven't been

4   keeping up with that.  I didn't think they -- like I

5   said, I don't know too many blacks that -- in the

6   neighborhood in Liberty City that are terrorists.

7   So....

8        THE COURT:  Okay.  Do you read the *Miami*

9   *Herald*, *New Times* or *Sun-Sentinel* news publications

10  either in print or on-line?

11       PROSPECTIVE JUROR NO. 3:  I read the *Miami*

12  *Herald* daily.

13       THE COURT:  Okay.  Have you read anything in

14  any newspaper or on the Internet or have you seen

15  anything on television or heard anything on the radio

16  about this case other than what you've already told me?

17       PROSPECTIVE JUROR NO. 3:  No.  Like I said,

18  it's been awhile since I've been keeping up with it and

19  I haven't paid much attention to it.

20       THE COURT:  Did you pay attention to it at one

21  time?

22       PROSPECTIVE JUROR NO. 3:  Yeah.  The first

23  time I heard about it, I read of it.  I read about it.

24  And then, after awhile, it didn't matter anymore.

25       THE COURT:  So you saw it on TV and then you

```
 1    read about it, also?

 2            PROSPECTIVE JUROR NO. 3:  Yes.

 3            THE COURT:  And where did you read about it?

 4            PROSPECTIVE JUROR NO. 3:  I read about it in

 5    the newspaper, in the *Miami Herald*.  Like I said, this

 6    was, well, maybe when it first happened.

 7            That should -- that have been about, what,

 8    maybe a year or so ago, however long the case was.  But

 9    I haven't been keeping up with it.

10            THE COURT:  Do you have an open mind regarding

11    this case?

12            PROSPECTIVE JUROR NO. 3:  Well, like I said,

13    my mind is I don't think there are too many black

14    terrorists in Liberty City.

15            Is that an open-mind statement?

16            THE COURT:  I don't know.  You tell me.

17            PROSPECTIVE JUROR NO. 3:  I don't think

18    there's too many black terrorists in Liberty City.

19            THE COURT:  Have you formed an opinion

20    regarding any of the Defendants based upon any outside

21    information?

22            PROSPECTIVE JUROR NO. 3:  No.  Because I don't

23    know them and I haven't been keeping up with the case.

24            THE COURT:  Do you have any beliefs, thoughts

25    or opinions which may cause you to decide this case on
```

1    anything other than the evidence you will hear at

2    trial?

3              PROSPECTIVE JUROR NO. 3:  No.

4              THE COURT:  How about your opinion that there

5    are not too many black terrorists in Liberty City?

6    Would that affect your ability -- strike that.

7              Would that cause you to decide this case on

8    anything other than the evidence you would hear at

9    trial?

10             PROSPECTIVE JUROR NO. 3:  If the evidence is

11   against them, it's true, I will -- I would have to go

12   with the evidence.

13             THE COURT:  Okay.  Are you knowledgeable about

14   the history and practice of Islam?

15             PROSPECTIVE JUROR NO. 3:  No.

16             THE COURT:  Are you knowledgeable about the

17   history and practices of the Moorish Science Temple?

18             PROSPECTIVE JUROR NO. 3:  Never heard of it.

19             THE COURT:  Are you knowledgeable about the

20   Universal Divine Saviors?

21             PROSPECTIVE JUROR NO. 3:  No.

22             THE COURT:  Are you a member of any type of

23   Masonic lodge or are you knowledgeable about the

24   history, teachings or practices of the Masons?

25             PROSPECTIVE JUROR NO. 3:  No.

1          THE COURT:  Have you or any of your family

2     members ever visited the Middle East?

3          PROSPECTIVE JUROR NO. 3:  No.

4          THE COURT:  Do you or family members or close

5     friends have any prior or present military service?

6          PROSPECTIVE JUROR NO. 3:  Prior?

7          THE COURT:  Anyone in the military in your

8     family?

9          PROSPECTIVE JUROR NO. 3:  No.  Not recently.

10         THE COURT:  Okay.  At any time?

11         PROSPECTIVE JUROR NO. 3:  Yes.  I had a

12    brother in the military in the '70s.

13         THE COURT:  What branch of the military was he

14    in?

15         PROSPECTIVE JUROR NO. 3:  He was in the United

16    States Army.

17         THE COURT:  Okay.  Where was his place of

18    service?

19         PROSPECTIVE JUROR NO. 3:  I think he -- I

20    don't know where he got his basic training at, but he

21    was stationed in Germany.

22         THE COURT:  Did he serve in combat?

23         PROSPECTIVE JUROR NO. 3:  No.

24         THE COURT:  Was he ever in the military police

25    or shore patrol?

```
 1              PROSPECTIVE JUROR NO. 3:  No.
 2              THE COURT:  Did he ever have any disciplinary
 3    action taken against him?
 4              PROSPECTIVE JUROR NO. 3:  No.
 5              THE COURT:  Did he receive an honorable
 6    discharge?
 7              PROSPECTIVE JUROR NO. 3:  Yes, he did.
 8              THE COURT:  And do you know his rank at
 9    discharge?
10              PROSPECTIVE JUROR NO. 3:  I think he was a
11    SPC-5 or E-7 or something on that category.  I don't
12    know.
13              THE COURT:  Have you or any members of your
14    family or close friends had any personal experience
15    with acts of terrorism?
16              PROSPECTIVE JUROR NO. 3:  No.
17              THE COURT:  Do you know or do you have a
18    family member or friend who knows someone who was a
19    victim of a terrorist attack?
20              PROSPECTIVE JUROR NO. 3:  No.
21              THE COURT:  Have the events of September 11th
22    or any other terrorist act affected you to such an
23    extent that it would make it difficult for you to sit
24    and listen to the evidence in this case and be fair to
25    both the Government and the Defendants?
```

1          PROSPECTIVE JUROR NO. 3:  No, ma'am.

2          THE COURT:  Have you or any family member or

3    close friend lost a job, a business contract or

4    experienced any other financial hardship as a result of

5    September 11th or any other terrorist attack?

6          PROSPECTIVE JUROR NO. 3:  No.

7          THE COURT:  Do you have an opinion as to who

8    was responsible for the attack on the United States on

9    September 11th, 2001?

10          PROSPECTIVE JUROR NO. 3:  From what I heard,

11    what I read, terrorists or what you call "Al-Quade" or

12    "Al-Quade" (phonetic).  Not knowing that much about it,

13    from what I read and what I hear, terrorists.

14          THE COURT:  Okay.  Is there anything else you

15    think the Court or the attorneys should know that may

16    influence your ability to fairly and impartially judge

17    the evidence in this case and follow the Court's

18    instructions on the law?

19          PROSPECTIVE JUROR NO. 3:  No.

20          THE COURT:  Thank you, sir.

21          If you'd have a seat outside and not discuss

22    my questions with anyone.

23          PROSPECTIVE JUROR NO. 3:  Thank you.

24          (Thereupon, Potential Juror No. 3 retired from

25    the courtroom and the following proceedings were had:)

```
 1              THE COURT:  Juror --
 2              MS. ARANGO:  Judge, I believe you skipped
 3      Question No. 10, which is whether or not he's discussed
 4      this case with anyone.
 5              THE COURT:  Okay.
 6              MS. ARANGO:  And I would also ask that you --
 7      to ask him the additional question -- when you asked
 8      him a couple of occasions whether or not he had an
 9      opinion or if he could be fair, he said, "I don't think
10      there are too many black terrorists around Liberty
11      City" or "too many black terrorists around."
12              I would ask that you ask him -- and you asked
13      him if he could set that aside -- how he could set that
14      opinion aside.
15              THE COURT:  Would you ask him to come back in.
16              (Thereupon, Potential Juror No. 3 entered the
17      courtroom and the following proceedings were had:)
18              THE COURT:  A few more questions, sir.
19              Have you discussed this case with anyone at
20      any time?
21              PROSPECTIVE JUROR NO. 3:  No.
22              THE COURT:  Okay.  Now, you had indicated
23      that, in your opinion, there weren't too many -- or
24      there weren't black terrorists in Liberty City and you
25      also told me that you could set that opinion aside.
```

1        How is it that you would set that opinion

2   aside?

3        PROSPECTIVE JUROR NO. 3:  Well, like I said,

4   if you have evidence that show -- and we're in court

5   and they find evidence that's makes them guilty and I

6   feel like they're guilty about it, then I would have to

7   say, yeah, there are some black terrorists in Liberty

8   City.  But until you tell me that, then -- or show me

9   proof, then I don't think that.

10       THE COURT:  Okay, sir.  Thank you.

11       PROSPECTIVE JUROR NO. 3:  That's it?

12       THE COURT:  That's it.

13       PROSPECTIVE JUROR NO. 3:  Good-bye.

14       THE COURT:  Just have a seat outside.

15       (Thereupon, Potential Juror No. 3 retired from

16  the courtroom and the following proceedings were had:)

17       THE COURT:  Juror No. 7.

18       (Thereupon, Potential Juror No. 7 entered the

19  courtroom and the following proceedings were had:)

20       THE COURT:  Hello.

21       PROSPECTIVE JUROR NO. 7:  Hello.

22       THE COURT:  In this case, the Government has

23  alleged that the Defendants were engaged in

24  conspiracies to commit various violations of federal

25  laws regarding terrorist activities.

1          The charges include conspiracies or agreements

2    to provide material support and resources to agents of

3    Al-Qaeda in conspiring to blow up the Sears Tower in

4    Chicago and several federal buildings in a planned war

5    against the United States.

6          Given that, is there anything that would

7    prevent you from being able to sit and listen to the

8    evidence in this case and be fair to both the

9    Government and the Defendants?

10         PROSPECTIVE JUROR NO. 7:  I'd probably be a

11   little biased, working with domestic security.

12         THE COURT:  Okay.  And how would you be

13   biased?

14         PROSPECTIVE JUROR NO. 7:  I worked in domestic

15   security, referenced Al-Qaeda cases, and I experienced

16   a lot of cases firsthand.  I would probably be biased

17   against the Defendants.

18         THE COURT:  Okay.  Would you be able to put

19   aside whatever biases you have against the Defendants

20   and sit and listen to the evidence in this case and

21   make a determination solely on the evidence presented

22   at trial?

23         PROSPECTIVE JUROR NO. 7:  I'm not sure if I

24   would be able to do that.

25         THE COURT:  Okay.  Thank you, ma'am.

1          If you'd have a seat outside and not discuss

2    my questions with anyone.

3          PROSPECTIVE JUROR NO. 7:  Okay.

4          (Thereupon, Potential Juror No. 7 retired from

5    the courtroom and the following proceedings were had:)

6          THE COURT:  Need I inquire further?

7          MS. JHONES:  No, your Honor.  And I move for

8    cause.

9          THE COURT:  Any objection?

10         MS. ARANGO:  No objection.

11         THE COURT:  Excused for cause.

12         Juror No. 8.

13         (Thereupon, Potential Juror No. 8 entered the

14   courtroom and the following proceedings were had:)

15         THE COURT:  Hello.

16         PROSPECTIVE JUROR NO. 8:  Hello.

17         THE COURT:  In this case, the Government has

18   alleged that the Defendants were engaged in

19   conspiracies to commit various violations of federal

20   laws regarding terrorist activities.

21         The charges include conspiracies or agreements

22   to provide material support and resources to agents of

23   Al-Qaeda in conspiring to blow up the Sears Tower in

24   Chicago and several federal buildings in a planned war

25   against the United States.

1              Given that, is there anything that would

2    prevent you from being able to sit and listen to the

3    evidence in this case and be fair to both the

4    Government and the Defendants?

5              PROSPECTIVE JUROR NO. 8:  No.

6              THE COURT:  In this case, you may hear

7    evidence that the Government used informants who are

8    not United States citizens and who posed as

9    terrorists/agents of Al-Qaeda.

10             Do you have such strong feelings one way or

11   the other that you would not be able to sit and listen

12   to this evidence and be fair to both the Government and

13   the Defendants?

14             PROSPECTIVE JUROR NO. 8:  No.

15             THE COURT:  Have you acquired any information

16   from newspaper, television, conversations or any other

17   sources about this case?

18             PROSPECTIVE JUROR NO. 8:  Since I've been

19   picked as a --

20             THE COURT:  No.  Before.

21             PROSPECTIVE JUROR NO. 8:  Before?  I read -- I

22   read upon it.

23             THE COURT:  Okay.  And where did you read

24   about it?

25             PROSPECTIVE JUROR NO. 8:  I don't recall.  I

```
 1   just -- you know, that it was -- there was individuals
 2   from Liberty City that were -- that were captured.
 3           THE COURT:  Okay.  Do you read the Miami
 4   Herald, New Times or Sun-Sentinel news publications
 5   either in print or on-line.
 6           PROSPECTIVE JUROR NO. 8:  Miami Herald.
 7           THE COURT:  Did you read it detail?
 8           PROSPECTIVE JUROR NO. 8:  I get it daily.
 9           THE COURT:  Okay.  Have you read anything in
10   any newspaper or on the Internet or have you seen
11   anything on television or heard anything on the radio
12   about this case?
13           PROSPECTIVE JUROR NO. 8:  No.  Just what I
14   read way back when it first happened.
15           THE COURT:  Okay.  Have you followed the
16   course of the proceedings that have led up to this
17   trial closely prior to coming to court?
18           PROSPECTIVE JUROR NO. 8:  No.
19           THE COURT:  Have you discussed this case with
20   anyone?
21           PROSPECTIVE JUROR NO. 8:  No.
22           THE COURT:  Do you have an open mind regarding
23   this case?
24           PROSPECTIVE JUROR NO. 8:  Yes.
25           THE COURT:  Have you formed an opinion
```

```
 1   regarding any of the Defendants based upon any outside

 2   information?

 3            PROSPECTIVE JUROR NO. 8:  No.

 4            THE COURT:  Do you have any beliefs, thoughts

 5   or opinions which may cause you to decide this case on

 6   anything other than the evidence you will hear at

 7   trial?

 8            PROSPECTIVE JUROR NO. 8:  No.

 9            THE COURT:  Are you knowledgeable about the

10   history and practice of Islam?

11            PROSPECTIVE JUROR NO. 8:  Yes.

12            THE COURT:  And where do you get your

13   information from?

14            PROSPECTIVE JUROR NO. 8:  I've worked with a

15   Muslim coworker.  I've -- I watched the A&E channel,

16   Arts & Entertainment Channel, and they cover all -- all

17   types of topics --

18            THE COURT:  Okay.

19            PROSPECTIVE JUROR NO. 8:  -- on Islam.

20            THE COURT:  Are you knowledgeable about the

21   history and practices of the Moorish Science Temple?

22            PROSPECTIVE JUROR NO. 8:  No.

23            THE COURT:  Are you knowledgeable about the

24   Universal Divine Saviors?

25            PROSPECTIVE JUROR NO. 8:  No.
```

1                    THE COURT:  Are you a member of any type of

2       Masonic lodge or are you knowledgeable about the

3       history, teachings or practices of the Masons?

4                    PROSPECTIVE JUROR NO. 8:  I don't know about

5       their teachings.  But the -- I vaguely know about the

6       Masons.

7                    THE COURT:  And how is it that you know about

8       the Masons?

9                    PROSPECTIVE JUROR NO. 8:  Don't they have a

10      lodge in -- here in Miami?

11                   THE COURT:  Okay.

12                   PROSPECTIVE JUROR NO. 8:  They sponsor -- when

13      I was younger, I know they used to sponsor, like,

14      the -- something with the Orange Bowl.  I got free

15      tickets to see a game in the Orange Bowl once.

16                   THE COURT:  From the Masons?

17                   PROSPECTIVE JUROR NO. 8:  Yeah.

18                   THE COURT:  Okay.  In this case, there may be

19      evidence that certain persons wore apparel that

20      contained or had on it symbols or logos from the

21      Masons.

22                   Would that affect your ability to sit and

23      listen to the evidence in this case and be fair to both

24      the Government and the Defendants?

25                   PROSPECTIVE JUROR NO. 8:  No.

```
 1              THE COURT:  Have you or any of your family
 2    members ever visited the Middle East?
 3              PROSPECTIVE JUROR NO. 8:  No.
 4              THE COURT:  Do you or family members or close
 5    friends have any prior or present military service?
 6    You said you were in the Marines.  Right?
 7              PROSPECTIVE JUROR NO. 8:  Yes.
 8              THE COURT:  And anyone in your family in the
 9    Armed Services?
10              PROSPECTIVE JUROR NO. 8:  Not -- no.
11              THE COURT:  Where was your place of service?
12              PROSPECTIVE JUROR NO. 8:  I was in 29 Palms,
13    California.  I was in Oklahoma -- Fort Sill, Oklahoma.
14              THE COURT:  And when was your service in the
15    Marines?
16              PROSPECTIVE JUROR NO. 8:  In '78.
17              THE COURT:  Just the one year?
18              PROSPECTIVE JUROR NO. 8:  No.  '78 through
19    '80 -- to the end of '79.
20              THE COURT:  Did you serve in combat?
21              PROSPECTIVE JUROR NO. 8:  No.
22              THE COURT:  Were you ever in the military
23    police or shore patrol?
24              PROSPECTIVE JUROR NO. 8:  No.
25              THE COURT:  Did you have any disciplinary
```

```
 1    action taken against you?
 2              PROSPECTIVE JUROR NO. 8:  On the field only.
 3    But it wasn't no court martial or anything of that
 4    nature.  No.
 5              THE COURT:  And what was it for?
 6              PROSPECTIVE JUROR NO. 8:  I was instructed to
 7    double-time -- to get an overlay -- I was in artillery.
 8    I was a fire direction control, telling the tanks where
 9    to shoot.
10              I was told to -- by the second lieutenant to
11    double-time to a gun to get an overlay paper, which is
12    what you put over the map to pinpoint and draw on.
13              The gunnery sergeant walked back and the
14    second lieutenant came, pointing at me, hitting me, and
15    I grabbed his hand and I stopped him from that.  I was
16    just -- my punishment was to carry 95-pound rounds.
17    There was no -- it was just on the field.
18              THE COURT:  Okay.  Would this instance affect
19    your ability to sit and listen to the evidence in this
20    case and be fair to both the Government and the
21    Defendants?
22              PROSPECTIVE JUROR NO. 8:  No.
23              THE COURT:  Did you receive an honorable
24    discharge?
25              PROSPECTIVE JUROR NO. 8:  Yes.
```

```
1              THE COURT:  And what was your rank at
2    discharge?
3              PROSPECTIVE JUROR NO. 8:  Lance corporal.
4              THE COURT:  Have you or any members of your
5    family or close friends had any personal experience
6    with acts of terrorism?
7              PROSPECTIVE JUROR NO. 8:  No.
8              THE COURT:  Do you know or do you have a
9    family member or friend who knows someone who was a
10   victim of a terrorist attack?
11             PROSPECTIVE JUROR NO. 8:  No.
12             THE COURT:  Have the events of September 11th
13   or any other terrorist act affected you to such an
14   extent that it would make it difficult for you to sit
15   and listen to the evidence in this case and be fair to
16   both the Government and the Defendants?
17             PROSPECTIVE JUROR NO. 8:  No.
18             THE COURT:  Do you have an opinion as to who
19   was responsible for the attack on the United States on
20   September 11th, 2001?
21             PROSPECTIVE JUROR NO. 8:  Yes.
22             THE COURT:  And who do you think was
23   responsible?
24             PROSPECTIVE JUROR NO. 8:  Osama bin Laden.
25             THE COURT:  Is there anything else you think
```

1        the Court or the attorneys should know that might

2        influence your ability to fairly and impartially judge

3        the evidence in this case and follow the Court's

4        instructions on the law?

5                PROSPECTIVE JUROR NO. 8:  No.

6                THE COURT:  Thank you, sir.

7                If you would have a seat outside and not

8        discuss my questions with anyone.

9                (Thereupon, Potential Juror No. 8 retired from

10       the courtroom and the following proceedings were had:)

11               THE COURT:  Juror No. 10.

12               (Thereupon, Potential Juror No. 10 entered the

13       courtroom and the following proceedings were had:)

14               THE COURT:  Hello.

15               PROSPECTIVE JUROR NO. 10:  Hello.

16               THE COURT:  In this case, the Government has

17       alleged that the Defendants were engaged in

18       conspiracies to commit various violations of federal

19       laws regarding terrorist activities.

20               The charges include conspiracies or agreements

21       to provide material support and resources to agents of

22       Al-Qaeda in conspiring to blow up the Sears Tower in

23       Chicago and several federal buildings in a planned war

24       against the United States.

25               Given that, is there anything that would

1    prevent you from being able to sit and listen to the

2    evidence in this case and be fair to both the

3    Government and the Defendants?

4         PROSPECTIVE JUROR NO. 10:  No, ma'am.

5         THE COURT:  In this case, you may hear

6    evidence that the Government used informants who are

7    not United States citizens and who posed as

8    terrorists/agents of Al-Qaeda.

9         Do you have such strong feelings one way or

10   the other that you would not be able to sit and listen

11   to this evidence and be fair to both the Government and

12   the Defendants?

13        PROSPECTIVE JUROR NO. 10:  No, ma'am.

14        THE COURT:  Have you acquired any information

15   from newspaper, television, conversations or any other

16   sources about this case?

17        PROSPECTIVE JUROR NO. 10:  No.

18        THE COURT:  Do you read the *Miami Herald*,

19   *New Times* or *Sun-Sentinel* publications either in print

20   or on-line?

21        PROSPECTIVE JUROR NO. 10:  No.

22        THE COURT:  Have you read anything in any

23   newspaper or on the Internet or have you seen anything

24   on television or heard anything on the radio about this

25   case?

```
 1              PROSPECTIVE JUROR NO. 10:  I saw it on TV.
 2              THE COURT:  Okay.  And what was that?
 3              PROSPECTIVE JUROR NO. 10:  When it first came
 4    out.  But I don't recall the date.
 5              THE COURT:  And do you remember what station
 6    it was?
 7              PROSPECTIVE JUROR NO. 10:  I believe it was
 8    either 7 or 6.
 9              THE COURT:  And do you remember what you saw?
10              PROSPECTIVE JUROR NO. 10:  I just read --
11    remember seeing the pictures on TV.
12              THE COURT:  Okay.  What were the pictures of?
13              PROSPECTIVE JUROR NO. 10:  Of the -- of the
14    people that are being accused.
15              THE COURT:  Okay.  Do you remember anything
16    else?
17              PROSPECTIVE JUROR NO. 10:  No.
18              THE COURT:  Have you followed the course of
19    the proceedings that have led up to this trial closely
20    prior to coming to court yesterday?
21              PROSPECTIVE JUROR NO. 10:  No.
22              THE COURT:  Have you discussed this case with
23    anyone?
24              PROSPECTIVE JUROR NO. 10:  No, ma'am.
25              THE COURT:  Do you have an open mind regarding
```

1    this case?

