```
 1                   UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                         MIAMI DIVISION
                 CASE NO. 06-20373-CRIMINAL-LENARD
 3

 4   UNITED STATES OF AMERICA,        Miami, Florida

 5                 Plaintiff,         February 5, 2009

 6           vs.                      9:26 a.m. to 2:56 p.m.

 7   NARSEAL BATISTE, et al.,         Volume VII

 8           Defendants.         Pages 1 to 184
     ------------------------------------------------------------

10                          JURY TRIAL
11           BEFORE THE HONORABLE JOAN A. LENARD,
                 UNITED STATES DISTRICT JUDGE
12

13

14   APPEARANCES:

15

16   FOR THE GOVERNMENT:     RICHARD D. GREGORIE, ESQ., and
                             JACQUELINE M. ARANGO, ESQ.
17                           ASSISTANT UNITED STATES ATTORNEYS
                             99 Northeast Fourth Street
18                           Miami, Florida 33132

19

20   FOR THE DEFENDANT       ANA MARIA JHONES, ESQ.
       NARSEAL BATISTE:      300 Seville Avenue, Suite 210
21                           Coral Gables, Florida 33134

22   FOR THE DEFENDANT       ALBERT Z. LEVIN, ESQ.
       PATRICK ABRAHAM:      261 Northeast First Street
23                           Sixth Floor
                             Miami, Florida 33132
24

25
```

```
 1    FOR THE DEFENDANT      RODERICK D. VEREEN, ESQ.
        STANLEY PHANOR:        BRINKLEY, HENRYS & LEWIS
 2                             4770 Biscayne Boulevard
                               Suite 1200
 3                             Miami, Florida 33131

 4
       FOR THE DEFENDANT      RICHARD K. HOULIHAN, ESQ.
 5       NAUDIMAR HERRERA:      300 Aragon Avenue
                               Coral Gables, Florida 33134
 6

 7     FOR THE DEFENDANT      LOUIS CASUSO, ESQ.
         BURSON AUGUSTIN:       111 Northeast First Street
 8                             Suite 603
                               Miami, Florida 33132
 9

10     FOR THE DEFENDANT      NATHAN CLARK, ESQ.
        ROTSCHILD AUGUSTINE:   17639 South Dixie Highway
11                             Miami, Florida 33157

12
       REPORTED BY:           LISA EDWARDS, CRR, RMR
13                             Official Court Reporter
                               400 North Miami Avenue
14                             Twelfth Floor
                               Miami, Florida 33128
15                             (305) 523-5499

16

17

18                            I N D E X

19

20                                                       PAGE

21
       Jury Selection                                     28
22

23

24

25
```

1          THE COURT:  Good morning.  You may be seated.

2          United States of America versus Narseal

3     Batiste, et al., Case No. 06-20373.

4          Counsel, state your appearances, please, for

5     the record.

6          MR. GREGORIE:  Good morning, your Honor.

7          Richard Gregorie and Jacqueline Arango on

8     behalf of the United States.

9          THE COURT:  Good morning.

10         MS. JHONES:  Good morning, your Honor.

11         Ana Maria Jhones on behalf of Narseal Batiste,

12     who is present.

13         MR. LEVIN:  Good morning, your Honor.

14         Albert Levin on behalf of Patrick Abraham, who

15     is also present.

16         MR. CASUSO:  Good morning, your Honor.

17         Louie Casuso on behalf of Burson Augustin, who

18     is present.

19         MR. CLARK:  Good morning, your Honor.

20         Nathan Clark with Rotschild Augustine, who is

21     present.

22         MR. HOULIHAN:  Richard Houlihan with Naudimar

23     Herrera.

24         MR. VEREEN:  Roderick Vereen on behalf of

25     Stanley Phanor, who's present.

```
 1              THE COURT:  Good morning to everyone.

 2              Patricia is still gathering all the jurors,

 3    but I have some matters to go over with you in regard

 4    to Panels I and II.

 5              Juror No. 21 on Panel II -- first of all, I

 6    have in my notes that she indicated that she was a

 7    paralegal in the corporate field.

 8              MR. GREGORIE:  That's correct, your Honor.

 9              MS. ARANGO:  Yes.

10              MR. GREGORIE:  I think she is -- now she's

11    working for the school board.

12              THE COURT:  That was my concern.

13              And was this also a person who indicated that

14    there was any issue of identity theft?

15              MS. ARANGO:  No.

16              THE COURT:  Does anybody have that in their

17    notes?

18              MS. ARANGO:  That was another one.

19              THE COURT:  I know there was a gentleman.  But

20    there was a woman, also.  It's not her.

21              What comes up in the background check is

22    someone using -- someone with a different name,

23    different date of birth, but the same FBI number and

24    the same CIN number, which is the case number -- is

25    that the case number? --
```

```
1            THE US MARSHAL:  (Nodding in the affirmative.)
2            THE COURT:  They're nodding "yes" to me.
3            -- the case number.
4            The person with a different date of birth and
5   the same FBI number and same case number has an
6   extensive criminal history.
7            The marshals ran photos and there were
8   different photos and the person with the same FBI
9   number, different date of birth and same CIN number is
10  presently living in Georgia.
11           So I just wanted to disclose that to you.  I
12  don't see any problems there, but I wanted to disclose
13  it.
14           Now, Panel No. I, Juror No. 1, has a withhold
15  of adjudication for prostitution -- that was not
16  disclosed in my information -- and unemployment
17  compensation fraud that was nolle pros'ed, a possession
18  of cocaine -- the disposition says "Held" -- and a
19  sealed -- I don't know if it's the same charge.
20           For the unemployment compensation, there was
21  successful completion of pretrial diversion.  Then it
22  seems there's a possession of cocaine and a sale of
23  cocaine, both of which were sealed.
24           So from that, it seems that the "Held" means a
25  withhold of adjudication.  I don't have in my notes
```

```
 1    that any of that was disclosed.
 2              MS. ARANGO:  It was not, Judge.
 3              We would move to strike for cause.
 4              MS. JHONES:  I would object, your Honor.
 5              This is the same problem that we had last --
 6    in the last couple of trials, wherein, number one,
 7    there's the issue of the accuracy of the NCIC.
 8              The NCIC is not -- it is not a certified,
 9    official document of somebody's criminal history.
10    That's the first thing.  So we do not know.  Sometimes
11    they are accurate.  Sometimes they are not.  We do not
12    know that what the marshals have pulled is, in fact,
13    the charge and the disposition.
14              I have had many clients where the NCICs have
15    been incorrect.
16              Number two, the juror has a right to be heard
17    on these issues.  If this gentleman received a withhold
18    of adjudication, if he went to PTI and, subsequently, a
19    case was sealed, this gentleman can very well be under
20    the impression, if a lawyer told him that he does not
21    have to disclose -- the Florida chapter -- I think it's
22    914, point -- and I forget the exact section of the
23    statute -- specifically says these are the only
24    instances where you must disclose if you have something
25    sealed.
```

1          So this juror has to be heard.  And this cause

2    is terribly premature.

3          MS. ARANGO:  Judge, is Ms. Jhones going to

4    represent him when you bring him back in and ask him

5    these questions?  We've had this issue come up before,

6    Judge.  Remember?

7          MS. JHONES:  The Government wants to

8    intimidate jurors, once again.  I don't think it's

9    appropriate.

10          The Court can ask this gentleman -- unless the

11    Government is now going to put this gentleman on notice

12    that he may be prosecuted, then the Public Defender's

13    Office could come in and represent him.

14          MS. ARANGO:  The point, Judge, is that he did

15    not tell the truth.  That's the point.

16          MS. JHONES:  The point is that the

17    Government --

18          MS. ARANGO:  I would just point out, Judge,

19    that several people asked to go side-bar.  They -- and

20    tell you about their criminal history.  The question

21    says accused of, charged with, in addition to convicted

22    of.  It's very clear.

23          THE COURT:  The question actually says, "Have

24    you ever been accused of, charged with or convicted of

25    any crime or been the subject of a criminal

```
1    investigation other than a minor traffic violation?"
2              MS. JHONES:  Yes, your Honor.  I understand
3    that.
4              And the issue, besides the accuracy, or lack
5    thereof, of an NCIC -- besides that issue -- and in the
6    past, the Court has given us an opportunity to try and
7    pull these records so that we could compare what the
8    official documents are with the NCIC.
9              That's the number -- the first issue:
10   Accuracy.
11             The second issue is:  What was this
12   gentleman's understanding?  What was he told, if
13   anything, by his lawyer as far as his responsibility to
14   disclose something because of Florida law?
15             THE COURT:  Well, what would you propose that
16   I do, Ms. Jhones?  Appoint him counsel and have him
17   come in and testify about this?
18             MS. JHONES:  No.
19             The first thing I'd like to do is I'd like to
20   find out -- I'd like to have my investigator find out
21   whether or not what the Court --
22             THE COURT:  You're not getting his name.
23             MS. JHONES:  Oh, that's right.
24             THE COURT:  Which is why I instructed the
25   marshals to run this information, because this is an
```

1    anonymous jury.

2          MS. JHONES:  The Court is correct account.  I

3    forgot about that, your Honor.

4          Just one moment, your Honor.

5          MR. VEREEN:  Your Honor, Juror No. 25 from

6    yesterday's panel came back in during individual

7    questioning and advised the Court that she had a

8    brother that had been charged with a DUI while in the

9    Navy.

10          She did not initially disclose that.  But she

11    came back in later when you were doing the individual

12    questioning.  She came back and she brought that out.

13    You even questioned her.

14          You said, "Did you tell us about this DUI

15    earlier?"

16          She said, "No."

17          THE COURT:  Okay.

18          MR. VEREEN:  So, I mean, you know, she's not

19    being charge with perjury for not making a complete

20    statement in the beginning.

21          So I think this person should be brought back

22    in here and questioned as to whether or not this -- he

23    received these particular charges.

24          If he says "yes," then the Court can inquire

25    as to why he didn't disclose it earlier and then he can

 1    tell the Court why he didn't.

 2           But to just assume that it is him without a

 3    booking photo and without questioning him about it, I

 4    think it's premature.

 5           MS. JHONES:  Your Honor, does the Court have a

 6    booking photo on this gentleman as to those charges?

 7           THE COURT:  No.

 8           MS. ARANGO:  May I inquire, Judge?

 9           What kind of identifying information is

10    present in the --

11           THE COURT:  Let me look.

12           MS. ARANGO:  -- in the marshals' run?  Is

13    there a DOB, anything like that?

14           THE COURT:  I'm looking.

15           On the prostitution, the date of birth is the

16    same.  That was not sealed.  That was a withhold of

17    adjudication, according to this record.

18           MR. GREGORIE:  Your Honor, may I refer the

19    Court to *US versus Carpa* -- C-a-r-p-a -- 271 F.3d 962,

20    an Eleventh Circuit case in 2001?

21           "It was learned after trial that a juror who

22    had stated that he had recently been charged with

23    driving with a suspended license, but everything was

24    taken care of, had actually been convicted of a felony

25    and ordered to serve 60 days in jail on the weekends.

1          "When the Court learned of this

2    misrepresentation, it directed the FBI and prosecuting

3    assistant United States attorney to interview the

4    juror.  At a subsequent hearing, the FBI agent

5    testified.

6          "Even though during the trial the jury

7    remained anonymous because of the concern that

8    Defendants would tamper with the jury, this method of

9    inquiring into the basis of the juror was inadequate.

10         "A remand was required to allow defense

11   attorneys an opportunity to interview the juror and for

12   the Court to question the juror."

13         Your Honor, in order to do that and to be sure

14   that this man has not committed perjury or committed

15   another offense by his questioning under oath here

16   before this Court, this juror has a right to be

17   represented.

18         Once we've done that, your Honor, I think

19   you've made this juror improper to serve on this jury,

20   Judge.  That may be a necessary step, because this

21   juror hasn't answered properly.

22         But once we go to that step, Judge, then we

23   have essentially made this juror inoperable as far as

24   sitting on this jury.  That's why the challenge for

25   cause is appropriate, your Honor.

```
1              Any further investigation or questioning --
2    luckily, this juror is not on the jury now, Judge.  If
3    we reach that point later on, then you're going to get
4    to the point that the Capra case is talking about.
5              MR. VEREEN:  I don't believe that case says
6    that that makes a juror an unacceptable juror for
7    purposes of the trial.  If somebody wants to exercise a
8    peremptory based on that, that may be their
9    prerogative.
10             But to say, just because a juror is brought
11   back and told he's going to be assigned counsel because
12   of information the Court may have received regarding a
13   prior offense --
14             THE COURT:  You don't think that's
15   problematic, Mr. Vereen?
16             MR. VEREEN:  No, Judge.  I do not think that's
17   problematic.
18             MS. JHONES:  Your Honor --
19             THE COURT:  You don't think that's
20   intimidating to a juror?
21             MR. VEREEN:  I don't think anything we have --
22   well, no.  I don't think that's intimidating to a
23   juror.
24             MS. JHONES:  Your Honor, if I may add to that,
25   it may be intimidating to a juror.  It depends on the
```

1    juror.  And I don't have the cases with me.  I'd like

2    to read the case that Mr. Gregorie has cited.

3           We throw cases out here all the time without

4    reading the case and knowing exactly the context.  I'd

5    like to read it to be able to properly respond to that

6    citation.

7           But in addition to that, your Honor, what we

8    have is -- and I do have the cases.  I didn't bring

9    them with me today.  But there are a whole line of

10   cases that talk about a juror's constitutional right to

11   serve.

12          In the context of *Batson* challenges, there is

13   the -- the Defendants have a constitutional right to

14   have a jury of his peers.  And jurors that are

15   struck -- the jurors that are struck for gender- or

16   race- or religious-based reasons have a right to

17   challenge that as well.

18          And assuming -- the Government making the

19   assumption that this juror, the minute somebody says to

20   him, "There is an inaccuracy.  You did not respond

21   correctly to Question No. 26" -- this juror is going to

22   be intimidated and turn around and go home is quite an

23   assumption.

24          This juror may have a perfectly viable

25   explanation.  And certainly in the context of -- from

1    what the Court has said, there is not one conviction,

2    not one.

3         Unfortunately, this happens all of the time

4    under Florida law because of what Florida law is in the

5    context of withholds.

6         So this gentleman has --

7         THE COURT:  That's why the question that I

8    asked is very, very broad:  "Have you ever been charged

9    with, convicted, accused of or been the subject of an

10   investigation?"

11        Now, he did answer in regard to his cousin.

12   He told us about his cousin.

13        MS. JHONES:  Who was convicted.

14        THE COURT:  He told us about his cousin.

15        MS. JHONES:  Right.

16        And what I'm saying, your Honor, is this

17   gentleman has -- on behalf of Mr. Batiste, I'd say that

18   Mr. Batiste has the right to hear the explanation that

19   this gentleman has.  If he doesn't want to respond,

20   obviously, that's his prerogative.

21        MR. LEVIN:  Mr. Abraham joins in that request,

22   your Honor.

23        MS. ARANGO:  Judge, based on what the Marshals

24   Service has found, he was untruthful.  And, your Honor,

25   there has to be some type of process for determining

15

1    whether or not these people have a criminal history.

2         The only process, under the circumstances with

3    an anonymous jury, is to have the marshals run them.

4    Therefore, we have to rely on that.

5         We cannot bring the person back in, appoint

6    them counsel -- if we do, we'd have to appoint them

7    counsel.  That -- I don't believe that that is a

8    process that should be followed and would only --

9    should only be followed if the person was actually a

10   juror -- sworn in as a juror.

11        So we are at a point beforehand where we can

12   prevent that from happening.  And I see absolutely no

13   error in following what the Marshal Service has found.

14        It's -- certainly with respect to the

15   prostitution charge, it's the same DOB.  I assume it's

16   the same name.  And I don't think we should be going

17   any further than that, Judge.

18        MR. LEVIN:  Judge, what's Ms. Arango's

19   response to Juror No. 21 from Panel II, where you have

20   a different name and a different date of birth and the

21   same FBI CIN number and different photos of the subject

22   juror?

23        Obviously, there was a mistake there.  So,

24   obviously, there's evidence that there are mistakes in

25   this process.  With all due respect to the Marshals

```
 1    Service, it's difficult to piece this back together.
 2    But what's to say this isn't a mistake as well?
 3              I mean, I do realize we do have to have a
 4    process.
 5              THE COURT:  On that one, the dates of birth
 6    are different.  The dates of birth are different.
 7    There are some similarities in the numbers, but the
 8    dates of birth are different.
 9              The marshals run the photos based upon the
10    fact that the FBI numbers and the CIN numbers were the
11    same and the photos are different and that person's
12    living in Georgia.
13              In this particular case, the -- and let me
14    just state for the record so it's clear, when I --
15    there was no objection to this process, which is what
16    the lawyers had requested in previous trials.
17              And when I indicated that I was going to
18    instruct the marshals to follow the same procedures
19    they had for Trial 2, no one objected to the process,
20    going through it or to the accuracy or inaccuracy of
21    the records.
22              I am going to strike Juror No. 1 from Panel
23    No. I based upon the fact that he did not disclose the
24    prostitution or unemployment compensation fraud cases
25    which match his -- both his name and his date of birth.
```

1    And he did not disclose that in voir dire.

2             So Juror No. 1 from Panel I is struck.

3             MR. VEREEN:  Note my objection for the record.

4             MS. JHONES:  Just for the record, your Honor,

5    we did not object to the process because, in the prior

6    trial, the Court gave the juror an opportunity to come

7    in and be heard and, in fact, appointed counsel to one

8    of the jurors.  Vincent Farina was one of them.

9             We are under the assumption that jurors are

10   going to have a right to be heard.  That's why we did

11   not object to the process.

12            MR. HOULIHAN:  Judge, on behalf of

13   Mr. Herrera, I join in the objection.

14            MR. LEVIN:  I object as well, Judge.

15            I don't know if we need to adopt everybody's

16   objection or not.

17            MR. CLARK:  On behalf of Mr. Rotschild

18   Augustine, your Honor, we join in the objection.

19            It looks to me, your Honor, that even if he

20   had answered these correct, they wouldn't have provided

21   a valid basis for a challenge for cause.

22            Under *United States versus Perkins*, 748 F.2d

23   1519, an Eleventh Circuit case, it says that, when a

24   juror is provided -- learned that he's provided

25   inaccurate information during the voir dire

1    examination, a two-part inquiry must ensue.

2         First, it must be shown that he did, in fact,

3    fail to answer honestly a material question on voir

4    dire.

5         Second, it must appear that a correct response

6    would have provided a valid basis for a challenge for

7    cause.

8         So I'd just ask the Court to follow that

9    procedure.  If he needs to be appointed counsel, so be

10   it.

11        But I think the Court should --

12        THE COURT:  Do you have the case there?

13        MR. CLARK:  Sorry?

14        THE COURT:  Do you have the case?

15        MR. CLARK:  I don't have a copy of the case

16   here, Judge.

17        MR. LEVIN:  Judge, another issue with regard

18   to this --

19        MR. CLARK:  Excuse me.

20        MR. LEVIN:  I'm sorry.

21        MR. CLARK:  It's a case cited with -- along

22   with what Mr. Gregorie cited, *United States versus*

23   *Carpa*.  It's cited before that.

24        THE COURT:  Cited where?

25        MR. CLARK:  In the -- in the book that

1    Mr. Gregorie was reading from.

2         THE COURT:  Everybody's relying on this

3    *Eleventh Circuit Criminal Handbook*?

4         MS. JHONES:  Apparently.

5         THE COURT:  Let me just set it out for you --

6    for both sides.  In this trial, I will not accept that.

7    I have researched this book.  Quite frankly, I'll tell

8    you exactly how I have come to the position that I have

9    come to.

10        For at least months, if not a year, I saw

11   lawyers standing up and citing this book.  I said,

12   "Golly gee, I want this book, too.  This is a great

13   book.  Everybody's using it and citing all these cases

14   and making their arguments.  I want to have it."

15        So I ordered it.

16        And then I researched it.  And it's not

17   accurate.  The citations do not match what the book

18   says.

19        So that book is not a book that you may rely

20   on in my courtroom.

21        MS. JHONES:  Judge, just for the record, I

22   have not -- with the exception of one case on

23   co-conspirators' statement that Mr. Gregorie was kind

24   enough to provide to me on the second trial, I have not

25   received one copy of one case from the Government.

20

1          Contrastingly, contrastingly, I have provided

2     copies of cases to the Court.  I have provided copies

3     of cases to the Government.  And I am prepared to have

4     copies of cases for the Government.

5          But I just hope that this is going to apply to

6     both sides, because that book is being utilized --

7          THE COURT:  I just said it applies to both

8     sides.

9          MS. JHONES:  I understand that.

10         That case that Mr. Gregorie cited, without a

11    copy to counsel, without the ability to be able to

12    research it and read it....

13         THE COURT:  Now, if you want to research the

14    cases that you read in the book, I don't have a problem

15    with you using it as a starting-off point.

16         But --

17         MR. CLARK:  Well, then, I'll ask the Court to

18    give me an opportunity to get a copy of the case --

19         MR. LEVIN:  Your Honor, I'd ask that --

20         MR. CLARK:  -- and do it at that time.

21         THE COURT:  I'm going to pull it up right now,

22    Mr. Clark.  But in the future, nobody's to cite a case

23    to me that they haven't read and they're only relying

24    on this handbook.  It's not acceptable here.

25         MR. LEVIN:  Your Honor, my concern is that --

1              THE COURT:  Can you wait a minute, please,

2    Mr. Levin?

3              MR. LEVIN:  Yes, your Honor.  I apologize.

4              THE COURT:  That case, which is *US versus*

5    *Perkins* -- it deals with the issue, but it deals with

6    it in terms of a motion for a new trial after a jury

7    served.

8              This is the procedure we're going to follow in

9    these cases if there's -- I'm going to withhold on --

10   or reserve on dismissing Juror No. 1.  He's going to

11   come in tomorrow and I'm going to appoint a public

12   defender to represent him and I'll question him.

13             MR. LEVIN:  Thank you.

14             THE COURT:  Juror No. 30, Panel No. II.  Juror

15   No. 30, Panel No. II, first of all, indicated on his

16   juror questionnaire that he had been convicted of a

17   felony and his civil rights were restored.

18             I believe he disclosed a disorderly conduct.

19   This was something about he was -- they said he was

20   drunk and he wasn't and he was charged with disorderly

21   conduct.  That's what my memory is of it.

22             MR. CLARK:  Which panel was this, Judge?

23             THE COURT:  Panel II.

24             He has charges -- additional cases he was

25   charged with.  There is the disorderly conduct, and he

1    was acquitted.  He was convicted and put on probation

2    for the resisting -- resisting it.

3            He also has a carrying a concealed firearm,

4    for which he had adjudication withheld and probation; a

5    grand theft, second degree, and resisting officer with

6    violence, which were no-actioned -- strike that.

7            The grand theft, second degree, and under an

8    a/k/a resisting officer without violence.  That was

9    *nolle pros'ed.*

10           The a/k/a is just a reverse of his first and

11   second name.

12           The possession of cocaine:  That was

13   no-actioned.

14           There's a tampering with physical evidence,

15   which he was acquitted.  Different case number.

16           And there's a disorderly conduct that was

17   *nolle pros'ed.*

18           A vehicle theft charge and a larceny; carrying

19   a concealed weapon, adjudication withheld; and a

20   cocaine possession; resisting an officer without

21   violence arrest.

22           MS. ARANGO:  Judge, for the record, I have the

23   transcript for the day in which Juror No. 30 answered

24   the question -- Question No. 26 you asked.

25           He said, "Yes" to 26.

1              And you say, "Let's go back to 26.

2              "You were accused of a crime?"

3              Prospective Juror No. 30 says, "Yes."

4              "What crime were you accused of?"

