```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION
              CASE NO. 06-20373-CRIMINAL-LENARD
 3

 4   UNITED STATES OF AMERICA,        Miami, Florida

 5                 Plaintiff,         May 4, 2009 -

 6          vs.                       1:14 p.m. to 6:01 p.m.

 7   NARSEAL BATISTE, et al.,         Volume XLVII (P.M.)

 8            Defendants.          Pages 1 to 153
     -------------------------------------------------------
 9

10                           JURY TRIAL
11          BEFORE THE HONORABLE JOAN A. LENARD,
                UNITED STATES DISTRICT JUDGE
12

13

14   APPEARANCES:

15

16   FOR THE GOVERNMENT:    RICHARD D. GREGORIE, ESQ., and
                            JACQUELINE M. ARANGO, ESQ.
17                          ASSISTANT UNITED STATES ATTORNEYS
                            99 Northeast Fourth Street
18                          Miami, Florida 33132

19
     FOR THE DEFENDANT      ANA MARIA JHONES, ESQ.
20     NARSEAL BATISTE:     300 Seville avenue, Suite 210
                            Coral Gables, Florida 33134
21

22   FOR THE DEFENDANT      ALBERT Z. LEVIN, ESQ.
       PATRICK ABRAHAM:     261 Northeast First Street
23                          Sixth Floor
                            Miami, Florida 33132
24

25
```

2

```
 1    FOR THE DEFENDANT      RODERICK D. VEREEN, ESQ.
        STANLEY PHANOR:      BRINKLEY, HENRYS & LEWIS
 2                           4770 Biscayne Boulevard
                             Suite 1200
 3                           Miami, Florida 33131

 4
      FOR THE DEFENDANT      RICHARD K. HOULIHAN, ESQ.
 5      NAUDIMAR HERRERA:    300 Aragon avenue
                             Coral Gables, Florida 33134
 6

 7    FOR THE DEFENDANT      LOUIS CASUSO, ESQ.
        BURSON AUGUSTIN:     111 Northeast First Street
 8                           Suite 603
                             Miami, Florida 33132
 9

10    FOR THE DEFENDANT      NATHAN CLARK, ESQ.
       ROTSCHILD AUGUSTINE:  17639 South Dixie Highway
11                           Miami, Florida 33157

12
      REPORTED BY:           LISA EDWARDS, CRR, RMR
13                           Official Court Reporter
                             400 North Miami avenue
14                           Twelfth Floor
                             Miami, Florida 33128
15                           (305) 523-5499

16

17

18

19

20

21

22

23

24

25
```

```
 1            THE COURT:  Good afternoon.  You may be

 2    seated.

 3            United States of America versus Narseal

 4    Batiste, et al., Case No. 06-20373.

 5            Counsel, state your appearances, please, for

 6    the record.

 7            MR. GREGORIE:  Richard Gregorie and Jacqueline

 8    Arango on behalf of the United States, your Honor.

 9            MS. JHONES:  Ana Maria Jhones on behalf of

10    Narseal Batiste, who's present.

11            MR. LEVIN:  Albert Levin on behalf of Patrick

12    Abraham, who's present.

13            MR. CASUSO:  Lou Casuso on behalf of Burson

14    Augustin, who's present.

15            MR. CLARK:  Nathan Clark for Rotschild

16    Augustine, who's present.

17            MR. HOULIHAN:  Richard Houlihan with Naudimar

18    Herrera.

19            MR. VEREEN:  Roderick Vereen for Stanley

20    Phanor, who's present.

21            THE COURT:  All the Defendants are present.

22            I just want to correct something for the

23    record.

24            I did, in fact, read both *Thomas* and *Baker*

25    over the weekend.  I have now reread them.  And I've
```

1    thought about your requests.

2         At this juncture, I find that, while the

3    sanctity of jury deliberations is paramount, under the

4    circumstances of this case at this time, where we have

5    a situation where 11 jurors are here, Juror No. 4 is

6    the 12th juror, after the occurrences on Friday is not

7    here, that it is appropriate for the Court to disclose

8    the notes, and I will allow counsel to come up side-bar

9    and read both the note from the jury and the note from

10   Juror No. 4.

11        You may come up.

12        (Whereupon, proceedings were had at side-bar

13   outside the presence of the jury which have been sealed

14   per instructions of the Court.)

15        (Whereupon, the following proceedings were had

16   in open court:)

17        THE COURT:  Are you ready to make your motions

18   known as to how the Court should proceed?

19        MR. GREGORIE:  Your Honor, from the United

20   States, the position is that this juror should be

21   dismissed.  Your Honor called the jurors back on Friday

22   and instructed them that they were to follow the law

23   and to further deliberate.

24        This juror made the obvious decision not to be

25   here today and told this Court that she would not be

1    here tomorrow, your Honor.

2           That's a statement on the part of the juror

3    that she would not follow the instruction to be here to

4    further deliberate or to follow the law, your Honor.

5           Based on that, your Honor has the discretion

6    to dismiss that juror.

7           THE COURT:  Let me ask you a question,

8    Mr. Gregorie.

9           MR. GREGORIE:  Yes, your Honor.

10          THE COURT:  Is it your -- is it the

11   Government's position that I can do that without having

12   a hearing pursuant to *Abbell*?

13          MR. GREGORIE:  Yes, your Honor.

14          THE COURT:  And do you have authority for

15   that?

16          MR. GREGORIE:  I believe --

17          MS. ARANGO:  Judge, the *United States versus*

18   *Camejo* case --

19          THE COURT:  Yes.

20          MS. ARANGO:  -- 929 F.2d 610 at 615, Eleventh

21   Circuit, 1991.

22          In that case, your Honor, the trial judge just

23   did an *ex parte* conference with the pertinent juror

24   without the presence of counsel.

25          And in our situation here, you have already

1    heard from the Court -- excuse me -- from the juror

2    that she is not going to be here, doesn't know when

3    she's going to be here.  I mean, I think that that is

4    tantamount to having an *ex parte* conference with her.

5            Also, this case goes on to hold that this

6    procedure -- there's no abuse of discretion in the

7    judge's *ex parte* inquiry to ascertain the cause of the

8    juror's tardiness in attending court, nor do we find

9    any prejudice resulting from that procedure.

10           That's the *Camejo* matter.

11           It also refers back to the *Watchmaker* case,

12   *United States versus Watchmaker*, 761 F.2d 1459,

13   specifically at 1465, Eleventh Circuit, 1985.

14           That also involved just an *ex parte* meeting

15   between the trial judge and the juror, who asked to

16   speak to the judge.

17           The Court found -- the defense argued that a

18   hearing should have been held.

19           The Court specifically held at Page 1465,

20   "Not only is the procedure to be used in investigating

21   alleged juror misconduct within the discretion of the

22   Trial Court" -- and it has a citation to *Yonn* --

23   Y-o-n-n -- "but the failure to hold a hearing

24   constitutes an abuse of discretion only when there is

25   evidence that the jury was subjected to influence by

1    outside sources."

2         So a hearing is only necessary when the record

3    shows that the juror misconduct has to do --

4         THE COURT:  What year is that case?

5         MS. ARANGO:  That is 1985.

6         THE COURT:  So that's pre-*Abbell*.  Correct?

7         MS. ARANGO:  Yes.

8         THE COURT:  *Abbell* is a 2001 case.

9         MS. ARANGO:  Yes.

10        But this case was cited in *United States*

11   *versus Caldwell*.  That is also a 1985 case, 776 --

12        THE COURT:  Was it cited in *Camejo*?

13        MS. ARANGO:  Let me go back --

14        THE COURT:  I'm sorry.  Were you citing

15   *Camejo*?

16        MS. ARANGO:  I was citing *Camejo* to begin

17   with.  Well, it cites *Caldwell*.  The *Camejo* case cites

18   *Caldwell*, *United States versus Caldwell* --

19   C-a-l-d-w-e-l-l -- 776 F.2d 989 at 997, Eleventh

20   Circuit, 1985.

21        *Caldwell* refers to *Watchmaker*.

22        So, basically, it holds the same thing.  It

23   was an *ex parte* conference between the Trial Judge and

24   the pertinent juror.  It cites to *Watchmaker*, and it

25   says, under these principles at Page -- let's see --

1    I'm referring to *Caldwell* at Page --

2          THE COURT:  In both *Caldwell* and *Camejo*, it

3    was the judge who had the contact with the juror.

4    Correct?

5          MS. ARANGO:  Correct.  Correct.

6          THE COURT:  We have a slightly different

7    situation here as of right now.  Would you not agree?

8          MS. ARANGO:  Your Honor has had no contact

9    with the juror?

10          THE COURT:  No.

11          MS. ARANGO:  Okay.  Yes.  In these cases --

12          THE COURT:  Other than I did hear the message

13    that she left on Patricia's voicemail yesterday

14    afternoon.  But I have had no personal contact with

15    her.  No.

16          MS. ARANGO:  Okay.  But, again, these cases

17    find -- in that case, the record evidence was unclear.

18          Her we have ample record evidence.

19          And in those cases, they said that a hearing

20    is unnecessary.

21          So I don't think our situation is vastly

22    different from *Watchmaker*, *Caldwell* and *Camejo*, where

23    you have juror notes indicating that there is an

24    internal problem, you have -- and seeking the dismissal

25    of this juror because she's refusing to deliberate.

1            You have this juror, after she has been

2    instructed on the law and told that she must

3    deliberate, who just doesn't show up and says that

4    she's sick and says she doesn't know when she's going

5    to be able to show up again.

6            I think that is record evidence.

7            And I also want to just cite your Honor to

8    *United States versus Prosperi* -- it's really the same

9    theory of law -- 201 F.3d 1335 at 1340 through -41.

10   And that's Eleventh Circuit, 2000.  It's *United States*

11   *Prosperi*, P-r-o-s-p-e-r-i.

12           And that, again, cites to *Watchmaker*.  That

13   was a post-verdict case.  So they were looking under

14   Rule 606(b).

15           The Court held that failure to hold a hearing

16   constitutes abuse of discretion only when there is

17   evidence that the juror was subjected to influence by

18   outside sources, again referring to *Watchmaker*.

19           In *United States versus Harris* -- and that is

20   908 F.2d 728 at 733 through 734, Eleventh Circuit,

21   1990 -- in that case, there was evidence of -- there

22   was a report to the Court made about discussions that

23   two jurors were having outside of court.

24           The Court in that case decided not to

25   interview the two jurors and found that an examination

1    of the two jurors would only aggravate the situation.

2           And after we talked to them, there's -- there

3    would be a -- there could be a mistrial if the Court

4    talked to the two jurors.

5           Because in that situation, the two jurors had

6    conversations -- allegedly had conversations outside of

7    the presence -- outside of the courtroom, indicating

8    that, "These guys across from us think they're going to

9    get off on this."  And there was another similar-type

10   statement the two jurors allegedly made.

11          The Eleventh Circuit found that the Court's

12   instruction to these two jurors, rather than holding a

13   full hearing and examining them, was proper.

14          I would also tell you, your Honor, although I

15   think our situation is a little different than *Polar*

16   because we do have the record evidence, that case is

17   also helpful -- I cited it to you earlier, but it's

18   369 F.3d 1248 at 1253 to -54, Eleventh Circuit, 2004.

19          The jurors here sent the District Court three

20   separate notes complaining of an uncooperative juror.

21   The third and final note requested that the judge

22   dismiss the juror, who was refusing to vote and had

23   indicated a bias against the Government and the

24   criminal justice system.

25          The Government, in turn, had moved the

1   District Court to excuse him pursuant to Rule 23(b).

2   "Under the circumstances, the District Court's

3   one-on-one interview of Juror Bonilla was not only

4   appropriate, but was even necessary to -- as to avoid

5   premature or unjustified dismissal."

6           And then it went to talking about the danger

7   that a dissenting juror might be excused under the

8   mistaken view that the juror is engaging in

9   impermissible nullification.

10           "A juror should be excused only when the

11   District Court satisfies itself beyond a reasonable

12   doubt that no substantial possibility exists that the

13   juror is basing his or her decision on the sufficiency

14   of the evidence."

15           In this case, your Honor, there is no

16   record -- there is no evidence at all that the

17   dismissal that is being sought here is based on the

18   juror's views.  There's no indication in any of those

19   notes what the juror's views actually are.

20           So I think *Polar* is distinguishable in this

21   case in that the reason that the Court -- the reason

22   that the Eleventh Circuit found that it was proper for

23   the District Court to question Juror Bonilla was

24   because the District Court had to engage in determining

25   that distinction, whether or not that juror was being

1    dismissed because of his views on the evidence or

2    because of his refusal to participate in deliberations.

3           We don't have that situation here.  We

4    don't -- I believe your Honor can find that dismissal

5    is proper on the grounds that this person is --

6           THE COURT:  What is the standard?

7           MS. ARANGO:  Well, the standard is just as I

8    just read, your Honor:  Because -- you mean the

9    standard for --

10          THE COURT:  Dismissal.

11          MS. ARANGO:  The standard -- well, in this

12   case, the standard for the dismissal is that this juror

13   is refusing to participate.  And there's no indication

14   at all in the record that this juror is refusing to

15   participate -- is -- that the dismissal would be on the

16   grounds of her views of the evidence in this case.

17          By reading all of those notes, there's no

18   indication anywhere in there about how this juror views

19   the evidence in this case at all.  It's just saying:

20   She refuses to participate.  She won't listen to any --

21   you know, she won't engage in discussions with us.  We

22   question our own -- we cross-examined ourselves.  We

23   questioned our own opinions.  She's not doing that.

24          That's -- I think that that's sufficient

25   evidence on the record.  And there's nothing -- for

1    instance, here in this *Polar* case, the note said that

2    the juror had indicated a bias against the Government

3    and the criminal justice system.

4         So the Court felt it was necessary -- and I

5    agree under those circumstances it was necessary --

6    for -- to at least conduct a one-on-one interview of

7    the juror to ensure that the jury wasn't seeking that

8    juror's dismissal because of that juror's views.

9         That's, I think, a very critical distinction

10   from the situation we have here where there's no

11   indication that this jury is seeking dismissal of the

12   juror because of the juror's views on the evidence in

13   this case but, rather, just simply the fact that the

14   juror is refusing to participate in the deliberative

15   process.

16        And then we have bolstered upon that the juror

17   not showing up.

18        So, I mean, we have a much stronger situation

19   here for dismissal -- outright dismissal of this juror

20   than the *United States versus Polar* case.

21        MR. LEVIN:  Judge, just to briefly respond as

22   to why she didn't show up, maybe Ms. Arango missed that

23   portion of the note which indicated that Juror No. 4

24   was threatened with physical violence, that one of the

25   other members of the jury lunged across the table

```
 1    towards her.  Maybe she didn't read that part of the

 2    note.  Maybe that's why she's not here today, your

 3    Honor.

 4           Having said all that, I find it amazing that

 5    two seasoned prosecutors can stand up here and say that

 6    the Abbell decision does not apply in this case after

 7    reading those notes, your Honor.

 8           As the Court is well aware, a juror should be

 9    excused only when no substantial possibility exists

10    that she is basing her decision on the sufficiency of

11    the evidence, citing the Thomas case and the Brown

12    case.

13           "We mean for this standard to be basically a

14    beyond a reasonable doubt standard."

15           Your Honor, you've read those notes.  It is

16    clear that this juror has been engaging in the

17    deliberation process, that she has been threatened.

18    She's indicated to this Court that she would love to

19    continue service here and see this case to the end.

20           She has indicated that she has been, as I

21    indicated, threatened, she's tried to express her views

22    to her fellow jurors in this case and that -- the

23    foreman in his note indicated that she refused to

24    answer his cross-examination of her with regard to the

25    deliberations in this case.
```

1          This is a deliberating jury, your Honor.  This

2      is a deliberating juror.  The *Abbell* case clearly

3      indicates that, in this type of a situation, this Court

4      must conduct an evidentiary hearing with regard to this

5      matter.

6          The cases that Ms. Arango has cited have

7      absolutely no application whatsoever to the facts in

8      this case based on what's contained in both the notes

9      that we have just read at side-bar.

10         Additionally, your Honor, I, on behalf of my

11     colleagues, would like an unredacted version of the

12     note sent by Juror No. 4, which, apparently, either

13     identifies -- it seems that there's been some

14     white-outs with regard to which juror is threatening

15     her or other aspects with regard to the issues that are

16     apparently taking place in this jury room.

17         THE COURT:  The only thing that was redacted

18     on her note was the juror number of the other person

19     that she had a problem.  There was nothing else

20     redacted except that juror number.

21         MR. LEVIN:  Okay.  Judge, it would appear

22     that --

23         THE COURT:  Let me just make sure the record's

24     clear, that nowhere in the note from the jury that's

25     signed by the foreperson does it indicate that the

1   foreperson is cross-examining.

2          What the note indicates is that, "We

3   consistently cross-examine ourselves."

4          MR. LEVIN:  Judge --

5          THE COURT:  So it's "we."

6          MR. LEVIN:  Judge, I would like to read that

7   note again, because I read that the author of that

8   note, written in the first person, is indicating that,

9   "She refused to answer my cross-examination" or

10  something along those lines.

11         THE COURT:  Sure.  I'll let you read it again.

12  It's up here.

13         It's, "We, the members of the jury" -- that's

14  how it begins -- and it says -- and I'm quoting now --

15  "Throughout our discussions, we consistently

16  cross-examine ourselves, trying to make a just decision

17  based strictly on the law and the evidence which has

18  been provided."

19         If you want to come up and make sure that it

20  says "we," Mr. Levin, and that I'm not misrepresenting

21  that, please feel free.

22         MR. LEVIN:  Yes.  If I may approach.

23         THE COURT:  Sure.  It's right at the bottom of

24  the page, the last line, and continues to the second

25  page.

1        MR. LEVIN:  Well, it says, "When we or I try

2   to cross-examine her on evidence, her answers are short

3   or nowhere to be found."  It says "we or I."

4        THE COURT:  Excuse me?

5        MR. LEVIN:  That's what it says.  "When we or

6   I try to cross-examine her..."

7        THE COURT:  "We."  It does not say --

8   "Throughout our discussions, we -- we consistently..."

9   It says "we" twice.  "We" -- and on the next page, it

10  says, "We consistently..."  It does not say "or I."

11       MR. LEVIN:  Judge, respectfully, may I show

12  you where I'm looking?

13       THE COURT:  Sure.

14       MR. LEVIN:  It's this page (indicating).

15       THE COURT:  Okay.  On the line up above, it

16  does say, "When we or I try to cross-examine her on

17  evidence..."

18       Then it says, "We consistently cross-examine

19  ourselves."  That's what I was reading from.

20       I don't think that changes anything.

21       Does anyone else want to be heard?

22       MS. JHONES:  Yes, your Honor.

23       On behalf of Mr. Batiste, in light of the

24  three-page, three-page, note written by Juror No. 4, I

25  renew my motion for a mistrial.

1        It is abundantly evident from the note from

2   Juror No. 4 that this was a conscientious juror trying

3   to execute her oath and that she has been attacked.

4        What is unclear, although highly, highly

5   indicative, if you read her note, three pages of

6   detail, detail, as to what she has been submitted to

7   throughout the course of this deliberation process, the

8   juror that was seated next to her -- that juror's

9   number is whited-out.  And I renew Mr. Levin's motion

10  for -- to view the unredacted note.

11       But it appears that that juror happens to be

12  the foreman.  It appears that this foreman -- it

13  appears that --

14       THE COURT:  I can tell you that that juror is

15  not the foreperson.

16       MS. JHONES:  Okay.  Thank you, your Honor.

17       THE COURT:  The person's number that's

18  whited-out is not the foreperson.

19       MS. JHONES:  Okay.  Thank you.

20       And that this person -- one of the things that

21  she indicated was that the person that was seated next

22  to her -- she mumbled -- this juror, Juror No. 4,

23  mumbled some words and the person seated next to her

24  apparently published those words to the other jurors.

25       It is abundantly clear from that letter that

1   what's going on in that deliberation room is a hostile

2   environment and that this woman has been attacked for

3   her views, not that she's failed to deliberate.  Quite

4   the contrary.  Not that she's failed to deliberate.

5          This is precisely the type of scenario that

6   *Abbell* addresses.  Quite frankly, it cannot be cured.