2            PROSPECTIVE JUROR NO. 10:  Yes.

3            THE COURT:  Have you formed an opinion

4    regarding any of the Defendants based upon any outside

5    information, including what you saw on TV?

6            PROSPECTIVE JUROR NO. 10:  No.

7            THE COURT:  Do you have any beliefs, thoughts

8    or opinions which may cause you to decide this case on

9    anything other than the evidence you will hear at

10   trial?

11           PROSPECTIVE JUROR NO. 10:  No.

12           THE COURT:  Are you knowledgeable about the

13   history and practice of Islam?

14           PROSPECTIVE JUROR NO. 10:  No.

15           THE COURT:  Are you knowledgeable about the

16   history and practices of the Moorish Science Temple?

17           PROSPECTIVE JUROR NO. 10:  No, ma'am.

18           THE COURT:  Are you knowledgeable about the

19   Universal Divine Saviors?

20           PROSPECTIVE JUROR NO. 10:  No.

21           THE COURT:  Are you knowledgeable about the

22   history, teachings or practices of the Masons or are

23   you a member of any type of Masonic lodge?

24           PROSPECTIVE JUROR NO. 10:  No.

25           THE COURT:  Have you or any of your family

1    members ever visited the Middle East?

2            PROSPECTIVE JUROR NO. 10:  No, ma'am.

3            THE COURT:  Do you or family members or close

4    friends have any prior or present military service?

5            PROSPECTIVE JUROR NO. 10:  No.

6            THE COURT:  Have you or any members of your

7    family or close friends had any personal experience

8    with acts of terrorism?

9            PROSPECTIVE JUROR NO. 10:  No, ma'am.

10           THE COURT:  Do you know or do you have a

11   family member or friend who knows someone who was a

12   victim of a terrorist attack?

13           PROSPECTIVE JUROR NO. 10:  No.

14           THE COURT:  Have the events of September 11th

15   or any other terrorist act affected you to such an

16   extent that it would make it difficult for you to sit

17   and listen to the evidence in this case and be fair to

18   both the Government and the Defendants?

19           PROSPECTIVE JUROR NO. 10:  No.

20           THE COURT:  Have you or any family member or

21   close friend lost a job, a business contract or

22   experienced any other financial hardship as a result of

23   September 11th or any other terrorist attack?

24           PROSPECTIVE JUROR NO. 10:  No.

25           THE COURT:  Do you have an opinion as to who

```
 1    was responsible for the attack on the United States on

 2    September 11th, 2001?

 3            PROSPECTIVE JUROR NO. 10:  Yes.

 4            THE COURT:  And who do you think was

 5    responsible?

 6            PROSPECTIVE JUROR NO. 10:  The people that

 7    were said on TV.

 8            THE COURT:  Is there anything else you think

 9    the Court or the attorneys should know that might

10    influence your ability to fairly and impartially judge

11    the evidence in this case and follow the Court's

12    instructions on the law?

13            PROSPECTIVE JUROR NO. 10:  I'm sorry.  Can you

14    repeat that question.

15            THE COURT:  Sure.

16            Is there anything else you think the Court or

17    the attorneys should know that might influence your

18    ability to fairly and impartially judge the evidence in

19    this case and follow the Court's instructions on the

20    law?

21            PROSPECTIVE JUROR NO. 10:  No, ma'am.

22            THE COURT:  When you say the people on TV, do

23    you mean the Defendants that are here that you saw on

24    TV --

25            PROSPECTIVE JUROR NO. 10:  No.  No.  No.
```

```
 1              THE COURT:  -- or other people?
 2              PROSPECTIVE JUROR NO. 10:  The people that
 3   did -- September 11th?  That was the question.
 4   Correct?
 5              THE COURT:  Right.
 6              PROSPECTIVE JUROR NO. 10:  The people that
 7   were -- that -- the people that were accused as
 8   terrorists on September 11th.
 9              THE COURT:  Okay.
10              PROSPECTIVE JUROR NO. 10:  Yeah.
11              THE COURT:  Thank you, ma'am.
12              PROSPECTIVE JUROR NO. 10:  You're welcome.
13   That's it?
14              THE COURT:  If you would have a seat outside
15   and not discuss my questions with anyone.
16              PROSPECTIVE JUROR NO. 10:  Sure.
17              (Thereupon, Potential Juror No. 10 retired
18   from the courtroom and the following proceedings were
19   had:)
20              THE COURT:  Juror No. 13.
21              (Thereupon, Potential Juror No. 13 entered the
22   courtroom and the following proceedings were had:)
23              THE COURT:  Hello.
24              PROSPECTIVE JUROR NO. 13:  Hello.
25              THE COURT:  Yesterday, ma'am, you told me
```

```
 1    about the FCAT and that you were responsible for

 2    teaching reading and that the FCAT training, I believe

 3    you said, started in March.

 4              PROSPECTIVE JUROR NO. 13:  Yes.  It started in

 5    March and Write -- it probably -- Write start next

 6    week.

 7              THE COURT:  And what starts next week?

 8              PROSPECTIVE JUROR NO. 13:  The Florida Writes

 9    test.

10              THE COURT:  And what is your responsibility

11    with that?

12              PROSPECTIVE JUROR NO. 13:  That's with my

13    class.  I'm to test them.  I have prepared them for

14    the -- for FCAT for this year.  And it's probably my --

15    my procedure is to proctor them and monitor them as

16    they're taking the test.

17              THE COURT:  So you prepare them and then

18    proctor the test?

19              PROSPECTIVE JUROR NO. 13:  Proctor the test

20    during the time we have to give the FCAT.  I prefer

21    being there with my students because I've worked with

22    them so hard this year and I want to be able to -- if

23    I'm not there, they'll substitute someone else in my

24    place to give the test to the students.

25              THE COURT:  Okay.  If, in fact, you were
```

1    chosen as a juror in this case, would you be able to

2    pay full time and attention to the proceedings going on

3    at trial?

4            PROSPECTIVE JUROR NO. 13:  Yes, I will.

5            THE COURT:  And is there any issue as to your

6    position?  Your position would still -- strike that.

7            So they would provide a substitute for you?

8            PROSPECTIVE JUROR NO. 13:  Yes.  They would

9    substitute someone in my place.

10           THE COURT:  Okay.  In this case, the

11   Government has alleged that the Defendants were engaged

12   in conspiracies to commit various violations of federal

13   laws regarding terrorist activities.

14           The charges include conspiracies or agreements

15   to provide material support and resources to agents of

16   Al-Qaeda in conspiring to blow up the Sears Tower in

17   Chicago and several federal buildings in planned war

18   against the United States.

19           Given that, is there anything that would

20   prevent you from being able to sit and listen to the

21   evidence in this case and be fair to both the

22   Government and the Defendants?

23           PROSPECTIVE JUROR NO. 13:  No.

24           THE COURT:  In this case, you may hear

25   evidence that the Government used informants who are

1    not United States citizens and who posed as

2    terrorists/agents of Al-Qaeda.

3           Do you have such strong feelings one way or

4    the other that you would not be able to sit and listen

5    to this evidence and be fair to both the Government and

6    the Defendants?

7           PROSPECTIVE JUROR NO. 13:  No, I do not.

8           THE COURT:  Have you acquired any information

9    from newspaper, television, conversations or any other

10   sources about this case?

11          PROSPECTIVE JUROR NO. 13:  No.

12          THE COURT:  Do you read the *Miami Herald*,

13   *New Times* or *Sun-Sentinel* news publications either in

14   print or on-line?

15          PROSPECTIVE JUROR NO. 13:  Yes.

16          THE COURT:  Which one?

17          PROSPECTIVE JUROR NO. 13:  The *Miami Times*.

18          THE COURT:  The *Miami Times*?

19          PROSPECTIVE JUROR NO. 13:  *Miami Times*.

20          THE COURT:  Okay.  Have you read anything in

21   any newspaper or on the Internet or have you seen

22   anything on television or heard anything on the radio

23   about this case?

24          PROSPECTIVE JUROR NO. 13:  No.

25          THE COURT:  Have you followed the course of

1    the proceedings that have led up to this trial closely

2    prior to coming to court yesterday?

3              PROSPECTIVE JUROR NO. 1:  Yes, I have.

4              THE COURT:  You have followed it closely?

5              PROSPECTIVE JUROR NO. 13:  No.  I have not.

6              THE COURT:  I mean prior to coming to court,

7    not while you've been here.

8              PROSPECTIVE JUROR NO. 13:  No.  Prior, no.

9              THE COURT:  Okay.  Do you have an open mind

10   regarding this case?

11             PROSPECTIVE JUROR NO. 13:  Yes.

12             THE COURT:  Have you formed an opinion

13   regarding any of the Defendants based upon any outside

14   information?

15             PROSPECTIVE JUROR NO. 13:  No.

16             THE COURT:  Do you have any beliefs, thoughts

17   or opinions which may cause you to decide this case on

18   anything other than the evidence you will hear at

19   trial?

20             PROSPECTIVE JUROR NO. 13:  No.

21             THE COURT:  Are you knowledgeable about the

22   history and practice of Islam?

23             PROSPECTIVE JUROR NO. 13:  No.

24             THE COURT:  Are you knowledgeable about the

25   history and practices of the Moorish Science Temple?

```
 1              PROSPECTIVE JUROR NO. 13:  No.

 2              THE COURT:  Are you knowledgeable about the

 3   Universal Divine Saviors?

 4              PROSPECTIVE JUROR NO. 13:  No.

 5              THE COURT:  Are you knowledgeable about the

 6   history, teachings or practices of the Masons or are

 7   you a member of any type of Masonic lodge?

 8              PROSPECTIVE JUROR NO. 13:  Yes, I am.

 9              THE COURT:  Okay.

10              PROSPECTIVE JUROR NO. 13:  I'm Eastern Star.

11              THE COURT:  You're Eastern Star.  What does

12   that mean?

13              PROSPECTIVE JUROR NO. 1:  That's what's --

14   that's the sisterhood to the Masons.

15              THE COURT:  And how long have you been in the

16   sisterhood of the Masons?

17              PROSPECTIVE JUROR NO. 13:  24 years.

18              THE COURT:  In this case, there may be

19   evidence of certain persons who followed some of the

20   teachings of the Masons or wore apparel that contained

21   symbols or logos from the Masons.

22              Would that affect your ability to sit and

23   listen to that evidence and fairly make a determination

24   as to whether that person is truthful or untruthful?

25              PROSPECTIVE JUROR NO. 13:  No.
```

```
 1              THE COURT:  Are you more likely or less likely
 2   to believe somebody who is wearing a logo or a symbol
 3   from the Masons?
 4              PROSPECTIVE JUROR NO. 13:  Yes.  More likely.
 5              THE COURT:  You would be more likely to
 6   believe them?
 7              PROSPECTIVE JUROR NO. 13:  Yes.
 8              THE COURT:  Have you or any of your family
 9   members ever visited the Middle East?
10              PROSPECTIVE JUROR NO. 13:  No.
11              THE COURT:  Do you or any family members or
12   close friends have any prior or present military
13   service?
14              PROSPECTIVE JUROR NO. 13:  Yes.
15              THE COURT:  Who would that be?
16              PROSPECTIVE JUROR NO. 13:  My oldest brother
17   and my baby brother.
18              THE COURT:  They were in the -- what branch of
19   the service were they in?
20              PROSPECTIVE JUROR NO. 13:  My baby brother's
21   in the Navy.  My oldest brother's in the Air Force.
22              THE COURT:  And where was the place of service
23   of your brother who's in the Air Force?
24              PROSPECTIVE JUROR NO. 13:  He's in Virginia.
25              THE COURT:  He's still in the Air Force?
```

```
 1              PROSPECTIVE JUROR NO. 13:  Still in the Air

 2   Force.  Yes.

 3              THE COURT:  Has he served in combat?

 4              PROSPECTIVE JUROR NO. 13:  Yes.

 5              THE COURT:  Was he injured?

 6              PROSPECTIVE JUROR NO. 13:  No.

 7              THE COURT:  Was he ever in the military police

 8   or shore patrol?

 9              PROSPECTIVE JUROR NO. 1:  No.

10              THE COURT:  Did he have any disciplinary

11   action taken against him?

12              PROSPECTIVE JUROR NO. 13:  No.

13              THE COURT:  What is his rank now?

14              PROSPECTIVE JUROR NO. 13:  I think it's

15   Sergeant 3.  If I'm not mistaken, Sergeant 3.

16              THE COURT:  And your other brother --

17              PROSPECTIVE JUROR NO. 13:  He's in the Navy.

18              THE COURT:  And he's still in the Navy?

19              PROSPECTIVE JUROR NO. 13:  Yes.  He's still

20   active.

21              THE COURT:  What is his place of service?

22              PROSPECTIVE JUROR NO. 13:  In Virginia.

23              THE COURT:  And was he in combat?

24              PROSPECTIVE JUROR NO. 13:  No.

25              THE COURT:  Your brother who was in combat:
```

1    Where did he serve in combat?

2            PROSPECTIVE JUROR NO. 1:  In Germany, in

3    Pakistan -- Ghanistan (verbatim), I think it was.  I

4    can't remember the countries over there.

5            THE COURT:  And your brother that's in the

6    Navy:  Was he ever in the military police or shore

7    patrol?

8            PROSPECTIVE JUROR NO. 13:  No.

9            THE COURT:  Has he had disciplinary action

10   taken against him?

11           PROSPECTIVE JUROR NO. 13:  No.

12           THE COURT:  And what is his rank?

13           PROSPECTIVE JUROR NO. 13:  Sergeant 3.  I

14   think, with the Navy.  He just got a rank.  I don't

15   recall right now, your Honor.

16           THE COURT:  Have you or any members of your

17   family or close friends had any personal experience

18   with acts of terrorism?

19           PROSPECTIVE JUROR NO. 13:  No.

20           THE COURT:  Do you know or do you have a

21   family member or friend who knows someone who was a

22   victim of a terrorist attack?

23           PROSPECTIVE JUROR NO. 13:  No.

24           THE COURT:  Have the events of September 11th

25   or any other terrorist act affected you to such an

1   extent that it would make it difficult for you to sit

2   and listen to the evidence in this case and be fair to

3   both the Government and the Defendants?

4           PROSPECTIVE JUROR NO. 13:  No.

5           THE COURT:  Have you or any family member or

6   close friend lost a job, a business contract or

7   experienced any other financial hardship as a result of

8   September 11th or any other terrorist attack?

9           PROSPECTIVE JUROR NO. 13:  No.

10          THE COURT:  Do you have an opinion as to who

11  was responsible for the attack on the United States on

12  September 11th, 2001?

13          PROSPECTIVE JUROR NO. 13:  No, I do not.

14          THE COURT:  Is there anything else you think

15  the Court or the attorneys should know that might

16  influence your ability to fairly and impartially judge

17  the evidence in this case and follow the Court's

18  instructions on the law?

19          PROSPECTIVE JUROR NO. 13:  No.

20          THE COURT:  All right, ma'am.  If you'd have a

21  seat outside and not discuss my questions with anyone.

22          PROSPECTIVE JUROR NO. 13:  Thank you.

23          (Thereupon, Potential Juror No. 13 retired

24  from the courtroom and the following proceedings were

25  had:)

1              THE COURT:   Juror No. --

2              MS. ARANGO:   Judge, move to strike this person

3       for cause.

4              She said that she was not going to be able --

5       she was more likely to believe a person who wore the

6       symbols of a Mason.   And you asked her specifically.

7              She said that she would be more likely to

8       believe that person, which means that she would not be

9       able to follow your instruction to, you know, take the

10      testimony of the witnesses and assess them fairly and

11      impartially.

12             Obviously, her position as a Mason for

13      24 years is going to have an effect on her ability to

14      be fair and impartial.

15             MR. VEREEN:   If I may respond, first, she

16      didn't say she was a Mason.   She said she's an Eastern

17      Star.

18             THE COURT:   She said she's in the sisterhood

19      of the Masons.

20             MR. VEREEN:   Those are the Eastern Stars.

21      They're not Masons.   They're Eastern Stars.   Masons are

22      men.   Eastern Stars are the women.

23             The Court didn't ask her, if she -- the Court

24      told her to weigh the testimony of a person who

25      testifies who is a Mason as that -- the same as they

1   would weigh anyone else's testimony -- that question

2   wasn't asked.  So I would ask the Court to follow up

3   with that particular question.

4           Third --

5           THE COURT:  What is it that you want me to

6   ask?

7           MR. VEREEN:  To ask her, if the Court tells

8   her she is to weigh everyone's testimony the same,

9   without regard to what organization they are in or

10  whether or not they're a police officer or whether

11  they're a Mason or an Eastern Star -- if the Court

12  tells her she is to weigh the testimony the same, I'm

13  sure she'll say she would.

14          Third --

15          THE COURT:  How do you know she would say she

16  would?

17          MR. VEREEN:  Because I'm sure, as an Eastern

18  Star, she would follow the Court directions.

19          And, last, I would -- now I've lost my train

20  of thought.

21          THE COURT:  Well, how do you know that she --

22  I'm puzzled by why you're so sure that she would

23  follow -- why you know that she would follow the

24  Court's directions and you know she would say that she

25  would be able to put that aside.

1          MR. VEREEN:  Because the --

2          THE COURT:  We should probably put on the

3     record that you are a Mason.  Correct?

4          MR. VEREEN:  I am.

5          THE COURT:  So how is it that you know that

6     and I don't know that?

7          MR. VEREEN:  Well, because the teachings of

8     the Masonry, as well as Shriners, as well as the

9     Eastern Stars, as well as Daughters of Isis, is that

10    our loyalty is to the United States Government.

11         THE COURT:  I'm sorry?  "Is that our" what?

12         MR. VEREEN:  Our loyalty is to the United

13    States Government.

14         You may have recalled one of the other

15    gentlemen who testified.  He says that our teachings

16    are we respect everybody the same.  We do.

17         So it doesn't have anything with regard to

18    whether or not they're a Mason or whether or not

19    they're a police officer or whatever position they

20    hold.  We come from all walks of life.

21         THE COURT:  Okay.

22         MR. VEREEN:  So I'd ask the Court to bring her

23    back and question her as to whether or not the Court

24    gives her the instruction that she's to consider

25    everyone's testimony the same and see what her answer

1    would be.

2         MS. JHONES:  Your Honor, may I follow up on

3    something?

4         THE COURT:  This issue?

5         MS. JHONES:  Yes.  Same issue.

6         THE COURT:  Yes.

7         MS. JHONES:  Your Honor, the Court asked her

8    if -- with respect to whether or not she would be more

9    likely to believe somebody because they were wearing a

10   logo or symbol and she said "yes."  That was the

11   question.

12        And my only request is the Court did not

13   follow up and ask her if she could put that bias

14   aside -- the normal colloquy the Court engaged in.

15   That would be my request, in addition to whatever other

16   questions you would like to ask her.

17        She has -- she said that she would be more

18   likely to believe somebody who is wearing a logo or a

19   symbol.  Is she able to put that aside?  Why does she

20   have that feeling, that sort of thing, so we can just

21   iron out what it is -- in particular, her bias or

22   whether or not she could set that aside and follow the

23   Court's instruction, which I believe to be the issue.

24        MR. VEREEN:  Let me add one other thing, your

25   Honor.  I remember what I was going to tell you.  There

1  aren't any Masons that are testifying.  I don't

2  recall the Government calling Sultan Kahn-Bey, and he

3  was the person that wore the Masonic emblem.

4         THE COURT REPORTER:  I'm sorry?  I can't keep

5  up with you.

6         MR. VEREEN:  I'm sorry.

7         The only person that wore the Masonic emblem

8  that testified that was of relevance was Sultan

9  Kahn-Bey.  He was the one that was wearing the emblem.

10 The Government did not call him as a witness in the

11 case.

12        THE COURT:  There's videos, though, with

13 Sultan Kahn-Bey arriving wearing a robe with symbols of

14 the Masons.

15        MR. VEREEN:  Right.

16        THE COURT:  There's additionally some of --

17 there's additional logos of the Masons, is there not --

18        MS. ARANGO:  Yes.

19        THE COURT:  -- on some of the other evidence,

20 as I recall.

21        MS. ARANGO:  Correct, Judge.

22        I would just point out that the philosophy, as

23 shown in this case, of this group adopts -- you know,

24 the Moorish Science Temple philosophy adopts from the

25 Masons as well.  So it's intertwined.

1          MR. VEREEN:  Everybody adopts from us.  I

2     mean, if you look at -- I mean, the American dollar --

3     I mean, everybody adopts.

4          THE COURT:  Excuse me?

5          MR. VEREEN:  Everybody adopts from -- I mean,

6     United States history -- I mean, if anybody decides to

7     study Masonry, everybody takes from Masonic teachings.

8          The United States currency is built around

9     Masonic teachings.  The federal buildings -- most of

10    the federal buildings have Masonic emblems on them.

11    There's a reason for that.

12         So to say that there's one particular

13    organization that takes from Masonry is an

14    understatement.

15         MS. ARANGO:  May I continue, Judge?

16         THE COURT:  Yes.

17         MS. ARANGO:  The evidence in this case

18    establishes the Defendants follow philosophy that

19    follows and adopts from the Masons.  That will be some

20    of the evidence that will be introduced in this case.

21         When you asked this person, Juror No. 13 -- I

22    had it up on the .  Just one second, Judge.  Let me

23    find it.

24         You said, "In this case, there may be evidence

25    of certain persons who followed some of the teachings

1   of the Masons or wore apparel that contained symbols or

2   logos from Masons.

3           "Would that affect your ability to sit and

4   listen to that evidence and fairly and impartially make

5   a determination as to whether that person is truthful

6   or untruthful?

7           "No.

8           "Are you more likely or less likely to believe

9   someone who is wearing a logo or a symbol from the

10  Masons?"

11          The answer:  "Yes.  More likely."

12          Then you follow up.

13          "You would be more likely to believe them?"

14          The answer is, "Yes."

15          So she's already telling you here how she is

16  going to weigh that testimony from witnesses or anybody

17  before her.