5              Prospective Juror No. 30 says, "I was accused

6    of being drunk when I wasn't" --

7              THE COURT:  That's what I have in my notes.

8              MS. ARANGO:  -- "unlawful conduct."

9              "Disorderly conduct?"

10             He says, "Disorderly conduct, I mean."

11             You say, "And what happened with that charge?"

12             He says, "It was thrown out."

13             "When was that?", you say.

14             "This was back in 1998."

15             Then you talk about whether or not he was

16   treated fairly, he had a lawyer, he didn't -- the

17   lawyer did a great job.

18             He says he can put that aside.

19             And then the next -- he gives no more

20   information about 26.

21             And then he goes on to answer Question No. 27,

22   and he says that one of his cousins was charged with

23   grand theft years ago.

24             So with respect to Question No. 26, he didn't

25   even say he had civil rights restored.  He didn't say

1    he was convicted of it.  He just said he was accused of

2    it and the charges were dropped.

3              MR. CLARK:  Your Honor, I'm reading from that

4    transcript, too.

5              And you had a colloquy with him.  I think you

6    asked him -- you said to him, "And you also answered

7    'yes' to No. 27."  And you went on to 27.

8              So I don't think it's necessarily that he

9    failed to give all that information.  There was a

10   colloquy that took place.

11             THE COURT:  Excuse me?

12             MR. CLARK:  I'm saying there was a colloquy

13   that took place.  He was answering the Court's

14   questions.  He did disclose this charge.

15             THE COURT:  Right.  He disclosed that charge.

16   He didn't disclose the other charges.

17             MR. CLARK:  Are the other charges that were

18   listed there -- I don't have the benefit of seeing

19   that.  Is that different times?

20             THE COURT:  Yes.  Several different cases.

21             MR. CLARK:  Okay.  Well, the Court asked

22   him -- you moved on.  He had answered "yes" to several

23   things, one being that a family had been charged and,

24   also, that he had been charged.

25             And the Court went on and said, "Okay.  You

```
 1    also answered 'yes' to 27."  And you moved him to 27.

 2              THE COURT:  I see.

 3              So I prevented him from answering completely

 4    No. 26?

 5              MR. CLARK:  I'm not suggesting that.

 6              THE COURT:  Is that what your position is,

 7    Mr. Clark?

 8              MR. CLARK:  No.  I'm not suggesting that.

 9              I'm suggesting that he was engaged in a

10    colloquy.  I'm not suggesting that.  I'm just --

11              THE COURT:  I sort of moved him along to 27?

12              MR. CLARK:  I'm suggesting that he should have

13    an opportunity to respond to stuff like this and that

14    it is okay to bring him back --

15              THE COURT:  We'll bring him back and appoint

16    counsel for him.

17              Juror No. 26 on Panel I:  This was the

18    gentleman that disclosed side-bar about improper

19    touching, which he said he was falsely accused.

20    Indeed, it was no-actioned.  I'm sorry.  He did

21    disclose it.  So there's nothing on Juror No. 26.

22              So we'll have those jurors come back tomorrow

23    and appoint the public defender for Juror No. 30 and

24    Juror No. 1 from Panels I and II.

25              MS. JHONES:  Your Honor.
```

1          THE COURT:  Yes.

2          MS. JHONES:  May I address an unrelated issue,

3   just a housekeeping issue?

4          THE COURT:  Sure.

5          MS. JHONES:  I don't know if the Court is

6   going to hear argument on my motion to strike the

7   Government's Rule 16 notice regarding a gentleman by

8   the name of Dan Young.

9          If the Court is going to hear argument on

10  that, would the Court mind giving me a date as to when

11  that's going to happen so I can prepare for it?

12         THE COURT:  I don't have a date.  Quite

13  frankly, I haven't had an opportunity to look at your

14  reply as of yet.  I've been a little busy.

15         MS. JHONES:  I understand.

16         I just -- when the Court does have the time,

17  could you give me a little bit of notice?

18         THE COURT:  Sure.

19         MS. JHONES:  Great.  Thank you.

20         THE COURT:  I think the Government had

21  requested, if there was going to be any hearing on it

22  that required -- a *Daubert* hearing, that it be at the

23  time that they were intending to bring down the

24  witness.

25         How close to the beginning of your case would

1    you be presenting this witness?

2            MR. GREGORIE:  He will not be, your Honor,

3    until after the -- at least the two informants have

4    testified, your Honor, because --

5            THE COURT:  So it'll be a few weeks into your

6    case?

7            MR. GREGORIE:  It'll be a couple of weeks, I

8    think.

9            The problem is this agent is in Chicago, your

10   Honor, and he's in charge of the Inspector General's

11   training for all agents in the country.  And,

12   therefore, he's required to be in his office.

13           I would like, so that we don't have to pull

14   him away more than once, Judge, to be able to bring him

15   down --

16           THE COURT:  I don't have a problem with that.

17           MR. GREGORIE:  Thank you, Judge.

18           THE COURT:  So more than likely, if there was

19   going to be a hearing on it, if I find that there is a

20   basis for a *Daubert* hearing, as you've requested, that

21   it would be around the time that he would testify,

22   which would be a few weeks into the trial.

23           MS. JHONES:  Well -- I understand, your Honor.

24           There is a basis to strike -- the Government

25   has not opposed a *Daubert*.  Certainly I have no -- I

1   requested a *Daubert*.

2          But beside the *Daubert* issue, there is the

3   issue of whether or not the Rule 16 is proper.  The

4   Government has yet to disclose the opinions that the --

5   that this witness is going to have and the basis for

6   those opinions.

7          I have -- for purposes of the *Daubert* hearing,

8   they have to comply adequately with Rule 16.  My only

9   request is -- I don't want to argue it now.

10          I just wanted to know pre-*Daubert* if the Court

11  is going to hear argument on this motion, which does

12  not only raise the issue of the lack of

13  qualifications --

14          THE COURT:  I did not intend to have two

15  hearings.

16          MS. JHONES:  Okay.

17          THE COURT:  My intention is to have one

18  hearing on the expert witness issue.

19          Do we have the jurors outside?

20          THE COURTROOM DEPUTY:  Yes, Judge.

21          THE COURT:  Let's bring them in, please.

22          THE COURTROOM DEPUTY:  Yes, Judge.

23          (Whereupon, Prospective Jury Panel No. IV

24  entered the courtroom at 10:15 a.m. and the following

25  proceedings were had:)

```
 1              THE COURT:  When you get to your seat, you can
 2    sit down.
 3              You may be seated.
 4              Ladies and gentlemen of the jury, I want to
 5    welcome you to our courtroom.  I am Judge Lenard, a
 6    United States District Judge for the Southern District
 7    of Florida.  I will preside over this case.
 8              The jury is an institution of the common law.
 9    It is recognized, preserved and protected by our
10    Constitution.  Jury service is one of the most
11    important duties that you, as a citizen, are called
12    upon to perform.
13              I am aware that, for some of you, this is your
14    first call to jury service and these proceedings are
15    totally unfamiliar to you.  Please do not be
16    apprehensive or feel inadequate.  As we go along, I
17    will acquaint you with the proceedings and I will
18    instruct you as to what your role is and what your
19    duties will be.
20              In order that you will know the court
21    personnel with whom you will be working and their
22    respective duties, I will introduce them to you at this
23    time.
24              The courtroom deputy, whom you already met, is
25    Patricia Mitchell.  She assists in the administration
```

1    of cases that comprise the Court's docket and in the

2    coordination of the day-to-day operations of the court.

3         The court reporter is Lisa Edwards.  She

4    transcribes and takes down everything that is said in

5    the courtroom, including the statements that I am now

6    making, the questions that will subsequently be

7    propounded to you, your answers and all other matters

8    in this case.

9         We also have court security officers.  Their

10   job is to enforce the Court's orders and take charge of

11   the jury.

12        If you desire information concerning your

13   personal welfare, you should make your inquiries known

14   to either the court security officer or courtroom

15   deputy, who will, if necessary, arrange with the Court

16   to hear you on such matters.

17        However, you must not question either the

18   court security officer or courtroom deputy concerning

19   the case that is being tried.

20        Ladies and gentlemen, I will be asking you

21   questions touching on your qualifications to serve as

22   jurors in this particular case.  This part of the case

23   is known as voir dire examination, "voir dire" meaning

24   to speak the truth.

25        This examination is for the purpose of

1    determining if your decision in this case would be

2    influenced in any way by opinions you now hold or by

3    some personal experience or special knowledge you may

4    have concerning the case to be tried.

5           The object is to obtain a jury who will

6    impartially try the issues of this case upon the

7    evidence presented in this courtroom without being

8    influenced by any other factors.

9           Please understand that this questioning is not

10   for the purpose of prying into your affairs for

11   personal reasons, but is only for the purpose of

12   obtaining an impartial jury.

13          Not all of you will have the privilege to sit

14   as a juror in this case.  There are many reasons why a

15   person may not be selected as a juror.  Either side can

16   ask that you be excused without giving a reason or the

17   Court can excuse you.

18          If you are excused, please do not be offended

19   or feel that your honesty or integrity is being

20   questioned.  It is not.

21          If you would, swear in all the potential

22   jurors, please.

23          (Whereupon, Prospective Jury Panel No. IV was

24   duly sworn.)

25          THE COURT:  First of all, before I begin my

1    questioning, I want to tell you about the courtroom.

2    We've been here since May.  It's a new building, as you

3    can probably tell.  We're really quite happy to be

4    here.  It's the first time in 13 years that I have

5    natural light in my courtroom.  So it makes it a bit

6    more pleasant to be here during the day.

7           The sound system works pretty well.  The

8    acoustics are pretty good in the courtroom.  The one

9    glitch seems to be the wireless microphone, which is,

10   of course, the microphone that you'll be using when

11   you're answering questions on voir dire.

12          As best I can tell, it likes to be held like

13   it's a karaoke mic.  So if you put it right parallel

14   with your -- right along the line of your mouth, just

15   like you would do if you were doing karaoke, which I

16   have never done, but I've seen photos, it seems to work

17   better.  If you would, just be patient with the

18   microphone.  Sometimes it goes in and out.  But we seem

19   to get through it.

20          The other thing is, if you could, give your

21   juror number each and every time you answer a question.

22   That way, Lisa can make sure you're properly identified

23   in the record.

24          I also want to tell you about my trial

25   schedule.  On Mondays, I do not hear trials.  I hear

1   other matters at this time on my docket.  Trials are

2   heard Tuesday through Friday.  So you have Mondays to

3   go about your business and do whatever you need to

4   accomplish in your week without being here.

5           Having said that, this case is expected to

6   take approximately two months to present the evidence.

7           Does that fact present an insurmountable

8   problem to any member of the jury panel?

9           And my questions are directed to those persons

10  are who are seated in what we call the jury box and

11  those persons seated in the gallery as well.

12          PROSPECTIVE JUROR NO. 14:  14.

13          THE COURT:  Yes.

14          PROSPECTIVE JUROR NO. 14:  Well, I was just --

15  two months is -- where I work, that's going to be very

16  difficult to --

17          THE COURT:  What type of work do you do, sir?

18          PROSPECTIVE JUROR NO. 14:  Anesthesiologist in

19  a trauma center.

20          THE COURT:  What is your job?

21          PROSPECTIVE JUROR NO. 14:  I'm a physician.

22          THE COURT:  Okay.

23          PROSPECTIVE JUROR NO. 7:  No. 7.

24          I work -- I'm a nurse practitioner for the

25  trauma center.

```
 1            THE COURT:  The same trauma center?

 2            PROSPECTIVE JUROR NO. 7:  Yes.

 3            THE COURT:  Do you know each other?

 4            PROSPECTIVE JUROR NO. 7:  Yes.

 5            THE COURT:  Okay.

 6            PROSPECTIVE JUROR NO. 23:  23.

 7       My son just --

 8            THE COURT:  You're Juror No. 23?

 9            PROSPECTIVE JUROR NO. 23:  23.

10            My son just moved at the beginning of the year

11   to San Juan, Puerto Rico, to study in San Juan.  I have

12   shipments of things going over there on Monday, of his

13   personal stuff, and I got airfare tickets for Saturday

14   to leave.

15            THE COURT:  So you're going to Puerto Rico

16   this Saturday or next Saturday?

17            PROSPECTIVE JUROR NO. 23:  This Saturday.  I

18   got tickets.  His shipments of his belongings are

19   supposed to get there on Monday.

20            THE COURT:  Okay.  So you're going on --

21            PROSPECTIVE JUROR NO. 23:  The 7th.

22            THE COURT:  And when are you coming back?

23            PROSPECTIVE JUROR NO. 23:  Probably on the

24   17th.

25            THE COURT:  You'll be back on the 17th.
```

```
 1              PROSPECTIVE JUROR NO. 23:  Right.  Right after

 2   the holiday.

 3              THE COURT:  So are you traveling back on the

 4   17th?

 5              PROSPECTIVE JUROR NO. 23:  Yeah.  I'm

 6   traveling back on the 16th.

 7              THE COURT:  On the 16th.

 8              So you'll be available on the 17th?

 9              PROSPECTIVE JUROR NO. 23:  Yes, ma'am.

10              THE COURT:  Okay.  That may not be a problem.

11              PROSPECTIVE JUROR NO. 24:  I'm No. 24.  Good

12   morning.

13              THE COURT:  Yes.

14              PROSPECTIVE JUROR NO. 24:  Actually, I'm one

15   of the owners and operations -- the director for a

16   security investigation department.  And that won't

17   allow the operations for the business.  I won't be able

18   to be out for a couple months.  Probably about a week

19   that I'll be able to do.

20              THE COURT:  Okay.  Is it a security firm or is

21   it a corporation that has a security department?

22              PROSPECTIVE JUROR NO. 24:  Yes.  It's a

23   security and investigation agency, actually.  It's a

24   private company.

25              THE COURT:  You're the owner of it?
```

1     PROSPECTIVE JUROR NO. 24:  One of the owners.

2     THE COURT:  How many owners are there?

3     PROSPECTIVE JUROR NO. 24:  Three.

4     THE COURT:  What is it that you do on a

5  day-to-day basis?

6     PROSPECTIVE JUROR NO. 24:  I'm the operations

7  director.  I make sure that everything is actually

8  running properly in the business, everything from

9  supervisor, being actually on the site.  All the

10  investigators actually report to me directly of any

11  cases that we're handling.

12     THE COURT:  Okay.  And are the other owners --

13  what are they doing?

14     PROSPECTIVE JUROR NO. 24:  Actually, the other

15  two owners are just investors.  They have their --

16     THE COURT:  So you run the business?

17     PROSPECTIVE JUROR NO. 24:  Exactly.

18     THE COURT:  Okay.

19     PROSPECTIVE JUROR NO. 25:  No. 25.

20     I'm a full-time student, graduating this

21  semester.

22     THE COURT:  Okay.  And what time are your

23  classes during the week?

24     PROSPECTIVE JUROR NO. 25:  Tuesdays and

25  Thursdays, 12:30 to 1:45.  Mondays and Wednesdays,

1   5:00 to 6:15 p.m.  And an on-line course.

2           THE COURT:  Okay.

3           PROSPECTIVE JUROR NO. 25:  And -- I'm sorry --

4   on Mondays, from 9:00 a.m. to 1:00 p.m.

5           THE COURT:  Okay.

6           PROSPECTIVE JUROR NO. 27:  No. 27.

7           I have scheduled training for my job.  I work

8   for the Department of Homeland Security.

9           THE COURT:  When is the training scheduled

10  for?

11          PROSPECTIVE JUROR NO. 27:  It's scheduled for

12  the 18th and 19th.

13          Also, at this time of the year we have our

14  annual testing.

15          THE COURT:  Okay.  And is the training

16  something that could be rescheduled?  Do they have that

17  from time to time?

18          PROSPECTIVE JUROR NO. 27:  Well, they have a

19  time limit, your Honor.  They have to get it done

20  within a certain time frame.

21          THE COURT:  Okay.  And what's your time frame?

22          PROSPECTIVE JUROR NO. 27:  I don't know.  I

23  have to ask the training department.

24          THE COURT:  I'm sure jury service would extend

25  the time frame.

```
 1              PROSPECTIVE JUROR NO. 27:  Okay.

 2              PROSPECTIVE JUROR NO. 28:  I'm No. 28.

 3         I'm the medical biller for a physical therapy

 4    company and I'm the only one in that department.

 5              THE COURT:  How big is the physical therapy

 6    firm?  How many people?

 7              PROSPECTIVE JUROR NO. 28:  They employ over

 8    55 therapists, but they're all out in the field.  And

 9    only about four of them work, actually, in the office.

10              THE COURT:  And how many people do -- the four

11    in the office are doing office work?

12              PROSPECTIVE JUROR NO. 28:  No.  They do

13    physical therapy on the patients.

14              THE COURT:  You're the only one who does the

15    billing?

16              PROSPECTIVE JUROR NO. 28:  Yes, ma'am.

17              THE COURT:  Okay.

18              PROSPECTIVE JUROR NO. 21:  Juror 21.

19         I have scheduled training in Sarasota,

20    Florida, for my job.  I'm a consultant for Health

21    Management Solutions.

22              THE COURT:  When is the training?

23              PROSPECTIVE JUROR NO. 21:  It's the 18th of

24    this month.

25              THE COURT:  February 18th?
```

```
1              PROSPECTIVE JUROR NO. 21:  Yes.  Scheduled for

2    one day.

3              THE COURT:  Just the 18th?

4              PROSPECTIVE JUROR NO. 21:  Yes.

5              THE COURT:  Okay.  Ma'am, is this something

6    that could be rescheduled, the training?

7              PROSPECTIVE JUROR NO. 21:  Not in all

8    likelihood, your Honor.  This is the first time they've

9    actually done this type of hands-on training for the

10   consultants as well as team leaders.  So I'm not the

11   sure.

12             THE COURT:  Okay.

13             PROSPECTIVE JUROR NO. 21:  As a matter of

14   fact, they're waiting on my decision for, like, a whole

15   month to get back to work now.  I travel throughout the

16   United States, your Honor.

17             THE COURT:  For your job?

18             PROSPECTIVE JUROR NO. 21:  Yes, I do.

19             THE COURT:  How big is the firm that you work

20   for?

21             PROSPECTIVE JUROR NO. 21:  It's quite big.

22             THE COURT:  Big?

23             PROSPECTIVE JUROR NO. 21:  Yes.

24             THE COURT:  Okay.  Is there any member of the

25   jury panel who is familiar with the area of
```

1    Northwest 62nd Street and Northwest 15th Avenue?

2              PROSPECTIVE JUROR NO. 6:  No. 6.

3              THE COURT:  You're familiar with that area,

4    ma'am?

5              PROSPECTIVE JUROR NO. 6:  Yes.

6              THE COURT:  How is it that you're familiar

7    with that area?

8              PROSPECTIVE JUROR NO. 6:  I sometimes drive

9    through there.  I know people that live in the area.

10             THE COURT:  Okay.

11             PROSPECTIVE JUROR NO. 11:  11.

12             I was the inspector of that neighborhood for

13   probably two years, back in 2000, 2001.

14             THE COURT:  Okay.

15             PROSPECTIVE JUROR NO. 23:  Juror 23.

16             I'm a supervisor for Transit.  We work that

17   area for the bus stops, anywhere from 12th Avenue all

18   the way to 32nd and 52nd, 54th, 62nd, all that area.

19             THE COURT:  Okay.

20             One more hand.

21             PROSPECTIVE JUROR NO. 21:  No. 21.

22             I grew up in the area.  I was a resident as a

23   child.

24             THE COURT:  Okay.  Is there any member of the

25   jury panel who you yourself or a member of your family

```
1    or a close friend has had either a positive or negative

2    experience with law enforcement of any kind such that

3    it would make it difficult for you to listen to the

4    evidence in this case and be fair to both the

5    Government and the Defendants?

6             We have one hand.

7             PROSPECTIVE JUROR NO. 12:  No. 12.

8             I was married to a police officer.

9             THE COURT:  Okay.  Would the fact that you

10   were -- are you still married to the police officer?

11            PROSPECTIVE JUROR NO. 12:  No.  We're in the

12   process of getting divorced.

13            THE COURT:  Okay.  Would that affect your

14   ability to sit and listen to the evidence in this case

15   and be fair to both the Government and the Defendants?

16            PROSPECTIVE JUROR NO. 12:  Yes.

17            THE COURT:  It would affect your ability?

18            PROSPECTIVE JUROR NO. 12:  No.  Sorry.

19            THE COURT:  Would you be either more likely or

20   less likely to believe a law enforcement officer

21   because you were married to a police officer and in the

22   process of divorcing a police officer?

23            PROSPECTIVE JUROR NO. 12:  No.  I would hear

24   both sides of the story.

25            THE COURT:  Okay.  You understand that the
```

1   Government has the burden of proving every Defendant

2   guilty beyond a reasonable doubt?

3          PROSPECTIVE JUROR NO. 12:  Yes, I do.

4          THE COURT:  And do you understand that a

5   defendant need not present any evidence nor testify?

6          PROSPECTIVE JUROR NO. 12:  I understand.

7          THE COURT:  Okay.

8          PROSPECTIVE JUROR NO. 11:  No. 11.

9          THE COURT:  Yes.

10          PROSPECTIVE JUROR NO. 11:  I was married to a

11   police officer.  I'm now divorced.  My son's a police

12   officer.  Most of my family is in law enforcement.

13          THE COURT:  Would that affect your ability to

14   sit and listen to the evidence and be fair to both the

15   Government and the Defendants?

16          PROSPECTIVE JUROR NO. 11:  It shouldn't affect

17   my ability, other than I'm quasi-judicial myself with

18   code enforcement.

19          THE COURT:  You said it shouldn't.  Would it?

20          PROSPECTIVE JUROR NO. 11:  I'm willing to

21   listen.

22          THE COURT:  Would you be able to sit and

23   listen to the testimony of a police officer, for

24   instance, and judge their credibility based upon your

25   observations of that person on the stand and your

```
1   evaluation of their testimony in light of the other
2   evidence in the case?
3           PROSPECTIVE JUROR NO. 11:  Yes.
4           THE COURT:  Or would you be more likely or
5   less likely to believe that person because they're a
6   police officer?
7           PROSPECTIVE JUROR NO. 11:  I might be more
8   likely to believe the police officer.
9           THE COURT:  Okay.  If I instructed you -- if
10  you're chosen as a member of the jury in this case and
11  the Court instructs you that you are to fairly and
12  impartially evaluate the testimony of every witness,
13  would you be able to put aside whatever bias you may
14  have regarding police officers and sit and listen to
15  the evidence in this case and make a determination
16  based upon the evidence presented at trial?
17          PROSPECTIVE JUROR NO. 11:  Yes.
18          THE COURT:  Are there any other hands?
19          PROSPECTIVE JUROR NO. 3:  No. 3.
20          THE COURT:  Yes.
21          PROSPECTIVE JUROR NO. 3:  My brother is a
22  police officer and now he's working for Homeland
23  Security.
24          THE COURT:  Okay.  And what is he doing for
25  Homeland Security?
```

```
 1              PROSPECTIVE JUROR NO. 3:  Investigation,

 2     terrorism.

 3              THE COURT:  And, Juror No. 11, your ex-wife is

 4     still with the Police Department?

 5              PROSPECTIVE JUROR NO. 11:  Yes.

 6              THE COURT:  What police department?

 7              PROSPECTIVE JUROR NO. 11:  City of Miami.

 8              THE COURT:  Do you know what her assignment

 9     is?

10              PROSPECTIVE JUROR NO. 11:  No.  We don't talk.

11              THE COURT:  Juror No. 12, same question to

12     you.

13              Your soon-to-be-ex-husband:  What police

14     department is he with?

15              PROSPECTIVE JUROR NO. 12:  City of Miami,

16     internal affairs.

17              THE COURT:  Thank you.

18              In this case, you may hear testimony that the

19     Government used cooperating individuals, CIs or

20     informants, to work in an undercover capacity who were

21     paid and/or received other benefits.

22              Is there any member of the jury panel who has

23     such strong feelings one way or the other about the use

24     of such cooperating individuals such that you would not

25     be able to sit and listen to this evidence and be fair
```

1    to both the Government and the Defendants?