7          It is -- what this jury has done today, today,

8   without even deliberating, ignoring the Court's

9   instruction on Friday to not discuss the case amongst

10  yourselves until everyone is present -- they ignored

11  the Court's instruction, because there are jurors in

12  that room that are either under the influence or

13  control of others.

14         But this juror had the audacity to state her

15  own position, which was not acceptable to all or other

16  members of that jury.  The environment in that jury

17  room cannot be cured, cannot be cured.

18         THE COURT:  Do you have anything to say in --

19         MR. LEVIN:  Judge, I'm going to move for a

20  mistrial.  I neglected to do that, your Honor.

21         And I did have additional comments I wanted to

22  make before the Government responded.

23         It's just very bizarre that, on a day when

24  Juror No. 4 is not even here, this jury, through its

25  foreman, communicates to the Court the need to have

1    this woman excused.

2           When she's not even here to defend herself,

3    he's generating -- they're generating, through the

4    foreman -- I believe it's the foreman acting *sua*

5    *sponte*, with all due respect.

6           Nowhere, mind you, did he say in his note on

7    Friday that she said --

8           THE COURT:  I didn't know you were in the jury

9    room, Mr. Levin.

10          MR. LEVIN:  I'm not in the jury room.  I'm

11   offering my opinion.

12          Nowhere, your Honor -- nowhere, your Honor,

13   did he say in the note the other day that she said, "I

14   don't believe in the law and I don't trust the law."

15          And curiously, today, he says in his letter to

16   the Court that that's what she's been saying and

17   everybody will back him up.

18          MR. VEREEN:  Judge --

19          MR. GREGORIE:  Judge, if the --

20          MR. VEREEN:  Judge, before the Government

21   responds, I would like to add to the record as well.

22          MR. GREGORIE:  Well, Judge, I think that needs

23   a response because he's ignored the very statement in

24   Juror No. 4's own letter where she said, "I made a

25   statement about the law that was misrepresented or

1    misread," but was clearly a statement that the other

2    jurors all wrote that she said she wouldn't obey the

3    law, she wouldn't follow it, your Honor.

4            So that's clearly in the instructions.

5            The problem is we've now entered into their

6    deliberations, Judge.  This is the very fear that your

7    Honor had.  Defense attorneys demanded that it happen.

8    And now they want to be in the jury room.

9            They're not there, Judge.  We can't tell

10   what's going on in that jury room.  And by the very

11   fact that we've now had these notes presented to us,

12   we're now making argument, guessing what's going on in

13   the jury room, Judge.  And that shouldn't happen.

14           MR. VEREEN:  Well, what I wanted to add, your

15   Honor -- what I wanted to add --

16           MS. ARANGO:  I just want to --

17           MR. VEREEN:  What I wanted to add --

18           MS. ARANGO:  -- make one point --

19           MR. VEREEN:  May I speak, please?

20           MS. ARANGO:  Just one cite.

21           One point on Juror No. 4's note, she indicated

22   that, on Monday, she felt this way.  I would just point

23   that out.

24           And, again, that's record evidence that she

25   was refusing to deliberate as of the very first day of

1   deliberations.

2         MR. LEVIN:  The only way it becomes record

3   evidence is if you have a hearing in accordance with

4   *Abbell*.

5         MR. VEREEN:  I would first ask that not only

6   should the notes be made a part of the record, I think

7   they should be read into the record.

8         What I find more troubling about this whole

9   entire matter with regard to when Juror No. 4 advised

10   the Court of when that note was first submitted was the

11   fact that she had been threatened with physical

12   violence.

13         At no time did this Court advise defense

14   counsel nor the prosecution that this juror had made

15   such a statement.  And at no time did the Court --

16         THE COURT:  I believe I did.

17         MR. VEREEN:  Not with physical violence.

18         THE COURT:  I said that she was threatened.

19         MR. VEREEN:  Well, I think it was -- but not

20   with physical --

21         THE COURT:  Regardless of that, you know --

22         MR. VEREEN:  If I may, I think that's --

23         THE COURT:  Well, you've now read the note.

24         MS. JHONES:  Your Honor, she was sent home.

25   That was the problem, that we requested that we -- that

1    no action be taken until we were aware of what's going

2    on so we could properly address it.

3            What happened was what I believe to be very

4    serious, serious, serious statements made by that

5    juror, three pages of explanations of what this juror

6    has been through.  And the Court instructed them on

7    Friday as if they were just talking about the weather,

8    quite frankly.  That's the problem.

9            This lady was in fear.

10           THE COURT:  I don't --

11           MS. JHONES:  She was in fear and she didn't

12   come back.  She didn't come back.  Nothing speaks

13   louder than what this lady's going through and she

14   didn't come back.

15           THE COURT:  Well, let me explain something to

16   you so you understand.

17           What goes on in the jury room between jurors

18   goes on in the jury room between jurors, and there is a

19   lot of give and take that may go on.  None of us are

20   privy to that.

21           And jurors, both individually and

22   collectively, have to work together and separately to

23   try and resolve their differences, if they can, and

24   come to a unanimous verdict.

25           That is why the Court normally does not get

1    involved in the deliberative process nor does the Court

2    allow anyone else to become privy to the deliberative

3    process.

4           This is exactly why I proceeded with such

5    extreme caution in revealing these notes to you,

6    because these notes speak to the deliberative process.

7           So whether a juror feels that one juror acted

8    improperly towards another juror or someone feels that

9    they were threatened or not threatened is really -- it

10   is something that is unique to their body to resolve or

11   not resolve.  It is neither for the Court nor for the

12   lawyers to enter into that arena.

13          If they can resolve it, they resolve it.  If

14   they can't, they do not.

15          Now, we have a situation here where there have

16   been certain allegations made.

17          I do not find that my instruction, first of

18   all, on Friday, which reiterated the law and the duties

19   of the jury to obey the law, follow the law and apply

20   it to the evidence was at all improper or unwarranted

21   under the circumstances.

22          Now, I do -- first of all, I'm going to deny

23   the motion for mistrial.  I don't find that there's any

24   basis for a mistrial at this juncture.

25          The deliberations of this jury have not been

1   so infected that they cannot proceed to continue to

2   deliberate.

3           As I said earlier, this is a difficult

4   situation concerning whether or not this juror can

5   continue to deliberate and these jurors can deliberate

6   with each other.

7           The question really is -- pursuant to *Abbell*,

8   is whether or not there's no substantial possibility

9   that Juror No. 4 is basing her decision on the

10  sufficiency of the evidence.

11          And that's a very high standard.  It requires

12  a hearing.

13          I find that, pursuant to *Abbell*, which is a

14  2001 decision by the Eleventh Circuit, that it is not

15  sufficient for me to rely on what transpired on Friday

16  and the fact that this juror is not here.

17          Maybe she really is sick.  I don't know.  All

18  I know is she did not appear today it and she says she

19  is ill.

20          I think, at the very least, it requires a

21  hearing and an inquiry by the Court as to the 11 jurors

22  and Juror No. 4 as to what has gone on, not basing it

23  on opinions or views of the case, but based upon

24  whether or not everyone in that jury room is willing to

25  follow the instructions on the law, willing to obey the

```
 1   Court's instructions and willing to apply the evidence

 2   to the law.

 3            So at this juncture, I'm denying the motions

 4   for mistrial.  I don't find that there's a sufficient

 5   amount of evidence in the record for me to make a

 6   finding which Abbell requires me to do, that there's no

 7   substantial possibility that Juror No. 4 is basing her

 8   decision on the sufficiency of the evidence.

 9            And I do find that this requires a hearing.

10            The question now is:  How do we proceed with

11   the hearing?

12            MS. ARANGO:  Judge, may I give you my position

13   on that?

14            I think we can proceed with the way the Court

15   did in the Polar case and in the Ronda case, and that

16   is your Honor's one-on-one questioning of the juror.

17            We can provide questions --

18            THE COURT:  You're talking about --

19            MS. ARANGO:  In Ronda, Juror No. 4.

20            THE COURT:  Just Juror No. 4?

21            MS. ARANGO:  Well, let me just -- I think

22   Juror No. 4 was the most -- the situation that was --

23   that was closest to our situation.

24            But --

25            THE COURT:  I'm sorry.
```

1              Are you referring to our Juror No. 4 or Juror

2    No. 4 in the case?

3              MS. ARANGO:  I'm sorry.

4              I'm referring to Juror No. 4, by coincidence,

5    in the *Ronda* case.

6              THE COURT:  In the *Ronda* case.  Okay.

7              MS. ARANGO:  Let me just read *Polar* first.

8              I may have already read this.

9              But in that case, "The jurors here sent the

10   District Court three separate notes complaining of an

11   uncooperative juror.

12             "The third and final note requested that the

13   judge dismiss the juror, who was refusing to vote and

14   had indicated a bias against the Government and the

15   criminal justice system.

16             "The Government, in turn, had moved the

17   District Court to excuse him pursuant to Rule 23(b).

18             "Under the circumstances, the District Court's

19   one-on-one interview of Juror Bonilla" -- B-o-n-i-l-l-a

20   -- "was not only appropriate, but was even necessary,

21   so as to avoid premature or unjustified dismissal."

22             And it went to go -- on to discuss the

23   standard set forth in *Abbell*, which is, "The District

24   Court must satisfy itself beyond a reasonable doubt

25   that no substantial possibility exists that the juror

 1   is basing his or her decision on the sufficiency of the

 2   evidence."

 3          And then the Court goes on to say, "We

 4   conclude that the District Court properly exercised its

 5   increase in making necessary inquiry to determine

 6   whether there was sufficient cause to dismiss Juror

 7   Bonilla under Federal Rule of Criminal Procedure

 8   23(b)."

 9          My -- and let me just finish with *Ronda*.

10   *United States versus Ronda* -- R-o-n-d-a -- 455 F.3d

11   1273 at 1298.  And, again, just -- the headnote -- the

12   note -- the headnote --

13          THE COURT:  What year is *Ronda*?

14          MS. ARANGO:  1298 -- it's Eleventh Circuit,

15   2006.

16          They cite to *Abbell*.  The Court cites to

17   *Abbell*.  And then -- in that case, there's actually

18   three jurors that the Court had to contend with.

19          And with respect to Juror No. 4 -- I'm going

20   to just read from the decision:  "As the District Court

21   was finalizing its response about Juror No. 1, Juror

22   No. 4 sent a note requesting to be dismissed because

23   the trial was adversely affecting her sleep and health.

24          "Juror No. 4's note also indicated that she

25   was being insulted, yelled at and offended by other

1    jurors.

2           "The parties and the District Court were

3    concerned that Juror No. 4's request for dismissal was

4    not health-related but, rather, was motivated by the

5    deliberations themselves."

6           Very similar to this case.

7           "The District Court questioned Juror No. 4

8    outside the presence of the other jurors.  She claimed

9    that her request was not related to her opinion and

10   deliberations but, rather, truly was due to health

11   concerns.

12          "Juror No. 4 explained that she had felt the

13   same way previously and had been hospitalized for three

14   days.

15          "The District Court elected to delay

16   deliberations so that Juror No. 4 could see her doctor

17   who might be able to determine whether her complaints

18   were truly health-related."

19          And then it went on to say that the juror went

20   to her doctor and then the Court telephoned the doctor.

21   The doctor explained that the juror had a history of

22   panic attacks and depression and that her mother had

23   died recently and that the doctor's medical opinion was

24   that she was not mentally capable of handling jury

25   service.

1          So the Court found under 23(b) that this

2    juror was incapacitated and not able to continue

3    deliberations and it had nothing to do with her views

4    on the evidence in this case, even though she

5    complained that the other jurors were insulting,

6    yelling at her, offending her and attacking her.

7          So I think that our is position is that you

8    should start with just a one-on-one interview of this

9    juror, and then I think we should just take it step by

10   step.

11         I don't know if it's really necessary to

12   interview all of the other jurors at this time.

13         You may be able to come to a conclusion about

14   this juror without having to interview everybody else.

15         So my point is that maybe you should just

16   start there.  It's the least intrusive thing to do.

17         THE COURT:  Let me just interrupt you for one

18   moment.

19         Can you let them know that they can come back

20   in about a half an hour?  They don't need to wait in

21   there.

22         THE COURT SECURITY OFFICER:  Yes, your Honor.

23         MS. ARANGO:  Because the way I'm -- the way

24   that we are seeking that your Honor approach this is

25   the way that these -- the judges did -- the Trial Court

1    judges did in these two cases and it was resolved

2    without the necessity of having to interview all of the

3    jurors, which the harm there -- or the potential harm

4    is, you know --

5         THE COURT:  The difference is that Juror No. 4

6    in the *Ronda* case was solely about health concerns.

7    Correct?

8         Here, we have a different situation.

9         MS. ARANGO:  Well --

10        THE COURT:  Wasn't that --

11        MS. ARANGO:  She said that it was adversely

12   affecting her sleep and health, but that she was being,

13   quote -- she was, quote, being insulted, yelled at and

14   offended by other jurors, close quote.

15        So, yes, she was saying her problem was a

16   problem, but her health was a problem as a result of

17   the deliberations and the fact that she felt she was

18   being attacked by the other jurors.

19        So it's not entirely just a health situation

20   like we had with Juror No. 2.

21        THE COURT:  So your position is that I start

22   with Juror No. 4?

23        MS. ARANGO:  Yes.

24        MS. JHONES:  Your Honor, first of all, I'd

25   like an opportunity to show both notes to my client,

1    which I have not done.

2         Secondly, I'd like an opportunity to confer

3    with my colleagues as to how to proceed in light of

4    what we have learned in having read these notes, in

5    light of the Court's denial of the motion for mistrial,

6    which I believe to be the only remedy in this case at

7    this juncture.

8         MR. LEVIN:  I join in that request, your

9    Honor.

10        MR. HOULIHAN:  As does Mr. Herrera.

11        MR. LEVIN:  I'd like my client to be able to

12   read the notes.

13        THE COURT:  Okay.  Well, you can -- I'll allow

14   you to take the notes to counsel table so you can show

15   them to the Defendants.

16        MS. ARANGO:  Judge, there was a lot of quoting

17   going on by defense counsel from those notes.

18        I didn't take any notes from the notes.  I was

19   just speaking on my --

20        THE COURT:  This is not for the purpose of

21   taking notes about these notes, but for the Defendants

22   to be able to read them.

23        So why don't you pass one down, Ms. Jhones,

24   to -- so Mr. Abraham can read it.

25        MS. JHONES:  (Complies.)

1          THE COURT:  Someone has a phone.  Please turn

2     it off.

3          MS. JHONES:  Your Honor, may we step out to

4     the attorney room for a minute?

5          THE COURT:  I need the notes back before you

6     do that.

7          MS. JHONES:  Okay.

8          (Tenders documents to the Court.)

9          May we step out, your Honor?

10         THE COURT:  Sure.

11         MS. JHONES:  Thank you.

12         (Discussion off the record.)

13         THE COURT:  Yes.

14         MR. LEVIN:  Your Honor, the defense's position

15    is that this Court should conduct a full-blown

16    evidentiary hearing consistent with *United States*

17    *versus Abbell*, 271 F.3d 1286, Eleventh Circuit, 2001,

18    and do just as Judge Hoeveler did in that case, which

19    is talk to each of the jurors, including Juror No. 4,

20    and do that in open court individually.

21         I would also add that I believe and we believe

22    that Juror No. 1 himself should also be questioned with

23    regard to what occurred on Monday and Tuesday of last

24    week with regard to the initial phases, if you will, of

25    this deliberation.

1          Now, granted, I know the Court discharged that

2    juror and replaced that juror with an alternate and, in

3    accordance with Rule 23, had to instruct the jury and

4    ask the jury if they could begin deliberations anew and

5    that, in essence, deliberations were to begin anew and

6    did begin anew this past Friday.  That's because of the

7    replacement.

8          However, there were deliberations that

9    occurred in this case.  There were two days of

10   deliberations where none of this ever surfaced.

11         We did have an indication and do have an

12   indication from a communication that apparently

13   occurred between Juror No. 4 and Ms. Mitchell prior to

14   that day about something to do with her intention to

15   not deliberate the case.

16         However, during Days 1 and 2 of

17   deliberation -- and I'm referring to last Monday, the

18   27th, and last Tuesday, the 28th, there were,

19   apparently -- and part of maybe the 29th -- I'm not

20   clear at this point -- but there were deliberations

21   that occurred.

22         There were deliberations that occurred without

23   any indication that there was any kind of refusal to

24   deliberate, refusal to follow the law.

25         And I believe that, based upon what's

1   transpired in this case and receiving the notes that

2   we've just received for the first time, fundamental

3   fairness requires that this Court conduct such a

4   full-blown evidentiary hearing where each of the jurors

5   that has participated in the deliberation process,

6   whether it be Phase 1 or Phase 2, as I've described it,

7   that is, that is, the Monday and Tuesday part where

8   they were supposedly beginning their deliberations

9   anew, be questioned in accordance with *United States*

10  *versus Abbell* and that it be done in open court

11  individually and with each of those members of this

12  jury being questioned with regard to what's happening

13  here, if you will.

14          THE COURT:  You would agree with me that the

15  *Abbell* decision does not reflect whether Judge Hoeveler

16  had that hearing in open court or not?

17          MR. LEVIN:  It does not.  I agree with that,

18  your Honor.

19          And I know that there are obviously different

20  procedures that this Court can employ.  It can do it in

21  the sanctity of its chambers with the court reporter

22  present.  It can do it in the sanctity of its chambers

23  with counsel present.

24          The Court does have discretion to conduct this

25  hearing in any way, shape or form it deems fit to do.

1   So yes.

2          I believe Judge Gold in the *Ronda* case had the

3   lawyers come into chambers while he questioned the

4   jurors in question.

5          MS. ARANGO:  Judge, I just -- I do believe

6   that -- in order to try to protect jury secrecy, to try

7   to prevent, as I know your Honor is going to try to do,

8   any juror from expressing their views in this case, I

9   think that the safest way to proceed is by your Honor

10  conducting a one-on-one interview in your chambers

11  starting with the juror -- Juror No. 4.  I think you

12  can do so by calling her on the phone.  Lisa could be

13  present with you.

14         THE COURT:  I would not do it over the phone.

15         The *Abbell* case speaks very clearly to the

16  fact that the fact-finder, who is the judge under those

17  circumstances, has to make a determination of demeanor.

18         I do not find evidence or testimony over the

19  phone for me is a sufficient barometer for me to

20  determine demeanor or credibility of witnesses.  I have

21  just never felt that comfortable with it.

22         So I will not do it over the phone.

23         MS. ARANGO:  I understand.  That's -- I have

24  no problem with that.

25         But I do think that it should be done only

1   with your Honor and the juror with Lisa present.  We

2   can then see -- you know, we can watch the realtime and

3   see it occur and, if the defense -- or if we wanted to

4   submit any questions --

5          THE COURT:  You would not have realtime if it

6   was done in chambers.

7          MS. ARANGO:  Okay.  I still think --

8          THE COURT:  It --

9          MS. ARANGO:  In the cases I've cited to you,

10  when the judge has made inquiry one on one, the

11  transcript has been provided afterwards to all counsel.

12          And I think --

13          THE COURT:  Yes.

14          MS. ARANGO:  -- that's a safer way to proceed

15  in this case.

16          I would just also cite to the case of *United*

17  *States versus Kelly*, 749 F.2d 1541.  It's an Eleventh

18  Circuit 1985 case.  And that has to go with -- with

19  respect to the -- your Honor's finding of credibility.