18          And, additionally, Judge, if she noted that an

19  attorney was a Mason, you know, and you're going to ask

20  followup questions, which I don't think you should -- I

21  think at this point there's enough to strike her for

22  cause -- but she may use that as well.  She's already

23  indicating that that is going to have an effect on her

24  perception, her abilities.

25          I would note that this is in direct, you know,

1    contrast to -- there have been other jurors who have

2    been Masons who have said -- who have answered this

3    question differently and said, "No.  It won't affect

4    me."  "No.  I will take the testimony of any person and

5    judge it evenly and dispassionately.  I'm not going to

6    use my position as a Mason to effect that."

7            There was a gentlemen, I think, in Panel

8    No. II that said that.

9            This woman did not say that.  She has already

10   stated how she's going to perceive the testimony and

11   the believability of people who associate themselves

12   with the Masons.

13           MS. JHONES:  Your Honor, just one more thing:

14   I think that Ms. Arango may be correct.

15           But because, again, there wasn't -- and I

16   certainly don't fault the Court for that.  There wasn't

17   a followup question as to whether or not she can set

18   that aside.

19           We have many people here that have very strong

20   beliefs.  We have people that are very pro-law

21   enforcement.  We have people that have -- by virtue of

22   their families being in law enforcement, by virtue of

23   their close friends, they have -- people come here with

24   biases.

25           The question is:  Could they set them aside?

1    And my only request would be that you ask the Court --

2    you ask the juror is she able to set that aside.

3         If she is not, then I agree with Ms. Arango.

4    She should be struck.

5         But I think that we owe this juror the

6    opportunity to answer that question.

7         THE COURT:  Is that the same thing that you

8    wanted me to ask, Mr. Vereen?  Because I didn't really

9    quite understand what you were asking me to ask.

10        MR. VEREEN:  Yes, your Honor.

11        THE COURT:  You're normally very articulate,

12   and I didn't find you clear in what you were asking the

13   Court to do.

14        MR. VEREEN:  That's what I'm asking the Court

15   to do.

16        THE COURT:  Bring her in.  No. 13.

17        (Thereupon, Potential Juror No. 13 entered the

18   courtroom and the following proceedings were had:)

19        THE COURT:  A few more questions, ma'am.

20        You had indicated to me, ma'am, that if

21   somebody -- if there was evidence of either testimony

22   or some other form of evidence and somebody was wearing

23   a logo or a symbol from the Masons, that you would be

24   more likely to believe them.

25        PROSPECTIVE JUROR NO. 13:  Yes.

1          THE COURT:  Would you be able to put aside

2     that opinion and sit and listen to the evidence and

3     that testimony of that witness or that evidence and

4     fairly and impartially judge that evidence?

5          PROSPECTIVE JUROR NO. 13:  Yes.  I could do

6     that.

7          THE COURT:  Even if there was somebody who was

8     wearing a logo --

9          PROSPECTIVE JUROR NO. 13:  Yes.

10         THE COURT:  -- of the Masons?

11         PROSPECTIVE JUROR NO. 13:  Yes.

12         THE COURT:  Now, how are you going to do that?

13         PROSPECTIVE JUROR NO. 13:  Well, it depends on

14    what the evidence -- the questions that are being asked

15    and what evidence is being presented.

16         THE COURT:  Well, let's say there's a question

17    asked and the person answers it.

18         How are you going to determine whether that

19    person is truthful or untruthful and put aside this

20    bias that you have if the person is wearing a logo from

21    the Masons?

22         PROSPECTIVE JUROR NO. 13:  Well, I would

23    listen closely to the question that would be asked of

24    him and use my own -- my personal opinion on whether

25    he's answered the truth or not.

1          THE COURT:  Does that personal opinion include

2     the fact -- would you also be considering that that

3     person is, let's say, wearing a logo from the Masons?

4          PROSPECTIVE JUROR NO. 13:  At that time, I

5     would discard that.  I would have a job to do to

6     fulfill my job as a juror.  So I would not do that.

7          THE COURT:  In this case, there may be

8     evidence of certain persons or groups who adopted

9     philosophy from the Masons.

10          Would you be able to sit and listen to that

11     evidence and fairly and impartially judge that evidence

12     or would the fact that philosophies of the Masons are

13     intertwined affect your ability to fairly and

14     impartially judge that evidence?

15          PROSPECTIVE JUROR NO. 13:  It would be hard,

16     your Honor.  I'm being honest.  It would be very hard

17     for me.

18          THE COURT:  Okay.  Thank you.

19          You can have a seat outside.

20          (Thereupon, Potential Juror No. 13 retired

21     from the courtroom and the following proceedings were

22     had:)

23          MS. ARANGO:  Judge, I renew my motion to

24     strike for cause.

25          Her answer was very qualified.  She said it

1    would be very hard for her to be honest.

2              THE COURT:  Any objection?

3              MS. JHONES:  No objection, your Honor.

4              THE COURT:  Excused for cause.

5              Juror No. 14.

6              (Thereupon, Potential Juror No. 14 entered the

7    courtroom and the following proceedings were had:)

8              THE COURT:  Hello.

9              PROSPECTIVE JUROR NO. 14:  Hello.

10             THE COURT:  In this case, the Government has

11   alleged that the Defendants were engaged in

12   conspiracies to commit various violations of federal

13   laws regarding terrorist activities.

14             The charges include conspiracies or agreements

15   to provide material support and resources to agents of

16   Al-Qaeda in conspiring to blow up the Sears Tower in

17   Chicago and several federal buildings in a planned war

18   against the United States.

19             Given that, is there anything that would

20   prevent you from being able to sit and listen to the

21   evidence in this case and be fair to both the

22   Government and the Defendants?

23             PROSPECTIVE JUROR NO. 14:  No.

24             THE COURT:  In this case, you may hear

25   evidence that the Government used informants who are

```
 1    not United States citizens and who posed as

 2    terrorists/agents of Al-Qaeda.

 3              Do you have such strong feelings one way or

 4    the other that you would not be able to sit and listen

 5    to this evidence and be fair to both the Government and

 6    the Defendants?

 7              PROSPECTIVE JUROR NO. 14:  No.

 8              THE COURT:  Have you acquired any information

 9    from newspaper, television, conversations or any other

10    sources about this case?

11              PROSPECTIVE JUROR NO. 14:  Not recently.

12              THE COURT:  At any time?

13              PROSPECTIVE JUROR NO. 14:  Not -- not this

14    week.  In the past, I had heard something on TV.

15              THE COURT:  What did you hear on TV?

16              PROSPECTIVE JUROR NO. 14:  If it's the same

17    case I'm thinking of, if it is, in fact, this case,

18    that the Defendants had had -- I believe something

19    about some weapons and things like that.

20              I don't know too much about it.  I don't

21    recall a lot.  I know that they were local, here, local

22    residents.

23              THE COURT:  And do you remember what channel

24    you saw it on on TV?

25              PROSPECTIVE JUROR NO. 14:  No.
```

1          THE COURT:  Do you remember when it was?

2          PROSPECTIVE JUROR NO. 14:  When?

3          THE COURT:  When.

4          PROSPECTIVE JUROR NO. 14:  I don't recall when

5    it was.

6          THE COURT:  Okay.

7          PROSPECTIVE JUROR NO. 14:  It would have been

8    months ago, I would imagine.

9          THE COURT:  Months ago?

10         PROSPECTIVE JUROR NO. 14:  Yeah.  Quite a

11   while back.

12         THE COURT:  Do you read the *Miami Herald*,

13   *New Times* or *Sun-Sentinel* news publications either in

14   print or on-line?

15         PROSPECTIVE JUROR NO. 14:  No.

16         THE COURT:  Have you read anything in any

17   newspaper or on the Internet or have you seen anything

18   on television or heard anything on the radio about this

19   case other than what you just told me?

20         PROSPECTIVE JUROR NO. 14:  No.

21         THE COURT:  Have you followed the course of

22   the proceedings that have led up to this trial closely

23   prior to coming to court yesterday?

24         PROSPECTIVE JUROR NO. 14:  No.

25         THE COURT:  Have you discussed this case with

```
 1    anyone?

 2              PROSPECTIVE JUROR NO. 14:  No.

 3              THE COURT:  Do you have an open mind regarding

 4    this case?

 5              PROSPECTIVE JUROR NO. 14:  Yes.

 6              THE COURT:  Are you sure?

 7              PROSPECTIVE JUROR NO. 14:  Yes.

 8              THE COURT:  Have you formed an opinion

 9    regarding any of the Defendants based upon any outside

10    information, including what you saw on TV a few --

11    several months ago?

12              PROSPECTIVE JUROR NO. 14:  No.

13              THE COURT:  Do you have any beliefs, thoughts

14    or opinions which may cause you to decide this case on

15    anything other than the evidence you will hear at

16    trial?

17              PROSPECTIVE JUROR NO. 14:  No.

18              THE COURT:  Are you knowledgeable about the

19    history and practice of Islam?

20              PROSPECTIVE JUROR NO. 14:  No.

21              THE COURT:  Are you knowledgeable about the

22    history and practices of the Moorish Science Temple?

23              PROSPECTIVE JUROR NO. 14:  No.

24              THE COURT:  Are you knowledgeable about the

25    Universal Divine Saviors?
```

1           PROSPECTIVE JUROR NO. 14:  No.

2           THE COURT:  Are you a member of any type of

3    Masonic lodge or are you knowledgeable about the

4    history, teachings or practices of the Masons?

5           PROSPECTIVE JUROR NO. 14:  No.  I'm not a

6    member and I know very little about the Masons.

7           THE COURT:  And where is it that you get your

8    information from?

9           PROSPECTIVE JUROR NO. 14:  I have a friend

10   that's a Mason and -- but I haven't really -- I know

11   that he is, but I haven't really discussed it with him.

12           And I had a neighbor of my parents that was a

13   Mason and I was witness to his -- at his -- when he

14   passed away at his viewing.

15           The Masons came and did their -- what do you

16   call it? -- I guess ritual or whatever they do when one

17   of their members dies.

18           THE COURT:  In this case, there may be

19   evidence where certain persons may be wearing apparel

20   that contains the logo of the Masons or there may be

21   evidence that certain persons or groups adopted some of

22   the philosophies of the Masons.

23           Would that affect your ability to sit and

24   listen to the evidence in this case and be fair and

25   impartial?

1             PROSPECTIVE JUROR NO. 14:  No.

2             THE COURT:  Have you or any of your family

3   members ever visited the Middle East?

4             PROSPECTIVE JUROR NO. 14:  No.

5             THE COURT:  Do you or family member or close

6   friends have any prior or present military service?

7             PROSPECTIVE JUROR NO. 14:  Yes.

8             THE COURT:  Who would that be?

9             PROSPECTIVE JUROR NO. 14:  My ex-wife's

10  brother is presently in the Air Force.  He's an Air

11  Force reservist, and he's been over to the Middle East

12  a couple of times.

13            THE COURT:  Okay.  Where was his place of

14  service?  Do you know?

15            PROSPECTIVE JUROR NO. 14:  He's been to both

16  Afghanistan and Iraq.

17            THE COURT:  And did he serve in combat?

18            PROSPECTIVE JUROR NO. 14:  I don't believe so.

19  He goes over there as an -- mainly as an instructor.

20            THE COURT:  Was he injured in any way?

21            PROSPECTIVE JUROR NO. 14:  No.

22            THE COURT:  Was he in the military police or

23  shore patrol?

24            PROSPECTIVE JUROR NO. 14:  No.

25            THE COURT:  Did he have any disciplinary

1    action taken against him?

2              PROSPECTIVE JUROR NO. 14:  No.

3              THE COURT:  He's still in the Air Force?

4              PROSPECTIVE JUROR NO. 14:  Yeah.

5              THE COURT:  And do you know his rank?

6              PROSPECTIVE JUROR NO. 14:  No.  I sure don't.

7              THE COURT:  Okay.  Have you or any members of

8    your family or close friends had any personal

9    experience with acts of terrorism?

10             PROSPECTIVE JUROR NO. 14:  No.

11             THE COURT:  Do you know or do you have a

12   family member or friend who knows someone who was a

13   victim of a terrorist attack?

14             PROSPECTIVE JUROR NO. 14:  No.

15             THE COURT:  Have the events of September 11th

16   or any other terrorist act affected you to such an

17   extent that it would make it difficult for you to sit

18   and listen to the evidence in this case and be fair to

19   both the Government and the Defendants?

20             PROSPECTIVE JUROR NO. 14:  No.

21             THE COURT:  Have you or any family member or

22   close friends lost a job, a business contract or

23   experienced any other financial hardship as a result of

24   September 11th or any other terrorist attack?

25             PROSPECTIVE JUROR NO. 14:  No.

1           THE COURT:  Do you have an opinion as to who

2   was responsible for the attack on the United States on

3   September 11th, 2001?

4           PROSPECTIVE JUROR NO. 14:  Who was

5   responsible?

6           THE COURT:  Yes.

7           PROSPECTIVE JUROR NO. 14:  Yes.  The people

8   that did it.

9           THE COURT:  And who do you think was

10  responsible?

11          PROSPECTIVE JUROR NO. 14:  The men that did

12  the acts.  I don't know them by name.  But the men that

13  did the acts.  They ultimately are responsible.  And I

14  would guess you could say them and their organization

15  that put them up to it.

16          THE COURT:  Is there anything else you think

17  the Court or the attorneys should know that might

18  influence your ability to fairly and impartially judge

19  the evidence in this case and follow the Court's

20  instructions on the law?

21          PROSPECTIVE JUROR NO. 14:  No.  Nothing.

22          THE COURT:  If you would have a seat outside,

23  sir, and not discuss my questions with anyone.

24          PROSPECTIVE JUROR NO. 14:  Thank you.

25          (Thereupon, Potential Juror No. 14 retired

1    from the courtroom and the following proceedings were

2    had:)

3              THE COURT:  No. 15.

4              (Thereupon, Potential Juror No. 15 entered the

5    courtroom and the following proceedings were had:)

6              THE COURT:  Hello.

7              PROSPECTIVE JUROR NO. 15:  Hello.

8              THE COURT:  In this case, the Government has

9    alleged that the Defendants were engaged in

10   conspiracies to commit various violations of federal

11   laws regarding terrorist activities.

12             The charges include conspiracies or agreements

13   to provide material support and resources to agents of

14   Al-Qaeda in conspiring to blow up the Sears Tower in

15   Chicago and several federal buildings in a planned war

16   against the United States.

17             Given that, is there anything that would

18   prevent you from being able to sit and listen to the

19   evidence in this case and be fair to both the

20   Government and the Defendants?

21             PROSPECTIVE JUROR NO. 15:  No.  There would

22   not be.  No.

23             THE COURT:  In this case, you may hear

24   evidence that the Government used informants who are

25   not United States citizens and who posed as

1    terrorists/agents of Al-Qaeda.

2              Do you have such strong feelings one way or

3    the other that you would not be able to sit and listen

4    to this evidence and be fair to both the Government and

5    the Defendants?

6              PROSPECTIVE JUROR NO. 15:  No, your Honor.

7              THE COURT:  Have you acquired any information

8    from newspaper, television, conversations or any other

9    sources about this case?

10             PROSPECTIVE JUROR NO. 15:  No, I have not.

11             THE COURT:  Do you read the *Miami Herald*,

12   *New Times* or *Sun-Sentinel* news publications either in

13   print or on-line?

14             PROSPECTIVE JUROR NO. 15:  Not every day.

15   Occasionally I do.

16             THE COURT:  Which one do you read?

17             PROSPECTIVE JUROR NO. 15:  The *Miami Herald*.

18             THE COURT:  Have you read anything in any

19   newspaper or on the Internet or have you seen anything

20   on television or heard about -- anything on the radio

21   about this case?

22             PROSPECTIVE JUROR NO. 15:  Not recently.

23             THE COURT:  At any time?

24             PROSPECTIVE JUROR NO. 15:  Yes.

25             THE COURT:  What is it that you read or saw or

```
1    heard?

2              PROSPECTIVE JUROR NO. 15:  I heard the same

3    thing that you mentioned about the Sears building

4    and -- that's basically it.

5              THE COURT:  And where did you -- where did you

6    hear that?

7              PROSPECTIVE JUROR NO. 15:  I was listening to

8    the news, also.

9              THE COURT:  On the radio?

10             PROSPECTIVE JUROR NO. 15:  The TV.

11             THE COURT:  On the TV.

12        Do you remember what station?

13             PROSPECTIVE JUROR NO. 15:  No.  I can't

14   remember what station.

15             THE COURT:  And do you remember when it was?

16             PROSPECTIVE JUROR NO. 15:  I think it was

17   around about three months or four months ago.  I'm not

18   really sure.

19             THE COURT:  Okay.  And other than the Sears

20   Tower, do you remember anything else in the segment?

21             PROSPECTIVE JUROR NO. 15:  No.  I can't

22   remember.

23             THE COURT:  Have you followed the course of

24   the proceedings leading up to this trial closely prior

25   to coming to court yesterday?
```

1              PROSPECTIVE JUROR NO. 15:  No, ma'am.

2              THE COURT:  Have you discussed this case with

3    anyone?

4              PROSPECTIVE JUROR NO. 15:  No, ma'am.

5              THE COURT:  Do you have an open mind regarding

6    this case?

7              PROSPECTIVE JUROR NO. 15:  I have an open

8    mind.  Yes.

9              THE COURT:  Have you formed an opinion

10   regarding any of the Defendants based upon any outside

11   information, including what you saw on TV?

12             PROSPECTIVE JUROR NO. 15:  No, I have not.

13             THE COURT:  Do you have any beliefs, thoughts

14   or opinions which may cause you to decide this case on

15   anything other than the evidence you will hear at

16   trial?

17             PROSPECTIVE JUROR NO. 15:  No.

18             THE COURT:  Are you knowledgeable about the

19   history and practice of Islam?

20             PROSPECTIVE JUROR NO. 15:  No, I'm not.

21             THE COURT:  Are you knowledgeable about the

22   history and practices of the Moorish Science Temple?

23             PROSPECTIVE JUROR NO. 15:  No.

24             THE COURT:  Are you knowledgeable about the

25   Universal Divine Saviors?

1          PROSPECTIVE JUROR NO. 15:  Could you repeat

2    that.

3          THE COURT:  Are you knowledgeable about the

4    Universal Divine Saviors?

5          PROSPECTIVE JUROR NO. 15:  Oh.  No.

6          THE COURT:  Are you a member of any type of

7    Masonic lodge or are you knowledgeable about the

8    history, teachings or practices of the Masons?

9          PROSPECTIVE JUROR NO. 15:  No.

10          THE COURT:  Have you or any of your family

11    members ever visited the Middle East?

12          PROSPECTIVE JUROR NO. 15:  No, ma'am.

13          THE COURT:  Do you or family members or close

14    friends have any prior or present military service?

15          PROSPECTIVE JUROR NO. 15:  Oh, yes.  My

16    brother.  He was in the military.  I think he did go

17    over to the Middle East.  I'm not really sure.

18          THE COURT:  Do you know what branch of the

19    military he was in?

20          PROSPECTIVE JUROR NO. 15:  He's in the Army.

21          THE COURT:  And do you know where he did his

22    place of service?

23          PROSPECTIVE JUROR NO. 15:  He mentioned it,

24    but I -- I can't recommend (verbatim) right now.  I

25    don't remember it.

```
 1              THE COURT:  Did he ever serve in combat?

 2              PROSPECTIVE JUROR NO. 15:  No.

 3              THE COURT:  Was he ever in the military police

 4    or shore patrol?

 5              PROSPECTIVE JUROR NO. 15:  I believe he was.

 6              THE COURT:  In the military police?

 7              PROSPECTIVE JUROR NO. 15:  Uh-huh.  I believe

 8    so.

 9              THE COURT:  Did he have any disciplinary

10    action taken against him ever?

11              PROSPECTIVE JUROR NO. 15:  No, ma'am.

12              THE COURT:  Did he receive an honorable

13    discharge?

14              PROSPECTIVE JUROR NO. 15:  I think he retired.

15              THE COURT:  Okay.

16              PROSPECTIVE JUROR NO. 15:  Yes.

17              THE COURT:  Do you know what his rank was when

18    he left the Army?

19              PROSPECTIVE JUROR NO. 15:  I think he's a

20    sergeant.

21              THE COURT:  Okay.  Have you or any members of

22    your family or close friends had any personal

23    experience with acts of terrorism?

24              PROSPECTIVE JUROR NO. 15:  No, ma'am.

25              THE COURT:  Do you know or do you have a
```

1    family member or friend who knows someone who was a

2    victim of a terrorist attack?

3         PROSPECTIVE JUROR NO. 15:  No, I don't.

4         THE COURT:  Have the events of September 11th

5    or any other terrorist act affected you to such an

6    extent that it would make it difficult for you to sit

7    and listen to the evidence in this case and be fair to

8    both the Government and the Defendants?

9         PROSPECTIVE JUROR NO. 15:  No.  Since

10   September the 11th, no.

11        THE COURT:  Do you want to hear that question

12   again?

13        PROSPECTIVE JUROR NO. 15:  Yes, please.

14        THE COURT:  Have the events of September 11th

15   or any other terrorist attack effected you to such an

16   extent that it would make it difficult for you to sit

17   and listen to the evidence in this case and be fair to

18   both the Government and the Defendants?

19        PROSPECTIVE JUROR NO. 15:  Well, in a way, it

20   did affect me, because I have children in the same

21   area.  And I thought they were gonna be affected by it

22   all.  So it did bother me.

23        THE COURT:  Where were your children?

24        PROSPECTIVE JUROR NO. 15:  They're in New York

25   still.

1          THE COURT:  Would you be able to put aside

2   whatever concerns you had about your children on

3   September 11th and sit and listen to the evidence in

4   this case and be fair to both the Government and the

5   Defendants?

6          PROSPECTIVE JUROR NO. 15:  Yes, ma'am.  I'm

7   gonna try.  Yes.

8          THE COURT:  Try or would you be able to?

9          PROSPECTIVE JUROR NO. 15:  I'll be able to.

10          THE COURT:  Would you be able to put aside

11   whatever feelings you have in regard to your children

12   being in New York on September 11th and sit and listen

13   to the evidence in this case and make a determination

14   solely on the evidence at trial?

15          PROSPECTIVE JUROR NO. 15:  Yes.  I'll be able

16   to.