2            Juror No. 23.

3            PROSPECTIVE JUROR NO. 23:  In a situation

4    where -- my belief, in a situation where somebody's

5    being paid for information, how could you believe that

6    person?  That's my way of believing on things.

7            THE COURT:  I will instruct the jury that you

8    are to listen to that testimony and evaluate it closely

9    and with caution and great care.

10           Would you be able to follow that instruction?

11           PROSPECTIVE JUROR NO. 23:  If the person is

12   being paid or getting something for their time -- time

13   out of jail, I think that it would be pretty hard for

14   anybody, really, to see if that's fair.

15           THE COURT:  So would you be able to fairly

16   evaluate that person's testimony, sir?

17           PROSPECTIVE JUROR NO. 23:  No, ma'am.

18           THE COURT:  Okay.  The evidence in this case

19   may also include the recordings of conversations that

20   were recorded without the knowledge of some of the

21   participants through the lawful use of electronic

22   devices, commonly known as bugs or wiretaps.

23           Is there any member of the jury panel who has

24   such strong feelings one way or the other regarding the

25   use of bugs or wiretaps such that you would not be able

```
 1    to sit and listen to this evidence and be fair to both

 2    the Government and the Defendants?

 3              PROSPECTIVE JUROR NO. 1:  No. 1.

 4              I lived through Watergate.  I had cousins

 5    involved in it.  And I cannot be fair to this.  I can't

 6    stand it.

 7              THE COURT:  Okay.

 8              PROSPECTIVE JUROR NO. 1:  There's no black and

 9    white with me on this.

10              THE COURT:  In this case, you may hear

11    evidence of the recording of conversations that were

12    recorded without the knowledge of all of the

13    participants through the use of a body wire by secretly

14    taping telephone conversations or by secretly recorded

15    videotapes.

16              Is there any member of the jury panel who has

17    such strong feelings one way or the other that you

18    would not be able to sit and listen to this evidence

19    and be fair to both the Government and the Defendants?

20              In this case, you may hear evidence that was

21    obtained from photographic and physical surveillance as

22    well as evidence seized pursuant to lawful searches of

23    various places, including the homes of some of the

24    Defendants.

25              Is there any member of the jury panel who has
```

```
1   such strong feelings one way or the other that you

2   would not be able to sit and listen to this evidence

3   and be fair to both the Government and the Defendants?

4           PROSPECTIVE JUROR NO. 10:  Juror No. 10.

5           Good morning.

6           I had that experience before, and I don't

7   think I would be fair.

8           THE COURT:  Okay.  When you said you had that

9   experience before, what do you mean, ma'am?

10          PROSPECTIVE JUROR NO. 10:  I lived through it.

11  It happened in my house with my boyfriend.  So....

12          THE COURT:  So your boyfriend -- there was a

13  search warrant that was executed on the house that you

14  were living in with your boyfriend?

15          PROSPECTIVE JUROR NO. 10:  Yes.

16          THE COURT:  Okay.

17          THE COURT SECURITY OFFICER:  One more, your

18  Honor.

19          PROSPECTIVE JUROR NO. 16:  No. 16.

20          My English is basically.  It's very limited.

21  So I don't know --

22          THE COURT:  Have you been able to understand

23  everything that I've said so far?

24          PROSPECTIVE JUROR NO. 16:  Yes.

25          THE COURT:  Thank you.
```

1              Is there any member of the jury panel who

2    would not be able to listen to the testimony of a law

3    enforcement officer and be fair to both the Government

4    and the Defendants or, put in other words, be either

5    more likely or less likely to believe the testimony of

6    a law enforcement officer solely because of their

7    position?

8              Do you all understand that any person charged

9    with a crime is presumed innocent?

10             Do you all understand that the indictment in a

11   criminal case is the accusatory paper which states the

12   charge or charges to be determined at the trial; it is

13   not evidence against a defendant or anyone else?  Does

14   everyone understand that?

15             Do you all understand that the Government has

16   the burden of proving a defendant guilty beyond a

17   reasonable doubt?  Does everyone understand that?

18             Is there any member of the jury panel who

19   would hold the Government to a higher or lower burden

20   of proof, a burden of proof other than beyond a

21   reasonable doubt, either higher than that or lower than

22   that?

23             Do you all understand that the case of each

24   Defendant and the evidence pertaining to each Defendant

25   should be considered separately and individually by the

```
 1   jury?

 2            If you are chosen as a juror in this case, if

 3   the Government proves its case against a Defendant

 4   beyond a reasonable doubt, would you be able to return

 5   a verdict of guilty?

 6            And, likewise, if the Government fails to

 7   prove its case against a Defendant beyond a reasonable

 8   doubt, would you be able to return a verdict of not

 9   guilty?

10            Is there any member of the jury panel who

11   feels that, if the Government goes to the trouble of

12   bringing someone to trial, then that person is probably

13   guilty?

14            Is there any member of the jury panel who

15   feels that a defendant in a criminal case should

16   testify or produce some evidence to prove that he or

17   she is not guilty?

18            Is there anyone who feels that way?

19            Is there any member of the jury panel who

20   feels that the law does too much to protect the rights

21   of the accused and not enough to protect the rights of

22   crime victims and their families such that it would it

23   affect your ability to be a fair and impartial juror in

24   this case?

25            PROSPECTIVE JUROR NO. 14:  No. 14.
```

1      I don't think it would cause me to be

2  impartial.  I am married to -- my wife used to be an

3  attorney for the National Science Foundation.  And I do

4  remember the frustrations of burden of proof.

5      And so -- but I don't think it would cause

6  impartial, though.  But I do know what kind of goes

7  into building these kind of things.

8      THE COURT:  Okay.

9      PROSPECTIVE JUROR NO. 3:  No. 3.

10      We're -- we're pending right now on a trial

11  situation where somebody was trying to break into our

12  house.  My daughter was in there and, at the same time,

13  the gentleman that was trying to do this threatened my

14  daughter's life.  We're still pending on that.

15      THE COURT:  Okay.

16      PROSPECTIVE JUROR NO. 3:  And so I do have

17  that hesitation there.

18      THE COURT:  So the fact that somebody broke

19  into your house, that you're a victim of a crime and

20  that this case is pending:  Would that affect your

21  ability to sit and listen to the evidence in this case

22  and make a determination on whether the Defendants are

23  guilty or not guilty based solely on the evidence

24  presented at trial?

25      PROSPECTIVE JUROR NO. 3:  No.  I can be fair.

1      PROSPECTIVE JUROR NO. 13:  No. 13.

2          I think sometimes it seems that the rights of

3  the person accused -- they bend over backwards to take

4  care of that as opposed to the victim.

5          But I think I can listen to both sides and

6  make a judgment on that.

7          THE COURT:  Okay.  You understand that a

8  defendant doesn't have to present any evidence at all?

9          PROSPECTIVE JUROR NO. 13:  I understand that.

10         THE COURT:  That the Government has the burden

11 of proving a defendant guilty beyond a reasonable

12 doubt?

13         PROSPECTIVE JUROR NO. 13:  I understand that.

14         THE COURT:  Okay.  So, really, there's only

15 one side that is presented at trial for sure, and that

16 is the Government presenting its case.

17         And, in fact, the jury is instructed that, if

18 a defendant elects not to testify or present any

19 evidence, that the jury cannot consider that in any way

20 in its deliberations.

21         Do you understand that?

22         PROSPECTIVE JUROR NO. 13:  I understand that.

23         THE COURT:  Would you be able to follow that

24 instruction?

25         PROSPECTIVE JUROR NO. 13:  Yes.

1          THE COURT:  So in regard to the rights of the

2   accused and the rights of victims, do you understand

3   that, under our Constitution, that anyone charged with

4   a crime has various rights?  Do you understand that?

5          PROSPECTIVE JUROR NO. 13:  Yes, I do.

6          THE COURT:  And would you be able to follow my

7   instructions regarding those rights?

8          PROSPECTIVE JUROR NO. 13:  Yes.

9          THE COURT:  And would your opinion in regard

10  to the rights of victims versus the rights of the

11  accused -- would you be able to set aside that opinion

12  and sit and listen to the evidence in this case and

13  make a determination solely on the evidence presented

14  at trial and in the context of the instructions that

15  the Court will give you?

16         PROSPECTIVE JUROR NO. 13:  Yes.  I can do

17  that.

18         THE COURT:  Okay.  Is there any member of the

19  jury panel who feels that individuals are treated

20  differently by the criminal justice system based on

21  their race, creed or national origin?

22         PROSPECTIVE JUROR NO. 23:  (Indicates.)

23         THE COURT:  Juror No. 23, your to answer that

24  is "yes," sir?

25         PROSPECTIVE JUROR NO. 23:  Yes, ma'am.  By

1    living on 17th Avenue and 23rd Street all my life --

2              THE COURT:  Okay, sir.  Thank you.

3              Is there any member of the jury panel who you

4    yourself, your spouse or family member has ever been

5    audited or had a dispute with any agency or department

6    of the US Government?

7              PROSPECTIVE JUROR NO. 3:  No. 3.

8              I've been audited twice by the IRS.

9              THE COURT:  Would the fact that you've been

10   audited by the IRS -- would that affect your ability to

11   sit and listen to the evidence in this case and be fair

12   to both the Government and the Defendants?

13             PROSPECTIVE JUROR NO. 3:  I don't think so.  I

14   could be fair.

15             THE COURT:  Okay.  There's a hand in the back.

16   No. 27?

17             PROSPECTIVE JUROR NO. 27:  Same thing:  IRS.

18             THE COURT:  Would that affect your ability to

19   sit and listen to the evidence in this case and be fair

20   to both the Government and the Defendants?

21             PROSPECTIVE JUROR NO. 27:  No.

22             THE COURT:  Are you sure?

23             PROSPECTIVE JUROR NO. 27:  Yeah.  Pretty sure.

24             THE COURT:  Pretty sure?

25             PROSPECTIVE JUROR NO. 27:  Yeah.

1        THE COURT:  Let me ask it this way:  Are you

2   going to -- what happened with the IRS audit?

3        PROSPECTIVE JUROR NO. 27:  No.  We settled.

4        THE COURT:  You settled?

5        PROSPECTIVE JUROR NO. 27:  Yeah.

6        THE COURT:  And do you feel that you were

7   treated fairly by the IRS?

8        PROSPECTIVE JUROR NO. 27:  Yeah.  Pretty much.

9        THE COURT:  Are you going to hold what

10  happened with you and the settlement that you made

11  against the lawyers here who represent the United

12  States Government?

13       PROSPECTIVE JUROR NO. 27:  No.

14       THE COURT:  Are you going to hold the law

15  enforcement officers who may work for the Federal

16  Government -- any grudge against them because of what

17  happened with you with the IRS?

18       PROSPECTIVE JUROR NO. 27:  No.

19       THE COURT:  Would you be able to fairly and

20  impartially judge their testimony and the evidence

21  presented by the Government?

22       PROSPECTIVE JUROR NO. 27:  Yes.

23       THE COURT:  Okay.  Thank you, sir.

24       One more hand.

25       PROSPECTIVE JUROR NO. 13:  I was audited by

1    the IRS.

2         THE COURT:  Okay.  And would that affect your

3    ability, ma'am -- you are Juror No. --

4         PROSPECTIVE JUROR NO. 13:  13.

5         THE COURT:  Would that affect your ability to

6    sit and listen to the evidence and be fair to both the

7    Government and the Defendants?

8         PROSPECTIVE JUROR NO. 13:  No.  I won.

9         THE COURT:  Okay.  This is a "yes" or "no"

10   question.

11        Is there any member of the jury panel who

12   thinks the Government has gone overboard in its efforts

13   to fight terrorism?

14        Is there any member of the jury panel who has

15   any experience or formal training in the area of

16   martial arts?

17        PROSPECTIVE JUROR NO. 27:  Yes.

18        THE COURT:  What training and in what field?

19        PROSPECTIVE JUROR NO. 27:  27.

20        Martial arts.

21        THE COURT:  What training do you have in

22   martial arts?

23        PROSPECTIVE JUROR NO. 27:  It's a form -- it's

24   a Korean form called Kuk Sool Won.

25        THE COURT:  Come again?

```
 1              PROSPECTIVE JUROR NO. 27:  Kuk Sool Won.

 2              THE COURT:  Is that what it's called?  Is that

 3     the martial arts?

 4              PROSPECTIVE JUROR NO. 27:  That's the martial

 5     arts.

 6              THE COURT:  Thank you.

 7              PROSPECTIVE JUROR NO. 24:  No. 24.  Good

 8     morning.

 9              I received training in Taekwondo for about ten

10     years.

11              THE COURT:  Thank you.

12              We have a hand over here, Gennaro.

13              PROSPECTIVE JUROR NO. 1:  My -- I'm Juror

14     No. 1.

15              My husband, five of my daughters, three of my

16     grandsons and myself are black belts at Taekwondo.

17              THE COURT:  Okay.  Is there any member of the

18     jury panel who you yourself or someone in your home

19     owns a firearm?  And, if so, how many and what kind?

20              PROSPECTIVE JUROR NO. 1:  My husband owns

21     hunting rifles.

22              THE COURT:  Do you know how many?

23              PROSPECTIVE JUROR NO. 1:  Four.

24              PROSPECTIVE JUROR NO. 3:  I have -- I'm Juror

25     No. 3.
```

```
 1              THE COURT:  Yes.

 2              PROSPECTIVE JUROR NO. 3:  I'm sorry.

 3         I have seven handguns and four rifles.

 4              THE COURT:  Okay.

 5              PROSPECTIVE JUROR NO. 12:  No. 12.

 6         I have one Beretta, and I have no idea what

 7  kind my dad has.  There's two at home.

 8              PROSPECTIVE JUROR NO. 13:  13.

 9         I have a gun.  I don't know what kind it is.

10  It has bullets.  And I own a US Marine Corps survivor

11  knife.  I travel by myself frequently.

12              THE COURT:  Okay.

13              PROSPECTIVE JUROR NO. 11:  No. 11.

14         I have a revolver at home.

15              PROSPECTIVE JUROR NO. 7:  No. 7.

16         My husband owns four hunting rifles.

17              THE COURT:  Thank you.

18              PROSPECTIVE JUROR NO. 23:  No. 23.

19         I got a .45 and a .12-gauge.

20              PROSPECTIVE JUROR NO. 24:  Personally, I don't

21  any.  But the company actually -- we have, like,

22  several of them, .9 millimeters.

23              THE COURT:  You're Juror No. 24?

24              PROSPECTIVE JUROR NO. 24:  24.

25              THE COURT:  Okay.  Other than the two persons
```

1    who already told me they know each other on the jury

2    panel, is there any other member of the jury panel who

3    knows any other member of the jury panel?

4         In this case, you may hear testimony from

5    witnesses who are of a different religion from your

6    own.

7         Is there any member of the jury panel who has

8    strong feelings one way or the other such that you

9    would not be able to sit and listen to this evidence

10   and be fair to both the Government and the Defendants?

11        In this case, you may also hear evidence from

12   certain witnesses who are from the Middle East.

13        Is there any member of the jury panel who has

14   strong feelings one way or the other such that you

15   would not be able to sit and listen to this evidence

16   and be fair to both the Government and the Defendants?

17        This case may receive media attention.  It is

18   very important that the case be decided solely on the

19   evidence presented in the courtroom and not based on

20   anything that may be said outside the courtroom.

21        Accordingly, you will be instructed, if you're

22   chosen as a juror, that you must avoid reading about

23   the case in newspapers or listening to any radio or

24   television reports or viewing anything about the case

25   on the Internet.

```
1              Will you all be able to follow my instructions

2    regarding media coverage?

3              Is there anyone who would not be able to

4    follow my instructions regarding media coverage?

5              Juror No. 24.  I saw you sort of --

6              PROSPECTIVE JUROR NO. 24:  Kind of hard.

7              THE COURT:  You can't escape me here.  I saw

8    you shaking your head sort of back and forth.

9              PROSPECTIVE JUROR NO. 24:  24.

10             It would be kind of hard, but I think it would

11   be possible.

12             THE COURT:  You would be able to do that?

13             PROSPECTIVE JUROR NO. 24:  I believe so.  Yes.

14             THE COURT:  Okay, sir.

15             If you are chosen to sit on this case, will

16   you all be able to render a verdict solely on the

17   evidence presented at trial and in the context of the

18   law as I will give it to you in my instructions,

19   disregarding any other ideas, notions or beliefs about

20   the law that you may have encountered in reaching your

21   verdict?  Will you all be able to do that?

22             I neglected to have the parties introduce

23   themselves.  So we're going to go through that process

24   now.

25             Would the lawyers introduce themselves,
```

```
 1   please, and the persons associated with them at counsel
 2   table, please.
 3           MR. GREGORIE:  Good morning, ladies and
 4   gentlemen.
 5           My name is Richard Gregorie.  I'm an assistant
 6   United States attorney.
 7           MS. ARANGO:  Good morning.
 8           My name is Jackie Arango.  I'm also an
 9   assistant United States attorney.
10           AGENT VELAZQUEZ:  Good morning, ladies and
11   gentlemen.
12           My name is Anthony Velazquez.  I'm a special
13   agent with the FBI.
14           AGENT STEWART:  Good morning, ladies and
15   gentlemen.
16           My name is John Stewart.  I'm a special agent
17   with the FBI.
18           MS. JHONES:  Good morning, ladies and
19   gentlemen.
20           My name is Ana Maria Jhones.  I represent
21   Narseal Batiste, who's sitting to my left.
22           MR. LEVIN:  May it please the Court.
23           Ladies and gentlemen, good morning.
24           My name is Albert Levin.  I'm an attorney in
25   Miami, and I represent Patrick Abraham.
```

```
 1            MR. CASUSO:  Good morning, ladies and
 2    gentlemen.
 3            My name is Louie Casuso.  I'm an attorney in
 4    private practice in Miami, and I represent Burson
 5    Augustin.
 6            MR. CLARK:  Good morning, ladies and
 7    gentlemen.
 8            My name is Nathan Clark, and I represent
 9    Rotschild Augustine.
10            MR. HOULIHAN:  Good morning.
11            I'm Richard Houlihan.  I represent Naudimar
12    Herrera.
13            MR. VEREEN:  Ladies and gentlemen, good
14    morning.
15            My name is Roderick Vereen.  I have the
16    pleasure of representing Stanley Phanor.
17            Thank you.
18            THE COURT:  Is there any member of the jury
19    panel who recognizes any of the persons who were
20    introduced to you in the courtroom by the fact that you
21    have had any contact with any of those persons
22    whatsoever, whether it be business or social?
23            I'm going to read a list of potential
24    witnesses to you:
25            Elie Assaad, Will Bolton, Paul Carpentieri,
```

```
 1   Willie Creech, Paul Gaspard, Karam Govens, Elsie
 2   Hamler, Kenneth Joseph, Lisa Lamey, David Lew, Rick
 3   Lunn, Hector Maldonado, Bashir Malouf, Dana Martenelli,
 4   Jason Miller, George Nau, Jonathan O'Neil, Ruby
 5   Raphael, Lee Rathel, Ron Reddy, Ira Rosenberg, Abbas
 6   al-Saidi, Guillermo Salazar, Tim Scott, John Stewart,
 7   Raymond Tanter, Michelle Thompson, Jason Martelli,
 8   Mickey Batiste, Michael Murphy, David Lew, George
 9   Gonzalez, William Cobb, Laura Kriegbaum, Ed Purchase,
10   Philippe Ferrier, Wayne Shields, Daniel Young, Israel
11   Herrera, Maribel Herrera, Ken Herrera, Mr. Schilling,
12   Stefane Turnier, Rosa Ociejo, Juan Miranda, John
13   Hagedorn, Frank Abetu, Curtis Batiste, Giovanni
14   Batiste, Maxwell Batiste, Michael Batiste, Minerva
15   Vasquez, Debbie Falestra, Siltwan Batiste, Joel
16   Bratton-Bey, Peggy Culotta, Luisa Carty, Betty
17   Davidson, Randy Denike, Nicole Deno, Michael Ducos, Una
18   Edwards, John Glenn, Marion Hanks, Arthur Harris, Craig
19   Harrison, Aris Eugene, Ted Lyons, Lewis Bradley, Steve
20   Higgs, Stephanie Jennings, Theresa LeFleur, Maria
21   Machado, Lisa McDermott, Juan Miranda, Eleanor Parker,
22   Yolanda Pieze, Mary Ramos, Jeannie Rogers, Dale
23   Salkeld, Cedric Sanders, Melvin Septepinra, Jesus
24   Serna, Michael Sharpe, Charles Sheldon, Curtis Silwa,
25   Michelle Smith, Xavier Smith, Charles Stewart, John
```

```
 1   Tronolone, Enoch Vilbrun, Arlene Webster, Shaylan

 2   Thomas, Linda Clark, Steven Johnson, Marcelo Nelcy,

 3   James Wedick, Minerva Vasquez Hernandez, Burla

 4   Augustine, Abdier Santiago, Charles Russo, Burla Russo,

 5   Pierre Augustine, Elwood Augustine, Carl Remey, Master

 6   Ali G. Athea.

 7            Is there any member of the jury panel who

 8   recognizes any of the names that I just read to you by

 9   the fact that you have had any contact with any of

10   those persons whatsoever, whether it be business or

11   social?

12            PROSPECTIVE JUROR NO. 11:  Juror 11.

13            I don't know whether it's the same or not, but

14   there's a Michael Murphy that works at Road & Bridge

15   that I know.

16            THE COURT:  Okay.

17            PROSPECTIVE JUROR NO. 22:  No. 22.

18            I went to high school with Michael Baptiste.

19            THE COURT:  And you're a friend or

20   acquaintance of his?

21            PROSPECTIVE JUROR NO. 22:  Yeah.  I was a good

22   friend of his.

23            THE COURT:  You were a good friend of his?

24            PROSPECTIVE JUROR NO. 22:  Yeah.

25            THE COURT:  We have a request for a break?
```

1           THE COURT SECURITY OFFICER:  Yes.

2           THE COURT:  I need to give Lisa a break

3    anyhow.  She has to rest her fingers every once in a

4    while.  I don't want to wear her out.  We're going to

5    take a break now.

6           If you can remember where you're seated,

7    please do.  If you can't, don't worry, because Gennaro

8    and Pat will be here to help you find your seat.

9           I'm going to give you an instruction now that,

10   if you're chosen as a juror, you're going to hear me

11   give each and every time that you leave the courtroom.

12          It's a very important instruction, and that's

13   why it's given every time you do leave the courtroom,

14   whether it be for just a few minutes, like this recess,

15   over a lunch break, over an evening or over a weekend.

16          Do not discuss this case either amongst

17   yourselves or with anyone else.  Have no contact

18   whatsoever with anyone associated with the trial.  Do

19   not read, listen or see anything touching on this

20   matter in any way.

21          If anyone should try to talk to you about this

22   case, you should immediately instruct them to stop and

23   report it to my staff.

24          If you should happen to see any of the persons

25   associated with the trial, including the attorneys, and

1    they do not even seem to acknowledge you, they are

2    following my instructions to have no contact whatsoever

3    with the jury, and you are to have no conversation with

4    them whatsoever to avoid even the appearance of

5    impropriety.

6            We're going to take a ten-minute recess.  This

7    is the 12th floor.  I'm Judge Lenard.  If you leave the

8    floor and you can't remember where you're supposed to

9    go, look for somebody that's got a blue blazer and a

10   badge in the pocket, like Gennaro.