20          If your Honor does find any allegation of

21  juror misconduct -- if your Honor questions the juror

22  and finds that the juror is not credible, if that's a

23  determination that you make, this case says it's not an

24  abuse of discretion to not question the remaining

25  jurors.

```
 1            THE COURT:  What case is that?

 2            MS. ARANGO:  United States versus Kelly --

 3    K-e-l-l-y -- 749 F.2d 1541 at -- this case was an

 4    inquiry into juror bias.  So it's a different situation

 5    than ours, but --

 6            THE COURT:  Is that an Eleventh Circuit case?

 7            MS. ARANGO:  It's Eleventh Circuit.  And I'm

 8    referring to -- Page 1551 is where the discussion

 9    occurs.  Then it goes on to Page 1552.

10            THE COURT:  What year?

11            MS. ARANGO:  1985.

12            So I -- I guess I really -- I'm citing that in

13    favor of the proposition that I think your Honor can

14    take it one step at a time, because --

15            THE COURT:  Would there be any objection by

16    the Defendants to bringing in Juror No. 4 first?

17            MS. JHONES:  I object to that.  I object.

18            I think this lady -- this juror has been

19    coerced enough.  I think that she should not be the one

20    to be questioned first.  I think that that's going to

21    send the wrong message to this juror and I think

22    that --

23            THE COURT:  Why would she know anything?

24            MS. JHONES:  Your Honor, I don't know that she

25    would know.  She may know.  I don't know.  I don't
```

```
 1    believe that to be -- I don't think that should be the

 2    procedure.

 3              And, number two, this lady has gone through

 4    enough.

 5              MR. CLARK:  Your Honor, on behalf of Rotschild

 6    Augustine --

 7              THE COURT:  Well, let me just -- Ms. Jhones,

 8    but you agree that she should be questioned.  Correct?

 9    That's your position?

10              MS. JHONES:  Yes, your Honor.  I agree she

11    should be questioned.

12              THE COURT:  Okay.

13              MS. JHONES:  In light of the Court's denial of

14    the mistrial, certainly the -- a full-blown evidentiary

15    hearing has to be had, in light of the Court's position

16    on the mistrial motion.

17              MR. CLARK:  Your Honor, on behalf of Rotschild

18    Augustine, regardless of whether Juror No. 4 is

19    questioned first, I do think it -- I object to her

20    being the only one questioned and then a preliminary

21    determination being made.

22              I think that, at the very least, the juror

23    that Juror No. 4 says has attacked her should be

24    questioned and --

25              THE COURT:  Well, let me make clear right now,
```

```
 1    I am not going to go into anything regarding the
 2    deliberative process.
 3              MR. CLARK:  I'm not asking --
 4              THE COURT:  I find that such issues regarding
 5    what goes on between jurors is the deliberative
 6    process, that this inquiry by the Court would be very
 7    limited to whether or not there's anyone in the jury
 8    room who was willing or unwilling to follow the law,
 9    who is deliberating or refusing to deliberate and who
10    is willing or unwilling to follow the Court's
11    instructions on the law and willing or unwilling to
12    apply the evidence to the law.
13              And that would be the extent of my inquiry.
14              I do not intend and will not -- I do not find
15    it's appropriate for me to start asking what has gone
16    on in the jury room between jurors.
17              MR. CLARK:  Well, Judge, I -- most
18    respectfully, I agree with that to the most extent.
19              But in this case, I think we have exceptional
20    circumstances.
21              THE COURT:  Well, that's my ruling, Mr. Clark.
22              MR. CLARK:  I just want to make my record.
23              THE COURT:  After reviewing all of the case
24    law -- this is exactly what the case law speaks to.
25              And, specifically, the case that you cited to
```

1    the Court, which was *Brown* and *Thomas*, talks about how

2    careful the Court must proceed -- as well as *Abbell* and

3    *Kemp* -- as to any inquiry and the sanctity of the

4    deliberative process.

5           Here, unfortunately, we've been faced with

6    making an inquiry that does intrude into that process,

7    but only for the purpose of determining if every juror

8    in that jury room is willing or unwilling to follow the

9    law and apply it to the evidence.

10          MR. CLARK:  I understand, your Honor.  I just

11   want to make my record, because I have a case citation.

12          It's cited in the *Baker* case.  It's *Allen*

13   *versus United States*.  It talks about what the duty to

14   deliberate means.

15          THE COURT:  What's the cite?

16          MR. CLARK:  It's 164 US 492 --

17          THE COURT:  164 US --

18          MR. CLARK:  -- 492 at 501.  It's an 1896 case,

19   but it's cited in the *Baker* case.

20          There are limits to how far deliberations can

21   go, and they cannot go to become a coercive -- the

22   jurors cannot coerce another juror.

23          So, obviously, the *Baker* case says you tell

24   them that you cannot get into their -- what their

25   position is or their -- what their view is on the

1    evidence.

2            However, you know, you can find out if that

3    view is based upon -- their view is based upon

4    reviewing the evidence.

5            But I think, because of the *Allen* case --

6    which says that jurors should, you know, examine the

7    questions with proper regard and deference to the

8    opinions of each other.

9            In this case, we have -- one juror has said

10   that somebody stood up, they've been personally

11   attacked, that they -- I think there's also a real

12   possibility that there's that -- and the record itself

13   shows that she has deliberated and has her opinion and

14   it's not respected and somebody stood up and she felt

15   physically threatened.

16           And I think that, in the *In Re:  Bushells*

17   case -- B-u-s-h-e-l-l-s -- also cited in the *Thomas*

18   decision, you know, a juror cannot be coerced, cannot

19   be threatened or intimidated.

20           I think this case presents a unique situation

21   where it's going to come up and it needs to be

22   addressed to make sure that somebody is not being

23   physically threatened in the jury deliberations.

24           And if that's the case, I believe it's grounds

25   for a mistrial, because it is undermining the fair and

 1    impartial juror deliberations.

 2           So I think that that has to be addressed.

 3           THE COURT:  I am not going to make inquiry

 4    into the deliberative process, nor anybody's opinion,

 5    nor anybody's view of the case.

 6           I don't find that that's appropriate.  I find

 7    that there's a certain give and take that goes on when

 8    12 persons deliberate together.

 9           And let me just read for the record the case

10    that you cited earlier, *United States versus Thomas*,

11    116 F.3d 606, a 1997 decision by the Second Circuit, at

12    Page 618:  "Courts face a delicate and complex task

13    whenever they undertake to investigate reports of juror

14    misconduct or bias during the course of a trial.

15           "This undertaking is particularly sensitive

16    where, as here, the Court endeavors to investigate

17    allegations of juror misconduct during deliberations.

18           "As a general rule, no one, including the

19    judge presiding at a trial, has a right to know how a

20    jury or any individual juror has deliberated or how a

21    decision was reached by a jury or juror.

22           "This secrecy of deliberations is the

23    cornerstone of the modern Anglo-American jury system.

24           "While jury secrecy, like rules insulating

25    jury verdicts of acquittal from prosecutorial

 1    challenge, necessarily serves to permit nullification

 2    to occur, its primary contemporary purpose lies

 3    elsewhere.

 4         "Indeed, courts and commentators alike

 5    recognize that the secrecy of deliberations is

 6    essential to the proper functioning of juries.  It is

 7    well understood, for example, that disclosure of the

 8    substance of jury deliberations may undermine public

 9    confidence in the jury system and poses a there to

10    adjudicatory finality.

11         "Especially troublesome is the danger that

12    such disclosure presents to the operation of the

13    deliberative process itself.  As one commentator has

14    observed, juror privacy is a prerequisite of free

15    debate, without which the decision-making process would

16    be crippled.

17         "The precise value of throwing together in a

18    jury room a representative cross-section of the

19    community is that a just consensus is reached through a

20    thoroughgoing exchange of ideas and impressions.

21         "For the process to work according to theory,

22    the participants must feel completely free to dissect

23    the credibility, motivations and just desserts of other

24    people.

25         "Sensitive jurors will not engage in such a

1    dialogue without some assurance that it will never

2    reach a larger audience.

3         "Freedom of debate, as Justice Cardozo wrote,

4    might be stifled and independence of thought checked if

5    jurors were made to feel that their arguments and

6    ballots were to be freely published to the world,"

7    quoting from *Clark versus United States*, 289 U.S. 1, a

8    1933 decision by the United States Supreme Court.

9         "See also *United States versus Antar*, 38 F.3d

10   1348, at 1367, a Third Circuit decision, 1994, a

11   concurring opinion:  'We must bear in mind that the

12   confidence'" -- and this is a quote -- "'We must bear

13   in mind that the confidentiality of the thought

14   processes of jurors, their privileged exchange of views

15   and the freedom to be candid in their deliberations are

16   the soul of the jury system.'  *In Re:  Globe Newspaper*

17   *Company*, 920 F.2d 88 at 94, a First Circuit decision,

18   1990.

19        "It is undisputed that the secrecy of jury

20   deliberations fosters free, open and candid debate in

21   reaching a decision."

22        And then there's a quote from *Jury Secrecy*

23   *and the Media:  The Problem of Post-Verdict Interviews*,

24   1993, University of Illinois Law Review, 295:  "Jurors

25   must deliberate in secret so that they may communicate

 1   freely with one another, secure in the knowledge that

 2   what they say will not be passed along to others."

 3           And then *The Occasions of Secrecy* 47,

 4   University of Pittsburgh Law Review, 579 at 646, 1986:

 5   "The secrecy of the jury room, like that of the Supreme

 6   Court conference, is designed to promote the free and

 7   candid interchange of views."

 8           And this -- "The jury system incorporated in

 9   our Constitution by the framers was not intended to

10   satisfy yearnings for perfect knowledge of how a

11   verdict is reached, nor to provide assurances to the

12   public of the primacy of logic in human affairs, nor

13   was it subordinated to a right to know found in the

14   First Amendment.

15           "The jury, as we know it, is supposed to reach

16   its decisions in the mystery and security of secrecy.

17   Objections to the secrecy of jury deliberations are

18   nothing less than objections to the jury system itself.

19           "Because the rule of secrecy is fundamental to

20   the effective operation of the jury system, it is not

21   surprising that courts have been concerned to maintain

22   the confidentiality of the process even after a verdict

23   has been returned and the jury has been formally

24   discharged.

25           "It is the historic duty of a trial judge to

1   safeguard the secrecy of the deliberative process that

2   lies at the heart of our system of justice even in the

3   face of relentless and sometimes inappropriate demands

4   by the news media and the public for post-verdict

5   disclosure of what went on behind the closed door of

6   the jury room."

7            Now, necessarily, because of the situation in

8   this case, I now have determined and have agreed with

9   defense counsel that there must be an inquiry made of

10  this jury as to whether there is jury nullification or

11  someone is refusing to follow the law and apply the law

12  to the evidence in this case.  That is the subject and

13  scope of the inquiry that I must perform.

14           The sanctity of the jury process, as the

15  _Thomas_ court has clearly indicated, must be protected,

16  and I will perform my duty to do so.

17           MR. CLARK:  Your Honor, just --

18           THE COURT:  Now, I have --

19           MR. CLARK:  May I just say one thing in --

20           THE COURT:  No.  I have ruled on that,

21  Mr. Clark, and we're now going to move on.

22           I'm going to have an open hearing in open

23  court.  These jurors have already come in and answered

24  questions in open court.  So this is not something that

25  they are not -- have not experienced.

1          I do not find that I should have this hearing

2    in chambers either with counsel present or provide a

3    transcript.

4          So I am going to bring in the jurors.  I'm

5    going to start with Juror No. 2, who I'm -- I'm going

6    to take them in order, except I do find that it'll take

7    some time for Juror No. 4 to get here.

8          So I'm going to instruct Patricia to now call

9    her and request of her that she come to the court to

10   speak with the Judge.

11         MS. JHONES:  Your Honor, I need to be in front

12   of Judge Garber.  May I --

13         THE COURT:  You're not going to be in front of

14   Judge Garber.

15         MS. JHONES:  I understand.

16         But I'd like to call just to advise him that I

17   cannot be there.

18         THE COURT:  We'll call for you.  Don't worry.

19         MR. LEVIN:  Judge, I just --

20         THE COURT:  Judge Garber is my magistrate.

21   It's not a problem, I assure you.

22         MR. LEVIN:  Your Honor, on behalf of

23   Mr. Abraham, it's our position that questions with

24   regard at least to Juror No. 4 as to the physical

25   threats that were bestowed upon her by other members of

1   the jury would not invade the province of the jury

2   deliberation process --

3           THE COURT:  And I have found that it does.

4           So let me go over the questions that I am

5   proposing to ask of the jurors.

6           First, I have a predicate statement that I

7   would say to each juror:

8           I am not asking you nor should you state or

9   reveal either your own opinions or positions on any of

10  the decisions to be made by the jury or the opinions or

11  positions of any other juror.

12          Without telling me what your or any juror's

13  opinion is regarding the charges or evidence in this

14  case.

15          Question No. 1:  Is there any juror or jurors

16  who are refusing to deliberate?

17          Followup question if the person says "yes":

18  What statements, if any, has Juror X made about

19  refusing or being unwilling to deliberate?

20          Question No. 2:  Without telling me what your

21  or any juror's opinion is regarding the charges or

22  evidence in this case, is there any juror who is

23  refusing to follow the Court's instructions on the law?

24          Followup:  What statements, if any, has

25  Juror X, if there's a positive answer to that question,

```
 1   made about being unwilling to follow the Court's

 2   instructions on the law?

 3          Next question:  Without telling me what your

 4   or any juror's opinion is regarding the charges or

 5   evidence in this case, is there any juror who has

 6   refused to apply the law to the evidence or the lack of

 7   evidence in the case?

 8          If there's an affirmative answer:  What

 9   statements, if any, has Juror X made about being

10   unwilling to apply the law to the evidence or the lack

11   of evidence in the case?

12          The statements that you said regarding what

13   Juror X made -- if there are any statements -- were

14   they made before or after the Court's additional

15   instructions at the close of trial on Friday?

16          And I would ask -- I have some additional

17   questions for Juror No. 4, but we can take that up when

18   Juror No. 4 comes.

19          MS. ARANGO:  I'm sorry, Judge.

20          But the last question:  Were they made before

21   or after the Court's additional instructions -- at the

22   close of --

23          THE COURT:  Well, strike that question.

24          That was a question that I formulated thinking

25   they were going to be deliberating today.  Strike that
```

```
1    last question.
2              Any objections to those questions?
3              MR. CLARK:  Your Honor, on behalf of Rotschild
4    Augustine, at the beginning, when you said has the
5    juror refused to deliberates -- has any juror refused
6    to deliberate, if they answer that "yes," I think the
7    Court has to ask:  Without telling us what that juror's
8    opinion is, has that juror given an opinion?
9              THE COURT:  I'm not interested in what the
10   opinion is.
11             MR. CLARK:  I'm not interested in what the
12   opinion is either.  But if they've already given an
13   opinion, they may -- I'm not asking for the opinion.
14             I said without telling us what the opinion
15   is -- I think what I'm saying is that question, taken
16   out of context, means that they may not want to
17   deliberate anymore, but they already may have given an
18   opinion.
19             That's important to --
20             THE COURT:  You don't perceive that as a
21   problem?
22             MR. CLARK:  I'm sorry?
23             THE COURT:  You don't perceive that as a
24   problem?
25             MR. CLARK:  If a person already has
```

```
 1   deliberated and given an opinion in this case, then --
 2           THE COURT:  Well, but the indication from the
 3   jury --
 4           MR. CLARK:  May not have to deliberate
 5   anymore.  They have an opinion.  They've deliberated
 6   and they've given an opinion.  I think that we're
 7   asking it out of context because they may not want
 8   to --
 9           THE COURT:  I'm not sure what you want me to
10   ask.
11           MR. CLARK:  I would like for you to ask:
12   Without giving us this -- any person -- this juror's
13   opinion, has that juror rendered an opinion in this
14   case?
15           I think the Court has to ask.  If they've
16   given an opinion, then that juror has deliberated and
17   given an opinion and is being -- somebody's trying to
18   coerce another opinion.
19           MS. JHONES:  Your Honor, I have a question
20   that possibly would address that.
21           THE COURT:  Okay.
22           MS. JHONES:  And that is:  Do you understand
23   that every juror has the freedom to hold their own
24   opinion about evidence in this case?
25           Without telling us what the opinion is, do
```

 1   they understand that, that every juror has the freedom

 2   to -- and, indeed, indeed, does -- do you understand

 3   that every juror has the freedom to hold their own

 4   opinion about the evidence in this case?

 5          And that's what we're talking about, because

 6   there has to be a tolerance without physical threat.

 7   There has to be a tolerance of everyone's opinion, as

 8   the Court's instructions say.

 9          The question is whether or not these jurors

10   understand that, in light of what -- what was revealed

11   to us in these notes.

12          MS. ARANGO:  Judge, I believe that starts

13   getting into -- inquiry into the -- those opinions and

14   those views.

15          Your inquiry is very limited right now to the

16   exact determinations you need to make, which is,

17   refusal to deliberate or -- you know, application --

18   refusal of applying the law to the facts.

19          And that is the -- that is what *Thomas*

20   dictates and that's what *Abbell* dictates, to try to

21   keep this as limited as possible.

22          THE COURT:  I'm going to deny that request,

23   because I find that it's subsumed in my question about

24   following the Court's instructions on the law.

25          Following the Court's instructions on the law

```
 1   certainly -- there's an instruction that was given to
 2   the jury that indicates that, "Everyone has to decide
 3   the case for themselves after full examination of the
 4   evidence with the other jurors.  Each of you must
 5   decide the case for yourself and you should not give up
 6   your honest beliefs just because the other others think
 7   differently."
 8           So I find that that question is subsumed in
 9   following Court's instructions.
10           MS. JHONES:  And, your Honor --
11           MR. CLARK:  And that's my request, your Honor,
12   because that is the whole inquiry of Thomas, is:  Is
13   there a tangible -- substantial possibility that they
14   have an opinion?  And the juror's already said in the
15   note that she has an opinion.
16           So that's the whole crux of Thomas, is to find
17   out if there's an opinion.
18           THE COURT:  And if Juror No. 4 comes in and
19   says that, "They're not respecting my opinion," that's
20   something I will consider, certainly.  I have to hear
21   what each person is going to say.
22           MR. CLARK:  When somebody says they refuse
23   to deliberate, that can also mean they refuse to
24   deliberate further and they have deliberated and have
25   rendered an opinion.
```

1              I think it's credible to -- if they answer --

2              THE COURT:  Having read the notes, Mr. Clark,

3    there's an indication that the jury is trying to

4    deliberate and this particular juror is unwilling to

5    follow the law and apply the evidence.

6              MS. JHONES:  Your Honor, I think the issue is

7    credibility here.

8              And, respectfully, in light of what those

9    notes say, at no time, at no time, has -- unlike the

10   situation in *Abbell* and unlike the situation in other

11   cases where the juror came forth and said, "I'm not

12   going to follow the law.  I'm not doing it," we have

13   absolutely nothing, absolutely nothing, in this record

14   from those notes that that has occurred.

15             THE COURT:  Well, I would say that the note

16   that was delivered today, which --

17             MS. JHONES:  In the absence of this juror and

18   contrary to the Court's instruction on Friday.

19             THE COURT:  The note that says that Juror

20   No. 4 said on Friday, "I don't believe in the law.  I

21   don't trust the law" is certainly -- some evidence of

22   that.

23             And the purpose of the inquiry is for me to

24   make a determination as to what statements were made

25   and whether, indeed, there is a person who is unwilling

1    to follow the Court's instructions on the law and apply

2    the evidence to the law or whether or not this is a

3    difference of opinion.

4           And that's a determination for the Court to

5    make beyond a reasonable doubt, based upon the

6    evidentiary hearing.  And that's what I intend to do.

7           MS. JHONES:  And I understand, your Honor.

8           But, respectfully, because of the nature of

9    the issues raised by these two notes, I think, that,

10   respectfully, what has to be done is there has to be

11   some question specifically tailored to address the

12   possibility that there is an intolerance in that jury

13   room for opinions held by a minority juror.

14          That's exactly what *Abbell* tells us at

15   Page 1302, because the Court did instruct the jury in

16   general terms on Friday as the Court did, and the Court

17   said, "You must follow the law as I explained it,

18   whether you agree with it or not.  You're not to single

19   out one law, one instruction, over the other, but

20   consider them as a whole."

21          That is not, respectfully, going to cut it at

22   this stage of the game because of the contents of these

23   notes.  The Court has to -- I don't suggest that we

24   find out what their opinions are.  Of course, we

25   cannot.

1          I just want to know is there a tolerance, an

2     understanding, that they have an obligation to tolerate

3     and to respect other people's view on the evidence,

4     whatever they may be.  That's my concern.

5          MR. CLARK:  Also, your Honor, on the question

6     where you had asked, I believe -- I've lost it on the

7     transcript -- you know, was there somebody unwilling to

8     follow the law or was there a difference of opinion, I

9     believe that there was a previous question asked --

10          THE COURT:  I don't have a difference of

11     opinion in my question.