17          THE COURT:  Have you or any family member or

18   close friends lost a job, a business contract or

19   experienced any other financial hardship as a result of

20   September 11th or in any other terrorist attack?

21          PROSPECTIVE JUROR NO. 15:  No, ma'am.

22          THE COURT:  Do you have an opinion as to who

23   was responsible for of the attack on the United States

24   on September 11th, 2001?

25          PROSPECTIVE JUROR NO. 15:  Could you repeat

1    that.

2            THE COURT:  Sure.

3            Do you have an opinion as to who was

4    responsible for the attack on the United States on

5    September 11th, 2001?

6            PROSPECTIVE JUROR NO. 15:  It was not the

7    United States.  I know.

8            THE COURT:  Okay.  Is there anything else you

9    think the Court or the attorneys should know that might

10   influence your ability to fairly and impartially judge

11   the evidence in this case and follow the Court's

12   instructions on the law?

13           PROSPECTIVE JUROR NO. 15:  Not at all.

14           THE COURT:  Okay, ma'am.  If you would have a

15   seat outside and not discuss my questions with anyone.

16           PROSPECTIVE JUROR NO. 15:  Thank you.

17           (Thereupon, Potential Juror No. 15 retired

18   from the courtroom and the following proceedings were

19   had:)

20           THE COURT:  We're going to break for lunch.

21   I'm going to have Patricia excuse those persons that

22   thus far have been excused.  There's no reason to have

23   them waiting around.

24           So that would be Juror No. 1, Juror No. 7,

25   Juror No. 13.  Correct?  Does everybody agree?

1              MS. JHONES:  Yes, your Honor.

2              THE COURT:  1, 7, 13, thus far.

3              We'll be coming back at -- let's make it 2:30.

4              Patricia, you can tell the jurors to be back

5      in the lobby at 2:30.

6              THE COURTROOM DEPUTY:  Yes, Judge.

7              THE COURT:  Is that it?

8              We're in recess until 2:30.

9              (Thereupon, a luncheon recess was taken, after

10     which the following proceedings were had:)

11             THE COURT:  We're back on United States of

12     America versus Narseal Batiste, et al., Case

13     No. 06-20373.

14             Counsel, state your appearances, please, for

15     the record.

16             MR. GREGORIE:  Good afternoon, your Honor.

17             Richard Gregorie and Jacqueline Arango on

18     behalf of the United States.

19             MS. JHONES:  Good afternoon, your Honor.

20             Ana Jhones on behalf of Mr. Batiste, who is

21     present.

22             MR. LEVIN:  Good afternoon, your Honor.

23             Albert Levin on behalf of Patrick Abraham, who

24     is present.

25             MR. CASUSO:  Good afternoon, your Honor.

1              Lou Casuso on behalf of Burson Augustin, who

2    is present.

3              MR. CLARK:  Good afternoon, your Honor.

4              Nathan Clark for Rotschild Augustine.

5              MR. HOULIHAN:  Richard Houlihan with Naudimar

6    Herrera.

7              MR. VEREEN:  Rod Vereen on behalf of Stanley

8    Phanor.

9              THE COURT:  All Defendants are present.

10             I believe all the jurors are now back.  So

11   let's proceed with Juror No. 18.

12             You may be seated.

13             (Thereupon, Potential Juror No. 18 entered the

14   courtroom and the following proceedings were had:)

15             THE COURT:  Hello.

16             PROSPECTIVE JUROR NO. 18:  Hi.

17             THE COURT:  In this case, the Government has

18   alleged that the Defendants were engaged in

19   conspiracies to commit various violations of federal

20   laws regarding terrorist activities.

21             The charges include conspiracies or agreements

22   to provide material support and resources to agents of

23   Al-Qaeda in conspiring to blow up the Sears Tower in

24   Chicago and several federal buildings in a planned war

25   against the United States.

1           Given that, is there anything that would

2     prevent you from being able to sit and listen to the

3     evidence in this case and be fair to both the

4     Government and the Defendants?

5           PROSPECTIVE JUROR NO. 18:  No.

6           THE COURT:  In this case, you may hear

7     evidence that the Government used informants who are

8     not United States citizens and who posed as

9     terrorists/agents of Al-Qaeda.

10          Do you have such strong feelings one way or

11    the other that you would not be able to sit and listen

12    to this evidence and be fair to both the Government and

13    the Defendants?

14          PROSPECTIVE JUROR NO. 18:  I would be fair.

15          THE COURT:  Have you acquired any information

16    from newspaper, television, conversations or any other

17    sources about this case?

18          PROSPECTIVE JUROR NO. 18:  On the TV.

19          THE COURT:  Okay.  And what did you see on the

20    TV, ma'am?

21          PROSPECTIVE JUROR NO. 18:  The place where

22    they -- where it was located at.

23          THE COURT:  So you saw a picture of that on

24    TV?

25          PROSPECTIVE JUROR NO. 18:  Yes.

1          THE COURT:  What was it a picture of?

2          PROSPECTIVE JUROR NO. 18:  The place where

3    they're supposed to have the weapons at on the corner

4    of 14th Avenue and 61st -- or either 62nd Street.

5          THE COURT:  And what kind of place was it?

6          PROSPECTIVE JUROR NO. 18:  It was something

7    more like what you put -- you how say -- your

8    supplies -- not supplies, but, you know, like a lawn

9    cabinet that you put out in the -- in your backyard to

10   store your stuff in.

11         THE COURT:  Like a storage shed?

12         PROSPECTIVE JUROR NO. 18:  Yes.

13         THE COURT:  A shed or building?

14         PROSPECTIVE JUROR NO. 18:  A shed.

15         THE COURT:  And when did you see this on the

16   TV?

17         PROSPECTIVE JUROR NO. 18:  I think it was -- I

18   don't know -- not last year.  I think it was last year.

19   Yeah.  Because this is --

20         THE COURT:  Do you remember what channel?

21         PROSPECTIVE JUROR NO. 18:  I don't know

22   whether it was Channel 7 or Channel 10.  I don't know.

23         THE COURT:  Okay.  Do you read the *Miami*

24   *Herald*, *New Times* or *Sun-Sentinel* news publications

25   either in print or on-line?

```
 1                PROSPECTIVE JUROR NO. 18:  No.

 2                THE COURT:  Have you read anything in any

 3     newspaper or on the Internet or have you seen anything

 4     else on television or heard anything on the radio about

 5     this case?

 6                PROSPECTIVE JUROR NO. 18:  No.

 7                THE COURT:  Have you followed the course of

 8     the proceedings that have led up to this trial closely

 9     prior to coming to court yesterday?

10                PROSPECTIVE JUROR NO. 18:  No.

11                THE COURT:  Have you discussed this case with

12     anyone?

13                PROSPECTIVE JUROR NO. 18:  No, I haven't.

14                THE COURT:  Do you have an open mind regarding

15     this case?

16                PROSPECTIVE JUROR NO. 18:  Yes, I do.

17                THE COURT:  Have you formed an opinion

18     regarding any of the Defendants based upon any outside

19     information, including what you saw on the TV?

20                PROSPECTIVE JUROR NO. 18:  No, I haven't.

21                THE COURT:  I forgot to ask you, ma'am:  Do

22     you remember when it was that you saw it on the TV?

23                PROSPECTIVE JUROR NO. 18:  When was it?

24                THE COURT:  When you saw it on the TV.

25                PROSPECTIVE JUROR NO. 18:  No.  I didn't form
```

```
 1   any -- any --
 2          THE COURT:  No.  When?  What date?
 3          PROSPECTIVE JUROR NO. 18:  What date?
 4          THE COURT:  Was it a month ago?  Six months
 5   ago?
 6          PROSPECTIVE JUROR NO. 18:  I really don't
 7   know.  But I know it wasn't this year.
 8          THE COURT:  Okay.  Have you formed an opinion
 9   regarding any of the Defendants based upon any outside
10   information?
11          PROSPECTIVE JUROR NO. 18:  No.
12          THE COURT:  Do you have any beliefs, thoughts
13   or opinions which may cause you to decide this case on
14   anything other than the evidence you will hear at
15   trial?
16          PROSPECTIVE JUROR NO. 18:  Only the evidence
17   that I hear at trial.
18          THE COURT:  Are you knowledgeable about the
19   history and practice of Islam?
20          PROSPECTIVE JUROR NO. 18:  No, ma'am.
21          THE COURT:  Are you knowledgeable about the
22   history and practices of the Moorish Science Temple?
23          PROSPECTIVE JUROR NO. 18:  No, ma'am.
24          THE COURT:  Are you a member of any type of
25   Masonic lodge or are you knowledgeable about the
```

1    history, teachings or practices of the Masons?

2              PROSPECTIVE JUROR NO. 18:  No.

3              THE COURT:  Have you or any of your family

4    members ever visited the Middle East?

5              PROSPECTIVE JUROR NO. 18:  No.

6              THE COURT:  Do you or family members or close

7    friends have any prior or present military service?

8              PROSPECTIVE JUROR NO. 18:  No.

9              THE COURT:  Have you or any members of your

10   family or close friends had any personal experience

11   with acts of terrorism?

12             PROSPECTIVE JUROR NO. 18:  No.

13             THE COURT:  Do you know or do you have a

14   family member or friend who knows someone who was a

15   victim of a terrorist attack?

16             PROSPECTIVE JUROR NO. 18:  No.

17             THE COURT:  Have the events of September 11th

18   or any other terrorist act affected you to such an

19   extent that it would make it difficult for you to sit

20   and listen to the evidence in this case and be fair to

21   both the Government and the Defendants?

22             PROSPECTIVE JUROR NO. 18:  I would be fair.

23             THE COURT:  Have you or any family member or

24   close friend lost a job, a business contract or

25   experienced any other financial hardship as a result of

```
1   September 11th or any other terrorist attack?

2           PROSPECTIVE JUROR NO. 18:  No.

3           THE COURT:  Do you have an opinion as to who

4   was responsible for the attack on the United States on

5   September 11th, 2001?

6           PROSPECTIVE JUROR NO. 18:  What?  The bin --

7   bin -- whatever his name is.  No one in the United

8   States.

9           THE COURT:  Okay.  Is there anything else you

10  think the Court or the attorneys should know that might

11  influence your ability to fairly and impartially judge

12  the evidence in this case and follow the Court's

13  instructions on the law?

14          PROSPECTIVE JUROR NO. 18:  I would follow the

15  instructions of the law.

16          THE COURT:  Is there anything else that might

17  influence your ability to fairly and impartially judge

18  the evidence in this case?

19          PROSPECTIVE JUROR NO. 18:  No.

20          THE COURT:  Okay, ma'am.  If you would have a

21  seat outside and not discuss my questions with anyone.

22          PROSPECTIVE JUROR NO. 18:  Okay.  Thank you.

23          THE COURT:  Thank you.

24          (Thereupon, Potential Juror No. 18 retired

25  from the courtroom and the following proceedings were
```

```
 1   had:)
 2              THE COURT:  Juror No. 21.
 3              (Thereupon, Prospective Juror No. 21 entered
 4   the courtroom and the following proceedings were had:)
 5              THE COURT:  Hello.
 6              PROSPECTIVE JUROR NO. 21:  Hello.
 7              THE COURT:  In this case, the Government has
 8   alleged that the Defendants were engaged in
 9   conspiracies to commit various violations of federal
10   laws regarding terrorist activities.
11              The charges include conspiracies or agreements
12   to provide material support and resources to agents of
13   Al-Qaeda in conspiring to blow up the Sears Tower in
14   Chicago and several federal buildings in a planned war
15   against the United States.
16              Given that, is there anything that would
17   prevent you from being able to sit and listen to the
18   evidence in this case and be fair to both the
19   Government and the Defendants?
20              PROSPECTIVE JUROR NO. 21:  No, your Honor.  I
21   think I could do it.
22              THE COURT:  In this case -- do you think you
23   could do it or do you know you could do it?
24              PROSPECTIVE JUROR NO. 21:  I know I could do
25   it.
```

1              THE COURT:  In this case, you may hear

2    evidence that the Government used informants who were

3    not United States citizens and who posed as

4    terrorists/agents of Al-Qaeda.

5              Do you have such strong feelings one way or

6    the other that you would not be able to sit and listen

7    to this evidence and be fair to both the Government and

8    the Defendants?

9              PROSPECTIVE JUROR NO. 21:  No, your Honor, I

10   don't.

11             THE COURT:  Have you acquired any information

12   from newspaper, television, conversations or any other

13   sources about this case?

14             PROSPECTIVE JUROR NO. 21:  Yes.  I've heard

15   about it on TV, on the news.

16             THE COURT:  Okay.  And do you remember what

17   you saw on the television news?

18             PROSPECTIVE JUROR NO. 21:  I remember hearing

19   about what you explained about their plots to make --

20   or to try to explode the Sears Tower.

21             THE COURT:  Okay.  And do you remember when

22   you saw it on the television news?

23             PROSPECTIVE JUROR NO. 21:  It's been a couple

24   of months.  I think it's --

25             THE COURT:  And do you remember what station?

1          PROSPECTIVE JUROR NO. 21:  I think it was

2  *World News*.

3          THE COURT:  *World News*?

4          PROSPECTIVE JUROR NO. 21:  Yeah.  It comes on

5  on Channel 10 at 6:30.

6          THE COURT:  Okay.  Do you read the *Miami*

7  *Herald*, *New Times* or *Sun-Sentinel* news publications

8  either in print or on-line?

9          PROSPECTIVE JUROR NO. 21:  Yes, I do.  I read

10  it.

11          THE COURT:  Which ones?

12          PROSPECTIVE JUROR NO. 21:  The *Miami Herald*.

13          THE COURT:  Have you read anything in any

14  newspaper or on the Internet or have you seen anything

15  on television or heard anything on the radio about this

16  case other than what you've told me?

17          PROSPECTIVE JUROR NO. 21:  No, your Honor.

18  That's the only thing.

19          THE COURT:  Have you followed the course of

20  the proceedings that have led up to this trial closely

21  prior to coming to court yesterday?

22          PROSPECTIVE JUROR NO. 21:  Yes.  Yes, I have.

23  I've been --

24          THE COURT:  Prior to coming to court.

25          Before you came to court yesterday --

1          PROSPECTIVE JUROR NO. 21:  You mean answering

2     all the calls and --

3          THE COURT:  No.  I mean about the case, what

4     was happening in the case in court.

5          PROSPECTIVE JUROR NO. 21:  No.  I did not know

6     this was going on.  I didn't know.

7          THE COURT:  Have you discussed this case with

8     anyone?

9          PROSPECTIVE JUROR NO. 21:  No.

10          THE COURT:  Do you have an open mind regarding

11    this case?

12          PROSPECTIVE JUROR NO. 21:  Yes.

13          THE COURT:  Have you formed an opinion

14    regarding any of the Defendants based upon any outside

15    information, including what you saw on the television

16    news?

17          PROSPECTIVE JUROR NO. 21:  No.  No.

18          THE COURT:  Do you have any beliefs, thoughts

19    or opinions which may cause you to decide this case on

20    anything other than the evidence you will hear at

21    trial?

22          PROSPECTIVE JUROR NO. 21:  No, I don't.

23          THE COURT:  Are you knowledgeable about the

24    history and practice of Islam?

25          PROSPECTIVE JUROR NO. 21:  Yes.

1          THE COURT:  And how are you -- where do you

2    get your information from?

3          PROSPECTIVE JUROR NO. 21:  From the news and

4    from the Discovery.  It talks a little about that.

5          THE COURT:  Discovery Channel?

6          PROSPECTIVE JUROR NO. 21:  Yes.

7          THE COURT:  Are you knowledgeable about the

8    history and practices of the Moorish Science Temple?

9          PROSPECTIVE JUROR NO. 21:  No.  No.

10          THE COURT:  Are you knowledgeable about the

11    Universal Divine Saviors?

12          PROSPECTIVE JUROR NO. 21:  I've heard about

13    them, but I don't know very much about them.

14          THE COURT:  And do you know where you heard

15    about them?

16          PROSPECTIVE JUROR NO. 21:  I think on the --

17    on the national -- on the one I told you about.

18          THE COURT:  The *World News*?

19          PROSPECTIVE JUROR NO. 21:  No.  The other one.

20          THE COURT:  Discovery Channel?

21          PROSPECTIVE JUROR NO. 21:  The Discovery

22    Channel.  Yeah.  I've heard about them.

23          THE COURT:  Are you a member of any type of

24    Masonic lodge or are you knowledgeable about the

25    history, teachings or practices of the Masons?

```
 1              PROSPECTIVE JUROR NO. 21:  No.  No.

 2              THE COURT:  Would you be able to put aside

 3    whatever you may have heard about the Universal Divine

 4    Saviors on the TV and sit and listen to the evidence in

 5    this case and make a determination solely on the

 6    evidence presented at trial?

 7              PROSPECTIVE JUROR NO. 21:  Yes, I can.  Yes, I

 8    can.

 9              THE COURT:  Have you or any of your family

10    members ever visited the Middle East?

11              PROSPECTIVE JUROR NO. 21:  No, your Honor.

12    No.

13              THE COURT:  Do you or family members or close

14    friends have any prior or present military service?

15              PROSPECTIVE JUROR NO. 21:  No, your Honor.

16              THE COURT:  Have you or any members of your

17    family or close friends had any personal experience

18    with acts of terrorism?

19              PROSPECTIVE JUROR NO. 21:  No.

20              THE COURT:  Do you know or do you have a

21    family member or friend who knows someone who was a

22    victim of a terrorist attack?

23              PROSPECTIVE JUROR NO. 21:  No.

24              THE COURT:  Have the events of September 11th

25    or any other terrorist act affected you to such an
```

1    extent that it would make it difficult for you to sit

2    and listen to the evidence in this case and be fair to

3    both the Government and the Defendants?

4              PROSPECTIVE JUROR NO. 21:  No.

5              THE COURT:  Have you or any family member or

6    close friend lost a job, a business contract or

7    experienced any other financial hardship as a result of

8    September 11th or any other terrorist attack?

9              PROSPECTIVE JUROR NO. 21:  No.

10             THE COURT:  Do you have an opinion as to who

11   was responsible for the attack on the United States on

12   September 11th, 2001?

13             PROSPECTIVE JUROR NO. 21:  No.  I don't have

14   an opinion.  No.

15             THE COURT:  Is there anything else you think

16   the Court or the attorneys should know that might

17   influence your ability to fairly and impartially judge

18   the evidence in this case and follow the Court's

19   instructions on the law?

20             PROSPECTIVE JUROR NO. 21:  No.  I don't have

21   any.

22             THE COURT:  All right, sir.  If you would have

23   a seat outside and not discuss my questions with

24   anyone.

25             Thank you.

```
 1              PROSPECTIVE JUROR NO. 21:  Thank you.

 2              (Thereupon, Potential Juror No. 21 retired

 3    from the courtroom and the following proceedings were

 4    had:)

 5              THE COURT:  Juror 22.

 6              (Thereupon, Potential Juror No. 22 entered the

 7    courtroom and the following proceedings were had:)

 8              THE COURT:  Hello.

 9              PROSPECTIVE JUROR NO. 22:  Hello.

10              THE COURT:  Would you rather sit down, sir, or

11    is standing okay?

12              PROSPECTIVE JUROR NO. 22:  No.  I like

13    standing.

14              THE COURT:  You can stand?

15              PROSPECTIVE JUROR NO. 22:  Yeah.

16              THE COURT:  In this case, the Government has

17    alleged that the Defendants were engaged in

18    conspiracies to commit various violations of federal

19    laws regarding terrorist activities.

20              The charges include conspiracies or agreements

21    to provide material support and resources to agents of

22    Al-Qaeda in conspiring to blow up the Sears Tower in

23    Chicago and several federal buildings in a planned war

24    against the United States.

25              Given that, is there anything that would
```

1    prevent you from being able to sit and listen to the

2    evidence in this case and be fair to both the

3    Government and the Defendants?

4              PROSPECTIVE JUROR NO. 22:  It's okay.

5              THE COURT:  Did you understand my question,

6    sir?

7              PROSPECTIVE JUROR NO. 22:  No.  I understand

8    what you saying.  What you explaining to me is what

9    they are -- what they done.

10             THE COURT:  I'm explaining to you what the

11   charges are.

12             Do you understand?

13             PROSPECTIVE JUROR NO. 22:  Yeah.  Of course.

14             THE COURT:  Do you understand they're presumed

15   innocent, that every Defendant is presumed innocent?

16             PROSPECTIVE JUROR NO. 22:  Of course.  They

17   are innocent.  They are innocent until -- it's not

18   proved.  They are innocent.

19             THE COURT:  And given what the nature of the

20   charges are, could you be a fair and impartial juror?

21             PROSPECTIVE JUROR NO. 22:  Yes, ma'am.

22             THE COURT:  In this case, you may hear

23   evidence that the Government used informants who were

24   not United States citizens and who posed as

25   terrorists/agents of Al-Qaeda.

1          Do you have such strong feelings one way or

2     the other that you would not be able to sit and listen

3     to this evidence and be fair to both the Government and

4     the Defendants?

5          PROSPECTIVE JUROR NO. 22:  I don't have any

6     strong feeling.

7          THE COURT:  Have you acquired any information

8     from newspaper, television, conversations or any other

9     sources about this case?

10          PROSPECTIVE JUROR NO. 22:  No.  Never heard

11     about that.

12          THE COURT:  I'm sorry?

13          PROSPECTIVE JUROR NO. 22:  Never heard about

14     this case.

15          THE COURT:  Okay.  Do you read the *Miami

16     Herald*, *New Times* or *Sun-Sentinel* news publications

17     either in print or on-line?

18          PROSPECTIVE JUROR NO. 22:  No.  I just see --

19     watch TV and Internet.

20          THE COURT:  Okay.  Have you read anything in

21     any newspaper or on the Internet or have you seen

22     anything on television or heard anything on the radio

23     about this case?