11           Show everybody your jacket there, Gennaro.

12   Give us a tour of your jacket and the badge.

13           Tell them you're before Judge Lenard and they

14   will send you back here.  Please be back in the lobby

15   in ten minutes.  Thank you for your patience.

16           (Whereupon, Prospective Jury Panel No. IV

17   exited the courtroom at 11:07 a.m. and the following

18   proceedings were had:)

19           THE COURT:  We're in recess for ten.

20           (Thereupon a recess was taken, after which the

21   following proceedings were had:)

22           THE COURT:  We're back on United States of

23   America versus Narseal Batiste, et al., Case

24   No. 06-20373.

25           Counsel, state your appearances, please, for

1    the record.

2         MR. GREGORIE:  Richard Gregorie and Jacqueline

3    Arango on behalf of the United States, your Honor.

4         Just before we bring in the jury, could I make

5    a very quick request?

6         THE COURT:  Yes.

7         MR. GREGORIE:  Your Honor, there's at least

8    one juror here, No. 23, who clearly is going to -- he

9    does not want to be here, Judge.  His answers are, I'm

10   afraid, going to taint this panel.

11        I was wondering if the Court, before we get to

12   that sheet, can -- if by agreement of counsel we can

13   dismiss him for cause, because his answers clearly are

14   full of cause, Judge.

15        THE COURT:  You noticed I interrupted him.

16        MR. GREGORIE:  Yes, I did, Judge.

17        THE COURT:  I need to hear their appearances,

18   first.

19        MR. GREGORIE:  Sure.  I'm sorry.

20        MS. JHONES:  Ana Jhones on behalf of Narseal

21   Batiste, who is present.

22        MR. LEVIN:  Albert Levin with Patrick Abraham.

23        MR. CASUSO:  Lou Casuso on behalf of Burson

24   Augustin, who is here.

25        MR. CLARK:  Nathan Clark for Rotschild

1    Augustine, present.

2            MR. HOULIHAN:  Richard Houlihan with Naudimar

3    Herrera.

4            MR. VEREEN:  Roderick Vereen with Stanley

5    Phanor.

6            THE COURT:  All Defendants are present.

7            You heard Mr. Gregorie's request in regard to

8    Juror 23.

9            Are you moving for cause at this time?

10           MR. GREGORIE:  Yes, your Honor.

11           MS. JHONES:  Your Honor, I don't have an

12   objection to the cause.  My only concern is the same

13   concern I had during the first or second trial,

14   whichever one it happened.

15           To dismiss him at this point, I'm afraid of

16   the chilling effect that will have on getting answers

17   from the other people.

18           And I understand the Court cutting him off

19   because -- but perhaps if -- that's my concern.  I

20   don't want all of a sudden, because one juror is

21   removed and it's obvious -- it's going to be obvious as

22   to why he was removed, that that's somehow going to

23   chill the other jurors from giving us candid responses.

24           Again, we had this problem last time.  I don't

25   know if the Court -- if the solution to that is, you

1    know, to encourage the jurors to come side-bar if they

2    want to say something.

3         But that's my only concern.  I have no --

4    clearly, this gentleman is going to be excused for

5    cause.  But the timing of it is what concern me.  I'd

6    rather have him excused when everybody else is going to

7    be excused for cause.

8         THE COURT:  We've been excusing people for

9    cause throughout the process for the last three panels.

10         MS. JHONES:  But only after the initial set

11   was dismissed for cause or hardship.

12         THE COURT:  All right.  I'm going to excuse

13   him for cause at this time.  There's certainly a basis

14   for cause.  He very clearly -- this is one of those

15   jurors who very clearly wants to make his views known.

16         And he answered Question No. 3 regarding paid

17   informants in that fashion and Question No. 17, which

18   was the question that I cut him off, because --

19   Question 17 was individuals treated differently by the

20   criminal justice system because of race, creed or

21   national origin.  And he also wanted to expound on

22   that.

23         I share the concern that he may pollute the

24   panel based on his answers.

25         So -- and I don't feel comfortable

```
 1    particularly cutting people off; but I was very

 2    concerned about what he was going to say.

 3            So given the loose cannon status of Juror

 4    No. 23 and the fact that there's already a basis for

 5    cause based upon his answers to No. 3 and 17, the first

 6    set of questions, I'm going to excuse him.

 7            What I'm going to have Pat do is have

 8    everybody come in and quietly pull him aside and excuse

 9    him.  So I don't think it'll be -- it won't be very

10    noticeable.

11            MR. LEVIN:  Your Honor, will you also invite

12    the panel, if they do not feel comfortable answering

13    questions in open court, to come side-bar?

14            THE COURT:  You know, I'm pretty good at

15    reading that.  And I don't want to -- if somebody

16    hesitates on a sensitive question, I will always ask

17    them if they want to come up.

18            So I would rather not make an overt

19    instruction as to that, because I think it will

20    unnecessarily make the proceedings longer than they

21    need be.

22            But if somebody is answering the question

23    about -- any of the questions, either about illness,

24    about prior convictions or prior investigations or

25    family members, I'm fairly astute in picking up if
```

 1   there's a hesitation.  And I will always suggest it to

 2   people.

 3           But I do not want to make an open announcement

 4   that, "You can come side-bar for any question that you

 5   want to come side-bar on."  I'm just going to make that

 6   assessment as we go along.

 7           MR. LEVIN:  Yes, ma'am.

 8           THE COURT:  Let's bring them in.

 9           And, Patricia, if you would just quietly, if

10   you can, maybe -- do you know who he is?

11           THE COURTROOM DEPUTY:  No.

12           THE COURT:  Maybe Chuck can bring them in and

13   you can just say, "Juror No. 23, can I speak to you for

14   a moment."

15           THE COURTROOM DEPUTY:  Sure.

16           (Whereupon, Prospective Jury Panel No. IV

17   entered the courtroom at 11:37 a.m. and the following

18   proceedings were had:)

19           THE COURT:  You may be seated.

20           Okay, ladies and gentlemen.  We're going to

21   turn now to the questionnaires that you were given when

22   you first came in the courtroom.

23           Everyone has a copy of the questionnaires.  So

24   you do not need to read the question to us.  If you

25   would, first, start out with saying your juror number

```
 1    and then just give us the number of the question and

 2    your answer.

 3            So we're going to start with Juror No. 1.

 4            PROSPECTIVE JUROR NO. 1:  Thank you, your

 5    Honor.

 6            Do I go through all the questions?

 7            THE COURT:  All the questions, starting with

 8    No. 1.

 9            PROSPECTIVE JUROR NO. 1:  No. 1, 58.

10            No. 2, Spain.

11            No. 3, Cuba.

12            No. 4, office manager.

13            THE COURT:  What kind of office is it?

14            PROSPECTIVE JUROR NO. 1:  Endocrinologist.

15            No. 5, Kendall area.

16            No. 6 --

17            THE COURT:  How long have you been in Kendall?

18            PROSPECTIVE JUROR NO. 1:  12 years.

19            THE COURT:  No. 6?

20            PROSPECTIVE JUROR NO. 1:  Own.

21            No. 7, no.

22            No. 8, married.

23            No. 9, no.

24            No. 10, I have daughters ranging from 40 years

25    old to 32.
```

```
1              THE COURT:  Are they working?

2              PROSPECTIVE JUROR NO. 1:  All of them.

3              THE COURT:  What type of work do they do?

4              PROSPECTIVE JUROR NO. 1:  Three of them are

5    into fashion.  They work for Televisa.  One is a

6    teacher at Braddock.  And the other -- they own their

7    own business.

8              THE COURT:  What kind of business is this?

9              PROSPECTIVE JUROR NO. 1:  A clothing store.

10             THE COURT:  Your husband:  When type of work

11   does he do?

12             PROSPECTIVE JUROR NO. 1:  He's retired.

13             THE COURT:  Before he retired, what type of

14   work did --

15             PROSPECTIVE JUROR NO. 1:  He owned his lumber

16   business on Bird Road and 72nd.

17             THE COURT:  Okay.

18             PROSPECTIVE JUROR NO. 1:  11, yes.  I have one

19   daughter that lives in Italy.

20             No. 12, I speak Spanish fluently and French a

21   little bit.

22             No. 13, take care of my grandchildren.

23             No. 14, I have a bachelor's.

24             No. 15 --

25             THE COURT:  What was your major area of study?
```

```
 1              PROSPECTIVE JUROR NO. 1:  History.
 2         No. 15, no.
 3         No. 16, all of the above.
 4         No. 17, yes.  I have cousins that are lawyers.
 5         THE COURT:  Are they here in Miami?
 6         PROSPECTIVE JUROR NO. 1:  Yes.
 7         THE COURT:  What kind of law do they practice?
 8         PROSPECTIVE JUROR NO. 1:  Good question.
 9         THE COURT:  You don't know?
10         PROSPECTIVE JUROR NO. 1:  I don't have a clue.
11         THE COURT:  Okay.  18?
12         PROSPECTIVE JUROR NO. 1:  No. 18, no.
13         No. 19, no.
14         No. 20, no.
15         No. 21, no.
16         22, no.
17         23, yes.
18         THE COURT:  What crime were you a victim of?
19              PROSPECTIVE JUROR NO. 1:  It was back in the
20    early '80s.  I had gone to the airport to pick up my
21    parents that were coming back from Europe.  I was with
22    my grandmother and two of my daughters.
23              When I got home, they were waiting for us.
24    There were three guys.  And they held a knife.  They
25    pushed my grandmother.  She broke her head on a
```

```
1    sprinkler, 90 years old.  They took off with our

2    suitcases and purses and everything else because we

3    didn't put up a fight.

4          THE COURT:  Was anyone arrested?

5          PROSPECTIVE JUROR NO. 1:  Yes.

6          THE COURT:  What happened with the case?

7          PROSPECTIVE JUROR NO. 1:  The case was

8    settled.  The case was settled.  The three of them were

9    caught and they were arrested.

10          THE COURT:  Were --

11          PROSPECTIVE JUROR NO. 1:  That was 1982.

12          THE COURT:  Are you generally satisfied or

13    dissatisfied with the way you were treated by the

14    criminal justice system?

15          PROSPECTIVE JUROR NO. 1:  Very satisfied.  It

16    was perfect.

17          THE COURT:  24?

18          PROSPECTIVE JUROR NO. 1:  No. 24 -- I don't

19    have 24 -- oh.  On the other page.  Sorry.

20          THE COURT:  That's okay.

21          PROSPECTIVE JUROR NO. 11:  24, no.

22          25, no.

23          26, no.

24          27, no.

25          28, yes.
```

```
1              29, no.

2              30, yes.

3              31, no.

4              THE COURT:  On 30, you served on a jury.  Was

5    it criminal or civil?

6              PROSPECTIVE JUROR NO. 1:  It was civil.

7              THE COURT:  Did the jury reach a verdict?

8              PROSPECTIVE JUROR NO. 1:  Yes.

9              THE COURT:  Were you the foreperson?

10             PROSPECTIVE JUROR NO. 1:  No.

11             33, no.

12             34, no.

13             And 35, yes.

14             THE COURT:  And 31:  Have you ever served on a

15   grand jury?

16             PROSPECTIVE JUROR NO. 1:  No.

17             THE COURT:  And 32?

18             PROSPECTIVE JUROR NO. 1:  No.

19             THE COURT:  Can you go back to 27?

20             PROSPECTIVE JUROR NO. 1:  Certainly.

21             THE COURT:  You originally mentioned something

22   about a relative in Watergate.

23             PROSPECTIVE JUROR NO. 1:  Yes.

24             THE COURT:  So would that change your answer

25   on 27?  You had said, "No."
```

```
 1              PROSPECTIVE JUROR NO. 1:  No.  I just
 2   mentioned it because I thought you would like to know
 3   that.
 4              THE COURT:  So what was your relative's
 5   involvement with Watergate?
 6              PROSPECTIVE JUROR NO. 1:  Wiring.
 7              THE COURT:  Were they in law enforcement?
 8              PROSPECTIVE JUROR NO. 1:  No.
 9              THE COURT:  Why don't you come up, ma'am.
10   Come on up side-bar.
11              (Whereupon, proceedings were had at side-bar
12   outside the presence of the jury which have been sealed
13   per instructions of the Court.)
14              (Whereupon, the following proceedings were had
15   in open court:)
16              THE COURT:  Juror No. 2.
17              PROSPECTIVE JUROR NO. 2:  Juror No. 2.
18              Question No. 1, 58.
19              Question No. 2, Trinidad.
20              Question No. 3, Trinidad and Grenada.
21              Question No. 4, administrative assistant,
22   telecommunications.
23              Question No. 5, Miami-Dade, 17 years.
24              Question No. 6, own.
25              Question No. 7, Trinidad.
```

1              Question No. 8, married.

2              Question No. 9, security officer.

3              Question No. 10, two.  Two kids.  One is in

4    Trinidad, and one is a social worker, MSW, here in the

5    US.

6              Question No. 11, yes.

7              Question No. 12, yes.

8              Question No. 13, church ministry.

9              Question No. 14, business administration.

10             Question No. 15, no.

11             Question No. 16, television and Internet.

12             Question No. 17, yes.

13             Question No. 18, federal and state

14   investigation agency.

15             Question No. 19 --

16             THE COURT:  Is that your husband that you're

17   talking about?

18             PROSPECTIVE JUROR NO. 2:  My husband.

19             THE COURT:  And so is he in a private firm as

20   a security officer or in a private firm?

21             PROSPECTIVE JUROR NO. 2:  He works for

22   Homeland Security down at Krome Detention Center.

23             Question No. 19, no.

24             Question No. 20, security and corrections.

25             Question No. 21, no.

```
 1              22, yes.
 2              Question No. 23, yes.
 3              THE COURT:  What crime were you a victim of?
 4              PROSPECTIVE JUROR NO. 2:  Someone stole my
 5   handbag while I moved away from my desk at my job.
 6              THE COURT:  Was it reported?
 7              PROSPECTIVE JUROR NO. 2:  Yes, it was.
 8              THE COURT:  Anyone arrested?
 9              PROSPECTIVE JUROR NO. 2:  No.
10              THE COURT:  Are you generally satisfied or
11   dissatisfied with the way you were treated?
12              PROSPECTIVE JUROR NO. 2:  I was satisfied.
13              THE COURT:  Okay.  24?
14              PROSPECTIVE JUROR NO. 2:  24, no.
15              25, no.
16              26, no.
17              27, yes.
18              THE COURT:  Who would that be?
19              PROSPECTIVE JUROR NO. 2:  My big brother.
20              THE COURT:  And what crime was he accused of?
21              PROSPECTIVE JUROR NO. 2:  For possession of
22   marijuana.
23              THE COURT:  What happened with that charge?
24              PROSPECTIVE JUROR NO. 2:  He was incarcerated.
25              THE COURT:  When was that?
```

1           PROSPECTIVE JUROR NO. 2:  Oh, maybe about --

2    maybe ten years ago.

3           THE COURT:  Was it a federal case or state

4    case?  Do you know?

5           PROSPECTIVE JUROR NO. 2:  State.

6           THE COURT:  Do you think he was treated fairly

7    by the criminal justice system?

8           PROSPECTIVE JUROR NO. 2:  Yes, ma'am.

9           THE COURT:  Do you think he was well

10   represented by his lawyer?

11          PROSPECTIVE JUROR NO. 2:  Yes, ma'am.

12          THE COURT:  Did you visit him while he was

13   incarcerated?

14          PROSPECTIVE JUROR NO. 2:  No.  I was in

15   Trinidad at the time.  He was here when it was taking

16   place.

17          THE COURT:  Is there anything about your

18   brother's experience that would make it difficult for

19   you to sit and listen to the evidence in this case and

20   be fair to both the Government and the Defendants?

21          PROSPECTIVE JUROR NO. 2:  No, ma'am.

22          THE COURT:  No. 28?

23          PROSPECTIVE JUROR NO. 2:  Yes.

24          No. 29, no.

25          No. 30, no.

```
 1          31, no.

 2          No. 32, yes.

 3          No. 33, no.

 4          No. 34, no.

 5          No. 35, yes.

 6          THE COURT:  And what kind of work at Krome is

 7   your husband actually doing?

 8          PROSPECTIVE JUROR NO. 2:  He is a security

 9   officer who takes care -- works with the inmates there

10   that -- he works sometimes in a legal -- legal area

11   with them where they have to find information with

12   regards to filing their case and stuff like that, the

13   deportees that have to go back to their country and

14   stuff like that.

15          THE COURT:  Thank you.

16          PROSPECTIVE JUROR NO. 2:  Okay.

17          PROSPECTIVE JUROR NO. 3:  No. 3.

18          I'm 55.

19          No. 2, Havana, Cuba.

20          No. 3, Havana, Cuba.

21          No. 4, I'm a -- I work for import-export

22   company.

23          THE COURT:  What type of things do you import

24   and export?

25          PROSPECTIVE JUROR NO. 3:  Anything from
```

```
1    airplane parts to toys.

2             I live in the Kendall area.

3             THE COURT:  How long?

4             PROSPECTIVE JUROR NO. 3:  25 years.

5             THE COURT:  No. 6?

6             PROSPECTIVE JUROR NO. 3:  I own my own house.

7             No. 7, no.

8             No. 8, married.

9             No. 9, my wife is a director of a company.

10            THE COURT:  What kind of company is it?

11            PROSPECTIVE JUROR NO. 3:  It's a steamship

12   company, Oceania.  A cruise line.

13            No. 4, I have a boy who's 25 and a girl who's

14   21.

15            THE COURT:  Are they working?

16            PROSPECTIVE JUROR NO. 3:  Yes.  My son works

17   for Best Buy and is studying to be a paramedic.  My

18   daughter works as a receptionist in the medical field.

19            No. 11, no.

20            No. 12 is I speak Spanish, English.

21            No. 13, I like motorcycling.

22            No. 14, two years of college.

23            No. 15, no.

24            No. 16, television and radio.

25            No. 17, my brother.
```

1            No. 18, he works for -- he's -- he works for

2    Homeland Security right now.  He's also a police

3    officer at Miami-Dade.

4            No. 19, no.

5            No. 20, no.

6            No. 21, I didn't answer that one.  I'm sorry.

7            No.

8            No. 22 is no.

9            No. 3 is yes.

10           THE COURT:  23?

11           PROSPECTIVE JUROR NO. 3:  Yes.  The case with

12   my daughter involving --

13           THE COURT:  Right.  You mentioned that to us

14   already.

15           PROSPECTIVE JUROR NO. 3:  And it's still

16   pending.

17           THE COURT:  24?

18           PROSPECTIVE JUROR NO. 3:  24 is no.

19           No. 25, yes.

20           THE COURT:  And what would that be in regard

21   to?

22           PROSPECTIVE JUROR NO. 3:  It was -- it's been

23   quite a while.  It was -- I testified.  It was a trial

24   in Orlando.  It was a car accident.  There was a suit.

25   We were being sued.  I was the driver of the truck at

1   the time.

2          THE COURT:  Did you actually testify in open

3   court?

4          PROSPECTIVE JUROR NO. 3:  In court and in the

5   attorney's office.  Both.

6          THE COURT:  Okay.  26?

7          PROSPECTIVE JUROR NO. 3:  No. 26 is no.

8   No. 27, yes.

9          THE COURT:  Who would that be?

10          PROSPECTIVE JUROR NO. 3:  My nephew.

11          THE COURT:  What crime was he accused of?

12          PROSPECTIVE JUROR NO. 3:  He was charged in

13   Georgia for kidnapping his wife and kids.  He was

14   sentenced for life.  It was the only crime he'd ever

15   done in his life.

16          THE COURT:  Did you attend any of his

17   hearings?

18          PROSPECTIVE JUROR NO. 3:  No, ma'am.

19          THE COURT:  Have you visited him while he's

20   been incarcerated?

21          PROSPECTIVE JUROR NO. 3:  He was moved.  Right

22   now he's under appeal.  So he's been moved from one

23   prison to another.

24          THE COURT:  Do you think he was treated fairly

25   by the criminal justice system?

1          PROSPECTIVE JUROR NO. 30:  No, ma'am.

2          THE COURT:  Do you think he was well

3    represented by his lawyer?

4          PROSPECTIVE JUROR NO. 3:  No, ma'am.

5          THE COURT:  Would you be able to put aside

6    whatever feelings that you have regarding his situation

7    with the criminal justice system and the representation

8    by his lawyer and sit and listen to the evidence in

9    this case and be fair to both the Government and the

10   Defendants?

11         PROSPECTIVE JUROR NO. 3:  I think I could be.

12         THE COURT:  Think so or know so?

13         PROSPECTIVE JUROR NO. 3:  I'd have to hear the

14   evidence.  I mean, I can't -- I can't give you a "yes"

15   or "no" right now.  I just got to hear what the case is

16   about, what the --

17         THE COURT:  Well, the question is:  Is what

18   happened to your nephew and his contact with the

19   criminal justice system and the representation that he

20   had by his lawyer -- is that going to color your

21   ability to be able to fairly and impartially judge the

22   evidence in this case and make a determination on

23   whether the Defendants are guilty or not guilty in this

24   case solely on the evidence presented at trial and in

25   the context of law as I will instruct you?  Is his

1    experience going to color that ability for you to be

2    able do that?

3              PROSPECTIVE JUROR NO. 3:  I don't think so.

4    No.  It won't.  I know I'm hesitant, but --

5              THE COURT:  I'm sorry?

6              PROSPECTIVE JUROR NO. 3:  I know I'm being

7    hesitant.  I'm sorry.

8              THE COURT:  No.  No.

9              I'm just trying to make a determination of

10   whether you're sure that that won't happen.

11             PROSPECTIVE JUROR NO. 3:  I really can't say

12   that I would be sure.

13             THE COURT:  Okay.

14             PROSPECTIVE JUROR NO. 3:  No. 28 is yes.

15             No. 29 is no.

16             No. 30, it's a four-parter.  The first one is

17   yes.  Second, federal.  Third, it was dismissed.  And

18   No. 4 is no.

19             No. 31 is no.

20             No. 32, I have -- I had a tumor removed from

21   my right ear on November 23rd.  So I'm a little bit

22   hard of hearing in my right ear.

23             No. 33 is no.

24             No. 34 is no.

25             No. 35 is no.

```
 1              THE COURT:  Thank you, sir.
 2         Juror No. 4.
 3              PROSPECTIVE JUROR NO. 4:  Juror No. 4.
 4         1, 51.
 5         2, Santiago de Cuba, Cuba.
 6         3, Santiago de Cuba, Cuba.
 7         4, electronic technician.
 8         5, Hialeah, six years.
 9         6, I own.  Living with my wife.
10         7, in Cuba before coming to the United States.
11              THE COURT:  When did you come to the United
12    States?
13              PROSPECTIVE JUROR NO. 4:  1995.
14         Married.
15         No. 9, my wife don't work.
16         No. 10, I got a son, 25, and a daughter, 24.
17              THE COURT:  Are they working?
18              PROSPECTIVE JUROR NO. 4:  My son is working.
19    Air conditioning company.
20              THE COURT:  Okay.
21              PROSPECTIVE JUROR NO. 4:  My daughter now is
22    unemployed.
23         11, no.
24         12, Spanish.
25         13, I like to watch TV.
```

1          14, I got the degree in physics.

2          15, no.

3          16, television and radio.

4          17, no.

5          18, no, no, no and no.

6          19, no.

7          20, worked as a security guard for three or

8     four years.

9          THE COURT:  You did?

10          PROSPECTIVE JUROR NO. 4:  Yes, I did.

11          THE COURT:  When was that?

12          PROSPECTIVE JUROR NO. 4:  It was, like, ten

13     years ago.  From 1997 -- between '97 to '83, I think.

14          THE COURT:  And were you working for an agency

15     at that time?

16          PROSPECTIVE JUROR NO. 4:  Yeah.  It was an

17     agency -- agency at the airport.

18          THE COURT:  At the airport?

19          PROSPECTIVE JUROR NO. 4:  Yes.

20          10, no.