12          MR. CLARK:  I think there's been a

13     discussion -- there's been a question from the jury

14     about Counts 2 and 3.  And it looks like that maybe

15     there's been some differences of opinion about how the

16     law reads.

17          And so I think the question should be

18     directed --

19          THE COURT:  First of all, that question came

20     from not this jury, but the prior jury.  And that

21     jury -- those questions were -- they were trying to

22     understand the differences in the charges in Counts 2

23     and 3.

24          MR. CLARK:  Exactly.

25          So my point is that there's -- 11 of those

1    jurors are still here.  My point is that there may be a

2    difference of opinion about what -- how the law reads.

3         And I think that the question should be

4    directed to:  Is there somebody unwilling to apply the

5    law or is there a difference of opinion as to what the

6    law reads?

7         So I think that that's -- because of that

8    question, the Court should find that out.

9         MR. VEREEN:  And, your Honor, I would ask the

10   Court to ask one additional question, and that is

11   directed to the note that was sent out this morning.

12        The question would be:  How, in the absence of

13   this 12th juror, did the question come about?

14        THE COURT:  I've already found that that was

15   not an indication of deliberations, and I'm not going

16   to make inquiry further of the jury.  I don't find that

17   that would be appropriate.

18        MR. LEVIN:  Judge, I would ask --

19        THE COURT:  It broadens the scope of this

20   inquiry, and this inquiry is really the substance of

21   the notes that were turned over by the jury.

22        MS. JHONES:  Your Honor, respectfully, it's

23   not only whether they deliberated in the absence of the

24   juror.  It's whether or not they can follow the Court's

25   instructions.

1          On Friday, specifically, the Court said, "Do

2     not discuss the case amongst yourselves or with anyone

3     else.  You are not to begin your discussions on Monday

4     morning until all of your members are present."

5          That is verbatim what you instructed them on

6     Friday, and they did not obey that.

7          And if -- not only Juror No. 4 and her ability

8     to follow the law, but all of the jurors in this case,

9     their ability to follow the law is in question.

10          MR. LEVIN:  Judge, I find that the Court's

11     inquiry is too narrow.

12          I'd ask that the Court inquire as to whether

13     or not Juror No. 4 participated in deliberations on

14     April 27th and April 28th.

15          And, I think, at this point, again, I would

16     renew a motion for mistrial.

17          THE COURT:  The motion for mistrial is denied.

18          I don't find there's an additional basis for a

19     motion for mistrial.  I've now ruled on three or four

20     motions for mistrial this morning alone.

21          I have found that I do not find that -- while

22     this is an area that the Court has to proceed with

23     caution and great care, I do not find that this jury

24     has been so infected, nor do I find that the Defendants

25     cannot receive a fail trial.

1            So the motion for mistrial is denied.

2            MR. LEVIN:  Your Honor, I'd ask that Juror

3    No. 1 also be brought in and inquired of.

4            THE COURT:  What's the Government's position?

5            MS. ARANGO:  Absolutely not, Judge.

6            This jury came in on Friday with 12 jurors at

7    the request of the defense, not 11, but 12 jurors, with

8    an alternate impaneled.  They made a sworn oath that

9    they would wipe from their minds the prior

10   deliberations, that they would begin anew.

11           That is what's relevant, is what occurred

12   after that point in time.

13           MS. JHONES:  Your Honor, it was the Government

14   who just brought to the Court's attention

15   inappropriately, I might -- misquoted the letter, but

16   it was the Government that said that these problems

17   began since Monday.

18           THE COURT:  Could you not yell, please?

19           MS. JHONES:  Sorry.  Since Monday.

20           What's relevant here is what's taken place,

21   the accusations that have been lodged by -- lodged

22   against Juror No. 4.  And those accusations --

23           THE COURT:  And that's what my inquiry is -- I

24   have to -- I'm going to speak to each juror and I'm

25   going to speak to Juror No. 4.  She has indicated she

1    can be here in a few hours.

2         I'm going to make that inquiry and determine

3    after I hear from everyone -- I will determine pursuant

4    to *Abbell* what the status of this juror is and this

5    jury is.

6         So let's begin with Juror No. 2.

7         (Thereupon, Juror No. 2 entered the courtroom

8    and the following proceedings were had:)

9         THE COURT:  Hello.  Good afternoon.

10        You may be seated, sir.

11        JUROR NO. 2:  Thank you.

12        THE COURT:  I have a few questions for you.

13        JUROR NO. 2:  Yes, your Honor.

14        THE COURT:  I am not asking you nor should you

15   state or reveal either your own opinions or positions

16   on any of the decisions to be made by the jury or the

17   opinions or positions of any other juror.

18        Without telling me what your or any juror's

19   opinion is regarding the charges or evidence in this

20   case, is there any juror or jurors who are refusing to

21   deliberate?

22        JUROR NO. 2:  Yes, your Honor.

23        THE COURT:  And who would that be?  Which

24   juror or jurors?

25        JUROR NO. 2:  Juror number?

```
 1              THE COURT:  Yes.

 2              JUROR NO. 2:  4.

 3              THE COURT:  What statements, if any, has

 4    Juror 4 made about refusing or being unwilling to

 5    deliberate what has she said?

 6              JUROR NO. 2:  Well, she said that there's no

 7    need to deliberate because it's just a waste of time.

 8    Basically, she said also that --

 9              THE COURT:  I don't want to hear her opinion

10    or any else's opinion.

11              JUROR NO. 2:  Yes, ma'am.

12              THE COURT:  Without telling me what your or

13    any juror's opinion is regarding the charges or

14    evidence in this case, is there any juror or jurors who

15    are refusing to follow the Court's instructions on the

16    law?

17              JUROR NO. 2:  Yes, your Honor.

18              THE COURT:  Who would that be?

19              JUROR NO. 2:  Juror No. 4.

20              THE COURT:  What statements, if any, has Juror

21    No. 4 made about being unwilling to follow the Court's

22    instructions on the law?

23              JUROR NO. 2:  She says that she doesn't -- I'm

24    sorry.  I can't say what she said.

25              THE COURT:  No.  I do want you to indicate
```

1    what she has said.

2           JUROR NO. 2:  She said that she doesn't

3    believe fully in the law, she doesn't respect the law

4    and she doesn't want to follow it.

5           THE COURT:  Without telling me what your or

6    any juror's opinion is regarding the charges or

7    evidence in this case, is there any juror or jurors who

8    have refused to apply the law to the evidence or the

9    lack of evidence in the case?

10          JUROR NO. 2:  Yes, your Honor.

11          THE COURT:  Who would that be?

12          JUROR NO. 2:  Juror No. 4.

13          THE COURT:  What statements, if any, has Juror

14   No. 4 made about being unwilling to apply the law to

15   the evidence or the lack of evidence in this case?

16          JUROR NO. 2:  She's not using evidence in this

17   case at all.  She doesn't go through --

18          THE COURT:  What statements has she made?

19          JUROR NO. 2:  She said that -- basically, when

20   we go through the books on both parties, the defense

21   exhibit or the prosecutor's, she doesn't follow up on

22   what we're doing.  She doesn't look through evidence.

23          THE COURT:  Has she made any statements about

24   being unwilling to apply the law to the evidence or

25   lack of evidence?

1          JUROR NO. 2:  She doesn't really say it in

2     those terms.  But she just doesn't open the book and

3     follow along what we're doing.  She just figures that

4     her mind is made up.

5          She doesn't want to go through the evidence or

6     deliberate or anything like that.  When we ask her

7     questions or opinions of all of us, she refuses to

8     answer.

9          THE COURT:  Okay, sir.  If you would not

10    discuss my questions with anyone.

11         Thank you.

12         JUROR NO. 2:  Yes, your Honor.

13         THE COURT:  Thank you.

14         You can go back in the jury room.

15         JUROR NO. 2:  Yes, ma'am.

16         THE COURT:  Thank you.

17         (Thereupon, Juror No. 2 retired from the

18    courtroom and the following proceedings were had:)

19         THE COURT:  One moment, please.

20         MS. JHONES:  Your Honor, I have a request,

21    and that is that the jurors that have already been

22    questioned -- that they not go back with the other

23    jurors, a sequestration rule, basically, until all

24    these -- until all the jurors have been questioned.

25         MR. LEVIN:  You didn't tell him not to

 1    discuss --

 2              THE COURT:  I did.  I just told him.

 3              I've indicated that they're not to discuss the

 4    questions with anyone, and I expect that they're going

 5    to follow my instructions.  I'm not going to sequester

 6    them.

 7              MR. VEREEN:  Your Honor, may I inquire?  What

 8    is the Court going to do with regard to the juror's

 9    answer being different from what they put in the note?

10    In the note, he doesn't say that Juror No. 4 refused to

11    give an answer --

12              THE COURT:  Well, you can make that argument

13    at the end of this --

14              MR. VEREEN:  Well, my question to the Court

15    is:  Is the Court going to question him with regard to

16    the inconsistency in the note?  He's the foreperson.

17              THE COURT:  Well, what's the inconsistency in

18    the note?  I don't find there's any --

19              MR. VEREEN:  In the note, he says that Juror

20    No. 4's responses to questions are short, not that

21    she's not answering the questions.

22              Here, he says she refuses to answer.

23              THE COURT:  Well, I'm having an evidentiary

24    hearing based upon the request, basically, of the

25    Defendants to go through each juror.

1          And I'm going to base my decision on the

2   evidentiary hearing, not the notes, but the evidentiary

3   hearing that I'm having.

4          MR. VEREEN:  Then, how would the note come

5   into question with regard to -- this is the

6   foreperson's --

7          THE COURT:  The note is the basis for the

8   evidentiary hearing.  I find that, pursuant to *Abbell*,

9   it's not the question of the note.

10         The Government argued that, based upon the

11  note, I should just dismiss Juror No. 4.  And I agreed

12  with the Defendants that it requires -- it becomes the

13  basis for the evidentiary hearing.

14         And that's how I'm proceeding now.

15         I am not going to cross-examine a juror -- the

16  foreperson or any other juror about, "Your note says

17  one thing and you now say something else."

18         This is -- I'm going to ask them what has --

19  I'm going to ask them the questions that I indicated I

20  would ask.

21         I'm going to make a determination once I've

22  heard from all the jurors, including Juror No. 4, as to

23  whether the standard in *Abbell* has been met or not met.

24         In fact, there's one case -- there's a Second

25  Circuit case.  It was the Chief Judge of that circuit,

```
 1    I think, who, actually -- the Appellate Court found

 2    that there was not a basis for the Judge to have

 3    dismissed the juror, that there was no reasonable

 4    possibility, and they reversed.

 5            So I'm very carefully going through, having

 6    read all of the cases and looked at all of the

 7    questioning done by all of the courts what are

 8    appropriate questions for me to ask.

 9            And I'm going to make a determination based on

10    the hearing that you all requested that I have in open

11    court.  And that's how we're proceeding now.

12            Now --

13            MS. ARANGO:  May I just make one comment,

14    Judge?

15            THE COURT:  Yes.

16            MS. ARANGO:  With respect to the two sets of

17    questions at the end, one is unwillingness to follow

18    the law or willingness to follow the law.  The other is

19    application of law to the facts.

20            I think that it's a little bit -- I think that

21    they're almost the same question.  I wonder if you

22    could say, you know:  What -- is there any juror or

23    jurors who are not willing to follow the law or to

24    apply the law to the facts?

25            I think that it just might be a little
```

```
 1    confusing to break it down when it seems to me it's --
 2    they go hand in hand.
 3              THE COURT:  I'm going to ask the questions the
 4    way I formulated them.
 5              MS. ARANGO:  Okay.
 6              THE COURT:  Let's bring in Juror No. 3.
 7              (Thereupon, Juror No. 3 entered the courtroom
 8    and the following proceedings were had:)
 9              THE COURT:  Hello.
10              JUROR NO. 3:  Hi.
11              THE COURT:  If you could have a seat in that
12    first chair, I have a few questions for you.
13              JUROR NO. 3:  Okay.
14              THE COURT:  You may be seated.
15              I am not asking you now nor should you state
16    or reveal either your own opinions or positions on any
17    of the decisions to be made by the jury or the opinions
18    or positions of any other juror.
19              Without telling me what your or any juror's
20    opinion is regarding the charges or evidence in this
21    case, is there any juror or jurors who are refusing to
22    deliberate?
23              JUROR NO. 3:  Yes.
24              THE COURT:  And who would that be?
25              JUROR NO. 3:  No. 4.
```

```
 1              THE COURT:  What statements, if any, has Juror

 2     No. 4 made about refusing or being unwilling to

 3     deliberate?

 4              JUROR NO. 3:  She said she doesn't believe in

 5     the law.

 6              THE COURT:  What statements, if any, has Juror

 7     No. 4 made about refusing or being unwilling to

 8     deliberate?

 9              JUROR NO. 3:  She said she doesn't believe in

10     the law.

11              THE COURT:  Is there any juror or jurors who

12     is refusing to follow the Court's instructions on the

13     law?

14              JUROR NO. 3:  No.

15              THE COURT:  Is there any juror or jurors who

16     have refused to apply the law to the evidence or the

17     lack of evidence?

18              JUROR NO. 3:  Not any.  Only her.

19              THE COURT:  I'm sorry?

20              JUROR NO. 3:  Not any of the rest of the

21     juror.  The only -- only her.

22              THE COURT:  Okay.  And what statements, if

23     any, has Juror 4 made about being unwilling to apply

24     the law to the evidence or lack of evidence in the

25     case?
```

```
1          JUROR NO. 3:  I suggest her that she have to

2   put in --

3          THE COURT:  Don't tell me your opinions or her

4   opinions.

5          JUROR NO. 3:  Okay.

6          THE COURT:  Just what has she said, if

7   anything, about being unwilling to apply the law to

8   the evidence in the case or the lack of evidence?

9          JUROR NO. 3:  She doesn't do any explanation

10  about it.  She said only that she doesn't believe in

11  the law and that's it.

12         THE COURT:  Okay.  If you would not discuss my

13  questions with anyone, please, ma'am.

14         Thank you.

15         JUROR NO. 3:  No problem.  Okay.

16         (Thereupon, Juror No. 3 retired from the

17  courtroom and the following proceedings were had:)

18         MS. ARANGO:  Judge, when this juror answered

19  Question No. 3 in the negative, I believe that, when

20  she said "no" and then you went to the next question,

21  which is, "Is there any juror who has refused to apply

22  the law to the evidence?", she said "no" again and then

23  said, "Only her."

24         So I believe that, in response to Question

25  No. 3, when she said "no," she meant "no," only Juror
```

1   No. 4.

2          I don't know if you want to question her again

3   about that or if you just want to clarify it with other

4   jurors, that they understand that this is a new

5   question.

6          MS. JHONES:  Your Honor, I have concern in

7   light of this juror's responses as to whether or not

8   she has sufficient understanding of the English

9   language to even understand your question.

10         I would ask --

11         THE COURT:  I think she understood.

12         MS. JHONES:  I would ask that the Court -- I

13  am unclear as to what her answers are to 2 and 3, her

14  responses.

15         THE COURT:  I thought her answers were very

16  clear.

17         Let's bring in Juror No. 5.

18         (Thereupon, Juror No. 5 entered the courtroom

19  and the following proceedings were had:)

20         THE COURT:  Hello.

21         JUROR NO. 5:  Hi.

22         THE COURT:  You can have a seat right there.

23         You may be seated.

24         I have a few questions for you.

25         I'm not asking you nor should you state or

```
1    reveal either your own opinions or positions or any of

2    the -- strike that.  Let me start again.

3              I am not asking you nor should you state or

4    reveal either your own opinions or positions on any of

5    the decisions to be made by the jury or the opinions or

6    positions of any other juror.  Okay?

7              Without telling me what your or any juror's

8    opinion is regarding the charges or evidence in this

9    case, is there any juror or jurors who are refusing to

10   deliberate?

11             JUROR NO. 5:  Yes.

12             THE COURT:  And who would that be, ma'am?

13             JUROR NO. 5:  You want me to tell you which

14   one?

15             THE COURT:  Which number.  Yes.

16             JUROR NO. 5:  4.

17             THE COURT:  Or numbers.

18             JUROR NO. 4:  4.

19             THE COURT:  What statements, if any, has Juror

20   No. 4 made about refusing or being unwilling to

21   deliberate?

22             JUROR NO. 5:  One is, "When asked how you feel

23   one way or another" --

24             THE COURT:  Don't tell me her opinion --

25             JUROR NO. 5:  No.
```

```
 1              THE COURT:  -or position on anything.

 2              Just tell me what she said, if anything,

 3    about --

 4              JUROR NO. 5:  We can't --

 5              THE COURT:  -- refusing to deliberate.

 6              JUROR NO. 5:  There's no explanation one way

 7    or another.

 8              When we ask for a reason and everyone is going

 9    to around and explaining yea or nay, "You can't make me

10    change my mind."

11              The other thing is, when we had a

12    discussion -- when we had a discussion --

13              THE COURT:  Don't tell me anybody's opinion or

14    position.

15              JUROR NO. 5:  No.  No.  I'm just trying to

16    figure out how to say this because I want to be honest.

17              It was stated that, "I don't believe in the

18    law."

19              THE COURT:  Who said that?

20              JUROR NO. 5:  No. 4.  "And I don't trust the

21    law."

22              THE COURT:  Is there any juror who -- any

23    juror or jurors who is refusing to follow the Court's

24    instructions on the law?

25              JUROR NO. 5:  Yes.
```

1       THE COURT:  Who would that be?

2       JUROR NO. 5:  No. 4.

3       THE COURT:  What statements, if any, has Juror

4   No. 4 made about being unwilling to follow the Court's

5   instructions on the law?

6       JUROR NO. 5:  Well, when you say you don't

7   trust the law or you don't believe in the law, to me,

8   then you're not enforcing the law.

9       THE COURT:  Did she make any statements --

10  what statements, if any, did she make about being

11  unwilling to follow the law, other than what you

12  already told us?

13      JUROR NO. 5:  Just -- we can't convince her

14  one way or another.

15      THE COURT:  Okay.  Convince her one way or

16  another as to an opinion or about the law -- following

17  the law?

18      JUROR NO. 5:  About -- opinion about following

19  the law, about just stating what it is that makes her

20  feel the way that she does.

21      THE COURT:  Okay.  Is there any juror or

22  jurors who has refused to apply the law to the evidence

23  or the lack of evidence in the case?

24      JUROR NO. 5:  Other than No. 4, no.

25      THE COURT:  And what statements, if any, has

1    Juror No. 4 made about being unwilling to apply the law

2    to the evidence or the lack of evidence in the case,

3    other than what you already told me?

4             JUROR NO. 5:  I can't -- I can't say it

5    because then it would give away defensively or

6    prosecution.

7             THE COURT:  Okay.  That's fine, ma'am.

8             Thank you.

9             If you would not discuss my questions with

10   anyone, please.

11            (Thereupon, Juror No. 5 retired from the

12   courtroom and the following proceedings were had:)

13            THE COURT:  Juror No. 6, please.

14            (Thereupon, Juror No. 6 entered the courtroom

15   and the following proceedings were had:)

16            THE COURT:  Hello.

17            JUROR NO. 6:  Hello.

18            THE COURT:  You can have a seat, ma'am.

19            You may be seated.

20            I am not asking you nor should you state or

21   reveal either your own opinions or positions on any of

22   the decisions to be made by the jury or the opinions or

23   positions of any other juror.  Okay?

24            JUROR NO. 6:  Okay.

25            THE COURT:  Without telling me what your or

```
 1   any juror's opinion is regarding the charges or

 2   evidence in this case, is there any juror or jurors who

 3   are refusing to deliberate?

 4             JUROR NO. 6:  Yes.  No. 4.

 5             THE COURT:  What statements, if any, has Juror

 6   No. 4 made about refusing or being unwilling to

 7   deliberate?

 8             JUROR NO. 6:  When we were looking at evidence

 9   or going over some of the stuff, she was facing towards

10   the back.  She refused to look at anything.

11             She also made comments about not believing or

12   something about the Government or something like that.

13             THE COURT:  Is there any juror or jurors who

14   are refusing to follow the Court's instructions on the

15   law?

16             JUROR NO. 6:  Only No. 4.

17             THE COURT:  What statements, if any, has Juror

18   No. 4 made about being unwilling to follow the Court's

19   instructions on the law?

20             JUROR NO. 6:  She said -- I'm not quoting her

21   words because I can't remember them right now, but she

22   said she didn't trust the law or the Government and

23   something to that effect.

24             THE COURT:  Is there any juror or jurors who

25   have refused to apply the law to the evidence or the
```

1   lack of evidence in the case?