24          PROSPECTIVE JUROR NO. 22:  Quite -- I don't

25     remember, but probably.  Probably I heard about that.

```
 1          THE COURT:  You probably read --
 2          PROSPECTIVE JUROR NO. 22:  Probably.  I'm not
 3   pretty sure.  Probably.
 4          THE COURT:  Do you remember anything that you
 5   read or heard about this case?
 6          PROSPECTIVE JUROR NO. 22:  Well, it's happens
 7   here in Miami.  The facts are here in Miami.  The
 8   charges are here in Miami.
 9          THE COURT:  Is that the only thing you
10   remember?
11          PROSPECTIVE JUROR NO. 22:  No.  I cannot
12   remember.
13          THE COURT:  Okay.  Have you followed the
14   course of the proceedings that have led up to this
15   trial closely prior to the time that you came to court
16   yesterday?
17          PROSPECTIVE JUROR NO. 22:  What, ma'am?  Can
18   you repeat it.
19          THE COURT:  Have you followed what's happened
20   in the case that's led up to the trial prior to coming
21   to court yesterday?
22          PROSPECTIVE JUROR NO. 22:  No, ma'am.
23          THE COURT:  Have you discussed this case with
24   anyone?
25          PROSPECTIVE JUROR NO. 22:  No.  Not general.
```

```
 1              THE COURT:  Do you have an open mind regarding
 2     this case?
 3              PROSPECTIVE JUROR NO. 22:  Yes, I am.
 4              THE COURT:  Have you formed an opinion
 5     regarding any of the Defendants based upon any outside
 6     information, including what you may have seen or heard
 7     about the case?
 8              PROSPECTIVE JUROR NO. 22:  No.
 9              THE COURT:  Do you have any beliefs, thoughts
10     or opinions which may cause you to decide this case on
11     anything other than the evidence you will hear at
12     trial?
13              PROSPECTIVE JUROR NO. 22:  No.
14              THE COURT:  Are you knowledgeable about the
15     history and practice of Islam?
16              PROSPECTIVE JUROR NO. 22:  What, ma'am?
17              THE COURT:  Are you knowledgeable about the
18     history and practice of Islam?
19              PROSPECTIVE JUROR NO. 22:  No.
20              THE COURT:  Are you knowledgeable about the
21     history and practices of the Moorish Science Temple?
22              PROSPECTIVE JUROR NO. 22:  No.
23              THE COURT:  Are you knowledgeable about the
24     Universal Divine Saviors?
25              PROSPECTIVE JUROR NO. 22:  No.
```

1          THE COURT:  Are you a member of any type of

2   Masonic lodge?

3          PROSPECTIVE JUROR NO. 22:  Member of what?

4          THE COURT:  A Masonic lodge.

5          PROSPECTIVE JUROR NO. 22:  No.

6          THE COURT:  Are you knowledgeable about the

7   history, teachings or practices of the Masons?

8          PROSPECTIVE JUROR NO. 22:  No.

9          THE COURT:  Have you or any of your family

10  members ever visited the Middle East?

11         PROSPECTIVE JUROR NO. 22:  No.

12         THE COURT:  Do you or family members or close

13  friends have any prior or present military service?

14         PROSPECTIVE JUROR NO. 22:  No, ma'am.

15         THE COURT:  Have you or any members of your

16  family or close friends had any personal experience

17  with acts of terrorism?

18         PROSPECTIVE JUROR NO. 22:  No.

19         THE COURT:  Do you know or do you have a

20  family member or friend who knows someone who was a

21  victim of a terrorist attack?

22         PROSPECTIVE JUROR NO. 22:  No, your Honor.

23         THE COURT:  Have the events of September 11th

24  or any other terrorist act affected you to such an

25  extent that it would make it difficult for you to sit

1   and listen to the evidence in this case and be fair to

2   both the Government and the Defendants?

3           PROSPECTIVE JUROR NO. 22:  Saying the truth,

4   at that time, I was very affected.  But now the time

5   is -- has gone and I'm -- no more.

6           THE COURT:  So do you think that -- given the

7   nature of the charges here and given your reaction to

8   September 11th, would you be able to sit and listen to

9   the evidence in this case and make a decision based

10   upon the evidence that's presented at trial?

11           PROSPECTIVE JUROR NO. 22:  I think I wouldn't

12   be here listening or seeing the different kind of proof

13   that you have to show to the jury.

14           THE COURT:  You wouldn't be able to?

15           PROSPECTIVE JUROR NO. 22:  No.

16           THE COURT:  Because of September 11th?

17           PROSPECTIVE JUROR NO. 22:  Yeah.

18   September 11th.  I still remember very well

19   September 11th.

20           THE COURT:  Okay.  That's fine, sir.

21           Thank you.

22           If you'd have a seat outside and not discuss

23   my questions with anyone.

24           PROSPECTIVE JUROR NO. 22:  Okay.

25           (Thereupon, Potential Juror No. 22 retired

1    from the courtroom and the following proceedings were

2    had:)

3              THE COURT:  Need I inquire further?

4              MS. JHONES:  I don't believe so, your Honor.

5              Move for cause.

6              MR. GREGORIE:  No objection, your Honor.

7              THE COURT:  Excused for cause.

8              Juror No. 24.

9              (Thereupon, Potential Juror No. 24 entered the

10   courtroom and the following proceedings were had:)

11             THE COURT:  Hello.

12             PROSPECTIVE JUROR NO. 24:  Hi.

13             THE COURT:  In this case, the Government has

14   alleged that the Defendants were engaged in

15   conspiracies to commit various violations of federal

16   laws regarding terrorist activities.

17             The charges include conspiracies or agreements

18   to provide material support and resources to agents of

19   Al-Qaeda in conspiring to blow up the Sears Tower in

20   Chicago and several federal buildings in a planned war

21   against the United States.

22             Given that, is there anything that would

23   prevent you from being able to sit and listen to the

24   evidence in this case and be fair to both the

25   Government and the Defendants?

```
 1              PROSPECTIVE JUROR NO. 24:  There's nothing
 2    against.  I would be fair.
 3              THE COURT:  In this case, you may hear
 4    evidence that the Government used informants who are
 5    not United States citizens and who posed as
 6    terrorists/agents of Al-Qaeda.
 7              Do you have such strong feelings one way or
 8    the other that you would not be able to sit and listen
 9    to this evidence and be fair to both the Government and
10    the Defendants?
11              PROSPECTIVE JUROR NO. 24:  I would not.  And I
12    would be fair.
13              THE COURT:  Have you acquired any information
14    from newspaper, television, conversations or any other
15    sources about this case?
16              PROSPECTIVE JUROR NO. 24:  I have not.
17              THE COURT:  Now, you had indicated earlier
18    that, when you were at lunch, Mr. Vereen was introduced
19    to you by a mutual friend.
20              PROSPECTIVE JUROR NO. 24:  Yes.
21              THE COURT:  At that time, were there any
22    discussions or conversations about this case?
23              PROSPECTIVE JUROR NO. 24:  No, there was not.
24              THE COURT:  Do you read the *Miami Herald*,
25    *New Times* or *Sun-Sentinel* news publications either in
```

1    print or on-line?

2              PROSPECTIVE JUROR NO. 24:  The *Miami Herald*.

3              THE COURT:  Have you read anything in any

4    newspaper or on the Internet or have you seen anything

5    on television or heard anything on the radio about this

6    case?

7              PROSPECTIVE JUROR NO. 24:  No, I have not.

8              THE COURT:  Have you followed the course of

9    the proceedings that have led up to this trial closely

10   prior to coming to court yesterday?

11             PROSPECTIVE JUROR NO. 24:  No.

12             THE COURT:  Have you discussed this case with

13   anyone?

14             PROSPECTIVE JUROR NO. 24:  I have not.

15             THE COURT:  Do you have an open mind regarding

16   this case?

17             PROSPECTIVE JUROR NO. 24:  I believe so.

18             THE COURT:  Believe so or know so?

19             PROSPECTIVE JUROR NO. 24:  I know so.

20             THE COURT:  Have you formed an opinion

21   regarding any of the Defendants based upon any outside

22   information?

23             PROSPECTIVE JUROR NO. 24:  I have not.

24             THE COURT:  Do you have any beliefs, thoughts

25   or opinions which may cause you to decide this case on

```
1    anything other than the evidence you will hear at

2    trial?

3          PROSPECTIVE JUROR NO. 24:  Not at this time.

4          THE COURT:  How about at any time?

5          PROSPECTIVE JUROR NO. 24:  I guess I have

6    thoughts.

7          THE COURT:  Okay.  And what thoughts would

8    that be?

9          PROSPECTIVE JUROR NO. 24:  The possibility

10   that innocent people were hurt because of this.

11         THE COURT:  Okay.  And who are the innocent

12   people that you say were hurt because of this?

13         PROSPECTIVE JUROR NO. 24:  Just general

14   citizens.  Not anyone specific.

15         THE COURT:  Okay.  Would you be able to put

16   aside whatever thoughts or opinions you might have and

17   sit and listen to the evidence in this case and base --

18   make a determination on the case based solely on the

19   evidence presented at trial?

20         PROSPECTIVE JUROR NO. 24:  Yes.

21         THE COURT:  Are you knowledgeable about the

22   history and practice of Islam?

23         PROSPECTIVE JUROR NO. 24:  No.

24         THE COURT:  Are you knowledgeable about the

25   history and practices of the Moorish Science Temple?
```

1          PROSPECTIVE JUROR NO. 24:  No.

2          THE COURT:  Are you knowledgeable about the

3    Universal Divine Saviors?

4          PROSPECTIVE JUROR NO. 24:  No.

5          THE COURT:  Are you a member of any type of

6    Masonic lodge or are you knowledgeable about the

7    history, teachings or practices of the Masons?

8          PROSPECTIVE JUROR NO. 24:  No.

9          THE COURT:  Have you or any of your family

10   members ever visited the Middle East?

11         PROSPECTIVE JUROR NO. 24:  No.

12         THE COURT:  Do you or family members or close

13   friends have any prior or present military service?

14         PROSPECTIVE JUROR NO. 24:  No.

15         THE COURT:  Have you or any members of your

16   family or close friends had any personal experience

17   with acts of terrorism?

18         PROSPECTIVE JUROR NO. 24:  No.

19         THE COURT:  Do you know or do you have a

20   family member or friend who knows someone who was a

21   victim of a terrorist attack?

22         PROSPECTIVE JUROR NO. 24:  No.

23         THE COURT:  Have the events of September 11th

24   or any other terrorist act affected you to such an

25   extent that it would make it difficult for you to sit

1    and listen to the evidence in this case and be fair to

2    both the Government and the Defendants?

3              PROSPECTIVE JUROR NO. 24:  No.

4              THE COURT:  Have you or any family member or

5    close friend lost a job, a business contract or

6    experienced any other financial hardship as a result of

7    September 11th or any other terrorist attack?

8              PROSPECTIVE JUROR NO. 24:  No.

9              THE COURT:  Do you have an opinion as to who

10   was responsible for the attack on the United States on

11   September 11th, 2001?

12             PROSPECTIVE JUROR NO. 24:  No.

13             THE COURT:  Is there anything else you think

14   the Court or the attorneys should know that might

15   influence your ability to fairly and impartially judge

16   the evidence in this case and follow the Court's

17   instructions on the law?

18             PROSPECTIVE JUROR NO. 24:  No, there is not.

19             THE COURT:  If you would have a seat outside,

20   sir, and not discuss my questions with anyone.

21             PROSPECTIVE JUROR NO. 24:  Sure.

22             (Thereupon, Potential Juror No. 24 retired

23   from the courtroom and the following proceedings were

24   had:)

25             THE COURT:  Juror No. 25.

1           (Thereupon, Potential Juror No. 25 entered the

2      courtroom and the following proceedings were had:)

3           THE COURT:  Hello.

4           PROSPECTIVE JUROR NO. 25:  Hello.

5           THE COURT:  In this case, the Government has

6      alleged that the Defendants were engaged in

7      conspiracies to commit various violations of federal

8      laws regarding terrorist activities.

9           The charges include conspiracies or agreements

10     to provide material support and resources to agents of

11     Al-Qaeda in conspiring to blow up the Sears Tower in

12     Chicago and several federal buildings in a planned war

13     against the United States.

14          Given that, is there anything that would

15     prevent you from being able to sit and listen to the

16     evidence in this case and be fair to both the

17     Government and the Defendants?

18          PROSPECTIVE JUROR NO. 25:  No.  I have no

19     problem with that.

20          THE COURT:  In this case, you may hear

21     evidence that the Government used informants who were

22     not United States citizens and who posed as

23     terrorists/agents of Al-Qaeda.

24          Do you have such strong feelings one way or

25     the other that you would not be able to sit and listen

```
1    to this evidence and be fair to both the Government and

2    the Defendants?

3              PROSPECTIVE JUROR NO. 25:  I think I would be

4    fair.  I -- you know, I go by facts.  I don't go by

5    prejudging anybody.

6              THE COURT:  You think you would be fair or you

7    know you would be fair?

8              PROSPECTIVE JUROR NO. 25:  I would be fair.

9              THE COURT:  Have you acquired any information

10   from newspaper, television, conversations or any other

11   sources about this case?

12             PROSPECTIVE JUROR NO. 25:  Can you repeat the

13   question.

14             THE COURT:  Sure.

15             Have you acquired any information from

16   newspaper, television, conversations or any other

17   sources about this case?

18             PROSPECTIVE JUROR NO. 25:  I vaguely know

19   about the case.  I mean, I -- it's --

20             THE COURT:  How is it that you know about --

21   vaguely know about the case?

22             PROSPECTIVE JUROR NO. 25:  Media, you know,

23   TV.

24             THE COURT:  What media did you see or hear?

25             PROSPECTIVE JUROR NO. 25:  News channel.  But
```

1    it wasn't, you know, anything in detail.

2             THE COURT:  The television?

3             PROSPECTIVE JUROR NO. 25:  Yeah.

4             THE COURT:  Do you know what channel?

5             PROSPECTIVE JUROR NO. 25:  7.

6             THE COURT:  And do you remember when?

7             PROSPECTIVE JUROR NO. 25:  A couple weeks ago.

8             THE COURT:  Do you remember what they said on

9    the TV?

10            PROSPECTIVE JUROR NO. 25:  I guess they were

11   trying to select a jury.

12            THE COURT:  Okay.  And that was it?  The jury

13   was being selected?

14            PROSPECTIVE JUROR NO. 25:  I'm sorry?

15            THE COURT:  That was it, that a jury was being

16   selected?

17            PROSPECTIVE JUROR NO. 25:  Yes.

18            THE COURT:  Anything else about the case?

19            PROSPECTIVE JUROR NO. 25:  That I can

20   remember, no.

21            THE COURT:  Do you read the *Miami Herald*,

22   *New Times* or *Sun-Sentinel* news publications --

23            PROSPECTIVE JUROR NO. 25:  *Miami Herald*.  But

24   not on a regular basis.

25            THE COURT:  Okay.  Have you read anything in

1    any newspaper or on the Internet or have you seen

2    anything on television or heard anything on the radio

3    about this case other than what you've mentioned to me

4    about the TV?

5                PROSPECTIVE JUROR NO. 25:  No.

6                THE COURT:  Have you followed the course of

7    the proceedings that have led up to this trial closely

8    prior to coming to court yesterday?

9                PROSPECTIVE JUROR NO. 25:  No.

10               THE COURT:  Have you discussed this case with

11   anyone?

12               PROSPECTIVE JUROR NO. 25:  No.

13               THE COURT:  Do you have an open mind regarding

14   this case?

15               PROSPECTIVE JUROR NO. 25:  That's correct.

16               THE COURT:  Have you formed an opinion

17   regarding any of the Defendants based upon any outside

18   information, including what you saw on the TV?

19               PROSPECTIVE JUROR NO. 25:  No, ma'am.  I

20   haven't formed any kind of opinion.

21               THE COURT:  Do you have any beliefs, thoughts

22   or opinions which may cause you to decide this case on

23   anything other than the evidence you will hear at

24   trial?

25               PROSPECTIVE JUROR NO. 25:  I'm sorry.  Can you

```
 1    repeat the question.

 2             THE COURT:  Sure.

 3             Do you have any beliefs, thoughts or opinions

 4    which may cause you to decide this case on anything

 5    other than the evidence you will hear at trial?

 6             PROSPECTIVE JUROR NO. 25:  No.

 7             THE COURT:  Are you knowledgeable about the

 8    history and practice of Islam?

 9             PROSPECTIVE JUROR NO. 25:  No.

10             THE COURT:  Are you knowledgeable about the

11    history and practices of the Moorish Science Temple?

12             PROSPECTIVE JUROR NO. 25:  No.

13             THE COURT:  Are you knowledgeable about the

14    Universal Divine Saviors?

15             PROSPECTIVE JUROR NO. 25:  No.

16             THE COURT:  Are you a member of any type of

17    Masonic lodge or are you knowledgeable about the

18    history, teachings or practices of the Masons?

19             PROSPECTIVE JUROR NO. 25:  No.

20             THE COURT:  Have you or any of your family

21    members ever visited the Middle East?

22             PROSPECTIVE JUROR NO. 25:  No.

23             THE COURT:  Do you or family members or close

24    friends have any prior or present military service?

25             PROSPECTIVE JUROR NO. 25:  My brother, the
```

1    attorney.

2         THE COURT:  Okay.  And what was -- what branch

3    of the Armed Forces was he in?

4         PROSPECTIVE JUROR NO. 25:  The Navy.

5         THE COURT:  When was that, approximately?

6         PROSPECTIVE JUROR NO. 25:  Over 20 years ago.

7    I think it was in 1979.

8         THE COURT:  And do you remember what his place

9    of service was?

10        PROSPECTIVE JUROR NO. 25:  He was in an

11   aircraft carrier for probably a year after he got in.

12   Then he was -- after that year -- from '79 to '80, he

13   was in the aircraft carrier.  And then he went to

14   Washington, Seattle, and served four years there.

15        THE COURT:  Was he deployed on the aircraft

16   carrier, and do you remember where?

17        PROSPECTIVE JUROR NO. 25:  There -- I'm not

18   sure what part of the seas he was in.  I'm not sure.

19        THE COURT:  Okay.  That's fine.

20        Did he serve in combat?

21        PROSPECTIVE JUROR NO. 25:  No.

22        THE COURT:  Was he ever in the military police

23   or shore patrol?

24        PROSPECTIVE JUROR NO. 25:  No.

25        THE COURT:  Did he have any disciplinary

```
1    action taken against him?

2              PROSPECTIVE JUROR NO. 25:  I know that he was

3    caught in Seattle on a DUI.  But I don't know if he did

4    some time.  You know, I mean, he was able to stay on.

5    I'm sure he was disciplined with some type of action.

6              THE COURT:  Okay.  Did you tell me about the

7    DUI earlier?

8              PROSPECTIVE JUROR NO. 25:  No.

9              THE COURT:  Is there anything about your

10   brother's DUI that would make it difficult for you to

11   sit and listen to the evidence in this case and be fair

12   to both the Government and the Defendants?

13             PROSPECTIVE JUROR NO. 25:  No.  Nothing.

14             THE COURT:  Do you think he was treated fairly

15   by the criminal justice system?

16             PROSPECTIVE JUROR NO. 25:  Yes, ma'am.

17             THE COURT:  Do you think he was well

18   represented by his lawyer?

19             PROSPECTIVE JUROR NO. 25:  Back then, I think

20   so.

21             THE COURT:  Did he receive an honorable

22   discharge?

23             PROSPECTIVE JUROR NO. 25:  Yeah.  It was

24   honorable.

25             THE COURT:  And do you remember his rank at
```

1    discharge?

2              PROSPECTIVE JUROR NO. 25:  No.

3              THE COURT:  Okay.  Have you or any members of

4    your family or close friends had any personal

5    experience with acts of terrorism?

6              PROSPECTIVE JUROR NO. 25:  No.

7              THE COURT:  Do you know or do you have a

8    family member or friend who knows someone who was a

9    victim of a terrorist attack?

10             PROSPECTIVE JUROR NO. 25:  No.

11             THE COURT:  Have the events of September 11th

12   or any other terrorist act affected you to such an

13   extent that it would make it difficult for you to sit

14   and listen to the evidence in this case and be fair to

15   both the Government and the Defendants?

16             PROSPECTIVE JUROR NO. 25:  No.

17             THE COURT:  Have you or any family member or

18   close friend lost a job, a business contract or

19   experienced any other financial hardship as a result of

20   September 11th or any other terrorist attack?

21             PROSPECTIVE JUROR NO. 25:  No.  I don't think

22   so.

23             THE COURT:  Do you have an opinion as to who

24   was responsible for the attack on the United States on

25   September 11th, 2001?

1        PROSPECTIVE JUROR NO. 25:  No.  I....

2        THE COURT:  Is there anything else you think

3   the Court or the attorneys should know that might

4   influence your ability to fairly and impartially judge

5   the evidence in this case and follow the Court's

6   instructions on the law?

7        PROSPECTIVE JUROR NO. 25:  Do I know?

8        THE COURT:  Is there anything else you think

9   that the Court or the attorneys should know that might

10  affect or influence your ability to fairly and

11  impartially judge the evidence in this case and follow

12  the Court's instructions on the law?

13       PROSPECTIVE JUROR NO. 25:  No.  There's

14  nothing.

15       THE COURT:  Okay, ma'am.  If you would have a

16  seat outside and not discuss my questions with anyone.

17       PROSPECTIVE JUROR NO. 25:  Thank you.

18       THE COURT:  Thank you.

19       (Thereupon, Potential Juror No. 25 retired

20  from the courtroom and the following proceedings were

21  had:)

22       THE COURT:  Juror No. 26.

23       (Thereupon, Potential Juror No. 26 entered the

24  courtroom and the following proceedings were had:)

25       THE COURT:  Hello.

1          PROSPECTIVE JUROR NO. 26:  Good afternoon.

2          THE COURT:  In this case, the Government has

3   alleged that the Defendants were engaged in

4   conspiracies to commit various violations of federal

5   laws regarding terrorist activities.

6          The charges include conspiracies or agreements

7   to provide material support and resources to agents of

8   Al-Qaeda in conspiring to blow up the Sears Tower in

9   Chicago and several federal buildings in a planned war

10  against the United States.

11         Given that, is there anything that would

12  prevent you from being able to sit and listen to the

13  evidence in this case and be fair to both the

14  Government and the Defendants?

15         PROSPECTIVE JUROR NO. 26:  No.  It's okay.

16         THE COURT:  In this case, you may hear

17  evidence that the Government used informants who are

18  not United States citizens and who posed as

19  terrorists/agents of Al-Qaeda.

20         Do you have such strong feelings one way or

21  the other that you would not be able to sit and listen

22  to this evidence and be fair to both the Government and

23  the Defendants?

24         PROSPECTIVE JUROR NO. 26:  Not at all.

25         THE COURT:  Have you acquired any information

 1   from newspaper, television, conversations or any other

 2   sources about this case?