21          11, no.

22          No.

23          All of them, no.

24          THE COURT:  Wait one minute, sir.

25          What number are you on?

```
 1              PROSPECTIVE JUROR NO. 4:  I'm on 20.

 2              THE COURT:  Everything else is no?

 3              PROSPECTIVE JUROR NO. 4:  Everything else is

 4    no.

 5              THE COURT:  21?

 6              PROSPECTIVE JUROR NO. 4:  21, no.

 7              22, no.

 8              23, no.

 9              24, no.

10              25, no.

11              26, no.

12              27, no.

13              28, yes.

14              29, no.

15              30, yes.

16              31, no.

17              32, no.

18              33, no.

19              34, no.

20              35, yes.

21              THE COURT:  Thank you, sir.

22              Juror No. 5.

23              PROSPECTIVE JUROR NO. 5:  I'm Juror 5.

24              I'm 31.

25              No. 2 is Miami.
```

1          No. 3 is St. Augustine, Florida, and Shiraz,

2    Iran.

3          No. 4, I own a retail store.

4          No. --

5          THE COURT:  What do you sell?

6          PROSPECTIVE JUROR NO. 5:  Gifts and food.

7    It's gourmet and food items.

8          No. 5, I've lived in Bay Harbor Islands for a

9    year.  Prior to that, I lived in Westchester since I

10   was a small child.

11         No. 6, I rent.

12         7, I did live in Iran for about a year.  I had

13   my first birthday there.  So it was like '78 to '79.

14         I'm married.

15         No. 9, my husband owns a business with me.

16         10, I have no children.

17         11, none, as well.

18         12, I have a decent understanding of French.

19         13, nothing in particular.  Just reading and

20   movies.

21         14, I have a BSA in art history.

22         15 is no.

23         16, actually, everything:  TV, radio,

24   Internet, and I subscribe to the *Herald*.

25         17 is no.

```
 1          18, my mother had a clerical position for the
 2   FBI, but it was in the early '70s, before I was born.
 3          19 is no.
 4          20 is no.
 5          21 is no.
 6          22 is no.
 7          About two -- almost three years ago, our store
 8   was robbed.  But it was at night when we were closed.
 9   They didn't catch anybody in the crime.  It was on
10   Miami Beach.  And I was satisfied with the way the --
11   they handled it.
12               THE COURT:  Okay.
13               PROSPECTIVE JUROR NO. 5:  24 is no.
14          25 is no.
15          26 is no.
16          27 is no.
17          28 is no.
18          29 is no.
19          30 is no.
20          31 is no.
21          32 is no.
22          33 is no.
23          34 is no.
24          35 is yes.
25               THE COURT:  Thank you, ma'am.
```

```
 1              PROSPECTIVE JUROR NO. 6:  No. 6.

 2              1 is 43.

 3              2 is Miami.

 4              3 is Florida/Georgia.

 5              Bus operator.

 6              THE COURT:  That's 4?

 7              PROSPECTIVE JUROR NO. 6:  Yes.

 8              5 is Cutler Ridge.

 9              THE COURT:  How long have you --

10              PROSPECTIVE JUROR NO. 6:  Approximately six

11   years.

12              THE COURT:  6?

13              PROSPECTIVE JUROR NO. 6:  6, I rent.

14              THE COURT:  7?

15              PROSPECTIVE JUROR NO. 6:  No.

16              8 is single.

17              No.

18              No children.

19              No children.

20              THE COURT:  12?

21              PROSPECTIVE JUROR NO. 6:  No.  Just English.

22              I sing.

23              THE COURT:  That's 13.

24              14?

25              PROSPECTIVE JUROR NO. 6:  14 is 12th grade.
```

```
 1              No, 15.

 2              16 is -- I watch news, but only for the

 3      weather.  I don't really like the news.

 4              No.

 5              THE COURT:  17 is no.

 6              18?

 7              You're doing okay.

 8              PROSPECTIVE JUROR NO. 6:  I'm nervous.

 9              No.

10              19, no.

11              20, yes.

12              THE COURT:  Which one?

13              PROSPECTIVE JUROR NO. 6:  Corrections.

14              THE COURT:  And who would that be?

15              PROSPECTIVE JUROR NO. 6:  A nephew.

16              THE COURT:  And he's employed by corrections

17      now?

18              PROSPECTIVE JUROR NO. 6:  Yes.

19              THE COURT:  For the County or the State or

20      federal?

21              PROSPECTIVE JUROR NO. 6:  County.

22              THE COURT:  The County?

23              PROSPECTIVE JUROR NO. 6:  Yes.

24              THE COURT:  Here in Miami?

25              PROSPECTIVE JUROR NO. 6:  Yes.
```

```
 1            THE COURT:  21?

 2            PROSPECTIVE JUROR NO. 6:  I don't -- I don't

 3  know about my job.  It's unknown.

 4            THE COURT:  Okay.  22?

 5            PROSPECTIVE JUROR NO. 6:  No.  Not that I know

 6  of.

 7            No.

 8            THE COURT:  23 is no.  Is that right?  23 is

 9  no?

10            PROSPECTIVE JUROR NO. 6:  Yes.

11            THE COURT:  24?

12            PROSPECTIVE JUROR NO. 6:  No.

13            THE COURT:  25?

14            PROSPECTIVE JUROR NO. 6:  Yes.  Deposition.

15            THE COURT:  What was that in regard to?

16            PROSPECTIVE JUROR NO. 6:  One was a lawsuit,

17  and the other was with my job.  Someone was trying to

18  sue my job.

19            THE COURT:  To sue your job?  What do you

20  mean?

21            PROSPECTIVE JUROR NO. 6:  The people I work

22  for.

23            THE COURT:  They had you give a statement?

24            PROSPECTIVE JUROR NO. 6:  They had me come in

25  to ask me some questions on a deposition.
```

1          THE COURT:  And what was that in regard to?

2     Do you want to come side-bar?

3          PROSPECTIVE JUROR NO. 6:  I was driving the

4     bus and a young lady claimed that she injured her knee.

5     So they pulled the tape and all that.  She tried to sue

6     the County.  So they called me in.

7          THE COURT:  So there was an investigation by

8     the school board or this was --

9          PROSPECTIVE JUROR NO. 6:  City.

10          THE COURT:  By the City?

11          PROSPECTIVE JUROR NO. 6:  Metro-Dade County.

12     Yes.

13          THE COURT:  And then -- so you gave a

14     statement or deposition for that?

15          PROSPECTIVE JUROR NO. 6:  Yes.

16          THE COURT:  And that's what you're talking

17     about?

18          PROSPECTIVE JUROR NO. 6:  Yes.

19          THE COURT:  Anything else?

20          PROSPECTIVE JUROR NO. 6:  No.  Just that.

21          THE COURT:  26?

22          PROSPECTIVE JUROR NO. 6:  No.

23          Yes.

24          THE COURT:  27?

25          PROSPECTIVE JUROR NO. 6:  Yes.

```
 1              THE COURT:  And who would that be?

 2              PROSPECTIVE JUROR NO. 6:  My brother.

 3              THE COURT:  And what crime was your brother

 4   accused of?

 5              PROSPECTIVE JUROR NO. 6:  Drug-related.

 6              THE COURT:  When was that?

 7              PROSPECTIVE JUROR NO. 6:  Oh, pick a time.

 8              THE COURT:  You said, "Pick a time"?  He's had

 9   a lot of occurrences in the criminal justice system?

10              PROSPECTIVE JUROR NO. 6:  Yes.

11              THE COURT:  When was the last time that he was

12   convicted of a drug-related crime?

13              PROSPECTIVE JUROR NO. 6:  I know he went in

14   last year sometime.

15              THE COURT:  Have you attended any of his

16   hearings?

17              PROSPECTIVE JUROR NO. 6:  No.

18              THE COURT:  Have you visited with him while

19   he's incarcerated?

20              PROSPECTIVE JUROR NO. 6:  No.

21              THE COURT:  Do you think he was treated fairly

22   by the criminal justice system?

23              PROSPECTIVE JUROR NO. 6:  I don't know.

24              THE COURT:  Do you think he was well

25   represented by his lawyer?
```

1          PROSPECTIVE JUROR NO. 6:  I don't know.

2          THE COURT:  Is there anything about your

3    brother's experience with the criminal justice system

4    that would make it difficult for you to sit and listen

5    to the evidence in this case and be fair to both the

6    Government and the Defendants?

7          PROSPECTIVE JUROR NO. 6:  No.  Because I

8    wasn't there.

9          THE COURT:  Okay.  28?

10         PROSPECTIVE JUROR NO. 6:  No.

11         THE COURT:  29?

12         PROSPECTIVE JUROR NO. 6:  No.

13         THE COURT:  30?

14         PROSPECTIVE JUROR NO. 6:  No.

15         THE COURT:  31?

16         PROSPECTIVE JUROR NO. 6:  No.

17         THE COURT:  32?

18         PROSPECTIVE JUROR NO. 6:  Possible.

19         THE COURT:  Okay.  Can you tell me about that?

20         PROSPECTIVE JUROR NO. 6:  I have a -- an

21   injury.  It's a herniated disk, protruding to the left,

22   punching my left nerves.

23         THE COURT:  Does it make it hard for you to

24   sit?

25         PROSPECTIVE JUROR NO. 6:  For long, long

```
 1   periods of time.
 2           THE COURT:  If you get up and you're able to
 3   stand up or move around a little bit, does that help?
 4           PROSPECTIVE JUROR NO. 6:  Yes.  I can.  I also
 5   do take medications for it.
 6           THE COURT:  Are you able to drive on the
 7   medication?
 8           PROSPECTIVE JUROR NO. 6:  No.  When I have to
 9   drive, I don't take the medication.  I only take it
10   when I sleep.
11           THE COURT:  So you take the medication at
12   night?
13           PROSPECTIVE JUROR NO. 6:  Whenever I sleep.
14   Yes.
15           THE COURT:  So is there any residual effect to
16   the medication during --
17           PROSPECTIVE JUROR NO. 6:  It makes me -- it'll
18   make me sleep.  I say "when I sleep" because I work at
19   night.
20           THE COURT:  I see.
21           You work at night; so, you sleep during the
22   day?
23           PROSPECTIVE JUROR NO. 6:  Correct.
24           THE COURT:  So once you've taken the
25   medication during the day and you're working at night,
```

1  driving the bus -- right? -- is there any problem with

2  the medication?

3          PROSPECTIVE JUROR NO. 6:  No.  Because I take

4  it before it's time for me to report.  I don't take it

5  when I have to report.

6          THE COURT:  Okay.  So would either your injury

7  or the medication you take affect your ability to sit

8  and participate as a juror?

9          PROSPECTIVE JUROR NO. 6:  If I'm chosen as a

10  juror, I know that I cannot take that medicine when

11  it's time for me -- or a certain amount of hours before

12  it's time for me to be here.

13          THE COURT:  And you would be able to do that?

14          PROSPECTIVE JUROR NO. 6:  Yes.

15          THE COURT:  Okay.  35?

16          PROSPECTIVE JUROR NO. 6:  Yes, I do.  I have a

17  computer.

18          THE COURT:  If you're chosen as a juror and

19  you're here during the day, I take it you're not going

20  to work at night.

21          PROSPECTIVE JUROR NO. 6:  Correct.

22          THE COURT:  Thank you.

23          PROSPECTIVE JUROR NO. 7:  No. 7, 48.

24          Cuba.

25          No. 3, Cuba.

```
 1              4, nurse practitioner.

 2              No. 5, North Dade, 46 years.

 3              Own.

 4              No. 7, Cuba, till the age of 6.

 5              8, married.

 6              No. 9, he's a generator technician.

 7              No. 10, 20-year-old, works in an after-school

 8    care, and a 16-year-old.

 9              No. 11, no.

10              No. 12, Spanish.

11              No. 13, outdoor activity, camping and reading.

12              No. 14, master's in nursing.

13              15, no.

14              16, television, radio, Internet.

15              17, yes.  Law enforcement and corrections.

16              THE COURT:  Who was that?

17              PROSPECTIVE JUROR NO. 7:  Nephews.

18              THE COURT:  Where are they?

19              PROSPECTIVE JUROR NO. 7:  My nephew in

20    corrections is in Palm Beach, and the other ones are in

21    law enforcement, one in Miramar and the other one in

22    Medley.

23              THE COURT:  And the nephew who's in Palm Beach

24    in corrections:  Is that for Palm Beach County?

25              PROSPECTIVE JUROR NO. 7:  Yes.
```

1              THE COURT:  No. 18?

2              PROSPECTIVE JUROR NO. 7:  No. 18, federal

3     agency.  My brother works for Customs.

4              19, no.

5              20, just in my nursing courses, social work,

6     psychology.

7              21, no.

8              22, no.

9              23, yes.  A book bag was stolen at work.  I

10    was satisfied with the way I was treated.

11             No. 24, yes.

12             I must have been, like, 20.  I found -- there

13    was somebody trying to steal some jewelry in a place of

14    work.

15             25, I did --

16             THE COURT:  Was that reported?

17             PROSPECTIVE JUROR NO. 7:  Yes, it was.

18             THE COURT:  And was anyone arrested?

19             PROSPECTIVE JUROR NO. 7:  No.

20             THE COURT:  Were you generally satisfied or

21    dissatisfied with the way you were --

22             PROSPECTIVE JUROR NO. 7:  I was satisfied.

23             No. 25, a deposition.  It was in relation to a

24    patient I took care of in the hospital.

25             No. 26, no.

```
 1              No. 27, no.

 2              No. 28, yes.

 3              29, no.

 4              30, no.

 5              31, no.

 6              32, no.

 7              33, no.

 8              34, no.

 9              And 35, yes.

10              THE COURT:  Thank you, ma'am.

11              No. 8.

12              PROSPECTIVE JUROR NO. 8:  No. 8.

13              No. 1, 67.

14              No. 2, Tennessee.

15              No. 3, Tennessee.

16              No. 4, retired teacher.

17              No. 5, Coral Gables.

18              No. 6, own the home with my husband.

19              No. 7, yes.  Lived in Italy for one year.

20              No. 8, married.

21              No. 9, executive.

22              No. --

23              THE COURT:  What kind of executive?

24              PROSPECTIVE JUROR NO. 8:  He owns his own

25    small search firm, performance search, executive
```

```
 1   search.
 2           THE COURT:  "Executive search" meaning for
 3   jobs?
 4           PROSPECTIVE JUROR NO. 8:  Headhunter.
 5           THE COURT:  And what did you teach?
 6           PROSPECTIVE JUROR NO. 8:  English.
 7           No. 10, two children, 37 and 40.  And they are
 8   both in PR.
 9           No. 11, no.
10           No. 12, no.
11           No. 13, I like to read and play with the
12   grandchildren.
13           No. 14, bachelor of arts degree in education.
14           No. 15, no.
15           No. 16, all of the above.
16           17, no.
17           18, no.
18           19, no.
19           20, no.
20           21, no.
21           22, no.
22           23, no.
23           24, no.
24           25, no.
25           26, no.
```

```
 1              27, no.

 2              28, yes.

 3              29, no.

 4              23, no.

 5              THE COURT:  30.

 6              PROSPECTIVE JUROR NO. 8:  30, no.

 7              31, no.

 8              32, no.

 9              33, no.

10              34, no.

11              35, yes.

12              THE COURT:  Thank you, ma'am.

13              Juror No. 9.

14              PROSPECTIVE JUROR NO. 9:  No. 1, 62.

15              No. 2, New York City.

16              No. 3, Cuba.

17              I'm disabled.

18              THE COURT:  Before you were disabled, what

19      type of work did you do?

20              PROSPECTIVE JUROR NO. 9:  I worked for the

21      bank industry.  I had a stroke 14 years ago.

22              THE COURT:  Before that, you work for a bank?

23              PROSPECTIVE JUROR NO. 9:  Yes.

24              THE COURT:  What type of work did you do in

25      the bank?
```

1           PROSPECTIVE JUROR NO. 9:  Customer service.

2           No. 9, I live in Kendall with my husband.

3    30 years.

4           I own my home with my husband.

5           THE COURT:  That's 6.

6           No. 7?

7           PROSPECTIVE JUROR NO. 9:  No. 7, no.

8           No. 8, married.

9           No. 9, he's self-employed.  He's a

10   transportation broker.

11          No. 9, I have three kids:  42.  She's a

12   transportation dispatcher.  33, she's in the motion

13   picture industry.  And my son, 29, is also in the

14   motion picture industry.

15          THE COURT:  No. 11?

16          PROSPECTIVE JUROR NO. 9:  No.

17          No. 12, Spanish.

18          13, I like to read.  I babysit.

19          No. 14, high school.

20          15, no.

21          16, newspaper and television.

22          17, no.

23          18, no.

24          19, no.

25          20, no.

```
 1                21, no.

 2                22, no.

 3                23, no.

 4                24, no.

 5                25, no.

 6                26, no.

 7                27, no.

 8                28, no.

 9                29, no.

10                30, no.

11                31, no.

12                32, no.

13                33, no.

14                34, no.

15                Last one is yes.

16                THE COURT:  Thank you, ma'am.

17                Juror No. 10.

18                PROSPECTIVE JUROR NO. 10:  No. 10.

19                No. 1, 41.

20                No. 2, Havana, Cuba.

21                No. 3, Havana, Cuba.

22                No. 4, administrative secretary.

23                No. 5, North --

24                THE COURT:  What kind of firm is it that

25      you're an administrative secretary for?
```

```
 1          PROSPECTIVE JUROR NO. 10:  I work for

 2   Miami-Dade County.

 3          No. 6 -- No. 5, North Miami.

 4          No. 6, own.

 5          No. 7 --

 6          THE COURT:  How long have you been in

 7   North Miami?

 8          PROSPECTIVE JUROR NO. 10:  Approximately five

 9   years.

10          THE COURT:  No. 7?

11          PROSPECTIVE JUROR NO. 10:  No. 7, yes.  In

12   Cuba until I was 12.

13          No. 8, divorced.

14          No. 9, I had -- a students and a handyman.

15          No. 10, a 16-year-old daughter.

16          No. 11, no.

17          12, Spanish.

18          No. 13, TV.

19          No. 14, high school equivalent.

20          No. 15, no.

21          No. 16, radio and Internet.

22          No. 17, no.

23          No. 18, no.

24          19, no.

25          20, no.
```

```
 1          21, no.

 2          22, no.

 3          23, no.

 4          24, no.

 5          25, no.

 6          26, no.

 7          27, yes.

 8          28 --

 9          THE COURT:  And who would that be, on 27?

10          PROSPECTIVE JUROR NO. 10:  My boyfriend.

11          THE COURT:  And was he accused of a crime?

12          PROSPECTIVE JUROR NO. 10:  Yes.

13          THE COURT:  What crime was he accused of?

14          PROSPECTIVE JUROR NO. 10:  Drug-related.

15          THE COURT:  When was that?

16          PROSPECTIVE JUROR NO. 10:  2004.

17          THE COURT:  And was that a state or federal

18   case?

19          PROSPECTIVE JUROR NO. 10:  State.

20          THE COURT:  And what happened to that charge?

21          PROSPECTIVE JUROR NO. 10:  He was

22   incarcerated.

23          THE COURT:  Okay.  Did you attend any of his

24   hearings?

25          PROSPECTIVE JUROR NO. 10:  Yes.
```

```
 1            THE COURT:  Did you visit him while he was

 2   incarcerated?

 3            PROSPECTIVE JUROR NO. 10:  Yes.

 4            THE COURT:  Do you think he was treated fairly

 5   by the criminal justice system?

 6            PROSPECTIVE JUROR NO. 10:  I don't know.

 7            THE COURT:  Do you think he was well

 8   represented by his lawyer?

 9            PROSPECTIVE JUROR NO. 10:  I don't think so.

10            THE COURT:  Would you be able to put aside

11   whatever feelings you have regarding the representation

12   that he received by his lawyer and sit and listen to

13   the evidence in this case and be fair to both the

14   Government and the Defendants?

15            PROSPECTIVE JUROR NO. 10:  I think so.

16            THE COURT:  Think so or know so?

17            PROSPECTIVE JUROR NO. 10:  I can't say.

18            THE COURT:  And was -- the search of the home

19   was in regard to that --

20            PROSPECTIVE JUROR NO. 10:  Yes, ma'am.

21            THE COURT:  -- that charge also?

22            PROSPECTIVE JUROR NO. 10:  Yes.

23            THE COURT:  And the fact that your home was

24   searched as a result of -- was it a search warrant that

25   they came to your house with and they read you the
```

1  paper and said there was a search warrant to search

2  your home?

3      PROSPECTIVE JUROR NO. 10:  No.  They didn't

4  have a search warrant.  No.

5      THE COURT:  Did they come in when he was

6  arrested?

7      PROSPECTIVE JUROR NO. 10:  Uh-huh.  Yes.

8      THE COURT:  The fact that your home was

9  searched when your boyfriend was arrested:  Would that

10  affect your ability to sit and listen to the evidence

11  in this case and be fair to both the Government and the

12  Defendant?

13      PROSPECTIVE JUROR NO. 10:  Yes.

14      THE COURT:  It would affect your ability?

15      PROSPECTIVE JUROR NO. 10:  Yes.

16      THE COURT:  Okay, ma'am.  Thank you.

17      No. 28?

18      PROSPECTIVE JUROR NO. 10:  No.

19      No. 29, no.

20      No. 30, no.

21      No. 31, no.

22      No. 32, no.

23      33, no.

24      34, no.

25      35, yes.

```
 1              THE COURT:  Thank you, ma'am.

 2              No. 11.

 3              PROSPECTIVE JUROR NO. 11:  No. 1, 51.

 4              No. 2, Miami, Florida.

 5              No. 3, Ohio and Massachusetts.

 6              No. 4, I'm a Public Works inspector/code

 7    enforcement officer.

 8              No. 5, Cutler Ridge.

 9              No. 6, I own my house.

10              No. 7, no.  I've never lived outside.

11              I'm divorced.  No. 8, divorced.

12              No. 9, yes.  She's unemployed.

13              10, I have a son, 28, who's in law enforcement

14    and a daughter who works for Florida Power & Light.

15              THE COURT:  Where is your son a law

16    enforcement officer?

17              PROSPECTIVE JUROR NO. 11:  Miami-Dade.

18              No. 11, no.

19              No. 12 is no.

20              No. 13, I do race recovery.

21              THE COURT:  What is race recovery?

22              PROSPECTIVE JUROR NO. 11:  Nobody knows?

23              THE COURT:  No.  Sorry.

24              PROSPECTIVE JUROR NO. 11:  I'm the guy that

25    the guy in the race car doesn't want to see.
```

 1          THE COURT:  Oh, okay.  So if somebody --

 2          PROSPECTIVE JUROR NO. 11:  When he hits the

 3   wall at 80 miles an hour, I'm the guy that picks the

 4   car up.

 5          THE COURT:  Okay.

 6          PROSPECTIVE JUROR NO. 11:  Like I said, I'm

 7   the guy he doesn't want to see.

 8          THE COURT:  Now we know.

 9          PROSPECTIVE JUROR NO. 11:  No. 14, 12th grade.

10          15, no.

11          16, all of them.

12          17, yes.

13          THE COURT:  Is that your son or someone else?

14          PROSPECTIVE JUROR NO. 11:  I'm sorry.  My son

15   what?

16          THE COURT:  No. 17.

17          PROSPECTIVE JUROR NO. 11:  17:  Any family

18   members....

19          Yes.  Well, including my ex-wife now.

20   Including half my family, actually.

21          THE COURT:  You said that.  Okay.

22          What other agencies of law enforcement are

23   your family members in?