2          JUROR NO. 6:  Yes.  Juror No. 4.

3          THE COURT:  And what statements, if any, has

4   Juror No. 4 made about being unwilling to apply the law

5   to the evidence or the lack of evidence in the case,

6   other than what you have already stated?

7          JUROR NO. 6:  No.  Just the same.  She refused

8   to talk.  She refuses to, you know, participate with us

9   while we're discussing things.

10         And we've opened our books -- we've opened our

11  notebooks.  She hasn't done any of that.  She just

12  turns her back, looks at a poster and that's about it.

13         She hasn't debated with us.  She hasn't said

14  anything.  She hasn't spoken with us.  And she said she

15  wasn't going to do it.

16         THE COURT:  Okay, ma'am.  If you could have a

17  seat inside and not discuss my questions with anyone,

18  please.

19         JUROR NO. 6:  Okay.

20         THE COURT:  Thank you.

21         (Thereupon, Juror No. 6 retired from the

22  courtroom and the following proceedings were had:)

23         THE COURT:  No. 8.

24         (Thereupon, Juror No. 8 entered the courtroom

25  and the following proceedings were had:)

1          THE COURT:  Hello.

2          JUROR NO. 8:  Hi.

3          THE COURT:  Just have a seat.  Thank you.

4          I think that's your seat.  Right?

5          JUROR NO. 8:  It's my seat.

6          THE COURT:  You're right at home.

7          I am not asking you nor should you state or

8    reveal either your own opinions or positions on any of

9    the decisions be to be made by the jury or the opinions

10   or positions of any other juror.  Okay?

11         JUROR NO. 8:  Okay.

12         THE COURT:  Without telling me what your or

13   any juror's opinion is regarding the charges or

14   evidence in this case, is there any juror or jurors who

15   are refusing to deliberate?

16         JUROR NO. 8:  Yes.

17         THE COURT:  Who would that be, ma'am?

18         JUROR NO. 8:  Juror No. 4.

19         THE COURT:  What statements, if any, has Juror

20   No. 4 made about refusing or being unwilling to

21   deliberate?

22         JUROR NO. 8:  On Friday, she indicated that

23   she didn't trust the law or believe in the law.  She

24   has told us that -- I'm trying to figure out how to say

25   this without saying anything.

```
 1            THE COURT:  Don't give me anybody's opinions

 2   or positions.

 3            JUROR NO. 8:  Right.

 4            She has told us that, you know, we can be

 5   there forever because she has made a decision and

 6   talking or looking at evidence is not going to change

 7   her opinion, nor has she given any reason for her

 8   opinion, other than her own feelings.

 9            THE COURT:  Is there any juror or jurors who

10   are refusing to follow the Court's instructions on the

11   law?

12            JUROR NO. 8:  Yes.

13            THE COURT:  Who would that be?

14            JUROR NO. 8:  Juror No. 4.

15            THE COURT:  What statements, if any, has Juror

16   No. 4 made about being unwilling to follow the Court's

17   instructions on the law?

18            JUROR NO. 8:  I think the Court was very

19   explicit in its directions that we need to review the

20   instructions -- the 36-page instructions that we were

21   given and then look to the testimony that we've heard

22   and the evidence that we've seen and compare it and

23   see, you know, where it fits it, and that she's refused

24   to do.

25            THE COURT:  Is there any juror or jurors who
```

 1   have refused to apply the law to the evidence or the

 2   lack of evidence in the case?

 3          JUROR NO. 8:  Yes.  Absolutely.

 4          THE COURT:  And who is that?

 5          JUROR NO. 8:  Juror No. 4.

 6          THE COURT:  What statements, if any, has Juror

 7   No. 4 made about being unwilling to apply the law to

 8   the evidence or the lack of evidence in the case?

 9          JUROR NO. 8:  On any occasion that she's been

10   asked to discuss the case in deliberations, she refuses

11   to look towards the evidence at all or the

12   instructions.

13          THE COURT:  Thank you, ma'am.

14          If you would have a seat inside and not

15   discuss my questions with anyone.

16          JUROR NO. 8:  Okay.

17          (Thereupon, Juror No. 8 retired from the

18   courtroom and the following proceedings were had:)

19          THE COURT:  No. 9.  Juror No. 9.

20          (Thereupon, Juror No. 9 entered the courtroom

21   and the following proceedings were had:)

22          THE COURT:  Hello.

23          JUROR NO. 9:  Good afternoon.

24          THE COURT:  You can have a seat right in that

25   first seat.  You won't have to even climb up a step.

1          I am not asking you, ma'am, nor should you

2     state or reveal either your own opinions or positions

3     or any -- on any of the decisions to be made by the

4     jury or the opinions or positions of any other juror.

5     Okay?

6          JUROR NO. 9:  Yes, ma'am.

7          THE COURT:  Without telling me what your or

8     any juror's opinion is regarding the charges or

9     evidence in this case, is there any juror or jurors who

10    are refusing to deliberate?

11         JUROR NO. 9:  No.

12         THE COURT:  What is -- strike that.

13         Is there any juror or jurors who is refusing

14    to follow the Court's instructions on the law?

15         JUROR NO. 9:  Yes.

16         THE COURT:  Who would that be?

17         JUROR NO. 9:  No. 4.

18         THE COURT:  What statements, if any, has

19    Juror 4 made about being unwilling to follow the

20    Court's instructions on the law?  What has she said?

21         JUROR NO. 9:  She said that she didn't believe

22    in the law and the law wasn't just -- wasn't justified,

23    something to that extent.

24         THE COURT:  Is there any juror or jurors who

25    have refused to apply the law to the evidence or the

1   lack of evidence in the case?

2         JUROR NO. 9:  No.

3         THE COURT:  Thank you, ma'am.

4         If you could have a seat inside and not

5   discuss my questions with anyone.

6         JUROR NO. 9:  Yes, ma'am.

7         THE COURT:  Thank you.

8         (Thereupon, Juror No. 9 retired from the

9   courtroom and the following proceedings were had:)

10        THE COURT:  Juror No. 10.

11        (Thereupon, Juror No. 10 entered the courtroom

12  and the following proceedings were had:)

13        THE COURT:  Hello.

14        JUROR NO. 10:  Hello.  Good afternoon.

15        THE COURT:  You can take a seat -- any seat

16  you want.  Your choice.  Have a different view.  Right?

17        You may be seated.

18        I am not asking you nor should you state or

19  reveal either your own opinions or positions on any of

20  the decisions be to be made by the jury or the opinions

21  or positions of any other juror.  Okay?

22        JUROR NO. 10:  Okay.

23        THE COURT:  Without telling me what your or

24  any juror's opinion is regarding the charges or

25  evidence in this case, is there any juror or jurors who

```
1    are refusing to deliberate?

2              JUROR NO. 10:  Yes.

3              THE COURT:  And who would that be?

4              JUROR NO. 10:  Juror No. 4.

5              THE COURT:  What statements, if any, has Juror

6    No. 4 made about refusing or being unwilling to

7    deliberate?

8              JUROR NO. 10:  That she understands that's the

9    law, but she doesn't agree with the law.

10             THE COURT:  Is there any juror or jurors who

11   is refusing to follow the Court's instructions on the

12   law?

13             JUROR NO. 10:  Juror No. 4.

14             THE COURT:  What statements, if any, has Juror

15   No. 4 made about being unwilling to follow the Court's

16   instructions on the law?

17             JUROR NO. 10:  Not actually deliberating and

18   sticking to the word "no," sticking to just one -- one

19   side of it.

20             That's -- I don't know if that answers your

21   question.

22             THE COURT:  Is there any juror or jurors who

23   have refused to apply the law to the evidence or the

24   lack of evidence in the case?

25             JUROR NO. 10:  Juror No. 4.
```

1    THE COURT:  What statements, if any, has Juror

2  No. 4 made about being unwilling to apply the law to

3  the evidence or the lack of evidence in the case?

4    JUROR NO. 10:  She doesn't want to

5  participate.

6    THE COURT:  Okay.  Thank you, sir.

7    If you could have a seat inside and not

8  discuss my questions with anyone.

9    JUROR NO. 10:  Okay.

10    (Thereupon, Juror No. 10 retired from the

11  courtroom and the following proceedings were had:)

12    THE COURT:  Juror No. 11.

13    (Thereupon, Juror No. 11 entered the courtroom

14  and the following proceedings were had:)

15    THE COURT:  Hello.

16    JUROR NO. 11:  Hello.

17    THE COURT:  You can have a seat anywhere you

18  want.

19    You may be seated.

20    I am not asking you nor should you state or

21  reveal either your own opinion or positions on any of

22  the decisions to be made by the jury or the opinions or

23  positions of any other juror.  Okay?

24    JUROR NO. 11:  Okay.

25    THE COURT:  Without telling me what your or

1    any other juror's opinion is regarding the charges or

2    evidence in this case, is there any juror or jurors who

3    are refusing to deliberate?

4            JUROR NO. 11:  Yes, there are.

5            THE COURT:  And who would that be?

6            JUROR NO. 11:  The juror number?

7            THE COURT:  Yes.

8            JUROR NO. 11:  No. 4.

9            THE COURT:  What statements, if any, has Juror

10   No. 4 made about refusing or being unwilling to

11   deliberate?

12           JUROR NO. 11:  She originally refused to speak

13   with us.  She explained her comments.  And she also

14   said that she did not trust the law.

15           THE COURT:  Is there any juror or jurors who

16   are refusing to follow the Court's instructions on the

17   law?

18           JUROR NO. 11:  I would say No. 4 as well by

19   that statement that I just said.

20           THE COURT:  Okay.  Is there any juror or

21   jurors who have refused to apply the law to the

22   evidence or the lack of evidence in the case?

23           JUROR NO. 11:  Again, No. 4 as well.

24           THE COURT:  What statements, if any, has Juror

25   No. 4 made about being unwilling to apply the law to

1   the evidence or the lack of evidence in the case?

2          JUROR NO. 11:  I would say that statement when

3   she said, "I don't trust the law" was the predominant

4   one.

5          THE COURT:  Okay, ma'am.  If you could have a

6   seat inside and not discuss my questions with anyone.

7          (Thereupon, Juror No. 11 retired from the

8   courtroom and the following proceedings were had:)

9          THE COURT:  Juror No. 14.

10          THE COURT SECURITY OFFICER:  Does your Honor

11   want No. 12?

12          THE COURT:  No. 12, yes.

13          (Thereupon, Juror No. 12 entered the courtroom

14   and the following proceedings were had:)

15          THE COURT:  Hello.

16          JUROR NO. 12:  Hello.

17          THE COURT:  You may be seated.

18          I am not asking you nor should you state or

19   reveal either your own opinions or positions on any of

20   the decisions to be made by the jury or the opinions or

21   positions of any other juror.  Okay?

22          JUROR NO. 12:  Yes.

23          THE COURT:  Without telling me what your or

24   any juror's opinion is regarding the charges or

25   evidence in this case, is there any juror or jurors who

1   are refusing to deliberate?

2           JUROR NO. 12:  Yes.

3           THE COURT:  Which juror or jurors is that, by

4   number?

5           JUROR NO. 12:  4, I believe.

6           THE COURT:  What statements, if any, has Juror

7   No. 4 made about refusing or being unwilling to

8   deliberate?

9           JUROR NO. 12:  She made the comment that she

10  did not trust the law and believe in the law.

11          THE COURT:  Is there any juror or jurors who

12  are refusing to follow the Court's instructions on the

13  law?

14          JUROR NO. 12:  None of the other jurors are

15  refusing.

16          THE COURT:  Okay.  And what about -- is there

17  anyone who's refusing?

18          JUROR NO. 12:  Only the one.

19          THE COURT:  And who would that be?

20          JUROR NO. 12:  No. 4.

21          THE COURT:  What statements, if any, has Juror

22  No. 4 made about being unwilling to follow the Court's

23  instructions on the law, if anything, other than what

24  you already told me?

25          JUROR NO. 12:  She has made statements that

1    she didn't really have to give her opinion, she didn't

2    have to discuss it, that we could sit there for years

3    and we were not going to change her mind, and she had

4    nothing to say to us.

5           THE COURT:  Is there any juror or jurors who

6    have refused to apply the law to the evidence or the

7    lack of evidence in the case?

8           JUROR NO. 12:  None of the others.

9           THE COURT:  And who has done that?

10          JUROR NO. 12:  Only No. 4.

11          THE COURT:  And has she made any additional

12   statements, other than what you already told me,

13   regarding applying the law to the evidence or the lack

14   of evidence in the case?

15          JUROR NO. 12:  None that I can remember right

16   now.

17          THE COURT:  Okay.  Thank you, ma'am.

18          If you would not discuss my questions with

19   anyone, please.

20          (Thereupon, Juror No. 12 retired from the

21   courtroom and the following proceedings were had:)

22          THE COURT:  Now No. 14, I believe.

23          MR. GREGORIE:  13.

24          THE COURT:  13, please.  I've got my numbers

25   confused.

```
 1              (Thereupon, Juror No. 13 entered the courtroom
 2   and the following proceedings were had:)
 3              THE COURT:  Hello.
 4              JUROR NO. 13:  Hello.
 5              THE COURT:  If you could have a seat anywhere
 6   you want.
 7              You may be seated.
 8              I'm not asking you nor should you state or
 9   reveal either your own opinions or positions on any of
10   the decisions to be made by the jury or the opinions or
11   positions of any other juror.  Okay?
12              JUROR NO. 13:  Okay.
13              THE COURT:  Without telling me what your or
14   any juror's opinion is regarding the charges or
15   evidence in this case, is there any juror or jurors who
16   are refusing to deliberate?
17              JUROR NO. 13:  Yes.
18              THE COURT:  And who would that be?
19              JUROR NO. 13:  No. 4.
20              THE COURT:  What statements, if any, has Juror
21   No. 4 made about refusing or being unwilling to
22   deliberate?
23              JUROR NO. 13:  Basically, she says that, you
24   know, it could be 20 years and we still wouldn't
25   make -- you know, change her mind, that we could go
```

1    over it all we want, but nothing's gonna change her

2    mind, and she doesn't have to do anything to change

3    ours.

4         And she also stated, when we went by the

5    evidence and everything in the case and stating --

6         THE COURT:  I don't want you to state an

7    position or opinion.

8         JUROR NO. 13:  Okay.  Well, not opinion.  But

9    when we went over it, showing her this is what it is,

10   she basically stated that she doesn't believe in the

11   law and, so, she doesn't trust it.

12        THE COURT:  Is there any juror or jurors who

13   are refusing to follow the Court's instructions on the

14   law?

15        JUROR NO. 13:  Yes.

16        THE COURT:  And who would that be?

17        JUROR NO. 13:  No. 4.

18        THE COURT:  And what statements, if any, other

19   than what you already told me, has she made about being

20   unwilling to follow the Court's instructions on the

21   law?

22        JUROR NO. 13:  Basically, that she doesn't

23   have -- she said before to us that she doesn't have to

24   explain her decisions at all to us, it is what it is.

25        THE COURT:  Is there any juror who has refused

1    to apply the law to the evidence or the lack of

2    evidence in the case?

3              JUROR NO. 13:  Yes.

4              THE COURT:  And who would that be?

5              JUROR NO. 13:  No. 4.

6              THE COURT:  Has she made any additional

7    statements in regard to that?

8              JUROR NO. 13:  No.  That's it.

9              THE COURT:  Okay, ma'am.  If you would have a

10   seat inside and not discuss my questions with anyone.

11             (Thereupon, Juror No. 13 retired from the

12   courtroom and the following proceedings were had:)

13             THE COURT:  Juror No. 14.

14             (Thereupon, Juror No. 14 entered the courtroom

15   and the following proceedings were had:)

16             THE COURT:  Hello.

17             JUROR NO. 14:  Hello.

18             THE COURT:  You may be seated.

19             I am not asking you nor should you state or

20   reveal either your own opinions or positions on any of

21   the decisions to be made by the jury or the opinions or

22   positions of any other juror.  Okay?

23             JUROR NO. 14:  Okay.

24             THE COURT:  Without telling me what your

25   opinion or any juror's opinion is regarding the charges

1  or evidence in this case, is there any juror or jurors

2  who are refusing to deliberate?

3          JUROR NO. 14:  Yes, ma'am.

4          THE COURT:  And who would that be?

5          JUROR NO. 14:  Juror No. 4.

6          THE COURT:  What statements, if any, has Juror

7  No. 4 made about refusing or being unwilling to

8  deliberate?

9          JUROR NO. 14:  When we were holding our

10 discussion, we made a reference to making the decisions

11 based on the law versus our own feelings or intentions.

12         And she made a remark that she would not make

13 those decisions based on the law because she didn't

14 believe that the law -- to be right.

15         THE COURT:  Is there any juror or jurors who

16 are refusing to follow the Court's instructions on the

17 law?

18         JUROR NO. 14:  The same juror.

19         THE COURT:  No. 4?

20         JUROR NO. 14:  Yes, ma'am.

21         THE COURT:  And what statements, if any -- if

22 there's anything additional that Juror 4 has made,

23 about being unwilling to follow the Court's

24 instructions on the law?

25         JUROR NO. 14:  The only thing that I've heard

1  her say was what I made reference before, in addition

2  to the fact that we could be here 20 years and she

3  wouldn't change her mind.

4       THE COURT:  Is there any juror or jurors who

5  have refused to apply the law to the evidence or the

6  lack of evidence in the case?

7       JUROR NO. 14:  Yes, ma'am.  Juror No. 4.

8       THE COURT:  And has she made any additional

9  statements in regard to applying the law to the

10  evidence or lack of evidence, other than what you've

11  told me?

12       JUROR NO. 14:  Those two that I've told you.

13       THE COURT:  Okay.  Thank you, ma'am.

14       If you would not discuss my questions with

15  anyone.

16       (Thereupon, Juror No. 14 retired from the

17  courtroom and the following proceedings were had:)

18       THE COURT:  You may be seated.

19       We need to await the arrival of Juror No. 4.

20  I believe it was about 3:00 and she indicated it would

21  be a few hours for her to get here.

22       I think it would be best to dismiss the

23  remaining jurors for the day.  They've been here since

24  9:00, all of them.  So I'd like to bring them in and

25  dismiss the jurors for the day, unless there's an

```
 1    objection to that.

 2              MR. GREGORIE:  No objection from the United

 3    States, your Honor.

 4              MR. LEVIN:  No objection from the defense.

 5              THE COURT:  So let's bring them in, please.

 6              (Whereupon, the jury entered the courtroom at

 7    3:39 p.m. and the following proceedings were had:)

 8              THE COURT:  You may be seated.

 9              Ladies and gentlemen, I'm going to dismiss you

10    for the day.

11              Do not discuss this case either amongst

12    yourselves or with anyone else.  Have no contact

13    whatsoever with anyone associated with the trial.  Do

14    not read, listen or see anything touching on this

15    matter in any way.

16              If anyone should try to talk to you about this

17    case, you should immediately instruct them to stop and

18    report it to my staff.

19              I'm going to have you come in tomorrow

20    morning -- I'm going to give you a late morning so you

21    can miss the traffic coming down -- at 10:00.  If you

22    would come to the jury room tomorrow morning at 10:00.

23    And you are not to deliberate until all of your members

24    are present.

25              Have a nice afternoon and evening.  I
```

1    appreciate your patience.

2              (Whereupon, the jury exited the courtroom at

3    3:41 p.m. and the following proceedings were had:)

4              THE COURT:  So we'll be in recess until Juror

5    No. 4 arrives.  You're all on ten-minute standby.

6              MR. LEVIN:  Judge, I would renew my request

7    that Juror No. 1 be brought in for questioning as well.