 3           PROSPECTIVE JUROR NO. 26:  No.

 4           THE COURT:  Do you read the *Miami Herald*,

 5   *New Times* or *Sun-Sentinel* news publications either in

 6   print or on-line?

 7           PROSPECTIVE JUROR NO. 26:  Not frequently.

 8           THE COURT:  Which one?

 9           PROSPECTIVE JUROR NO. 26:  No.  None of them.

10   Not frequently, like -- Internet, yes.  And some

11   newspaper, but not much.

12           THE COURT:  But none of those?  Any of those

13   newspapers?

14           PROSPECTIVE JUROR NO. 26:  Yes, I do.

15           THE COURT:  *Miami Herald*?

16           PROSPECTIVE JUROR NO. 26:  The *Miami Herald*.

17   Yeah.

18           THE COURT:  Have you read anything in any

19   newspaper or on the Internet or have you seen anything

20   on television or heard anything on the radio about this

21   case?

22           PROSPECTIVE JUROR NO. 26:  No.

23           THE COURT:  Have you followed the course of

24   the proceedings that have led up to this trial closely

25   prior to the time that you came to court yesterday?

1      PROSPECTIVE JUROR NO. 26:  Yes.

2      THE COURT:  Prior to the time that you came to

3  court, were you following the case to see what's

4  happening?

5      PROSPECTIVE JUROR NO. 26:  Oh.  No.  I thought

6  you said about following your orders.

7      THE COURT:  Right.

8      PROSPECTIVE JUROR NO. 26:  I'm sorry.

9      THE COURT:  It's a hard question.

10      Have you discussed this case with anyone?

11      PROSPECTIVE JUROR NO. 26:  No.

12      THE COURT:  Do you have an open mind regarding

13  this case?

14      PROSPECTIVE JUROR NO. 26:  Yes.

15      THE COURT:  Have you formed an opinion

16  regarding any of the Defendants based upon any outside

17  information?

18      PROSPECTIVE JUROR NO. 26:  No.

19      THE COURT:  Do you have any beliefs, thoughts

20  or opinions which may cause you to decide this case on

21  anything other than the evidence you will hear at

22  trial?

23      PROSPECTIVE JUROR NO. 26:  No.

24      THE COURT:  Are you knowledgeable about the

25  history and practice of Islam?

1            PROSPECTIVE JUROR NO. 26:  Sorry?

2            THE COURT:  Are you knowledgeable about the

3    history and practice of Islam?

4            PROSPECTIVE JUROR NO. 26:  No.

5            THE COURT:  Are you knowledgeable about the

6    history and practice of the Moorish Science Temple?

7            PROSPECTIVE JUROR NO. 26:  No.

8            THE COURT:  Are you knowledgeable about the

9    Universal Divine Saviors?

10           PROSPECTIVE JUROR NO. 26:  No.

11           THE COURT:  Are you a member of any type of

12   Masonic lodge?

13           PROSPECTIVE JUROR NO. 26:  No.

14           THE COURT:  Are you knowledgeable about the

15   history, teachings or practices of the Masons?

16           PROSPECTIVE JUROR NO. 26:  No.

17           THE COURT:  Have you or any of your family

18   members ever visited the Middle East?

19           PROSPECTIVE JUROR NO. 26:  No.

20           THE COURT:  Do you or family members or close

21   friends have any prior or present military service?

22           PROSPECTIVE JUROR NO. 26:  My brother.  Yeah.

23           THE COURT:  And what branch of the service was

24   he in?

25           PROSPECTIVE JUROR NO. 26:  Marines.

1          THE COURT:  When was that?

2          PROSPECTIVE JUROR NO. 26:  He's still enlisted

3   in the Marines.  He's been there for, like, 12 years.

4          THE COURT:  And what has been his place of

5   service?

6          PROSPECTIVE JUROR NO. 26:  Where?

7          THE COURT:  Where.

8          PROSPECTIVE JUROR NO. 26:  Everywhere.  Oh,

9   yeah.  He's been to the Middle East and --

10          THE COURT:  Where in the Middle East?

11          PROSPECTIVE JUROR NO. 26:  He's been to Iraq,

12  I guess.  He's been all over the United States.

13          THE COURT:  Okay.

14          PROSPECTIVE JUROR NO. 26:  That's it, I think.

15          THE COURT:  Has he served in combat?

16          PROSPECTIVE JUROR NO. 26:  I think so.  Yeah.

17          THE COURT:  Has he been injured at any time?

18          PROSPECTIVE JUROR NO. 26:  No.

19          THE COURT:  Has he been in the military police

20  or shore patrol?

21          PROSPECTIVE JUROR NO. 26:  I think so.

22          THE COURT:  Which one?  The military police?

23          PROSPECTIVE JUROR NO. 26:  Just -- no.  I

24  don't think it includes, like, him doing the patrol.

25  Like normal duties.

1          THE COURT:  I mean the actual -- the Marines,

2    who would be in charge of being, like, a police officer

3    in the Marines.

4          PROSPECTIVE JUROR NO. 26:  No.

5          THE COURT:  Has he had any disciplinary action

6    taken against him?

7          PROSPECTIVE JUROR NO. 26:  No.

8          THE COURT:  And do you know his rank?

9          PROSPECTIVE JUROR NO. 26:  No.

10          THE COURT:  Okay.

11          PROSPECTIVE JUROR NO. 26:  It's pretty high, I

12    guess, because he's been there for a while.

13          THE COURT:  Have you or any members of your

14    family or close friends had any personal experience

15    with acts of terrorism?

16          PROSPECTIVE JUROR NO. 26:  No.

17          THE COURT:  Do you know or do you have a

18    family member who knows someone who was a victim of a

19    terrorist attack?

20          PROSPECTIVE JUROR NO. 26:  No.

21          THE COURT:  Have the events of September 11th

22    or any other terrorist act affected you to such an

23    extent that it would make it difficult for you to sit

24    and listen to the evidence in this case and be fair to

25    both the Government and the Defendants?

```
1                PROSPECTIVE JUROR NO. 26:  No.

2                THE COURT:  Have you or any family member or

3     close friend lost a job, a business contract or

4     experienced any other financial hardship as a result of

5     September 11th or any other terrorist attack?

6                PROSPECTIVE JUROR NO. 26:  No.

7                THE COURT:  Do you have an opinion as to who

8     was responsible for the attack on the United States on

9     September 11th, 2001?

10               PROSPECTIVE JUROR NO. 26:  No.

11               THE COURT:  Is there anything else you think

12    the Court or the attorneys should know that might

13    influence your ability to fairly and impartially judge

14    the evidence in this case and follow the Court's

15    instructions on the law?

16               PROSPECTIVE JUROR NO. 26:  No.

17               THE COURT:  If you would have a seat outside,

18    sir, and not discuss my questions with anyone.

19               Thank you.

20               PROSPECTIVE JUROR NO. 26:  Thank you.

21               (Thereupon, Potential Juror No. 26 retired

22    from the courtroom and the following proceedings were

23    had:)

24               THE COURT:  Juror No. 28.

25               (Thereupon, Potential Juror No. 28 entered the
```

1    courtroom and the following proceedings were had:)

2           THE COURT:  Hello.

3           PROSPECTIVE JUROR NO. 28:  Good afternoon.

4           May it please the Court, I should say.

5           THE COURT:  You could.

6           In this case, the Government has alleged that

7    the Defendants were engaged in conspiracies to commit

8    various violations of federal laws regarding terrorist

9    activities.

10          The charges include conspiracies or agreements

11   to provide material support and resources to agents of

12   Al-Qaeda in conspiring to blow up the Sears Tower in

13   Chicago and several federal buildings in a planned war

14   against the United States.

15          Given that, is there anything that would

16   prevent you from being able to sit and listen to the

17   evidence in this case and be fair to both the

18   Government and the Defendants?

19          PROSPECTIVE JUROR NO. 28:  Your Honor, I've

20   read quite a bit about this case.  I think the

21   Defendants might have been arrested two summers ago.

22   And just during the trial, I would read the *Herald* and

23   the times.

24          So to the extent that I have what is in the

25   newspaper and my own personal thoughts about what I

1    read at the time, I certainly -- as an officer of the

2    Court and as a juror, I would put those aside and

3    listen only to the evidence.

4          But I think it's important for your Honor to

5    know that I know about the case from that.

6          THE COURT:  Okay.  And do you remember what

7    you read about the case?

8          PROSPECTIVE JUROR NO. 28:  Well, pretty much

9    what you said, that it was -- involved the Sears Tower

10   and I think there was a warehouse in Liberty City and

11   there was goings-on in and out.

12         Frankly, at the time, it sounded -- do you

13   want me to tell you what I thought about it?

14         THE COURT:  Sure.

15         PROSPECTIVE JUROR NO. 28:  Okay.  It sounded

16   thin on the evidence, based on what I read.  And I

17   believe, again, if my memory serves me correctly, that

18   the jury was -- it was a hung jury after quite some

19   time and there was some back-and-forth about doing the

20   retrial.

21         So that's -- but, again, I would be fair.

22         THE COURT:  And you had earlier stated that

23   you had some of your own thoughts.

24         Have you given me all of your own thoughts

25   about what you read or what you thought about after

1    reading it?

2              PROSPECTIVE JUROR NO. 28:  Yes, your Honor.

3              THE COURT:  Would you be able to put aside

4    whatever opinions you have based upon what you read in

5    the newspaper and sit and listen to the evidence in

6    this case and make a determination solely on the

7    evidence at trial?

8              PROSPECTIVE JUROR NO. 28:  Yes, your Honor.

9              THE COURT:  In this case, you may hear

10   evidence that the Government used informants who were

11   not United States citizens and who posed as

12   terrorists/agents of Al-Qaeda.

13             Do you have such strong feelings one way or

14   the other that you would not be able to sit and listen

15   to this evidence and be fair to both the Government and

16   the Defendants?

17             PROSPECTIVE JUROR NO. 28:  I think that paid

18   informants are -- they have their own motives and

19   they're biased.  So I think, if the -- from the

20   standpoint of having that preconceived notion, I would

21   certainly try to be fair.

22             But in complete candor, I think one always

23   looks at those kinds of witnesses and evaluates their

24   credibility accordingly.

25             THE COURT:  And I will instruct the jury that

 1    somebody who wants to strike a good bargain with the

 2    Government or has received benefits -- that you should

 3    examine closely their testimony.

 4         But the question is:  Would you be able to,

 5    following the Court's instructions on the law, sit and

 6    fairly evaluate their testimony?

 7         PROSPECTIVE JUROR NO. 28:  Yes, your Honor.

 8         THE COURT:  Would you be able to put aside

 9    whatever personal opinions you have regarding paid

10    informants and sit and listen to the evidence in this

11    case and make a determination solely on the evidence at

12    trial and in the context of law as I will give it to

13    you in my instructions?

14         PROSPECTIVE JUROR NO. 28:  I will do that,

15    your Honor.

16         THE COURT:  Have you discussed this case with

17    anyone?

18         PROSPECTIVE JUROR NO. 28:  No, your Honor.

19         THE COURT:  How closely have you followed the

20    course of the proceedings leading up to the trial?

21         PROSPECTIVE JUROR NO. 28:  I read the *Miami*

22    *Herald*.  I read the *Miami Herald* every day.  And I read

23    the *New York Times* and I read the Internet.

24         But my recollection is the information I have

25    about this case -- it's based on just the newspaper

```
 1   articles.
 2          THE COURT:  Okay.
 3          PROSPECTIVE JUROR NO. 28:  I haven't done any
 4   independent research and followed your Honor's
 5   instructions, of course.
 6          THE COURT:  Do you have an open mind regarding
 7   this case?
 8          PROSPECTIVE JUROR NO. 28:  I'm sorry?
 9          THE COURT:  Do you have an open mind regarding
10   this case?
11          PROSPECTIVE JUROR NO. 28:  Yes, your Honor.
12          THE COURT:  Have you formed an opinion
13   regarding any of the Defendants based upon any outside
14   information?
15          PROSPECTIVE JUROR NO. 28:  Other than what
16   I've just expressed, no, your Honor.
17          THE COURT:  Do you have any beliefs, thoughts
18   or opinions which may cause you to decide this case on
19   anything other than the evidence you will hear at
20   trial?
21          PROSPECTIVE JUROR NO. 28:  No, your Honor.
22          THE COURT:  Are you knowledgeable about the
23   history and practice of Islam?
24          PROSPECTIVE JUROR NO. 28:  Somewhat.
25          THE COURT:  And where do you get your
```

1    information from?

2         PROSPECTIVE JUROR NO. 28:  Reading books,

3    newspapers, articles, specials, especially after 9/11.

4         THE COURT:  Are you knowledgeable about the

5    history and practices of the Moorish Science Temple?

6         PROSPECTIVE JUROR NO. 28:  I believe that

7    was -- is the Temple that this alleged operation was

8    from, I think.  I mean, based on my recollection, I

9    think that's the building that I recall seeing a

10   picture of.

11        THE COURT:  Would you be able to put aside

12   whatever you may have seen or heard about the Moorish

13   Science Temple and sit and listen to the evidence as

14   it's presented at trial and make a determination solely

15   on the evidence presented at trial?

16        PROSPECTIVE JUROR NO. 28:  Yes, your Honor.

17        THE COURT:  Are you knowledgeable about the

18   Universal Divine Saviors?

19        PROSPECTIVE JUROR NO. 28:  That's not ringing

20   a bell.

21        THE COURT:  Are you a member of any type of

22   Masonic lodge or are you knowledgeable about the

23   history, teachings or practices of the Masons?

24        PROSPECTIVE JUROR NO. 28:  I'm not a member,

25   but I'm familiar with it, generally.

177

1              THE COURT:  And how is it -- how are you

2       familiar with it?

3              PROSPECTIVE JUROR NO. 28:  From just reading.

4       The Court of Appeal that I worked at in Daytona Beach

5       actually had a Masonic lodge next door.  So that was a

6       bit of interest 20-plus years ago to me.  But I --

7       other than that, I didn't visit it.  It's just general

8       information --

9              THE COURT:  Okay.

10             PROSPECTIVE JUROR NO. 28:  -- that I would

11      have.

12             THE COURT:  Have you or any of your family

13      members ever visited the Middle East?

14             PROSPECTIVE JUROR NO. 28:  Give me a second.

15             I'm not recalling anyone.  Someone may have --

16      on my husband's side may have visited Israel.

17             THE COURT:  Do you or family members or close

18      friends have any prior or present military service?

19             PROSPECTIVE JUROR NO. 28:  My late father was

20      in World War II.  And I have a cousin who is in the

21      service in Germany, I believe.  But I don't keep in

22      touch with him.

23             THE COURT:  What branch of the service is he

24      in?

25             PROSPECTIVE JUROR NO. 28:  I believe he's in

```
 1    the Army.
 2              THE COURT:  Has he served in combat?
 3              PROSPECTIVE JUROR NO. 28:  I don't believe so.
 4              THE COURT:  Do you know if he's had any
 5    disciplinary action taken against him?
 6              PROSPECTIVE JUROR NO. 2:  I don't know that.
 7              THE COURT:  And your father:  What branch of
 8    the service was he in?
 9              PROSPECTIVE JUROR NO. 28:  He was in the Army.
10              THE COURT:  Did he serve in combat?
11              PROSPECTIVE JUROR NO. 28:  Yes.  During World
12    War II.
13              THE COURT:  Was he injured?
14              PROSPECTIVE JUROR NO. 28:  No.
15              THE COURT:  Did he have any disciplinary
16    action taken against him?
17              PROSPECTIVE JUROR NO. 28:  No.
18              THE COURT:  Was he honorably discharged?
19              PROSPECTIVE JUROR NO. 28:  Yes.
20              THE COURT:  Have you or any members of your
21    family or close friends had any personal experience
22    with acts of terrorism?
23              PROSPECTIVE JUROR NO. 28:  Yes.
24              THE COURT:  And who would that be?
25              PROSPECTIVE JUROR NO. 28:  One of my -- a
```

1   college roommate was in the Pentagon when the plane

2   crashed.

3          THE COURT:  And what happened to your former

4   roommate?

5          PROSPECTIVE JUROR NO. 28:  She's fine.

6          THE COURT:  Okay.  Other than that, do you

7   know or do you have a family member or friend who knows

8   someone who was a victim of a terrorist attack?

9          PROSPECTIVE JUROR NO. 28:  No.

10         THE COURT:  Was your college roommate injured?

11         PROSPECTIVE JUROR NO. 28:  No, she was not.

12         THE COURT:  Would the fact that your college

13  roommate was in the Pentagon on September 11th affect

14  your ability to sit and listen to the evidence in this

15  case and be fair to both the Government and the

16  Defendants?

17         PROSPECTIVE JUROR NO. 28:  Your Honor, up

18  until this very moment, I hadn't really even thought

19  about that, except that I certainly would not -- the

20  answer would be "no."

21         Again, you know, I would make my best effort,

22  as an officer of the Court and as a juror, to look at

23  the evidence that's presented in this case and decide

24  the issues based on that and only that.

25         THE COURT:  Do you think your college

1    roommate's experience might affect that ability?

2              PROSPECTIVE JUROR NO. 28:  I don't think that

3    it will.

4              THE COURT:  Think so or know so?

5              PROSPECTIVE JUROR NO. 28:  I will not allow it

6    to.

7              THE COURT:  Have you or any family member or

8    close friend lost a job, a business contract or

9    experienced any other financial hardship as a result of

10   September 11th or any other terrorist attack?

11             PROSPECTIVE JUROR NO. 28:  No, your Honor.

12             THE COURT:  Have the events of September 11th

13   or any other terrorist act affected you to such an

14   extent that it would make it difficult for you to sit

15   and listen to the evidence in this case and be fair to

16   both the Government and the Defendants?

17             PROSPECTIVE JUROR NO. 28:  No, your Honor.

18             THE COURT:  Do you have an opinion as to who

19   was responsible for the attack on the United States on

20   September 11th, 2001?

21             PROSPECTIVE JUROR NO. 28:  Yes, your Honor.

22             THE COURT:  And who do you think was

23   responsible?

24             PROSPECTIVE JUROR NO. 28:  The terrorists who

25   crashed the planes.

1        THE COURT:  Is there anything else you think

2    the Court or the attorneys should know that might

3    influence your ability to fairly and impartially judge

4    the evidence in this case and follow the Court's

5    instructions on the law?

6        PROSPECTIVE JUROR NO. 28:  Well, I -- I don't

7    know that -- well, I'll tell just a few things.

8        There's a young lady who works for the

9    US Attorney's Office.  She was wearing a yellow

10   sweater.  I'm sorry I don't remember her name.  She's

11   African-American.  I saw her in the hallway.  She and I

12   know each other from an organization.

13       So I just saw her.  We started to say hello.

14   And I asked her where she worked, and she said the US

15   Attorney's Office.  I just showed her the badge, and we

16   didn't talk, speak.

17       And then, from the standpoint of -- I've read

18   a fair amount of -- I've read the -- there's a book by

19   the gentleman -- I can't remember his name.  It's

20   called *The bin Ladens*.  I've read that.  It's a pretty

21   thick book, good reading.  I've read a number of books

22   like that.

23       There's a book on the 9/11 terrorists

24   called -- I can't remember the name off the top of my

25   head.  It's something *Soldiers*.

1        So I've read in the last four or five years a

2  number of pieces of literature involving these issues.

3        THE COURT:  Would you be able to put aside

4  whatever you may have read and sit and listen to the

5  evidence in this case and make a determination solely

6  on the evidence presented at trial?

7        PROSPECTIVE JUROR NO. 28:  Yes, your Honor.

8        THE COURT:  All right.  If you would have a

9  seat outside and not discuss my questions with anyone.

10        Thank you.

11        PROSPECTIVE JUROR NO. 28:  And may I just --

12  from the standpoint of -- I told my partners I would

13  mention this.  We're -- obviously, we're all very busy.

14  We're lawyers.

15        And from the standpoint of -- you know, I

16  wanted to just -- if I do end up sitting on this jury,

17  I certainly will be working nights and weekends and --

18  you know, to make up for time that I'm losing from my

19  job, which is something that we take seriously as

20  lawyers.

21        But my partners wanted me to mention that from

22  the standpoint --

23        THE COURT:  Given what you just said, would

24  you be able to sit and participate as a juror and give

25  full time and attention to the evidence presented at

1    trial?

2            PROSPECTIVE JUROR NO. 28:  I would, your

3    Honor.

4            THE COURT:  Okay.  You can tell your partners

5    that you said what you were supposed to say.

6            PROSPECTIVE JUROR NO. 28:  Thank you.

7            (Thereupon, Potential Juror No. 28 retired

8    from the courtroom and the following proceedings were

9    had:)

10           THE COURT:  Juror No. 29.

11           (Thereupon, Potential Juror No. 29 entered the

12   courtroom and the following proceedings were had:)

13           THE COURT:  Hello.

14           PROSPECTIVE JUROR NO. 29:  Hello.

15           THE COURT:  In this case, the Government has

16   alleged that the Defendants were engaged in

17   conspiracies to commit various violations of federal

18   laws regarding terrorist activities.

19           The charges include conspiracies or agreements

20   to provide material support and resources to agents of

21   Al-Qaeda in conspiring to blow up the Sears Tower in

22   Chicago and several federal buildings in a planned war

23   against the United States.

24           Given that, is there anything that would

25   prevent you from being able to sit and listen to the

1    evidence in this case and be fair to both the

2    Government and the Defendants?

3              PROSPECTIVE JUROR NO. 29:  No.

4              THE COURT:  In this case, you may hear

5    evidence that the Government used informants who were

6    not United States citizens and who posed as

7    terrorists/agents of Al-Qaeda.

8              Do you have such strong feelings one way or

9    the other that you would not be able to sit and listen

10   to this evidence and be fair to both the Government and

11   the Defendants?

12             PROSPECTIVE JUROR NO. 29:  No.

13             THE COURT:  Have you acquired any information

14   from newspaper, television, conversations or any other

15   sources about this case?

16             PROSPECTIVE JUROR NO. 29:  No.

17             THE COURT:  Do you read the *Miami Herald*,

18   *New Times* or *Sun-Sentinel* news publications either in

19   print or on-line?

20             PROSPECTIVE JUROR NO. 29:  Yes.

21             THE COURT:  Which one?

22             PROSPECTIVE JUROR NO. 29:  The *Miami Herald*.

23             THE COURT:  Have you read anything in any

24   newspaper or on the Internet or have you seen anything

25   on television or heard anything on the radio about this

1  case?