24          PROSPECTIVE JUROR NO. 11:  I have a

25   brother-in-law that's in Immigration.

```
 1              THE COURT:  Is that here in Miami?

 2              PROSPECTIVE JUROR NO. 11:  No.  El Paso,

 3    Texas.

 4              THE COURT:  Who else?

 5              PROSPECTIVE JUROR NO. 11:  My father was.  My

 6    mother was.

 7              THE COURT:  Where were they?

 8              PROSPECTIVE JUROR NO. 11:  Here in Miami-Dade.

 9         My ex-wife's a city.  My son's a county cop.

10    I think that's pretty much it right now that I can

11    think of.

12              THE COURT:  Okay.

13              PROSPECTIVE JUROR NO. 18:  No. 18, no.

14              THE COURT:  Other than what you've already

15    told me.

16              PROSPECTIVE JUROR NO. 11:  No.

17         19, no.

18         20, yes, because they're in law enforcement.

19         21, no.

20         22, yes.  My son.  He got hired.

21         23, no.

22         24, yes.

23              THE COURT:  What crime did you witness?

24              PROSPECTIVE JUROR NO. 11:  I witnessed a

25    shooting, an altercation --
```

1          THE COURT:  I think we need a new battery.

2          PROSPECTIVE JUROR NO. 11:  I didn't mean to

3   wear it out.

4          THE COURT:  No.  No.  No.  It's amazing what

5   little battery time there is on this thing.  And that's

6   what happens.  It just goes in and out, in and out.

7          PROSPECTIVE JUROR NO. 11:  24, I witnessed a

8   shooting in the street and -- between -- a traffic

9   altercation years ago, back in, like, 1980.

10         THE COURT:  Was it reported?

11         PROSPECTIVE JUROR NO. 11:  Yes.

12         THE COURT:  Anyone arrested?

13         PROSPECTIVE JUROR NO. 11:  I believe he was,

14  but I don't know the outcome.

15         THE COURT:  Are you satisfied with the way --

16  satisfied or dissatisfied with the way you were

17  treated?

18         PROSPECTIVE JUROR NO. 11:  Satisfied.

19         25, yes.  Do you want to know about it?

20         THE COURT:  Yes.

21         PROSPECTIVE JUROR NO. 11:  It was a lawsuit

22  between a contractor and -- on an accident that

23  happened on a construction site.  And it was a lawsuit

24  that I had to do a deposition as a County employee for.

25         THE COURT:  Okay.

```
 1              26?

 2              PROSPECTIVE JUROR NO. 11:  26, no.

 3              27, no.

 4              28, no.

 5              29, no.

 6              30, no.

 7              31, no.

 8              32, no.

 9              33, no.

10              34, no.

11              35, yes.

12              THE COURT:  Thank you, sir.

13              No. 12.

14              PROSPECTIVE JUROR NO. 12:  1, 34.

15              2, Cuba.

16              3, Cuba.

17              4, medical claims auditor for University of

18      Miami.

19              5, Cutler Ridge, for 27 years.

20              6, I currently live with my parents and my

21      kids.

22              7, I was in Cuba until 5 and then Costa Rica

23      for two years.

24              8, divorced.

25              9, my mom's a housewife.  My dad is retired.
```

1        THE COURT:  What did your dad do before he

2   retired?

3        PROSPECTIVE JUROR NO. 12:  He opened a

4   business.  He was a contractor.

5        10, I have two boys, 14 and 4.

6        11, no.

7        12, Spanish.

8        13, I watch sports and I shop.

9        14, some college, for health care management.

10        15, no.

11        16, TV.

12        17, I have a number of friends that work for

13   the County.

14        THE COURT:  For Miami-Dade Police?

15        PROSPECTIVE JUROR NO. 12:  Miami-Dade Police

16   Department.

17        THE COURT:  Okay.

18        PROSPECTIVE JUROR NO. 12:  18, no, presently.

19        19, no.

20        20, no.

21        21, no.

22        22, yes.  My brother-in-law is in the process

23   of law enforcement.

24        THE COURT:  What is he applying for?

25        PROSPECTIVE JUROR NO. 12:  Police officer.

1        THE COURT:  Where?

2        PROSPECTIVE JUROR NO. 12:  The City of Miami.

3        THE COURT:  Okay.

4        PROSPECTIVE JUROR NO. 12:  23, no.

5        24, no.

6        25, no.

7        26, no.

8        27, no.

9        28, no.

10       29, no.

11       30, no.

12       31, no.

13       32, no.

14       33, no.

15       34, no.

16       35, yes.

17       THE COURT:  Thank you, ma'am.

18       Juror No. 13.

19       PROSPECTIVE JUROR NO. 13:  13.

20       No. 1, 67.

21       2, North Carolina.

22       3, North Carolina.

23       4, retired nurse.

24       5, Miami-Dade, 41 years.

25       Own.  And no.

```
1          THE COURT:  6 is own.

2          And you're not living with anyone else?

3          PROSPECTIVE JUROR NO. 13:  Right.

4          7, no.

5          8, single.

6          9, no.

7          10, no.

8          11, no.

9          12, no.

10         13, read, movies, travel, fish and camping.

11         14, nursing.

12         15 is no.

13         16 is newspaper, TV.

14         17 is no.

15         18 is no, all of them.

16         19 is no.

17         20 is no, all of them.

18         21 is no.

19         22 is no.

20         23 is no.

21         24 is no.

22         25 is yes.

23         THE COURT:  What was that in regard to?

24         PROSPECTIVE JUROR NO. 13:  It was a deposition

25  regarding a patient that I took care of.
```

```
1              26 is no.

2              27 is no.

3              28 is yes.

4              29 is no.

5              30 is yes.  State, criminal, civil.  Yes and

6    no.

7              THE COURT:  Okay.  You're going too fast for

8    me.

9              You served on a criminal jury in state court?

10             PROSPECTIVE JUROR NO. 13:  Yes.

11             THE COURT:  Did the jury reach a verdict?

12             PROSPECTIVE JUROR NO. 13:  Yes.  I was not the

13   foreperson.

14             THE COURT:  You also served on a civil jury?

15             PROSPECTIVE JUROR NO. 13:  Yes.

16             THE COURT:  And did that jury reach a verdict?

17             PROSPECTIVE JUROR NO. 13:  Yes.

18             THE COURT:  Were you the foreperson for that?

19             PROSPECTIVE JUROR NO. 13:  No.

20             THE COURT:  Was that a state case, also?

21             PROSPECTIVE JUROR NO. 13:  Yes.

22             THE COURT:  Okay.  31?

23             PROSPECTIVE JUROR NO. 13:  No.

24             32, no.

25             33, no.
```

```
1              34, no.

2              35, yes.

3              THE COURT:  Thank you, ma'am.

4              Juror No. 14.

5              PROSPECTIVE JUROR NO. 14:  Juror 14.

6              No. 1, 30.

7              No. 2, Hialeah, Florida.

8              No. 3, Cuba.

9              No. 4, physician.

10             No. 5, Coconut Grove, five years.

11             No. 6, own with a family, wife ane daughter.

12             No. 7, no.

13             No. 8, married.

14             No. 9, my wife currently is on maternity

15      leave, because she's an attorney.

16             THE COURT:  What kind of law does she

17      practice?

18             PROSPECTIVE JUROR NO. 14:  Personal injury and

19      maritime law.

20             No. 10, one daughter, seven weeks old.

21             No. 11, no.

22             No. 12, yes.  Spanish.

23             No. 13, my daughter.  That's the only hobby

24      now.

25             14, doctorate in medicine.
```

```
1              15, no.

2              16, all the above.

3              No. 17, one cousin who's actually a Hialeah

4     police, and one cousin for Drug Enforcement

5     Administration.

6              THE COURT:  The cousin works for DEA?

7              PROSPECTIVE JUROR NO. 14:  Yes.

8              THE COURT:  And is he or she stationed here in

9     Miami?

10             PROSPECTIVE JUROR NO. 14:  No.

11             THE COURT:  Where are they?

12             PROSPECTIVE JUROR NO. 14:  I don't know.

13             THE COURT:  Okay.  No. 18?

14             PROSPECTIVE JUROR NO. 14:  No. 18, yes.  My

15    wife actually worked for the Public Defender's Appeals

16    Office for a while and, also, for the Inspector General

17    in DC and the National Science Foundation as an

18    attorney.

19             19, no.

20             20, yes to law for my wife, and yes to

21    psychology and psychiatry, just from undergraduate and

22    medical school for me.

23             No. 21, no.

24             No. 22, no.

25             No. 23, yes.  My car's been broken into, like,
```

1    four times where I live.

2           Reported, yes.  No one was arrested.  And

3    nothing happened to the case.  And generally satisfied.

4           No. 24, in approximately 1990, witnessed road

5    rage where one gentleman got out of the car and started

6    to beat another gentleman.

7           It was reported.  Was arrested.  I don't know

8    what happened with the case.  I was called in -- oh.

9    Actually, I was satisfied.

10          And, No. 25, I was called in to do a statement

11   in the courthouse right in front of Jackson.

12          No. 26, no.

13          27, no.

14          28, yes -- sorry.  28, yes.

15          29, no.

16          30, no.

17          31, no.

18          32, no.

19          33, no.

20          34, no.

21          35, yes.

22          THE COURT:  Thank you, sir.

23          Juror No. 15.

24          PROSPECTIVE JUROR NO. 15:  15.

25          1, 23.

1        2, Miami.

2        3, Cuba.

3        4, customer service phone agent.

4        5, Miami Gardens, 23 years.

5        6, living with family.

6        7, no.

7        8, single.

8        9, janitorial and stuff.

9        10, none.

10       11, no.

11       12, yes.  Spanish.

12       13, Internet.

13       14, high school.

14       15, no.

15       16, Internet, radio, television.

16       17, no.

17       18, no for all of the above.

18       19, no.

19       20, no.

20       21, no.

21       22, no.

22       23, no.

23       24, no.

24       25, no.

25       26, no.

```
1         27, no.

2         28, no.

3         29, no.

4         30, no.

5         31, no.

6         32, no.

7         33, no.

8         34, no.

9         35, yes.

10        THE COURT:  Thank you.

11        PROSPECTIVE JUROR NO. 16:  No. 1, 43.

12        2, Los Angeles, California.

13        3, Lima, Peru.

14        4, school administrator assistant.

15        5, Kendall, for the last 20 years.

16        6, own.

17        7, Peru, for 20 years.

18        8, married.

19        9, construction.  10, 9 and 14.

20        11, no.

21        12, yes.  Spanish.

22        13, dedicated to my daughters.

23        14, 12.

24        15, no.

25        16, all of the above.
```

```
 1              17, no.

 2              18, no.

 3              19, no.

 4              20, no.

 5              21, no.

 6              22, no.

 7              23, yes.  My house was broke in twice in the

 8    last four years.

 9              THE COURT:  Was it reported?

10              PROSPECTIVE JUROR NO. 16:  Yes.  Nobody was

11    arrested.

12              THE COURT:  Are you generally satisfied or

13    dissatisfied with the way you were treated?

14              PROSPECTIVE JUROR NO. 16:  So-and-so.

15              THE COURT:  I'm sorry?

16              PROSPECTIVE JUROR NO. 16:  No.

17              THE COURT:  Not satisfied.

18              Would you be able to put aside whatever

19    feelings of dissatisfaction that you have regarding

20    those occurrences and sit and listen to the evidence in

21    this case and be fair to both the Government and the

22    Defendants?

23              PROSPECTIVE JUROR NO. 16:  Yes.

24              THE COURT:  24?

25              PROSPECTIVE JUROR NO. 16:  24, no.
```

```
 1              25, no.

 2              26, no.

 3              27, no.

 4              28, yes.

 5              29, no.

 6              30, no.

 7              31, no.

 8              32, no.

 9              33, yes.  With legal terminology.

10              34, no.

11              35, yes.

12              THE COURT:  Thank you, ma'am.

13              We're going to come over to Juror No. 17.

14              PROSPECTIVE JUROR NO. 17:  Hi.  Juror No. 17.

15              1, 22.

16              2, Miami, Florida.

17              3, Cuba and El Salvador.

18              4, roadway design.

19              THE COURT:  What is roadway design?

20              PROSPECTIVE JUROR NO. 17:  Designing roads,

21      highways.

22              THE COURT:  Okay.

23              PROSPECTIVE JUROR NO. 17:  5, Hialeah Gardens,

24      22 years.

25              6, live with parents.
```

1        7, no.

2        8, single.

3        9, my stepdad is an electrician.

4        10, no.

5        11, no.

6        12, yes.  Spanish.

7        13, I travel and I'm an active volunteer in a

8    national engineering organization.

9        14, four years, civil engineering.

10       15, no.

11       16, TV, Internet, radio.

12       17, yes.  My uncle's a police officer, and my

13   brother's a cadet, both for Hialeah.

14       18, no.

15       19, no.

16       20, yes, in security.  I used to work in

17   airport design, construction management.

18       21, no.

19       22, yes.  My uncle and the officer.

20       23, no.

21       24, yes.

22       THE COURT:  What crime did you witness?

23       PROSPECTIVE JUROR NO. 17:  When I was 13 years

24   old, my father tried to enter into the house illegally

25   and threatened to kill my mother.  I was a minor.  So I

1    wasn't involved in the case.

2            THE COURT:  Okay.

3            PROSPECTIVE JUROR NO. 17:  25, no.

4            26, no.

5            27, yes.  My father, which I just mentioned.

6            28 --

7            THE COURT:  So was he arrested at that time?

8            PROSPECTIVE JUROR NO. 17:  Yes.

9            THE COURT:  And what happened with that

10   charge?

11           PROSPECTIVE JUROR NO. 17:  I really don't

12   know.  I just know that he went to jail and he was out

13   in a few days --

14           THE COURT:  Did you visit him while he was

15   incarcerated?

16           PROSPECTIVE JUROR NO. 17:  No.

17           THE COURT:  Is there anything about what

18   happened to your father that would make it difficult

19   for you to sit and listen to the evidence in this case

20   and be fair to both the Government and the Defendants?

21           PROSPECTIVE JUROR NO. 17:  Well, I just think,

22   if somebody's guilty, they should stay in jail.  And I

23   thought my father was guilty.  And it really affected

24   me, just his case.  But if a person is innocent,

25   they're innocent.  If they're guilty, they're guilty.

1        THE COURT:  Do you understand that every

2   Defendant is presumed innocent?

3        PROSPECTIVE JUROR NO. 17:  Yes.

4        THE COURT:  Do you understand that the

5   Government has the burden of proving a defendant guilty

6   beyond a reasonable doubt?

7        PROSPECTIVE JUROR NO. 17:  Yes.

8        THE COURT:  Would you be able to follow those

9   instructions?

10       PROSPECTIVE JUROR NO. 17:  Yes.

11       THE COURT:  So would the situation with your

12  father, then, affect your ability to sit and listen to

13  the evidence in this case and make a determination in

14  this case solely on the evidence presented at trial?

15       PROSPECTIVE JUROR NO. 17:  No.  It wouldn't

16  affect it.

17       28, no.

18       29, no.

19       30, no.

20       31, no.

21       32, no.

22       33, no.

23       34, no.

24       35, yes.

25       THE COURT:  Thank you, ma'am.

1            Juror No. 18.

2            PROSPECTIVE JUROR NO. 18:  No. 18.

3            No. 1, 73.

4            No. 2, New York State.

5            No. 3, New York and Pennsylvania.

6            No. 4, retired schoolteacher and school

7    librarian.

8            THE COURT:  What did you teach?

9            PROSPECTIVE JUROR NO. 18:  I taught special

10   education.  Then I was a school librarian.

11           THE COURT:  Okay.  No. 5?

12           PROSPECTIVE JUROR NO. 18:  No. 5, Palmetto

13   Bay, 39 years.

14           No. 6, own.

15           7, no.

16           8, married.

17           9, also retired teacher and sometimes clerk --

18   store clerk.

19           THE COURT:  What did she teach?

20           PROSPECTIVE JUROR NO. 18:  She taught first

21   grade.

22           No. 10, son, 38, in the Army.  Daughter, 33,

23   housewife.

24           11, no.

25           12, very little Spanish.

```
 1              13, art, music, reading, collecting.

 2              14, master's in education.

 3              15, no.

 4              16, TV, newspaper, magazines.

 5              17, no.

 6              18, no to all.

 7              19, no.

 8              20, no to all.

 9              21, no.

10              22, no.

11              23, burglary, house break-in, years ago.  It

12   was reported.  No one was arrested.  Nothing happened.

13   I'm satisfied.

14              No. 24, no.

15              No. 25, no.

16              26, no.

17              27, no.

18              28, yes.  But very liberal.  So there's no

19   creed or dogma.

20              29, no.

21              30, yes.  State.  It was criminal.

22   Manslaughter.  We reached a verdict.  Yes.  I was

23   foreman.

24              31, yes.  A grand jury.  I think it was state.

25   And no, I wasn't foreperson.
```

```
1              32, no.

2              33, no.

3              34, no.

4              35, yes.

5              THE COURT:  When was it that you served on the

6    grand jury?  Do you remember?

7              PROSPECTIVE JUROR NO. 18:  Not exactly.  But

8    it's been probably about eight years ago, ten years,

9    something like that.

10             THE COURT:  And was this a grand jury that

11   dealt with criminal investigations or with different

12   areas of concern in the community?

13             PROSPECTIVE JUROR NO. 18:  It was criminal.

14   Yeah.

15             THE COURT:  Okay.  Thank you.

16             Juror No. 19.

17             PROSPECTIVE JUROR NO. 19:  No. 19.

18             No. 1, 24.

19             No. 2, Miami.

20             No. 3, Cuba.

21             No. 4, student.

22             No. 5, Miami.

23             No. 6, I live with my mom.

24             No. 7, no.

25             No. 8, single.
```

```
 1            No. 9, staffing coordinator.

 2            THE COURT REPORTER:  I'm sorry.  Staffing

 3    coordinator?

 4            PROSPECTIVE JUROR NO. 19:  My mom's a staffing

 5    coordinator for Larkin Community Hospital.

 6            THE COURT:  No. 10?

 7            PROSPECTIVE JUROR NO. 19:  No. 10, no kids.

 8            No. 11, no.

 9            No. 12, Spanish.

10            No. 13, gym.

11            No. 14, some college.

12            No. 15, no.

13            16, I don't watch the news.

14            17, no.

15            18, no.

16            19, no.

17            20, no.

18            21, no.

19            22, no.

20            23, no.

21            24, no.

22            25, no.

23            26, no.

24            27, no.

25            28, no.
```

```
1              29, no.
2              30, I've been called to do juror duty, but
3     I've never been selected for a trial or a jury or
4     anything.
5              31, no.
6              32, no.
7              33, no.
8              34, no.
9              35, yes.
10             THE COURT:  What are you studying in school?
11             PROSPECTIVE JUROR NO. 19:  I want to be a
12    nurse.
13             THE COURT:  Okay.  Thank you.
14             Juror No. 20.
15             PROSPECTIVE JUROR NO. 20:  20.
16             1, 40.
17             2, Havana, Cuba.
18             3, Cuba.
19             4, I manage the training department for a
20    bank.
21             5, I've live in Miami, 22 years.
22             6, my husband and I and the children live in a
23    house that is owned by my in-laws.
24             I have lived outside the United States in
25    Spain and in Cuba.
```

1          I'm married.

2          I live with my husband, who's a banker.

3          The kids are 7, 3 and 2.

4          11 is no.

5          12, Spanish.

6          13, listen to music, go to the movies and

7    travel.

8          14, human resource development certificate.

9          15, no.

10          16, I don't listen to the news, but I do

11   listen to the radio.

12          17, no.

13          THE COURT:  So does that mean you listen to

14   the news on the radio or only music?

15          PROSPECTIVE JUROR NO. 20:  Well, if I'm

16   listening to music and news pops, I normally tend to

17   change.  But I may come across news radio.

18          THE COURT:  Okay.

19          PROSPECTIVE JUROR NO. 20:  17, no.

20          18, no to all.

21          19 is no.

22          20 is no to all of them.

23          21, no.

24          22, no.

25          23, yes.  I was a victim of domestic violence

1   on my first marriage.

2          THE COURT:  Was it reported?

3          PROSPECTIVE JUROR NO. 20:  Yes.  And he was

4   prosecuted and he was deported.

5          THE COURT:  Are you generally satisfied or

6   dissatisfied with the way you were treated?

7          PROSPECTIVE JUROR NO. 20:  Satisfied.

8          THE COURT:  Okay.

9          PROSPECTIVE JUROR NO. 20:  24 is yes.

10          When I started working in banking, I had a

11   customer that was a victim of the lottery scam.  I was

12   a witness to that, and I took deposition on that.

13          THE COURT:  Are you satisfied -- generally

14   satisfied or dissatisfied with the way you were

15   treated?

16          PROSPECTIVE JUROR NO. 20:  Satisfied.

17          25, yes.

18          26, no.

19          THE COURT:  25 is yes in regard to what you

20   just told us about, the lottery?

21          PROSPECTIVE JUROR NO. 20:  Yes.

22          26 is no.

23          27 is only my ex-husband for that that I

24   mentioned earlier.

25          28, yes.  I'm Catholic and I attend

```
1    St. Dominic Church.

2              29 is no.

3              30 is no.

4              31, no.

5              32 is no.

6              33 is no.

7              34 is no.

8              And 35 is yes.

9              THE COURT:  Thank you, ma'am.

10             Juror No. 21.

11             PROSPECTIVE JUROR NO. 21:  No. 1 -- Juror 21.

12             No. 1, 47.

13             2, Miami Florida.

14             Georgia, Florida.

15             I'm a consultant for a healthcare.

16             No. 5, Miami, nine years.

17             I rent.

18             No. 7 is no.

19             I'm divorced.

20             THE COURT:  No. 9?

21             PROSPECTIVE JUROR NO. 21:  No. 9, no.

22             My daughter's 30.

23             THE COURT:  Is she working?

24             PROSPECTIVE JUROR NO. 21:  No.

25             No. 11 is no.
```

```
 1              12 is no.

 2              13, cook.

 3              14, science.

 4              No.

 5              TV.

 6              No. 17 is no.

 7              THE COURT:  When you say "Science" for 14, do

 8    you have a high school degree or --

 9              PROSPECTIVE JUROR NO. 21:  I have an

10    associate's in science -- an associate's degree in

11    science.

12              THE COURT:  Okay.  No. 17 was no?

13              PROSPECTIVE JUROR NO. 21:  17 is no.

14              18 is no to all.

15              19, no.

16              20, no, to all.

17              21 -- I mean, 21 is no.

18              22 is no.

19              23, yes.

20              THE COURT:  What crime were you a victim of?

21              PROSPECTIVE JUROR NO. 21:  Domestic violence

22    and purse-snatching.

23              THE COURT:  Was the domestic violence

24    reported?

25              PROSPECTIVE JUROR NO. 21:  Yes.
```

```
1              THE COURT:  Anyone arrested or wanted with

2    that?

3              PROSPECTIVE JUROR NO. 21:  He was just held

4    for a few hours.  It was military-related.  My spouse

5    was in the military.  It was on a Government base.

6    Nothing was done.  Just counseling.

7              THE COURT:  Were you generally satisfied or

8    dissatisfied with the way you were treated?

9              PROSPECTIVE JUROR NO. 21:  Satisfied.

10             THE COURT:  And the purse-snatching?

11             PROSPECTIVE JUROR NO. 21:  I was satisfied.

12   No one was ever caught.  But it was reported.

13             THE COURT:  Okay.

14             PROSPECTIVE JUROR NO. 21:  Part B, that was

15   yes.

16             I was satisfied, all of that.  Right.

17             THE COURT:  24?

18             PROSPECTIVE JUROR NO. 21:  24, yes.

19             THE COURT:  What was that in regard to?

20             PROSPECTIVE JUROR NO. 21:  It was the

21   purse-snatching.

22             THE COURT:  That was the same thing --

23             PROSPECTIVE JUROR NO. 21:  Yes.

24             THE COURT:  Okay.  25?

25             PROSPECTIVE JUROR NO. 21:  25, no.
```

```
 1              No. 26, yes.

 2              THE COURT:  What crime were you accused of?

 3              PROSPECTIVE JUROR NO. 21:  Possession.

 4              THE COURT:  Of what?

 5              PROSPECTIVE JUROR NO. 21:  Narcotics.

 6              THE COURT:  What kind of narcotics?

 7              PROSPECTIVE JUROR NO. 21:  Cocaine.

 8              THE COURT:  When was that?

 9              PROSPECTIVE JUROR NO. 21:  2006.

10              THE COURT:  What happened with that charge?

11              PROSPECTIVE JUROR NO. 21:  Withheld

12      adjudication.

13              THE COURT:  Do you think you were treated

14      fairly by the criminal justice system?

15              PROSPECTIVE JUROR NO. 21:  Yes, I was.

16              THE COURT:  Do you think you were well

17      represented by your lawyer?

18              PROSPECTIVE JUROR NO. 21:  Yes, I was.

19              THE COURT:  Is there anything about your

20      experience that would make it difficult for you to sit

21      and listen to the evidence in this case and be fair to

22      both the Government and the Defendants?

23              PROSPECTIVE JUROR NO. 21:  No.  I would be

24      fair.  I would be able to listen.

25              THE COURT:  Okay.  27?
```

1          PROSPECTIVE JUROR NO. 21:  27, yes.

2          THE COURT:  Who would that be?

3          PROSPECTIVE JUROR NO. 21:  My brother.

4          THE COURT:  What was he accused of?

5          PROSPECTIVE JUROR NO. 21:  Possession.

6          THE COURT:  Of cocaine?

7          PROSPECTIVE JUROR NO. 21:  Yes.

8          THE COURT:  When was that?

9          PROSPECTIVE JUROR NO. 21:  Eight years ago.

10          THE COURT:  What happened with that charge?

11          PROSPECTIVE JUROR NO. 21:  He was convicted

12    and sentenced.