8              THE COURT:  No.  That request is denied.

9              I'm taking up the 12-member jury who are in

10   the process of deliberating this case.  And Juror No. 1

11   has been excused from jury service.

12             It's denied.

13             We're in recess.

14             (Thereupon a recess was taken, after which the

15   following proceedings were had:)

16             THE COURT:  United States of America versus

17   Narseal Batiste, et al., Case No. 06-20373.

18             Counsel, state your appearances, please, for

19   the record.

20             MR. GREGORIE:  Richard Gregorie and Jacqueline

21   Arango on behalf of the United States, your Honor.

22             MS. JHONES:  Ana Maria Jhones on behalf of

23   Narseal Batiste, who is present.

24             MR. LEVIN:  Albert Levin for Patrick Abraham,

25   who's present.

```
 1              MR. CASUSO:  Louie Casuso for Burson Augustin,

 2   who is present.

 3              MR. CLARK:  Nathan Clark for Rotschild

 4   Augustine, who is present.

 5              MR. HOULIHAN:  Richard Houlihan with Naudimar

 6   Herrera.

 7              MR. VEREEN:  And Roderick Vereen on behalf of

 8   Stanley Phanor, who's present.

 9              THE COURT:  All Defendants are present.

10              And I am informed that Juror No. 4 has

11   arrived.

12              So I want to review with you what I propose to

13   do regarding Juror No. 4.

14              I think, first of all, I find that I should

15   inquire as to her health, since she called up and said

16   she was not feeling well.  I should find out how she's

17   feeling and what that entails.

18              I then intend to ask her the same questions

19   that I asked of the other jurors.  And then, depending

20   on how she responds, I propose to ask her the

21   following:

22              Are you willing or unwilling to follow the law

23   as given to you by the Court?  Have you expressed or

24   stated otherwise to the other jurors?

25              Are you willing or unwilling to apply the law
```

1    to the evidence or lack of evidence in the case?  Have

2    you expressed or stated otherwise to the other jurors?

3            Are you willing or unwilling to deliberate

4    with the other jurors?  Have you expressed or stated

5    otherwise to the other jurors?

6            MR. GREGORIE:  No objections to those

7    questions from the United States, your Honor.

8            MR. HOULIHAN:  On behalf of Mr. Herrera, in

9    her note, she clearly indicated physical coercion or

10   intimidation, and I would ask your Honor to go into

11   that.  I think it's a proper subject.

12           THE COURT:  What the Government's position?

13           MR. GREGORIE:  I would object, your Honor.

14           I think that would get us into the

15   deliberative process, and we shouldn't be going there.

16           MS. JHONES:  Your Honor, I don't believe

17   that -- quoting to the cases that the Court had cited

18   before the evidentiary hearing began, when the Court

19   quoted to the concerns of getting into the -- the

20   concerns about the dangers, I should say, of getting

21   into the deliberative process, that people wouldn't be

22   able to freely express themselves and engage in debate

23   and all that stuff, all that is obviously very much of

24   a concern.

25           The issue here is not a chilling -- whether or

1   not this particular juror feels or has concerns because

2   the contents of her note go to an atmosphere which

3   would enable her to freely engage in active debate.

4   Not to inquire as to that issue, in essence, would

5   provide -- would allow for the danger that she would

6   not be able to.

7         How about -- she might go in there and --

8   after the Court has instructed her and feel that she

9   really can't express her views because she's afraid to.

10  That's the concern.

11        THE COURT:  I find that -- I am not going to

12  ask specifically about what she stated in her note.  I

13  do find that a specific question as to that does

14  intrude into the deliberative process.

15        I am asking her is she willing or unwilling to

16  deliberate with other jurors.  And the other questions

17  certainly -- she'll be able to answer and state whether

18  she is willing or unwilling to deliberate with the

19  other jurors at this time.

20        So --

21        MR. CLARK:  Your Honor, in support of what

22  Ms. Jhones was saying, there is law in the *Thomas* case.

23  There's a whole paragraph --

24        THE COURT:  Which case?

25        MR. CLARK:  In the *Thomas* case.  It's on

1   Page 621 of that opinion.

2          What it says is that the judge, I believe,

3   should go into reasons that may underlie juror -- their

4   ability to be incapacitated, involving something

5   that could happen in the case, just like in an

6   incapacitation.

7          The judge should go into threats or anything

8   that could affect a juror's -- a physical threat to one

9   of the Defendants, for example, in the *Ruggiero* case.

10  It's the -- the same principle should apply.  I believe

11  the Court should address it without going into their

12  views on the merits of the case.

13         There's a distinction made between a juror

14  being threatened and about going into that, as opposed

15  to going into the views on the merits of the case.

16         There is a -- two paragraphs beginning on --

17  actually, the paragraph beginning at the end of 620 and

18  going into 621 discusses that.

19         So I just suggest to the Court that I believe

20  that, if she's being threatened by another juror,

21  that's juror misconduct.  That's not deliberations on

22  the merits of the case.  And the Court should be

23  sensitive to seeing if a juror is being coerced.

24         THE COURT:  I don't find that the *Thomas* case

25  supports that.  The instances they talk about are

1    outside influences on the jury.

2              And, in fact, the *Thomas* case speaks to -- in

3    a quite lengthy discussion of the strict limitations of

4    the inquiry by the Court and the very high standard

5    that the Court must employ in determining -- though

6    they don't use the language of the *Abbell* case, I find

7    that the import of the *Thomas* case is the standard that

8    the *Abbell* case holds.

9              And, in fact, at Page 622, the *Thomas* court

10   says -- and they're speaking about imposing a lower

11   evidentiary standard -- "One unavoidable consequence of

12   imposing a lower evidentiary standard would thus be to

13   open up the possibility that judges, in response to

14   demands of counsel or otherwise, would wind up taking

15   sides in disputes between jurors on allegations of

16   juror nullification, in effect, to permit judicial

17   interference with, if not usurpation of, the

18   fact-finding role of the jury."

19             And the Court really in the *Thomas* case and

20   the *Abbell* case, which is the controlling law in this

21   circuit, speaks to the very high standard.

22             And the standard and determination that I need

23   to make here is that:  Should this juror be excluded

24   based upon the fact that there is no substantial

25   possibility that exists that she is basing her decision

 1    on sufficiency of the evidence?

 2          So I find that the questions regarding the

 3    back-and-forth, the discussions in the jury room

 4    regarding the case, are not questions -- is not a

 5    question or an area that goes to the very limited

 6    inquiry that I've determined is the appropriate inquiry

 7    here, which is based upon the questions that I've

 8    indicated to you.

 9          So that request is denied.

10          Let's bring in the juror, please.

11          (Thereupon, Juror No. 4 entered the courtroom

12    and the following proceedings were had:)

13          THE COURT:  Hello.

14          JUROR NO. 4:  Hi.

15          THE COURT:  You can have a seat.

16          First of all, I want to ask you, ma'am, how

17    you're feeling.

18          JUROR NO. 4:  Terrible.

19          THE COURT:  What is it that's wrong?

20          JUROR NO. 4:  A stomach virus.

21          THE COURT:  Can you hold the microphone up,

22    please.

23          JUROR NO. 4:  A stomach virus.

24          THE COURT:  And when did you start feeling

25    badly?

1          JUROR NO. 4:  I've been feeling badly all

2    week.

3          THE COURT:  I see.

4          Did you go to the doctor?

5          JUROR NO. 4:  It seems to have gotten worse

6    this weekend.

7          No.  I didn't go to the doctor.

8          THE COURT:  And have you been eating on a

9    regular basis this week?

10          JUROR NO. 4:  No.  I don't eat too well.

11          THE COURT:  So are you feeling better today or

12   how was traveling down here today?

13          JUROR NO. 4:  Well, I asked my neighbor to

14   bring me.

15          THE COURT:  I see.  Okay.

16          Any plans to go to the doctor to see what's

17   wrong?

18          JUROR NO. 4:  I could go, but I'm not too....

19          THE COURT:  You don't want to go to the

20   doctor?

21          JUROR NO. 4:  I can go tomorrow, but I didn't

22   call him today at all.

23          THE COURT:  Okay.  I have some questions for

24   you.

25          I am not asking you nor should you state or

1    reveal either your own opinions or positions on any of

2    the decisions to be made by the jury or the opinions or

3    positions of any other juror.

4         Okay?

5         JUROR NO. 4:  Okay.

6         THE COURT:  Without telling me what your or

7    any juror's opinion is regarding the charges or

8    evidence in this case, is there any juror or jurors who

9    are refusing to deliberate?

10        JUROR NO. 4:  No.

11        THE COURT:  Is there any juror -- without

12   telling me what your or any juror's opinion is

13   regarding the charges or evidence in this case, is

14   there any juror who is refusing to follow the Court's

15   instructions on the law?

16        JUROR NO. 4:  Well, they seem to think I'm

17   not -- I'm not agreeing with what some of the others

18   are saying.  So they seem to be holding that against

19   me.  And everybody's attacking me.  I'm sick of that.

20        THE COURT:  Are you following the Court's

21   instructions on the law?

22        JUROR NO. 4:  Yes.  But I thought we were to

23   decide -- make our own, you know, decision, not have to

24   go along with what somebody else says.

25        THE COURT:  Is there any juror or jurors who

1   has refused to apply the law to the evidence or the

2   lack of evidence in the case?

3   　　　　　JUROR NO. 4:  Well, I'm the only one who

4   they're -- to me, all the negativity is directed at me.

5   　　　　　THE COURT:  Well, I'm not asking about the

6   negativity affected at you.  I'm asking you what you've

7   observed in the jury room.

8   　　　　　Is there any juror or jurors who have refused

9   to apply the law to the evidence or the lack of

10  evidence in the case?

11  　　　　　JUROR NO. 4:  I don't know what to say on

12  that.

13  　　　　　THE COURT:  Okay.  Are you willing or

14  unwilling to follow the law as given to you by the

15  Court?

16  　　　　　JUROR NO. 4:  I'm willing to follow the law.

17  But I'm still entitled to my own -- you know, what I

18  feel.

19  　　　　　THE COURT:  Have you expressed or stated

20  otherwise to the other jurors?

21  　　　　　JUROR NO. 4:  No.  But they don't seem to like

22  what I have to say, and then it's an argument.  I'm

23  sick of that.  That's making me very ill.

24  　　　　　THE COURT:  So you think your illness is

25  coming from --

```
 1                 JUROR NO. 4:  I know it is.

 2                 THE COURT:  -- the other jurors?

 3                 JUROR NO. 4:  Yes.  And my heart

 4       (inaudible) --

 5                 THE COURT REPORTER:  I'm sorry.  Could you

 6       repeat that, please.

 7                 THE COURT:  Could you state that again,

 8       please.  She didn't get that down on the record.

 9                 JUROR NO. 4:  (No response.)

10                 THE COURT:  Let me ask my next question.

11                 Are you willing or unwilling to apply the law

12       to the evidence or lack of evidence in the case?

13                 JUROR NO. 4:  (Juror crying.)

14                 THE COURT:  Do you need a few minutes?

15                 JUROR NO. 4:  (Nods head in the affirmative.)

16                 THE COURT:  Do you want to go in the jury room

17       for a few minutes?  And then you can come back.

18                 (Thereupon, Juror No. 4 retired from the

19       courtroom and the following proceedings were had:)

20                 MR. GREGORIE:  Judge, I think the record

21       should reflect the long pauses that were in between

22       some of your questions and the answers, especially this

23       last one that was extremely long.

24                 The woman did not answer at all, looked down

25       and continued to not answer the question, your Honor.
```

1    And there was one question your Honor passed on without

2    an answer that she looked down and refused to answer

3    for a good period of time.

4         MS. JHONES:  Yes.  I think the record should

5    also reflect that it appeared she was crying and that

6    was the reason for not responding.  She put her head

7    down and she appeared to be crying, from my -- from

8    where I'm looking.

9         As a matter of fact, the realtime refers --

10   reflects that, and Lisa Edwards is the closest one to

11   the juror:  "(Juror crying)."

12        THE COURT:  I would agree that she seemed

13   upset.

14        MR. CLARK:  Your Honor, on behalf of Rotschild

15   Augustine, I believe she did say that her illness is a

16   result of the deliberations.

17        THE COURT:  She did.

18        MR. CLARK:  And so I'm concerned that the --

19   this threat or this personal attack on her has

20   interfered with her ability to be -- to continue to

21   serve and -- but she has made up her mind?

22        And I think that the juror misconduct should

23   be gone into.

24        THE COURT:  Do you want to knock and see if

25   she's ready.

1          THE COURT SECURITY OFFICER:  Yes, ma'am.

2          (Thereupon, Juror No. 4 entered the courtroom

3     and the following proceedings were had:)

4          THE COURT:  You may be seated.

5          Let me ask the last question again.

6          Do we have some water for her?

7          THE COURT SECURITY OFFICER:  Yes, your Honor.

8          THE COURT:  Do you have some water?

9          JUROR NO. 4:  Yes.

10          THE COURT:  Okay.  Are you willing or

11     unwilling to apply the law to the evidence or lack of

12     evidence in the case?

13          JUROR NO. 4:  I'm willing.  But I'd really

14     like to be excused, because I'm getting very ill.

15          I've lost a lot of weight since I've been

16     here.

17          THE COURT:  Since the beginning of the trial,

18     you've lost weight?

19          JUROR NO. 4:  (Nods head in the affirmative.)

20          THE COURT:  Have you expressed or stated

21     otherwise to the other jurors in regard to willingness

22     or unwillingness to apply the law to the evidence or

23     lack of evidence in the case?

24          JUROR NO. 4:  Well, I did make a comment, but

25     I think it was misinterpreted.

```
 1              THE COURT:  What comment did you make?

 2              JUROR NO. 4:  Something about --

 3              THE COURT:  Is that microphone on?  Could you

 4   make sure?

 5              It takes a minute.

 6              You indicated you made a comment.  What

 7   comment did you make?  You need to hold the microphone

 8   up, if you would, please.

 9              JUROR NO. 4:  I don't know.  Everybody kept --

10   you know, everybody was on my case.

11              THE COURT:  What comment did you make?

12              JUROR NO. 4:  Something like, "Well, I don't

13   believe everything I hear."  That's not what I said,

14   but that's what I meant.

15              THE COURT:  What did you say?

16              JUROR NO. 4:  Something about the law in

17   general.

18              THE COURT:  What did you say about the law?

19              JUROR NO. 4:  I don't know.  I don't remember

20   the exact words.  But what I meant was I didn't

21   believe, you know, everything I heard.

22              THE COURT:  Are you willing or unwilling to

23   deliberate with the other jurors?

24              JUROR NO. 4:  I'm -- do you mean if I would

25   like to continue or not?
```

1          THE COURT:  Are you willing or unwilling to

2   deliberate with the other jurors?

3          JUROR NO. 4:  I'm really unwilling because I

4   think I'm making myself very ill.  This whole situation

5   is making me very ill.

6          THE COURT:  Okay, ma'am.  If you could just

7   have a seat inside.  Thank you.

8          Why don't you take your water bottle with you.

9   If you'd like, you can go sit in the jury hallway and

10  look out the nice window, look at the cruise ships.

11         JUROR NO. 4:  Thank you.

12         (Thereupon, Juror No. 4 retired from the

13  courtroom and the following proceedings were had:)

14         THE COURT:  What I'd like to do is hear your

15  arguments.

16         I don't have any further questions for this

17  juror.

18         I don't know if there's any requests for any

19  further questioning regarding this juror.  I'd like to

20  let her -- if she has somebody here to take her home, I

21  think she should go home.

22         So I'd like to dismiss her and then I'll hear

23  arguments from you.  Then I'm probably going to give

24  you my ruling in the morning.  I want to review the

25  transcript.

1        MR. VEREEN:  Well, your Honor, I have one
2   question.  I'm not sure the Court wants to ask this
3   question or not.
4        This is a juror who took an oath like every
5   other juror has taken an oath to follow the law and
6   deliberate as the Court has instructed.
7        The only question I would ask the Court to
8   ask her is, if you ordered her to continue in her
9   deliberations, is she willing to do that.
10       THE COURT:  What's the Government's position
11  on that?
12       MR. GREGORIE:  That was the last question you
13  asked her, your Honor, and she said she was unwilling.
14       MR. VEREEN:  That's not the question that was
15  asked.
16       THE COURT:  Well, I asked her, "Are you
17  willing or unwilling to deliberate with the other
18  jurors?"
19       MR. VEREEN:  Right.
20       THE COURT:  Her answer was, "I'm really
21  unwilling because I think I'm making myself very ill."
22       MR. VEREEN:  Right.
23       THE COURT:  "This whole situation is making me
24  very ill."
25       MR. VEREEN:  The question posed to her makes

```
 1    it appear as if she has the discretion to make that

 2    determination when my question is not whether or not

 3    she has the discretion.

 4          The Court -- if the Court orders her to

 5    continue to deliberate, the question is will she do as

 6    she is ordered by the Court, not whether or not she

 7    feels up to it.

 8          THE COURT:  What is it that you want me to

 9    ask, Mr. Vereen?  If I order her to continue to

10    deliberate, will she follow that instruction by the

11    Court?

12          MR. VEREEN:  Yes.

13          MS. ARANGO:  Judge, you asked her is she

14    willing or unwilling to deliberate, and she says she's

15    unwilling.

16          That's the end of the inquiry right there.

17          MR. LEVIN:  Judge, this is a juror that was

18    physically intimidated in the jury room.  It's a little

19    bit of a different scenario with regard to her

20    unwillingness.  The Court should inquire with regard to

21    the contents of her note.

22          THE COURT:  I've already ruled on that.

23          MR. LEVIN:  You can't expect anybody to want

24    to deliberate that's been physically intimidated.

25          MS. JHONES:  Your Honor, I just would like to
```

1    make -- to note that in her note she had indicated she

2    wanted to continue to deliberate.

3            I don't have the exact words, but she did make

4    that reference in that -- in her note to the Court late

5    Friday.

6            THE COURT:  I really find at this time that

7    there's been a sufficient amount of inquiry made to

8    this juror as well as to the other jurors pursuant to

9    *Abbell*.

10           I am going to dismiss her for the day and have

11   her come back tomorrow morning.

12           And I'll hear argument from the parties.

13           So you can dismiss her for the day, Patricia,

14   and ask her to come back in the morning, please.

15           Yes.  I'll hear any motions and arguments.

16           MR. GREGORIE:  The United States moves to

17   excuse this juror, your Honor.

18           Out of -- 11 co-jurors indicated that this

19   woman refused to follow the law, your Honor.  She

20   refused to deliberate with those other jurors.

21           There is no question that they were not in any

22   deliberative process because this woman wouldn't take

23   part.

24           She has stated to you while she's here that

25   she's unwilling to go back and further deliberate in

1       this case, your Honor.

2              I don't think there is -- and she was very

3       evasive, your Honor, with regards to her statement

4       about her willingness to follow the law.

5              11 other jurors stated quite clearly that she

6       stated she didn't trust the law and she wouldn't follow

7       it, your Honor.

8              Based on these statements and her

9       unwillingness to further deliberate, I think she has

10      to be excused, Judge.

11             MS. JHONES:  Your Honor, I think that, first

12      of all, in light of -- I think, first of all, at this

13      point -- I realize the Court has already ruled.

14             But in light of the responses of Juror No. 4,

15      I renew my motion for a mistrial.

16             I think, in light of what -- the responses

17      that have been given by this juror as well as her

18      demeanor that the -- that there has been -- that

19      this -- that Mr. Batiste has been deprived of his right

20      to a fair trial.

21             THE COURT:  Could you respond to the

22      Government's motion, please.

23             MS. JHONES:  Well --

24             THE COURT:  The motion to discharge the juror.

25             MS. JHONES:  Well, your Honor --

1          THE COURT:  If you want to make a motion for

2     mistrial separately, that's fine.

3          MS. JHONES:  That's fine.

4          THE COURT:  But I'd like you to respond to the

5     Government's motion.

6          MS. JHONES:  I think that the responses

7     from -- first of all, as to whether or not this juror

8     refuses to deliberate -- there were different answers

9     as to that question from the jurors that were asked.

10          I believe -- and I tried to write as fast as I

11     can -- I believe that there were at least two jurors

12     that answered "no," that there were no jurors that

13     refused to deliberate.