2          PROSPECTIVE JUROR NO. 29:  No.

3          THE COURT:  Have you followed the course of

4  the proceedings that have led up to this trial prior to

5  your coming to court closely?

6          PROSPECTIVE JUROR NO. 29:  No.

7          THE COURT:  Have you discussed this case with

8  anyone?

9          PROSPECTIVE JUROR NO. 29:  No.

10         THE COURT:  Do you have an open mind regarding

11  this case?

12         PROSPECTIVE JUROR NO. 29:  Yes.

13         THE COURT:  Have you formed an opinion

14  regarding any of the Defendants based upon any outside

15  information?

16         PROSPECTIVE JUROR NO. 29:  No.

17         THE COURT:  Do you have any beliefs, thoughts

18  or opinions which may cause you to decide this case on

19  anything other than the evidence you will hear at

20  trial?

21         PROSPECTIVE JUROR NO. 29:  No.

22         THE COURT:  Are you knowledgeable about the

23  history and practice of Islam?

24         PROSPECTIVE JUROR NO. 29:  No.

25         THE COURT:  Are you knowledgeable about the

```
 1   history and practices of the Moorish Science Temple?

 2          PROSPECTIVE JUROR NO. 29:  No.

 3          THE COURT:  Are you knowledgeable about the

 4   Universal Divine Saviors?

 5          PROSPECTIVE JUROR NO. 29:  No.

 6          THE COURT:  Are you a member of any type of

 7   Masonic lodge?

 8          PROSPECTIVE JUROR NO. 29:  No.

 9          THE COURT:  Are you knowledgeable about the

10   history, teachings or practices of the Masons?

11          PROSPECTIVE JUROR NO. 29:  No.

12          THE COURT:  Have you or any of your family

13   members ever visited the Middle East?

14          PROSPECTIVE JUROR NO. 29:  No.

15          THE COURT:  Do you or family members or close

16   friends have any prior or present military service?

17          PROSPECTIVE JUROR NO. 29:  No.

18          THE COURT:  Have you or any members of your

19   family or close friends had any personal experience

20   with acts of terrorism?

21          PROSPECTIVE JUROR NO. 29:  No.

22          THE COURT:  Do you know or do you have a

23   family member or friend who knows someone who was a

24   victim of a terrorist attack?

25          PROSPECTIVE JUROR NO. 29:  No.
```

1    THE COURT:  Have the events of September 11th

2    or any other terrorist act affected you to such an

3    extent that it would make it difficult for you to sit

4    and listen to the evidence in this case and be fair to

5    both the Government and the Defendants?

6         PROSPECTIVE JUROR NO. 29:  No.

7         THE COURT:  Have you or any family member or

8    close friend lost a job, a business contract or

9    experienced any other financial hardship as a result of

10   September 11th or any other terrorist attack?

11        PROSPECTIVE JUROR NO. 29:  No.

12        THE COURT:  Do you have an opinion as to who

13   was responsible for the attack on the United States on

14   September 11th, 2001?

15        PROSPECTIVE JUROR NO. 29:  No.

16        THE COURT:  Is there anything else you think

17   the Court or the attorneys should know that might

18   influence your ability to fairly and impartially judge

19   the evidence in this case and follow the Court's

20   instructions on the law?

21        PROSPECTIVE JUROR NO. 29:  The only thing,

22   your Honor, is my present employment as a federal

23   probation officer.  I do have access to the computer

24   system.  Not that I will look into any of those cases.

25   But do I have access to it.

1          THE COURT:  Okay.  And would you be able to

2    not access anything in the computer system that would

3    relate in any way to this case?

4          PROSPECTIVE JUROR NO. 29:  Yeah.

5          THE COURT:  Okay, ma'am.  You can have a seat

6    outside.

7          Thank you.

8          (Thereupon, Potential Juror No. 29 retired

9    from the courtroom and the following proceedings were

10   had:)

11         THE COURT:  Juror No. 30.

12         (Thereupon, Potential Juror No. 30 entered the

13   courtroom and the following proceedings were had:)

14         THE COURT:  Hello.

15         In this case, the Government has alleged that

16   the Defendants engaged in conspiracies to commit

17   various violations of federal laws regarding terrorist

18   activities.

19         The charges include conspiracies or agreements

20   to provide material support and resources to agents of

21   Al-Qaeda in conspiring to blow up the Sears Tower in

22   Chicago and several federal buildings in a planned war

23   against the United States.

24         Given that, is there anything that would

25   prevent you from being able to sit and listen to the

1    evidence in this case and be fair to both the

2    Government and the Defendants?

3              PROSPECTIVE JUROR NO. 30:  I do it.  Yes.

4              THE COURT:  Okay.  Did you understand my

5    question, sir?

6              PROSPECTIVE JUROR NO. 30:  Yes.

7              THE COURT:  Is there anything that would

8    prevent you from being able to sit and listen to the

9    evidence in this case and be fair?

10             PROSPECTIVE JUROR NO. 30:  No.  No, ma'am.

11             THE COURT:  In this case, you may hear

12   evidence that the Government used informants who were

13   not United States citizens and who posed as

14   terrorists/agents of Al-Qaeda.

15             Do you have such strong feelings one way or

16   the other that you will not be able to sit and listen

17   to this evidence and be fair to both the Government and

18   the Defendants?

19             PROSPECTIVE JUROR NO. 30:  Yes.

20             THE COURT:  You would not be able to sit and

21   be fair?

22             PROSPECTIVE JUROR NO. 30:  Yes.  I'd be able.

23             THE COURT:  You would be able to be fair?

24             PROSPECTIVE JUROR NO. 30:  Yes, ma'am.

25             THE COURT:  Have you acquired any information

1  from newspaper, television, conversations or any other

2  sources about this case?

3        PROSPECTIVE JUROR NO. 30:  I heard some in the

4  TV.  Yes.

5        THE COURT:  And what is it that you heard on

6  the TV?

7        PROSPECTIVE JUROR NO. 30:  About the gentleman

8  that was in the warehouse.

9        THE COURT:  Okay.  And do you remember what

10 channel it was?

11       PROSPECTIVE JUROR NO. 30:  I believe it was

12 Channel 7.

13       THE COURT:  And do you remember when it was?

14       PROSPECTIVE JUROR NO. 30:  A few months ago,

15 though.

16       THE COURT:  Do you read the *Miami Herald*,

17 *New Times* or *Sun-Sentinel* news publications either in

18 print or on-line?

19       PROSPECTIVE JUROR NO. 30:  Yes, I do.

20       THE COURT:  Which one do you read?

21       PROSPECTIVE JUROR NO. 30:  *Miami Herald*.

22       THE COURT:  Have you read anything in any

23 newspaper or on the Internet or have you seen anything

24 on television or heard anything on the radio about this

25 case?

1              PROSPECTIVE JUROR NO. 30:  I heard -- I read

2    it in the paper.  Yes.

3              THE COURT:  You read it in the paper?  In the

4    *Herald*?

5              PROSPECTIVE JUROR NO. 30:  Yes.

6              THE COURT:  And do you remember what you read?

7              PROSPECTIVE JUROR NO. 30:  Yes.  It was also

8    about the arrests they got on the warehouse.

9              THE COURT:  And do you remember when it was?

10             PROSPECTIVE JUROR NO. 30:  It's been a few

11   months.  Yes.

12             THE COURT:  Have you followed the course of

13   the proceedings that have led up to this trial prior to

14   the time that you came to court?

15             PROSPECTIVE JUROR NO. 30:  Yes.

16             THE COURT:  Prior to the time that you came to

17   court, you were following how the case was progressing?

18             PROSPECTIVE JUROR NO. 30:  Yes.

19             THE COURT:  Did you understand my question,

20   sir?

21             PROSPECTIVE JUROR NO. 30:  I --

22             THE COURT:  Were you following what was

23   happening in the case that led up to the trial?

24             PROSPECTIVE JUROR NO. 30:  Oh.  No.  No,

25   ma'am.

```
 1          THE COURT:  Have you discussed this case with
 2   anyone?
 3          PROSPECTIVE JUROR NO. 30:  No, ma'am.
 4          THE COURT:  Do you have an open mind regarding
 5   this case?
 6          PROSPECTIVE JUROR NO. 30:  Yes.
 7          THE COURT:  Have you formed an opinion
 8   regarding any of the Defendants based upon any outside
 9   information, including the television news that you saw
10   and reading something in the Miami Herald?
11          PROSPECTIVE JUROR NO. 30:  No.
12          THE COURT:  Do you have any beliefs, thoughts
13   or opinions which may cause you to decide this case on
14   anything other than the evidence that you will hear at
15   trial?
16          PROSPECTIVE JUROR NO. 30:  No.
17          THE COURT:  Are you knowledgeable about the
18   history and practice of Islam?
19          PROSPECTIVE JUROR NO. 30:  Yes.
20          THE COURT:  How do you know about Islam?
21          PROSPECTIVE JUROR NO. 30:  Excuse me?
22          THE COURT:  Are you knowledgeable about the
23   history and practice of Islam?
24          PROSPECTIVE JUROR NO. 30:  Oh.  No, ma'am.
25   I'm sorry.
```

1          THE COURT:  Are you knowledgeable about the

2    history and practices of the Moorish Science Temple?

3          PROSPECTIVE JUROR NO. 30:  No.

4          THE COURT:  Are you knowledgeable about the

5    Universal Divine Saviors?

6          PROSPECTIVE JUROR NO. 30:  No.

7          THE COURT:  Are you a member of any type of

8    Masonic lodge?

9          PROSPECTIVE JUROR NO. 30:  No, ma'am.

10          THE COURT:  Are you knowledgeable about the

11    history, teachings or practices of the Masons?

12          PROSPECTIVE JUROR NO. 30:  No, ma'am.

13          THE COURT:  Have you or any of your family

14    members ever visited the Middle East?

15          PROSPECTIVE JUROR NO. 30:  No, ma'am.

16          THE COURT:  Do you or family members or close

17    friends have any prior or present military service?

18          PROSPECTIVE JUROR NO. 30:  No.

19          THE COURT:  Have you or any members of your

20    family or close friends had any personal experience

21    with acts of terrorism?

22          PROSPECTIVE JUROR NO. 30:  No, ma'am.

23          THE COURT:  Do you know or do you have a

24    family member or friend who knows someone who was a

25    victim of a terrorist attack?

1              PROSPECTIVE JUROR NO. 30:  No, ma'am.

2              THE COURT:  Have the events of September 11th

3     or any other terrorist act affected you to such an

4     extent that it would make it difficult for you to sit

5     and listen to the evidence in this case and be fair to

6     both the Government and the Defendants?

7              PROSPECTIVE JUROR NO. 30:  No, ma'am.

8              THE COURT:  Have you or any family member or

9     close friend lost a job, a business contract or

10    experienced any other financial hardship as a result of

11    September 11th or any other terrorist attack?

12             PROSPECTIVE JUROR NO. 30:  No, ma'am.

13             THE COURT:  Do you have an opinion as to who

14    was responsible for the attack on the United States on

15    September 11th, 2001?

16             PROSPECTIVE JUROR NO. 30:  No.

17             THE COURT:  Is there anything else you think

18    the Court or the attorneys should know that might

19    influence your ability to fairly and impartially judge

20    the evidence in this case and follow the Court's

21    instructions on the law?

22             PROSPECTIVE JUROR NO. 30:  No.

23             THE COURT:  If you would have a seat outside,

24    sir, and not discuss my questions with anyone.

25             Thank you.

1             PROSPECTIVE JUROR NO. 30:  Thank you.

2             (Thereupon, Potential Juror No. 30 retired

3     from the courtroom and the following proceedings were

4     had:)

5             THE COURT:  Are you ready to go or do you need

6     a few minutes?

7             MS. JHONES:  Your Honor, I was hoping we could

8     ask a couple of followup questions.  I didn't know -- I

9     didn't want to interrupt the flow of people.  I just

10    held off until the end.

11            THE COURT:  Okay.

12            MS. JHONES:  Juror No. 10.  Juror No. 10, in

13    response to the question regarding whether she had

14    heard about the case -- she indicated she saw some

15    pictures of people being accused, words to that effect.

16            And then later on, when asked about -- the

17    question as to whether or not she has an opinion as to

18    who was responsible for 9/11, she said the people that

19    were seen on TV, the people accused of being

20    terrorists.

21            My concern, quite frankly, your Honor, is her

22    use of the word "accused."  I think my concern there

23    is the fact that she -- her opinion as to who was

24    responsible for 9/11, her response in terms of saying

25    those that were accused and comparing that to

1   remembering what she saw on the television about this

2   case, the pictures of the people being accused.

3         And the Court may think I'm a little bit off

4   the deep end on this one, but I just have a little bit

5   of a concern about -- I'm not sure I'm saying it

6   correctly.  I have a concern about her understanding of

7   someone being accused as opposed to someone that --

8   actually being guilty.

9         And I apologize for not being able spit it out

10  a bit more articulately.

11        But it did catch my attention that she had

12  an opinion that the people that were accused on

13  September 11th are responsible for September 11th and

14  the fact that the people that she saw in the pictures

15  are the people that are being accused in this case.

16        And that's my concern about Juror No. 10.

17        THE COURT:  What is it that you want me to ask

18  her?

19        MS. JHONES:  I was afraid you were going to

20  ask me that, your Honor.

21        THE COURT:  She's already answered the first

22  questions in the first go-round about the presumption

23  of innocence and the charging document, since she's --

24  she's gone through all of that.

25        MS. JHONES:  One moment, your Honor.

1          MS. ARANGO:  Judge, I would object to asking

2   her additional questions.  You went over it with her.

3   You made it clear.  She said --

4          THE COURT:  Well, the only concern I had was

5   that she was saying that these -- I didn't think that

6   she thought that the photos -- or the pictures that she

7   saw on the TV of the Defendants were the same photos of

8   the alleged -- the terrorists from September 11th.

9          But on the record -- I did it more for the

10  record than for what I thought about what she thought.

11         I didn't want the record to leave it that the

12  people that she saw on the TV --

13         MS. ARANGO:  Right.

14         THE COURT:  -- and she said she saw the

15  Defendants on the TV -- and the people that she saw on

16  the TV for September 11th were one and same.  So that's

17  why did I that followup, for the record purposes.

18         MS. ARANGO:  Right.

19         And then she said -- then, to make it clear,

20  she said "the people that were accused as terrorists on

21  September 11th."  That's exactly what she said.  I'm

22  reading.

23         So she was just making it clear that the

24  people -- the accused people that she was referring to

25  were the people that were accused as terrorists on

1    September 11th.

2         THE COURT:  Right.

3         MS. ARANGO:  She only mentioned the word

4    "accused" to explain to you that it had to do with the

5    September 11th terrorists.

6         THE COURT:  I don't find that there's really

7    any necessary followup for that.  She was answering my

8    question about pictures on the TV.

9         And those persons from September 11th could

10   only be accused because none of them are alive.  So

11   they certainly haven't gone through, you know, a trial

12   or anything.

13        MS. JHONES:  Okay.

14        THE COURT:  So I don't find that there's any

15   problem there for followup.  That was only because I

16   asked her about the pictures.

17        And she did -- I already questioned her about

18   the presumption of innocence and the fact of the

19   indictment being a charging document.  And there was

20   nothing in her questioning that indicated that that was

21   problematic for her.

22        MS. JHONES:  Okay.

23        THE COURT:  Any other questions?

24        MS. JHONES:  Yes, your Honor.

25        THE COURT:  Mr. Clark?

1          MR. CLARK:  Yes, your Honor.

2          No. 29, the federal probation officer.

3          THE COURT:  Yes.

4          MR. CLARK:  It just seems surprising that she

5     did not have any outside information about this case

6     whatsoever.

7          And I would like for the Court to ask her if

8     she's heard of this case, ever even heard of the case,

9     especially does she have any information through her

10    federal probation job.

11         THE COURT:  Well, she wouldn't.

12         MR. CLARK:  I'm sorry?

13         THE COURT:  She wouldn't have any information

14    through her job as a federal probation officer.  Not

15    one Defendant has pled guilty, and there are no related

16    cases.  So she wouldn't have anything.  There's nothing

17    in the probation office about this case.

18         MR. CLARK:  Well, she works here in the

19    federal building as a federal probation officer.  It

20    just seems surprising she hasn't heard any outside

21    information about the case from any source.  I just

22    find it hard to believe.  I just wanted to make sure

23    she did not -- had not even heard of this case before.

24         MS. ARANGO:  You asked her No. 12 about

25    whether she has any opinions based on any outside

1    information.

2           And then you asked -- I think there's a

3    question in here about conversations.  Yes.  No. 6.

4    "Any information from newspaper, television,

5    conversations or any other sources?"

6           So in two different questions, you asked her

7    about other sources.

8           THE COURT:  I ask the question -- I ask those

9    particular questions intentionally two or three

10   different ways to give people an opportunity to think

11   about it or come up with something.  And sometimes they

12   do come up with something additional.

13          But she was very definite that she hasn't

14   had -- hasn't acquired any information, hasn't had any

15   conversations.  She hasn't read anything.  She reads

16   the paper, but she didn't read anything about this

17   case.  She hasn't followed the proceedings, hasn't

18   discussed the case with anyone.

19          They're all no, no, except for, "Do you read

20   the *Miami Herald*?"

21          And she said, "Yes.

22          "Have you discussed this case with anyone?

23          "No."

24          I don't see any basis.

25          MR. CLARK:  Well, normally -- I understand

1   that, Judge.  Normally, a normal person -- but being a

2   federal probation officer, the way that question is

3   asked -- I'm looking at it -- is compound, newspaper,

4   television, conversations or any other sources.

5           I wanted to just pointedly asked --

6           THE COURT:  "Have you discussed this case with

7   anyone?

8           "No."

9           MR. CLARK:  That doesn't mean she hasn't heard

10  about the case.  I'm asking has she even heard about

11  this case before.  Because previously, it was compound.

12          And, I mean, she may -- it just seems like, if

13  she hasn't even heard about this case -- what I'm

14  trying to find out is if she's heard about it at all.

15          MS. ARANGO:  I don't think there's any basis

16  for it.  You asked her the questions in various

17  different ways.

18          It talks about other sources of information,

19  talks about conversations, talks about talking with

20  anybody else, opinions based on any kind of outside

21  information.

22          She was definite as to everything.  And

23  Mr. Clark's feeling that he's suspicious about it, I

24  think, is insufficient.

25          MR. CLARK:  I guess my point is, Judge, if

1    that's the case, they shouldn't have a problem with

2    asking the question.

3             THE COURT:  I don't see any basis to ask the

4    question.  She was -- I asked these questions three or

5    four different ways.

6             I expect, as a federal probation officer,

7    she's probably very busy with her own cases.  There

8    have been no related cases.

9             None of the Defendants in this case have pled

10   guilty.  So there's nothing floating around the

11   probation office in regard to the facts of this case

12   for there to be any reason for her to know about it

13   through her work.

14            There's just no basis for it.  I don't see any

15   basis to ask any additional questions.

16            MR. LEVIN:  Your Honor, my point -- or my

17   concern with this particular prospective juror is that,

18   when you asked her, "Is there anything else we should

19   know or you want to tell us with regard to whether or

20   not you can be a fair and impartial juror?", she

21   volunteered that she had access to the computers in the

22   federal system.

23            I found that answer to be rather curious, why

24   she'd even be thinking about that, unless she may feel

25   that there might be some circumstances which arise

1    where either -- where unintentionally she comes across

2    some information about the case.

3          Additionally, once -- assuming she were

4    selected to serve on the jury, I think it would filter

5    back to her coworkers and, as much as we wanted to

6    believe she's going to be able to follow the Court's

7    admonition, you can't control what others might say to

8    her.

9          THE COURT:  That's true of anybody, though.  I

10    mean, she brought out the fact that she does have

11    access to the computer system in the courthouse.

12          And I said to her, "Would you be able not to

13    access anything in the computer system that would

14    relate in any way to this case?"

15          She said, "Yes."

16          I don't see any basis.  I mean, you can make

17    whatever challenge for cause you want to make, but I

18    don't see any basis to question her.

19          She was being very honest and forthright in

20    saying that, as a probation officer, she does have

21    access to the computer system.

22          She would have to punch in the number of this

23    case to bring anything about the case up.  It wouldn't

24    come up in any other fashion in her line of work.

25          She's indicated that she will -- would not

```
 1   access it.  That's how she answered it.  It was not an

 2   equivocal answer in any way.

 3           MR. LEVIN:  With regard to Juror No. 24, I

 4   believe he indicated that innocent people were hurt

 5   because of this.

 6           MS. JHONES:  The possibility.

 7           MR. LEVIN:  You followed up and he seemingly

 8   said that he would be able to decide this case based

 9   on the evidence.

10           I would like him asked if he's able to set

11   aside any sympathy or prejudice if he were chosen as a

12   juror in this case.

13           MS. JHONES:  Your Honor, if I may just add to

14   that, I have -- I share the concern that Mr. Levin does

15   with Juror No. 24 and, quite frankly, the concern --

16   well, let me just limit it to No. 24.

17           His words were "the possibility that people

18   were hurt" because of -- because of whatever.  I forget

19   what he said after that.

20           And then, when the Court inquired further in

21   the line of questioning regarding 9/11, "Have the

22   events of 9/11 so affected you...", he hesitated on

23   that and he responded and he said, "No."  But there was

24   hesitation on his part.

25           And I do note for the record that I'm probably
```

1    the closest person to the podium and I notice those

2    things, like the Court noticed the hesitation on Juror

3    No. 14 and the Court actually made a comment on that

4    one.

5            But, again, my concern is just to try and

6    dispel any concern I had that this gentleman, in the

7    back of his mind, you know, might convict just

8    because --, "Just in case" -- you know, "Just in case

9    these people were dangerous, let me go ahead and

10   convict these guys."

11           That's my concern with Juror No. 24.

12           MS. ARANGO:   Judge, I would just note that,

13   based on my notes, this juror from the very beginning

14   was very unequivocal.

15           With respect to Question No. 1 about the

16   conspiracies to blow up the Sears Tower, he said he

17   would be fair.

18           About the informants who were posing as

19   terrorists/agents of Al-Qaeda, he said he would be

20   fair.

21           He has no information about this case, no

22   discussions about this case, read nothing about this

23   case.  He has an open mind about this case, has formed

24   no opinions about this case.