13          THE COURT:  Did you attend any of his

14    hearings?

15          PROSPECTIVE JUROR NO. 21:  No.

16          THE COURT:  Was he incarcerated?

17          PROSPECTIVE JUROR NO. 21:  Yes.

18          THE COURT:  Did you visit him while he was

19    incarcerated?

20          PROSPECTIVE JUROR NO. 21:  Yes, I have.

21          THE COURT:  Do you think he was well

22    represented by his lawyer?

23          PROSPECTIVE JUROR NO. 21:  Yes, he was.

24          THE COURT:  Is there anything about your

25    brother's experience that would make it difficult for

1    you to sit and listen to the evidence in this case and

2    be fair to both the Government and the Defendants?

3              PROSPECTIVE JUROR NO. 21:  No.  There's

4    nothing.

5              THE COURT:  Did you have a lawyer for your

6    case?

7              PROSPECTIVE JUROR NO. 21:  Yes.

8              THE COURT:  Were you well represented by your

9    lawyer?

10             PROSPECTIVE JUROR NO. 21:  Yes, I was.

11             THE COURT:  Okay.  28?

12             PROSPECTIVE JUROR NO. 21:  28, yes, I do.

13             No. 29, no.

14             30, no.

15             31, no.

16             32, no.

17             33, no.

18             34, no.

19             35, yes.

20             THE COURT:  Thank you, ma'am.

21             Juror No. 22.

22             I have a question for you, sir.

23             You said that you went to high school with --

24    was it Michael "Batiste" or "Baptiste"?

25             PROSPECTIVE JUROR NO. 22:  Baptiste.

1          THE COURT:  Okay.  With a "P."  Right?

2          PROSPECTIVE JUROR NO. 22:  Yeah.  With a "P."

3          THE COURT:  Okay.  Thank you.

4          PROSPECTIVE JUROR NO. 22:  No. 1, 20.

5          2, Miami.

6          3, Nicaragua.

7          4, salesman, ladies' designer shoes.

8          5, Westchester.

9          6, rent.

10          7, no.

11          8, single.

12          9, my mom runs a daycare.

13          12, no.

14          11, no.

15          12, yes, Spanish.

16          13, sports, sleep, hang out with friends.

17          THE COURT:  What type of work do you do?

18          PROSPECTIVE JUROR NO. 22:  I sell ladies'

19   shoes.  Macy's Dadeland.

20          14, one year of college.

21          15, no.

22          16, television and Internet.

23          17, no.

24          18, no.

25          19, no.

```
 1          20, no.

 2          21, no.

 3          22, no.

 4          23, no.

 5          24, no.

 6          25, no.

 7          26, no.

 8          27, no.

 9          28, no.

10          29, no.

11          30, yes.  It was a state court.  A civil

12   trial.  Yes.  I was the foreperson.

13          THE COURT:  Did the jury reach a verdict?

14          PROSPECTIVE JUROR NO. 22:  Yes.

15          31, no.

16          32, no.

17          33, no.

18          34, no.

19          35, yes.

20          THE COURT:  Thank you, sir.

21          Juror No. 24.

22          PROSPECTIVE JUROR NO. 24:  No. 1, 35.

23          No. 2, Lima, Peru.

24          No. 3, Lima, Peru.

25          No. 4, operations director of security
```

```
 1   investigation agency.
 2            No. 5, Miami, 19 years.
 3            No. 6, own.
 4            No. 7, yes.  In Peru, 16 years.
 5            No. 8, married.
 6            No. 9, teacher -- science teacher for Miami
 7   High.
 8            No. 10, yes.  I have three:  7, 5 and a
 9   3-year-old.  The fourth one is on the way.
10            11, no.
11            12, yes.  Spanish.
12            No. 13, just play with my kids and watch TV.
13            No. 14, two years of college.
14            No. 15, no.
15            16, TV and Internet.
16            17, yes.
17            18, no.
18            29, no.
19            20, yes.  Security and religion.
20            21, no.
21            22, no.
22            23, no.
23            24, no.
24            25, no.
25            26, no.
```

```
 1            27, no.

 2            28, yes.

 3            29, no.

 4            30, no.

 5            31, no.

 6            32, no.

 7            33, no.

 8            34, no.

 9            35, yes.

10            THE COURT:  Thank you, sir.

11            Juror No. 25.

12            PROSPECTIVE JUROR NO. 25:  Juror No. 25.

13            No. 1, 22.

14            No. 2, Miami, Florida.

15            3, New Orleans, Louisiana; Lima, Peru.

16            4, student.

17            5, North Miami, for 21 years.  Doral, for one

18      year.

19            6, currently rent.  Living with family.

20            7, no.

21            8, single.

22            9, student.

23            10, none.

24            11, no.

25            12, Spanish.
```

```
 1               13, read, volunteer, jog.

 2               14, at a bachelor's level, psychology and

 3     biology.

 4               15, no.

 5               16, Internet and radio.

 6               17, yes.  Two cousins.  One's in Miami.  I

 7     think insurance lawyer.

 8               Another is in New York.  I'm not sure what

 9     kind of lawyer.

10               18, no.

11               19, no.

12               20, yes for psychology, yes for religion.

13               21, no.

14               22, no.

15               23, no.

16               24, no.

17               25, no.

18               26, no.

19               27, no.

20               28, yes.

21               29, no.

22               30, no.

23               31, no.

24               32, no.

25               33, no.
```

```
 1              34, possibly.  Concerta.

 2              THE COURT:  Is that the medication?

 3              PROSPECTIVE JUROR NO. 25:  It's medication.

 4              35, yes.

 5              THE COURT:  What are you studying in school?

 6              PROSPECTIVE JUROR NO. 25:  Biology and

 7   psychology.

 8              THE COURT:  Thank you, ma'am.

 9              Juror No. 26.

10              PROSPECTIVE JUROR NO. 26:  No. 26.

11              I'm 37.

12              El Salvador, Central America.  El Salvador.

13              Staff assistant.

14              THE COURT:  In what kind of business are you a

15   staff assistant?

16              PROSPECTIVE JUROR NO. 26:  DVPR, Department

17   of -- Department of -- Department of Business and

18   Professional Relations, State of Florida.

19              THE COURT:  Okay.  5?

20              PROSPECTIVE JUROR NO. 26:  5, West Kendall,

21   15 years.

22              6, own.

23              El Salvador.

24              THE COURT:  7 is El Salvador.

25              For how long?
```

1          PROSPECTIVE JUROR NO. 26:  15 years.

2          Divorced.

3          No. 9, computer tech.

4          No. 10, none.

5          No. 11, no.

6          No. 12, Spanish.

7          No. 13, spend time with family and friends.

8          No. 14, human resources administrator.

9          15, I have attended -- no.

10         16, television.

11         17, no.

12         18, no.

13         19, no.

14         20, no.

15         21, no.

16         22, no.

17         23, no.

18         24, no.

19         25, no.

20         26, no.

21         27, no.

22         28, no.

23         29, no.

24         30, no.

25         31, no.

```
 1              32, no.

 2              33, no.

 3              34, no.

 4              35, yes.

 5              THE COURT:  35 is yes?

 6              PROSPECTIVE JUROR NO. 26:  Yes.

 7              THE COURT:  Thank you, ma'am.

 8              Juror No. 27.

 9              PROSPECTIVE JUROR NO. 27:  No. 27.

10              No. 1, 58.

11              No. 2, American Samoa.

12              No. 3, American Samoa.

13              No. 4, security officer for Department of

14      Homeland Security.

15              No. 5, Homestead, ten years.

16              No. 6, living with family.

17              No. 7, Incirlik Air Force Base, Adana, Turkey,

18      for 15 months.

19              No. 8, married.

20              No. 4, self-employed.

21              THE COURT REPORTER:  4?

22              PROSPECTIVE JUROR NO. 27:  I mean, No. 9.

23      Sorry.

24              THE COURT:  And what kind of work is --

25              PROSPECTIVE JUROR NO. 27:  My father-in-law.
```

```
1    He owns properties.

2              No. 10, 8, 13, 15.

3              No. 11, no.

4              No. 12, Samoan and Hawaiian.

5              No. 13, tinkering.

6              No. 14, electronics and computer engineering.

7              No. 15, no.

8              No. 16, Internet and people.

9              No. 17, sisters -- sister and cousins.

10             THE COURT:  When you say, "Internet and

11   people," what do you mean by "people"?  In

12   conversations that you're having about the news?

13             PROSPECTIVE JUROR NO. 27:  Exactly.

14             THE COURT:  17 is, "Sister and cousins."

15   Where are they working?  What type of work?

16             PROSPECTIVE JUROR NO. 27:  My cousins and my

17   sister work for public defender for the City -- County

18   of San Francisco.  My cousins work with the public

19   defender as a court clerk.  And my sister work as a

20   private investigator.

21             THE COURT:  Here in Miami?

22             PROSPECTIVE JUROR NO. 27:  No.  In San

23   Francisco.

24             THE COURT:  All in San Francisco?

25             PROSPECTIVE JUROR NO. 27:  All in San
```

1    Francisco.

2            THE COURT:  Okay.  No. 18?

3            PROSPECTIVE JUROR NO. 27:  No. 18, that would

4    be no, yes, no, no.  That would be in reference to my

5    sister and my cousins.

6            No. 19, no.

7            No. 20, yes.  Department of Homeland Security,

8    which I work for.

9            THE COURT:  As a security officer at Homeland

10   Security, what type of work are you doing?

11           PROSPECTIVE JUROR NO. 27:  TSA.

12           THE COURT:  You're TSA at the airport?

13           PROSPECTIVE JUROR NO. 27:  Yes, ma'am.

14           THE COURT:  And the fact that you work for the

15   US Government agency:  Would you be able to sit and

16   listen to the evidence in this case and be fair to both

17   the Government and the Defendants?

18           PROSPECTIVE JUROR NO. 27:  Yes.

19           THE COURT:  No. 21?

20           PROSPECTIVE JUROR NO. 27:  21, no.

21           22, yes.

22           THE COURT:  Is that you that you're talking

23   about?

24           PROSPECTIVE JUROR NO. 27:  No.  That was my

25   wife.  She applied for Customs.

1          THE COURT:  What happened with that

2    application?

3          PROSPECTIVE JUROR NO. 27:  She never followed

4    through with it.

5          THE COURT:  23?

6          PROSPECTIVE JUROR NO. 27:  Yes.

7          THE COURT:  What crime were you a victim of?

8          PROSPECTIVE JUROR NO. 27:  My vehicle was

9    stolen on Thanksgiving.

10         THE COURT:  Was it reported?

11         PROSPECTIVE JUROR NO. 27:  Yes.

12         THE COURT:  Anyone arrested?

13         PROSPECTIVE JUROR NO. 27:  Yes.

14         THE COURT:  What happened --

15         PROSPECTIVE JUROR NO. 27:  Case dismissed.

16         THE COURT:  Are you generally satisfied or

17    dissatisfied with the way you were treated?

18         PROSPECTIVE JUROR NO. 27:  Yes.

19         THE COURT:  Yes?

20         PROSPECTIVE JUROR NO. 27:  Satisfied.

21         THE COURT:  24?

22         PROSPECTIVE JUROR NO. 27:  No.

23         25, no.

24         26, DUI, in '89.

25         THE COURT:  What happened with that charge?

1          PROSPECTIVE JUROR NO. 27:  I plead no contest.

2          THE COURT:  Do you think you were treated

3    fairly by the criminal justice system?

4          PROSPECTIVE JUROR NO. 27:  Yes.

5          THE COURT:  Were you well represented by your

6    lawyer?

7          PROSPECTIVE JUROR NO. 27:  Expensive, but yes.

8          THE COURT:  Is there anything about your

9    experience that would make it difficult for you to sit

10   and listen to the evidence in this case and be fair to

11   both the Government and the Defendants?

12         PROSPECTIVE JUROR NO. 27:  No.

13         THE COURT:  27?

14         PROSPECTIVE JUROR NO. 27:  Yes.

15         THE COURT:  Who in your family?

16         PROSPECTIVE JUROR NO. 27:  I have a nephew.

17   He's incarcerated, Sacramento, California, for

18   possession of various firearms and a flack jacket.

19         THE COURT:  Did you attend any of his

20   hearings?

21         PROSPECTIVE JUROR NO. 2:  No.

22         THE COURT:  Have you visited him while he's

23   incarcerated?

24         PROSPECTIVE JUROR NO. 27:  No.

25         THE COURT:  Do you think he was treated fairly

```
1    by the criminal justice system?

2             PROSPECTIVE JUROR NO. 27:  I don't know.

3             THE COURT:  I'm sorry?

4             PROSPECTIVE JUROR NO. 27:  That I don't know.

5             THE COURT:  Do you have any opinion as to

6    whether he was well represented by his lawyer?

7             PROSPECTIVE JUROR NO. 27:  No.

8             THE COURT:  Is there anything about your

9    nephew's experience that would make it difficult for

10   you to sit and listen to the evidence in this case and

11   be fair to both the Government and the Defendants?

12            PROSPECTIVE JUROR NO. 27:  No.

13            THE COURT:  Was that a state charge or a

14   federal charge?

15            PROSPECTIVE JUROR NO. 27:  I believe it might

16   have fallen -- fell into both categories.

17            THE COURT:  Do you know whether he was

18   prosecuted in both courts or in one?

19            PROSPECTIVE JUROR NO. 27:  That I don't know,

20   ma'am.

21            THE COURT:  And is he incarcerated in a state

22   prison or federal prison?

23            PROSPECTIVE JUROR NO. 27:  I believe he's in

24   state.

25            THE COURT:  Okay.  Thank you.
```

```
 1              28?
 2              PROSPECTIVE JUROR NO. 27:  Yes.  I attend
 3   church.
 4              29, no.
 5              30, yes.
 6              THE COURT:  Was it a state case or a federal
 7   case?
 8              PROSPECTIVE JUROR NO. 27:  A state, civil.
 9              THE COURT:  Did the jury reach a verdict?
10              PROSPECTIVE JUROR NO. 27:  Yes.
11              THE COURT:  Were you the foreperson?
12              PROSPECTIVE JUROR NO. 27:  No.
13              THE COURT:  31?
14              PROSPECTIVE JUROR NO. 27:  No.
15              No.
16              THE COURT:  32 is no?
17              PROSPECTIVE JUROR NO. 27:  Yeah.  32 is no.
18              33 is no.
19              34 is no.
20              And 35 is yes.
21              THE COURT:  Thank you, sir.
22              Last, but not least, Juror No. 28.
23              PROSPECTIVE JUROR NO. 28:  No. 1, 54.
24              No. 2, Puerto Rico.
25              No. 3, Puerto Rico.
```

1          No. 4, medical biller/security officer.

2          No. 5, Kendall, seven years.

3          No. 6, own.

4          No. 7, no.

5          No. 8, divorced.

6          No. 9, no.

7          No. 10, 22, 28, 31, bank teller, cashier.

8          No. 11, no.

9          No. 12, yes.  Spanish.

10          No. 13, dancing, salsa instructor.

11          No. 14, high school, GED.

12          No. 15, no.

13          No. 16, television, radio, Internet.

14          No. 17, no.

15          No. 18, no.

16          No. 19, no.

17          No. 20, yes, on security.  No, on the rest.

18          No. 21, no.

19          No. 22, licensed security officer.

20          No. 23, no.

21          No. 24, no.

22          25, no.

23          26, no.

24          27, yes.

25          28 --

1          THE COURT:  Who would that be on 27?

2          PROSPECTIVE JUROR NO. 28:  I had a nephew who

3   was caught buying cocaine.

4          THE COURT:  What happened with that charge?

5          PROSPECTIVE JUROR NO. 28:  He was put on

6   probation.

7          THE COURT:  Did you attend any of his

8   hearings?

9          PROSPECTIVE JUROR NO. 28:  No.

10         THE COURT:  Do you think he was treated fairly

11  by the criminal justice system?

12         PROSPECTIVE JUROR NO. 28:  Yes.

13         THE COURT:  Do you think he was well

14  represented by his lawyer?

15         PROSPECTIVE JUROR NO. 28:  Yes.

16         THE COURT:  Is there anything about your

17  nephew's experience that would make it difficult for

18  you to sit and listen to the evidence in this case and

19  be fair to both the Government and the Defendants?

20         PROSPECTIVE JUROR NO. 28:  No.

21         THE COURT:  Now, you said that you're also a

22  security officer as well as being a medical biller?

23         PROSPECTIVE JUROR NO. 28:  Yes.

24         THE COURT:  What do you do as a security

25  officer?

1          PROSPECTIVE JUROR NO. 28:  I do part-time for

2    events, like we did the Super Bowl, the Victoria's

3    Secret, certain events which there's security for.

4          THE COURT:  What type of office is it?

5          PROSPECTIVE JUROR NO. 28:  Excuse me?

6          THE COURT:  What type of business is it?

7          PROSPECTIVE JUROR NO. 28:  It's a security --

8    I do security officer for DRT.  We do only events.

9          THE COURT:  I thought that you were a medical

10   biller.

11         PROSPECTIVE JUROR NO. 28:  I do that, too.

12         THE COURT:  Is that in the same firm or

13   different --

14         PROSPECTIVE JUROR NO. 28:  No.  Different

15   company.  Medical biller during the week and part-time

16   security officer during the weekend.

17         THE COURT:  Now I understand.  Okay.

18         PROSPECTIVE JUROR NO. 28:  I was up to 28.

19   Yes.

20         29, no.

21         30, no.

22         31, no.

23         32, no.

24         33, no.

25         34, no.

```
 1          35, yes.
 2          THE COURT:  So you're a security officer,
 3   then, on the weekends?
 4          PROSPECTIVE JUROR NO. 28:  Yes.
 5          THE COURT:  During the week, you work as the
 6   medical biller?
 7          PROSPECTIVE JUROR NO. 28:  Yes.
 8          THE COURT:  Okay.  Thank you, ma'am.
 9          I'm going to let you go for lunch.  I'm going
10   to talk to the attorneys for a few minutes and then
11   we'll break for lunch.  You're going to come back in an
12   hour and 15 minutes.
13          Do not discuss this case either amongst
14   yourselves or with anyone else.  Have no contact
15   whatsoever with anyone associated with the trial.  Do
16   not read, listen or see anything touching on this
17   matter in any way.
18          If anyone should try to talk to you about this
19   case, you should immediately instruct them to stop and
20   report it to my staff.
21          Please be back in the lobby at 1:20.  Have a
22   nice lunch.
23          MS. ARANGO:  2:20, Judge.
24          THE COURT:  I'm sorry.  2:20.  It wouldn't
25   give you much time for lunch if it was 1:20.  2:20.
```

```
 1              (Whereupon, Prospective Jury Panel No. IV
 2   exited the courtroom at 1:05 p.m. and the following
 3   proceedings were had:)
 4              THE COURT:  You may be seated.
 5              First, I just want to disclose to you, Juror
 6   No. 8 taught one or two of my children many years ago.
 7   So I just wanted to disclose that.  I don't know if she
 8   recognized me or not.
 9              Any additional questions for any of the panel
10   either as a whole or any individual juror?
11              MS. JHONES:  Your Honor, may we have a moment?
12              THE COURT:  Sure.
13              MS. JHONES:  Half of this stuff -- quite
14   frankly, there were some jurors that spoke so fast, I
15   had such a hard time -- I was hoping Lisa was going to
16   wave the white flag.
17              THE COURT REPORTER:  I tried.
18              THE COURT:  I'll turn off the microphone.
19              If there are any additional questions or
20   anything that we can do now before lunch so that we can
21   keep going forward after lunch....  So I'll just turn
22   off the microphones.
23              (Discussion had off the record amongst
24   counsel.)
25              THE COURT:  Any questions of any individual
```

```
 1    jurors are of the panel as a whole?

 2            MS. ARANGO:  Yes, Judge.  A couple of

 3    questions.

 4            First of all, with respect to Juror 28, can

 5    you ask her if she has -- she says she's the only

 6    person that bills for the large physical therapy

 7    company.

 8            Can you ask her she can bill on Mondays?  I

 9    just wonder if she needs to be there every day for

10    that.  It doesn't seem it's risen to the level of a

11    hardship, and I thought maybe we would follow it up.

12            THE COURT:  They have 55 therapists out in the

13    field.

14            MS. ARANGO:  Right.  It seems like it's a big

15    company.

16            THE COURT:  Okay.

17            MS. ARANGO:  Juror No. 27.  I think he -- he

18    said he's married, but he never discussed what his wife

19    did.  He just said his father-in-law owns properties,

20    by he didn't discuss what his wife did.

21            THE COURT:  Okay.

22            MS. ARANGO:  Juror No. 2.  She answered "yes"

23    to No. 32:  "Do you have any loss of hearing, sight or

24    any physical or emotional impairment that would make it

25    difficult for you to participate as a juror?"
```

```
 1              I went back and checked.  She answered -- at
 2    least it indicates she answered "yes."
 3              THE COURT:  Okay.  I might have missed it.
 4              MS. JHONES:  I agree.  I've got the same
 5    thing.
 6              THE COURT:  I'll ask her.
 7              MS. ARANGO:  Those are the only follow-up
 8    questions that I have, Judge.
 9              THE COURT:  Okay.
10              MS. JHONES:  If I may, your Honor, I'm going
11    to go to the beginning with No. 1.
12              With respect to No. 2, in addition to the
13    followup that Ms. Arango suggested, which I agree with,
14    there were a couple other things.
15              She answered "yes" to No. 32.  But I don't
16    know what -- she doesn't give --
17              THE COURT:  I'm going to ask that.
18              MS. JHONES:  Okay.  And she also answered
19    "yes" to No. 17 -- I'm sorry.  I'm sorry.  I don't know
20    what she answered to No. 17.  I have it in blank.
21              The other question, your Honor, is -- if I
22    understood her response correctly, your Honor, her
23    husband is a security officer at the -- for Homeland
24    Security at the Krome Detention Center.
25              THE COURT:  Right.
```

 1            MS. JHONES:  And because there's a

 2   possibility -- there's a possibility of there being at

 3   least two, if not more than two, Department of Homeland

 4   Security agents that will be testifying in this case.

 5            With respect to this particular juror, I'd

 6   like for the Court to ask specifically as to whether

 7   the fact that there may be some witnesses that work for

 8   the Department of Homeland Security -- would that --

 9   testifying in this case, would that in any way affect

10   her ability to be fair and impartial and that type of

11   questioning.