14          But, more importantly, more importantly, I

15     think that a lot of the jurors said, "She -- she's made

16     up her mind.  We tried to get her to state the reasons

17     why she had the position that she had," et cetera,

18     et cetera, which brings, as it relates to the

19     deliberation issue, the question that was left open in

20     *Abbell* in Footnote 19 at Page 1304, and that is:

21     What -- in essence, what constitutes deliberations?

22          And, specifically, the footnote says,

23     "Although we are not deciding today, what degree a

24     juror's duty to deliberate requires her to be actively

25     engaged in debate..."

1           And this woman -- we know that --

2           THE COURT:  Why don't you read the rest of the

3      footnote, because there's -- the footnote -- in fact,

4      that footnote in *Abbell* actually relates to the fact

5      that, in *Abbell*, the juror went in and was doing her

6      nails --

7           MS. JHONES:  Well, that happened --

8           THE COURT:  -- and that the other jurors --

9      and that was a factor that Judge Hoeveler considered.

10          The thrust of that footnote is, "When a

11     District Court is investigating the possibility of

12     impermissible nullification by a juror and when that

13     juror has said at an earlier time in deliberations

14     that she need not follow the law or the Judge's

15     instructions, a later display of unwillingness to

16     deliberate or to engage in discussion is something the

17     Court can take into consideration in determining the

18     credibility of the pertinent juror's claims that she is

19     now applying the law and obeying the instruction of the

20     Court."

21          That's what the Court was addressing in

22     Footnote 19.  That footnote note comes right after the

23     statement, "Some jurors indicated that they were

24     outraged by Alfonso's decision to do her nails during

25     deliberations."

1          MS. JHONES:  There's a crucial distinction in

2     this case, however, your Honor, because the juror in

3     *Abbell* went in and started doing her nails sometime

4     after the Court had given the instructions -- after the

5     Court held the evidentiary hearing and gave the

6     instructions, "Can you follow the law?" and the juror

7     had said -- the juror in *Abbell* had said -- and I'm

8     looking at Page 1303 at Paragraphs 20 and 21 -- that

9     said, after this information came to light -- meaning

10    the information that the juror in that case in some way

11    made comments that she did not have to follow the law

12    and that the Court's instructions are only advisory and

13    not binding on the jury -- "After this information came

14    to light, the Trial Court gave more instructions about

15    the juror's duty to apply the law and obey the Court's

16    instructions."

17          And this is what the Court -- this is what the

18    Court -- your Honor did on Friday.

19          And, presumably, if this juror would have been

20    back in the deliberating room and then started to do

21    her nails, I think that we have an issue similar to

22    *Abbell*.

23          But the contrary happened here.  The Court

24    instructed the jury on Friday.  The jurors went home.

25          And in her absence, in the absence of a juror

1    who's claiming, who's claiming, to have -- to be part

2    of -- to be in a hostile environment, 11 jurors sent a

3    note at 10:00 in the morning, approximately, today, in

4    the absence of the -- of this juror -- I should say

5    Juror No. 4 -- contrary to the Court's instruction on

6    Friday and went ahead and said, "Please remove this

7    juror."

8             Totally different scenario.

9             The problem here is -- nor do I believe that

10   we have an issue in *Abbell*, your Honor, respectfully,

11   as to potential misconduct on the part of other jurors

12   and a hostile environment.  We don't have that.

13            We didn't have that in *Abbell*.  That's the

14   problem.

15            MS. ARANGO:  Judge, there's -- there was a

16   serious omission just now of *Abbell*.

17            "After this information came to light, the

18   Trial Court gave more instructions" -- and I'm reading

19   at Page 1303 -- "the Trial Court gave more instructions

20   about the jury's duty to apply the law and to obey the

21   Court's instruction.

22            "After this additional instruction" -- that

23   would be the instruction that you gave Friday --

24   "Alfonso made no more direct statements about her

25   intention not to follow the law."

1    She made no more statements about her

2    intention not to follow the law after that point in

3    time.

4        And then, at 1304, "The majority of the

5    jurors, however, said that she was still not engaged in

6    deliberations, would not consider evidence nor consider

7    the applicable law."

8        So that's -- the way that Ms. Jhones is trying

9    to portray *Abbell* is just not -- is not correct.

10       THE COURT:  Well, certainly we have our own

11   unique facts.  There's no question about that.

12       The *Abbell* case has its facts, and this case

13   has its own facts that we have to take --

14       MS. JHONES:  I understand that, your Honor.

15       But the important distinction here is that the

16   Court -- as the Court indicated, on Friday the Court

17   gave instructions to the jury.  The Court was hopeful

18   the jury was going to resume deliberations on Monday,

19   ordered them to do so and then we'll see what happens.

20       This juror did not show up.  She did not go

21   back in the jury room.

22       THE COURT:  Right.

23       That's the facts that we're faced with, that

24   she refused to come -- she didn't come today.  She

25   called in and said she was sick, and she did not come

```
 1      until I asked her to come this afternoon for this

 2      hearing.  She did come this afternoon for this hearing.

 3              MS. JHONES:  Correct.  And now because --

 4              THE COURT:  Now she's indicated that she feels

 5      that her illness is caused by the deliberations, as

 6      Mr. Clark pointed out.

 7              So, as I said, we have our own unique facts.

 8      The facts of Abbell are the facts of Abbell.  The facts

 9      of Batiste are the facts of Batiste.

10              I have to take up and apply the law of Abbell

11      to the facts here to make my findings.

12              So this is what -- I'm asking for your

13      arguments.  As I indicated, I want to review the

14      transcripts this evening based upon all the inquiry

15      made to all the jurors, including Juror No. 4, and then

16      I'm going to make my findings pursuant to the

17      controlling case law, which is Abbell.

18              MS. ARANGO:  Judge, in this regard, I would

19      just point out a couple of things.

20              First of all, on the -- every single one of

21      those jurors, without exception, stated that she

22      specifically stated, "I don't believe in the law.  I

23      don't trust the law.  I'm not going to follow the law,"

24      something to that effect.

25              Every single one of them recalled, which is
```

1    quite exceptional, because if you see in the *Abbell*

2    case, the *Kemp* decision and the *Baker* decision,

3    generally, you have jurors saying things that are a

4    little bit different and not all of the jurors agree

5    that the pertinent juror is not deliberating.

6            Here, we have every juror saying the same

7    thing about her refusal to follow the law.

8            On this specific point, you asked her, "Have

9    you stated an unwillingness to following the law?

10           "Well, I did make a comment, but I think it

11   was misinterpreted."

12           Your second question:  "What comment did you

13   make?

14           "Something about" -- and then she wasn't

15   holding her microphone up.

16           You asked her again:  "What comment did you

17   make?

18           "I don't know.  Everybody kept -- you know,

19   everybody was on my case."

20           "What comment did you make?", for the third

21   time you asked.

22           "Something like I don't believe everything

23   that I hear.  That's not what I said, but that's what I

24   meant."

25           "What did you say?", is your followup

1    question.

2            "Something about the law."

3            Finally, you say, "What did you say about the

4    law?

5            "I don't know.  I don't remember the exact

6    words.  But what I meant was I don't believe everything

7    I hear."

8            Judge, you know, clearly, she was evasive.

9    Her demeanor and her evasive answers indicate that she

10   did not want to tell you what every juror told you she

11   said, which is she didn't want to believe in the law

12   and she wasn't willing to follow the law.

13           And the *Abbell* decision, you know, says that

14   you are in the best position to make determinations

15   about her credibility and her demeanor.

16           It's quite clear -- and then right after this

17   exchange, you say, "Are you willing or unwilling to

18   deliberate with the other jurors?"

19           And she said, "I'm unwilling."

20      MR. CLARK:  Your Honor, on behalf of Rotschild

21   Augustine, one of the things -- I think the major

22   difference between this case and the facts in *Abbell* is

23   that every juror that you questioned said that she had

24   made up her mind.

25           In fact, even Juror No. 1 -- No. 2 said that

1    there was no -- she said there was no need to waste any

2    more time, her mind was made up.  She had given

3    answers.  They were short answers, but they were given.

4           No. 5 -- Juror No. 5 said -- he or she said

5    can't -- "You can't make me change my mind.  She had

6    made -- she had made a decision in the case."

7           No. 6 said -- in fact, said that she --

8    something to the effect she was not believing in the

9    Government's case or something like that, that she had

10   made a decision.

11          And Juror No. 8 said that she has made a

12   decision and you can't change her opinion.

13          No. 9 even said no juror was refusing to

14   deliberate and none refused to apply the law on the

15   facts.

16          She said something to the effect that don't

17   believe that the law was justified, perhaps in a

18   conviction in this case, used the word just

19   "justified."

20          And then No. 10 said she was sticking to one

21   side of -- Juror No. 10 said that she was sticking to

22   one side of it, she had made up her mind, she had made

23   a decision.

24          Also, No. 12, I believe, said that she said,

25   "We could sit here for years, but she's not going to

1    change her mind."  She made a decision.

2             No. 13 says, "It could be 20 years and you

3    can't change her mind."

4             She said, "I don't have to change your mind

5    either.  But I don't have to change my mind."

6             She said, "I don't want to have to explain my

7    decision.  It is what it is."

8             And then No. 14 said, "Be here 20 years, you

9    won't change her mind."

10            This lady has made a decision and she has

11   deliberated, to some extent, enough that she can make a

12   decision in this case.  There's no indication that she

13   is not basing it on the evidence in this case.

14            She heard all the evidence.  The jury --

15   she was instructed on the law before even closing

16   arguments.  Then there was closing arguments.

17            There's no indication that she had made up her

18   mind before she went to the jury room to deliberate.

19   Nobody said that.

20            I think a note said that they believed that

21   she had made up her mind.

22            But the point is that she went in.  We've had

23   deliberations.  She's made a decision.

24            And that's exactly what the *Thomas* case and

25   the *Brown* case and the *Abbell* case say you cannot do.

1          All these jurors say she's made a decision.

2          There's not only -- there's not just a

3    speculative hope that this lady's made a decision.  It

4    is a real -- it's not just a possibility.  It's right

5    there in the record.

6          THE COURT:  Well, how do you respond to the

7    Government's position that every juror came in and said

8    that -- I'm not sure if it was everybody, but almost

9    every -- I have to review the transcript -- but every

10   juror said that she stated, "I don't believe in the

11   law"?

12         MR. CLARK:  This -- I need to -- that's where

13   the *Thomas* case comes in, because we have the same

14   situation in the *Thomas* case.

15         In the *Thomas* case, the juror said that -- I'm

16   trying to find the exact page where these statements

17   were made.

18         One juror described No. 5 as -- on one hand,

19   one juror -- this is on Page 611 of *Thomas*.

20         The judge found that one juror said that No. 5

21   was favoring acquittal because the Defendants were his

22   people.

23         Another suggested it was because Juror No. 5

24   thought the Defendants were good people.

25         Two others said Juror No. 5 simply believes

1    that drug-dealing is commonplace.

2         THE COURT:  You think that that is what's gone

3    on here with the statements of the jurors?

4         MR. CLARK:  Well, what happened is the -- they

5    found that this juror had some beliefs that --

6         THE COURT:  Mr. Clark, when I asked you what

7    your response is to the Government -- the Government

8    has said that almost every juror, if not every other

9    juror, of the 11 jurors came in and said that this

10   juror stated, "I don't believe in the law," something

11   to that effect.

12        MR. CLARK:  Well, but --

13        THE COURT:  So I'm asking you what your

14   response is to that.

15        MR. CLARK:  I'm saying --

16        THE COURT:  And your response is the facts of

17   *Thomas*?

18        MR. CLARK:  I'm actually talking -- in the

19   *Thomas* case, the judge found that the juror made

20   statements that they believe that narcotics dealing for

21   economic reasons was okay.

22        But what I'm saying is that, in the *Thomas*

23   case, just because a juror --

24        THE COURT:  You're saying that's like saying,

25   "I don't believe in the law"?

1          MR. CLARK:  No.  I'm not saying -- I'm --

2     yeah.  I'm saying that's very similar.

3          These statements that they're saying that she

4     said -- she has told you she can apply the law.  She

5     told you that she's willing to follow the law.

6          She made a decision in this case after

7     listening to the evidence in this case.  She doesn't --

8     is not in favor of the Government's case.  She has made

9     a decision based on the evidence in this case.

10         THE COURT:  Well, I don't know what decision

11    she's made.

12         MR. CLARK:  Well, that's what I heard from

13    what -- the inquiry that was made, I think, is

14    sufficient that every juror has said that she made a

15    decision against the Government in this case.

16         MS. ARANGO:  That's absolutely untrue.

17         What the juror --

18         MR. CLARK:  I'm not finished.  I'm not

19    finished.

20         MS. ARANGO:  I'll wait.  I'll wait.

21         MR. CLARK:  That juror -- the particular juror

22    who said that was --

23         THE COURT:  Are you sure you're not inferring

24    from what someone said?

25         MR. CLARK:  I'm sorry?

1          THE COURT:   I don't remember any juror saying

2     that she -- there was one juror that said something

3     about being against the Government.  This is the reason

4     I want to review the transcript.

5          There was one juror who said about being

6     against the Government in the same mode of being

7     against the law.  But I don't remember exactly what the

8     language is, which is why I want to review the

9     transcript.

10          MR. CLARK:  That's why I wanted the Court to

11    question this juror about their opinion being based on

12    the evidence in this case.  That's exactly the issue

13    that *Brown*, *Abbell* and the other -- *Thomas* case --

14          THE COURT:  What juror do you say said that

15    this person was in favor of the Government -- against

16    the Government?

17          MR. CLARK:  No. 6.

18          THE COURT:  No. 6?

19          MR. CLARK:  That's the way I took that.

20    No. 6.

21          MR. VEREEN:  Your Honor, may I take a quick

22    break and have Mr. Houlihan cover for me until I get

23    back?  I just need to run to the rest room very

24    quickly.

25          THE COURT:  Sure.

```
 1               MR. VEREEN:  Thank you.

 2               THE COURT:  We'll wait for you.

 3               MR. CLARK:  The point --

 4               THE COURT:  Wait.  We're are waiting for

 5    Mr. Vereen.

 6               MR. CLARK:  Okay.

 7               THE COURT:  Mr. Vereen is now back.

 8               MR. VEREEN:  Thank you, Judge.

 9               THE COURT:  Just a moment.  I found Juror

10    No. 6.

11               What Juror No. 6 said was -- question by the

12    Court:  "Without telling me what you or any juror's

13    opinion is regarding the charges or evidence in this

14    case, is there any juror or jurors who are refusing to

15    deliberate?

16               "Answer:  Yes.  No. 4.

17               "Question:  What statements, if any, has Juror

18    No. 4 made about refusing or being unwilling to

19    deliberate?

20               "Answer:  When we were looking at evidence or

21    going over some of the stuff, she was facing towards

22    the back.  She refused to look at anything.  And she

23    also made comments about not believing or something

24    about the Government or something like that."

25               Question by the Court:  "Is there any juror or
```

1   jurors who are refusing to follow the Court's

2   instructions on the law?"

3          Answer, Juror No. 6:  "Only No. 4."

4          Question by the Court:  "What statements, if

5   any, has Juror No. 4 made about being unwilling to

6   follow the Court's instructions on the law?"

7          Answer, Juror No. 6:  "She said -- I'm not

8   quoting her words because I can't remember them right

9   now.  But she said she didn't trust the law or the

10  Government or something to that effect.

11         "Question:  Is there any juror or jurors who

12  refused to apply the law to the evidence or the lack of

13  evidence in the case?

14         Answer, Juror No. 6:  Yes.  Juror No. 4.

15         Question:  What statements, if any, has Juror

16  No. 4 made about being unwilling to apply the law to

17  the evidence or the lack of evidence in the case, other

18  than what you have already told?

19         "Answer:  No.  Just the same.  She refused to

20  talk.  She refuses to, you know, participate with us

21  while we're discussing things.  We've opened our books.

22  We've opened our notebooks.  She hasn't done any of

23  that.  She just turns her back, looks at a poster and

24  that's about it.  She hasn't debated with us.  She

25  hasn't said anything.  She hasn't spoken with us and

1    she said she wasn't going to do it."

2         MR. CLARK:  Okay.  Back to what I was saying:

3    In *Abbell*, it says that, in the -- early in the

4    process, Alfonso, the juror, made comments that she did

5    not have to follow the law and the Court's instructions

6    were only advisory and not binding on the jury.

7         This juror has not said that.  She may say she

8    doesn't trust the law.  She may make comments to that

9    effect.  But that doesn't mean she can't follow the law

10   or that the jury's instructions are only binding on the

11   jury --

12        THE COURT REPORTER:  Only binding on the jury?

13        MR. CLARK:  Nowhere does she say the Court's

14   instructions are only advisory and not binding on her.

15        THE COURT:  So you're saying a juror has to

16   say exactly what the juror said in *Abbell*?

17        MR. CLARK:  No.  I'm saying that she didn't

18   say that.

19        THE COURT:  Okay.

20        MR. CLARK:  I'm saying that you may disagree

21   with the law, you may not trust the law, but you can

22   still follow it.

23        I'm also saying that then, however, she still

24   was not engaged in deliberations and would not consider

25   evidence nor discuss the applicable law.

1        But nowhere in the *Abbell* case does anybody

2   say that this person had made a decision.

3        This lady -- every juror has said -- she has

4   had some deliberations and she has made a decision and

5   they said she's sticking to it and she's not going to

6   change her mind.

7        There is plenty of evidence to show that this

8   juror is basing her opinion on the evidence in this

9   case.

10        THE COURT:  Okay.

11        MR. CLARK:  I think it would be error to put

12   this juror off this panel.  And if that's the case,

13   I'll move for a mistrial because it would be coercing a

14   jury verdict.

15        Now, we also have not delved into the issue

16   whereby somebody has threatened her.  And, certainly,

17   if you're being threatened and made ill and you're

18   going to turn your back on somebody, I think that --

19   that's jury coercion.

20        And that's the case of -- the *Bushells* case

21   that's cited in the *Thomas* decision.

22        No juror should be coerced or threatened for

23   their opinion, forced to change their opinion.

24        And if after six hours that's your opinion and

25   it can't be changed, so be it.

1         And that's what the *Brown* case, the *Thomas*

2 case and the *Abbell* case stand for.

3         This juror has made her mind up based upon the

4 evidence in the case.  She's told every one of these

5 people that she's made her mind up and you can sit here

6 for 20 years and it's not going to change it.

7         And because they do that, it's unfair to these

8 Defendants to excuse that juror and just put somebody

9 else on there who's willing to deliberate longer.

10         THE COURT:  So you think -- it's your position

11 that she's complied with following the Court's

12 instruction on the duty to deliberate?

13         MR. CLARK:  That's what she said.  That's also

14 consistent with what happened in the *Thomas* case.

15         THE COURT:  Okay.

16         MS. JHONES:  And, your Honor --

17         THE COURT:  Anybody else who wants to be

18 heard?

19         MS. JHONES:  Your Honor, it's consistent

20 with what she said in the note, that she wanted to

21 continue -- I think she may have even said, "I would

22 love to continue in this case."

23         And again, I go back to -- I go back to the

24 issue of -- the issue of, you know, whether or not

25 somebody -- and I think it's very telling as well what

1   the jury foreman note said, you know, "I cross-examined

2   her" or, "We cross-examined her."

3          You know, their perception of what

4   deliberations may be may be totally, totally,

5   incorrect.

6          THE COURT:  But isn't that a decision for them

7   to make?

8          MS. JHONES:  No, your Honor, respectfully.

9          THE COURT:  The Court and the lawyers don't

10  get involved as to what -- how a jury determines how

11  they're going to deliberate.  That's totally for the

12  jury to determine.

13         MS. JHONES:  Your Honor, respectfully, I

14  disagree.

15         We go back to that --

16         THE COURT:  What's your authority for that?

17         MS. JHONES:  *Abbell*.  Again, *Abbell* had left

18  open that question as to whether or not -- whether or

19  not a juror's duty to deliberate requires her to be

20  actively engaged in debate.

21         It is entirely proper -- and I don't have

22  additional cases.  I'm going to try to find them for

23  the Court.