25           You asked him No. 14, after all of those

```
 1   unequivocal responses, "Do you have any beliefs,
 2   thoughts or opinions?"
 3           It got much -- it's a much more -- it's a
 4   question that goes a lot -- very deep into, you know,
 5   thoughts -- these thoughts, beliefs, anything.
 6           I think he was just trying to be honest about,
 7   you know, past experiences in life, thoughts or
 8   opinions in the past.
 9           And like I stated before, these people are not
10   expected to come in and be robots.  They're expected to
11   have thoughts and opinions based on life experiences.
12           So he said, "I guess I have thoughts.  The
13   possibility that innocent people were hurt because of
14   it."
15           Then you asked him, which is what you should
16   be asking him, "Can you put those thoughts aside and
17   make a determination based solely on the evidence
18   presented at trial?"
19           And he answered unequivocally, "Yes."
20           It's not as though he gave you any kind of
21   multiple equivocal responses or qualified any of his
22   statements.  There was one question that he said he has
23   some thoughts about.
24           And you asked him that followup question.  He
25   answered unequivocally.
```

1          THE COURT:  I will bring him in and ask him if

2     he understands that the case may not be -- cannot be

3     decided on either sympathy or prejudice for or against

4     the Defendants and ask him if he would be able to do

5     that.

6          MR. VEREEN:  If I may, your Honor, I have

7     concerns about Juror No. 30.

8          This is the gentleman that kept answering the

9     questions wrong.  There were at least four questions

10    your Honor asked him.  He would answer one way and then

11    you'd have to go back and ask him if he understood the

12    question.  You would then re-pose the question and he

13    would answer it another way.

14         I counted it at least four times.  I'm not

15    sure if he has a hearing problem or if he didn't

16    understand the question.  He appeared to speak English

17    very well.  So I doubt it's a language barrier.

18         MS. JHONES:  Your Honor, I agree with

19    Mr. Vereen.  He does seem to speak the language very

20    well.

21         There is a concern about -- I don't know

22    what's at the root of it, but there was -- in terms of

23    filtering the question, he did -- and I think

24    Mr. Vereen is right.  I think there were at least four.

25         And, again, I don't know what the Court could

1    inquire to try and get to the bottom of that.   Maybe

2    he's just nervous.   I don't know.   But he did do it,

3    like, three, four times.

4         MS. ARANGO:   I don't think that there is any

5    followup questions being posed.   Yes.   I agree that he

6    did have a little bit of difficulty.

7         But once you slowed down and explained it to

8    him -- some of these questions, frankly, are very --

9    they're very long and you can lose your train of

10   thought and get a little backwards on them.

11        So he sort of answered in the --

12        THE COURT:   Unless you have a question that

13   you want me to ask him -- I mean, you can make your

14   challenge for cause.   But, you know, I -- at this

15   point, if there's any additional questions you want me

16   to ask him, I'll consider that.

17        MS. JHONES:   Could you give me a moment, your

18   Honor?   I want to in good faith make a challenge.   I'm

19   not exactly sure what the problem is.

20        THE COURT:   I thought we were doing questions

21   now.

22        MS. JHONES:   That's what I'm saying.   I want

23   to suggest a question.   I just need a couple of

24   minutes.

25        THE COURT:   Oh, okay.

```
1              MS. JHONES:  Thank you.

2              THE COURT:  Any other questions?

3         So let's bring in Juror No. 24.

4              (Thereupon, Potential Juror No. 24 entered the

5    courtroom and the following proceedings were had:)

6              THE COURT:  I have one more question for you,

7    sir.

8              If you're chosen as a juror in this case,

9    you're going to hear me instruct the jury that the jury

10   may not decide the case based upon sympathy or

11   prejudice for or against the Defendants or the

12   Government.

13             Would you be able to follow that instruction?

14             PROSPECTIVE JUROR NO. 24:  I'm sorry.  Could

15   you repeat the question, your Honor.  I'm sorry.

16             THE COURT:  Sure.  That's okay.

17             If you're chosen as a juror in this case,

18   you'll hear me instruct the jury that the jury may not

19   decide the case based upon sympathy or prejudice for or

20   against the Defendants or the Government.

21             Would you be able to follow that instruction?

22             PROSPECTIVE JUROR NO. 24:  Yes.

23             THE COURT:  Thank you, sir.

24             If you'd have a seat outside.

25             (Thereupon, Potential Juror No. 24 retired
```

1   from the courtroom and the following proceedings were

2   had:)

3          THE COURT:  Do you have any additional

4   questions?

5          MS. JHONES:  Yes, your Honor.

6          For Juror No. 30, the only question that I

7   think would alleviate the concern is does this

8   gentleman have any physical impediment -- any hearing

9   problem, any physical impediment or language barrier to

10  understanding --

11         THE COURT:  Isn't that 33 on the

12  questionnaires?

13         MS. JHONES:  That's a language.

14         THE COURT:  No.  32 and 33.

15         32 is, "Do you have any loss of hearing, loss

16  of sight or any physical or emotional impairment that

17  would make it difficult for you to participate as a

18  juror?"

19         And then 33 addresses the language.

20         MS. JHONES:  Yes, your Honor.

21         But after those line -- and he responded --

22  obviously, he said "no" to that.  At least I didn't

23  have any notes otherwise.

24         But then, when we got to the more difficult

25  questions, then there was a problem.

1              And I don't know what else to ask him.  I

2    don't know what else to ask him to try and get --

3              THE COURT:  I'll bring him in and ask him if

4    he was able to understand all the questions that I

5    posed to him.

6              Would you ask Juror No. 30 to come in.

7              Sometimes people don't listen completely or

8    they're nervous.

9              (Thereupon, Potential Juror No. 30 entered the

10   courtroom and the following proceedings were had:)

11             THE COURT:  Hello again.

12             PROSPECTIVE JUROR NO. 30:  Hi.

13             THE COURT:  I have one more question for you,

14   sir.

15             Were you able to understand all of the

16   questions that I posed to you when you came into the

17   courtroom before?

18             PROSPECTIVE JUROR NO. 30:  Yes, I did.

19             THE COURT:  Thank you, sir.

20             If you would have a seat outside.

21             (Thereupon, Potential Juror No. 30 retired

22   from the courtroom and the following proceedings were

23   had:)

24             THE COURT:  I'll hear challenges for cause on

25   the first --

1            MS. JHONES:  May we have a minute to confer,

2    your Honor?

3            THE COURT:  Yes.  I'll turn off the

4    microphones.

5            It's 4:22 now.  I have to start dealing with

6    my jury at 4:45 and I want to get -- I would like to

7    get through with this prior to that time.

8            MS. JHONES:  Five minutes?

9            THE COURT:  Sure.  We'll be in recess for

10   five.

11           MS. JHONES:  Thank you.

12           (Thereupon a recess was taken, after which the

13   following proceedings were had:)

14           THE COURT:  We're back on United States of

15   America versus Narseal Batiste, et al., Case

16   No. 06-20373.

17           Counsel, state your appearances once more for

18   the record.

19           MS. ARANGO:  Jacqueline Arango and Richard

20   Gregorie on behalf of the United States.

21           MS. JHONES:  Ana Maria Jhones on behalf of

22   Narseal Batiste.

23           MR. LEVIN:  Albert Levin for Patrick Abraham.

24           MR. CASUSO:  Lou Casuso on behalf of Burson

25   Augustin.

1          MR. CLARK:  Nathan Clark for Rotschild

2     Augustine, who's present.

3          MR. HOULIHAN:  Richard Houlihan with Naudimar

4     Herrera.

5          MR. VEREEN:  Rod Vereen for Stanley Phanor.

6          THE COURT:  All Defendants are present.

7          Let me just hear any challenges for cause on

8     all the jurors questioned.

9          MR. CLARK:  Your Honor, I have a challenge for

10    cause on No. 29, the probation officer, based on the

11    case of *United States versus Rhodes*, which holds that,

12    when a prospective juror reveals bias that is implied

13    because he has some special relationship to a party,

14    such as a master/servant relationship, the Court should

15    dismiss the prospective juror for cause.

16          Here, the federal probation officer -- her

17    employer is monitoring -- restrictions have been placed

18    on all these Defendants.  That puts her in an

19    adversarial position with these Defendants.

20          Based on that, I would move on her for cause.

21          MS. ARANGO:  Judge, I have no idea where this

22    had argument is coming out of.  I mean, there is no --

23    I recall the *Rhodes* case.  That has to do with a

24    special relationship the party had to the juror.

25          And I don't know who -- what relationship that

1    he's discussing here.

2         He says the probation officer -- her employer

3    is monitoring, placing on all of these -- something

4    about -- I guess I just don't understand the

5    relationship that he's discussing.

6         She works for federal probation.  There's no

7    special relationship that she has with either the

8    US Attorney's Office or any of the Defendants.  And,

9    thus, there is no implied bias.

10        And you asked her any questions that she had

11   regarding her knowledge of the case, and the only thing

12   that she mentioned at all was that she had access to a

13   computer because of her position.  She said she

14   wouldn't access the computer.

15        But other than that, there's nothing about the

16   relationship that should imply any kind of bias on her

17   part.

18        I'm not sure what the master/servant

19   relationship is that he's discussion here.

20        MR. CLARK:  To make it clear, the Defendants

21   are operating under restrictions, whether they're on

22   bond or not out on bond, and that's being monitored by

23   the probation office.  They're doing it for the benefit

24   of the United States Attorney's Office.

25        THE COURT:  No.  That's not true.

```
 1              MR. CLARK:  Well --

 2              THE COURT:  It's not for the benefit of the

 3    US Attorney's Office.  The probation office is an

 4    office of the court.  It has nothing to do with the

 5    US Attorney's Office.

 6              MR. CLARK:  Well, they've agreed to some of

 7    the bond conditions they're under.  I would say they're

 8    doing it for the benefit of everyone, including the

 9    US Attorney's Office.

10              THE COURT:  I would say, if anybody, they're

11    doing it for the benefit of the Defendants, who have

12    been released from the jail.

13              MR. CLARK:  The benefit of everyone, Judge.

14              But, I mean, the point is that they're in an

15    adversarial role because they're monitoring the

16    restrictions that these Defendants are under.

17              It comes under the Rhodes case.  It's an

18    implied bias because they have that special

19    relationship to everyone involved.

20              MS. ARANGO:  Judge, I --

21              MR. CLARK:  So I'm -- that's what I think the

22    Rhodes case says.

23              MS. ARANGO:  I'll read what I have here about

24    Rhodes:  "When a juror who initially hesitates about

25    his ability to be fair because, for example, of his
```

1    employment or relationship to a witness, indicates on

2    further questioning that he can lay his bias aside and

3    try to be fair, there's no error in denying a motion to

4    excuse the juror."

5            MR. CLARK:  She's reading -- go to the

6    paragraph above that.

7            THE COURT:  Well, what *Rhodes* says is as

8    follows:

9            "When a prospective juror reveals actual

10    bias" -- and I'm reading from Page 965 -- "or when bias

11    is implied because the juror has some special

12    relationship to a party, such as a familial or a

13    master/servant relationship, the Court must dismiss the

14    prospective juror for cause.

15           "When the juror demonstrates, however, that

16    she can lay aside any opinion she might hold and render

17    a judgment based solely on the evidence presented in

18    court, that dismissal is not required."

19           I'm going to deny the challenge for cause.

20           There is no special relationship to a party

21    here.  And I questioned her about the fact that she

22    worked for the probation office and whether or not that

23    would affect her ability to be a fair and impartial

24    juror in this case and make a determination solely on

25    the evidence.

1              MR. HOULIHAN:  Judge, I would move No. 24 for

2      cause for two reasons, number one, his statement he

3      knows nothing about the case.  Then it's counterpointed

4      with innocent people hurt because of this.

5              It's factually and inherently contradictory.

6      "I know nothing about this case, but there's a

7      possibility innocent people have been hurt."  I don't

8      think that could be resolved factually.

9              Secondly, just with that last phrase about

10     innocent people being hurt, I would submit it defies

11     credulity.

12             I mean, we're all professionals.  But, I mean,

13     when innocent people are hurt, it affects one's

14     perceptions.  He was relatively nonchalant in

15     responding to your questions.

16             "Can you be fair?

17             "Yes."

18             I would lastly argue that there's no

19     talismanic response that automatically qualifies this

20     person.  I think -- looking at his responses here, I

21     think, in fairness, that he should not be sitting on

22     this jury.

23             I would move him for cause.

24             THE COURT:  Any response?

25             MS. ARANGO:  Yes, Judge.

1              As I stated before, he responded to Question 1

2    that he would be fair, then to Question 5 that he would

3    be fair.

4              He had no knowledge about this case, didn't

5    discuss it with anyone.  He had an open mind about this

6    case, Question 11, and formed no opinions about this

7    case, Question 12.

8              And then, with respect to Question 14, he

9    said, "I guess I have thoughts, the possibility that

10   innocent people were hurt because of this."

11             That doesn't mean that he knew about this

12   case.  He was just discussing the fact -- he was just

13   discussing a possibility that might occur in a case

14   such as this one where you were asking terrorism.

15   That's all that I understood that to mean.

16             But it doesn't matter what either I read that

17   to mean or what Mr. Houlihan read that to mean.  You

18   asked him, "Can you put aside these thoughts and make a

19   determination based solely on the evidence presented at

20   trial?"

21             And his response was an unequivocal, "Yes."

22             And according to *Rhodes* and all the cases that

23   we've discussed earlier, as long as he can put any

24   thoughts or opinions aside, that is sufficient.

25             I don't even think it's risen to the level of

1    any kind of a bias.  But you took care of that in the

2    questioning.

3              MR. HOULIHAN:  Judge, could I have a quick

4    response?

5              THE COURT:  Yes.

6              MR. HOULIHAN:  The response, possibility that

7    someone -- or innocent people were hurt because of

8    this, establishes an underlying premise that something

9    did, in fact, happen.  It goes back to the presumption

10   of innocence, that these men are involved in something.

11   He's biased.

12             MS. JHONES:  Your Honor, I don't have to

13   specifically adopt Mr. Houlihan's objection there

14   unless we opt out.

15             Am I correct in assuming that all the defense

16   counsel join in?

17             THE COURT:  Yes.

18             MS. JHONES:  Okay.

19             THE COURT:  I'm going to deny the challenge

20   for cause.

21             He said -- he clearly stated unequivocally

22   that whatever thoughts or opinions he had, he would be

23   able to decide the case solely on the basis of the

24   evidence presented at trial.

25             Then at the request of defense counsel, I

1   brought him in again and asked him if he would be able

2   to follow the Court's instruction and not decide the

3   case based upon sympathy or prejudice for or against

4   the Defendants or the Government.

5          He said, "Yes."

6          I just want to state for the record that I did

7   not find that this juror hesitated.  I think there's a

8   difference between hesitation and being thoughtful or

9   thinking about the question.

10         And in his response to the September 11th

11  question, I thought he was thinking about it and

12  examining his -- thinking about what he was going to

13  say and thinking about the question before answering.

14  I didn't find that there was hesitation.

15         Anybody that I thought there was hesitation, I

16  followed up asking -- exploring that.  I didn't find

17  that this was hesitation, but thoughtfulness.

18         The challenge for cause is denied.

19         MR. HOULIHAN:  I would also move No. 30,

20  Judge.

21         I think we all have agreed that you patiently

22  read the last series of questions.  For this particular

23  individual, there's -- Mr. -- my colleague, Mr. Vereen,

24  says four questions.  I didn't count.  But there are a

25  number of times you had to patiently go back over it.

1           We know from the two previous trials there's a

2    lot of audio testimony here.  I know, even preparing

3    the case, I'd have to listen to things two, three, four

4    times before I even realized what was being heard.

5           I believe, in fairness, that his responses to

6    your very methodical and slow questioning indicates he

7    should not be sitting on this particular case.

8           MS. ARANGO:  Judge, that's why we brought him

9    back.

10          You asked him, "Did you understand all the

11   questions?"

12          He said without hesitation, "Yes, I did, your

13   Honor."

14          THE COURT:  I don't find there's a basis for

15   cause.

16          He said he understood all the questions.  He

17   answered them.  Sometimes he needed some followup.

18   Sometimes people need to hear it a different way, as

19   far as some of these questions.  They're complex

20   questions involving legal concepts.  I don't find that

21   there's a basis for cause.

22          Is that it?

23          No other challenges for cause?

24          MR. LEVIN:  No, your Honor.

25          THE COURT:  Okay.  None from Government?

```
 1              MS. ARANGO:  None from the Government, Judge.

 2              THE COURT:  So let's just review before I

 3    bring everybody in.

 4              The jurors who remain from this panel, Panel

 5    No. Roman numeral III, are 2, 3, 5, 8, 10, 14, 15, 18,

 6    21, 24, 25, 26, 28, 29, 30.

 7              Does everyone agree?

 8              MR. LEVIN:  Yes.

 9              THE COURT:  Patricia, do you want to go out

10    and excuse those jurors who have been excused or bring

11    in -- or announce the jurors who are supposed to come

12    in so I can give them their further instructions and

13    dismiss them for the day.

14              THE COURTROOM DEPUTY:  Yes, Judge.

15              MR. LEVIN:  Your Honor, I have a question.

16              It appears that we're getting relatively close

17    to the number that we need to start the challenging

18    process.

19              THE COURT:  How many do we have from here?

20              MS. ARANGO:  15, Judge.

21              MR. GREGORIE:  I think we have 43 in total,

22    Judge.

23              THE COURT:  Yes.  42.

24              MR. GREGORIE:  Maybe I added wrong.  15, 11

25    and 17.
```

1          MR. LEVIN:  42.  We lost one from the second

2     panel.  So we have 16 from the second panel, 11 from

3     the first.  15.  If my math is correct, that's 42.

4          We need 49.  And I want to pick a few extras.

5          MR. LEVIN:  My question would be --

6          THE COURT:  Can you wait, please.

7          Come on in.

8          (Whereupon, the remaining members of

9     Prospective Jury Panel No. III entered the courtroom at

10    4:43 p.m. and the following proceedings were had:)

11         THE COURT:  Ladies and gentlemen, at this

12    juncture you are still under consideration for service

13    in this jury.

14         I expect there will be a few more days of

15    questioning concerning at least one more panel --

16    probably one more -- which will take place probably

17    over the next two days.

18         After that, you'll be notified by Patricia as

19    to whether or not you have been chosen to sit as a

20    juror in this case.  That will probably be either

21    Friday of this week or Tuesday -- Monday or Tuesday of

22    next week.

23         But in the next few business days, you should

24    be receiving a call from Patricia.  You should make

25    sure that she has all of your numbers and modes of

1    communication to get in touch with you:  Home, office,

2    e-mail, beeper, cell phone, whatever modes of

3    communication you use.

4         She will make sure that you have the number of

5    my chambers as well.  You should feel free to call at

6    any time to find out what the status of the case is.

7         Do not discuss this case either amongst

8    yourselves or with anyone else.  Have no contact

9    whatsoever with anyone associated with the trial.  Do

10   not read, listen or see anything touching on this

11   matter in any way.

12        If anyone should try to talk to you about this

13   case, you should immediately instruct them to stop and

14   report it to my staff.

15        Remember, now that you are under consideration

16   to serve as a juror in this case, it's important that

17   you not read, see or listen to anything about this case

18   on the TV, in the paper, on the radio, on the Internet

19   or have any conversation with anyone about the case.

20        Thank you so much for your patience.  And

21   you'll be hearing from us in the next few days.

22        Thank you.  You're dismissed.

23        (Whereupon, Prospective Jury Panel No. III

24   exited the courtroom at 4:47 p.m. and the following

25   proceedings were had:)

1              THE COURT:  You may be seated.

2              We have 42.  The magic number is 49.  So....

3              MS. ARANGO:  Judge, is 49 with two alternates

4    or four?

5              THE COURT:  Four alternate.  49 with four

6    alternates.

7              Based upon -- well, we have actually been

8    doing better.  I always estimate that we're going to

9    lose half in the first two sessions and lose half in

10   the third.  We've been doing better than that.

11             But I would -- I'm going to bring in -- it

12   always seems like the best-laid plans....  So I don't

13   know if I want to do that.

14             I'm just going to bring in -- I was going to

15   bring in a panel of 25.  But if we're going to do 25,

16   we might as well do 30.

17             Whenever I've done that and -- it's the

18   best-laid plans and something always happens and we end

19   up with fewer people and then we've got to start again.

20             I would rather have too many people and

21   complete it in the next two days than go through 21 or

22   25 and not get enough people and have to go through

23   another panel after that because it just takes a lot of

24   time.

25             So for an extra four or five people, I think

```
1    it's worth it to have the same amount.

2            I'll tell them no more than 30 for tomorrow.

3            Tomorrow is a day that's going end around

4    3:30, 3:45, because there's a meeting of the Court.  I

5    didn't attend the last meeting because I was in a

6    charge conference on the jury that's deliberating for

7    all the lawyers that are sitting here.  I should have

8    attended that meeting, and I need to attend this one.

9            So we'll end tomorrow around 3:30, 3:45.

10           MR. LEVIN:  Judge, of the group that was

11   brought back into court, those are the ones that

12   qualified.

13           One of the jurors that was in here, under my

14   impression, Juror No. 22, who was seated in the box,

15   was stricken.

16           THE COURT:  Okay.

17           MR. GREGORIE:  Yes.  He's correct, your Honor.

18   I saw the same thing.

19           THE COURT:  Okay.

20           MR. GREGORIE:  I think that was the man that

21   didn't understand well, Judge.  Maybe he didn't

22   understand that he was stricken.

23           THE COURT:  Okay.  That person was excused.

24   We'll make -- I'll check it out with Patricia and make

25   sure that that person receives the message that they're
```

1    no longer under consideration.

2            I didn't count how many there were.  How many

3    were there in the box?

4            MR. LEVIN:  16.

5            THE COURT:  So that would be one extra.  So

6    that would be 22.  I'll have Patricia clear that up.

7            Thank you.  I'll see you tomorrow morning,

8    9:00.  Have a nice evening.

9            We're in recess in this matter.

10           (End of proceedings.)

11

12                   C E R T I F I C A T E

13

14           I hereby certify that the foregoing is an

15   accurate transcription of the proceedings in the

16   above-entitled matter.

17

18

19   _____        /s/Lisa Edwards
          DATE           _____
20                       LISA EDWARDS, CRR, RMR
                         Official United States Court Reporter
21                       400 North Miami Avenue, Twelfth Floor
                         Miami, Florida 33128
22                       (305) 523-5499

23

24

25