12            There are several people that fall into that

13   category in this case.  Juror No. 2 is the first one

14   that I see.

15            With respect to -- Juror No. 3, I think, is

16   cause.  I don't want to ask any follow-up question

17   unless there's -- if someone feels that this gentleman

18   hasn't -- his responses do not rise to the level, but I

19   think he's clearly a cause.  If the Court doesn't

20   agree, I have some follow-up questions.

21            THE COURT:  Any objection to the cause

22   challenge?

23            MS. ARANGO:  Yes.  I thought he was equivocal,

24   and I think it can be followed up with in the

25   individual questioning.

1          My recollection was that he said he's not

2     sure.  At one point, he said he could be fair.  Then he

3     said he wasn't sure if he can set it aside.  I thought

4     it was an equivocation.

5          THE COURT:  I'll reserve on that.  He sort of

6     went back and forth.  I'll go into individual

7     questioning on that.

8          MR. VEREEN:  Well, Your Honor, my other

9     concern is that he said he had hearing loss in his

10    right ear.

11         THE COURT:  I'll ask him about the hearing

12    loss.

13         MS. JHONES:  So on the other follow-up

14    questions, we'll just wait for the individual

15    questions, your Honor?

16         THE COURT:  Yes.

17         MS. JHONES:  No. 4 answered "yes" to No. 30.

18    But this was -- he just answered "yes" without

19    explaining.

20         THE COURT:  About the jury?

21         MS. JHONES:  Yes.

22         MS. ARANGO:  For the record, I have that, too,

23    Judge.  I missed it.

24         THE COURT:  Okay.

25         MS. JHONES:  I'm quite concerned that

```
 1    Ms. Arango and I have agreed on two things, your Honor,

 2    this morning.

 3              THE COURT:  Perish the thought.

 4              MS. JHONES:  Your Honor, with respect to --

 5    bear with me.

 6              Your Honor, with respect to No. 7, I think

 7    that she's a hardship.  To the extent that the Court

 8    doesn't feel that way, then I would like more follow-up

 9    questions.

10              This is the nurse that knows -- Juror No. 7

11    knows the doctor, Juror No. 14, I believe.  They both

12    raised concerns about their job.

13              Again, I don't want to follow up unless --

14              THE COURT:  What's the Government's position?

15              MS. ARANGO:  We don't have an objection to

16    No. 7 or 14.

17              THE COURT:  Being excused for hardship?

18              MS. ARANGO:  Correct.

19              THE COURT:  They're both excused for hardship.

20              MS. JHONES:  No. 9, your Honor, indicated

21    that -- I believe it was her husband who was a

22    self-employed transportation broker.

23              And I would just like a follow-up question as

24    to specifically what type -- what he does transport, a

25    little bit more about that business.
```

1           THE COURT:  Okay.

2           MR. VEREEN:  Your Honor, if we can go back to

3    No. 8, this is the woman you said taught your kids.

4    Correct?

5           THE COURT:  Yes.

6           MR. VEREEN:  If the Court would just ask if

7    she recognized you and if that would have any effect

8    and if she could be fair, I would appreciate it.

9           THE COURT:  Okay.

10          MR. VEREEN:  No. 10, I would move for cause.

11          THE COURT:  Any objection to 10 being excused

12   for cause?

13          MR. GREGORIE:  No objection, your Honor.

14          THE COURT:  Excused for cause.

15          MS. JHONES:  Your Honor, No. 11.

16          I don't know if the Court wants to handle this

17   in the individual questions.

18          This was the gentleman who said -- who has a

19   number of family and, I believe, also close friends in

20   law enforcement.

21          He said in response to the question -- and I'm

22   paraphrasing.  I don't remember specifically the

23   question the Court asked.  Can he be fair, whatever.

24   He said, "I'm willing to listen."

25          And I think that we need -- just like we had

```
 1    Juror No. 1 that came side-bar, you know, we need a
 2    little bit more colloquy with this gentleman, who's --
 3    who, basically, everyone that he is close to and that
 4    he's related to is in law enforcement.
 5         THE COURT:  I would go into it on the
 6    individual questioning.
 7         MS. JHONES:  All righty.
 8         MR. VEREEN:  Well, your Honor, I would move
 9    for No. 1 for cause.  This is the one you spoke to
10    side-bar with regard to wiretaps.
11         MS. ARANGO:  Judge, I think she was clear once
12    you explained to her the difference between what
13    happened in Watergate and a legal wiretap done by law
14    enforcement.  She totally switched and said, "No.  No.
15    No.  I can be fair."  She had no problem.
16         MR. VEREEN:  I think she wasn't so clear.  She
17    was still vacillating.  She said it was still -- it
18    would affect her, you know, that she can listen, but I
19    think she vacillated a little too much with regard to
20    whether or not she could set aside the situation with
21    her relative.
22         THE COURT:  I'm going to deny the challenge
23    for cause.
24         I find that, once -- first of all, she said
25    that, in regard to her answer yesterday, it was a
```

```
 1   flashback to her cousin being involved in Watergate.

 2          And then in regard to --

 3          MR. VEREEN:  You mean her answer earlier

 4   today?

 5          THE COURT:  I'm sorry.

 6          Earlier today, when she first came in.

 7          It was in regard to -- a flashback to her

 8   cousin's involvement with Watergate.

 9          And then, at side-bar, she indicated clearly

10   and unequivocally that, if it was authorized

11   wiretapping or taping or an authorized wiretap, that

12   she would be able to sit and listen to the evidence and

13   make a determination based upon the evidence presented

14   at trial.

15          So any concern that she had in relation to her

16   cousin -- first of all, she had no -- the fact of what

17   happened to her cousin had no bearing on how she would

18   view the evidence and make a determination based upon

19   the evidence introduced at trial here and that, if they

20   are authorized wiretaps and searches and videotaping,

21   that she would not have a problem sitting and listening

22   to the evidence and making a determination on the

23   evidence based upon what's presented at trial and she

24   could be fair.

25          So it's denied.
```

1          MR. VEREEN:  I'll move to strike No. 16.  This

2     is the one who said the English is very limited.

3          MS. ARANGO:  I would oppose that, Judge.

4          She said that a couple of times, but it was

5     very clear that she was -- her English was fine.  I

6     thought she was pretty articulate.  Maybe she wants to

7     get off.  I don't know.

8          THE COURT:  I'm going to reserve on that.  She

9     initially indicated -- then she seemed to handle all

10    the questions fine, including reading all the questions

11    and answering all the questions.

12         And then, when she got to Question 33, she

13    said, "Legal terminology."

14         So I think I'm going to have to make an

15    assessment through the individual questioning with her.

16         MR. VEREEN:  Well, with regard to No. 13, this

17    is the one that made the statement she believes the

18    Defendants' rights are more protected -- during that

19    questioning, she believes that the Defendants' rights

20    are more protected than the victims'.

21         And then the Court continued to question her.

22    She said she thinks she can be -- that she can listen

23    to both sides.  And the Court didn't go any further

24    with her.

25         But I would ask the Court to inquire further

1   with regard to her position regarding the victims'

2   rights versus the Defendants' rights and then question

3   her with regard to she thinks she can listen to both

4   sides and her ability to be fair.

5        MS. ARANGO:  Judge, I would ask that you go

6   back and read that.  You went into it quite a bit.

7        THE COURT:  That's my memory of it, that I

8   extensively went into that area with her, understanding

9   the presumption of innocence, understanding that the

10  Defendants don't have to present anything.

11       And I don't find that the answer to that

12  question regarding the rights of the accused and the

13  rights of victims is problematic.

14       And this juror would be able to make a

15  determination on the case based upon the evidence

16  presented at trial and in the context of the

17  instructions that the Court will give.

18       The motion for cause is denied.

19       MR. VEREEN:  I didn't move for cause.  I'm

20  asking for additional questioning.

21       THE COURT:  Oh.  I'm not going to ask

22  questioning.

23       MR. VEREEN:  Very well.

24       THE COURT:  I extensively questioned her --

25       MR. VEREEN:  Very well.

1      THE COURT:  -- about this issue.

2      She and No. 12 were questioned about it.

3      Is that it for additional questions?

4      MS. JHONES:  No, your Honor.

5      No. 19, your Honor, indicated she was in

6  school for nursing, I believe.  She didn't tell us what

7  her school hours were.  She may be going to school at

8  night.  I don't know.

9      But I don't know when -- I mean, if this woman

10 has a full --

11     THE COURT:  She didn't say she had a problem.

12     MS. JHONES:  I understand that.

13     But she has -- I'd like to know what her

14 caseload -- what her student -- class schedule is.  If

15 she's going to go to school at 6:00 Monday through

16 Friday, then I have a concern with her ability to

17 really sit here and pay attention to what's going on.

18     I'd just like to know what her class schedule

19 is like.  I'm not even sure if she's in school.  When

20 she said she wants to be a nurse, that's all she -- and

21 I believe she said she was in school, but that's all

22 she said.  I just -- if we could just ask her that to

23 alleviate my concern.

24     MS. ARANGO:  You know, Judge, I've said

25 before, if somebody doesn't state they have a

```
 1    problem -- you asked the question clearly -- I don't

 2    think it's a good practice to try to encourage somebody

 3    to try to --

 4         THE COURT:  I'm not going to inquire further.

 5         MS. JHONES:  We could do it side-bar, your

 6    Honor, if that's the concern.

 7         THE COURT:  The first question I asked is if

 8    anybody has a problem.  There's at least one other

 9    person who said they were a student, they were in

10    school and it was a problem for them, they were

11    graduating.

12         And so she had plenty of opportunity to say

13    that being in school is a problem for her.  She didn't

14    say it was a problem.  So if she doesn't think it's a

15    problem, then I don't think it's a problem.

16         MS. JHONES:  Okay.  No. 21 indicated she's

17    divorced.  I'd like to know what her ex-husband did.

18         And then No. 24.  This was one of those that I

19    just did not write everything down.  But my notes

20    indicate that No. 24 responded "yes" to Question No.

21    17, but did not -- did not --

22         MS. ARANGO:  Judge, with respect to No. 24, I

23    have him down as a hardship.  I just thought maybe we

24    could cut through.

25         THE COURT:  Any objection to the hardship?
```

```
 1              MR. CASUSO:  No, your Honor.

 2              MS. JHONES:  Oh, that's right.

 3              THE COURT:  He's excused for hardship, 24.

 4              MS. ARANGO:  On that point, Judge, I also -- I

 5     taught No. 25 was a hardship, too.  She's the full-time

 6     student.

 7              THE COURT:  Any objection?

 8              MR. CASUSO:  No, your Honor.

 9              THE COURT:  Excused for hardship.

10              MS. JHONES:  We agree.

11              The last question I had was with respect to

12     No. 27.  Again, it's the same question that I asked the

13     Court to ask of Juror No. 2.

14              Juror No. 27 is a TSA employee with the

15     Department of Homeland Security.  I'd like the Court to

16     follow up with respect to the fact that there may be

17     witnesses testifying in this case that work for the

18     Department of Homeland Security.

19              THE COURT:  Are there witnesses that work for

20     Homeland Security?

21              MR. GREGORIE:  The expert, your Honor.

22              MS. ARANGO:  Well, and, also --

23              MS. JHONES:  Not only the expert.  There are

24     statements introduced through -- unless they're not

25     going to introduce them this time around, there are
```

1   post-arrest statements that are going to introduced by

2   two -- well, at least one Department of Homeland

3   Security agent that I know of.

4           MR. GREGORIE:  Tom Scott, your Honor.  Yes.

5   That's correct.  Tom Scott.

6           MS. ARANGO:  Tim Scott.

7           THE COURT:  Okay.  Is that it?

8           Okay.  We're in recess until 2:20.

9           MS. JHONES:  Thank you.

10          (Thereupon, a luncheon recess was taken, after

11  which the following proceedings were had:)

12          THE COURT:  We're back on United States of

13  America versus Narseal Batiste, et al., Case

14  No. 06-20373.

15          Counsel, state your appearances, please, for

16  the record.

17          MR. GREGORIE:  Good afternoon, your Honor.

18          Richard Gregorie and Jacqueline Arango on

19  behalf of the United States.

20          MS. JHONES:  Good afternoon, your Honor.

21          Ana Maria Jhones on behalf of Narseal Batiste,

22  who's present.

23          MR. LEVIN:  Albert Levin on behalf of Patrick

24  Abraham, who's present.

25          MR. CASUSO:  Lou Casuso on behalf of Burson

```
 1    Augustin, who's present.
 2             MR. CLARK:  Nathan Clark on behalf of
 3    Rotschild Augustine, who's present.
 4             MR. HOULIHAN:  Richard Houlihan with Naudimar
 5    Herrera.
 6             MR. VEREEN:  And Rod Vereen on behalf of
 7    Stanley Phanor, who's present.
 8             THE COURT:  All Defendants are present.
 9             A couple issues.
10             First, I have a note.  I have an issue with
11    the deliberating jury.  So as soon as those lawyers get
12    here, we're going to have to recess.
13             In addition to that, on Juror No. 8 and the
14    question that Mr. Vereen had asked, she -- when she
15    came back from lunch, she indicated to Patricia that
16    during lunch she received a call from her daughter, who
17    informed her that she has to have emergency surgery and
18    that she is of need to assist her daughter in recovery
19    once she comes home from the hospital.  So she is --
20    has now an insurmountable conflict with sitting as a
21    juror.
22             So with your permission, Mr. Vereen, I would
23    prefer not to go into any further questioning of her
24    and just take up that issue.
25             MR. VEREEN:  That's fine, your Honor.
```

```
 1              THE COURT:  Okay.  So we'll take that up
 2    first.
 3              And then what I would like to do, if we can --
 4    it's going to take about 15 or 20 minutes for the
 5    lawyers to get here on my case that's deliberating --
 6    is go through the questions -- the additional questions
 7    that you all have.
 8              And then, depending on the timing, we can go
 9    through any additional cause challenges or we're just
10    going to have to break for the day.
11              So let's bring the jurors in, please.
12              THE COURTROOM DEPUTY:  Do you want the entire
13    panel, Judge?
14              THE COURT:  Yes.
15              (Whereupon, Prospective Jury Panel No. IV
16    entered the courtroom at 2:40 p.m. and the following
17    proceedings were had:)
18              THE COURT:  You may be seated.
19              Juror No. 8:  As I understand it from the
20    courtroom deputy, over the lunch break, you had some
21    information disclosed to you about your daughter and
22    some medical issues?
23              PROSPECTIVE JUROR NO. 8:  Yes.  She called.
24    She will be having surgery between the next seven to
25    ten days and has a 2-year-old and a 4-year-old and
```

```
 1   can't lift them for the next six to eight weeks.  So I

 2   pretty much need to be on duty.

 3            THE COURT:  Okay.  Thank you.

 4            PROSPECTIVE JUROR NO. 8:  Thank you.

 5            THE COURT:  And I have some additional

 6   questions.

 7            Juror No. 2.

 8            PROSPECTIVE JUROR NO. 2:  Can I have a

 9   side-bar with you, please?

10            THE COURT:  Sure.  Come on up.

11            (Whereupon, proceedings were had at side-bar

12   outside the presence of the jury which have been sealed

13   per instructions of the Court.)

14            (Whereupon, the following proceedings were had

15   in open court:)

16            THE COURT:  I just have a few more questions

17   for you, ma'am.  Is that all right?

18            PROSPECTIVE JUROR NO. 2:  Sure.

19            THE COURT:  You had answered that you had

20   family members or close friends employed in the

21   criminal justice system.

22            Are you talking about your husband or someone

23   else?

24            PROSPECTIVE JUROR NO. 2:  My husband.

25            THE COURT:  And if there were witnesses here
```

1   who -- witnesses that testified who were employed with

2   Homeland Security, would you be able to sit and fairly

3   and impartially judge their testimony?

4           PROSPECTIVE JUROR NO. 2:  Yes, ma'am.

5           THE COURT:  Okay.  All right, ma'am.  Thank

6   you.

7           PROSPECTIVE JUROR NO. 2:  Thank you.

8           THE COURT:  Juror No. 3:  You had indicated,

9   sir, that you had recent -- you had a tumor removed in

10  your right ear and a hearing loss?

11          PROSPECTIVE JUROR NO. 3:  Yes, ma'am.

12          THE COURT:  Have you been able to hear

13  everything that's gone on in the courtroom today?

14          PROSPECTIVE JUROR NO. 3:  Yes.  So far, yes.

15          THE COURT:  So you haven't had any problems

16  hearing?

17          PROSPECTIVE JUROR NO. 3:  No.

18          THE COURT:  Okay.

19          PROSPECTIVE JUROR NO. 3:  The only thing is I

20  have to go for treatment.  I have to go for treatments

21  on that ear.  My next appointment is on the 13th of

22  this month.

23          THE COURT:  On February 13th?

24          PROSPECTIVE JUROR NO. 3:  Yes, ma'am.  I have

25  the doctor's excuse in my pocket.

1          THE COURT:  That's not going to be a problem.

2     Thank you, sir.

3          Juror No. 4:  You had indicated, sir, that you

4     had jury service.

5          PROSPECTIVE JUROR NO. 4:  No.  As a security

6     guard.

7          THE COURT:  No.  You were on a jury?

8          PROSPECTIVE JUROR NO. 4:  Oh.  Yeah.

9          THE COURT:  You were on a jury?

10         PROSPECTIVE JUROR NO. 4:  Yes.

11         THE COURT:  Was it a criminal case or a civil

12    case?

13         PROSPECTIVE JUROR NO. 4:  It was a civil case.

14         THE COURT:  Federal or state?

15         PROSPECTIVE JUROR NO. 4:  I believe it's

16    state, but I'm not so sure.

17         THE COURT:  Were you on Flagler Street?

18         PROSPECTIVE JUROR NO. 4:  Yes.

19         THE COURT:  Did the jury reach a verdict?

20         PROSPECTIVE JUROR NO. 4:  Yes.

21         THE COURT:  Were you the foreperson?

22         PROSPECTIVE JUROR NO. 4:  No.

23         THE COURT:  Thank you, sir.

24         Juror No. 9:  Ma'am, you had indicated that

25    your husband is a transportation broker?

```
 1              PROSPECTIVE JUROR NO. 9:  Yes.

 2              THE COURT:  What kinds of things is he

 3      brokering?

 4              PROSPECTIVE JUROR NO. 9:  Merchandise, trucks,

 5      everything that goes to the port, containers.

 6              THE COURT:  So anything that goes to the port,

 7      he --

 8              PROSPECTIVE JUROR NO. 9:  Right.  He has his

 9      customers and he gets the trucks for the customers.

10              THE COURT:  Thank you.

11              PROSPECTIVE JUROR NO. 9:  You're welcome.

12              THE COURT:  Juror No. 21:  Ma'am, you had

13      indicated that you're divorced.

14              PROSPECTIVE JUROR NO. 21:  Yes.

15              THE COURT:  What kind of work does your

16      ex-husband do, if you know?

17              PROSPECTIVE JUROR NO. 21:  He's in the

18      military -- well, he's retired military.  And

19      currently, he has a contract with a security system for

20      the front gate -- for the gates now at Fort Bragg,

21      North Carolina.

22              THE COURT:  Okay.  Thank you.

23              Juror No. 27:  Is your wife employed outside

24      the home?

25              PROSPECTIVE JUROR NO. 27:  Yes, she is.
```

1          THE COURT:  What does she do?

2          PROSPECTIVE JUROR NO. 27:  She works at Capri

3     Restaurant.

4          THE COURT:  A restaurant?

5          PROSPECTIVE JUROR NO. 27:  Yes.  She works at

6     Capri Restaurant, and she fills in as a substitute

7     teacher for a private school.

8          THE COURT:  Okay.  And what kind of work is

9     she doing at the restaurant?

10          PROSPECTIVE JUROR NO. 27:  Cashiering.

11          THE COURT:  Sir, there may be witnesses here

12     who are employed by Homeland Security.

13          Given that you're also employed by Homeland

14     Security, would you be able to sit and listen to that

15     evidence and fairly judge that evidence?

16          PROSPECTIVE JUROR NO. 27:  Yes.

17          THE COURT:  Okay, sir.  Thank you.

18          Juror No. 28:  Are you doing billing every day

19     at the medical business?

20          PROSPECTIVE JUROR NO. 28:  Monday through

21     Friday.  Monday through Friday, yes.

22          THE COURT:  You're doing billing every day?

23          PROSPECTIVE JUROR NO. 28:  Yes.  Because

24     there's their payroll and I also do the input in the

25     computer for data of all the patients that the

```
 1    therapists see.

 2              THE COURT:  Is anybody else doing that with

 3    you?

 4              PROSPECTIVE JUROR NO. 28:  Well, they were,

 5    but they got laid off.

 6              THE COURT:  So you're the only one doing all

 7    of that now?

 8              PROSPECTIVE JUROR NO. 28:  Yes, ma'am.

 9              THE COURT:  Thank you, ma'am.

10              PROSPECTIVE JUROR NO. 28:  You're welcome.

11              THE COURT:  Counsel, please approach.

12              (Whereupon, proceedings were had at side-bar

13    outside the presence of the jury which have been sealed

14    per instructions of the Court.)

15              (Whereupon, the following proceedings were had

16    in open court:)

17              THE COURTROOM DEPUTY:  When I call your

18    number, you are official relieved of this panel, and I

19    will meet you out in the lobby area.

20              Juror No. 2, Juror No. 8 and Juror No. 28.

21              Thank you so much for your service.

22              THE COURT:  Thank you.  We appreciate your

23    service.

24              (Whereupon, said members of Prospective Jury

25    Panel No. III exited the courtroom.)
```

1          THE COURT:  Ladies and gentlemen, there is one

2     more portion to the voir dire process in this case.  It

3     is individual questioning.

4          However, we're going to have to start that

5     tomorrow morning.  I have another case with a jury

6     that's deliberating, and there are some issues that I

7     need to take up with the lawyers in regard to that

8     case.  So that may take a bit of time, and I don't want

9     you to have to wait around any further today.

10          So you're going to come back to the lobby

11     tomorrow morning at 9:00 and then you'll be coming into

12     the courtroom one by one to either stand at the lectern

13     or, if you're more comfortable, to sit in the jury box

14     and I'll be asking you some additional questions.

15          Do not discuss this case either amongst

16     yourselves or with anyone else.  Have no contact

17     whatsoever with anyone associated with the trial.  Do

18     not read, listen or see anything touching on this

19     matter in any way.

20          If anyone should try to talk to you about this

21     case, you should immediately instruct them to stop and

22     report it to my staff.

23          Thank you so much for your patience today.

24     Remember, you're coming to the 12th floor again

25     tomorrow morning at 9:00.

1          Have a nice afternoon and evening.

2          (Whereupon, the remaining members of

3    Prospective Jury Panel No. III exited the courtroom at

4    2:56 p.m. and the following proceedings were had:)

5          THE COURT:  We're in recess in this matter

6    until tomorrow morning, 9:00.

7          (End of proceedings.)

8

9               C E R T I F I C A T E

10

11          I hereby certify that the foregoing is an

12   accurate transcription of the proceedings in the

13   above-entitled matter.

14

15

16   _____        /s/Lisa Edwards
         DATE             LISA EDWARDS, CRR, RMR
17                        Official United States Court Reporter
                          400 North Miami Avenue, Twelfth Floor
18                        Miami, Florida 33128
                          (305) 523-5499
19

20

21

22

23

24

25