24         But I think it's entirely proper for a juror

25  to be in the jury room and listen to everything that's

1    going on, all of the arguments being formed by the

2    fellow jurors, not engage in debate and deliberate,

3    deliberate, because her views are being questioned in

4    her mind by virtue of the debate that's going on in the

5    jury panel.

6           But if she doesn't want to engage in debate --

7    and that's the question that *Abbell* left open.  That's

8    the problem here.

9           And I think it's a little bit more

10   compounded -- or more difficult because there was this

11   atmosphere which, based on the note from the foreman,

12   it is entirely plausible to believe that, because of

13   this woman's refusal to actively engage in debate at

14   some point, that they all got mad at her and then they

15   started, basically, to take issue with the fact that

16   she was not -- she would not engage in the

17   cross-examination.

18          And that, your Honor, respectfully, I don't

19   believe -- I don't believe that the law would support

20   the proposition that, once somebody has made up their

21   mind, "Oh, wait a second.  Wait a second.  You can't do

22   that.  We're not done with you yet, my fellow juror."

23          That is not what deliberation is.

24          As a matter of fact, the law, the instruction

25   that this Court gives the jury, is contrary to that.

1   And that's the problem here.

2          Given -- given what has been going on there,

3   whatever it may be -- and we don't know what happened

4   first.  Okay?

5          But this woman -- we do know that, on Tuesday,

6   I believe it was, there was a note on the question of

7   the law --

8          MR. LEVIN:  Monday and Tuesday.

9          MS. JHONES:  -- Monday and Tuesday there were

10  notes on the question of the law.

11         We know that there were two and a half days --

12  two days and "X" amount of hours on Wednesday of

13  deliberations and this was not brought to our

14  attention.  And they asked a question on the law.

15         And the fact that this woman has indicated not

16  this afternoon, not this afternoon -- because now she

17  says that the whole process has literally made her

18  ill -- but that, on Friday, Friday, after the Court had

19  instructed -- on Friday, when she sent that note in,

20  she said, "I would love to continue -- or finish

21  continuing my service in this case."

22         The Court went ahead and instructed.  Everyone

23  went home.  And before -- and this lady wasn't even

24  there.  Juror No. 4 wasn't even there.

25         And, lo and behold, another note literally --

1    as the Court was entertaining argument this morning, a

2    note comes in saying, "Please, please, help us get rid

3    of this juror."  This is a problem, your Honor.

4         And, respectfully, that is why I renew my

5    motion for a mistrial, because Mr. Batiste has been

6    deprived of his right to a fair trial by virtue of what

7    happened in there.

8         MR. LEVIN:  Your Honor, if I just may add --

9    and I know that this is almost at this point, you know,

10   being repetitious to an extent.

11        But as the Court recalls, there was two days

12   of deliberation here where there was no indication

13   whatsoever that this juror was refusing to follow the

14   law.

15        There were two substantive notes that were

16   sent to the Court, one of which we discussed earlier,

17   clarification between Counts 2 and 3.  And, even more

18   importantly, they asked for the testimony of Mick

19   Coriolan.

20        I mean, that's a clear indication that there

21   was discussion amongst the 12 jurors.

22        THE COURT:  How do you know that?

23        MR. LEVIN:  We had a note to that effect.

24        THE COURT:  I didn't reveal any substance of

25   any note.

```
 1              MR. LEVIN:  Did they not ask for the testimony

 2    of a witness?

 3              THE COURT:  I didn't reveal the substance of

 4    any note.  How do you know that?

 5              MR. LEVIN:  I don't know.  No.  I may -- maybe

 6    I'm not --

 7              THE COURT:  How do you know that?

 8              MR. LEVIN:  I don't know.

 9              THE COURT:  Do you know that, Mr. Gregorie?

10              MR. GREGORIE:  I don't know anything, your

11    Honor.  I'm listening, but I --

12              THE COURT:  How do you know that?

13              MR. LEVIN:  I don't know.  Maybe I misspoke,

14    your Honor.  I don't know.  Maybe it's all -- I don't

15    know.  I don't know.  I thought there was another

16    substantive note to that effect.

17              THE COURT:  Well, how do you know that?

18              MR. LEVIN:  I don't know.  I don't.  I don't

19    have any indication at this point.

20              In any event, there was deliberations without

21    any indication that she was having a problem.  And then

22    they came in today and there's a --

23              THE COURT:  Well, you know, I'm curious as to

24    how you know that, Mr. Levin.

25              Patricia says she told you and Jackie.
```

1          Well, that's not in compliance with my order.

2          I don't know why she did that.

3          MR. HOULIHAN:  Judge, could I interject

4    something on Mr. Herrera's behalf --

5          THE COURT:  Yes.

6          MR. HOULIHAN:  -- please?  All right.

7          I would object to the removal of this juror.

8          Additionally to what you already have heard, I

9    maintain that there was an insufficient inquiry made of

10   this juror and the other jurors because the inquiry was

11   limited solely to the issue of juror nullification.

12         Once knowledge comes to the Court's attention

13   of improper or jury -- improper actions or jury

14   misconduct in the jury room, the Court cannot take a

15   blind eye to it.

16         On Friday, we received the notes alleging,

17   alleging, from one juror a physical intimidation.

18         The way the note reads, quite frankly, it

19   rises to the level of what would be a misdemeanor in

20   state criminal law, at the very least, an assault.

21         The note we read today, some juror stands up

22   on the table and is going to come after someone,

23   specifically, the "someone" is the juror here.

24         We just cannot ignore that.  The attempted

25   assault is inextricably intertwined with her reactions

1    today, because, while I asked on Friday to see the

2    notes before you instructed the jury and you denied

3    that, by refusing --

4          THE COURT:  I reserved on that, Mr. Houlihan.

5          Let's -- let the record reflect what the

6    Court's ruling was.  I reserved on disclosure of the

7    notes.

8          MR. HOULIHAN:  You refused to instruct the

9    jury in any way, shape or form as I had requested,

10   which is not --

11         THE COURT:  Excuse me?

12         MR. HOULIHAN:  -- to substantively renew any

13   instructions.

14         This juror on Friday complained to you of

15   physical intimidation.

16         This Court refused to address it in the

17   instructions on Friday afternoon, which for all

18   purposes is condoning whatever behavior, if it

19   occurred, that she claims occurred.  It was not

20   addressed.

21         Monday morning she comes in and now she's

22   being cross-examined by everyone.

23         THE COURT:  She didn't come in Monday morning.

24         MR. HOULIHAN:  What day is today?

25         THE COURT:  Today is Monday.  She did not come

```
 1    today.  She called in sick.

 2         MR. HOULIHAN:  Well, Judge, for somebody who

 3    has complained to the Court of physical intimidation

 4    and has had it ignored, I think it is a rational

 5    response when they feel they have nothing more that

 6    they can do, basically, to get sick or they don't --

 7    they do not come in.  She came in when she was

 8    requested by Patricia this afternoon.

 9         Aside from her issues, there are issues on the

10    remaining members of this jury that haven't been

11    addressed.

12         If a juror is trying to physically intimidate

13    a juror, that juror should not be seated.  And if it

14    comes to your attention after inquiry, that juror

15    should be removed, potentially.

16         We just cannot ignore this.

17         MR. GREGORIE:  Judge --

18         THE COURT:  Do you have a response to the

19    Government's motion to remove this juror?

20         I've already ruled on the -- that portion of

21    the juror's note.  I have found that that is -- that

22    was the revealing of -- that's part of the deliberative

23    process.

24         Quite frankly, I don't think it's the first

25    time that there's been, let's say, to put it in the
```

 1    vernacular, rock-and-roll in the jury room.  I think

 2    that sometimes things get heated in jury rooms.

 3          While I have never experienced it, I know that

 4    other judges have experienced things that perhaps have

 5    happened in jury rooms.  I certainly have heard jurors

 6    yelling and screaming and slamming tables.  I mean,

 7    that's part of the deliberative process.

 8          It did not get to a point where the Court

 9    would be or should be involved.  I ruled that that's

10    part of the deliberative process.

11          Now, the issue before the Court is whether or

12    not this juror should be dismissed.  I want to review

13    the transcripts and I'm trying to give counsel an

14    opportunity to respond to the Government's motion.  It

15    is now almost 6:00.

16          MR. VEREEN:  If I may respond.

17          THE COURT:  I would like to hear responses.

18    I'm denying the motion for mistrial.  This is, I think,

19    the sixth or seventh motion for mistrial.

20          I do not find -- while this is not an easy

21    situation, I do not find that at this juncture the jury

22    deliberation process has been so infected that the

23    Defendants cannot receive a fair trial, nor do I find

24    that there is such prejudice to the Defendants that

25    they cannot receive a fair trial.

1           And we seem to be going back all the time to

2     issues that I've already ruled on.

3           You've made your record.

4           If, in fact, these Defendants are convicted,

5     you will have your issues on appeal before the Eleventh

6     Circuit.  If they don't get convicted, then there will

7     be no issues.  If the jury is unable to reach a

8     verdict, then we have to take up that issue.

9           But I have ruled on all the issues.

10          The remaining issue before the Court is

11    whether or not this juror is to be dismissed tomorrow.

12    That's what I would like you to direct yourselves to.

13    If everybody, other than Mr. Vereen, is finished doing

14    that, then I guess we'll go home for the day.

15          Yes, Mr. Vereen.

16          MR. VEREEN:  Judge, with regard to what the

17    Court's burden is -- or the standard with regard to

18    whether this juror be should be excused or not, I want

19    to direct the Court's attention to two answers that she

20    gave to the Court's question.

21          The first question -- not the first question.

22    But the first question I want to direct the Court's

23    attention to is this question.

24          The Court asked:  "Is there any juror --

25    without telling me what you -- your or any juror -- any

1    juror's opinion is regarding the charges or evidence in

2    this case, is there any juror who is refusing to follow

3    the Court's instructions on the law?

4           She answered, "Well, they seem to think I'm

5    not -- I'm not agreeing with what some of others are

6    saying.  So they seem to be holding that against me and

7    everybody's attacking me.  I'm sick of that."

8           To me, that indicates that she has

9    participated in the -- in deliberations.

10          Somehow she has voiced her opinion, and she

11   seems to think that they are not agreeing with her

12   because she doesn't agree with what others are saying.

13          So it shows me that she's involved in the

14   deliberative process.

15          You then ask, "Are you following the Court's

16   instructions on the law?"

17          Her response was, unequivocally, "Yes."

18          And then she states, "But I thought we were to

19   decide -- make our own, you know, decision, not have to

20   go along with what somebody else says," which, to me,

21   indicates that she has made her decision based on how

22   she views the evidence, based on the presentation of

23   the evidence as by the -- as done by Government as well

24   as the defense and she has already come to her

25   determination as to what -- or which way she wants to

1   rule on the issues concerning the law and possibly the

2   verdicts of maybe one or more of the Defendants.

3           Clearly, she has participated with regard to

4   how she has voiced her opinion, and she made statements

5   that some of the things she has said -- or maybe one

6   statement she has said has been misinterpreted.

7           So it appears that she has participated in the

8   deliberative process.  It appears that she has voiced

9   her opinion as to how she views the evidence, which

10  goes to the cases cited by Mr. Clark concerning when

11  it's proper to strike a juror and when it's improper to

12  strike a juror.

13          On behalf of the Defendants, I'm going to ask

14  that the Court does not strike this particular juror,

15  but, instead, order her to continue with the

16  deliberative process.

17          THE COURT:  You didn't read her next answer.

18          Do you want to read that for us so it's clear

19  in the record.

20          MR. VEREEN:  The Court asked, "Is there any

21  juror" --

22          THE COURT:  "Juror or jurors."

23          MR. VEREEN:  -- "juror or jurors" --

24          THE COURT:  -- "who has or have refused to

25  apply the law to the evidence or the lack of evidence

1    in the case?"

2        MR. VEREEN:  And she says, "Well, I'm the only

3    one who -- they are -- to me, all the negativity is

4    directed at me."  I'm not sure what that is.

5        THE COURT:  And I said, "I'm not asking you

6    about the negativity affected at you.  I'm asking you

7    what you've observed in the jury room.  Is there any

8    juror or jurors who have refused to apply the law to

9    the evidence or the lack of evidence in the case?"

10        She said, "I don't know what to say on that."

11        MR. VEREEN:  Right.  She didn't point any

12   fingers at anyone.  She didn't say there were any other

13   jurors who are refusing to deliberate, and she didn't

14   say that she was one that was refusing to either.  She

15   didn't point any finger.

16        THE COURT:  She didn't answer the question.

17        MR. VEREEN:  I understand she may not have

18   answered the question the way the Court wanted her to

19   answer that.  She said she didn't know what to say on

20   that.  That is her answer.  It may not be an acceptable

21   answer.

22        The Court then asked her, "Okay.  Are you

23   willing or unwilling to follow the law as given to you

24   by the Court?"

25        Her response is, "I'm willing to follow the

1    law.  But I am still entitled to my own -- you know,

2    what I feel."

3         That's her response.  She's entitled to, based

4    on the Court's instructions, rely on her own feelings

5    when she has to decide her verdicts.  That's what

6    happens in these things.

7         She has made up her mind.  It does not appear

8    to be one that's favorable back there because she

9    believes that the jurors are jumping on her.  At least

10   she says some of the jurors don't like the way she's

11   answered the questions or the opinion she's rendering

12   and she feels that they're attacking her.

13        THE COURT:  Okay.

14        MS. JHONES:  Your Honor, one more line.  And I

15   know that it's getting late.

16        The standard in *Abbell*, which the Court is

17   very familiar with, given the facts as developed --

18   and, again, in light of the Court's rulings and in

19   light of what -- the questions that were posed and the

20   answers that were given, that the standard to be

21   applied, that no substantial possibility, no

22   substantial possibility, exists, that the pertinent

23   juror is basing her decision on the sufficiency of the

24   evidence.

25        And here, here, in light of her responses and

1    in light of what has transpired here, that I don't

2    believe that the Court could make a determination based

3    on --

4             THE COURT:  So your position is that I should

5    accept her responses and negate the other responses of

6    the other jurors?  That's your position?

7             MS. JHONES:  Your Honor, my position is that

8    the responses of the other 11 jurors as it relates to

9    her ability to deliberate are, at best, equivocal, at

10   best.

11            And as it relates to the statements that she

12   made -- well, the statements that have been attributed

13   to her -- because she has said that, with respect to

14   the issue -- the statement about -- there have been all

15   these different statements -- the statement that she

16   doesn't believe in the law, that -- I forget what the

17   other words were.

18            But we don't know when that was said.  We

19   don't know if that was said after she was being

20   attacked.  We don't know.  We don't know.

21            We do know --

22            THE COURT:  We do know that it must have been

23   said on Friday, because Juror No. 14 was not in the

24   jury room until Friday.

25            MS. JHONES:  Possibly.

```
 1              THE COURT:  Juror No. 14 only began

 2   deliberating on Friday.

 3              MS. JHONES:  Possibly.  That's why I'm saying,

 4   it possibly could have been said on Friday.  And I

 5   didn't think about that.  The Court may be right about

 6   that.

 7              THE COURT:  I think most definitely, if it was

 8   said, it was said on Friday, because Juror No. 14, if,

 9   in fact, she's credible -- if I find that she's

10   credible, that she wasn't there before then.

11              MS. JHONES:  And the animosity that exists in

12   that jury room -- which there's record in this case

13   that there's -- that there are problems.

14              As the Court has said, all these jurors -- you

15   know, people disagree -- that that -- that her

16   statements made -- whatever statements she made -- we

17   don't have a direct quote.

18              But whatever statement she made -- "I don't

19   believe in the law" or "I don't trust the law" or words

20   to that effect -- could have been made in response to

21   when a juror stood up and threatened her.  We don't

22   know.

23              The environment in that deliberating room is

24   such that we don't know what was said and the context

25   of when it was said.
```

```
 1          What we do know is that this juror has not

 2     said to the Court, "I am unwilling to apply the law,"

 3     and we also know that, after the Court gave the

 4     instruction that the Court gave on Friday, this juror

 5     was not given an opportunity to go back in there and

 6     deliberate, because they were dismissed for the day.

 7     They were dismissed for the day.

 8          THE COURT:  Yes.  It was very late.  But she

 9     didn't come in today.

10          MS. JHONES:  I understand that, your Honor.

11          I understand that she --

12          THE COURT:  No one prevented her from coming

13     today.  She chose not to come for one reason or

14     another.

15          MS. JHONES:  I understand that, your Honor.

16          The question is why.  But we know that she

17     followed the Court's instructions because she was

18     called and she came in to be heard.

19          THE COURT:  She did come in this afternoon.

20     That's correct.

21          MS. JHONES:  The question is whether the woman

22     is literally in -- what has occurred since Friday.

23     And, again, the note that she wrote was at 3:15 p.m.,

24     where she said, "I want to continue my service in this

25     case."
```

1          And, presumably, they did not engage in

2     deliberations after that note.

3          THE COURT:  No.  I don't know that that's

4     true.

5          The note came out and I was discussing it with

6     you all.  They were deliberating.  They were

7     deliberating until I brought them in at -- sometime

8     after -- I don't know what time we left here on Friday.

9     I think it was 5:30-ish.  I'm not sure.

10          But at this point, I just gave them the

11     instruction and dismissed them.  They were deliberating

12     up until 5:30, when I brought them in and dismissed

13     them for the day.

14          MR. VEREEN:  Your Honor, I know the Court has

15     not made its decision and probably won't make its

16     decision until tomorrow.

17          But I would ask that, in an abundance of

18     caution -- and I believe even the Government requested

19     that Juror No. 15 be summoned for purposes of possibly

20     sitting as the 12th juror.

21          THE COURT:  Any objection to that by the

22     Government?

23          MR. GREGORIE:  I have no objection to that, if

24     that's the route your Honor chooses to take.  I think

25     there were two options and I --

```
 1            THE COURT:  I haven't decided what's going to
 2   happen, number one, in regard to Juror No. 4.
 3            But I don't have any problem with bringing in
 4   Juror No. 15 in an abundance of caution in the event
 5   that I should decide that Juror No. 4 should be
 6   discharged.
 7            And then I would have to decide whether to
 8   proceed with 11 or -- if I did discharge Juror No. 4,
 9   or go through the same process again, because the
10   jurors would have to start anew with Juror 15.
11            But I would to find out from Juror 15 whether
12   he's discussed the case with anyone or read anything in
13   the media prior to that.
14            MR. VEREEN:  Thank you.
15            MR. GREGORIE:  Certainly, Judge, I would agree
16   with that.  I think this jury has been sitting, waiting
17   to resume their deliberations.  I think it would be
18   important to do that as quickly as possible, if your
19   Honor arrives at a ruling tomorrow morning.
20            THE COURT:  The last time I had all the jurors
21   come in, 14 -- 15 -- 15 couldn't come in because he
22   was -- his father had passed and he was at the funeral.
23            16 couldn't come in -- I'm not sure if it was
24   16 or 17 -- because of a child care problem.  But
25   17 and 18 were here.
```

1          MR. GREGORIE:  Well, as it stands, Judge, we

2     would only need one.

3          THE COURT:  Oh, I know that.

4          It's just a question of whether that juror has

5     discussed the case with anyone or read -- there has

6     been some media since the case -- since the jury

7     started deliberating.  There wasn't before, but there

8     has been some news coverage.

9          I'll have 15 brought in tomorrow morning.

10         I told the jurors to be here at 10:00.  What I

11    intend to do is read over the cases one more time this

12    evening, review the transcript from today's hearings

13    and make my determination pursuant to the standard set

14    forth in *Abbell* and announce that decision to you

15    tomorrow morning.  And then we'll determine how we go

16    forward tomorrow.

17         MR. GREGORIE:  Thank you, your Honor.

18         THE COURT:  We're in recess for today.

19         Thank you.

20         MR. GREGORIE:  Thank you, Judge.

21         (End of proceedings.)

22

23

24

25

1                    C E R T I F I C A T E

2

3          I hereby certify that the foregoing is an

4    accurate transcription of the proceedings in the

5    above-entitled matter.

6

7

8    _____        /s/Lisa Edwards
          DATE             LISA EDWARDS, CRR, RMR
9                          Official United States Court Reporter
                           400 North Miami avenue, Twelfth Floor
10                         Miami, Florida 33128
                           (305) 523-5499
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25